**BLUMENTHAL & NORDREHAUG**
  Norman B. Blumenthal (State Bar #068687)
  Kyle R. Nordrehaug (State Bar #205975)
  Aparajit Bhowmik (State Bar #248066)
2255 Calle Clara
La Jolla, CA 92037
Telephone: (858)551-1223
Facsimile: (858) 551-1232

**UNITED EMPLOYEES LAW GROUP**
   Walter Haines (State Bar #71705)
65 Pine Ave, #312
Long Beach, CA 90802
Telephone: (562) 256-1047
Facsimile: (562) 256-1006

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WALSH, an individual, on behalf of himself, and on behalf of all persons similarly situated, | CASE No. 3:08-cv-01410-JM-POR |
| | **FIRST AMENDED** CLASS AND COLLECTIVE ACTION COMPLAINT FOR: |
| Plaintiff, | |
| vs. | 1. UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *et seq.* |
| APPLE, INC.; and Does 1 to 10, | 2. FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF CAL. LAB. CODE §§ 510, *et seq.*; |
| Defendants. | 3. FAILURE TO PROVIDE WAGES WHEN DUE IN VIOLATION OF CAL. LAB. CODE § 203; |
| | 4. FAILURE TO PROVIDE ACCURATE ITEMIZED STATEMENTS IN VIOLATION OF CAL. LAB. CODE § 226; |
| | 5. FAILURE TO PROVIDE MEAL AND REST PERIODS IN VIOLATION OF CAL. LAB. CODE § 226.7 AND 512; |
| | 6. FAILURE TO PAY COMPENSATION IN VIOLATION OF 29 U.S.C. § 201, *et seq.*; |
| | DEMAND FOR A JURY TRIAL |

**FIRST AMENDED** CLASS ACTION COMPLAINT

Plaintiff David Walsh, an individual, alleges upon information and belief, except for his own acts and knowledge, the following:

## THE PARTIES

1. Defendant Apple, Inc., (hereinafter referred to as "Apple" or "DEFENDANTS"), is a California corporation. Apple's Corporate Headquarters is located in Silicon Valley in Cupertino, California. Many major functional groups of Apple are represented at these Cupertino headquarters, including Engineering, Marketing, Sales, Legal, Human Resources, and AppleCare groups.

2. Apple conducted and continues to conduct substantial and regular business throughout California. Apple has 116 retail stores in the United States and eight international stores in Canada, Japan and the UK through which Apple, as an enterprise engaged in the production of goods such as personal computers and related software, peripherals, network solutions, portable digital music players and related accessories, regularly and recurrently receives or transmits interstate communications.

3. Apple is engaged in the design, manufacture, and marketing of personal computers, portable digital music players, and mobile communication devices. Other products marketed by Apple include software, services, peripherals, and networking solutions. These products are sold worldwide via Apple's online stores and retail stores, a direct sales force, as well as third-party wholesalers, resellers, and value-added resellers. In addition, Apple also sells a variety of third-party Macintosh ("Mac"), iPod and iPhone compatible products, including application software, printers, storage devices, speakers, headphones, and various other accessories and peripherals that are also available through Apple's online and retail stores. Together, Apple's products can generally be grouped under five product lines: 1) desktops, portables, iPod, other music related products and services 2) peripherals and other hardware 3) software 4) service and 5) other sales.

4. In order to provide this wide array of services to millions of customers worldwide, Apple employs hundreds of Network Engineers ("Network Support Staff Members") within an Information Systems & Technology group ("Apple's IS&T"). This group services Apple's corporate systems, retail systems and other key infrastructure. Within the IS&T, Apple's Network

1  Support Staff Members provide the labor for the installation, configuration, implementation,
2  maintenance, troubleshooting and upgrades of Apple's email and telephone systems, as well as
3  technical support of the computer equipment and systems used in conjunction with Apple's retail
4  and iTunes music store customer transactions.   As a matter of course, technical problems often arise
5  with this equipment at all hours of the day and at all hours of the night.  When this happens,
6  HelpDesk or other similar trouble tickets are generated by end-users and sent to the  Network
7  Support Staff Members who diagnose and troubleshoot the technical support issues as the problems
8  arise.

9  5.     Plaintiff David Walsh ("PLAINTIFF") was hired by Apple in the state of California
10  and worked for Defendants from April of 1995 to November of 2007 as a "Network Engineer."

11  6.     When PLAINTIFF was initially hired, he was placed into the job title of
12  Network Engineer and classified as exempt.  As a Network Engineer, PLAINTIFF'S primary duties
13  consisted of providing the labor for the troubleshooting, installing, configuring and maintaining
14  Apple's computer software and hardware and providing on-call support to Apple's IS&T
15  organization.  This work was performed in the DEFENDANTS' home offices, data centers, and
16  retail stores, as the need arose by physically installing, physically configuring, and physically
17  replacing and maintaining network equipment and by performing all tasks incident thereto.
18  PLAINTIFF'S position involved no independent discretion, judgment, or management decisions
19  with respect to matters of significance.  To the contrary, the work of the PLAINTIFF was to provide,
20  on a daily basis, network support services to end-users in accordance with the management
21  decisions and business policies established by Apple.  In fact, no installation, configuration or
22  replacement of the network equipment was made by PLAINTIFF without first obtaining approval
23  from management.

24  7.     Throughout the day, PLAINTIFF would receive a multitude of HelpDesk or "trouble
25  tickets" that requested diagnosis and troubleshooting of Apple's computer systems.  Coverage to
26  respond to the tickets was required 24 hours per day, 7 days per week.  Since these tickets
27  continuously streamed in throughout the workday, depending on the amount that came in,
28  PLAINTIFF often was unable to take a full, thirty (30) minute lunch break.  Responding to these

tickets was not only performed throughout PLAINTIFF'S normal workday, but also pursuant to an on-call rotation by which PLAINTIFF was responsible to respond to the tickets and perform troubleshooting work to resolve the problems at issue at all hours of the night. Apple required PLAINTIFF to regularly work many overtime hours without paying PLAINTIFF overtime compensation because Apple had initially classified PLAINTIFF as exempt. Although PLAINTIFF performed non-exempt work that regularly required the performance of manual labor, such as racking stacking and physically putting into place computer and network hardware, Apple took no steps to analyze the services performed by PLAINTIFF to ensure that the classification of PLAINTIFF as exempt was, in fact, properly based on the primary job duties that he actually performed.

8.      The Defendants named in this Complaint, and as Does 1 through 10, inclusive, are, and at all times mentioned herein were, the agents, servants, and/or employees of each of the other Defendant and each Defendant was acting within the course of scope of his, her or its authority as the agent, servant and/or employee of each of the other Defendant. Consequently, all the Defendants named herein (the "DEFENDANTS") are jointly and severally liable to the PLAINTIFF and the other members of the CALIFORNIA CLASS, for the losses sustained as a proximate result of DEFENDANTS' conduct as herein alleged.


### THE CONDUCT

9.      Apple does not have any policies or procedures in place that catalogue, inventory, list, or otherwise compile the actual work that is actually performed by the Network Support Staff Members. The classification of these employees as exempt is deceptively based on job title alone, rather than the actual labor that is provided by the Network Support Staff Members after they are hired and placed into their particular maintenance and support teams. Thereafter, no reevaluation or reclassification analysis regarding the propriety of their exempt status is performed by Apple, because the company's business model is to initially classify these employees as exempt based on job title alone, regardless of what labor is actually performed by them during the course of their employment.

10. Neither PLAINTIFF nor any other Network Support Staff Member was primarily engaged in work of a type that was or now is directly related to management policies or general business operations, when giving these words a fair but narrow construction. To the contrary, the work of a Network Support Staff Member and other similarly situated job titles of the DEFENDANTS is labor wherein PLAINTIFF and the other Network Support Staff Members are primarily engaged in the day to day business of the DEFENDANTS to keep the networks that perform the day to day functions of DEFENDANTS' business operating in accordance with the management policies established by DEFENDANTS' management.

11. PLAINTIFF and the other Network Support Staff Members labored as working members on the production side of DEFENDANTS' business. The primary work of PLAINTIFF and the other Network Support Staff Members were and are to perform manual labor in order to install, configure and replace DEFENDANTS' network hardware and equipment and to troubleshoot reported problems to keep the Network operational. As a result of this work, PLAINTIFF and the other Network Support Staff Members were primarily involved in, day to day, repairing the network infrastructure, server infrastructure and enhancements, installing and configuring new hardware and software, and replacing routers and switches as necessary. This work was executed primarily by the performance of manual labor within a defined skill set, involving upgrades of the operating systems and networks, the routing of cables, switches, and the electrical power systems supporting such infrastructure to keep the Network running and the performance of day to day operational maintenance of the infrastructure, pursuant to known protocol followed by these employees. Physical demands of the position include standing, sitting, walking, bending, lifting, and moving computer items, some of which weigh as much as one hundred (100) pounds, as needed. PLAINTIFF and the other Network Support Staff Members performed these tasks either from within the DEFENDANTS' home offices, data centers or by traveling to off-site retail stores owned and operated by the DEFENDANTS. PLAINTIFF and the other Network Support Staff Members, as Network Engineers on the production side of DEFENDANTS' business, but were nevertheless classified by DEFENDANTS as exempt from overtime pay. As a result, although PLAINTIFF and the other Network Support Staff Members regularly worked more than eight (8)

hours a day and/or forty (40) hours a week and also on the seventh (7th) day of a workweek, they were not properly compensated for these hours of work as required by law.

