1  **BLUMENTHAL & NORDREHAUG**
      Norman B. Blumenthal (State Bar #068687)
2      Kyle R. Nordrehaug (State Bar #205975)
      Aparajit Bhowmik (State Bar #248066)
3  2255 Calle Clara
   La Jolla, CA 92037
4  Telephone: (858)551-1223
   Facsimile: (858) 551-1232
5
   **UNITED EMPLOYEES LAW GROUP**
6      Walter Haines (State Bar #71705)
   65 Pine Ave, #312
7  Long Beach, CA 90802
   Telephone: (562) 256-1047
8  Facsimile: (562) 256-1006

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11                    **SAN JOSE DIVISION**

12  DAVID WALSH, an individual, DAVID        CASE No. 05:08-cv-04918-JF
    KALUA, an individual, on behalf of
13  themselves, and on behalf of all persons  <u>THIRD AMENDED CLASS AND</u>
    similarly situated,                       <u>COLLECTIVE ACTION COMPLAINT</u>
14                                            <u>FOR</u>:
                                             1. UNFAIR COMPETITION IN
15            Plaintiffs,                     VIOLATION OF CAL. BUS. & PROF.
                                             CODE § 17200, *et seq.*
16  vs.                                      2. FAILURE TO PAY OVERTIME
                                             WAGES IN VIOLATION OF CAL.
17  APPLE, INC.,                             LAB. CODE §§ 510, *et seq.*;
                                             3. FAILURE TO PROVIDE WAGES
18            Defendants.                     WHEN DUE IN VIOLATION OF CAL.
                                             LAB. CODE § 203;
19                                           4.  FAILURE TO PROVIDE
                                             ACCURATE ITEMIZED STATEMENTS
20                                           IN VIOLATION OF CAL. LAB. CODE §
                                             226;
21                                           5. FAILURE TO PROVIDE MEAL AND
                                             REST PERIODS IN VIOLATION OF
22                                           CAL. LAB. CODE § 226.7 AND 512;
                                             6.  FAILURE TO PAY
23                                           COMPENSATION IN VIOLATION OF
                                             29 U.S.C. § 201, *et seq.*; and,
24                                           7.  LABOR CODE PRIVATE ATTORNEY
                                             GENERAL ACT [Labor Code § 2698];
25
                                             DEMAND FOR A JURY TRIAL
26
                                             Action Filed: August 4, 2008
27

28

Dockets.Justia.com

## INTRODUCTION

Plaintiffs David Walsh and David Kalua (collectively referred to herein as "PLAINTIFFS"), allege with particularity here upon information and belief, except for their own acts and knowledge, that PLAINTIFFS and other GNCS and IS&T Support Staff Members have a meritorious class claim for unpaid overtime wages as a result of Defendant's uniform practice of classifying GNCS and IS&T Support Staff Members as exempt from overtime wages based upon job title alone and without regard to the actual time worked and labor performed doing their assigned tasks as is Defendant's legal burden. The evidence will prove that Plaintiffs and other GNCS and IS&T Support Staff Members are primarily performing labor within a defined skill set in accordance with established protocol to manually install, configure, and replace Defendant's computer hardware and to troubleshoot on a 24/7 basis reported problems to keep the Defendant's GNCS and IS&T equipment operational. Had Defendant complied with the law and not so misclassified these employees, Defendant would have had to pay Plaintiff and the other GNCS and IS&T Support Staff Members their overtime wages due as required by law or hired additional personnel to perform these tasks.

## THE PARTIES

1.     Defendant Apple, Inc., (hereinafter referred to as "Apple" or "DEFENDANT"), is a California corporation. Apple's Corporate Headquarters is located in Silicon Valley in Cupertino, California. Many major functional groups of Apple are represented at these Cupertino headquarters, including Engineering, Marketing, Sales, Legal, Human Resources, and AppleCare groups. Apple also has substantial offices in Elk Grove, California.

2.     Apple conducted and continues to conduct substantial and regular business throughout California.

3.     Apple is engaged in the design, manufacture, and marketing of  personal

computers, portable digital music players, and mobile communication devices. Other products marketed by Apple include software, peripherals, and networking solutions. These products are sold worldwide via Apple's online stores and 124 retail stores, as well as through third-party wholesalers, resellers, and value-added resellers. In addition, Apple also sells a variety of third-party Macintosh ("Mac"), iPod and iPhone compatible products, including application software, printers, storage devices, speakers, headphones, and various other accessories and peripherals that are also available through Apple's online and retail stores. Together, Apple's products can generally be grouped under five product lines: 1) desktops, portables, iPod, other music related products and services 2) peripherals and other hardware 3) software 4) services and 5) other sales.

4.     In order to provide this wide array of products to millions of customers and potential customers worldwide, Apple employs many employees within the Global Network and Computing Services Group ("GNCS") and the Information Systems & Technology Group ("IS&T"). These groups service Apple's corporate systems, retail systems and related infrastructure. Within the GNCS and IS&T groups, Apple employs individuals with the common job titles of "Systems Engineers," "Data Center Systems Engineers," "WAN Network / Voice Engineers," "Network Engineers," "Retail Engineers," and "Information Systems Analyst," (collectively GNCS and IS&T Support Staff") who provide the labor for the installation, configuration, implementation, maintenance, troubleshooting, technical support, and upgrades of Apple's corporate systems, retail systems and other related computer systems and infrastructure. As a matter of course, technical problems often arise with these systems and infrastructure at all hours of the day and at all hours of the night. When this happens, HelpDesk or other similar trouble tickets are generated by end-users in the Apple GNCS and IS&T groups and sent to the GNCS and IS&T Support Staff Members who diagnose and troubleshoot the technical support issues as the problems arise on a 24/7 basis as instructed by the direction of their supervisors.

5.     Plaintiff David Walsh was hired by Apple in the state of California and

worked for Apple from April of 1995 to November of 2007 as a member of the GNCS and IS&T Support Staff.  Plaintiff David Kalua was hired by Apple in the state of California and worked for Apple from 2000 to 2007.  During the period 2000 through 2007, Plaintiff Kalua was employed by Apple as a member of the GNCS and IS&T Support Staff.

6.     When Plaintiff Walsh was initially hired, he was given the job title of Network Engineer and classified as exempt.  When Plaintiff Kalua was initially hired, he was given the job title of Information Systems Analyst and classified as exempt.  Plaintiff Kalua was subsequently given the job title Network Engineer and was classified as exempt. As GNCS and IS&T Support Staff Members, PLAINTIFFS' primary duties, and the primary duties of the other putative class members, consisted of providing the labor for the troubleshooting, installing, configuring and maintaining Apple's computer software and hardware and providing on-call support to Apple's GNCS and IS&T groups.  This work was performed in the DEFENDANT's home offices, data centers, and  retail stores, as the need arose by physically installing, physically configuring, and physically replacing and maintaining network equipment and by performing all tasks incident thereto.  The GNCS and IS&T Support Staff Members did not exercise any independent discretion, judgment, or make any management decisions with respect to matters of significance.  To the contrary, the work of the PLAINTIFFS and the other members of the putative class was to provide, on a daily basis, network support services to end-users in the Apple system in accordance with the management decisions and business policies established by Apple.  In fact, no installation, configuration or replacement of the network equipment was made by PLAINTIFFS or other members of the putative class without first obtaining approval from management.

7.     Throughout the day and into the night, PLAINTIFFS and the other GNCS and IS&T Support Staff Members would receive a multitude of HelpDesk or "trouble tickets" that requested diagnosis and troubleshooting of Apple's computer systems.  Coverage to respond to the tickets was required 24 hours per day, 7 days per week.  Responding to these

1  tickets was not only performed throughout PLAINTIFFS' and the other GNCS and IS&T

2  Support Staff Members' normal workday, but also pursuant to an on-call rotation by which

3  PLAINTIFFS and the other GNCS and IS&T Support Staff Members were responsible to

4  respond to the tickets and perform troubleshooting work to resolve the problems at issue at

5  all hours of the night.  Apple required PLAINTIFFS and the other GNCS and IS&T Support

6  Staff Members to regularly work many overtime hours without paying PLAINTIFFS and the

7  other GNCS and IS&T Support Staff Members overtime compensation because Apple had

8  initially classified PLAINTIFFS and the other GNCS and IS&T Support Staff Members as

9  exempt.  Although PLAINTIFFS and the other GNCS and IS&T Support Staff Members

10 performed non-exempt work that regularly required the performance of manual labor, such

11 as racking, stacking, wiring and physically putting into place computer and network

12 hardware, Apple took no steps to analyze the services actually performed and the time

13 actually spent by PLAINTIFFS and the other GNCS and IS&T Support Staff Members on

14 each task to ensure that the classification of PLAINTIFFS and the other GNCS and IS&T

15 Support Staff Members as exempt was, in fact, properly based on the primary job duties

16 each of them actually performed as was Defendant's legal burden.

17

18                              **THE CONDUCT**

19        8.      Apple does not have any policies or procedures in place that catalogue,

20 inventory, list, or otherwise compile the actual time worked and labor that is actually

21 performed by the GNCS and IS&T Support Staff Members.  The classification of these

22 employees as exempt is deceptively based on job title alone, rather than the expected time

23 and labor that is to be provided by the GNCS and IS&T Support Staff Members in

24 performing various assigned tasks after they are hired and placed into their particular

25 maintenance and support teams.  Thereafter, no reevaluation or reclassification analysis

26 regarding the propriety of their exempt status is performed by Apple, because the company's

27 business model is to initially classify these employees as exempt based on job title alone,

28

regardless of the amount of time spent and the actual labor performed by them on various tasks during the course of their employment.

9. Neither PLAINTIFFS nor any other GNCS and IS&T Support Staff Member was primarily engaged in work of a type that was or now is directly related to management policies or general business operations, when giving these words a fair but narrow construction. To the contrary, the work of a GNCS and IS&T Support Staff Member is labor wherein PLAINTIFFS and the other GNCS and IS&T Support Staff Members are primarily engaged in the day to day business of the DEFENDANT to keep the networks that perform the day to day functions of DEFENDANT's business operating in accordance with the management policies established by DEFENDANT's management.

10. PLAINTIFFS and the other GNCS and IS&T Support Staff Members labored as working members on the production side of DEFENDANT's business. The primary work of PLAINTIFFS and the other GNCS and IS&T Support Staff Members were and are to perform manual labor in order to install, configure and replace DEFENDANT's hardware and equipment and to troubleshoot reported problems to keep the GNCS and IS&T groups operational. As a result of this work, PLAINTIFFS and the other GNCS and IS&T Support Staff Members were primarily involved in, day to day, repairing the network infrastructure, server infrastructure and enhancements, installing and configuring new hardware and software, and replacing routers and switches as necessary. This work was executed primarily by the performance of manual labor within a defined skill set, involving upgrades of the operating systems and networks, the routing of cables, switches, and the electrical power systems supporting such infrastructure to keep the Network running and the performance of day to day operational maintenance of the infrastructure, pursuant to known protocol followed by these employees. Physical demands of the position include standing, sitting, walking, bending, lifting, and moving computer items, some of which weigh as much as one hundred (100) pounds, as needed. PLAINTIFFS and the other GNCS and IS&T Support Staff Members performed these tasks either from within the DEFENDANT's home

offices, data centers or by traveling to off-site retail stores owned and operated by the DEFENDANT. In performing the herein alleged duties and work, PLAINTIFFS and the other GNCS and IS&T Support Staff Members were improperly classified by DEFENDANT as exempt from overtime pay. As a result, although PLAINTIFFS and the other GNCS and IS&T Support Staff Members regularly worked more than eight (8) hours a day and/or forty (40) hours a week and also on the seventh (7th) day of a workweek, they were not properly compensated for these hours of work as required by law.

