Walsh v. Apple, Inc. et al
Doc. 68 Att. 5

# EXHIBIT 6

Dockets.Justia.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

BEFORE: CHARLES A. LEGGE, JUDGE (Ret.)

---oOo---

ORACLE CORPORATION, a Delaware corporation; ORACLE, USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,

Plaintiffs,

vs.

No. 07-CV-01658-MJJ

SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,

Defendants.

HEARING IN RE DISCOVERY ISSUES

---

Wednesday, February 13, 2008

At:

JAMS
2 Embarcadero Center, 14th Floor
San Francisco, California

Reported by:
GEORGE SCHUMER, CSR 3326 (406308)



2ef4f272-5876-4210-af9f-34b80a4f13b6

get that, and they want more specific ways to get to that, we haven't objected to continue to work with them to guide them where they need to go. But if they are wanting our pointing them to every specific that proves their claims for them, that's not appropriate discovery.

JUDGE LEGGE: No, it would be a highly improper question, but where is the evidence that a Honeywell download here stayed there; where is the evidence the Honeywell download got sent to Honeywell, or was made and used as a patch that was sent, or where is the evidence that you, TN, used the download for some other purpose?

Those are specific "where" questions.

MR. COWAN: Right. And all of that, to the extent it is recorded, is in SAS, or in the e-mail traffic between the engineers and the developers.

MR. HOWARD: That's just like saying, "For every interrogatory, just look at our entire multiple-terabyte document production."

MS. HOUSE: And again, facts are not work product.

JUDGE LEGGE: You are repeating yourselves. I think we have gone about as far as we can go with this. So let's take another recess here, and we'll come back on the other ones that I think we can talk about today.

The motions regarding the governmental material



by Oracle; the questions regarding third-party support; questions regarding copyright -- I have to confess copyright stuff is kind of late in the day, so I need a better definition from the defendants as to what it is they really want to get with respect to copyright. And then the damages information and the requests for information from the antitrust case involving Oracle.

Those are the remaining ones I see there. I'm sure you've probably got a few others, but those are the remaining ones I'm focusing on.

MS. HOUSE: Do you have a hard stop at noon?

JUDGE LEGGE: No. Do you?

MS. HOUSE: No, I just want to keep going.

JUDGE LEGGE: Let's take a break, and we'll get started on these others.

(Recess taken, 11:26-11:43 a.m.)

JUDGE LEGGE: I would like to take up next Oracle's motion for the production of the governmental material.

If you get your interrogatories answered -- just a hypothetical -- if you got them answered, and the documents you requested from them -- that is, the TN documents, were produced -- why do you want that stuff? What is the point?

MS. HOUSE: One of the points, Your Honor, is



that presumably they have been cooperative with the government, presumably, like most of us --

JUDGE LEGGE: I am not stating my question properly.

Why do you need them? Why do you want to even fiddle around with it?

You will have everything -- I think you would have everything you need to know with respect to liability, except for possible issues of the relationship between the defendants.

MS. HOUSE: You have not heard them in their opposition say, or I doubt they will say today, whether they have or will produce to us all of the documents that are relevant to the investigation.

You have to understand this isn't a classic situation where you have a follow-on investigation to an initial investigation. The investigation was a follow-on to our complaint.

JUDGE LEGGE: If you got from them the answers to the interrogatories and the document production we have just been talking about, why do you even want to rummage through all that stuff? What is the point of it?

MS. HOUSE: At this point, Your Honor, we have gotten so little, and indeed nothing from SAP at all, from either the American or the German entity.



In addition to the historic documents that presumably have been produced -- mind you, we haven't even been told yet whether or not there actually is a grand jury subpoena.

JUDGE LEGGE: You are missing my point. Let's assume that it is; that there has been a subpoena, and let's assume they have a truckload of material they are about to deliver to the US attorney for ultimate production to the grand jury -- let's assume that.

Why go through all that, if you are going to get the answers to the questions you want answered by methods that we have been talking about this morning?

