Walsh v. Apple, Inc. et al Doc. 89

EXHIBIT 1

Dockets.Justia.com

Robert A. Mittelstaedt (SBN 060359)
JONES DAY
San Francisco Office
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
Silicon Valley Office
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAP AG, et al.,<br><br>Defendants. | Case No. 07-CV-1658 MJJ<br><br>**DEFENDANT SAP AG'S RESPONSE TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)** |

| | |
|---|---|
| **PROPOUNDING PARTY:** | Plaintiffs Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation |
| **RESPONDING PARTY:** | Defendant SAP AG |
| **SET NUMBER:** | One |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, the standing and other orders of this Court, and agreements of the parties defendant SAP AG responds as follows to the First Set of Requests for Production of Documents by plaintiffs Oracle Corporation, Oracle USA, Inc. and Oracle International Corporation (collectively, "plaintiffs" or "Oracle"):

## GENERAL RESPONSES AND OBJECTIONS

1. SAP AG will produce documents and things within its possession, custody or control that it is able to locate after a good faith search of files and other sources in which responsive documents are likely to be found. SAP AG objects to any further search or production as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. A response by SAP AG indicating that it will produce documents is not a confirmation that such documents exist or are in its possession, custody or control but, rather, indicates that SAP AG will produce such documents if they do exist and are in its possession, custody or control.

2. SAP AG will produce confidential and proprietary information of SAP AG and/or of third parties that is in SAP AG's possession, pursuant to the protective order entered in this case, including by designating certain documents CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY.

3. SAP AG objects to Oracle's instructions to the extent that they call for SAP AG to produce documents in a form other than how they are maintained in the ordinary course of business. SAP AG will produce relevant, responsive, non-privileged documents as typically maintained, subject to the parties' agreement regarding mechanics of production set forth in the Joint Case Management Conference Statement.

4. SAP AG objects to each request, definition and instruction to the extent they seek

Answer to the First Amended Complaint, including without limitation all Documents relating to SAP AG CEO's statement on July 3, 2007 at an SAP AG press conference call that "we will continue to give the support to TomorrowNow's customers and so they should not be concerned about this [lawsuit]."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

SAP AG objects that this request seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objection and the General Responses and Objections, SAP AG will produce relevant, responsive, non-privileged documents.

**REQUEST FOR PRODUCTION NO. 55:**

All Documents relating to Department of Justice, Federal Bureau of Investigation, or other federal, state, or local government agency's request or investigation into the allegations in the First Amended Complaint, including without limitation all Documents provided by You to any such agency in response to a request or investigation of those allegations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

In addition to the General Responses and Objections, SAP AG objects that this request seeks information prohibited from disclosure pursuant to Fed. R. Crim. P. 62 and is not reasonably calculated to lead to the discovery of admissible evidence and is overbroad.

***Miscellaneous***

**REQUEST FOR PRODUCTION NO. 56:**

All Documents identified, referred to, or consulted by You in preparing Your Responses to any Interrogatory or Request for Admission propounded by Oracle in this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Subject to and without waiving the General Responses and Objections, SAP AG will produce responsive, non-privileged documents.

**REQUEST FOR PRODUCTION NO. 57:**

All Documents that You contend support any of Your claims or defenses in this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

Subject to and without waiving the General Responses and Objections, SAP AG will produce responsive, non-privileged documents.

Dated: October 1, 2007

JONES DAY

By: ______________________
Tharan Gregory Lanier

Counsel for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

## PROOF OF SERVICE

I, Tharan Gregory Lanier, declare:

I am a citizen of the United States and employed in Santa Clara County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1755 Embarcadero Road, Palo Alto, California 94303. On October 1, 2007, I served a copy of the attached document(s):

**DEFENDANT SAP AG'S RESPONSE TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Palo Alto, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Christopher B. Hockett
Geoffrey M. Howard
Zachary J. Alinder
Bree Hahn
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
*chris.hockett@bingham.com*
*geoff.howard@bingham.com*
*zachary.alinder@bingham.com*
*bree.hahn@bingham.com*

Executed on October 1, 2007, at Palo Alto, California.

By: ______________________
Tharan Gregory Lanier

Robert A. Mittelstaedt (SBN 060359)
JONES DAY
San Francisco Office
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
Silicon Valley Office
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, et al., Plaintiffs, v. SAP AG, et al., Defendants. | Case No. 07-CV-1658 MJJ<br>**DEFENDANT SAP AMERICA, INC.'S RESPONSE TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)** |

**PROPOUNDING PARTY:** Plaintiffs Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation

**RESPONDING PARTY:** Defendant SAP America, Inc.

**SET NUMBER:** One

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, the standing and other orders of this Court, and agreements of the parties defendant SAP America, Inc. ("SAP America") responds as follows to the First Set of Requests for Production of Documents by plaintiffs Oracle Corporation, Oracle USA, Inc. and Oracle International Corporation (collectively, "plaintiffs" or "Oracle"):

## GENERAL RESPONSES AND OBJECTIONS

1. SAP America will produce documents and things within its possession, custody or control that it is able to locate after a good faith search of files and other sources in which responsive documents are likely to be found. SAP America objects to any further search or production as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. A response by SAP AMERICA indicating that it will produce documents is not a confirmation that such documents exist or are in its possession, custody or control but, rather, indicates that SAP AMERICA will produce such documents if they do exist and are in its possession, custody or control.

2. SAP America will produce confidential and proprietary information of SAP America and/or of third parties that is in SAP America's possession, pursuant to the protective order entered in this case, including by designating certain documents CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY.

3. SAP America objects to Oracle's instructions to the extent that they call for SAP America to produce documents in a form other than how they are maintained in the ordinary course of business. SAP America will produce relevant, responsive, non-privileged documents as typically maintained, subject to the parties' agreement regarding mechanics of production set

**REQUEST FOR PRODUCTION NO. 54:**

All Documents relating to SAP TN's Customers' reaction to this lawsuit and to Your Answer to the First Amended Complaint, including without limitation all Documents relating to SAP AG CEO's statement on July 3, 2007 at an SAP AG press conference call that "we will continue to give the support to TomorrowNow's customers and so they should not be concerned about this [lawsuit]."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

SAP America objects that this request seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objection and the General Responses and Objections, SAP America will produce relevant, responsive, non-privileged documents.

**REQUEST FOR PRODUCTION NO. 55:**

All Documents relating to Department of Justice, Federal Bureau of Investigation, or other federal, state, or local government agency's request or investigation into the allegations in the First Amended Complaint, including without limitation all Documents provided by You to any such agency in response to a request or investigation of those allegations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

In addition to the General Responses and Objections, SAP America objects that this request seeks information prohibited from disclosure pursuant to Fed. R. Crim. P. 62 and is not reasonably calculated to lead to the discovery of admissible evidence and is overbroad.

***Miscellaneous***

**REQUEST FOR PRODUCTION NO. 56:**

All Documents identified, referred to, or consulted by You in preparing Your Responses to any Interrogatory or Request for Admission propounded by Oracle in this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Subject to and without waiving the General Responses and Objections, SAP America will produce responsive, non-privileged documents.

of third party support companies, including TomorrowNow," as stated in the Joint Case Management Conference Statement.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

Subject to and without waiving the General Responses and Objections, SAP America will produce responsive, non-privileged documents.

Dated: October 1, 2007

JONES DAY

By: ______________________
Tharan Gregory Lanier

Counsel for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

# PROOF OF SERVICE

I, Tharan Gregory Lanier, declare:

I am a citizen of the United States and employed in Santa Clara County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1755 Embarcadero Road, Palo Alto, California 94303. On October 1, 2007, I served a copy of the attached document(s):

**DEFENDANT SAP AMERICA, INC.'S RESPONSE TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Palo Alto, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Christopher B. Hockett
Geoffrey M. Howard
Zachary J. Alinder
Bree Hahn
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
*chris.hockett@bingham.com*
*geoff.howard@bingham.com*
*zachary.alinder@bingham.com*
*bree.hahn@bingham.com*

Executed on October 1, 2007, at Palo Alto, California.

By: ______________________
Tharan Gregory Lanier

EXHIBIT 2

Robert A. Mittelstaedt (SBN 060359)
JONES DAY
San Francisco Office
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
Silicon Valley Office
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAP AG, et al.,<br><br>Defendants. | Case No. 07-CV-1658 MJJ<br><br>**DEFENDANT TOMORROWNOW, INC.'S RESPONSE TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)** |

and the General Responses and Objections, TomorrowNow will produce relevant, responsive, non-privileged documents.