12. In addition to the job functions performed during the regular working hours, PLAINTIFF and the other Network Support Staff Members were required to make changes to the network equipment that could only be effectuated after hours according to DEFENDANTS' policies. This was done to avoid disruption of the DEFENDANTS' day to day business activities while the system was in use during regular business houses. During this time, after a regularly worked eight (8) hour work day of manual labor, PLAINTIFF and the other Network Support Staff Members were required to install, configure, replace and/or troubleshoot DEFENDANTS' network systems well into the night. These same restrictions and obligations were also borne by the other members of the class similarly situated. Further, PLAINTIFF and the other Network Support Staff Members were also required to remain on-call pursuant to the DEFENDANTS' "on-call" rotation plan (the "ROTATIONS"). According to the ROTATIONS, each member of the Network Support Team, including the PLAINTIFF, took turns performing on-call duties approximately every six (6) weeks. The performance of each ROTATION lasted for an entire seven (7) day workweek. During this time, after returning home from an eight (8) hour work day, PLAINTIFF and the other Network Support Staff Members were required to remain on stand-by for the entire night, every night of the week, for the entire week without compensation. After working an entire workday on the Friday of the ROTATION, PLAINTIFF and the other Network Support Staff Members were also required to remain on call twenty-four (24) hours a day from Friday evening until Monday morning, when they would report to the employer's work site for their "regular" workday. The effect of DEFENDANTS' on-call rotational system is that, during the team members' rotation, the employee is subject to receiving a call and is effectively precluded from engaging in any activity that would hinder his ability to immediately respond to the technical support call. This system places severe limitations on the activities of PLAINTIFF and the members of this team and accordingly, their time is effectively indentured for the benefit of the DEFENDANTS. Each night of every ROTATION, the movements of PLAINTIFF and the other Network Support Staff Members were severely geographically restricted by the on-call responsibilities because each night, PLAINTIFF and the

1    other Network Support Staff Members were subjected to frequent calls in conjunction with the

2    unduly restrictive fixed, response time-limit that necessitated an answer to each call.   Further,

3    PLAINTIFF and the other Network Support Staff Members were extremely restricted in the kind

4    and extent of personal activities they could engage in.  Many personal activities, including, but not

5    limited to, taking their families to see a movie in a theater, taking their families to dinner at a

6    restaurant, engaging in organized sporting activities, participating in weddings, supplementing their

7    incomes with a second job, and/or attending to medical issues with the assistance of a doctor,

8    dentist, or other professional, had to be avoided entirely.  Another inconvenience imposed upon

9    PLAINTIFF and the other Network Support Staff Members was the inability to provide themselves

10    with an entire night of uninterrupted sleep, as the technical support calls often came in past eleven

11    o'clock at night (11:00 p.m.).  Despite these demanding conditions imposed by DEFENDANTS,

12    regular and overtime compensation for (a) the hours work was performed during the ROTATIONS

13    and (b) the "on-call" hours worked as time spent, wherein PLAINTIFF and the other Network

14    Support Staff Members were so restricted during the ROTATIONS as to be effectively engaged to

15    wait, were withheld by DEFENDANTS from PLAINTIFF and the other Network Support Staff

16    Members.

17        13.     Plaintiff David Walsh ("PLAINTIFF") brings this class action on behalf of

18    himself and a California class consisting of all individuals who are or previously were employed by

19    Defendant Apple, Inc. (hereinafter referred to as "DEFENDANTS") in a staff position as a Network

20    Engineer, or in any other similarly situated position (the "Network Support Staff Members") (the

21    "CALIFORNIA CLASS" or "CLASS") in California during the Class Period.  The class period

22    applicable to this CALIFORNIA CLASS is defined as the period beginning four years prior to the

23    filing of this Complaint and ending on the date of as determined by the Court (the "CLASS

24    PERIOD").  As a matter of company policy and practice,  DEFENDANTS have unlawfully, unfairly

25    and/or deceptively classified every Network Support Staff Member as exempt based on job title

26    alone, failed to pay the required overtime compensation and otherwise failed to comply with all

27    labor laws with respect to these Network Support Staff Members.

28        14.     By reason of this uniform conduct applicable to PLAINTIFF and all CALIFORNIA

CLASS members, DEFENDANTS committed acts of unfair competition in violation

of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (the "UCL"), by

engaging in a company-wide policy and procedure which failed to correctly determine whether the

PLAINTIFF and the CALIFORNIA CLASS of similarly situated Network Support Staff Members

were properly classified as exempt.  The proper classification of these employees is the

DEFENDANTS' burden.  As a result of DEFENDANTS' intentional disregard of the obligation to

meet this burden, DEFENDANTS failed to properly calculate and/or pay all required overtime

compensation for work performed by the members of the CALIFORNIA CLASS and violated the

Fair Labor Standards Act and the California Labor Code and regulations promulgated thereunder as

herein alleged.

15.     PLAINTIFF and all members of the CALIFORNIA CLASS are and were uniformly

classified and treated by DEFENDANT as exempt at the time of hire and thereafter,

DEFENDANTS failed to take the proper steps to determine whether PLAINTIFF, and the other

members of the similarly-situated CALIFORNIA CLASS, were properly classified under Industrial

Welfare Commission Wage Order 4-2001 and Cal. Lab. Code §§ 510 *et seq*. and Section 13 of the

Fair Labor Standards Act (the "FLSA") as exempt from applicable federal and state labor laws.

Since DEFENDANTS affirmatively and wilfully had in place a business policy, practice and

procedure which failed to allow for an accurate determination of whether exempting PLAINTIFF

and the members of the CALIFORNIA CLASS complied with either the FLSA or the California

Labor Laws, DEFENDANTS' practices violated and continue to violate the law.  In addition, the

DEFENDANTS acted deceptively by falsely and fraudulently telling PLAINTIFF and each member

of the CALIFORNIA CLASS that they were exempt from overtime pay when DEFENDANTS

knew or should have known that this statement was false and not based on known facts.  The

DEFENDANTS also acted unfairly by violating the labor laws of the United States and California.

As a result of this policy and practice, DEFENDANTS violated the UCL.

16.     As a result of DEFENDANTS' UCL violation, PLAINTIFF, on behalf of himself and

the CALIFORNIA CLASS, seek disgorgement of DEFENDANTS' ill-gotten gains into a fluid fund

to recover all the money that DEFENDANTS were required by law to pay, but failed to pay, to

1  PLAINTIFF and all other CALIFORNIA CLASS members and restitution to PLAINTIFF and the

2  CALIFORNIA CLASS.  PLAINTIFF also seeks penalties and all other relief available to him and

3  other similarly situated employees under California law.  PLAINTIFF also seeks declaratory relief

4  finding that the employment practices and policies of the DEFENDANTS violate California law and

5  injunctive relief to enjoin the DEFENDANT from continuing to engage in such employment

6  practices.

7        17.     PLAINTIFF and the members of the CALIFORNIA CLASS have no plain, speedy or

8  adequate remedy at law and will suffer irreparable injury if DEFENDANTS are permitted to

9  continue to engage in the unlawful acts and practices herein alleged.  The illegal conduct alleged

10  herein is continuing and to prevent future injury and losses, and to avoid a multiplicity of lawsuits,

11  PLAINTIFF is entitled to an injunction and other equitable relief, on behalf of himself and the

12  CLASS, to prevent and enjoin such practices.  PLAINTIFF therefore requests a preliminary and/or

13  permanent injunction as the DEFENDANTS provides no indication that DEFENDANTS will not

14  continue such wrongful activity in the future, along with restitution, penalties, interest,

15  compensation and other equitable relief as provided by law.

16

17  **THE CALIFORNIA CLASS**

18        18.     PLAINTIFF brings this class action on behalf of himself and all individuals who are

19  or previously were employed by DEFENDANT as Network Support Staff Members and other

20  similarly situated positions in California during the period four years prior to the filing of this

21  Complaint and ending on the date as determined by the Court ("CALIFORNIA CLASS PERIOD"

22  or "CLASS PERIOD"), who were classified by Defendant as exempt, and who have been or may be

23  subject to the challenged exemption classification policies and practices used by Defendant (the

24  "CALIFORNIA CLASS").  To the extent equitable tolling operates to toll claims by the

25  CALIFORNIA CLASS against DEFENDANTS, the CLASS PERIOD should be adjusted

26  accordingly.

27        19.     DEFENDANTS, as a matter of corporate policy, practice and procedure, and in

28  violation of the applicable Labor Code, Industrial Welfare Commission ("IWC") Wage Order

1  Requirements, and the applicable provisions of California law, intentionally, knowingly, and

2  wilfully, engaged in a practice whereby DEFENDANT unfairly, unlawfully, and deceptively failed

3  to institute a practice to ensure that the employees employed in a position as a Network Support

4  Staff Member properly were classified as exempt from the requirements of California Labor Code

5  §§ 510, *et seq*.

6       20.     DEFENDANTS have the burden of proof that each and every employee is properly

7  classified as exempt from the requirements of the Cal. Lab. Code §§ 510, *et seq*.  The

8  DEFENDANTS, however, as a matter of uniform and systematic policy and procedure failed to

9  have in place during the CALIFORNIA CLASS PERIOD and still fail to have in place a policy or

10  practice to make any individual determination of exemption for any California Class Members so as

11  to satisfy their burden.  Rather, the DEFENDANTS' uniform policy and practice in place at all

12  times during the CALIFORNIA CLASS PERIOD and currently in place is to systematically classify

13  each and every California Class Member as exempt from the requirements of the California Labor

14  Code §§ 510, *et seq*., based on job title alone.  This common business practice applicable to each

15  and every California Class Member can be adjudicated on a classwide basis as unlawful, unfair,

16  and/or deceptive under Cal. Business & Professions Code §17200, *et seq*. (the "UCL") as causation,

17  damages, and reliance are not elements of this claim.

18       21.     At no time before, during or after the PLAINTIFF'S employment with

19  Apple was any Network Support Staff Members reclassified as non-exempt from the applicable

20  requirements of California Labor Code §§ 510, *et seq*. after each California Class Member was

21  initially, uniformly, and systematically classified as exempt upon being hired.

22       22.     Any individual declarations of any California Class Members offered at this time

23  purporting to indicate that one or more Network Support Staff Members may have been properly

24  classified is of no force or affect absent evidence that DEFENDANTS had a uniform system in

25  place to satisfy DEFENDANTS' burden that DEFENDANTS, at all times had in effect a policy and

26  practice to determine whether the California Class Members were being properly classified as

27  exempt pursuant to Cal. Lab. Code §§ 510, *et seq*.  Absent proof of such a system, DEFENDANTS'

28  business practice is uniformly unlawful, unfair and/or deceptive under the UCL and may be so

1  adjudicated on a classwide basis.  As a result of the UCL violations, the PLAINTIFF and the

2  California Class Members are entitled to have this unfair business practice enjoined and to cause

3  DEFENDANTS to disgorge their ill-gotten gains into a fluid fund and to restitute these funds to the

4  PLAINTIFF and the California Class Members according to proof.

5        23.    The CALIFORNIA CLASS, numbering more than 100 members, is so numerous

6  that joinder of all Network Support Staff Members is impracticable.