11. In addition to the job functions performed during the regular working hours, PLAINTIFFS and the other GNCS and IS&T Support Staff Members were required to make changes to the network equipment that could only be effectuated after hours according to DEFENDANT's policies. This was done to avoid disruption of the DEFENDANT's day to day business activities while the system was in use during regular business houses. During this time, after a regularly worked eight (8) hour work day of manual labor, PLAINTIFFS and the other GNCS and IS&T Support Staff Members were required to install, configure, replace and/or troubleshoot DEFENDANT's network systems well into the night. These same restrictions and obligations were also borne by the other members of the class similarly situated to GNCS and IS&T Support Staff Members. Further, PLAINTIFFS and the other GNCS and IS&T Support Staff Members were also required to remain on-call pursuant to the DEFENDANT's "on-call" rotation plan (the "ROTATIONS"). According to the ROTATIONS, each member of the Network Support Team, including the PLAINTIFFS, took turns performing on-call duties approximately every six (6) weeks. The performance of each ROTATION lasted for an entire seven (7) day workweek. During this time, after returning home from an eight (8) hour work day, PLAINTIFFS and the other GNCS and IS&T Support Staff Members were required to remain on stand-by for the entire night, every night of the week, for the entire week without compensation. After working an entire workday on the Friday of the ROTATION, PLAINTIFFS and the other GNCS and IS&T Support Staff Members were also required to remain on call twenty-four (24) hours a day

from Friday evening until Monday morning, when they would report to the employer's work site for their "regular" workday. The effect of DEFENDANT's on-call rotational system is that, during the team members' rotation, the employee is subject to receiving a call and is effectively precluded from engaging in any activity that would hinder his ability to immediately respond to the technical support call. This system places severe limitations on the activities of PLAINTIFFS and the members of this team and accordingly, their time is effectively indentured for the benefit of the DEFENDANT. Each night of every ROTATION, the movements of PLAINTIFFS and the other GNCS and IS&T Support Staff Members were severely geographically restricted by the on-call responsibilities because each night, PLAINTIFFS and the other GNCS and IS&T Support Staff Members were subjected to frequent calls in conjunction with the unduly restrictive fixed, response time-limit that necessitated an answer to each call. Further, PLAINTIFFS and the other GNCS and IS&T Support Staff Members were extremely restricted in the kind and extent of personal activities they could engage in. Many personal activities, including, but not limited to, taking their families to see a movie in a theater, taking their families to dinner at a restaurant, engaging in organized sporting activities, participating in weddings, supplementing their incomes with a second job, and/or attending to medical issues with the assistance of a doctor, dentist, or other professional, had to be avoided entirely. Another inconvenience imposed upon PLAINTIFFS and the other GNCS and IS&T Support Staff Members was the inability to provide themselves with an entire night of uninterrupted sleep, as the technical support calls often came in past eleven o'clock at night (11:00 p.m.). Despite these demanding conditions imposed by DEFENDANT, regular and overtime compensation for (a) the hours work was performed during the ROTATIONS and (b) the "on-call" hours worked as time spent, wherein PLAINTIFFS and the other GNCS and IS&T Support Staff Members were so restricted during the ROTATIONS as to be effectively engaged to wait, were withheld by DEFENDANT from PLAINTIFFS and the other GNCS and IS&T Support Staff Members.

12.     PLAINTIFFS bring this class action on behalf of themselves and a class consisting of all individuals who are or previously were employed by Defendant Apple, Inc. as GNCS and IS&T Support Staff Members (the "CALIFORNIA CLASS" or "CLASS") in California during the Class Period.  The GNCS and IS&T Support Staff Members included in this class definition are those Apple employees within GNCS or IS&T groups who worked in one or more position with the title "Network Engineer," "Systems Engineer," "Data Center Systems Engineer," "WAN Network / Voice Engineer," "Retail Engineer," and/or "Information Systems Analyst."   The class period applicable to this CALIFORNIA CLASS is defined as the period beginning August 4, 2004 (four years prior to the filing of this Complaint) and ending on a future date as determined by the Court (the "CLASS PERIOD").  As a matter of company policy and practice,  DEFENDANT has unlawfully, unfairly and/or deceptively classified every GNCS and IS&T Support Staff Member as exempt based on job title alone, failed to pay the required overtime compensation and otherwise failed to comply with all labor laws with respect to these GNCS and IS&T Support Staff Members.

13.     By reason of this uniform conduct applicable to PLAINTIFFS and all CALIFORNIA CLASS members, DEFENDANT committed acts of unfair competition in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (the "UCL"), by engaging in a company-wide policy and procedure which failed to correctly determine whether the PLAINTIFFS and the CALIFORNIA CLASS of similarly situated GNCS and IS&T Support Staff Members were properly classified as exempt.  The proper classification of these employees is the DEFENDANT's burden.  As a result of DEFENDANT's intentional disregard of the obligation to meet this burden, DEFENDANT failed to properly calculate and/or pay all required overtime compensation for work performed by the members of the CALIFORNIA CLASS and violated the Fair Labor Standards Act and the California Labor Code and regulations promulgated thereunder as herein alleged.

14. PLAINTIFFS and all members of the CALIFORNIA CLASS are and were uniformly classified and treated by DEFENDANT as exempt at the time of hire and thereafter, DEFENDANT failed to take the proper steps to determine whether PLAINTIFFS, and the other members of the similarly-situated CALIFORNIA CLASS, were properly classified under Industrial Welfare Commission Wage Order 4-2001 and Cal. Lab. Code §§ 510 *et seq.* and Section 13 of the Fair Labor Standards Act (the "FLSA") as exempt from applicable federal and state labor laws. Since DEFENDANT affirmatively and wilfully had in place a business policy, practice and procedure which failed to allow for an accurate determination of whether exempting PLAINTIFFS and the members of the CALIFORNIA CLASS complied with either the FLSA or the California Labor Laws, DEFENDANT's practices violated and continue to violate the law. In addition, the DEFENDANT acted deceptively by falsely and fraudulently telling PLAINTIFFS and each member of the CALIFORNIA CLASS that they were exempt from overtime pay when DEFENDANT knew or should have known that this statement was false and not based on known facts. DEFENDANT also acted unfairly by violating the labor laws of the United States and California. As a result of this policy and practice, DEFENDANT violated the UCL.

15. As a result of DEFENDANT's UCL violation, PLAINTIFFS, on behalf of themselves and the CALIFORNIA CLASS, seek disgorgement of DEFENDANT's ill-gotten gains into a fluid fund to recover all the money that DEFENDANT was required by law to pay for work performed, but failed to pay, to PLAINTIFFS and all other CALIFORNIA CLASS members and restitution to PLAINTIFFS and the CALIFORNIA CLASS. PLAINTIFFS also seek penalties and all other relief available to him and other similarly situated employees under California law. PLAINTIFFS also seek declaratory relief finding that the employment practices and policies of the DEFENDANT violate California law and injunctive relief to enjoin the DEFENDANT from continuing to engage in such employment practices.

16. PLAINTIFFS and the members of the CALIFORNIA CLASS have no plain,

speedy or adequate remedy at law and will suffer irreparable injury if DEFENDANT is permitted to continue to engage in the unlawful acts and practices herein alleged. The illegal conduct alleged herein is continuing and to prevent future injury and losses, and to avoid a multiplicity of lawsuits, PLAINTIFFS are entitled to an injunction and other equitable relief, on behalf of himself and the CLASS, to prevent and enjoin such practices. PLAINTIFFS therefore request a preliminary and/or permanent injunction as the DEFENDANT provides no indication that DEFENDANT will not continue such wrongful activity in the future, along with restitution, penalties, interest, compensation and other equitable relief as provided by law.

## THE CALIFORNIA CLASS

17.     PLAINTIFFS bring this class action on behalf of themselves and all individuals who are or previously were employed by DEFENDANT as GNCS and IS&T Support Staff Members in California during the period four years prior to the filing of this Complaint and ending on the date as determined by the Court ("CALIFORNIA CLASS PERIOD" or "CLASS PERIOD"), who were uniformly classified by Defendant as exempt based on job title alone (the "CALIFORNIA CLASS"). The CALIFORNIA CLASS Members included in this class definition are those Apple employees within GNCS or IS&T groups who worked in a position entitled "Network Engineer," "Systems Engineer," "Data Center Systems Engineer," "WAN Network / Voice Engineers," "Retail Engineer," and/or "Information Systems Analyst." To the extent equitable tolling operates to toll claims by the CALIFORNIA CLASS against DEFENDANT, the CLASS PERIOD should be adjusted accordingly.

18.     DEFENDANT, as a matter of corporate policy, practice and procedure, and in violation of the applicable Labor Code, Industrial Welfare Commission ("IWC") Wage Order Requirements, and the applicable provisions of California law, intentionally, knowingly, and wilfully, engaged in a practice whereby DEFENDANT unfairly, unlawfully,

1  and deceptively failed to institute a practice to ensure that the employees employed in a

2  position as a GNCS and IS&T Support Staff Member were properly classified as exempt

3  from the requirements of California Labor Code §§ 510, *et seq.* There may be other

4  employees who are similarly situated to the GNCS and IS&T Support Staff Members but

5  have different position titles which are currently unknown. To the extent such similarly

6  situated employees are discovered, PLAINTIFFS will amend the class definition

7  accordingly to include such additional position titles.

8      19.    DEFENDANT has the burden of proof that each and every employee is

9  properly classified as exempt from the requirements of the Cal. Lab. Code §§ 510, *et seq.*

10  DEFENDANT, however, as a matter of uniform and systematic policy and procedure failed

11  to have in place during the CALIFORNIA CLASS PERIOD and still fails to have in place a

12  policy or practice to make any individual determination of exemption for any California

13  Class Members so as to satisfy their burden. Rather, the DEFENDANT's uniform policy

14  and practice in place at all times during the CALIFORNIA CLASS PERIOD and currently

15  in place is to systematically classify each and every California Class Member as exempt

16  from the requirements of the California Labor Code §§ 510, *et seq.*, based on job title alone.

17  This common business practice applicable to each and every California Class Member can

18  be adjudicated on a classwide basis as unlawful, unfair, and/or deceptive under Cal.

19  Business & Professions Code §17200, *et seq.* (the "UCL") as causation, damages, and

20  reliance are not elements of this claim.