MS. HOUSE: As Your Honor knows, and your colleague, Judge Breyer, has found, there's a whole lot of information that isn't even -- not the documents themselves, but let's say that have been presentations making these kinds of clear delineations between what they say happened, and who did it, and the scope.

Their opposition doesn't even touch on those which are clearly not -- anything that you could even pretend to be covered by the Rule 6(e) protection. Anything that has been produced to the government voluntarily --

JUDGE LEGGE: But if you get it from them -- everything you need to know to prove your liability





2ef4f272-5876-4210-af9f-34b80a4f13b6

Page 94

case -- why do you want to fiddle around with the government stuff?

MS. HOUSE: If there is a nice presentation to the government that talks about the facts and history, and lays it all out in a nice, easy way, that is an admission that obviously is very useful.

JUDGE LEGGE: Corroboration and possible impeachment.

MS. HOUSE: And clarity. What you have heard today, and what you have seen today, is nothing but obtuse and vague references. We have no indication at all that we have gotten all -- or how much -- of the production that has been done to the government, let alone we clearly haven't been produced any of the voluntarily created documents, and communications with the government -- none of which would be remotely covered by Rule 6(e).

You've got to understand Rule 6(e) -- this is a backstop for us. We're allowed to check against -- this is pretty serious stuff, and we're allowed to check against what they have produced to us, and the historical documents that they have produced to the government. The problems of not having a reply brief is we had never seen any of these authorities before. I would like to hand you --

JUDGE LEGGE: I'll get to that issue whether

Page 95

there is a privilege here or not. I'm starting with --

MS. HOUSE: It is relevant to --

JUDGE LEGGE: Relevant, yes, there's no doubt about it. But if you get the answers the other way, why do you burden them or us with producing such stuff?

MS. HOUSE: They don't make a burden because they can't. It is not a burden.

What they have produced is probably already on burned CD's; there's no burden, and they don't even object on burden grounds, because that's clearly not a credible response to that particular request.

JUDGE LEGGE: Aren't they better off spending their time trying to massage the data to give to you in direct response to the interrogatories? Indirectly by shipping another truckload of stuff over to you --

MS. HOUSE: We'll take the truckload, because we believe they will have massaged that data in a way that is very easily understood and comprehensive. And we don't have that. And we don't have the time to wait while, you know, we get this stuff trickled in, and you make a decision, and it gets appealed, and two months more down the line.

JUDGE LEGGE: You say two months down the line; wait a minute.

In every one of these things, I'm going to try to

Page 96

have my recommendation to the judge out in just a few days, and then you've got -- what is it; 10-day time frame; 11-day -- something like that. You are only talking a couple of weeks.

MR. HOWARD: But where we are now is already months down the line from where we started, based on how hard it was to get agreements about procedures about Your Honor; whatever. It is taking more time.

Nonetheless, in addition to time, this is material that's clearly relevant, that is already in existence, that could easily be produced. And if it is duplicative, we'll take that risk, because we think it is worth it to see, because it is clearly relevant to our case. There's no doubt about the relevance.

There is absolutely nothing in the case law that prohibits disclosure of materials. There's no automatic veil of secrecy, because there has to be --

JUDGE LEGGE: Different issue. That's enough.

Where are you in this production business? Have you received a subpoena from somebody, or have you received a civil investigative demand? Or what have you gotten from --

MS. BOERSCH: We have stated publicly that we have received a request for documents from DOJ, and it is a grand jury subpoena.

Page 97

JUDGE LEGGE: You have received a subpoena, okay. Where are you in the process of responding to that?

MS. BOERSCH: We are in the process of responding.

JUDGE LEGGE: Have you responded yet?

MS. BOERSCH: We have.

JUDGE LEGGE: Totally, or in part?

MS. BOERSCH: In part. It is ongoing. As we understand it, the investigation is ongoing.

JUDGE LEGGE: And you have submitted your material to DOJ?

MS. BOERSCH: Yes.

JUDGE LEGGE: Do you have any more to do?

MS. BOERSCH: Yes.

JUDGE LEGGE: You haven't quite finished?