**REQUEST FOR PRODUCTION NO. 83:**

All Documents relating to Your Customers' reaction to this lawsuit and to Your Answer to the First Amended Complaint, including without limitation all Documents relating to SAP AG CEO's statement on July 3, 2007 at an SAP AG press conference call that "we will continue to give the support to TomorrowNow's customers and so they should not be concerned about this [lawsuit]."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

TomorrowNow objects that this request seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objection and the General Responses and Objections, TomorrowNow will produce relevant, responsive, non-privileged documents.

**REQUEST FOR PRODUCTION NO. 84:**

All Documents relating to Department of Justice, Federal Bureau of Investigation, or other federal, state, or local government agency's request or investigation into the allegations in the Complaint and First Amended Complaint, including without limitation all Documents provided by You to any such agency in response to a request or investigation of those allegations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

In addition to the General Responses and Objections, TomorrowNow objects that this request seeks information prohibited from disclosure pursuant to Fed. R. Crim. P. 62 and is not reasonably calculated to lead to the discovery of admissible evidence and is overbroad.

***Miscellaneous***

**REQUEST FOR PRODUCTION NO. 85:**

All Documents identified, referred to, or consulted by You in preparing Your answer in this case, Your affirmative defenses, and Your responses to any interrogatory or request for admission propounded by Oracle in this litigation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 95:**

Subject to and without waiving the General Responses and Objections, TomorrowNow will produce responsive, non-privileged documents.

Dated: September 21, 2007

JONES DAY

By: ______________________
Tharan Gregory Lanier

Counsel for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

## PROOF OF SERVICE

I, Tharan Gregory Lanier, declare:

I am a citizen of the United States and employed in Santa Clara County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1755 Embarcadero Road, Palo Alto, California 94303. On September 21, 2007, I served a copy of the attached document(s):

**DEFENDANT TOMORROWNOW, INC.'S RESPONSE TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS (SET ONE)**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Palo Alto, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Christopher B. Hockett
Geoffrey M. Howard
Zachary J. Alinder
Bree Hahn
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
*chris.hockett@bingham.com*
*geoff.howard@bingham.com*
*zachary.alinder@bingham.com*
*bree.hahn@bingham.com*

Executed on September 21, 2007, at Palo Alto, California.

By: ______________________
Tharan Gregory Lanier

EXHIBIT 3

Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 774-2644
Fax: (415) 982-5287

Special Discovery Master

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,

Plaintiffs,

vs.

SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,

Defendants.

**CASE NO. 07-CV-1658 (MJJ)**

**JAMS Reference No. 1100053026**

**REPORT AND RECOMMENDATIONS RE: DISCOVERY HEARING NO 1**

## JURISDICTION

The undersigned has been appointed as the Special Discovery Master pursuant to an order of United States District Judge Martin J. Jenkins, dated January 8, 2008. The jurisdiction of the Special Discovery Master is to hear all discovery disputes and report and make recommendations to the Court with respect to the resolution of such disputes; order of January 8, 2008.

## DISCOVERY HEARING No. 1

The parties each filed discovery motions by letters to the undersigned dated January 28, 2008, and filed oppositions to one another's motions on February 7, 2008. The motions were heard on February 13, 2008 and were submitted for decision. This is the report and recommendations of the Special Discovery Master to the Court with respect to those motions.

The Court should note that the discovery disputes were submitted to the undersigned primarily by subject matters. While some specific discovery requests were cited in the motions and oppositions, the Master did not receive copies of the actual discovery requests and responses until the day of the hearing. The parties apparently concluded that framing this first group of motions by subject matters better served progress in the case. The Master agrees and has no objection to the presentation of discovery disputes by subject matters or categories. But the report and recommendations of the Master must therefore necessarily also be by subject matters or categories. And the Master's recommendations in such a form may still present some problems in the application of those general recommendations to specific discovery requests. That is not a reason not to proceed as the parties have suggested; but it should merely be noted that the application of such decisions may later require another level of attention. The Master is discussing the motions according to the categories presented, but in an order which the Master believes is logical, dealing first with the discovery problems regarding the basic facts of the case. That is, what information was allegedly downloaded by defendants; how can it be determined whether the downloading was legally permissible or impermissible; and what use was made of the downloads?

The time frame for the discovery should be defined. The Master has been advised that the relevant time period has been identified as January 1, 2004 to date. The Master has not seen a document that so defines the time, but accepts the representations made by the parties.

The Master is advised that plaintiffs have produced certain logs that are from September 2006 onward, but have no logs for the period January 1, 2004 through September 2006. Therefore, certain information that might logically be produced from the records of Oracle might for the time period up to September 6, 2006 have to come from the records of defendants.

**DEFENDANTS' REQUESTS FOR PRODUCTION OF DOCUMENTS # 44-47 AND INTEROGATORIES #4 & 7**

These requests seek further information regarding what was downloaded from Oracle's system. If this information is now available on Oracle's system, answers should logically come from Oracle's information base rather than from defendants. The briefing has resulted in some substantial agreements on the scope of this production.

1. *Oracle has agreed to produce its Internet log files* which recorded access to and downloadings from Oracle's system. It earlier agreed to do that with respect to 69 previously identified customers of TN, and has subsequently agreed to produce them for all of the remaining TN customers.

2. Oracle has agreed to produce the contract files for each customer, in so far as they contain documents reflecting the extent of the customer's license of Oracle software or the customer's support rights to various programs. Oracle has produced these files for the 69 identified customers, and again agrees to produce them for all of the remaining TN customers. The Master recommends that the definition of the documents to be produced be expanded to include licenses, service agreements, and whatever other Oracle records that can identify the customer's right to access the Oracle system.

3. The Master believes that the only remaining dispute in this category concerns the extent of Oracle's obligation to produce product mapping information; that is, documents showing what software applications were licensed to what customers,

and for what products. Oracle has agreed to produce communications between the primary sales contacts and the customers; internal records tracking customer losses to defendants; and its current best information about the reasons for those losses. Defendants want more detail in the mapping information, primarily to relate the information directly to defendants' sub-files, and the connections between the sub-files, the products and the contract. Defendants represents that they would otherwise have to do that work themselves on a one-by-one basis on each sub-file. On the other hand, Oracle represents that it does not presently have a system which would allow it to map to the sub-files; but rather Oracle would have to do the same one-by-one sub-file analysis as defendants would have to do.

Both sides appear to concede the relevance of this information, but neither side has a solution regarding access.

The Master therefore recommends that Oracle be directed, at its expense, to send an engineer, who may be accompanied by an Oracle attorney, to the premises of defendants to work with one of defendants' engineers to see if a method of access can be developed. That should be done forthwith. In the meantime, defendants' motion in this respect should be denied without prejudice, except as to material Oracle has agreed to produce.

Subject to the limitations discussed above, that discovery from Oracle to defendants should perform the function of identifying what was downloaded from Oracle's system by defendants or the customers, and should identify the written material by which the parties or the trier of the fact can determine whether the downloading was legally proper or improper (except for the necessary copyright analysis). The scope of the claims in this case should thereby be identified.

## ORACLE'S REQUEST FOR INFORMATION ABOUT THE USE OF THE DOWNLOADS

Oracle seeks further answers to numerous interrogatories, identified on page 5 of its motion of January 28th. In summary, the interrogatories seek to determine that after Oracle's software was downloaded, what happened to it? That is, how was it stored on defendants'

system; was it transmitted to the customers or others; how was it used; and where the information now resides. Those inquiries are logical next steps after identification of the improper downloads above. There is no doubt of the relevance of those interrogatories. That is, Oracle seeks to trace what happened to its information and who used it to do what.

Defendants have given some general narrative response to that inquiry. But its primary response is the production of a database to Oracle, essentially contending that the database is a permitted response under Federal Rule of Civil Procedure 33(d). Oracle points out two problems with that response. One is that not all of the information necessarily resides on that database. Some of the information is apparently available in defendants' emails, defendants' "onboarding" documents, and from its employees. The second problem is that Oracle contends that it cannot access that database from the information it has been given, so the database is not usable and is not in a proper Rule 33(d) response.

In regard to the first problem, it is undoubtedly true that all of the requested information may not be contained in the produced database. However, the database should contain a great deal of the necessary information. The Master recommends that defendants be require to continue their search for emails and onboarding documents for responsives to the inquiry, and be required conduct live interviews. However, pending completion of Oracle's access to the database, the Master recommends that no deadline as yet be set for defendants to do that additional searching.