7        24.    DEFENDANTS uniformly violated the rights of the CALIFORNIA CLASS

8  under California law by:

9            (a)    Violating the California Unfair Competition Laws, Cal. Bus. & Prof. Code §

10                  17200, *et seq.*, by unlawfully, unfairly and/or deceptively having in place

11                  company policies, practices and procedures that uniformly classified

12                  PLAINTIFF and the members of the CALIFORNIA CLASS as exempt based

13                  on job title alone;

14            (b)    Committing an act of unfair competition in violation of the California Unfair

15                  Competition Laws, Cal. Bus. & Prof. Code § 17200 *et seq.*, by unlawfully,

16                  unfairly, and/or deceptively failing to have in place a company policy,

17                  practice and procedure that accurately determined the percentages of time

18                  PLAINTIFF and the members of the CALIFORNIA CLASS actually spent

19                  performing non-exempt, as compared to exempt, job duties;

20            (c)    Committing an act of unfair competition in violation of the California Unfair

21                  Competition Laws, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, by  having in

22                  place a company policy, practice and procedure that failed to reclassify as

23                  non-exempt those members of the CALIFORNIA CLASS whose actual job

24                  duties are primarily comprised non-exempt job functions;

25            (d)    Violating Cal. Lab. Code §§510, *et seq.* by failing to pay the correct overtime

26                  pay to PLAINTIFF and the members of the CALIFORNIA CLASS who were

27                  improperly classified as exempt;

28            (e)    Violating Cal. Lab. Code §§ 226.7 and 512, by failing to provide PLAINTIFF

1   and the members of the CALIFORNIA CLASS who were improperly

2   classified as exempt with meal and rest periods;

3   (f)   Violating Cal. Lab. Code § 226 by failing to provide PLAINTIFF and the

4   members of the CALIFORNIA CLASS who were improperly classified as

5   exempt with an accurate itemized statement in writing showing the gross

6   wages earned, the net wages earned, all applicable hourly rates in effect

7   during the pay period and the corresponding number of hours worked at each

8   hourly rate by the employee; and,

9   (g)   Violating Cal. Lab. Code § 203 by failing to provide restitution of wages

10  owed to the members of the CALIFORNIA CLASS who were improperly

11  classified as exempt and who have terminated their employment.

12  25.   This Class Action meets the statutory prerequisites for the maintenance of a

13  Class  Action as set forth in Fed. R. Civ. Proc. 23(b)(2) and/or (3) in that:

14  (a)   The persons who comprise the CALIFORNIA CLASS exceed 100 persons

15  and are therefore so numerous that the joinder of all such persons is

16  impracticable and the disposition of their claims as a class will benefit the

17  parties and the Court;

18  (b)   Nearly all factual, legal, statutory, declaratory and injunctive relief issues that

19  are raised in this Complaint are common to the CALIFORNIA CLASS will

20  apply uniformly to every member of the CALIFORNIA CLASS;

21  (c)   The claims of the representative PLAINTIFF are typical of the claims of each

22  member of the CALIFORNIA CLASS.   PLAINTIFF, like all other members

23  of the CALIFORNIA CLASS, was initially classified as exempt upon hiring

24  based on job title alone and labored under DEFENDANTS' systematic

25  procedure that failed to analyze the job functions actually performed in order

26  to determine whether the classification was properly made.  PLAINTIFF

27  sustained economic injury as a result of DEFENDANTS' employment

28  practices.  PLAINTIFF and the members of the CALIFORNIA CLASS were

1    and are similarly or identically harmed by the same unlawful, deceptive,

2    unfair and pervasive pattern of misconduct engaged in by the DEFENDANT

3    by deceptively advising all Network Support Staff Members that they were

4    exempt from overtime wages based on job title alone, and unfairly failing to

5    pay overtime to employees who were improperly classified as exempt.

6    (d)    The representative PLAINTIFF will fairly and adequately represent and

7    protect the interest of the CALIFORNIA CLASS, and has retained counsel

8    who are competent and experienced in Class Action litigation.  There are no

9    material conflicts between the claims of the representative PLAINTIFF and

10    the members of the CALIFORNIA CLASS that would make class

11    certification inappropriate.  Counsel for the CALIFORNIA CLASS will

12    vigorously assert the claims of all Class Members.

13    26.    In addition to meeting the statutory prerequisites to a Class Action, this action

14    is properly maintained as a Class Action pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3), in that:

15    (a)    Without class certification and determination of declaratory, injunctive,

16    statutory and other legal questions within the class format, prosecution of

17    separate actions by individual members of the CALIFORNIA CLASS will

18    create the risk of:

19    1)    Inconsistent or varying adjudications with respect to individual

20    members of the CALIFORNIA CLASS which would establish

21    incompatible standards of conduct for the parties opposing the

22    CALIFORNIA CLASS; and/or,

23    2)    Adjudication with respect to individual members of the

24    CALIFORNIA CLASS which would as a practical matter be

25    dispositive of interests of the other members not party to the

26    adjudication or substantially impair or impede their ability to protect

27    their interests.

28    (b)    The parties opposing the CALIFORNIA CLASS have acted or refused to act

on grounds generally applicable to the CALIFORNIA CLASS, making appropriate class-wide relief with respect to the CALIFORNIA CLASS as a whole in that the DEFENDANT uniformly classified and treated the Network Support Staff Members as exempt and, thereafter, uniformly failed to take proper steps to determine whether the Network Support Staff Members were properly classified as exempt, and thereby denied these employees overtime wages as required by law;

    1)    With respect to the First Cause of Action, the final relief on behalf of the CALIFORNIA CLASS sought does not relate exclusively to restitution because through this claim PLAINTIFF seeks declaratory relief holding that the DEFENDANTS' policy and practices constitute unfair competition, along with declaratory relief, injunctive relief, and incidental equitable relief as may be necessary to prevent and remedy the conduct declared to constitute unfair competition;

(c)    Common questions of law and fact exist as to the members of the CALIFORNIA CLASS, with respect to the practices and violations of California Law as listed above, and predominate over any question affecting only individual members, and a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

    1)    The interests of the members of the CALIFORNIA CLASS in individually controlling the prosecution or defense of separate actions in that the substantial expense of individual actions will be avoided to recover the relatively small amount of economic losses sustained by the individual CALIFORNIA CLASS members when compared to the substantial expense and burden of individual prosecution of this litigation;

    2)    Class certification will obviate the need for unduly duplicative

litigation that would create the risk of:

    A.    Inconsistent or varying adjudications with respect to individual members of the CALIFORNIA CLASS, which would establish incompatible standards of conduct for the DEFENDANTS; and/or,

    B.    Adjudications with respect to individual members of the CALIFORNIA CLASS would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

    3)    In the context of wage litigation because a substantial number of individual class members will avoid asserting their legal rights out of fear of retaliation by DEFENDANTS, which may adversely affect an individual's job with DEFENDANTS or with a subsequent employer, the Class Action is the only means to assert their claims through a representative; and,

    4)    A class action is superior to other available methods for the fair and efficient adjudication of this litigation because class treatment will obviate the need for unduly and unnecessary duplicative litigation that is likely to result in the absence of certification of this action pursuant to Fed. R. Civ. Proc. 23(b)(3).

27.    This Court should permit this action to be maintained as a Class Action pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3) because:

    (a)    The questions of law and fact common to the CALIFORNIA CLASS predominate over any question affecting only individual members because the DEFENDANTS' employment practices were uniform and systematically applied with respect to the CALIFORNIA CLASS;

    (b)    A Class Action is superior to any other available method for the fair and

1   efficient adjudication of the claims of the members of the CALIFORNIA

2   CLASS because in the context of employment litigation a substantial number

3   of individual Class members will avoid asserting their rights individually out

4   of fear of retaliation or adverse impact on their employment;

5   (c)   The members of the CALIFORNIA CLASS exceed 100 people and are

6         therefore so numerous that it is impractical to bring all members of the

7         CALIFORNIA CLASS before the Court;

8   (d)   PLAINTIFF, and the other CALIFORNIA CLASS members, will not be able

9         to obtain effective and economic legal redress unless the action is maintained

10        as a Class Action;

11  (e)   There is a community of interest in obtaining appropriate legal and equitable

12        relief for the acts of unfair competition, statutory violations and other

13        improprieties, and in obtaining adequate compensation for the damages and

14        injuries which DEFENDANT's actions have inflicted upon the

15        CALIFORNIA CLASS;

16  (f)   There is a community of interest in ensuring that the combined assets of

17        DEFENDANT are sufficient to adequately compensate the members of the

18        CALIFORNIA CLASS for the injuries sustained;

19  (g)   DEFENDANT has acted or refused to act on grounds generally applicable to

20        the CALIFORNIA CLASS, thereby making final class-wide relief

21        appropriate with respect to the CALIFORNIA CLASS as a whole;

22  (h)   The members of the CALIFORNIA CLASS are readily ascertainable from

23        the business records of DEFENDANT.  The CALIFORNIA CLASS consists

24        of all DEFENDANTS' Network Support Staff Members employed in

25        California during the CALIFORNIA CLASS PERIOD; and,

26  (i)   Class treatment provides manageable judicial treatment calculated to bring a

27        efficient and rapid conclusion to all litigation of all wage and hour related

28        claims arising out of the conduct of DEFENDANTS as to the members of the

1   CALIFORNIA CLASS.

2       28.     DEFENDANTS maintain records from which the Court can ascertain and identify by

3   job title each of DEFENDANTS' employees who as have been systematically, intentionally and

4   uniformly subjected to DEFENDANTS' corporate policy, practices and procedures as herein

5   alleged.  PLAINTIFF will seek leave to amend the complaint to include any additional job titles of

6   similarly situated employees when they have been identified.

7

8                     **THE CALIFORNIA LABOR SUB-CLASS**

9       29.     PLAINTIFF further brings the Second, Third, Fourth, and Fifth causes of action on

10  behalf of a subclass which consists of all members of the CALIFORNIA CLASS who were

11  employed by Defendant Apple who were classified by Defendant as exempt and who performed

12  work in excess of eight (8) hours in one day and/or forty (40) hours in one week and/or hours on the

13  seventh (7th) consecutive day of a workweek and did not receive overtime compensation as required

14  by Labor Code Section 510 and Wage Order 4-2001 (the "CALIFORNIA LABOR SUBCLASS")

15  pursuant to Fed. R. Civ. Proc. 23(b)(3).