21      20.    At no time before, during or after the PLAINTIFFS' employment with

22  Apple was any CALIFORNIA CLASS Member reclassified as non-exempt from the

23  applicable requirements of California Labor Code §§ 510, *et seq.* after each California Class

24  Member was initially, uniformly, and systematically classified as exempt upon being hired.

25      21.    Any individual declarations of any California Class Members offered at this

26  time purporting to indicate that one or more GNCS and IS&T Support Staff Members may

27  have been properly classified is of no force or affect absent evidence that DEFENDANT

28

---

had a uniform system in place to satisfy DEFENDANT's burden that DEFENDANT, at all times had in effect a policy and practice to determine whether the California Class Members were being properly classified as exempt pursuant to Cal. Lab. Code §§ 510, *et seq.* Absent proof of such a system, DEFENDANT's business practice is uniformly unlawful, unfair and/or deceptive under the UCL and may be so adjudicated on a classwide basis. As a result of the UCL violations, the PLAINTIFFS and the California Class Members are entitled to have this unfair business practice enjoined and to cause DEFENDANT to disgorge their ill-gotten gains into a fluid fund and to restitute these funds to the PLAINTIFFS and the California Class Members according to proof.

22. The CALIFORNIA CLASS, numbering more than 50 members, is so numerous that joinder of all CALIFORNIA CLASS Members is impracticable.

23. DEFENDANT uniformly violated the rights of the CALIFORNIA CLASS under California law by:

(a) Violating the California Unfair Competition Laws, Cal. Bus. & Prof. Code § 17200, *et seq.*, by unlawfully, unfairly and/or deceptively having in place company policies, practices and procedures that uniformly classified PLAINTIFFS and the members of the CALIFORNIA CLASS as exempt based on job title alone;

(b) Committing an act of unfair competition in violation of the California Unfair Competition Laws, Cal. Bus. & Prof. Code § 17200 *et seq.*, by unlawfully, unfairly, and/or deceptively failing to have in place a company policy, practice and procedure that accurately determined the percentages of time PLAINTIFFS and the members of the CALIFORNIA CLASS actually spent performing non-exempt, as compared to exempt, job duties;

(c) Committing an act of unfair competition in violation of the California Unfair Competition Laws, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, by

having in place a company policy, practice and procedure that failed to reclassify as non-exempt those members of the CALIFORNIA CLASS whose actual job duties are primarily comprised non-exempt job functions;

(d)     Violating Cal. Lab. Code §§510, *et seq.* by failing to pay the correct overtime pay to PLAINTIFFS and the members of the CALIFORNIA CLASS who were improperly classified as exempt;

(e)     Violating Cal. Lab. Code §§ 226.7 and 512, by failing to provide PLAINTIFFS and the members of the CALIFORNIA CLASS who were improperly classified as exempt with meal and rest periods;

(f)     Violating Cal. Lab. Code § 226 by failing to provide PLAINTIFFS and the members of the CALIFORNIA CLASS who were improperly classified as exempt with an accurate itemized statement in writing showing the gross wages earned, the net wages earned, all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee; and,

(g)     Violating Cal. Lab. Code § 203 by failing to provide restitution of wages owed to the members of the CALIFORNIA CLASS who were improperly classified as exempt and who have terminated their employment.

24.     This Class Action meets the statutory prerequisites for the maintenance of a Class Action as set forth in Fed. R. Civ. Proc. 23(b)(2) and/or (3) in that:

(a)     The persons who comprise the CALIFORNIA CLASS are so numerous that the joinder of all such persons is impracticable and the disposition of their claims as a class will benefit the parties and the Court;

(b)     Nearly all factual, legal, statutory, declaratory and injunctive relief issues that are raised in this Complaint are common to the

CALIFORNIA CLASS will apply uniformly to every member of the
CALIFORNIA CLASS;

(c)     The claims of the representative PLAINTIFFS are typical of the claims
of each member of the CALIFORNIA CLASS.  PLAINTIFFS, like all
other members of the CALIFORNIA CLASS, were initially classified
as exempt upon hiring based on job title alone and labored under
DEFENDANT's systematic procedure that failed to analyze the job
functions actually performed in order to determine whether the
classification was properly made.  PLAINTIFFS sustained economic
injury as a result of DEFENDANT's employment practices.
PLAINTIFFS and the members of the CALIFORNIA CLASS were and
are similarly or identically harmed by the same unlawful, deceptive,
unfair and pervasive pattern of misconduct engaged in by the
DEFENDANT by deceptively advising all GNCS and IS&T Support
Staff Members that they were exempt from overtime wages based on
job title alone, and unfairly failing to pay overtime to employees who
were improperly classified as exempt.

(d)     The representative PLAINTIFFS will fairly and adequately represent
and protect the interest of the CALIFORNIA CLASS, and has retained
counsel who are competent and experienced in Class Action litigation.
There are no material conflicts between the claims of the representative
PLAINTIFFS and the members of the CALIFORNIA CLASS that
would make class certification inappropriate.  Counsel for the
CALIFORNIA CLASS will vigorously assert the claims of all Class
Members.

25.     In addition to meeting the statutory prerequisites to a Class Action, this action
is properly maintained as a Class Action pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3),

1    in that:

2        (a)    Without class certification and determination of declaratory, injunctive,

3               statutory and other legal questions within the class format, prosecution

4               of separate actions by individual members of the CALIFORNIA

5               CLASS will create the risk of:

6               1)    Inconsistent or varying adjudications with respect to individual

7                     members of the CALIFORNIA CLASS which would establish

8                     incompatible standards of conduct for the parties opposing the

9                     CALIFORNIA CLASS; and/or,

10              2)    Adjudication with respect to individual members of the

11                    CALIFORNIA CLASS which would as a practical matter be

12                    dispositive of interests of the other members not party to the

13                    adjudication or substantially impair or impede their ability to

14                    protect their interests.

15       (b)    The parties opposing the CALIFORNIA CLASS have acted or refused

16              to act on grounds generally applicable to the CALIFORNIA CLASS,

17              making appropriate class-wide relief with respect to the CALIFORNIA

18              CLASS as a whole in that the DEFENDANT uniformly classified and

19              treated the GNCS and IS&T Support Staff Members as exempt and,

20              thereafter, uniformly failed to take proper steps to determine whether

21              the GNCS and IS&T Support Staff Members  were properly classified

22              as exempt, and thereby denied these employees overtime wages as

23              required by law;

24              1)    With respect to the First Cause of Action, the final relief on

25                    behalf of the CALIFORNIA CLASS sought does not relate

26                    exclusively to restitution because through this claim

27                    PLAINTIFFS seek declaratory relief holding that the

28

1                     DEFENDANT's policy and practices constitute unfair

2                     competition, along with declaratory relief, injunctive relief, and

3                     incidental equitable relief as may be necessary to prevent and

4                     remedy the conduct declared to constitute unfair competition;

5    (c)    Common questions of law and fact exist as to the members of the

6          CALIFORNIA CLASS, with respect to the practices and violations of

7          California Law as listed above, and predominate over any question

8          affecting only individual members, and a Class Action is superior to

9          other available methods for the fair and efficient adjudication of the

10        controversy, including consideration of:

11       1)    The interests of the members of the CALIFORNIA CLASS in

12             individually controlling the prosecution or defense of separate

13             actions in that the substantial expense of individual actions will

14             be avoided to recover the relatively small amount of economic

15             losses sustained by the individual CALIFORNIA CLASS

16             members when compared to the substantial expense and burden

17             of individual prosecution of this litigation;

18       2)    Class certification will obviate the need for unduly duplicative

19             litigation that would create the risk of:

20             A.    Inconsistent or varying adjudications with respect to

21                  individual members of the CALIFORNIA CLASS, which

22                  would establish incompatible standards of conduct for the

23                  DEFENDANT; and/or,

24             B.    Adjudications with respect to individual members of the

25                  CALIFORNIA CLASS would as a practical matter be

26                  dispositive of the interests of the other members not

27                  parties to the adjudication or substantially impair or

28

| 1 | impede their ability to protect their interests; |
|---|---|
| 2 | 3) In the context of wage litigation because a substantial number of |
| 3 | individual class members will avoid asserting their legal rights |
| 4 | out of fear of retaliation by DEFENDANT, which may |
| 5 | adversely affect an individual's job with DEFENDANT or with |
| 6 | a subsequent employer, the Class Action is the only means to |
| 7 | assert their claims through a representative; and, |
| 8 | 4) A class action is superior to other available methods for the fair |
| 9 | and efficient adjudication of this litigation because class |
| 10 | treatment will obviate the need for unduly and unnecessary |
| 11 | duplicative litigation that is likely to result in the absence of |
| 12 | certification of this action pursuant to Fed. R. Civ. Proc. |
| 13 | 23(b)(3). |
| 14 | 26. This Court should permit this action to be maintained as a Class Action |
| 15 | pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3) because: |
| 16 | (a) The questions of law and fact common to the CALIFORNIA CLASS |
| 17 | predominate over any question affecting only individual members |
| 18 | because the DEFENDANT's employment practices were uniform and |
| 19 | systematically applied with respect to the CALIFORNIA CLASS; |
| 20 | (b) A Class Action is superior to any other available method for the fair |
| 21 | and efficient adjudication of the claims of the members of the |
| 22 | CALIFORNIA CLASS because in the context of employment litigation |
| 23 | a substantial number of individual Class members will avoid asserting |
| 24 | their rights individually out of fear of retaliation or adverse impact on |
| 25 | their employment; |
| 26 | (c) The members of the CALIFORNIA CLASS are so numerous that it is |
| 27 | impractical to bring all members of the CALIFORNIA CLASS before |
| 28 | |

1      the Court;

2      (d)    PLAINTIFFS, and the other CALIFORNIA CLASS members, will not

3             be able to obtain effective and economic legal redress unless the action

4             is maintained as a Class Action;

5      (e)    There is a community of interest in obtaining appropriate legal and

6             equitable relief for the acts of unfair competition, statutory violations

7             and other improprieties, and in obtaining adequate compensation for the

8             damages and injuries which DEFENDANT's actions have inflicted

9             upon the CALIFORNIA CLASS;

10     (f)    There is a community of interest in ensuring that the combined assets of

11            DEFENDANT are sufficient to adequately compensate the members of

12            the CALIFORNIA CLASS for the injuries sustained;

13     (g)    DEFENDANT has acted or refused to act on grounds generally

14            applicable to the CALIFORNIA CLASS, thereby making final class-

15            wide relief appropriate with respect to the CALIFORNIA CLASS as a

16            whole;

17     (h)    The members of the CALIFORNIA CLASS are readily ascertainable

18            from the business records of DEFENDANT.  The CALIFORNIA

19            CLASS consists of all DEFENDANT's GNCS and IS&T Support Staff

20            Members employed in California during the CALIFORNIA CLASS

21            PERIOD; and,

22     (i)    Class treatment provides manageable judicial treatment calculated to

23            bring a efficient and rapid conclusion to all litigation of all wage and

24            hour related claims arising out of the conduct of DEFENDANT as to

25            the members of the CALIFORNIA CLASS.