MS. BOERSCH: Right.

JUDGE LEGGE: What form? Do you send paper copies? Do you send the client copies? Or what?

MS. BOERSCH: Yes, and I'm a little hesitant, because I do think to the extent any detail about how we have responded, or what we have produced to the grand jury, is in effect grand jury information that shouldn't be disclosed under Rule 6(e).

But yes, we have provided document requests to the Government; we have produced documents both in

Page 98

electronic and paper form.

I just want to emphasize a couple of points. First of all, the defendants have not, and do not intend to, refuse to provide any particular document, or any particular information, solely on the ground that it was also produced to the grand jury. Anything that was produced to the grand jury, if they ask for it separately, then they will have gotten it, and will get it. We are not refusing to produce any particular information just because it was also produced to the grand jury.

But what they are seeking is, in our view, quintessentially grand jury information. They are trying to determine the scope of the grand jury investigation, and the nature of the grand jury investigation, and that's what 6(e) protects.

JUDGE LEGGE: I have a difficult time with the claim that information requested from a third party about what is said to a grand jury is grand jury protection. Rule 6 exists primarily to protect what goes on within the grand jury: what witnesses are called; what the witnesses said; who took the Fifth or who didn't take the Fifth; what are they going to do next; the deliberations; their arguments with one another; the arguments the US attorneys make to them, and their response to the US attorneys.

That is what Rule 6 is about.

Page 99

MS. BOERSCH: Correct.

JUDGE LEGGE: And I don't think a person supplying information to a grand jury -- that information is cloaked by a grand jury privilege.

MS. BOERSCH: I think the case law actually suggests that it is. If you look at the Sulfuric Acid case, and a couple of the other cases we cite, the courts have said, "Look, if all you are asking for is you don't want the documents for their own intrinsic value; all you want to know is what is it the grand jury is asking for" -- that's Grand Jury information; that tells you what direction the Grand Jury is considering, what direction they are going, and where they might go in the future, and that's what is protected by 6(e). If there is a request for a particular document, like I said, we're not going to object to producing any particular document on that ground.

It is the question of what is it that the grand jury asks you for that would reveal grand jury information, and we're objecting to having to provide a road map to what the grand jury is seeking from us, to the plaintiffs in this case.

JUDGE LEGGE: How long ago did you get the subpoena?

MS. BOERSCH: The first one we got in June, I

Page 100

believe.

JUDGE LEGGE: Anything further?

MS. HOUSE: Yes. I was about to say -- hand you, because we didn't do a reply -- here is a case you may be even very familiar with, the Dresser case, and I think it has a nice summary about what the Rule 6(e) protection is.

JUDGE LEGGE: The cite is 628 Fed 2nd, 1368.

MS. HOUSE: If you turn to Page 17 of 28, using that top -- I'll read it. At the very bottom of that page it says, "We note that the rule prohibits disclosures of matters occurring before" --

JUDGE LEGGE: 17?

MS. HOUSE: Down at the bottom.

JUDGE LEGGE: I don't find that on 17.

MS. HOUSE: You might have a different version.

JUDGE LEGGE: "We note that the rule prohibits disclosure of matters occurring before the grand jury. This serves to protect the identity of witnesses or jurors, the subsequent testimony, the strategy or direction of the investigation, the deliberation and questions of the jurors and the like. It does not require, however, that a veil of secrecy be drawn on all matters occurring in the world that happen to be investigated by the grand jury."

MS. HOUSE: That's essentially -- what you have

Page 101

here is an attempt to essentially explode what is the -- 6(e) has a specific restriction, which says that no obligation of secrecy except in accordance with this rule.

It is a limited scope of secrecy. And you understand it well, and the notion here that historic documents -- documents that were created, and are highly relevant to the very complaint that precipitated this investigation -- those are clearly not matters that were created for, or unique to, the process of the grand jury. They are the historic documents; they are the facts. They are the facts that relate to our complaint.

I don't know; presumably they are the facts that relate to the grand jury, but the fact that they overlap doesn't mean that they get to hide them.