With respect to the database, the present issue is that defendants contend that the information which they have provided is easily usable by Oracle; but Oracle contends that it cannot find a way to access the database to find the information which it has requested. This is obviously not a problem which either this Master or the Court can resolve, but is rather one which must be solved by the people who are technically familiar with the database and how to access it. A party using Rule 33(d) to simplify its discovery obligations has a responsibility to the Court and to the other party to produce that information in a manner which is at least accessible and usable. The Master therefore recommends that defendants be compelled to send, at their expense, an appropriate engineer, together with an attorney if defendants desire, to the offices of Oracle to meet with Oracle's engineers about how to access the database. The purpose of the meeting is <u>not</u> to discuss the information, or to state contentions with respect to it, but is

simply to assist Oracle to find the information in the database which has been provided. This should be done forthwith, since it is essential to so much of the further discovery. If defendants wish to avoid that expense and time consumption, they can instead provide Oracle with a further and more precise road map on where and how to find the relevant information on the database. Defendants' further request for narrative answers to some of its questions should be deferred until Oracle has reasonable access to the database and can determine whether the answers are sufficiently contained on that database.

## DOCUMENTS SUBMITTED TO UNITED STATES ATTORNEY

Requests numbers 55 and 84 by Oracle seek to compel defendants to produce documents relating to governmental investigations of the changes in this case. The Special Master is initially limiting his consideration of these requests to documents which were provided by defendants to the United States Attorney in response to a subpoena duces tecum.

The requested documents are certainly relevant, because they specifically refer to documents relating to the allegations in this action. And in a press release defendants linked the governmental request for information with this action.

Defendants' opposition is based on Federal Rule of Criminal Procedure No. 6 (e), arguing that such production would disclose grand jury proceedings. The Special Master disagrees. Defendants are not being requested to produce anything done by a grand jury, anything said during a grand jury proceeding, any grand jury testimony, or any information regarding grand jury witnesses, testimony, or proceedings. What is at issue here are simply documents which defendants assembled for production to the United States Attorney. The request deals with information flowing to the grand jury, and not with anything that discloses what was done within the grand jury. Such a request is not protected by Rule 6 (e); see United States vs. Reyes, 239 F.R.D. 591, 602-3 (N.D. 602-603, Cal 2006); United States vs. Dynavac, 6 F 3rd 1407 (9th Circuit 1993). While these requests may be somewhat duplicative of other documents being produced by defendants, the information supplied to US Attorney is already assembled, organized, and presented, so additional production does not cause defendants any undue burden.

The Special Discovery Master therefore recommends that this request be granted.

## THIRD PARTY SUPPORT

Defendants seek extensive documents and interrogatory information concerning support of Oracle's products by third parties. They want detailed information regarding the third parties and their contractual relationship to Oracle. This request is tangential at best.

The downloading in this case was done either by the customers themselves or by TN as the support company representing those customers. What is the relevance of Oracle's relationships with other third party support. That information does not appear to be directly or presently relevant. Defendant argues that it will have something to do with damages, and with possible abandonment of some copyrights by Oracle. However, such extensive third party discovery does not now appear to be justified by those narrow potential arguments. Defendants also argue that the third party support contracts may shed some light on Oracle's license agreements with TN or the customers. But at present we do not know what language of the license agreements, or other documents granting consent to the customers to download, will be in dispute in this case.

The Special Discovery Master therefore recommends that these requests be denied, without prejudice, until a later showing of relevance and appropriateness.

## COPYRIGHT INFORMATION

Defendants want to see all of the "things" which Oracle claims to be copyrighted. It seems simple enough that a party charged with copyright infringement has a right to see what was copyrighted. However, in this industry the "thing" is generally code, which is incorporated into various expressions. The first amended complaint, in paragraph 99 does identify the works claimed to be copyrighted, together with the dates of registration and the registration numbers. But the later allegations of infringement in the comlpaint refer to Oracle's copyrights generally, and do not specifically identify which of the listed copyrights it claims have been infringed.

Oracle states that it is willing to produce identifiable copyrighted material, but does not want to produce its so called "current development environment", on the ground that it goes beyond the copyright issues and is cumulative of what Oracle will to produce. Oracle is willing

to produce the copyright material in the form of individual downloads, cumulative updates, and initial releases, but not the current development environment.

The Discovery Special Master agrees with Oracle's analysis that the production of the current development environment would be duplicative of the first three. The Master recommends to the Court that Oracle's production be limited to individual downloads, cumulative updates, and initial releases.

However, this is really not the end of the necessity for Oracle to produce the copyrighted material which is alleged to be infringed. As a starting point, the Discovery Special Master recommends that Oracle be compelled to identify the specific copyrights from paragraph 99 of the first amended complaint, which it contends were infringed by the improper use of the downloaded information.

## 2004 ANTITRUST CASE

Defendants ask, although not presently encompassed within a specific discovery request, that in answering the discovery, Oracle search for information which it gathered and produced in the 2004 antitrust case pertaining to Oracle's acquisition of People Soft.

The Special Discovery Master recommends that this request be denied. The subject matter of the two proceedings, the 2004 antitrust proceeding and this downloading case, are different. While some information helpful to this case might be included in the antitrust material, it does not presently justify the burden of searching that information base. It is therefore recommended that the request be denied, without prejudice.

## DAMAGES

Defendants have propounded discovery requests on the subject of damages. Oracle has agreed to produce certain damages information (see Oracle letter of February 7, 2008 pages 10-11) but declines to produce certain other information at the present time.

The Special Discovery Master recommends that Oracle be compelled to produce the information which it has agreed to produce in the letter identified above. However, the Special

Discovery Master recommends that the remaining discovery requested on the subject of damages be deferred.

The parties presently have a lot to do in responding to each other's discovery requests on the issues of liability. And some of those responses might impact the scope of the damages claims and defenses. The Special Discovery Master therefore recommends that these requests be deferred until later in the discovery procedures.

In that regard, the Special Discovery Master also recommends that the procedures scheduled in the pre-trial order of September 25, 2007 be modified to include dates for the production of written discovery on the subject of damages. That discovery could be scheduled sometime before the supplying of expert reports.

The Special Discovery Master submits this Report And Recommendations to the District Court pursuant to paragraph 3(a) of the stipulation and order of January 8, 2008.

Dated: February 22, 2008

Charles A. Legge

Hon. Charles A. Legge (Ret.)
Special Discovery Master

EXHIBIT 4

BINGHAM McCUTCHEN LLP
CHRISTOPHER B. HOCKETT (SBN 121539)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
chris.hockett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com

Attorneys for Plaintiffs
Oracle Corporation, Oracle USA, Inc.,
and Oracle International Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br>v.<br><br>SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 07-CV-1658 MJJ<br><br>**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT TOMORROWNOW, INC.'S FIRST SET OF DOCUMENT REQUESTS** |

**PROPOUNDING PARTY:** Defendant TomorrowNow, Inc.

**RESPONDING PARTY:** Plaintiffs Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation

**SET NUMBER:** One

Plaintiffs Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation (collectively, "Oracle") hereby respond and object to Defendant TomorrowNow, Inc.'s ("SAP TN") First Set of Document Requests to Plaintiffs ("Requests") as follows:

**GENERAL OBJECTIONS**

1. Oracle objects to the Requests on the grounds that they are vague, overbroad, oppressive, harassing, and unduly burdensome.

2. Oracle objects to the extent that any Request seeks documents protected from disclosure by any evidentiary privilege, including without limitation the attorney-client privilege and work product doctrine. Oracle does not intend to produce any privileged documents.

3. Oracle objects to the Requests to the extent that they seek the production of documents that are not within Oracle's possession, custody, or control and to the extent that they purport to impose any duty to provide information and/or documents more readily available from sources other than Oracle. Absent mutual agreement with defendants, Oracle will produce no such third-party documents.

4. Oracle objects to the Requests to the extent that they seek third party-business or proprietary information subject to a confidentiality agreement and/or protective order and will not produce such materials absent a Court order.

5. Oracle objects to the Requests to the extent they seek to require Oracle to search for, review, or produce inaccessible information or materials. Oracle will not undertake to search for, review, or produce inaccessible data.

6. Oracle objects to the Requests to the extent that they purport to impose obligations different from or greater than those imposed by the Federal Rules of Civil Procedure.

7. Where Oracle has agreed to produce documents, such production will be

**RESPONSE TO DOCUMENT REQUEST NO. 24:**

Oracle objects to this Request on the grounds stated in its General Objections. Oracle further objects to this Request on the grounds that it seeks Documents in the possession of defendants or third parties. Oracle further objects to this Request on the grounds that it is duplicative of Request No. 23. Oracle further objects to this Request on the grounds that it calls for Documents protected by the attorney-client or work product privileges.