16      30.     Apple, as a matter of corporate policy, practice and procedure, and in violation of

17  the applicable California Labor Code ("Labor Code"), and Industrial Welfare Commission ("IWC")

18  Wage Order Requirements intentionally, knowingly, and wilfully, on the basis of job title alone and

19  without regard to the actual overall requirements of the job, systematically classified  PLAINTIFF

20  and other members of the CALIFORNIA CLASS and CALIFORNIA LABOR SUBCLASS as

21  exempt from overtime wages and other labor laws in order to avoid the payment of overtime wages

22  by misclassifying their positions as exempt from overtime wages and other labor laws.  To the

23  extent equitable tolling operates to toll claims by the CALIFORNIA LABOR SUBCLASS against

24  Apple,  the CALIFORNIA LABOR SUB-CLASS should be adjusted accordingly.

25      31.     To the extent that Apple has created a number of job levels and/or job titles for

26  Network Support Staff Members to create the superficial appearance of a number of unique jobs,

27  when in fact, these jobs are substantially similar, these job titles can be easily grouped together for

28  the purpose of determining whether they are exempt from overtime wages.  Apple has uniformly

1  misclassified these CALIFORNIA CLASS and CALIFORNIA LABOR SUBCLASS members as

2  exempt and denied them overtime wages and other benefits to which non-exempt employees are

3  entitled in order to unfairly cheat the competition and unlawfully profit.

4      32.    Apple maintains records from which the Court can ascertain and identify by job

5  title each of Apple's employees who as CALIFORNIA CLASS and CALIFORNIA LABOR

6  SUBCLASS members have been systematically, intentionally and uniformly misclassified as

7  exempt as a matter of DEFENDANTS' corporate policy, practices and procedures.  PLAINTIFF

8  will seek leave to amend the complaint to include these additional job titles when they have been

9  identified.

10      33.    The CALIFORNIA LABOR SUB-CLASS is so numerous that joinder of all

11  members, which number over 100 Network Support Staff Members, is impracticable.

12      34.    Common questions of law and fact exist as to members of the CALIFORNIA

13  LABOR SUB-CLASS, including, but not limited, to the following:

14      (a)    Whether DEFENDANTS unlawfully failed to pay overtime compensation to

15      members of the CALIFORNIA LABOR SUB-CLASS in violation of the

16      California Labor Code and applicable regulations and California Wage Order

17      4-2001;

18      (b)    Whether the members of the CALIFORNIA LABOR SUB-CLASS are non-

19      exempt employees entitled to overtime compensation for overtime hours

20      worked under the overtime pay requirements of California Law;

21      (c)    Whether DEFENDANTS' policy and practice of classifying the SUBCLASS

22      members as exempt from overtime compensation and failing to pay the

23      CALIFORNIA LABOR SUB-CLASS members overtime violate applicable

24      provisions of California law;

25      (d)    Whether DEFENDANTS unlawfully failed to keep and furnish California

26      members with accurate records of hours worked;

27      (e)    Whether DEFENDANTS' policy and practice of failing to pay members of

28      the CALIFORNIA LABOR SUB-CLASS all wages when due within the time

1         required by law after their employment ended violates California law;

2      (f)    Whether DEFENDANTS unlawfully failed to provide all required meal and

3         rest periods to the members of the CALIFORNIA LABOR SUB-CLASS;

4         and,

5      (g)    Whether DEFENDANTS unlawfully failed to tender full payment and/or

6         restitution of wages owed or in the manner required by California law

7         to the members of the CALIFORNIA LABOR SUBCLASS who have

8         terminated their employment; and,

9      (h)    The proper measure of damages and penalties owed to the members of the

10         CALIFORNIA LABOR SUB-CLASS.

11     35.    DEFENDANT, as a matter of corporate policy, practice and procedure, classified all

12 Network Support Staff Members as exempt from overtime wages and other labor laws.  All

13 Network Support Staff Members, including the PLAINTIFF, performed the same primary functions

14 and were paid by DEFENDANT according to uniform and systematic company procedures, which,

15 as alleged herein above, failed to correctly pay overtime compensation. This business practice was

16 uniformly applied to each and every member of the CALIFORNIA LABOR SUBCLASS, and

17 therefore, the propriety of this conduct can be adjudicated on a classwide basis.

18     36.    DEFENDANT violated the rights of the CALIFORNIA LABOR SUBCLASS

19 under California law by:

20      (a)    Violating Cal. Lab. Code §§ 510, *et seq*. by misclassifying and thereby failing

21         to pay PLAINTIFF and the members of the CALIFORNIA LABOR

22         SUBCLASS the correct overtime pay for a work day longer than eight (8)

23         hours and/or a workweek longer than forty (40) hours, and also for all hours

24         worked on the seventh (7th) day of a workweek for which DEFENDANT is

25         liable pursuant to Cal. Lab. Code § 1194;

26      (b)    Violating Cal. Lab. Code § 203, which provides that when an employee is

27         discharged or quits from employment, the employer must pay the employee

28         all wages due without abatement, by failing to tender full payment and/or

1   restitution of wages owed or in the manner required by California law to the

2   members of the CALIFORNIA LABOR SUBCLASS who have terminated

3   their employment;

4   (c)   Violating Cal. Lab. Code §§ 226.7 and 512, by failing to provide PLAINTIFF

5   and the members of the CALIFORNIA LABOR CLASS who were

6   improperly classified as exempt with meal and rest periods;

7   (d)   Violating Cal. Lab. Code § 226 by failing to provide PLAINTIFF and the

8   members of the CALIFORNIA LABOR CLASS who were improperly

9   classified as exempt with an accurate itemized statement in writing showing

10  the gross wages earned, the net wages earned, all applicable hourly rates in

11  effect during the pay period and the corresponding number of hours worked

12  at each hourly rate by the employee; and,

13  37.   This Class Action meets the statutory prerequisites for the maintenance of a

14  Class Action as set forth in Fed. R. Civ. Proc. 23(b)(3), in that:

15  (a)   The persons who comprise the CALIFORNIA LABOR SUBCLASS exceed

16  100 individuals and are therefore so numerous that the joinder of all such

17  persons is impracticable and the disposition of their claims as a class will

18  benefit the parties and the Court;

19  (b)   Nearly all factual, legal, statutory, declaratory and injunctive relief issues that

20  are raised in this Complaint are common to the CALIFORNIA LABOR

21  SUBCLASS and will apply uniformly to every member of the CALIFORNIA

22  LABOR SUBCLASS;

23  (c)   The claims of the representative PLAINTIFF are typical of the claims of each

24  member of the CALIFORNIA LABOR SUBCLASS. PLAINTIFF, like all

25  other members of the CALIFORNIA LABOR SUBCLASS, performed

26  primarily non-exempt job functions, a significant amount of which required

27  the performance of non-office, manual labor, and was improperly classified

28  as exempt and denied overtime pay as a result of DEFENDANT's systematic

classification practices.  PLAINTIFF and all other members of the
CALIFORNIA LABOR SUBCLASS sustained economic injuries arising
from DEFENDANT's violations of the laws of California; and,

(d) The representative PLAINTIFF will fairly and adequately represent and
protect the interest of the CALIFORNIA LABOR SUBCLASS, and has
retained counsel who are competent and experienced in Class Action
litigation.  There are no material conflicts between the claims of the
representative PLAINTIFF and the members of the CALIFORNIA LABOR
SUBCLASS that would make class certification inappropriate.  Counsel for
the CALIFORNIA LABOR SUBCLASS will vigorously assert the claims of
all Class Members.

38. In addition to meeting the statutory prerequisites to a Class Action, this action
is properly maintained as a Class Action pursuant to Fed. R. Civ. Proc. 23(b)(3), in that:

(a) Without class certification and determination of declaratory, injunctive,
statutory and other legal questions within the class format, prosecution of
separate actions by individual members of the CALIFORNIA LABOR
SUBCLASS will create the risk of:

1) Inconsistent or varying adjudications with respect to individual
members of the CALIFORNIA LABOR SUBCLASS which would
establish incompatible standards of conduct for the parties opposing
the CALIFORNIA LABOR SUBCLASS; or,

2) Adjudication with respect to individual members of the
CALIFORNIA LABOR SUBCLASS which would as a practical
matter be dispositive of interests of the other members not party to the
adjudication or substantially impair or impede their ability to protect
their interests.

(b) The parties opposing the CALIFORNIA LABOR SUBCLASS have acted or
refused to act on grounds generally applicable to the CALIFORNIA

SUBCLASS, making appropriate class-wide relief with respect to the SUBCLASS as a whole in that the DEFENDANTS uniformly classified and treated the Network Support Staff Members as exempt and, thereafter, uniformly failed to take proper steps to determine whether the Network Support Staff Members were properly classified as exempt, and thereby denied these employees overtime wages as required by law;

(c)    Common questions of law and fact predominate as to the members of the CALIFORNIA LABOR SUBCLASS, with respect to the practices and violations of California Law as listed above, and predominate over any question affecting only individual members, and a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

1)    The interests of the members of the CALIFORNIA LABOR SUBCLASS in individually controlling the prosecution or defense of separate actions in that the substantial expense of individual actions will be avoided to recover the relatively small amount of economic losses sustained by the individual CALIFORNIA LABOR SUBCLASS members when compared to the substantial expense and burden of individual prosecution of this litigation;

2)    Class certification will obviate the need for unduly duplicative litigation that would create the risk of:

A.    Inconsistent or varying adjudications with respect to individual members of the CALIFORNIA LABOR SUBCLASS, which would establish incompatible standards of conduct for the DEFENDANTS; and/or,

B.    Adjudications with respect to individual members of the CALIFORNIA LABOR SUBCLASS would as a practical matter be dispositive of the interests of the other members not

1                 parties to the adjudication or substantially impair or impede

2                 their ability to protect their interests;

3        3)       In the context of wage litigation because a substantial number of

4                 individual class members will avoid asserting their legal rights out of

5                 fear of retaliation by DEFENDANTS, which may adversely affect an

6                 individual's job with DEFENDANTS or with a subsequent employer,

7                 the Class Action is the only means to assert their claims through a

8                 representative; and,

9        4)       A class action is superior to other available methods for the fair and

10                 efficient adjudication of this litigation because class treatment will

11                 obviate the need for unduly and unnecessary duplicative litigation that

12                 is likely to result in the absence of certification of this action pursuant

13                 to Fed. R. Civ. Proc. 23(b)(3).