26     27.    DEFENDANT maintains records from which the Court can ascertain and

27     identify by job title each of DEFENDANT's employees who as have been systematically,

28

1  intentionally and uniformly subjected to DEFENDANT's corporate policy, practices and

2  procedures as herein alleged. PLAINTIFFS will seek leave to amend the complaint to

3  include any additional job titles of employees similarly situated to GNCS and IS&T Support

4  Staff Members when they have been identified.

5

6  **THE CALIFORNIA LABOR SUB-CLASS**

7      28.    PLAINTIFFS further bring the Second, Third, Fourth, and Fifth causes of

8  action on behalf of a subclass which consists of all members of the CALIFORNIA CLASS

9  who were employed by Defendant Apple who were classified by Defendant as exempt and

10  who performed work in excess of eight (8) hours in one day and/or forty (40) hours in one

11  week and/or hours on the seventh (7th) consecutive day of a workweek and did not receive

12  overtime compensation as required by Labor Code Section 510 and Wage Order 4-2001 (the

13  "CALIFORNIA LABOR SUBCLASS") pursuant to Fed. R. Civ. Proc. 23(b)(3).

14      29.    Apple, as a matter of corporate policy, practice and procedure, and in violation

15  of the applicable California Labor Code ("Labor Code"), and Industrial Welfare

16  Commission ("IWC") Wage Order Requirements intentionally, knowingly, and wilfully, on

17  the basis of job title alone and without regard to the actual overall requirements of the job,

18  systematically classified  PLAINTIFFS and other members of the CALIFORNIA CLASS

19  and CALIFORNIA LABOR SUBCLASS as exempt from overtime wages and other labor

20  laws in order to avoid the payment of overtime wages by misclassifying their positions as

21  exempt from overtime wages and other labor laws.  To the extent equitable tolling operates

22  to toll claims by the CALIFORNIA LABOR SUBCLASS against Apple,  the

23  CALIFORNIA LABOR SUB-CLASS should be adjusted accordingly.

24      30.    To the extent that Apple has created a number of job levels and/or job titles for

25  GNCS and IS&T Support Staff Members to create the superficial appearance of a number of

26  unique jobs, when in fact, these jobs are substantially similar, these job titles can be easily

27  grouped together for the purpose of determining whether they are exempt from overtime

28

wages. Apple has uniformly misclassified these CALIFORNIA CLASS and CALIFORNIA LABOR SUBCLASS members as exempt and denied them overtime wages and other benefits to which non-exempt employees are entitled in order to unfairly cheat the competition and unlawfully profit. PLAINTIFFS will seek leave to amend the complaint to include any additional job titles of employees similarly situated to GNCS and IS&T Support Staff Members when they have been identified.

31. Apple maintains records from which the Court can ascertain and identify by job title each of Apple's employees who as CALIFORNIA CLASS and CALIFORNIA LABOR SUBCLASS members have been systematically, intentionally and uniformly misclassified as exempt as a matter of DEFENDANT's corporate policy, practices and procedures.

32. The CALIFORNIA LABOR SUB-CLASS is so numerous that joinder of all GNCS and IS&T Support Staff Members is impracticable.

33. Common questions of law and fact exist as to members of the CALIFORNIA LABOR SUB-CLASS, including, but not limited, to the following:

        (a)    Whether DEFENDANT unlawfully failed to pay overtime compensation to members of the CALIFORNIA LABOR SUB-CLASS in violation of the California Labor Code and applicable regulations and California Wage Order 4-2001;

        (b)    Whether the members of the CALIFORNIA LABOR SUB-CLASS are non-exempt employees entitled to overtime compensation for overtime hours worked under the overtime pay requirements of California Law;

        (c)    Whether DEFENDANT's policy and practice of classifying the SUBCLASS members as exempt from overtime compensation and failing to pay the CALIFORNIA LABOR SUB-CLASS members overtime violate applicable provisions of California law;

        (d)    Whether DEFENDANT unlawfully failed to keep and furnish

1      California members with accurate records of hours worked;

2      (e)    Whether DEFENDANT's policy and practice of failing to pay

3             members of the CALIFORNIA LABOR SUB-CLASS all wages when

4             due within the time required by law after their employment ended

5             violates California law;

6      (f)    Whether DEFENDANT unlawfully failed to provide all required meal

7             and rest periods to the members of the CALIFORNIA LABOR SUB-

8             CLASS; and,

9      (g)    Whether DEFENDANT unlawfully failed to tender full payment and/or

10            restitution of wages owed or in the manner required by California law

11            to the members of the CALIFORNIA LABOR SUBCLASS who have

12            terminated their employment; and,

13     (h)    The proper measure of damages and penalties owed to the members of

14            the CALIFORNIA LABOR SUB-CLASS.

15     34.    DEFENDANT, as a matter of corporate policy, practice and procedure,

16     classified all GNCS and IS&T Support Staff Members as exempt from overtime wages and

17     other labor laws.  All GNCS and IS&T Support Staff Members, including the PLAINTIFFS,

18     performed the same primary functions and were paid by DEFENDANT according to

19     uniform and systematic company procedures, which, as alleged herein above, failed to

20     correctly pay overtime compensation. This business practice was uniformly applied to each

21     and every member of the CALIFORNIA LABOR SUBCLASS, and therefore, the propriety

22     of this conduct can be adjudicated on a classwide basis.

23     35.    DEFENDANT violated the rights of the CALIFORNIA LABOR SUBCLASS

24     under California law by:

25     (a)    Violating Cal. Lab. Code §§ 510, *et seq*. by misclassifying and thereby

26            failing to pay PLAINTIFFS and the members of the CALIFORNIA

27            LABOR SUBCLASS the correct overtime pay for a work day longer

28

| 1 | than eight (8) hours and/or a workweek longer than forty (40) hours, |
| 2 | and also for all hours worked on the seventh (7th) day of a workweek |
| 3 | for which DEFENDANT is liable pursuant to Cal. Lab. Code § 1194; |
| 4 | (b) Violating Cal. Lab. Code § 203, which provides that when an employee |
| 5 | is discharged or quits from employment, the employer must pay the |
| 6 | employee all wages due without abatement, by failing to tender full |
| 7 | payment and/or restitution of wages owed or in the manner required by |
| 8 | California law to the members of the CALIFORNIA LABOR |
| 9 | SUBCLASS who have terminated their employment; |
| 10 | (c) Violating Cal. Lab. Code §§ 226.7 and 512, by failing to provide |
| 11 | PLAINTIFFS and the members of the CALIFORNIA LABOR CLASS |
| 12 | who were improperly classified as exempt with meal and rest periods; |
| 13 | (d) Violating Cal. Lab. Code § 226 by failing to provide PLAINTIFFS and |
| 14 | the members of the CALIFORNIA LABOR CLASS who were |
| 15 | improperly classified as exempt with an accurate itemized statement in |
| 16 | writing showing the gross wages earned, the net wages earned, all |
| 17 | applicable hourly rates in effect during the pay period and the |
| 18 | corresponding number of hours worked at each hourly rate by the |
| 19 | employee; and, |
| 20 | 36. This Class Action meets the statutory prerequisites for the maintenance of a |
| 21 | Class Action as set forth in Fed. R. Civ. Proc. 23(b)(3), in that: |
| 22 | (a) The persons who comprise the CALIFORNIA LABOR SUBCLASS |
| 23 | are so numerous that the joinder of all such persons is impracticable |
| 24 | and the disposition of their claims as a class will benefit the parties and |
| 25 | the Court; |
| 26 | (b) Nearly all factual, legal, statutory, declaratory and injunctive relief |
| 27 | issues that are raised in this Complaint are common to the |
| 28 | |

CALIFORNIA LABOR SUBCLASS and will apply uniformly to every member of the CALIFORNIA LABOR SUBCLASS;

(c)    The claims of the representative PLAINTIFFS are typical of the claims of each member of the CALIFORNIA LABOR SUBCLASS. PLAINTIFFS, like all other members of the CALIFORNIA LABOR SUBCLASS, performed primarily non-exempt job functions, a significant amount of which required the performance of non-office, manual labor, and was improperly classified as exempt and denied overtime pay as a result of DEFENDANT's systematic classification practices. PLAINTIFFS and all other members of the CALIFORNIA LABOR SUBCLASS sustained economic injuries arising from DEFENDANT's violations of the laws of California; and,

(d)    The representative PLAINTIFFS will fairly and adequately represent and protect the interest of the CALIFORNIA LABOR SUBCLASS, and has retained counsel who are competent and experienced in Class Action litigation. There are no material conflicts between the claims of the representative PLAINTIFFS and the members of the CALIFORNIA LABOR SUBCLASS that would make class certification inappropriate. Counsel for the CALIFORNIA LABOR SUBCLASS will vigorously assert the claims of all Class Members.

37.    In addition to meeting the statutory prerequisites to a Class Action, this action is properly maintained as a Class Action pursuant to Fed. R. Civ. Proc. 23(b)(3), in that:

(a)    Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the CALIFORNIA LABOR SUBCLASS will create the risk of:

1)    Inconsistent or varying adjudications with respect to individual

| | |
|---|---|
| 1 | members of the CALIFORNIA LABOR SUBCLASS which |
| 2 | would establish incompatible standards of conduct for the |
| 3 | parties opposing the CALIFORNIA LABOR SUBCLASS; or, |
| 4 | 2) Adjudication with respect to individual members of the |
| 5 | CALIFORNIA LABOR SUBCLASS which would as a practical |
| 6 | matter be dispositive of interests of the other members not party |
| 7 | to the adjudication or substantially impair or impede their ability |
| 8 | to protect their interests. |
| 9 | (b) The parties opposing the CALIFORNIA LABOR SUBCLASS have |
| 10 | acted or refused to act on grounds generally applicable to the |
| 11 | CALIFORNIA SUBCLASS, making appropriate class-wide relief with |
| 12 | respect to the SUBCLASS as a whole in that the DEFENDANT |
| 13 | uniformly classified and treated the CALIFORNIA LABOR |
| 14 | SUBCLASS Members as exempt and, thereafter, uniformly failed to |
| 15 | take proper steps to determine whether the CALIFORNIA LABOR |
| 16 | SUBCLASS Members were properly classified as exempt, and thereby |
| 17 | denied these employees overtime wages as required by law; |
| 18 | (c) Common questions of law and fact predominate as to the members of |
| 19 | the CALIFORNIA LABOR SUBCLASS, with respect to the practices |
| 20 | and violations of California Law as listed above, and predominate over |
| 21 | any question affecting only individual members, and a Class Action is |
| 22 | superior to other available methods for the fair and efficient |
| 23 | adjudication of the controversy, including consideration of: |
| 24 | 1) The interests of the members of the CALIFORNIA LABOR |
| 25 | SUBCLASS in individually controlling the prosecution or |
| 26 | defense of separate actions in that the substantial expense of |
| 27 | individual actions will be avoided to recover the relatively small |
| 28 | |

1   amount of economic losses sustained by the individual

2   CALIFORNIA LABOR SUBCLASS members when compared

3   to the substantial expense and burden of individual prosecution

4   of this litigation;

5   2)   Class certification will obviate the need for unduly duplicative

6   litigation that would create the risk of:

7   A.   Inconsistent or varying adjudications with respect to

8   individual members of the CALIFORNIA LABOR

9   SUBCLASS, which would establish incompatible

10  standards of conduct for the DEFENDANT; and/or,

11  B.   Adjudications with respect to individual members of the

12  CALIFORNIA LABOR SUBCLASS would as a practical

13  matter be dispositive of the interests of the other members

14  not parties to the adjudication or substantially impair or

15  impede their ability to protect their interests;

16  3)   In the context of wage litigation because a substantial number of

17  individual class members will avoid asserting their legal rights

18  out of fear of retaliation by DEFENDANT, which may

19  adversely affect an individual's job with DEFENDANT or with

20  a subsequent employer, the Class Action is the only means to

21  assert their claims through a representative; and,

22  4)   A class action is superior to other available methods for the fair

23  and efficient adjudication of this litigation because class

24  treatment will obviate the need for unduly and unnecessary

25  duplicative litigation that is likely to result in the absence of

26  certification of this action pursuant to Fed. R. Civ. Proc.