Moreover, anything beyond that, for instance -- and I point you to Judge Breyer's ruling in the Reyes case. That makes it very clear that anything that was produced to the government as a matter of informal meeting; a volunteer disclosure; a presentation -- obviously that is not anything that was solicited by a grand jury subpoena; it is not covered. And it is obviously something that would be very relevant to both the facts of the case and the claims about defenses, and the claims about the scope of the wrongdoing, and what was done.





2ef4f272-5876-4210-af9f-34b80a4f13b6

So any of that material is fair game. And they clearly haven't produced it. They are not volunteering to produce it. And absent an order that they do -- they have just flatly stonewalled us on all of this.

What you are hearing is they are saying, "Well, maybe if they have asked it here, we'll give them a piece," or, "Maybe if they have asked it here, and it overlaps, we'll give them a piece." They are not telling you, and they won't tell you, they are going to produce to us every historic document they have given to the Government; they will produce to us every presentation they have made to the Government, because they haven't agreed to do that, and they are not agreeing to do it today. And yet each of those is relevant and not protected.

There is no reason not to, especially when we're on a time frame like we are. Here we are months later; something that was presumably initially produced months ago in a nice, contained format, historic documents totally relevant to the issues at hand. They are not telling you we have them. You notice that.

It is relevant, and we're entitled to it. It is not implicating any of the secrecy concerns that you have talked about in Rule 6(e).

JUDGE LEGGE: Do you want to reply?



MS. BOERSCH: Again, we are not refusing to produce any relevant document merely on the grounds that it was produced to the grand jury. If a document was produced to the grand jury, and they also want it, we will give it to them if they give us a proper discovery request. But they cannot use the grand jury in order to subvert the civil discovery rules.

The only information we have provided to the Government is information that we have provided in response to a grand jury subpoena, so we're not talking about the sort of information that was at issue in Reyes or Rigonzies [phonetic]. And those cases, at any rate, involve the work product privilege, not 6(e), because those were presented to the Government, not to the grand jury.

But I just want to emphasize again that it is clear, from what they are saying, that they are not seeking any particular document or information for its own intrinsic value. Instead, what they want to know is the direction of the grand jury investigation.

And I would just again rely on the case law we cited, which is Dynavac and some district court cases, that clearly state that disclosure of which documents subpoenaed by the grand jury may disclose the Grand Jury's deliberative process -- even when documents are sought for



their own sake, disclosure may --

JUDGE LEGGE: What are you reading from, at the moment?

MS. BOERSCH: I'm reading from Page 3 of our letter brief.

JUDGE LEGGE: Which cases?

MS. BOERSCH: Dynavac, a 9th Circuit case.

When the documents are considered in the aggregate, and in their relationship to one another -- make possible inferences about the nature and direction of the grand jury inquiry. And it is clear from the case law that 6(e) protects disclosure of that sort of information -- and that is all we're objecting to with these two requests that they have served.

One other thing I want to address briefly, which is Oracle's speculation that the criminal investigation is an investigation of the allegations in their complaint. That is, I think -- has to be speculation, because the Government does not tell anybody the nature of their investigation, or what exactly they are investigating. You might be able to deduce it; you might be able to make an educated guess, but it is still a guess.

So their requests are overbroad, because they seek information that is potentially irrelevant.

JUDGE LEGGE: What about the subpoena itself? Or



any cover letter from Justice to your clients, with respect -- does that in any way define the scope of their investigation?

MS. BOERSCH: The documents requested would definitely reveal the scope of the grand jury investigation.

JUDGE LEGGE: I'll say it point blank: We're examining into whether TN or SAP made improper downloads of Oracle --

MS. BOERSCH: No, the grand jury subpoena itself would not include any of that sort of information.

JUDGE LEGGE: What about the cover letter from Justice?

MS. BOERSCH: No. As far as I know, we don't have a cover letter from Justice; we just have a subpoena.

MS. HOUSE: We're welcome to have you review any of that in camera, if we need to do that, to make such determination.

JUDGE LEGGE: Apparently there is nothing for me to review -- unless I review the subpoena itself.