Subject to and without waiving these objections, Oracle responds that it will search for and produce non-privileged Documents relating to whether "SAP may have enhanced or improved its own software applications offerings" using information from Software and Support Materials, to the extent such Documents exist.

**DOCUMENT REQUEST NO. 25:**

All Documents relating to any Communications between Oracle, or anyone acting on its behalf, and any current or former TN employee concerning TN, SAP America, or SAP AG.

**RESPONSE TO DOCUMENT REQUEST NO. 25:**

Oracle objects to this Request on the grounds stated in its General Objections. Oracle further objects to this Request on the grounds that it is overbroad, unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence, in that such Communications are in no way limited to the issues raised by the Complaint. Oracle further objects to the Request on the grounds that it imposes an undue burden on Oracle to determine if any of its thousands of personnel have had Communications with any current or former SAP TN employee. Oracle further objects to the Request on the grounds that it calls for Documents protected by the attorney-client, work product, or other privileges.

Subject to and without waiving these objections, Oracle responds that it will not produce Documents responsive to this Request.

**DOCUMENT REQUEST NO. 26:**

All Documents relating to any Communications between Oracle, or anyone acting on its behalf, and any person or entity currently or formerly affiliated with TN, concerning TN, SAP America, or SAP AG.

**RESPONSE TO DOCUMENT REQUEST NO. 26:**

Oracle objects to this Request on the grounds stated in its General Objections. Oracle further objects to this Request on the grounds that it is overbroad, unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence, in that such Communications are in no way limited to the issues raised by the Complaint. Oracle further objects to the Request on the grounds that it imposes an undue burden on Oracle to determine if any of its thousands of personnel have had Communications with any person "currently or formerly affiliated" with SAP TN, which could be interpreted to include any employee of any entity that ever considered using SAP TN's services. Oracle further objects to the Request on the grounds that it is duplicative of Request No. 25. Oracle further objects to the Request on the grounds that it calls for Documents protected by the attorney-client, work product, or other privileges.

Subject to and without waiving these objections, Oracle responds that it will not produce Documents responsive to this Request.

**DOCUMENT REQUEST NO. 27:**

For all former Oracle employees who are, or have been, employees of TN, all employment agreements, nondisclosure agreements, and other Documents sufficient to show their terms of employment with Oracle.

**RESPONSE TO DOCUMENT REQUEST NO. 27:**

Oracle objects to this Request on the grounds stated in its General Objections. Oracle further objects to this Request on the grounds that it is overbroad, unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence, in that such employment agreements, nondisclosure agreements, or other Documents related to terms of employment are in no way connected to the issues raised by the Complaint. Oracle further objects to the Request on the grounds that it imposes an undue burden on Oracle to determine if any of its thousands of personnel have ever become employees of SAP TN. Oracle further objects to the Request on the grounds that it calls for Documents protected by the attorney-client, work product, or other privileges, as well as individuals' privacy rights.

defendants.

**DOCUMENT REQUEST NO. 118:**

Pursuant to Rule 34(a)(2) of the Federal Rules of Civil Procedure, a complete set of log-in credentials, and all necessary software (including Change Assistant), sufficient to permit Defendants' counsel, for the sole purpose of defending against Oracle's claims in this litigation, access to inspect Customer Connection and all similar Oracle support websites or FTP sites.

**RESPONSE TO DOCUMENT REQUEST NO. 118:**

Oracle objects to this Request on the grounds stated in its General Objections. Oracle further objects to this Request on the grounds that it is overbroad and burdensome, as only access to and downloads from Customer Connection are at issue in this litigation. Documents related to Downloads from any other Oracle website are unrelated to this case, and defendants do not need to inspect them in order to defend against Oracle's claims in this litigation. Oracle further objects to this Request on the grounds that it calls for giving defendants' counsel access to Oracle's trade secrets and other proprietary information.

Subject to and without waiving these objections, Oracle responds that it will meet and confer with defendants to determine an appropriate way to permit defendants' counsel to inspect Customer Connection.

DATED: September 14, 2007

Bingham McCutchen LLP

By: ______________________
Zachary J. Alinder
Attorneys for Plaintiffs
Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation

## PROOF OF SERVICE

I am over 18 years of age, not a party to this action and employed in the County of San Francisco, California at Three Embarcadero Center, San Francisco, California 94111-4067. I am readily familiar with the practice of this office for collection and processing of correspondence by U.S. Mail and Electronic Mail, and they are deposited and/or sent that same day in the ordinary course of business.

Today I served the following documents:

**PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANT TOMORROWNOW, INC.'S FIRST SET OF DOCUMENT REQUESTS**

☒ (BY ELECTRONIC MAIL) by transmitting via electronic mail document(s) in portable document format (PDF) listed below to the email address set forth below on this date.

☒ (BY MAIL) by causing a true and correct copy of the above to be placed in the United States Mail at San Francisco, California in sealed envelope(s) with postage prepaid, addressed as set forth below. I am readily familiar with this law firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence is deposited with the United States Postal Service the same day it is left for collection and processing in the ordinary course of business.

Robert A. Mittelstaedt, Esq.
Jones Day
555 California Street
26th Floor
San Francisco, CA 94104
Tel: (415) 626.3939

ramittelstaedt@JonesDay.com

Tharan Gregory Lanier, Esq.
Jane L. Froyd, Esq.
Jones Day
1755 Embarcadero Road
Palo Alto, CA 94303
Tel: (650) 739-3939

tglanier@JonesDay.com
jfroyd@JonesDay.com

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made and that this declaration was executed on September 14, 2007, at San Francisco, California.

Rosaleen Doran
Rosaleen Doran

EXHIBIT 5

Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 774-2644
Fax: (415) 982-5287

Special Discovery Master

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,<br><br>Defendants. | **CASE NO. 07-CV-1658 (MJJ)**<br><br>**JAMS Reference No. 1100053026**<br><br>**REPORT AND RECOMMENDATIONS RE: DISCOVERY HEARING NO 2** |

**JURISDICTION**

The undersigned has been appointed the Special Discovery Master pursuant to an order of United States District Judge Martin J. Jenkins, dated January 8, 2008. The jurisdiction of the Special Discovery Master is to hear all discovery disputes and report and make recommendations to the Court with respect to the resolution of disputes. The Master has recently been advised that this case has been reassigned to the Hon. Phyllis Hamilton, United States District Judge, and this

Report and Recommendations Re: Discovery Hearing No. 2 is therefore being submitted directly to her.

## DISCOVERY HEARING No. 2

The parties each filed discovery motions by letters to the undersigned dated February 19, 2008, and filed oppositions to one another's motions on February 25, 2008. In addition, the Master received from defendants a compilation of authorities regarding the issue of abandonment of copyrights, and a declaration by Mr. Mark Kreutz regarding the security designation of the SAS database. The motions were heard on March 4, 2008. Subsequent letters were submitted, and the record was closed on March 14, 2008.

This is the report and recommendations of the Special Discovery Master to the Court with respect to those motions.

## SECURITY LEVEL OF SAS DATABASE

Defendants have produced to plaintiffs their so-called SAS database. They did so as a Federal Rule 33 (d) response to discovery requests by Oracle. In producing the database, defendants marked it as "highly confidential" under the stipulated protected order, dated June 7, 2007. The "highly confidential" designation severely limits the persons to whom the data base can be shown.

Oracle has made a substantial showing that the "highly confidential" designation is materially impacting its ability to prepare this case. Because of the designation, Oracle cannot show the information to necessary personnel of the general counsel's office of Oracle, and cannot show it to other relevant information sources within Oracle, including engineers and non-technical persons. Oracle therefore moves to have the security level reduced to "confidential." Defendants oppose.

The information contained in the SAS is apparently very broad in scope, covering much TN's database. Indeed, it was for that reason that defendants produced the database under Federal Rule 33 (d), as a substitute for getting the information from numerous internal sources and sorting the information into separate databases or into paper form.

The Special Discovery Master believes that there is a basic inconsistency in defendants' position in this motion. That is, instead of providing specific answers to interrogatories and document requests, defendants tendered the database under Rule 33(d) as being the answers. However, defendants are at the same time, by virtue of the "highly confidential" designation, severely restricting plaintiffs' access to and use of the information. The Master believes that defendants should not have it both ways.