14     39.     This Court should permit this action to be maintained as a Class Action pursuant to

15 Fed. R. Civ. Proc. 23(b)(3) because:

16        (a)       The questions of law and fact common to the CALIFORNIA LABOR

17                 SUBCLASS predominate over any question affecting only individual

18                 members;

19        (b)       A Class Action is superior to any other available method for the fair and

20                 efficient adjudication of the claims of the members of the CALIFORNIA

21                 LABOR SUBCLASS because in the context of employment litigation a

22                 substantial number of individual Class members will avoid asserting their

23                 rights individually out of fear of retaliation or adverse impact on their

24                 employment;

25        (c)       The members of the CALIFORNIA LABOR SUBCLASS exceed 100

26                 individuals and are therefore so numerous that it is impractical to bring all

27                 members of the CALIFORNIA LABOR SUBCLASS before the Court;

28        (d)       PLAINTIFF, and the other CALIFORNIA LABOR SUBCLASS members,

| | | |
|---|---|---|
| 1 | | will not be able to obtain effective and economic legal redress unless the |
| 2 | | action is maintained as a Class Action; |
| 3 | (e) | There is a community of interest in obtaining appropriate legal and equitable |
| 4 | | relief for the acts of unfair competition, statutory violations and other |
| 5 | | improprieties, and in obtaining adequate compensation for the damages and |
| 6 | | injuries which DEFENDANT's actions have inflicted upon the |
| 7 | | CALIFORNIA LABOR SUBCLASS; |
| 8 | (f) | There is a community of interest in ensuring that the combined assets of |
| 9 | | DEFENDANT are sufficient to adequately compensate the members of the |
| 10 | | CALIFORNIA LABOR SUBCLASS for the injuries sustained; |
| 11 | (g) | DEFENDANT has acted or refused to act on grounds generally applicable to |
| 12 | | the CALIFORNIA LABOR SUBCLASS, thereby making final class-wide |
| 13 | | relief appropriate with respect to the CALIFORNIA LABOR SUBCLASS as |
| 14 | | a whole; |
| 15 | (h) | The members of the CALIFORNIA LABOR SUBCLASS are readily |
| 16 | | ascertainable from the business records of DEFENDANTS. The |
| 17 | | CALIFORNIA LABOR SUBCLASS consists of those Network Support Staff |
| 18 | | Members who worked overtime ours and who were not paid overtime; and, |
| 19 | (i) | Class treatment provides manageable judicial treatment calculated to bring a |
| 20 | | efficient and rapid conclusion to all litigation of all wage and hour related |
| 21 | | claims arising out of the conduct of DEFENDANT as to the members of the |
| 22 | | CALIFORNIA LABOR SUBCLASS. |
| 23 | | |

**JURISDICTION AND VENUE**

40.     This Court has original jurisdiction over PLAINTIFF'S state law class claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332 in that although the majority of the CALIFORNIA CLASS is comprised of residents of California, at least one member of the CALIFORNIA CLASS is a citizen of a state other than California, there are more than 100

1  individuals in the CALIFORNIA CLASS and the amount in controversy in this complaint exceeds
2  the sum or value of $ 5,000,000.

3      41.    This Court has jurisdiction pursuant to 28 U.S.C.§1331 over PLAINTIFF'S
4  collective claims brought pursuant to the FLSA, 29 U.S.C. §201, *et seq*.

5      42.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because
6  DEFENDANTS (i) are subject to personal jurisdiction in this District and  therefore, reside in this
7  District and/or (ii) committed the wrongful conduct against certain members of the CLASS in San
8  Diego County, California.  In California, a state which has more than one judicial district and in
9  which Apple is a corporation subject to personal jurisdiction at the time an action is commenced,
10  Apple resides in the Southern District of California because Apple's contacts in the Southern
11  District would be sufficient to subject Apple to personal jurisdiction if the Southern District were a
12  separate State.  If any deposition would be more conveniently held in any other district in
13  California, in the interests of the convenience to witnesses and parties and the interests of justice,
14  PLAINTIFF will agree to conduct such deposition in the district of California that is most
15  convenient to the DEFENDANTS.

16

17                    **FIRST CAUSE OF ACTION**
18                  **For Unlawful Business Practices**
19             **[Cal. Bus. And Prof. Code § 17200 et seq.]**
20     **(By PLAINTIFF and the CALIFORNIA CLASS and against All Defendants)**

21      43.    PLAINTIFF, and the other members of the CALIFORNIA CLASS,
22  reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 42
23  of this Complaint.  This cause of action is brought on behalf of PLAINTIFF and the CALIFORNIA
24  CLASS.

25      44.    DEFENDANTS are "persons" as that term is defined under Cal. Bus. and Prof. Code
26  § 17021.

27      45.    California Business & Professions Code § 17200 *et seq*. (the "UCL")
28  defines unfair competition as any unlawful, unfair, or fraudulent business act or practice.  Section

17203 authorizes injunctive, declaratory, and/or other equitable relief with respect to unfair competition as follows:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

California Business & Professions Code § 17203.

46. Through the conduct alleged herein, DEFENDANTS have engaged in an unlawful, unfair, and/or deceptive business practice by violating California law, including but not limited to provisions of the Wage Orders, the Regulations implementing the Fair Labor Standards Act as enacted by the Secretary of Labor, the California Labor Code, the Code of Federal Regulations and the California Code of Regulations, the opinions of the Department of Labor Standards Enforcement, California Labor Code §§ 510, *et seq*., California Labor Code § 226, California Labor Code § 226.7, and California Labor Code § 203 by unfairly violating the public policy of the state of California to take all reasonable steps to properly classify employees as exempt or non-exempt and by deceptively telling the PLAINTIFF and the members of the CALIFORNIA CLASS that they were all exempt when DEFENDANT knew this statement to be untrue, for which this Court should issue declaratory, injunctive and other equitable relief, pursuant to Cal. Bus. & Prof. Code § 17203, as may be necessary to prevent and remedy the conduct held to constitute unfair competition.

47. By and through the unlawful, unfair, and/or deceptive business practices described herein, DEFENDANTS have obtained valuable property, money, and services from the PLAINTIFF, and the other members of the CALIFORNIA CLASS, and has deprived them of valuable rights and benefits guaranteed by law, all to their detriment and to the benefit of DEFENDANTS so as to allow DEFENDANTS to unfairly compete. Declaratory and injunctive

1  relief is necessary to prevent and remedy this unfair competition, and pecuniary compensation alone

2  would not afford adequate and complete relief.

3        48.     All the acts described herein as violations of, among other things, the

4  Cal. Lab. Code, California Code of Regulations, and the Industrial Welfare Commission Wage

5  Orders, are unlawful, are in violation of public policy, are immoral, unethical, oppressive, and

6  unscrupulous, and are likely to deceive employees, and thereby constitute deceptive, unfair and

7  unlawful business practices in violation of Cal. Bus. and Prof. Code § 17200 *et seq*.

8        49.     PLAINTIFF, and the other members of the CALIFORNIA CLASS, are further

9  entitled to, and do, seek a declaration that the above described business practices are deceptive

10  unfair and/or unlawful and that an injunctive relief should be issued restraining DEFENDANT from

11  engaging in any of these deceptive, unfair and unlawful business practices in the future.

12        50.     PLAINTIFF, and the other members of the CALIFORNIA CLASS, have no

13  plain, speedy, and/or adequate remedy at law that will end the unfair and unlawful business

14  practices of DEFENDANT.  Further, the practices herein alleged presently continue to occur

15  unabated.  As a result of the unfair and unlawful business practices described above, PLAINTIFF,

16  and the other members of the CALIFORNIA CLASS, have suffered and will continue to suffer

17  irreparable harm unless DEFENDANT is restrained from continuing to engage in these unfair and

18  unlawful business practices.  In addition, DEFENDANT should be required to disgorge their ill

19  gotten gains into a fluid fund and to make restitution to PLAINTIFF, and the other members of the

20  CALIFORNIA CLASS.

21

22                    **SECOND CAUSE OF ACTION**

23                 **For Failure To Pay Overtime Compensation**

24              **[Cal. Lab. Code §§ 510, 515.5, 1194, 1197 and 1198]**

25  **(By PLAINTIFF and the CALIFORNIA LABOR SUB-CLASS and Against all Defendants)**

26        51.     PLAINTIFF, and the other members of the CALIFORNIA LABOR SUB-CLASS,

27  reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 50

28  of this Complaint.

---

52. Cal. Lab. Code § 510 provides that employees in California shall not be employed more than eight (8) hours in any workday or forty (40) hours in a workweek or on a seventh (7th) consecutive workday of a workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.

53. Cal. Lab. Code § 551 states that, "Every person employed in any occupation of labor is entitled to one day's rest therefrom in seven."

54. Cal. Lab. Code § 552 states that, "No employer of labor shall cause his employees to work more than six days in seven."

55. Cal. Lab. Code § 1194 states:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

56. Cal. Lab. Code § 1198 provides:

> The maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees. The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful.

57. DEFENDANTS have intentionally and uniformly designated certain employees as "exempt" from receiving wages for all hours worked and from receiving certain other rights, by their job title and without regard to DEFENDANTS' realistic expectations, the requirements of the job, and the method of payment made by DEFENDANTS, including PLAINTIFF and the other members of the CALIFORNIA LABOR SUB-CLASS who worked on the production side of the DEFENDANTS' business enterprise. This was done in an illegal attempt to avoid payment of regular and overtime wages and other benefits in violation of the Cal. Lab. Code and Industrial Welfare Commission requirements.

58. In addition, Labor Code Section 558 provides:

(a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(3) Wages recovered pursuant to this section shall be paid to the affected employee.

(b) If upon inspection or investigation the Labor Commissioner determines that a person had paid or caused to be paid a wage for overtime work in violation of any provision of this chapter, or any provision regulating hours and days of work in any order of the Industrial Welfare Commission, the Labor Commissioner may issue a citation. The procedures for issuing, contesting, and enforcing judgments for citations or civil penalties issued by the Labor Commissioner for a violation of this chapter shall be the same as those set out in Section 1197.1.

(c) The civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law.

59. DEFENDANTS have intentionally and uniformly designated certain employees as "exempt" employees, by their job title and without regard to DEFENDANTS' realistic expectations and actual overall requirements of the job, including PLAINTIFF and the other members of the  CALIFORNIA LABOR SUBCLASS who worked on the production side of the DEFENDANTS' IS&T group.  This was done in an illegal attempt to avoid payment of overtime wages and other benefits in violation of the Cal. Lab. Code and Industrial Welfare Commission requirements.