27  23(b)(3).

28

38.     This Court should permit this action to be maintained as a Class Action pursuant to Fed. R. Civ. Proc. 23(b)(3) because:

(a)     The questions of law and fact common to the CALIFORNIA LABOR SUBCLASS predominate over any question affecting only individual members;

(b)     A Class Action is superior to any other available method for the fair and efficient adjudication of the claims of the members of the CALIFORNIA LABOR SUBCLASS because in the context of employment litigation a substantial number of individual Class members will avoid asserting their rights individually out of fear of retaliation or adverse impact on their employment;

(c)     The members of the CALIFORNIA LABOR SUBCLASS are so numerous that it is impractical to bring all members of the CALIFORNIA LABOR SUBCLASS before the Court;

(d)     PLAINTIFFS, and the other CALIFORNIA LABOR SUBCLASS members, will not be able to obtain effective and economic legal redress unless the action is maintained as a Class Action;

(e)     There is a community of interest in obtaining appropriate legal and equitable relief for the acts of unfair competition, statutory violations and other improprieties, and in obtaining adequate compensation for the damages and injuries which DEFENDANT's actions have inflicted upon the CALIFORNIA LABOR SUBCLASS;

(f)     There is a community of interest in ensuring that the combined assets of DEFENDANT are sufficient to adequately compensate the members of the CALIFORNIA LABOR SUBCLASS for the injuries sustained;

(g)     DEFENDANT has acted or refused to act on grounds generally applicable to the CALIFORNIA LABOR SUBCLASS, thereby making

1   final class-wide relief appropriate with respect to the CALIFORNIA

2   LABOR SUBCLASS as a whole;

3   (h)   The members of the CALIFORNIA LABOR SUBCLASS are readily

4   ascertainable from the business records of DEFENDANT.  The

5   CALIFORNIA LABOR SUBCLASS consists of those GNCS and

6   IS&T Support Staff Members who worked overtime ours and who were

7   not paid overtime; and,

8   (i)   Class treatment provides manageable judicial treatment calculated to

9   bring a efficient and rapid conclusion to all litigation of all wage and

10  hour related claims arising out of the conduct of DEFENDANT as to

11  the members of the CALIFORNIA LABOR SUBCLASS.

12

13                          **JURISDICTION AND VENUE**

14      39.    This Court has jurisdiction over PLAINTIFFS' claims pursuant to 29

15  U.S.C. § 216(b) (Fair Labor Standards Act), 28 U.S.C.§1331 (federal question jurisdiction),

16  and 28 U.S.C. § 1367 (supplemental jurisdiction).  The state law claims are part of the same

17  case and controversy as the federal claims, the state law claims are closely related to the

18  federal claims.  The state law claims share a "common nucleus of operative fact" with the

19  federal claims because the claims all arise from the same misclassification practice, so the

20  state and federal claims would normally be tried together.

21      40.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because

22  (i) DEFENDANT is subject to personal jurisdiction in this District and  therefore, reside in

23  this District , (ii) DEFENDANT committed the wrongful conduct against PLAINTIFFS and

24  certain members of the CLASS in Santa Clara County, California , and/or (iii)

25  DEFENDANT has taken the position that venue is proper in this district.

26

27                          **FIRST CAUSE OF ACTION**

28

**For Unlawful Business Practices**

**[Cal. Bus. And Prof. Code § 17200 et seq.]**

**(By PLAINTIFFS and the CALIFORNIA CLASS and against DEFENDANT)**

41.     PLAINTIFFS, and the other members of the CALIFORNIA CLASS, reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 40 of this Complaint.  This cause of action is brought on behalf of PLAINTIFFS and the CALIFORNIA CLASS.

42.     DEFENDANT is a "person" as that term is defined under Cal. Bus. and Prof. Code § 17021.

43.     California Business & Professions Code § 17200 *et seq.* (the "UCL") defines unfair competition as any unlawful, unfair, or fraudulent business act or practice. Section 17203 authorizes injunctive, declaratory, and/or other equitable relief with respect to unfair competition as follows:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

California Business & Professions Code § 17203.

44.     Through the conduct alleged herein, DEFENDANT has engaged in an unlawful, unfair, and/or deceptive business practice by violating California law, including but not limited to provisions of the Wage Orders, the Regulations implementing the Fair Labor Standards Act as enacted by the Secretary of Labor, the California Labor Code, the Code of Federal Regulations and the California Code of Regulations, the opinions of the

Department of Labor Standards Enforcement, California Labor Code §§ 510, *et seq.*, California Labor Code § 226, and California Labor Code § 226.7 by unfairly violating the public policy of the state of California to take all reasonable steps to properly classify employees as exempt or non-exempt and by deceptively telling the PLAINTIFFS and the members of the CALIFORNIA CLASS that they were all exempt when DEFENDANT knew this statement to be untrue, for which this Court should issue declaratory, injunctive and other equitable relief, pursuant to Cal. Bus. & Prof. Code § 17203, as may be necessary to prevent and remedy the conduct held to constitute unfair competition. Specifically, in this lawsuit, PLAINTIFFS contend that DEFENDANT's conduct violates the following statutes, laws and regulations as the claim for unlawful conduct under the UCL:

a.  Failing to pay overtime in violation of Cal. Labor Code § 510;

b.  Failing to provide meal and rest periods in violation of Cal. Lab. Code §§ 226.7 and 512;

c.  Failing to provide accurate, itemized wage statements in violation of Cal. Lab. Code § 226;

d.  Failing to properly classify employees in violation of Wage Order 4-2001, and the identical provisions in Cal. Labor Code 515 and 515.5;

e.  Failing to timely pay wages upon termination of employment in violation of Cal. Labor Code §§ 201 and 202;

f.  Employment for longer hours than those fixed by the order or under conditions of labor prohibited by the order in violation of Cal. Labor Code § 1198;

g.  Failing to pay overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 and 29 U.S.C. § 207; and,

h.  Failing to properly classify employees in violation of 8 C.C.R. § 11040 (2009), 29 U.S.C. § 213, 29 C.F.R. 541.2, 29 C.F.R. 541.3, 29 C.F.R. 541.100, 29 C.F.R. 541.200, 29 C.F.R. 541.300, 29 C.F.R. 541.400, 29 C.F.R. 541.402, and the 1999 and 2006 Opinion Letters of the Department of Labor.

45.     By and through the unlawful, unfair, and/or deceptive  business practices described herein, DEFENDANT has obtained valuable property, money, and services from the PLAINTIFFS, and the other members of the CALIFORNIA CLASS, and has deprived them of valuable rights and benefits guaranteed by law, all to their detriment and to the benefit of DEFENDANT so as to allow DEFENDANT to unfairly compete.  Declaratory and injunctive relief is necessary to prevent and remedy this unfair competition, and pecuniary compensation alone would not afford adequate and complete relief.

46.     All the acts described herein as violations of, among other things, the Cal. Lab. Code, California Code of Regulations, and the Industrial Welfare Commission Wage Orders, are unlawful, are in violation of public policy, are immoral, unethical, oppressive, and unscrupulous, and are likely to deceive employees, and thereby constitute deceptive, unfair and unlawful business practices in violation of Cal. Bus. and Prof. Code § 17200 *et seq*.

47.     PLAINTIFFS, and the other members of the CALIFORNIA CLASS, are further entitled to, and do, seek a declaration that the above described business practices are deceptive unfair and/or unlawful and that an injunctive relief should be issued restraining DEFENDANT from engaging in any of these deceptive, unfair and unlawful business practices in the future.

48.     PLAINTIFFS, and the other members of the CALIFORNIA CLASS, have no plain, speedy, and/or adequate remedy at law that will end the unfair and unlawful business practices of DEFENDANT.  Further, the practices herein alleged presently continue to occur unabated.  As a result of the unfair and unlawful business practices described above, PLAINTIFFS, and the other members of the CALIFORNIA CLASS, have suffered and will continue to suffer irreparable harm unless DEFENDANT is restrained from continuing to engage in these unfair and unlawful business practices.  In addition, DEFENDANT should be required to disgorge their ill gotten gains into a fluid fund and to make restitution to PLAINTIFFS, and the other members of the CALIFORNIA CLASS.

1

2                    <u>**SECOND CAUSE OF ACTION**</u>

3                    **For Failure To Pay Overtime Compensation**

4            **[Cal. Lab. Code §§ 510, 515.5, 1194, 1197 and 1198]**

5       **(By PLAINTIFFS and the CALIFORNIA LABOR SUB-CLASS and Against**

6                                   **DEFENDANT)**

7            49.    PLAINTIFFS, and the other members of the CALIFORNIA LABOR SUB-

8    CLASS, reallege and incorporate by this reference, as though fully set forth herein,

9    paragraphs 1 through 48 of this Complaint.

10           50.    Cal. Lab. Code § 510 provides that employees in California shall not be

11   employed more than eight (8) hours in any workday or forty (40) hours in a workweek or on

12   a seventh (7th) consecutive workday of a workweek unless they receive additional

13   compensation beyond their regular wages in amounts specified by law.

14           51.    Cal. Lab. Code § 551 states that, "Every person employed in any occupation

15   of labor is entitled to one day's rest therefrom in seven."

16           52.    Cal. Lab. Code § 552 states that, "No employer of labor shall cause his

17   employees to work more than six days in seven."

18           53.    Cal. Lab. Code § 1194 states:

19                  Notwithstanding any agreement to work for a lesser wage, any employee

20                  receiving less than the legal minimum wage or the legal overtime

21                  compensation applicable to the employee is entitled to recover in a civil action

22                  the unpaid balance of the full amount of this minimum wage or overtime

23                  compensation, including interest thereon, reasonable attorney's fees, and costs

24                  of suit.

25           54.    Cal. Lab. Code § 1198 provides:

26                  The maximum hours of work and the standard conditions of labor fixed by the

27                  commission shall be the maximum hours of work and the standard conditions

28

of labor for employees.  The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful.

55.    DEFENDANT has intentionally and uniformly designated certain employees as "exempt" from receiving wages for all hours worked and from receiving certain other rights, by their job title and without regard to DEFENDANT's realistic expectations, the requirements of the job, and the method of payment made by DEFENDANT, including PLAINTIFFS and the other members of the CALIFORNIA LABOR SUB-CLASS who worked on the production side of the DEFENDANT's business enterprise.  This was done in an illegal attempt to avoid payment of regular and overtime wages and other benefits in violation of the Cal. Lab. Code and Industrial Welfare Commission requirements.

56.    In addition, Labor Code Section 558 provides:

(a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(3) Wages recovered pursuant to this section shall be paid to the affected employee.