MS. HOUSE: The complaint created the allegations. That's what their own public relations spin on it has been. There is no doubt about that that's just sophistry.

This is about the same activities. You heard it





2ef4f272-5876-4210-af9f-34b80a4f13b6

Page 106

again: They are not saying that they produced to us the materials that are clearly relevant, that are all generated out of the very complaint that started the investigation.

You didn't hear them say they produced the underlying historic materials to us. They are saying, "Well, maybe if there's an interrogatory or a document request that we're not going to object to, then we agree to produce to, then we'll produce it." But they don't say they have produced it, or when they are going to produce it.

Dynavac -- I would like you to look at that 9th Circuit case. It specifically found that matters occurring before the grand jury did not include records that were independently generated and sought for legitimate purposes.

The legitimate purpose here -- again, going back to that Dresser case -- it couldn't be clearer. They say intrinsic value the only issue you have to worry about in terms of checking out if somebody is looking for the documents for their own sake; you are not trying to learn what took place before the grand jury.

We don't care what took place before the grand jury. We want the intrinsic -- the reason that we're doing this; that we're seeking this -- is because we want

Page 107

to see the historic underlying data, and in addition, any kind of voluntary submissions or presentations, or whatever materials were done voluntarily with the government -- we're entitled to that. That doesn't even get covered under the Rule 6(e).

The other quote that they have from Dynavac: I invite you to look at the second half of the sentence, which talks about how rare and unusual it is to put Rule 6(e) secrecy around anything; that these are the kinds of concerns and the kinds of policies that are implicated by 6(e) -- are rarely invoked or rarely threatened.

So every one of the cases that they cite, Your Honor, has to do with the very core grand jury type of materials you are talking about, whether it is actually seeking transcripts; whether it is trying to interview witnesses about what they did and said to the grand jury; whether -- it is getting at the core; what goes on in the room.

That's not what we're talking about here. We're looking for the very historic documents that go to the claims that created the need for the investigation in the first place.

They agree they haven't produced them to us; they have them compiled, easily ready, out the door, and we would be so much farther along in our production in this

Page 108

case if we got those than if we continue to get this trickle-out, roll-out position that we are in now.

MS. BOERSCH: If I could just briefly emphasize: We don't agree that we haven't produced to Oracle the same documents that we produced to the government. That's not the issue.

And again, we are not refusing to provide any document that Oracle claims is relevant; any historical document that they claim is relevant. If they believe they need that document for some intrinsic value, we're producing it if they ask for it, subject to other objections. That's not the issue. That's not, actually, what they seek.

Instead, what they seek, as they admit in their letter: "We want to compare, how does the government investigation differ from ours? We want to know which documents the government subpoenaed; we want to know how, exactly, you responded to that request from the government."

Why? Because they want to know the nature and scope of the Government's investigation. Not because they want to know, "Hey, what is in the SAS database?" If they ask us for the SAS database, and we produce the SAS database to the government, we're not saying, "Hey, we can't give it to you; it is grand jury information." We

Page 109

give it to them.

It is not grand jury information; we admit that, and it is a pre-existing historical document, and they are seeking it for some intrinsic value, they can have it. What we are objecting to is their request, because it actually seeks to know the scope and direction of the Government's investigation, and that is, under the cases we have cited, protected by 6(e).

MS. HOUSE: You got it exactly backwards. What we want to know is the facts; that is all.

JUDGE LEGGE: You are repeating yourself, so I'll just have to take that one under submission.

Next is the defendant's motion with respect to the issue of third-party support. My concern with that one is it seems to me that you are going beyond core nature of the dispute in this case, and doing a lot of discovery with an issue that I think is tangential, and that is what is the relationship between Oracle and other third-party service suppliers, or whatever you call those people.

Why do we need that?

MR. McDONELL: May I, Your Honor?

JUDGE LEGGE: Sure.

MR. McDONELL: First of all, I would note that Oracle itself has agreed to produce some of this





2ef4f272-5876-4210-af9f-34b80a4f13b6