The definition of "highly confidential" is contained in the stipulated protected order, paragraph No. 4: "only extremely sensitive, high confidential, non-public information, consisting either of <u>trade secrets</u> or other highly confidential documents <u>relating to current or future business plans or strategy</u>, the disclosure which...would be likely to cause <u>competitive</u> or <u>business</u> injury..." (emphasis added). This definition appears not to encompass all information which defendants believe are secret, or sensitive, or confidential, or non-public, but only to those which "relate to current or future business plans or strategies." As the Special Discovery Master understands the database, little of its information meets that definition. Indeed, Mr. Kreutz of defendant TN describes the information in the database in paragraphs 2 and 3 of his declaration of March 3rd. Those descriptions, although obviously general because of the necessity for verbal descriptions of the information, indicate that much if not all of the information would not meet the requirement of being "likely to cause competitive or business injury." Hypothetically, all information from a company's records, particularly regarding customers, <u>could</u> be misused and some competitive or business injury could result. But the paragraph No. 4 definition is obviously describing a narrower scope. And eliminating the "highly confidential" designation here still leaves defendants with substantial protections. That is, paragraphs 8 and 9 of the stipulated protective order provide that "confidential" information, and not just the "highly confidential" information, can only be disclosed to persons with a need to know in this litigation, can be used solely for the purposes of preparation for trial, and can not be used by the receiving party for any other purposes, including business or commercial purposes. And those limitations expressly survive the termination of this litigation.

Defendants have suggested that plaintiffs can meet and confer with defendants' counsel about specific data or specific persons to whom Oracle wants to show the data. And at the hearing, the Special Discovery Master also made inquires about such procedures. However, that

does not appear workable, in view of the large quantity of data involved and the large number of persons who might potentially need to see it. Further, that suggestion puts the burden of proof on the wrong side. Paragraph 16 (c) provides that "the burden of proof in any such challenge proceeding shall be on the Designated Party", in this case on defendants. Other than Mr. Kreutz's declaration, defendants' opposition to this motion, (letter of February 25, 2008, pages 1 and 2), does not really support defendants' contentions; it simply restates defendants' conclusion that the database is highly sensitive information that warrants the "highly confidential" designation. That is not enough to sustain defendants' burden of proof.

The Special Discovery Master therefore recommends that plaintiffs' motion to down-grade the confidentiality designation of the SAS database from "highly confidential" to "confidential" be granted. Further, two other security mechanisms to protect defendants' information might be considered: First, that not withstanding the above recommendation, defendants be entitled to present to plaintiffs, and subsequently to the Master and to the Court, specific items of information from the SAS database which they believe should still be given the "highly confidential" designation. Second, that all persons to whom the information in the SAS database is shown must receive a written statement that mirrors the provisions of paragraph 8 of the stipulated protective order.

## TIMING OF PRODUCTION

Plaintiffs object to the alleged lack of promptness with which discovery information is produced by defendants to Oracle. After discussion, the parties agreed as follows: The information from defendant TN will be supplied to plaintiffs by the end of March, and the information from the SAP Companies will be supplied by April 15, 2008.

## IDENTIFICATION OF INDIVIDUALS

Plaintiffs requested that defendants be obliged to provide more information about individuals identified in their discovery responses. However, the Special Discovery Master was advised that the parties have reached an agreement on this issue, and so no further recommendation is being made.

**TERMINATION INFORMATION**

Defendants request the plaintiffs give further responses to document request number 38: "all documents relating to Oracles policies and procedures (if any) for terminating a customers' access to Customer Connection after the customer's maintenance end date has passed."

At oral argument, defendants identified their primary objective as seeking information that may establish that plaintiffs have abandoned some of their copyright protections. Defendants want to know whether Oracle, in any systematic way, lets a customers have access to its database even after the customer has terminated.

The Master does not believe that an affirmative defense of "abandonment of copyright" has been specifically alleged in defendants' answer, although that issue may be raised as a part of one of the other affirmative defenses or by defendants' general denials. Defendants have submitted a compendium of cases on the issue of "abandonment of copyright", which is a collection of cases from around the United States, primarily United States District Court decisions. However, neither side has requested a ruling on the scope of the principle of abandonment of copyright in this case, and whether it includes a failure to police access to copyrighted material after a customer terminates. That issue is not substantively ripe, and may be an issue that has to be directed to Judge Hamilton rather than to this Special Discovery Master.

In any event, the Special Discovery Master does not believe that the issue is now appropriate for decision, even with respect to the requested discovery. The reason is that the request is overly broad for present discovery needs. Plaintiffs have tendered some relevant information, and the Master does not believe that the discovery should now require Oracle to do a review of all of its customers, past and present.

Questions regarding termination might become relevant to possible issues of the scope of plaintiffs' damages, causation, consent, acquiescence, estoppel or waiver, even short of a claim of total abandonment of copyrights. Those other questions regarding termination would probably have to start with specific customers; that is, questions regarding specific customers whose information Oracle alleges to have been improperly taken by defendants. Oracle has already offered to provide the relevant information, primarily as to the 69 customers already identified by Oracle; see Oracle's letter of February 25, pages 2 and 3.

The Master recommends that Oracle be compelled to produce the information which it has agreed to produce; and further recommends that Oracle also be compelled to produce the information as to additional customers when and if Oracle identifies additional customers as ones whose information was improperly taken by defendants and as to whom Oracle will seek damages. The Master further recommends that defendants' request for additional information on the issue of abandonment be denied, without prejudice, until such time as some reasonable possibility of legal abandonment has been demonstrated.

## AUDITING OF CUSTOMERS' DOWNLOADING

Defendants' document requests 49 and 50 ask for documents pertaining to Oracle's right to audit its customers' downloads, and for Oracle's policies and procedures for determining when to enforce such rights.

In its response to this motion, (see letter of February 25, page 4): Oracle agrees (a) to provide responsive documents from the 350 customer license agreements that Oracle has agreed to produce; (b) to look for additional audit documents in the files of the custodians identified in connection with the overall collection and review related to the 69 currently identified customers; and (c) to provide any general policies and procedures related to the audit rights for the Customer Connection website that can be located by a reasonable search.

The Master believes that this is an adequate response and good faith attempt to provide the information, and recommends that Oracle should not presently be required to produce any further information in response to these requests.

## COMMUNICATIONS BETWEEN PLAINTIFFS AND DEFENDANTS

Defendants' requests for documents numbers 25-27 seek all communications, and indeed all documents <u>relating to</u> communications, between anybody at Oracle and anybody at defendants. The requests are unlimited in scope, except that they should "concern" defendants.

The scope of this request is staggering. Combining the personnel of all of the companies, the number of people involved totals thousands. The present scope of the request is unreasonable. At the oral argument, it appears that defendants' primary interest is in communications which may have expressed plaintiffs' consent to defendants to use the

information at issue. That is of course a relevant subject matter, if such documents exist. But making inquires of thousands of employees is not the way to do it.

Defendants seek to justify since such a broad request by reference to a communication of plaintiffs allowing a customer to provide defendants with a demonstration CD of human resource software which had been licensed to a customer. The Master is of the opinion that disclosing a CD or software to a customer who was licensed to use it is not a sufficient basis to require the production, or even inquiries for production, of such a vast request.

Oracle has agreed to produce documents responsive to these requests that come from the voluminous custodial files which it has already collected. The Special Master recommends that Oracle be required to produce those things which it has tendered, but that the requests for all communications, and all documents relating to communications, and all employment agreements of Oracle employees who became employees of defendants be denied as overly burdensome and of limited relevance.

## CUSTOMER COMPLAINTS

Defendants' document request number 64 asks for all documents relating to customer complaints about Oracle's services. This is again a staggering request in view of the large size of the companies. At the oral argument, defendants indicated that the issue on which this discovery is sought is the causation of damages; that is, did Oracle lose customers because of misconduct by defendants or because of the customers' dissatisfaction with Oracle.

In its reply to this motion, Oracle has agreed to produce it's "at risk" reports, which apparently compile the reasons for termination relating to customers listed in the reports. Oracle is also producing the contract files for all the customers who migrated to SAP, including correspondence. And Oracle is producing complaints about Customer Connection support from sales and support representive custodians that relate to the current list of 69 customers.

The Special Discovery Master recommends that Oracle be ordered to provide that information. The Master also recommends that as additional customers are identified by plaintiffs as being a basis for the damages claims, similar information be provided as to those customers. Since the issue is causation of damages, and since plaintiffs' damages claims will probably have to start with the loss of specific customers, the above methodology should give

defendants the information base which they would need in order to dispute the causation of Oracle's claimed customer losses.