60.     For an employee to be exempt as a bona fide "executive," all the following criteria must be met and DEFENDANTS have the burden of proving that:

   (a)     The employee's primary duty must be management of the enterprise, or of a customarily recognized department or subdivision; and,

   (b)     The employee must customarily and regularly direct the work of at least two (2) or more other employees; and,

   (c)     The employee must have the authority to hire and fire, or to command particularly serious attention to his or his recommendations on such actions affecting other employees; and,

   (d)     The employee must customarily and regularly exercise discretion and independent judgment; and,

   (e)     The employee must be primarily engaged in duties which meet the test of exemption.

No member of the CALIFORNIA LABOR SUBCLASS was or is an executive because they all fail to meet the requirements of being an "executive" within the meaning of Order No. 4-2001.

61.     For an employee to be exempt as a bona fide "administrator," all of the following criteria must be met and DEFENDANTS have the burden of proving that:

   (a)     The employee must perform office or non-manual work directly related to management policies or general business operation of the employer; and,

   (b)     The employee must customarily and regularly exercise discretion and independent judgment; and,

   (c)     The employee must regularly and directly assist a proprietor or an exempt administrator; or,

   (d)     The employee must perform, under only general supervision, work requiring special training, experience, or knowledge, or,

   (e)     The employee must execute special assignments and tasks under only general supervision; and,

   (f)     The employee must be primarily engaged in duties which meet the test of exemption.

No member of the CALIFORNIA LABOR SUBCLASS was or is an administrator because they all

1  fail to meet the requirements for being an "administrator" under Order No. 4-2001.

2      62.    The Industrial Welfare Commission, ICW Wage Order 4-2001, at

3  section (1)(A)(3)(h), at Labor Code § 515, and Cal. Lab. ' 515.5 also set forth the requirements

4  which must be complied with to place an employee in the "professional" exempt category. For an

5  employee to be "exempt" as a bona fide "professional", all the following criteria must be met and

6  DEFENDANTS have the burden of proving that:

7      (a)    The employee is primarily engaged in an occupation commonly recognized as a

8             learned or artistic profession. For the purposes of this subsection, "learned or artistic

9             profession" means an employee who is primarily engaged in the performance of:

10            1)    Work requiring knowledge of an advanced type in a field or science or

11                  learning customarily acquired by a prolonged course of specialized

12                  intellectual instruction and study, as distinguished from a general academic

13                  education and from an apprenticeship, and from training in the performance

14                  of routine mental, manual, or physical processes, or work that is an essential

15                  part or necessarily incident to any of the above work; or,

16            2)    Work that is original and creative in character in a recognized field of artistic

17                  endeavor, and the result of which depends primarily on the invention,

18                  imagination or talent of the employee or work that is an essential part of or

19                  incident to any of the above work; and,

20            3)    Whose work is predominately intellectual and varied in character (as opposed

21                  to routine mental, manual, mechanical, or physical work) and is of such

22                  character cannot be standardized in relation to a given period of time.

23     (b)    The employee must customarily and regularly exercise discretion and independent

24            judgment; and.

25     (c)    The employee earns a monthly salary equivalent to no less than two (2) times the

26            state minimum wage for full-time employment. No member of the CALIFORNIA

27            LABOR SUBCLASS was or is a professional because they all fail to meet the

28            requirements of being a "professional" within the meaning of Order No. 4-2001.

In particular, for an employee to be "exempt" as a bona fide "professional" with respect to the requirements for a computer software employee, all the following criteria must be met and DEFENDANTS have the burden of proving that:

(a)     The employee must primarily perform work which is intellectual or creative and that requires the exercise of discretion and independent judgment; and,

(b)     The employee is primarily engaged in duties which consist of one or more of the following:

1)     the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;

2)     the design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;

3)     the documentation, testing, creation or modification of computer programs related to the design of the software or hardware for computer operating systems; and,

(c)     The employee must be highly skilled and proficient in the theoretical and practical application of highly specialized information to computer systems analysis, programming and software engineering. A job title shall not be determinative of the applicability of this exemption; and,

(d)     The employee's hourly rate of pay is not less than forty-one dollars ($ 41.00), or the annualized full-time salary equivalent of that rate, provided that all other requirements of this section are met and that in each workweek the employee receives not less than forty-one dollars ($ 41.00) per hour worked. This is the rate which is adjusted by the DLSR on October 1 of each year to be effective on January 1 of the following year by an amount equal to the percentage increase in the California Consumer Price Index for Urban Wage Earners and Clerical Workers.

1)     The adjusted rates for each year of the CALIFORNIA LABOR

1    SUBCLASS are as follows: In 2002, the rate was $42.64. In

2    2003, the rate was $43.58. In 2004, the rate was $44.63. In 2005, the rate

3    was $45.84. In 2006, the rate was $47.81. In 2007, the rate is $49.77.

4    Currently, in 2008, the rate is $36.00. No member of the CALIFORNIA

5    CLASS was or is an exempt "Computer Software Employee" because they

6    all fail to meet the requirements of Order No. 4-2001.

7    PLAINTIFF and all members of the CALIFORNIA LABOR SUBCLASS were paid less than these

8    amounts during the Class Period.

9        63.    PLAINTIFF, and other members of the CALIFORNIA LABOR SUBCLASS, do not

10   fit the definition of an exempt executive, administrative, or professional employee because:

11       (a)    They did not work as executives or administrators; and,

12       (b)    The professional exemption articulated in Wage Order 4-2001, section (1)(A)(3)(h)

13              and Labor Code § 515, and the professional exemption articulated in Cal. Lab. Code

14              § 515.5, does not apply to PLAINTIFF, nor to the other members of the

15              CALIFORNIA LABOR

16              SUBCLASS, because they are either computer software employees paid less than the

17              requisite amount set forth in Cal. Lab. § 515.5(a)(4) and under subdivision

18              (1)(A)(3)(h)(iv) of Order No. 4-2001, and/or did not otherwise meet all the

19              applicable requirements to work under the exemption of computer software

20              employee for the reasons set forth above in this Complaint.

21       64.    During the class period, the PLAINTIFF, and other members of the

22   CALIFORNIA LABOR SUBCLASS, worked more than eight (8) hours in a workday and/or forty

23   (40) hours in a work week, and also worked on the seventh (7th) day of a workweek.

24       65.    At all relevant times, DEFENDANTS failed to pay PLAINTIFF, and

25   other members of the CALIFORNIA LABOR SUBCLASS, overtime compensation for the hours

26   they have worked in excess of the maximum hours permissible by law as required by Cal. Lab.

27   Code §§ 510 and 1198, even though PLAINTIFF, and the other members of the CALIFORNIA

28   LABOR SUBCLASS, were regularly required to work, and did in fact work, overtime hours.

1  66.    By virtue of DEFENDANTS' unlawful failure to pay addition

2  compensation to the PLAINTIFF, and the other members of the CALIFORNIA LABOR

3  SUBCLASS, for their regular and overtime hours, the PLAINTIFF, and the other members of the

4  CALIFORNIA LABOR SUBCLASS, have suffered, and will continue to suffer, an economic injury

5  in amounts which are presently unknown to them and which will be ascertained according to proof

6  at trial.

7  67.    DEFENDANTS knew or should have known that PLAINTIFF, and the

8  other members of the CALIFORNIA LABOR SUBCLASS, were misclassified as exempt and

9  DEFENDANTS systematically elected, either through intentional malfeasance or gross

10  nonfeasance, not to pay them for their overtime labor as a matter of uniform corporate policy,

11  practice and procedure.

12  68.    Therefore, PLAINTIFF, and the other members of the CALIFORNIA LABOR

13  SUBCLASS, request recovery of regular and overtime compensation according to proof, interest,

14  attorney's fees and cost pursuant to Cal. Lab. Code §1194(a), as well as the assessment of any

15  statutory penalties against DEFENDANTS, in a sum as provided by the Cal. Lab. Code and/or other

16  statutes.

17  69.    In performing the acts and practices herein alleged in violation of labor

18  laws and refusing to provide the requisite regular and overtime compensation, the DEFENDANTS

19  acted and continue to act intentionally, oppressively, and maliciously toward the PLAINTIFF, and

20  toward the other members of the CALIFORNIA LABOR SUBCLASS, with a conscious and utter

21  disregard of their legal rights, or the consequences to them, and with the despicable intent of

22  depriving them of their property and legal rights and otherwise causing them injury in order to

23  increase corporate profits at the expense of PLAINTIFF and the members of the Class.

24

25

26

27

28

**THIRD CAUSE OF ACTION**

**For Failure to Pay Wages When Due**

**[ Cal. Lab. Code § 203]**

**(By PLAINTIFF and the CALIFORNIA LABOR SUB-CLASS)**

70. PLAINTIFF, and the other members of the CALIFORNIA LABOR SUB-CLASS, reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 69 of this Complaint.

71. Cal. Lab. Code § 200 provides that:

As used in this article:

(a) "Wages" includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation.

(b) "Labor" includes labor, work, or service whether rendered or performed under contract, subcontract, partnership, station plan, or other agreement if the labor to be paid for is performed personally by the person demanding payment.

72. Cal. Lab. Code § 202 provides, in relevant part, that:

If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so requests and designates a mailing address. The date of the mailing shall constitute the date of payment for purposes of the requirement to provide payment within 72 hours of the notice of quitting.

73. Cal. Lab. Code § 203 provides:

If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is

1  discharged or who quits, the wages of the employee shall continue as a penalty from

2  the due date thereof at the same rate until paid or until an action therefor is

3  commenced; but the wages shall not continue for more than 30 days.

4  74.     PLAINTIFF and other members of the CALIFORNIA LABOR SUB-CLASS

5  members have terminated their employment and DEFENDANTS have not tendered payment of

6  wages owed.

7  75.     Therefore, as provided by Cal Lab. Code § 203, on behalf of himself and the

8  members of the CALIFORNIA LABOR SUB-CLASS, PLAINTIFF demands thirty days of pay as

9  penalty for not paying all wages due at time of termination for all employees who terminated

10  employment during the CALIFORNIA LABOR SUB-CLASS PERIOD and demands an accounting

11  and payment of all wages due, plus interest.