(b) If upon inspection or investigation the Labor Commissioner determines that a person had paid or caused to be paid a wage for overtime work in violation of any provision of this chapter, or any provision regulating hours

1   and days of work in any order of the Industrial Welfare Commission, the

2   Labor Commissioner may issue a citation. The procedures for issuing,

3   contesting, and enforcing judgments for citations or civil penalties issued by

4   the Labor Commissioner for a violation of this chapter shall be the same as

5   those set out in Section 1197.1.

6   (c) The civil penalties provided for in this section are in addition to any other

7   civil or criminal penalty provided by law.

8   57. DEFENDANT has intentionally and uniformly designated certain employees

9   as "exempt" employees, by their job title and without regard to DEFENDANT's realistic

10  expectations and actual overall requirements of the job, including PLAINTIFFS and the

11  other members of the  CALIFORNIA LABOR SUBCLASS who worked on the production

12  side of the DEFENDANT's GNCS or IS&T groups.  This was done in an illegal attempt to

13  avoid payment of overtime wages and other benefits in violation of the Cal. Lab. Code and

14  Industrial Welfare Commission requirements.

15  58. For an employee to be exempt as a bona fide "executive," all the following

16  criteria must be met and DEFENDANT has the burden of proving that:

17  (a)   The employee's primary duty must be management of the enterprise, or of a

18        customarily recognized department or subdivision; and,

19  (b)   The employee must customarily and regularly direct the work of at least two

20        (2) or more other employees; and,

21  (c)   The employee must have the authority to hire and fire, or to command

22        particularly serious attention to his or his recommendations on such actions

23        affecting other employees; and,

24  (d)   The employee must customarily and regularly exercise discretion and

25        independent judgment; and,

26  (e)   The employee must be primarily engaged in duties which meet the test of

27        exemption.

28

No member of the CALIFORNIA LABOR SUBCLASS was or is an executive because they all fail to meet the requirements of being an "executive" within the meaning of Order No. 4-2001.

59.     For an employee to be exempt as a bona fide "administrator," all of the following criteria must be met and DEFENDANT has the burden of proving that:

(a)     The employee must perform office or non-manual work directly related to management policies or general business operation of the employer; and,

(b)     The employee must customarily and regularly exercise discretion and independent judgment; and,

(c)     The employee must regularly and directly assist a proprietor or an exempt administrator; or,

(d)     The employee must perform, under only general supervision, work requiring special training, experience, or knowledge, or,

(e)     The employee must execute special assignments and tasks under only general supervision; and,

(f)     The employee must be primarily engaged in duties which meet the test of exemption.

No member of the CALIFORNIA LABOR SUBCLASS was or is an administrator because they all fail to meet the requirements for being an "administrator" under Order No. 4-2001.

60.     The Industrial Welfare Commission, ICW Wage Order 4-2001, at section (1)(A)(3)(h), at Labor Code § 515, and Cal. Lab. ' 515.5 also set forth the requirements which must be complied with to place an employee in the "professional" exempt category.  For an employee to be "exempt" as a bona fide "professional", all the following criteria must be met and DEFENDANT has the burden of proving that:

(a)     The employee is primarily engaged in an occupation commonly recognized as a learned or artistic profession.  For the purposes of this subsection, "learned or artistic profession" means an employee who is primarily engaged in the

performance of:

1) Work requiring knowledge of an advanced type in a field or science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes, or work that is an essential part or necessarily incident to any of the above work; or,

2) Work that is original and creative in character in a recognized field of artistic endeavor, and the result of which depends primarily on the invention, imagination or talent of the employee or work that is essential part of or incident to any of the above work; and,

3) Whose work is predominately intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) and is of such character cannot be standardized in relation to a given period of time.

(b) The employee must customarily and regularly exercise discretion and independent judgment; and.

(c) The employee earns a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. No member of the CALIFORNIA LABOR SUBCLASS was or is a professional because they all fail to meet the requirements of being a "professional" within the meaning of Order No. 4-2001.

In particular, for an employee to be "exempt" as a bona fide "professional" with respect to the requirements for a computer software employee, all the following criteria must be met and DEFENDANT has the burden of proving that:

(a) The employee must primarily perform work which is intellectual or creative

and that requires the exercise of discretion and independent judgment; and,

(b) The employee is primarily engaged in duties which consist of one or more of the following:

    1) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;

    2) the design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;

    3) the documentation, testing, creation or modification of computer programs related to the design of the software or hardware for computer operating systems; and,

(c) The employee must be highly skilled and proficient in the theoretical and practical application of highly specialized information to computer systems analysis, programming and software engineering. A job title shall not be determinative of the applicability of this exemption; and,

(d) The employee's hourly rate of pay is not less than forty-one dollars ($ 41.00), or the annualized full-time salary equivalent of that rate, provided that all other requirements of this section are met and that in each workweek the employee receives not less than forty-one dollars ($ 41.00) per hour worked. This is the rate which is adjusted by the DLSR on October 1 of each year to be effective on January 1 of the following year by an amount equal to the percentage increase in the California Consumer Price Index for Urban Wage Earners and Clerical Workers.

    1) The adjusted rates for each year of the CALIFORNIA LABOR SUBCLASS are as follows: In 2002, the rate was $42.64. In 2003, the rate was $43.58. In 2004, the rate was $44.63. In 2005, the

1            rate was $45.84. In 2006, the rate was $47.81. In 2007, the rate is

2            $49.77. Currently, in 2008, the rate is $36.00. No member of the

3            CALIFORNIA CLASS was or is an exempt "Computer Software

4            Employee" because they all fail to meet the requirements of Order No.

5            4-2001.

6 PLAINTIFFS and all members of the CALIFORNIA LABOR SUBCLASS were paid less

7 than these amounts during the Class Period.

8         61.     PLAINTIFFS, and other members of the CALIFORNIA LABOR

9 SUBCLASS, do not fit the definition of an exempt executive, administrative, or professional

10 employee because:

11         (a)     They did not work as executives or administrators; and,

12         (b)     The professional exemption articulated in Wage Order 4-2001, section

13                    (1)(A)(3)(h) and Labor Code § 515, and the professional exemption articulated

14                    in Cal. Lab. Code § 515.5, does not apply to PLAINTIFFS, nor to the other

15                    members of the CALIFORNIA LABOR SUBCLASS, because they are either

16                    computer software employees paid less than the requisite amount set forth in

17                    Cal. Lab. § 515.5(a)(4) and under subdivision (1)(A)(3)(h)(iv) of Order No. 4-

18                    2001, and/or did not otherwise meet all the applicable requirements to work

19                    under the exemption of computer software employee for the reasons set forth

20                    above in this Complaint.

21         62.     During the class period, the PLAINTIFFS, and other members of the

22 CALIFORNIA LABOR SUBCLASS, worked more than eight (8) hours in a workday

23 and/or forty (40) hours in a work week, and also worked on the seventh (7th) day of a

24 workweek.

25         63.     At all relevant times, DEFENDANT failed to pay PLAINTIFFS, and

26 other members of the CALIFORNIA LABOR SUBCLASS, overtime compensation for the

27 hours they have worked in excess of the maximum hours permissible by law as required by

28

1  Cal. Lab. Code §§ 510 and 1198, even though PLAINTIFFS, and the other members of the

2  CALIFORNIA LABOR SUBCLASS, were regularly required to work, and did in fact work,

3  overtime hours.

4        64.    By virtue of DEFENDANT's unlawful failure to pay additional premium

5  overtime compensation to the PLAINTIFFS, and the other members of the CALIFORNIA

6  LABOR SUBCLASS, for their overtime hours, the PLAINTIFFS, and the other members of

7  the CALIFORNIA LABOR SUBCLASS, have suffered, and will continue to suffer, an

8  economic injury in amounts which are presently unknown to them and which will be

9  ascertained according to proof at trial.

10        65.    DEFENDANT knew or should have known that PLAINTIFFS, and the

11  other members of the CALIFORNIA LABOR SUBCLASS, were misclassified as exempt

12  and DEFENDANT systematically elected, either through intentional malfeasance or gross

13  nonfeasance, not to pay them for their overtime labor as a matter of uniform corporate

14  policy, practice and procedure.

15        66.    Therefore, PLAINTIFFS, and the other members of the CALIFORNIA

16  LABOR SUBCLASS, request recovery of regular and overtime compensation according to

17  proof, interest, attorney's fees and cost pursuant to Cal. Lab. Code §1194(a), as well as the

18  assessment of any statutory penalties against DEFENDANT, in a sum as provided by the

19  Cal. Lab. Code and/or other statutes.

20        67.    In performing the acts and practices herein alleged in violation of labor

21  laws and refusing to provide the requisite regular and overtime compensation, the

22  DEFENDANT acted and continues to act intentionally, oppressively, and maliciously

23  toward the PLAINTIFFS, and toward the other members of the CALIFORNIA LABOR

24  SUBCLASS, with a conscious and utter disregard of their legal rights, or the consequences

25  to them, and with the despicable intent of depriving them of their property and legal rights

26  and otherwise causing them injury in order to increase corporate profits at the expense of

27  PLAINTIFFS and the members of the Class.

28

# THIRD CAUSE OF ACTION

## For Failure to Pay Wages When Due

### [Cal. Lab. Code § 203]

### (By PLAINTIFFS and the CALIFORNIA LABOR SUB-CLASS)

68.   PLAINTIFFS, and the other members of the CALIFORNIA LABOR SUB-CLASS, reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 67 of this Complaint.

69.   Cal. Lab. Code § 200 provides that:

As used in this article:

(a) "Wages" includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation.

(b) "Labor" includes labor, work, or service whether rendered or performed under contract, subcontract, partnership, station plan, or other agreement if the labor to be paid for is performed personally by the person demanding payment.

70.   Cal. Lab. Code § 202 provides, in relevant part, that:

If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so requests and designates a mailing address. The date of the mailing shall constitute the date of payment for purposes of the requirement to provide payment within 72 hours of the notice of quitting.

71.     Cal. Lab. Code § 203 provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

72.     PLAINTIFFS and other members of the CALIFORNIA LABOR SUB-CLASS members have terminated their employment and DEFENDANT has not tendered payment of wages owed.

73.     Therefore, as provided by Cal Lab. Code § 203, on behalf of himself and the members of the CALIFORNIA LABOR SUB-CLASS, PLAINTIFFS demand thirty days of pay as penalty for not paying all wages due at time of termination for all employees who terminated employment during the CALIFORNIA LABOR SUB-CLASS PERIOD and payment of all wages due, plus interest.

## **FOURTH CAUSE OF ACTION**

### **For Failure to Provide Accurate Itemized Statements**

### **[Cal. Lab. Code § 226]**

### **(By PLAINTIFFS and the CALIFORNIA LABOR SUB-CLASS)**

74.     PLAINTIFFS, and the other members of the CALIFORNIA LABOR SUB-CLASS, reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 73 of this Complaint.  This cause of action is brought on behalf of PLAINTIFFS and the CALIFORNIA LABOR SUBCLASS.