## ACCESS TO CUSTOMER CONNECTION AND TO CHANGE ASSISTANT

Defendants' document requests 52 and 118 seek documents regarding the web display of Customer Connection, and all necessary software, including Change Assistant, sufficient to permit defendants' counsel to inspect Customer Connection and similar Oracle websites.

Plaintiffs have agreed to exchange all of the versions of Change Assistant in exchange for defendants' versions of Titan. This exchange has been agreed upon. And plaintiffs' have also agreed to produce the requested databases as "highly confidential" under the protective order. At the hearing of the motions, the above appeared to resolve this dispute, except as to the <u>source code</u> of the Change Assistant software. The parties agreed to a further briefing schedule on the subject of the source code, which was completed on, March 14.

The Special Master recommends that this request be denied at the present time, without prejudice. Oracle is producing the Change Assistant. The complaint does not appear to allege any theft, improper downloading or use of Change Assistant. The present relevant question appears to be <u>what</u> Change Assistant can do for a user in accessing Customer Connection, not <u>how</u> Change Assistant does it. In addition, Oracle represents that the Oracle engineers who will confer with defendants under the Report of February 25, 2008, pg 4, will also assist in defendants' need for "mapping" information without the necessity for enquiry into the source code. The Master is prepared to reconsider this recommendation upon an adequate showing of why, under the issues in this case, defendants need to know <u>how</u> Change Assistant functions.

## PROGRESS OF DISCOVERY

At the hearing on March 4th the Special Discovery Master also made some general inquires of both sides as to the overall progress of the discovery. Discovery is progressing, but slowly. Both sides are hard at work on discovery responses, but the size of the discovery needs on both sides is very extensive. The Special Discovery Master will provide more specific observations on the general progress of discovery as the hearings warrant.

The Special Discovery Master submits this report and recommendations to the Honorable Phyllis Hamilton pursuant to paragraph 3(a) of the stipulation and order of January 8, 2008.

Respectfully submitted.

Dated: March 19, 2008

Charles A. Legge

Hon. Charles A. Legge (Ret.)
Special Discovery Master

## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Oracle Corporation, et al. vs. SAP AG, et al.
Reference No. 1100053026

I, Melissa Ornstil, not a party to the within action, hereby declare that on March 19, 2008 I served the attached Report and Recommendations Re: Discovery Hearing No. 2 on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, via U.S. Mail, at San Francisco, CALIFORNIA, addressed as follows:

Robert A. Mittelstaedt
Jones Day
555 California St.
26th Fl.
San Francisco, CA 94104 U.S.A.
Tel: 415-626-3939
Email: ramittelstaedt@jonesday.com

Tharan Gregory Lanier Esq.
Jones Day
1755 Embarcadero Rd.
Palo Alto, CA 94303
Tel: 650-739-3939
Email: tglanier@jonesday.com
Fax: 650-739-3900

Scott W. Cowan Esq.
Jones Day
717 Texas
Suite 3300
Houston, TX 77002-2712
Tel: 832-239-3721
Email: swcowan@jonesday.com

Jason S. McDonell Esq.
Jones Day
555 California St.
26th Floor
San Francisco, CA 94104 U.S.A.
Tel: 415-875-5820
Email: jmcdonell@jonesday.com
Fax: 415-875-5700

Zachary J. Alinder Esq.

Geoffrey Howard Esq.

Bingham McCutchen LLP
Three Embarcadero Center
Suite 1800
San Francisco, CA 94111
Tel: 415-393-2226
Email: zachary.alinder@bingham.com

Bingham McCutchen LLP
Three Embarcadero Center
Suite 1800
San Francisco, CA 94111
Tel: 415-393-2000
Email: geoff.howard@bingham.com
Fax: 415-393-2286

Dorian Daley Esq.
Oracle USA, Inc.
500 Oracle Parkway
MS 5op7
Redwood City, CA 94070
Tel: 650-506-4846
Email: dorian.daley@oracle.com

Jennifer Gloss Esq.
Oracle USA, Inc.
500 Oracle Parkway
MS 5op7
Redwood City, CA 94070
Tel: 650-506-4846
Email: jennifer.gloss@oracle.com
Fax: 650-506-7114

- Clerk of the Court
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102 USA
Tel: 415-556-3167
Email: NOT AVAILABLE

Chad Russell
Bingham McCutchen LLP
Three Embarcadero Center
Suite 1800
San Francisco, CA 94111
Tel: 415-393-2000
Email: chad.russell@bingham.com
Fax: 415-393-2286

Bree Hann Esq.
Bingham McCutchen LLP
Three Embarcadero Center
Suite 1800
San Francisco, CA 94111
Tel: 415-393-2000
Email: bree.hann@bingham.com

Donn P. Pickett Esq.
Bingham McCutchen LLP
Three Embarcadero Center
Suite 1800
San Francisco, CA 94111
Tel: 415-393-2000
Email: donn.pickett@bingham.com
Fax: 415-393-2286

Holly A. House Esq.
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111 USA
Tel: 415-393-2000
Email: holly.house@bingham.com

Jane L. Froyd Esq.
Jones Day
1755 Embarcadero Rd.
Palo Alto, CA 94303
Tel: 650-739-3939
Email: jfroyd@jonesday.com
Fax: 650-739-3900

Joshua L. Fuchs Esq.
Jones Day
717 Texas
Suite 3300
Houston, TX 77002-2712
Tel: 832-239-3939
Email: jlfuchs@jonesday.com

I declare under penalty of perjury the foregoing to be true and correct. Executed at San Francisco, CALIFORNIA on March 19, 2008.

Melissa Ornstil
JAMS The Resolution Experts
melissaornstil@jamsadr.com

EXHIBIT 6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

BEFORE: CHARLES A. LEGGE, JUDGE (Ret.)

--o0o--

ORACLE CORPORATION, a Delaware Corporation; ORACLE, USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,

Plaintiffs,

vs. No. 07-CV-01658-MJJ

SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,

Defendants.
______________________________/

HEARING IN RE DISCOVERY ISSUES

______________________________

Tuesday , March 4, 2008

JAMS
2 Embarcadero Center, 15th Floor
San Francisco, California

REPORTED BY: WENDY E. ARLEN, CSR #4355, CRR, RMR
JOB 406804



f330ae8e-1c3f-46b0-b5c5-8449d6999fcb

MR. HOWARD: And the equitable core of all those defenses is the same as well. Particularly with respect to audit, you know, the failure to do that is not an overt act, and what Oracle did, Oracle is not required to sue all of its customers in order to be able to enforce as against somebody like TN going in and taking things to use for its business. So this really is so far afield.

MR. McDONELL: Again, he keeps circling around and around under the same argument again. Under the abandonment doctrine, it's the finding that there has been a widespread dissemination and use without enforcement. That is the predicate fact.

JUDGE LEGGE: Submitted?

MR. McDONELL: Submitted.

JUDGE LEGGE: Next numbers 25 and 27. I find number 25 just absolutely staggering in breadth.

MR. McDONELL: That's why we've narrowed it in the process.

JUDGE LEGGE: What have you limited?

MR. McDONELL: In the meet and confer, we've limited it to contacts with TomorrowNow employees about TomorrowNow's business. And I believe that's --

JUDGE LEGGE: Well, I wouldn't view that as a narrowing. It seems to me that concerning TN,



f330ae8e-1c3f-46b0-b5c5-8449d6999fcb

TomorrowNow, it necessarily means its business. It's the aspect of all Oracle employees contacting any current or former TN employees. It's that part, not the subject matter part of it?

MS. GLOSS: It's the search, not the subject.

JUDGE LEGGE: Yeah, I just find staggering.

MR. McDONELL: But how much contact have Oracle employees had with their competitor, TomorrowNow? It's likely limited.

JUDGE LEGGE: It probably is.

MR. HOWARD: Exactly.

JUDGE LEGGE: But how can they answer this question without going to everybody in the office?

MR. McDONELL: By doing electronic searches on the term TomorrowNow. Identify the number of people who have had any reason whatsoever to have contact with TomorrowNow and then conduct an electronic search for the name TomorrowNow.

JUDGE LEGGE: Now, what are you going to get out of this? Suppose something pops up? What do you hope to get? Consent?

MR. McDONELL: Consent would be one example. We have cited in the brief to a document which I have copies of here which is precisely that. It's a historical record that Oracle consented to one of its



f330ae8e-1c3f-46b0-b5c5-8449d6999fcb

different.

JUDGE LEGGE: I just misunderstood. I thought by a demo CD you mean a CD that Oracle probably made for the purpose of selling its products to -- or going out and licensing new customers.