12

13                          **FOURTH CAUSE OF ACTION**

14                  **For Failure to Provide Accurate Itemized Statements**

15                              **[Cal. Lab. Code § 226]**

16                  **(By PLAINTIFF and the CALIFORNIA LABOR SUB-CLASS)**

17  76.     PLAINTIFF, and the other members of the CALIFORNIA LABOR SUB-CLASS,

18  reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 75

19  of this Complaint.  This cause of action is brought on behalf of PLAINTIFF and the CALIFORNIA

20  LABOR SUBCLASS.

21  77.     Cal. Labor Code § 226 provides that an employer must furnish employees with

22  an "accurate itemized statement in writing showing:

23          (1) gross wages earned,

24          (2) total hours worked by the employee, except for any employee whose compensation is

25          solely based on a salary and who is exempt from payment of overtime under subdivision (a)

26          of Section 515 or any applicable order of the Industrial Welfare Commission,

27          (3) the number of piecerate units earned and any applicable piece rate if the employee is paid

28          on a piece-rate basis,

1   (4) all deductions, provided that all deductions made on written orders of the employee may

2   be aggregated and shown as one item,

3   (5) net wages earned,

4   (6) the inclusive dates of the period for which the employee is paid,

5   (7) the name of the employee and his or her social security number, except that by January 1,

6   2008, only the last four digits of his or her social security number or an employee

7   identification number other than a social security number may be shown on the itemized

8   statement,

9   (8) the name and address of the legal entity that is the employer, and

10  (9) all applicable hourly rates in effect during the pay period and the corresponding number

11  of hours worked at each hourly rate by the employee."

12      78.     At all times relevant herein, DEFENDANT violated Labor Code § 226, in that

13  DEFENDANT failed to properly and accurately itemize the gross wages earned, the net wages

14  earned, and all applicable hourly rates in effect during the pay period and the corresponding number

15  of hours worked at each hourly rate by the employee.

16      79.     DEFENDANT knowingly and intentionally failed to comply with Labor Code

17  § 226, causing damages to PLAINTIFF, and the other members of the CALIFORNIA LABOR

18  SUBCLASS.  These damages include, but are not limited to, costs expended calculating the true

19  hours worked and the amount of employment taxes which were not properly paid to state and

20  federal tax authorities.  These damages are difficult to estimate.  Therefore, PLAINTIFF, and the

21  other members of the CALIFORNIA LABOR SUBCLASS may recover liquidated damages of

22  $50.00 for the initial pay period in which the violation occurred, and $100.00 for each violation in

23  subsequent pay period pursuant to Labor Code § 226, in an amount according to proof at the time of

24  trial (but in no event more than $4,000.00 for PLAINTIFF and each respective member of the

25  CALIFORNIA LABOR SUBCLASS herein) plus reasonable attorney's fees and costs pursuant to

26  Labor Code § 226(g).

27

28

**FIFTH CAUSE OF ACTION**

**For Failure to Provide Meal and/or Rest Periods**

**[Cal. Lab. Code §§ 226.7 and 512]**

**(By PLAINTIFF and the CALIFORNIA LABOR SUBCLASS)**

80.     PLAINTIFF, and the other members of the CALIFORNIA LABOR SUBCLASS, reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 79 of this Complaint.

81.     Cal. Lab. Code § 512 provides, in relevant part: "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived."

82.     Section 11 of the Order 4-2001 of the Industrial Wage Commission (the "Wage Order") provides, in relevant part:

Meal Periods:

    (A)    No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee.

    (B)    An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than thirty (30) minutes, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be

waived by mutual consent of the employer and the employee only if the first meal period was not waived.

    (C)    Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

    (D)    If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

83.    Section 12 of Order 4-2001 of the Industrial Wage Commission (the "Wage Order") provides, in relevant part:

Rest Periods:

    (A)    Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

    (B)    If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

84. Cal. Lab. Code § 226.7 provides:

(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

85. DEFENDANTS have intentionally and improperly failed to provide all rest and/or meal periods without any work or duties to PLAINTIFF and the other members of the CALIFORNIA LABOR SUBCLASS who worked more than three and one half hours (3 ½) per day, and by failing to do so DEFENDANTS violated the provisions of Labor Code 226.7.

86. Therefore, PLAINTIFF demands on behalf of himself and the members of the CALIFORNIA LABOR SUBCLASS, one (1) hour of premium pay for each workday in which a rest period was not provided for each four (4) hours of work during the period commencing on the date that is within four years prior to the filing of this Complaint and one (1) hour of premium pay for each five (5) hours of work in which a meal period was not provided.

## SIXTH CAUSE OF ACTION

### For Failure to Pay Overtime Compensation

### [ FLSA, 29 U.S.C. § 201, *et seq.*]

### (By PLAINTIFF and the COLLECTIVE CLASS)

87. PLAINTIFF, and the other members of the COLLECTIVE CLASS, reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 86 of this Complaint.

88. PLAINTIFF also brings this lawsuit as a collective action under the Fair Labor and Standards Act, 29 U.S.C. § 201, et seq. (the "FLSA"), on behalf of all persons who were, are, or will be employed by DEFENDANTS as Network Support Staff Members, or in other substantially similar positions during the period commencing three years prior to the filing of this Complaint and

ending on the date as the Court shall determine (the "COLLECTIVE CLASS PERIOD"), who

performed work in excess of forty (40) hours in one week and did not receive overtime

compensation as required by the FLSA (the "COLLECTIVE CLASS"). To the extent equitable

tolling operates to toll claims by the COLLECTIVE CLASS against the DEFENDANTS, the

COLLECTIVE CLASS PERIOD should be adjusted accordingly. The COLLECTIVE CLASS

includes all such persons, whether or not they were paid by commission, by salary, or by part

commission and part salary.

89.     Questions of law and fact common to the COLLECTIVE CLASS as a whole, but not

limited to the following, include:

a.     Whether DEFENDANTS misclassified PLAINTIFF and members of the
       COLLECTIVE CLASS as exempt from receiving compensation for all hours
       worked, including federal overtime compensation;

b.     Whether DEFENDANTS failed to adequately compensate the members
       of the COLLECTIVE CLASS for all hours worked as required by the FLSA,
       including the time worked through their meal periods;

c.     Whether DEFENDANTS should be enjoined from continuing the practices which
       violate the FLSA; and,

d.     Whether DEFENDANTS are liable to the COLLECTIVE CLASS.

90.     The Sixth cause of action for the violations of the FLSA may be brought and

maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA, 29 U.S.C. 216(b),

for all claims asserted by the representative PLAINTIFF of the COLLECTIVE CLASS because the

claims of the PLAINTIFF are similar to the claims of the members of the prospective

COLLECTIVE CLASS.

91.     PLAINTIFF and the COLLECTIVE CLASS are similarly situated, have substantially

similar job requirements and pay provisions, and are subject to DEFENDANTS' common and

uniform policy and practice of misclassifying their employees, failing to pay for all actual time

worked and wages earned, and failing to accurately record all hours worked by these employees in

violation of the FLSA and the Regulations implementing the Act as enacted by the Secretary of

1  Labor (the "REGULATIONS").

2      92.     DEFENDANTS are engaged in communication, business, and

3  transmission between California and Arizona, and are, therefore, engaged in commerce within the

4  meaning of 29 U.S.C. § 203(b).

5      93.     29 U.S.C. § 255 provides that a three-year statute of limitations applies to willful

6  violations of the FLSA.

7      94.     29 U.S.C. § 207(a)(1) provides in pertinent part:

8          Except as otherwise provided in this section, no employer shall employ any of his

9          employees who in any workweek is engaged in commerce or in the production of

10         goods for commerce, or is employed in an enterprise engaged in commerce or in the

11         production of goods for commerce, for a workweek longer than forty hours unless

12         such employee receives compensation for his employment in excess of the hours

13         above specified at a rate not less than one and one-half times the regular rate at

14         which he is employed.

15     95.     Section 213(a)(1) of the FLSA provides that the overtime pay

16 requirement does not apply to:

17         any employee employed in a bona fide executive, administrative, or professional

18         capacity (including any employee employed in the capacity of academic

19         administrative personnel or teacher in elementary or secondary schools), or in the

20         capacity of outside salesman (as such terms are defined and delimited from time to

21         time by regulations of the Secretary, subject to the provisions of the Administrative

22         Procedure Act [5 USCS §§ 551 et seq.] except [that] an employee of a retail or

23         service establishment shall not be excluded from the definition of employee

24         employed in a bona fide executive or administrative capacity because of the number

25         of hours in his workweek which he devotes to activities not directly or closely related

26         to the performance of executive or administrative activities, if less than 40 per

27         centum of his hours worked in the workweek are devoted to such activities).

28

96.     Apple has willfully engaged in a widespread pattern and practice of violating the provisions of the FLSA, as detailed above, by uniformly designating certain employees as "exempt" employees, by their job title and without regard to DEFENDANTS' realistic expectations and actual overall requirements of the job, including PLAINTIFF and the other members of the COLLECTIVE CLASS who worked on the production side of the DEFENDANTS' business enterprise.  This was done in an illegal attempt to avoid payment of overtime wages and other benefits in violation of the FLSA and Code of Federal Regulations requirements.

97.     Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., PLAINTIFF and the members of the COLLECTIVE CLASS are entitled to compensation for all hours actually worked, including time spent monitoring DEFENDANTS' equipment and waiting for and responding to technical support requests during meal periods, and are also entitled to wages at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in any workweek.

98.     29 C.F.R. 541.2 establishes that a job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part.

99.     The exemptions of the FLSA as listed in section 13(a), and as explained by 29 C.F.R. 541.3, do not apply to PLAINTIFF and the other members of the COLLECTIVE CLASS, because their work consists of non-management, production line labor performed with skills and knowledge acquired from on-the-job training, rather than from the prolonged course of specialized intellectual instruction required for exempt learned professional employees such as medical doctors, architects and archeologists.  PLAINTIFF either does not hold a bachelor's degree, has not taken any prolonged course of specialization relating to network systems or infrastructure, and/or has attained the vast majority of the skills they use as employees of Apple from on the job training.

100.    For an employee to be exempt as a bona fide "executive," all the following criteria must be met and DEFENDANTS have the burden of proving that:

(a)     The employee's primary duty must be management of the enterprise, or of a

1     customarily recognized department or subdivision;

2     (b)     The employee must customarily and regularly direct the work of at least two (2) or

3             more other employees;

4     (c)     The employee must have the authority to hire and fire, or to command particularly

5             serious attention to his or his recommendations on such actions affecting other

6             employees; and,

7     (d)     The employee must be primarily engaged in duties which meet the test of exemption.