75.     Cal. Labor Code § 226 provides that an employer must furnish employees with an "accurate itemized statement in writing showing:

1  (1) gross wages earned,

2  (2) total hours worked by the employee, except for any employee whose

3  compensation is solely based on a salary and who is exempt from payment of

4  overtime under subdivision (a) of Section 515 or any applicable order of the

5  Industrial Welfare Commission,

6  (3) the number of piecerate units earned and any applicable piece rate if the employee

7  is paid on a piece-rate basis,

8  (4) all deductions, provided that all deductions made on written orders of the

9  employee may be aggregated and shown as one item,

10  (5) net wages earned,

11  (6) the inclusive dates of the period for which the employee is paid,

12  (7) the name of the employee and his or her social security number, except that by

13  January 1, 2008, only the last four digits of his or her social security number or an

14  employee identification number other than a social security number may be shown on

15  the itemized statement,

16  (8) the name and address of the legal entity that is the employer, and

17  (9) all applicable hourly rates in effect during the pay period and the corresponding

18  number of hours worked at each hourly rate by the employee."

19  76.    At all times relevant herein, DEFENDANT violated Labor Code § 226, in that

20  DEFENDANT failed to properly and accurately itemize the gross wages earned, the net

21  wages earned, and all applicable hourly rates in effect during the pay period and the

22  corresponding number of hours worked at each hourly rate by the employee.

23  77.    DEFENDANT knowingly and intentionally failed to comply with Labor Code

24  § 226, causing damages to PLAINTIFFS, and the other members of the CALIFORNIA

25  LABOR SUBCLASS.  These damages include, but are not limited to, costs expended

26  calculating the true hours worked and the amount of employment taxes which were not

27  properly paid to state and federal tax authorities.  These damages are difficult to estimate.

28

Therefore, PLAINTIFFS, and the other members of the CALIFORNIA LABOR SUBCLASS may recover liquidated damages of $50.00 for the initial pay period in which the violation occurred, and $100.00 for each violation in subsequent pay period pursuant to Labor Code § 226, in an amount according to proof at the time of trial (but in no event more than $4,000.00 for PLAINTIFFS and each respective member of the CALIFORNIA LABOR SUBCLASS herein) pursuant to Labor Code § 226(g).

## FIFTH CAUSE OF ACTION

### For Failure to Provide Meal and/or Rest Periods

### [Cal. Lab. Code §§ 226.7 and 512]

### (By PLAINTIFFS and the CALIFORNIA LABOR SUBCLASS)

78. PLAINTIFFS, and the other members of the CALIFORNIA LABOR SUBCLASS, reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 77 of this Complaint.

79. Cal. Lab. Code § 512 provides, in relevant part: "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived."

80. Section 11 of the Order 4-2001 of the Industrial Wage Commission (the "Wage Order") provides, in relevant part:

Meal Periods:

(A) No employer shall employ any person for a work period of more than

five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee.

(B)    An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than thirty (30) minutes, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

(C)    Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

(D)    If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

81.    Section 12 of Order 4-2001 of the Industrial Wage Commission (the "Wage Order") provides, in relevant part:

Rest Periods:

(A)    Every employer shall authorize and permit all employees to take rest

periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(B)     If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

82.     Cal. Lab. Code § 226.7 provides:

(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

 (b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

83.     DEFENDANT has intentionally and improperly failed to provide all rest and/or meal periods without any work or duties to PLAINTIFFS and the other members of the CALIFORNIA LABOR SUBCLASS as required by law, and by failing to do so DEFENDANT violated the provisions of Labor Code 226.7.

84.     Therefore, PLAINTIFFS demand on behalf of themselves and the members of the CALIFORNIA LABOR SUBCLASS, one (1) hour of premium pay for each workday in which a rest period was not provided as required by law and one (1) hour of premium pay for each workday in which a meal period was not provided as required by law.

## SIXTH CAUSE OF ACTION

### For Failure to Pay Overtime Compensation

### [FLSA, 29 U.S.C. § 201, *et seq.*]

### (By PLAINTIFFS and the COLLECTIVE CLASS)

85.    PLAINTIFFS, and the other members of the COLLECTIVE CLASS,  reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 84 of this Complaint.

86.    PLAINTIFFS also bring this lawsuit as a collective action under the Fair Labor and Standards Act, 29 U.S.C. § 201, et seq. (the "FLSA"), on behalf of all persons who were, are, or will be employed by DEFENDANTS as GNCS and IS&T Support Staff Members during the period commencing three years prior to the filing of this Complaint and ending on the date as the Court shall determine (the "COLLECTIVE CLASS PERIOD"), who performed work in excess of forty (40) hours in one week and did not receive overtime compensation as required by the FLSA (the "COLLECTIVE CLASS").  To the extent equitable tolling operates to toll claims by the COLLECTIVE CLASS against the DEFENDANT, the COLLECTIVE CLASS PERIOD should be adjusted accordingly.  The COLLECTIVE CLASS includes all such persons, whether or not they were paid by commission, by salary, or by part commission and part salary.

87.    Questions of law and fact common to the COLLECTIVE CLASS as a whole, but not limited to the following, include:

a.    Whether DEFENDANT misclassified PLAINTIFFS and members of the COLLECTIVE CLASS as exempt from receiving compensation for all hours worked, including federal overtime compensation;

b.    Whether DEFENDANT failed to adequately compensate the members of the COLLECTIVE CLASS for all hours worked as required by the FLSA, including the time worked through their meal periods;

1      c.    Whether DEFENDANT should be enjoined from continuing the practices

2           which violate the FLSA; and,

3      d.    Whether DEFENDANT is liable to the COLLECTIVE CLASS.

4    88.    The Sixth cause of action for the violations of the FLSA may be brought and

5 maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA, 29 U.S.C.

6 216(b), for all claims asserted by the representative PLAINTIFFS of the COLLECTIVE

7 CLASS because the claims of the PLAINTIFFS are similar to the claims of the members of

8 the prospective COLLECTIVE CLASS.

9    89.    PLAINTIFFS and the COLLECTIVE CLASS are similarly situated, have

10 substantially similar job requirements and pay provisions, and are subject to

11 DEFENDANT's common and uniform policy and practice of misclassifying their

12 employees, failing to pay for all actual time worked and wages earned, and failing to

13 accurately record all hours worked by these employees in violation of the FLSA and the

14 Regulations implementing the Act as enacted by the Secretary of Labor (the

15 "REGULATIONS").

16    90.    DEFENDANT is engaged in communication, business, and transmission

17 between California and other states, and are, therefore, engaged in commerce within the

18 meaning of 29 U.S.C. § 203(b).

19    91.    29 U.S.C. § 255 provides that a three-year statute of limitations applies to

20 willful violations of the FLSA.

21    92.    29 U.S.C. § 207(a)(1) provides in pertinent part:

22        Except as otherwise provided in this section, no employer shall employ any of

23        his employees who in any workweek is engaged in commerce or in the

24        production of goods for commerce, or is employed in an enterprise engaged in

25        commerce or in the production of goods for commerce, for a workweek longer

26        than forty hours unless such employee receives compensation for his

27        employment in excess of the hours above specified at a rate not less than one

28

1      and one-half times the regular rate at which he is employed.

2      93.     Section 213(a)(1) of the FLSA provides that the overtime pay

3   requirement does not apply to:

4              any employee employed in a bona fide executive, administrative, or

5              professional capacity (including any employee employed in the capacity of

6              academic administrative personnel or teacher in elementary or secondary

7              schools), or in the capacity of outside salesman (as such terms are defined and

8              delimited from time to time by regulations of the Secretary, subject to the

9              provisions of the Administrative Procedure Act [5 USCS §§ 551 et seq.]

10             except [that] an employee of a retail or service establishment shall not be

11             excluded from the definition of employee employed in a bona fide executive

12             or administrative capacity because of the number of hours in his workweek

13             which he devotes to activities not directly or closely related to the

14             performance of executive or administrative activities, if less than 40 per

15             centum of his hours worked in the workweek are devoted to such activities).

16     94.     Apple has willfully engaged in a widespread pattern and practice of

17  violating the provisions of the FLSA, as detailed above, by uniformly designating certain

18  employees as "exempt" employees, by their job title and without regard to DEFENDANT's

19  realistic expectations and actual overall requirements of the job, including PLAINTIFFS and

20  the other members of the COLLECTIVE CLASS who worked on the production side of the

21  DEFENDANT's business enterprise.  This was done in an illegal attempt to avoid payment

22  of overtime wages and other benefits in violation of the FLSA and Code of Federal

23  Regulations requirements.

24     95.     Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*,

25  PLAINTIFFS and the members of the COLLECTIVE CLASS are entitled to compensation

26  for all hours actually worked, including time spent monitoring DEFENDANT's equipment

27  and waiting for and responding to technical support requests during meal periods, and are

28

also entitled to wages at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in any workweek.

96.     29 C.F.R. 541.2 establishes that a job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part.

97.     The exemptions of the FLSA as listed in section 13(a), and as explained by 29 C.F.R. 541.3, do not apply to PLAINTIFFS and the other members of the COLLECTIVE CLASS, because their work consists of non-management, production line labor performed with skills and knowledge acquired from on-the-job training, rather than from the prolonged course of specialized intellectual instruction required for exempt learned professional employees such as medical doctors, architects and archeologists.  PLAINTIFFS either do not hold a bachelor's degree, have not taken any prolonged course of specialization relating to network systems or infrastructure, and/or have attained the vast majority of the skills they use as employees of Apple from on the job training.

98.     For an employee to be exempt as a bona fide "executive," all the following criteria must be met and DEFENDANT has the burden of proving that:

(a)     The employee's primary duty must be management of the enterprise, or of a customarily recognized department or subdivision;

(b)     The employee must customarily and regularly direct the work of at least two (2) or more other employees;

(c)     The employee must have the authority to hire and fire, or to command particularly serious attention to his or his recommendations on such actions affecting other employees; and,

(d)     The employee must be primarily engaged in duties which meet the test of exemption.

No member of the COLLECTIVE CLASS was or is an executive because they all fail to

meet the requirements of being an "executive" under section 13 of the FLSA and 29 C.F.R. 541.100. Moreover, none of the members of the COLLECTIVE CLASS were senior or lead computer programmers who managed the work of two or more other programmers in a customarily recognized department or subdivision of the employer, and whose recommendations as to the hiring, firing, advancement, promotion or other change of status of the other programmers were given particular weight and therefore, they do not qualify for the executive exemption as a computer employees under 29 C.F.R. 541.402.

99. For an employee to be exempt as a bona fide "administrator," all of the following criteria must be met and DEFENDANT has the burden of proving that:

(a) The employee must perform office or non-manual work directly related to management or general business operation of the employer or the employer's customers;

(b) The employee must customarily and regularly exercise discretion and independent
judgment with respect to matters of significance; and,

(c) The employee must regularly and directly assist a proprietor or an exempt administrator; or,

(d) The employee must perform under only general supervision, work requiring special training, experience, or knowledge; and,

(e) The employee must be primarily engaged in duties which meet the test of exemption.

No member of the COLLECTIVE CLASS was or is an administrator because they all fail to meet the requirements of for being an "administrator" under section 13(a) of the FLSA and 29 C.F.R. 541.300. Moreover, their primary duty does not include work such as planning, scheduling, and coordinating activities required to develop systems to solve complex business, scientific or engineering problems of the employer or the employer's customers and therefore, they are not qualified for the administrative exemption as computer

employees under 29 C.F.R. 541.402.