MR. HOWARD: In their brief they say that this document shows Oracle knowingly consented to its customer providing SSM's, software and support materials, which are defined in the first amended complaint, for the purpose of TN supporting the customer. That their representation in their brief.

And what we pointed out is this document does nothing of the sort. They know what an SSM is. They downloaded tens of thousands of them onto their servers. They know that's the basis of the claim in the complaint. And this document doesn't have anything to do with SSM's.

But the bigger point, your Honor, is that Oracle has never said and it would never say that TomorrowNow or a third-party support provider like TomorrowNow can never have its fingers on some form of software. There are circumstances in which the third-party support providers are legitimately providing support, and Oracle welcomes that competition.

The question is whether they're doing it within



f330ae8e-1c3f-46b0-b5c5-8449d6999fcb

the scope of the customer's license or not. That's why Oracle brought this case is because TomorrowNow is downloading materials that the customers weren't entitled to and, therefore, TomorrowNow wasn't allowed to access or use.

The problem with this document is that it doesn't say anything. It doesn't say anything about, first of all, an SSM, but also whether or not this was something that TomorrowNow was allowed to do or not. It just doesn't have any bearing on any allegation. And what they have wanted us to do, which we confirmed in discovery, is they want us to go through -- we literally asked them, Do you intend us to go through the files of all 69,000 employees to get this background chatter with an unknown group of TomorrowNow current and former employees? And they said yes.

And that -- we don't know who they are, we don't know how to find it, there is no business purpose for that communication with TomorrowNow because there's no open, formal, approved, official open channel of communication with TomorrowNow. I mean, this is just the most egregious kind of fishing expedition.

JUDGE LEGGE: I understand what you have agreed to do is one sentence on page 4 of your February 25th letter. "Oracle has already agreed to produce documents



f330ae8e-1c3f-46b0-b5c5-8449d6999fcb

responsive to those requests from numerous custodian files it has collected." So you are going to go through the custodial -- custodian files you have collected for purposes of seeing whether there is anything responsive.

MR. HOWARD: Yes, we have, your Honor, because we've already collected it. I want to make it very clear, I want to make sure we don't get hung on our own petard here. We agreed to a vastly overbroad collection and search with respect to these custodians, and it's not -- we're not agreeing to do it because we think this is relevant and we're not agreeing to do it because we think it's proper, but we do have the stuff already collected and we can do a term search for TomorrowNow and we can see what that turns up.

That won't, unfortunately, turn up a specific communication with somebody at TomorrowNow because TomorrowNow could turn up for other reasons, but what we strongly resist is, and regardless of what happens in this case, that we would have to go out beyond this current group of custodians, go to the extraordinary expense of collecting additional information just to do this term search that Mr. McDonell has suggested is appropriate to find this gossip between low level employees. We think that's absolutely improper.

MR. McDONELL: Your Honor, the one thing that I



f330ae8e-1c3f-46b0-b5c5-8449d6999fcb

have never heard them say is that these identified custodians from whom they will seek this information is for some reason a logical group of custodians who might have had communications with TomorrowNow. I mean, at some point in the process they have to exercise some kind of thought and identify custodians who would have been likely to have had communications with TomorrowNow, if any, and what they're doing, it seems to me, is largely arbitrary.

They're saying, well, we've collected documents from certain persons and we'll look at their files to see if these kind of communications, but they have never said that they've made a good faith effort to determine that it is that group of custodians who would likely have had communications with TomorrowNow.

JUDGE LEGGE: Well, aren't you both on both sides first of all going to the custodians who seem like the most knowledgeable custodian to have information that you want and they want? Aren't you both doing that?

MR. HOWARD: Well, I hope so. We certainly are, but let's be clear. We objected to this request and said that we would not produce documents responsive to it. It's overbroad, it's too far afield, it's burdensome.



f330ae8e-1c3f-46b0-b5c5-8449d6999fcb

As a compromise, we said that the custodians that we have identified and collected from that we already have where there is no incremental expense and effort required to go out and collect material, we'll search them and we'll produce if there's communications that we can determine as to a current or former TomorrowNow employee. But the idea that we would have to go through the entire company is --

JUDGE LEGGE: No, I understand what you're saying.

MS. GLOSS: And I believe we did tell them that we don't believe that as a business practice, as a purpose of running our company, we don't believe that there are categories of Oracle employees who as part of their jobs would be expected to be communicating with TomorrowNow employees.

We think to the extent those kind of communications come up they're more likely to be on a friendship level because TomorrowNow employees used to work with PeopleSoft and J.D. Edwards employees many years ago. But as a business practice, we don't think that there are identifiable groups of people who we think should be having these conversations.

JUDGE LEGGE: Do you have a standard operating procedure telling your employees not to talk to



f330ae8e-1c3f-46b0-b5c5-8449d6999fcb

without questioning whether that's an appropriate group of people to be searching for.

JUDGE LEGGE: Okay. Go ahead.

MR. HOWARD: Well, at the risk of repeating myself, your Honor.

JUDGE LEGGE: Don't do that.

MR. HOWARD: We've never represented that we identified these custodians in an effort to respond to this request. We said no to this request. As a compromise --

JUDGE LEGGE: Now, you're comprising.

MR. HOWARD: Right, with the existing group of custodians. I just didn't want there to be any misunderstanding about that.

JUDGE LEGGE: Okay. Anything further?

MR. McDONELL: Submitted.

JUDGE LEGGE: All right. Now, number four is again one that I find rather staggering in scope. Requiring Oracle to ferret out all customer complaints it's ever had. Let's get the precise language here. I don't want to exaggerate it.

All documents relating to customer complaints. Okay. That's pretty staggering with a company the size of Oracle. What do you think information like this is relevant to in this case? What's our relevancy here?

JUDGE LEGGE: That's right. That's what I recall.

MR. COWAN: One other issue, Judge, because I want to make sure we cover this before we close, is as we are gathering information to account to our client on what, if anything, they intend to do in response to your order with respect to possibly seeking any additional review from the district court, one issue had to do with the portion of your order on page 6, I believe, where you address the DOJ production.

JUDGE LEGGE: Right.

MR. COWAN: And from reading it, our interpretation of that is is that you have ordered that the documents themselves that were provided by defendants to the U.S. Attorney in response to the subpoena be produced.

JUDGE LEGGE: Yeah.

MR. COWAN: We do not read your recommendation that the subpoena itself has to be produced or any or correspondence or communication with the U.S. Attorney. Is that a correct reading?

JUDGE LEGGE: Yeah, it's documents. The bundle of stuff that was packaged up and sent to the U.S. Attorney.

MR. COWAN: But not any of the cover letters or



f330ae8e-1c3f-46b0-b5c5-8449d6999fcb

anything, the physical documents that were delivered.
JUDGE LEGGE: Yeah, the documents.
MR. COWAN: That were delivered to the U.S. Attorney, not the subpoenas themselves, covering correspondence or anything like that.
JUDGE LEGGE: It's another place where your underlying information is. We're not concerned here at the moment with any admissions or things like that. It's the source of information.
MS. HOUSE: And we may revisit that, your Honor.
JUDGE LEGGE: You do what you want to do.
MS. HOUSE: I just want to, you know, that there is --
JUDGE LEGGE: Let me see if I can clarify language here.
MR. COWAN: Lines 10 through 12 on page 6.
JUDGE LEGGE: That's what I'm reading. Limiting my consideration to these requested documents which were provided by defendants to U.S. Attorney in response to the subpoena. That's what I was talking about.
MR. COWAN: Right, the actual documents themselves.
JUDGE LEGGE: Yes, that's right.

# CERTIFICATE OF CERTIFIED SHORTHAND REPORTER

I, WENDY E. ARLEN, hereby certify that I am a Certified Shorthand Reporter; that I reported in shorthand writing the foregoing matter at the time and place therein stated; that the foregoing pages are a full, true and complete transcript of my said shorthand notes and is a full, true and correct record of the proceedings had in said matter at said time and place.

Dated: March 11, 2008.

WENDY E. ARLEN
Certified Shorthand Reporter
California License #4355

EXHIBIT 7

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION
BEFORE: CHARLES A. LEGGE, JUDGE (Ret.)

---oOo---

| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation; ORACLE, USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation, | ) No. 07-CV-01658-MJJ |
| Plaintiffs, | ) |
| vs. | ) CERTIFIED COPY |
| SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive, | |
| Defendants. | |

HEARING IN RE DISCOVERY ISSUES

---

Wednesday, February 13, 2008

At:

JAMS
2 Embarcadero Center, 14th Floor
San Francisco, California

Reported by:
GEORGE SCHUMER, CSR 3326 (406308)

electronic and paper form.