8     No member of the COLLECTIVE CLASS was or is an executive because they all fail to meet the

9     requirements of being an "executive" under section 13 of the FLSA and 29 C.F.R. 541.100.

10    Moreover, none of the members of the COLLECTIVE CLASS were senior or lead computer

11    programmers who managed the work of two or more other programmers in a customarily

12    recognized department or subdivision of the employer, and whose recommendations as to the

13    hiring, firing, advancement, promotion or other change of status of the other programmers were

14    given particular weight and therefore, they do not qualify for the executive exemption as a computer

15    employees under 29 C.F.R. 541.402.

16          101.    For an employee to be exempt as a bona fide "administrator," all of the

17    following criteria must be met and DEFENDANTS have the burden of proving that:

18    (a)     The employee must perform office or non-manual work directly related to

19            management or general business operation of the employer or the employer's

20            customers;

21    (b)     The employee must customarily and regularly exercise discretion and independent

22            judgment with respect to matters of significance; and,

23    (c)     The employee must regularly and directly assist a proprietor or an exempt

24            administrator; or,

25    (d)     The employee must perform under only general supervision, work requiring special

26            training, experience, or knowledge; and,

27    (e)     The employee must be primarily engaged in duties which meet the test of exemption.

28    No member of the COLLECTIVE CLASS was or is an administrator because they all fail to meet

the requirements of for being an "administrator" under section 13(a) of the FLSA and 29 C.F.R. 541.300. Moreover, their primary duty does not include work such as planning, scheduling, and coordinating activities required to develop systems to solve complex business, scientific or engineering problems of the employer or the employer's customers and therefore, they are not qualified for the administrative exemption as computer employees under 29 C.F.R. 541.402.

102. For an employee to be "exempt" as a bona fide "professional", the DEFENDANTS have the burden of proving that the primary duty of the employee is the performance of work that:

(a) Requires knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or

(b) Requires invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

No member of the COLLECTIVE CLASS was or is a professional because they all fail to meet the requirements of being an "professional" within the meaning of 29 CFR 541.300.

103. For an employee to be "exempt" as a computer software employee, DEFENDANTS have the burden of showing that the primary duty of the employee consists of:

(a) The application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software or system functional specifications;

(b) The design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;

(c) The design, documentation, testing, creation or modification of computer programs related to machine operating systems; or

(d) A combination of the aforementioned duties, the performance of which requires the same level of skills.

The "primary duty" of the PLAINTIFF, and the other members of the COLLECTIVE CLASS, as defined in 29 C.F.R. 541.700, did not consist of the job functions outlined above. Rather, the primary duty of the PLAINTIFF, and the other members of the COLLECTIVE CLASS, consists of

configuring, installing, and troubleshooting computer applications, networks, and hardware and related equipment. Although the primary duty was highly dependent on and facilitated by the use of computers and computer software programs, the primary duty did not involve:

(1)     the determination of hardware, software, or system functional specifications;

(2)     the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs; or

(3)     a combination of these duties, the performance of which requiring the same level of skills.

Rather than consulting with users to determine specifications, PLAINTIFF primarily engaged in customer service functions by providing repairs and/or basic user support to Apple employees. Further, PLAINTIFF and his team operated under intense scrutiny from management performing the upgrades of hardware and software, limited modifications of hardware and software, troubleshooting, and other non-exempt functions that constituted their primary duties. Thus, no member of the COLLECTIVE CLASS was or is exempt as a computer systems analyst, computer programmer, or software engineer because they all fail to meet the requirements of being a "professional" within the meaning of 29 U.S.C. § 213 and 29 C.F.R. 541.400.

104.     During the COLLECTIVE CLASS PERIOD, the PLAINTIFF, and other members of the COLLECTIVE CLASS, worked more than forty (40) hours in a work week and were also required to perform duties that were primarily for the benefit of the employer during meal periods.

105.     At all relevant times, DEFENDANTS failed to pay PLAINTIFF, and other members of the COLLECTIVE CLASS, overtime compensation for the hours they have worked in excess of the maximum hours permissible by law as required by section 207 of the FLSA, even though PLAINTIFF, and the other members of the COLLECTIVE CLASS, were regularly required to work, and did in fact work, overtime hours.

106.     At all relevant times, DEFENDANTS failed to pay PLAINTIFF, and other members of the COLLECTIVE CLASS, regular compensation for the hours they have worked, performing duties primarily for the benefit of the employer during meal periods.

1   107.   For purposes of the Fair Labor Standards Act, the employment practices

2   of DEFENDANTS were and are uniform throughout the United States in all respects material to the

3   claims asserted in this Complaint.

4   108.   There are no other exemptions applicable to PLAINTIFF and/or to members of the

5   COLLECTIVE CLASS.

6   109.   As a result of DEFENDANTS' failure to pay overtime and failure to pay

7   regular compensation for hours worked during meal periods, as required by the FLSA, PLAINTIFF

8   and the members of the COLLECTIVE CLASS were damaged in an amount to be proved at trial.

9   110.   PLAINTIFF, therefore, demands that he and the members of the

10  COLLECTIVE CLASS be paid overtime compensation as required by the FLSA for every hour of

11  overtime worked in any work week for which they were not compensated, regular compensation for

12  every hour worked primarily for the benefit of Apple for which they were not compensated, plus

13  interest and attorneys' fees as provided by law.

14

15  **PRAYER**

16  WHEREFOR, PLAINTIFF prays for judgment against each Defendant, jointly and severally,

17  as follows:

18  1.   On behalf of the CALIFORNIA CLASS:

19      A)   That the Court certify the First Cause of Action asserted by the CALIFORNIA

20          CLASS as a class action pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3);

21      B)   An order temporarily, preliminarily and permanently enjoining and restraining

22          DEFENDANTS from engaging in similar unlawful conduct as set forth herein;

23      C)   An order requiring DEFENDANTS to provide an accounting of all wages and all

24          sums unlawfuly withheld from compensation due to PLAINTIFF and the other

25          members of the CALIFORNIA CLASSES; and,

26      D)   Disgorgement of DEFENDANTS' ill-gotten gains into a fluid fund and imposition

27          of a constructive trust upon such assets of the DEFENDANTS for restitution of the

28          sums incidental to DEFENDANTS' violations due to PLAINTIFF and to the other

1    members of the CALIFORNIA CLASS.

2    2.    On behalf of the CALIFORNIA LABOR SUBCLASS:

3         A)    That the Court certify the Second, Third, Fourth, and Fifth Causes of Action asserted

4               by the CALIFORNIA LABOR SUBCLASS as a class action pursuant to Fed. R. Civ.

5               Proc. 23(b)(3);

6         B)    Compensatory damages, according to proof at trial, including compensatory damages

7               for both regular and overtime compensation due PLAINTIFF and the other members

8               of the CALIFORNIA LABOR SUBCLASS, during the applicable CALIFORNIA

9               CLASS PERIODS plus interest thereon at the statutory rate;

10        C)    One (1) hour of premium pay for each workday in which a rest period was not

11              provided to PLAINTIFF and each member of the CALIFORNIA LABOR

12              SUBCLASS for each four (4) hours of work during the period commencing on the

13              date that is within four years prior to the filing of this Complaint;

14        D)    One hour of premium pay for each five (5) hours of work in which a meal period was

15              not provided to PLAINTIFF and each member of the CALIFORNIA LABOR

16              SUBCLASS;

17        E)    The wages of all terminated employee from the CALIFORNIA LABOR SUBCLASS

18              as a penalty from the due date thereof at the same rate until paid or until an action

19              therefor is commenced, for violation of Cal. Lab. Code § 203;

20        F)    The greater of all actual damages or fifty dollars ($50) for the initial pay period in

21              which a violation occurs and one hundred dollars ($100) per each member of the

22              CALIFORNIA LABOR SUBCLASS for each violation in a subsequent pay period,

23              not exceeding an aggregate penalty of four thousand dollars ($4,000), and an award

24              of costs and reasonable attorney's fees for violation of Cal. Lab. Code § 226.

25   3.    On behalf of the COLLECTIVE CLASS:

26        A)    That the Court certify the Sixth Cause of Action asserted by the COLLECTIVE

27              CLASS as an opt-in class action under 29 U.S.C. § 216(b);

28        B)    That the Court declare the rights and duties of the parties consistent with the relief

1  sought by PLAINTIFF;

2  C)  Issue a declaratory judgment that Defendant's acts, policies, practices and procedures

3  complained of herein violated provisions of the Fair Labor Standards Act;

4  D)  That Defendants be enjoined from further violations of the Fair Labor Standards Act;

5  E)  That the PLAINTIFF and the members of the COLLECTIVE CLASS recover

6  compensatory, damages and an equal amount of liquidated damages as provided

7  under the law and in 29 U.S.C. § 216(b).

8  4.  On all claims:

9  A)  An award of interest, including prejudgment interest at the legal rate.

10  B)  An award of liquidated damages, statutory damages, including reasonable attorneys'

11  fees and cost of suit, but only to the extent that such reasonable attorneys' fees and

12  costs are recoverable pursuant to Cal. Lab. Code §1194 and 29 U.S.C. § 216(b).

13  Neither this prayer nor any other allegation or prayer in this Complaint is to be

14  construed as a request, under any circumstance, that would result in a request for

15  attorneys' fees or costs available under Cal. Lab. Code § 218.5;

16  C)  Such other and further relief as the Court deems just and equitable.

17

18  Dated:  September 9, 2008                    BLUMENTHAL & NORDREHAUG

19                                          By:    _s/Norman B. Blumenthal_____
                                                 Norman B. Blumenthal
20                                               Attorneys for Plaintiff

21                                          UNITED EMPLOYEES LAW GROUP
                                            Walter Haines, Esq.
22                                          65 Pine Ave, #312
                                            Long Beach, CA 90802
23                                          Telephone: (562) 256-1047
                                            Facsimile: (562) 256-1006
24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on issues triable to a jury.


Dated:   September 9, 2008                    BLUMENTHAL & NORDREHAUG

                                   By:    _s/Norman B. Blumenthal_____
                                          Norman B. Blumenthal
                                          Attorneys for Plaintiff


                                   UNITED EMPLOYEES LAW GROUP
                                   Walter Haines, Esq.
                                   65 Pine Ave, #312
                                   Long Beach, CA 90802
                                   Telephone: (562) 256-1047
                                   Facsimile: (562) 256-1006

G:\D\NBB\Walsh v. Apple\p-FAC-final.wpd