100.    For an employee to be "exempt" as a bona fide "professional", the DEFENDANT has the burden of proving that the primary duty of the employee is the performance of work that:

    (a)    Requires knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or

    (b)    Requires invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

No member of the COLLECTIVE CLASS was or is a professional because they all fail to meet the requirements of being an "professional" within the meaning of 29 CFR 541.300.

101.    For an employee to be "exempt" as a computer software employee, DEFENDANT has the burden of showing that the primary duty of the employee consists of:

    (a)    The application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software or system functional specifications;

    (b)    The design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;

    (c)    The design, documentation, testing, creation or modification of computer programs related to machine operating systems; or

    (d)    A combination of the aforementioned duties, the performance of which requires the same level of skills.

The "primary duty" of the PLAINTIFFS, and the other members of the COLLECTIVE CLASS, as defined in 29 C.F.R. 541.700, did not consist of the job functions outlined above.  Rather, the primary duty of the PLAINTIFFS, and the other members of the COLLECTIVE CLASS, consists of configuring, installing, and troubleshooting computer

applications, networks, and hardware and related equipment.  Although the primary duty was highly dependent on and facilitated by the use of computers and computer software programs, the primary duty did not involve:

> (1)    the determination of hardware, software, or system functional specifications;
>
> (2)    the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs; or
>
> (3)    a combination of these duties, the performance of which requiring the same level of skills.

PLAINTIFFS primarily engaged in trouble shooting and service functions by providing repairs and/or basic support for the Apple networks.  Further, PLAINTIFFS and their teams operated under intense scrutiny from management performing the upgrades of hardware and software, limited modifications of hardware and software, troubleshooting, and other non-exempt functions that constituted their primary duties.  Thus, no member of the COLLECTIVE CLASS was or is exempt as a computer systems analyst, computer programmer, or software engineer because they all fail to meet the requirements of being a "professional" within the meaning of 29 U.S.C. § 213 and 29 C.F.R. 541.400.

102.    During the COLLECTIVE CLASS PERIOD, the PLAINTIFFS, and other members of the COLLECTIVE CLASS, worked more than forty (40) hours in a work week and were also required to perform duties that were primarily for the benefit of the employer during meal periods.

103.    At all relevant times, DEFENDANT failed to pay PLAINTIFFS, and other members of the COLLECTIVE CLASS, overtime compensation for the hours they have worked in excess of the maximum hours permissible by law as required by section 207 of the FLSA, even though PLAINTIFFS, and the other members of the COLLECTIVE CLASS, were regularly required to work, and did in fact work, overtime hours.

104.    At all relevant times, DEFENDANT failed to pay PLAINTIFFS, and other members of the COLLECTIVE CLASS, regular compensation for the hours they have

1     worked, performing duties primarily for the benefit of the employer during meal periods.

2          105.    For purposes of the Fair Labor Standards Act, the employment practices

3     of DEFENDANT were and are uniform throughout the United States in all respects material

4     to the claims asserted in this Complaint.

5          106.    There are no other exemptions applicable to PLAINTIFFS and/or to members

6     of the COLLECTIVE CLASS.

7          107.    As a result of DEFENDANT's failure to pay overtime and failure to pay

8     regular compensation for hours worked during meal periods, as required by the FLSA,

9     PLAINTIFFS and the members of the COLLECTIVE CLASS were damaged in an amount

10     to be proved at trial.

11          108.    PLAINTIFFS, therefore, demands that he and the members of the

12     COLLECTIVE CLASS be paid overtime compensation as required by the FLSA for every

13     hour of overtime worked in any work week for which they were not compensated, regular

14     compensation for every hour worked primarily for the benefit of Apple for which they were

15     not compensated, plus interest and attorneys' fees as provided by law.

16

17

18                      **SEVENTH CAUSE OF ACTION**

19                   **Labor Code Private Attorneys General Act**

20                       **[Cal. Labor Code § 2698]**

21        **(By PLAINTIFFS and the CALIFORNIA CLASS and against All Defendants)**

22          109.    PLAINTIFFS, and the other members of the CALIFORNIA CLASS,

23     reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1

24     through 108 of this Complaint. This cause of action is brought on behalf of PLAINTIFFS

25     and the CALIFORNIA CLASS.

26          110.    On August 8, 2008, PLAINTIFFS gave written notice by certified mail to

27     the Labor and Workforce Development Agency (the "LWDA") and the employer of the

28

specific provisions of this code alleged to have been violated as required by Labor Code §
2699.3.

111.    California Labor Code § 2699.3 provides:

The agency shall notify the employer and the aggrieved employee or

representative by certified mail that it does not intend to investigate the

alleged violation within 30 calendar days of the postmark date of the notice

received pursuant to paragraph (1). Upon receipt of that notice or if no notice

is provided within 33 calendar days of the postmark date of the notice given

pursuant to paragraph (1), the aggrieved employee may commence a civil

action pursuant to Section 2699.

111.    No notice from the LWDA was received within 33 calendar days of the

postmark date of the written notice provided by PLAINTIFFS to the LWDA, and therefore,

PLAINTIFFS now commence a civil action pursuant to Section 2699.

111.    The policies, acts and practices heretofore described were and are an unlawful

business act or practice because DEFENDANTS' failure to pay wages, failure to provide

rest and meal period breaks, failure to pay wages and compensation for work without rest

and meal period breaks and failure to provide accurate wage statements and maintain

accurate time records for PLAINTIFFS and the other members of the CLASS violates

applicable Labor Code sections and gives rise to statutory penalties as a result of such

conduct.  PLAINTIFFS, as aggrieved employees, hereby seek recovery of civil penalties as

prescribed by the Labor Code Private Attorney General Act of 2004 on behalf of themselves

and other current and former employees of DEFENDANT which comprise the CLASS,

against whom one or more of the violations of the Labor Code was committed.  In addition,

PLAINTIFFS, as an aggrieved employee, hereby seeks recovery of civil penalties as

prescribed by the Labor Code Private Attorney General Act of 2004 on behalf of the State of

California and/or the LWDA, to the fullest extent available under the law.

## **PRAYER**

WHEREFOR, PLAINTIFFS pray for judgment against DEFENDANT as follows:

1.  On behalf of PLAINTIFFS and the CALIFORNIA CLASS:

    A)  That the Court certify the First Cause of Action asserted by the CALIFORNIA CLASS as a class action pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3);

    B)  An order temporarily, preliminarily and permanently enjoining and restraining DEFENDANT from engaging in similar unlawful conduct as set forth herein;

    C)  An order requiring DEFENDANT to provide restitution of all sums unlawfuly withheld from compensation due to PLAINTIFFS and the other members of the CALIFORNIA CLASSES; and,

    D)  Disgorgement of DEFENDANT's ill-gotten gains into a fluid fund for restitution of the sums incidental to DEFENDANT's violations due to PLAINTIFFS and to the other members of the CALIFORNIA CLASS.

2.  On behalf of PLAINTIFFS and the CALIFORNIA LABOR SUBCLASS:

    A)  That the Court certify the Second, Third, Fourth, and Fifth Causes of Action asserted by the CALIFORNIA LABOR SUBCLASS as a class action pursuant to Fed. R. Civ. Proc. 23(b)(3);

    B)  Compensatory damages, according to proof at trial, including compensatory damages for both regular and overtime compensation due PLAINTIFFS and the other members of the CALIFORNIA LABOR SUBCLASS, during the applicable CALIFORNIA CLASS PERIODS plus interest thereon at the statutory rate;

    C)  One (1) hour of premium pay for each workday in which a rest period was not provided to PLAINTIFFS and each member of the CALIFORNIA LABOR SUBCLASS for each four (4) hours of work during the period commencing on the date that is within four years prior to the filing of this Complaint;

    D)  One hour of premium pay for each day in which a meal period was not

1    provided to PLAINTIFFS and each member of the CALIFORNIA LABOR

2    SUBCLASS as required by law;

3    E)    The wages of PLAINTIFFS and all terminated employee from the

4          CALIFORNIA LABOR SUBCLASS as a penalty from the due date thereof at

5          the same rate until paid or until an action therefor is commenced, for violation

6          of Cal. Lab. Code § 203;

7    F)    The greater of all actual damages or fifty dollars ($50) for the initial pay

8          period in which a violation occurs and one hundred dollars ($100) per each

9          member of the CALIFORNIA LABOR SUBCLASS for each violation in a

10         subsequent pay period, not exceeding an aggregate penalty of four thousand

11         dollars ($4,000) for violation of Cal. Lab. Code § 226.

12   3.    On behalf of PLAINTIFFS and the COLLECTIVE CLASS:

13   A)    That the Court certify the Sixth Cause of Action asserted by the

14         COLLECTIVE CLASS as an opt-in class action under 29 U.S.C. § 216(b);

15   B)    That the Court declare the rights and duties of the parties consistent with the

16         relief sought by PLAINTIFFS;

17   C)    Issue a declaratory judgment that DEFENDANT's acts, policies, practices and

18         procedures complained of herein violated provisions of the Fair Labor

19         Standards Act;

20   D)    That DEFENDANT be enjoined from further violations of the Fair Labor

21         Standards Act;

22   E)    That the PLAINTIFFS and the members of the COLLECTIVE CLASS

23         recover compensatory, damages and an equal amount of liquidated damages as

24         provided under the law and in 29 U.S.C. § 216(b).

25   4.    On all claims:

26   A)    An award of interest, including prejudgment interest at the legal rate.

27   B)    An award of liquidated damages, statutory damages, including reasonable

28

1    attorneys' fees and cost of suit, but only to the extent that such reasonable
2    attorneys' fees and costs are recoverable pursuant to Cal. Lab. Code §1194
3    and 29 U.S.C. § 216(b). PLAINTIFFS only request and seek attorneys' fees
4    with respect to the overtime claims alleged herein. Neither this prayer nor any
5    other allegation or prayer in this Complaint is to be construed as a request,
6    under any circumstance, that would result in a request for attorneys' fees or
7    costs available under Cal. Lab. Code § 218.5;
8    C)    Such other and further relief as the Court deems just and equitable.
9
10   Dated:  May 1, 2009                        BLUMENTHAL & NORDREHAUG
11                                              By:_____*s/Norman B. Blumenthal*_____
12                                                     Norman B. Blumenthal
                                                       Attorneys for Plaintiff
13                                              UNITED EMPLOYEES LAW GROUP
                                                Walter Haines, Esq.
14                                              65 Pine Ave, #312
                                                Long Beach, CA 90802
15                                              Telephone: (562) 256-1047
                                                Facsimile: (562) 256-1006
16

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on issues triable to a jury.

Dated:   May 1, 2009                                 BLUMENTHAL & NORDREHAUG

                                                      By:_____*s/Norman B. Blumenthal*_____
                                                               Norman B. Blumenthal
                                                               Attorneys for Plaintiff


                                                      UNITED EMPLOYEES LAW GROUP
                                                      Walter Haines, Esq.
                                                      65 Pine Ave, #312
                                                      Long Beach, CA 90802
                                                      Telephone: (562) 256-1047
                                                      Facsimile: (562) 256-1006

K:\D\NBB\Walsh v. Apple\p-TAC-01.wpd