I just want to emphasize a couple of points. First of all, the defendants have not, and do not intend to, refuse to provide any particular document, or any particular information, solely on the ground that it was also produced to the grand jury. Anything that was produced to the grand jury, if they ask for it separately, then they will have gotten it, and will get it. We are not refusing to produce any particular information just because it was also produced to the grand jury.

But what they are seeking is, in our view, quintessentially grand jury information. They are trying to determine the scope of the grand jury investigation, and the nature of the grand jury investigation, and that's what 6(e) protects.

JUDGE LEGGE: I have a difficult time with the claim that information requested from a third party about what is said to a grand jury is grand jury protection. Rule 6 exists primarily to protect what goes on within the grand jury: what witnesses are called; what the witnesses said; who took the Fifth or who didn't take the Fifth; what are they going to do next; the deliberations; their arguments with one another; the arguments the US attorneys make to them, and their response to the US attorneys.

That is what Rule 6 is about.

MS. BOERSCH: Correct.

JUDGE LEGGE: And I don't think a person supplying information to a grand jury -- that information is cloaked by a grand jury privilege.

MS. BOERSCH: I think the case law actually suggests that it is. If you look at the Sulfuric Acid case, and a couple of the other cases we cite, the courts have said, "Look, if all you are asking for is you don't want the documents for their own intrinsic value; all you want to know is what is it the grand jury is asking for" -- that's Grand Jury information; that tells you what direction the Grand Jury is considering, what direction they are going, and where they might go in the future, and that's what is protected by 6(e). If there is a request for a particular document, like I said, we're not going to object to producing any particular document on that ground.

It is the question of what is it that the grand jury asks you for that would reveal grand jury information, and we're objecting to having to provide a road map to what the grand jury is seeking from us, to the plaintiffs in this case.

JUDGE LEGGE: How long ago did you get the subpoena?

MS. BOERSCH: The first one we got in June, I

CERTIFICATION

I, GEORGE SCHUMER, a Certified Shorthand Reporter in the State of California, hereby certify that said proceedings were taken at the time and place therein stated; that said proceedings were reported by me and thereafter prepared under my direction into typewriting, by computer; and that the foregoing is a full, complete and true record of said proceedings.

DATED: February 21, 2008.

GEORGE SCHUMER, CSR No. 3326

case -- why do you want to fiddle around with the government stuff?

MS. HOUSE: If there is a nice presentation to the government that talks about the facts and history, and lays it all out in a nice, easy way, that is an admission that obviously is very useful.

JUDGE LEGGE: Corroboration and possible impeachment.

MS. HOUSE: And clarity. What you have heard today, and what you have seen today, is nothing but obtuse and vague references. We have no indication at all that we have gotten all -- or how much -- of the production that has been done to the government, let alone we clearly haven't been produced any of the voluntarily created documents, and communications with the government -- none of which would be remotely covered by Rule 6(e).

You've got to understand Rule 6(e) -- this is a backstop for us. We're allowed to check against -- this is pretty serious stuff, and we're allowed to check against what they have produced to us, and the historical documents that they have produced to the government. The problems of not having a reply brief is we had never seen any of these authorities before. I would like to hand you --

JUDGE LEGGE: I'll get to that issue whether

there is a privilege here or not. I'm starting with --

MS. HOUSE: It is relevant to --

JUDGE LEGGE: Relevant, yes, there's no doubt about it. But if you get the answers the other way, why do you burden them or us with producing such stuff?

MS. HOUSE: They don't make a burden because they can't. It is not a burden.

What they have produced is probably already on burned CD's; there's no burden, and they don't even object on burden grounds, because that's clearly not a credible response to that particular request.

JUDGE LEGGE: Aren't they better off spending their time trying to massage the data to give to you in direct response to the interrogatories? Indirectly by shipping another truckload of stuff over to you --

MS. HOUSE: We'll take the truckload, because we believe they will have massaged that data in a way that is very easily understood and comprehensive. And we don't have that. And we don't have the time to wait while, you know, we get this stuff trickled in, and you make a decision, and it gets appealed, and two months more down the line.

JUDGE LEGGE: You say two months down the line; wait a minute.

In every one of these things, I'm going to try to

EXHIBIT 8

PeopleSoft, Inc.
4305 Hacienda Drive
P.O. Box 8015
Pleasanton, California 94588-8615

July 10, 2002

**Via FEDERAL EXPRESS**

Mr. Seth Ravin
TomorrowNow, Inc.
720 North Rosemary Drive
Bryan, Texas 77802

Dear Mr. Ravin:

It has come to our attention that TomorrowNow has written a letter to PeopleSoft customers in which it offers those customers extended support services. That letter purports to describe such services by including the following representations:

> "[TomorrowNow provides] . . . highly responsive, around-the-clock product support delivered by experienced, PeopleSoft-trained specialists."
>
> "[A] retired release is likely to have hundreds – sometimes thousands – of unresolved and unknown software issues . . ."
>
> "[Operation of a retired release in production could lead to] . . . serious issues that could lead to future system failures and extended downtime . . ."

These representations, and TomorrowNow's marketing materials, in general, violate PeopleSoft's rights under the federal Lanham Act and other laws that prohibit product disparagement, false advertising, interference with contract and/or interference with prospective economic advantage, and entitle PeopleSoft to recover damages against you and TomorrowNow. Specifically, the representations in your letter, coupled with the numerous references to PeopleSoft in TomorrowNow's marketing materials, are clearly intended to create the false impression that TomorrowNow is affiliated with or sponsored or endorsed by PeopleSoft. First, every page of your website is devoted to PeopleSoft. Second, the only link on your website to any technology company links to PeopleSoft's website, PeopleSoft.com. Third, and perhaps most objectionable, you claim to be a "Vice President, PeopleSoft Solutions Group". As a result, there is no doubt that a PeopleSoft customer reviewing your materials would likely believe, erroneously, that TomorrowNow is somehow associated with PeopleSoft.

Moreover, your characterizations of PeopleSoft products and of your abilities to service them are misleading, and therefore also violate PeopleSoft's rights under the law. For example, some recipients of your letter -- with its reference to "thousands – of unresolved and unknown software issues that will never be addressed by PeopleSoft" -- may conclude that you are disparaging PeopleSoft and/or some of its products. Such statements may wrongfully cause PeopleSoft customers to terminate existing agreements

with PeopleSoft or to refuse to enter into new agreements with PeopleSoft. Furthermore, because TomorrowNow is not a certified member of PeopleSoft's alliance network, it is misleading for the TomorrowNow website to claim that TomorrowNow has the ability to perform upgrades to PeopleSoft 8.

In addition to misleading the recipients of your letter, it appears that you may also have violated your direct contractual obligations to PeopleSoft by misappropriating and utilizing proprietary and confidential PeopleSoft information. We understand that, in order to effect your mailing and solicit PeopleSoft customers to subscribe to your support services, you may have improperly utilized a proprietary PeopleSoft customer list. PeopleSoft's proprietary information may also have been misappropriated if TomorrowNow's Customer Support Specialists developed their knowledge regarding PeopleSoft and its products from access to confidential PeopleSoft information in your possession. To the extent that you are using PeopleSoft's proprietary and/or confidential information to advance the interests of TomorrowNow, your actions violate the Proprietary Information Agreement (the "Agreement") that you signed when you began your employment at PeopleSoft. In the Agreement, a copy of which is attached, you agreed that, both during and after your employment with PeopleSoft, you would:

> "hold in the strictest confidence, and not . . . use, except for the benefit of PeopleSoft, . . . any trade secrets, confidential knowledge, data or other proprietary information relating to products, processes, . . . *customer lists*, . . . or other subject matter pertaining to any business of the Company . . . "

In light of the foregoing, we insist that you immediately cease the publication and distribution of the solicitation letter discussed above, and that you take steps to ensure that TomorrowNow's website and all future correspondence, marketing pieces and press releases, and any and all other oral or written communication from TomorrowNow, affirmatively state that neither TomorrowNow nor its services are associated with, aligned with, sponsored by or endorsed by PeopleSoft.

Within five days of the date of this letter, please provide us with your written assurance that the solicitation letter will cease to be distributed and that your website and all other communications have been or are in process of being modified to include a disclaimer which clearly states that TomorrowNow is neither affiliated with nor endorsed by PeopleSoft. We look forward to receiving your positive response.

Very truly yours,

David Chavez
Assistant General Counsel
PeopleSoft, Inc.

AK000557