BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle Corporation, Oracle USA, Inc.,
and Oracle International Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br>v.<br><br>SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 07-CV-1658 PJH (EDL)<br><br>**ORACLE'S OPPOSITION TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATIONS RE: DISCOVERY HEARINGS 1 AND 2**<br><br>Date: July 1, 2008<br>Time: 9:00 a.m.<br>Place: Courtroom E, Floor 15<br>Judge: Honorable Elizabeth D. Laporte |



Dockets.Justia.com

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. DEFENDANTS SHOULD PRODUCE DOCUMENTS RELATED TO THE GOVERNMENT INVESTIGATION ..... 1
A. Defendants Concede The Government Is Investigating Them Based on Oracle's Allegations ..... 1
B. Oracle's Requests and Defendants' Objections ..... 2
C. Judge Legge Rejects Defendants' Rule 6(e) Objection ..... 3
D. Oracle Does Not Seek to Invade Grand Jury Proceedings ..... 4
1. Oracle Does Not Seek Production of What Transpired Before the Grand Jury ..... 4
2. Production in Response to the Request Does Not Invade the Grand Jury in Contravention of Rule 6(e) ..... 5
a. Defendants are not covered by Rule 6(e) ..... 5
b. Defendants Cannot Use Rule 6(e) as a Shield ..... 6
c. The Documents Oracle Requests Will Not Reveal the Inner Workings of the Grand Jury ..... 6
E. Oracle's Requests Seek Highly Relevant Documents ..... 8
F. Defendants' Alternative Solution Is Inadequate and Does Not Justify Non-Production in Response to the Request ..... 9
III. JUDGE LEGGE PROPERLY DENIED DEFENDANTS' VAST EMPLOYEE COMMUNICATION DISCOVERY ..... 11
A. Procedural Background re Defendants' Requests Nos. 25 and 26 ..... 11
B. Defendants' Employee Communication Discovery Is Unduly Burdensome and Improper ..... 13
1. Judge Legge's Recommendation Reached a Reasonable Compromise, and Is Not Arbitrary or Prejudicial ..... 13
2. These All-Employee-Communications Requests Are of Limited Relevance at Best, and Were Properly Weighed Against the Burden ..... 14
3. Defendants Refused to Narrow These Requests in Any Meaningful Way ..... 16
IV. CONCLUSION ..... 18

# TABLE OF AUTHORITIES

Page(s)

Cases

*Board of Ed. of Evanston v. Admiral Heating & Ventilation, Inc.*, 513 F. Supp. 600 (N.D. Ill. 1981) .......... 7

*Collens v. City of New York*, 222 F.R.D. 249 (S.D.N.Y. 2004) .......... 15

*In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328 (N.D. Cal. Oct 28, 1985) .......... 15

*Fund for Constitutional Gov't v. Nat'l Archives*, 656 F.2d 856 (D.C. Cir. 1981) .......... 6

*Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1 (D.R.I. 2004) .......... 16

*In re John Doe Grand Jury Proc.*, 537 F. Supp. 1038 (D.R.I. 1982) .......... 7

*SEC v. Dresser*, 628 F.2d 1368 (D.C. Cir. 1980) .......... 6, 9, 10

*State of Tex. v. United States Steel Corp.*, 546 F.2d 626 (5th Cir. 1977) .......... 7

*In re Sulfuric Acid Antitrust Litig.*, 2004 WL 769376 (N.D. Ill. April 9, 2004) .......... 7

*In re Sunrise Securities Litigation*, 130 F.R.D. 560 (E.D. Pa. 1989) .......... 5, 6

*United States v. Dynavac*, 6 F.3d 1407 (9th Cir. 1993) .......... 7, 9, 10

*United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52 (2d Cir. 1960) .......... 6, 9, 10

*United States v. Lartey*, 716 F.2d 955 (2d Cir. 1983) .......... 6

*United States v. Reyes*, 239 F.R.D. 591 (N.D. Cal. 2006) .......... 3

*In re WorldCom*, 234 F. Supp. 2d 301 (S.D.N.Y. 2002) .......... 8

Rules

Fed. R. Crim. Proc. 6(e) .......... 3, 4, 5

Plaintiffs Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation (collectively, "Oracle" or "Plaintiffs") submit this Opposition to Defendants' Objections to Special Master's Report and Recommendations re Discovery Hearings 1 and 2.

## I. INTRODUCTION

In their appeal of Judge Legge's rulings, SAP AG, SAP America, Inc., and TomorrowNow, Inc. (collectively, "Defendants") seek, on one hand, to avoid what is admittedly non-burdensome re-production to Oracle of materials they already provided to the government directly related to the allegations in this case. On the other hand – and though they have asked the Court to order they need produce to Oracle. from only a fraction of their relevant custodians – they seek to compel Oracle to search the files of *every* employee in the company for evidence of hypothetical communications with SAP TN of unknown relevance. Neither result is supported by the law – as Judge Legge properly found, after extensive briefing and argument.

There is no basis for this Court to decide differently on these issues. Moreover, forcing the Parties and the Court to redo the voluminous effort and expense that resulted in Judge Legge's rulings undermines Defendants' complaints about the burdens and costs of discovery in this matter. At this point in this case, the Parties should be moving forward on the discovery still needed – not re-litigating already-fought discovery battles.

## II. DEFENDANTS SHOULD PRODUCE DOCUMENTS RELATED TO THE GOVERNMENT INVESTIGATION

### A. Defendants Concede The Government Is Investigating Them Based on Oracle's Allegations

On July 3, 2007, Defendants issued a press release (and convened a press conference in Germany) to discuss their just-filed Answer to Oracle's First Amended Complaint ("FAC") – an Answer which, among other things, admits that Defendants' personnel performed "inappropriate downloads" of Oracle's intellectual property. *See* Declaration of Holly A. House in Support of Oracle's Opposition to Defendants' Objections to Special Master Report and Recommendations re: Discovery Hearings 1 and 2 ("House Decl."), ¶ 3, Ex. A (press release). In the press release, sandwiched between SAP AG's confession of inappropriate downloading from Oracle and its CEO's statement of quasi-apology, SAP AG further reported that the United

States Department of Justice ("DOJ") had requested documents from Defendants:

> At the same time, SAP acknowledged that some inappropriate downloads of fixes and support documents occurred at TomorrowNow. Importantly, SAP affirmed that what was downloaded at TomorrowNow stayed in that subsidiary's separate systems. SAP did not have access to Oracle intellectual property via TomorrowNow.
>
> The United States Department of Justice has requested that SAP and TomorrowNow provide certain documents. SAP and TomorrowNow intend to fully cooperate with the request.
>
> "Even a single inappropriate download is unacceptable from my perspective. We regret very much that this occurred," said Henning Kagermann, CEO, SAP AG.

*Id.* Despite SAP's public admission that the DOJ is investigating Defendants' misconduct relating to Oracle's allegations in its FAC, Defendants coyly argue to this Court, as they did to Judge Legge, that it is impossible to know whether the grand jury's investigation relates to Oracle's allegations. *See* Defendants' Objections to Special Master Report and Recommendations re: Discovery Hearings 1 and 2 ("Objections") at 11-12. As explained below, Oracle specifically seeks only documents relating to government investigations *into the allegations raised in Oracle's FAC*. The language of the Request thus limits the universe of responsive documents to those relating to this litigation.

**B. Oracle's Requests and Defendants' Objections**

Following SAP's July 2007 public revelations, Oracle served Defendants with its First Sets of Requests for Production ("Requests"). Among them, Oracle sought documents from Defendants relating to that government investigation:

> All Documents relating to Department of Justice, Federal Bureau of Investigation, or other federal, state, or local government agency's request or investigation into the allegations in the Complaint and First Amended Complaint, including without limitation all Documents provided by You to any such agency in response to a request or investigation of those allegations.

*See* Declaration of Jason McDonell ("McDonell Decl."), ¶¶ 1-2, Exs. 1 & 2 (Requests Nos. 55 to SAP Defendants and No. 84 to SAP TN) (jointly referred to as "Request"). Nowhere does Oracle limit its Request to, or even mention specifically, documents subpoenaed by a grand

jury – though they would be included. But so too would any business records otherwise provided in connection with any investigation, as well as Defendants' communications with and presentations to government investigators, and non-privileged communications about any such government investigations. Defendants have never disputed that courts routinely require parties to produce such documents in civil litigation. *See, e.g.*, *United States v. Reyes*, 239 F.R.D. 591, 602-04 (N.D. Cal. 2006) (ordering production of documents made to government by party's attorneys during a securities investigation, "in accord with every appellate court that has considered this issue in the last twenty-five years").

Defendants responded identically to the Request with a flat refusal to produce any responsive documents, stating that Oracle was seeking "information prohibited from disclosure pursuant to Fed. R. Crim. P. 6(e) and not reasonably calculated to lead to the discovery of admissible evidence and is overbroad." *See* McDonell Decl., ¶¶ 1-2, Exs. 1 & 2. Although pressed for an explanation by Oracle in several letters and meet and confer calls for how this Rule even applied, Defendants never elaborated on their steadfast refusal to comply with *any* part of the Request – including, but not limited to, their refusal to provide documents subpoenaed by a grand jury. House Decl., ¶ 4, Ex. B (November 16, 2007 letter from Mr. McDonell to Mr. Alinder.)

### C. Judge Legge Rejects Defendants' Rule 6(e) Objection

As the centerpiece of its first discovery motion, on January 28, 2008, Oracle moved to compel production of documents responsive to its Request before Judge Charles A. Legge (Ret.), then Special Master in this case. After receiving Oracle's opening brief and Defendants' opposition, and hearing detailed argument, Judge Legge signed his first Report and Recommendation ("First Report") on February 22, 2008. *See* McDonell Decl., ¶ 3, Ex. 3 (First Report). In the First Report, Judge Legge noted that, although the Request sought all documents related to the government's investigation, he was "initially limiting his consideration of the [Request] to documents which were provided by defendants to the United States Attorney in response to a subpoena duces tecum." *Id.* at 6. Judge Legge then went on to dismiss Defendants' argument that production of that subset of responsive documents would disclose grand jury proceedings:

> Defendants are not being requested to produce anything done by a grand jury, anything said during a grand jury proceeding, any grand jury testimony, or any information regarding grand jury witnesses, testimony, or proceedings. What is at issue here [as initially limited by the Special Master] are simply documents which defendants assembled for production to the United States Attorney. The request deals with information flowing to the grand jury, and not with anything that discloses what was done within the grand jury.

*Id.* (emphasis in original). Defendants' appeal followed.

### D. Oracle Does Not Seek to Invade Grand Jury Proceedings

Because Defendants' only objection to Oracle's Request was to cite Rule 6(e), and Rule 6(e) explicitly applies *only* to grand jury proceedings, Defendants pretend (1) that Oracle requested grand jury materials and (2) that producing anything in response to Oracle's Request necessarily invades grand jury proceedings. *See, e.g.*, Defendants' Objections to Special Master's Report and Recommendations Re Discovery Hearings 1 and 2 ("Objections") at 5 ("Oracle wants to know which specific documents the grand jury subpoenaed and which specific documents Defendants produced in response to the subpoena"), 12 ("Oracle has asked for 'all' documents produced to the grand jury").

#### 1. Oracle Does Not Seek Production of What Transpired Before the Grand Jury

The facts and the Request itself both belie the first premise. Oracle has no specific knowledge about the existence or progress of any grand jury proceeding and did not when it drafted the Request. House Decl., ¶ 2. Indeed, Defendants did not confirm the existence of a grand jury until the hearing before Judge Legge on Oracle's original motion. *Id.* Moreover, Oracle's Request expressly seeks documents relating to any government investigations of Oracle's allegations in this action, not documents reflecting what happened in any grand jury proceedings. *See* McDonell Decl., ¶¶ 1-2, Exs. 1 & 2. Finally, for a Court to order disclosure of matters that actually did occur before the grand jury, which it may do under Rule 6(e)(3)(E)(i), a petition must be filed in the district where the grand jury convened and notice must be provided to an attorney for the government. *See* Fed. R. Crim. Proc. 6(e)(3)(F)(i)-(iii). Oracle has not filed such a petition, or provided formal notice to the government, because its Request *does not*

*seek* disclosure of matters occurring before the grand jury and so these procedures are not required.

Thus, while it turns out this Request covers documents Defendants may have provided in response to a grand jury, that clearly was not its purpose, nor, as Judge Legge observed, its effect. First Report at 6 ("Defendants are not being requested to produce anything done by a grand jury, anything said during a grand jury proceeding, any grand jury testimony, or any information regarding grand jury witnesses, testimony, or proceedings. . . . The request deals with information flowing to the grand jury, and not with anything that discloses what was done within the grand jury.") (emphasis in original).

### 2. Production in Response to the Request Does Not Invade the Grand Jury in Contravention of Rule 6(e)

#### a. Defendants are not covered by Rule 6(e)

Defendants rely on Rule 6(e) as their sole basis for refusing to provide any documents in response to Oracle's Request. But Oracle has repeatedly pointed out that the Rule, which lists the exclusive categories of persons upon whom grand jury secrecy can be imposed, simply does not apply to Defendants. Rule 6(e) provides that "*[n]o obligation* of secrecy [relating to a grand jury proceeding] may be imposed on any person *except* in accordance with Rule 6(e)(2)(B)." Fed. R. Crim. P. 6(e)(2)(A) (emphasis added).

Rule 6(e)(2)(B) then lists several categories of people who may have this "obligation" of secrecy, none of which include Defendants here. No Defendant is a grand juror, interpreter, court reporter, operator of a recording device, person who transcribes recorded testimony, attorney for the government, or person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii); while Defendants may be witnesses, witnesses are not bound by secrecy unless they also fall into one of the enumerated categories.

Accordingly, Defendants may not refuse to produce documents provided to the government, or those related to the government's investigation, on the basis of Rule 6(e). *See* Fed. R. Crim. P. R. 6(e)(2)(B); *see also, e.g., In re Sunrise Securities Litigation*, 130 F.R.D. 560, 574 (E.D. Pa. 1989) (law firm that produced documents to a grand jury "does not fit in any of the

classes enumerated by the Rule; consequently, Rule 6(e)(2) does not prevent [the party] from disclosing the requested documents."); House Decl., ¶ 6, Ex. D (February 13, 2008 hearing transcript) at 99:2-4 (Judge Legge agrees information supplied to a grand jury is not privileged).

### b. Defendants Cannot Use Rule 6(e) as a Shield

Defendants make much of their regard for grand jury proceedings, but never explain why they are entitled to serve as the grand jury's purported gatekeeper, despite the plain language of Rule 6(e). They cannot. The *Sunrise Securities* court rejected an identical argument:

> Thus [the witness's] argument is that the Court can compel it to produce the documents it does not wish to produce only upon a showing of particularized need; it takes this position even though under Rule 6(e) if it wished to produce those same documents, the Court could not impose any obligation of silence. In effect, [the witness] argues for adoption of a 'grand jury privilege,' purportedly intended to protect the secrecy of grand jury proceedings, which could be waived or asserted by a party at will . . . But adoption of such a privilege clearly would not protect the secrecy of grand jury proceedings.

130 F.R.D. at 575. So here. Indeed, precisely as with the *Sunrise Securities* witness, if Defendants wished to produce the documents they have provided to the grand jury, the Court *could not prevent them*. Defendants thus propose a privilege that they can use as both sword and shield – and one that has no basis in the Rule they cite.

### c. The Documents Oracle Requests Will Not Reveal the Inner Workings of the Grand Jury

Another test for deciding whether the Request would yield production of documents implicated by Rule 6(e) turns on whether disclosed materials would "elucidate the inner workings of the grand jury." *Fund for Constitutional Gov't v. Nat'l Archives,* 656 F.2d 856, 870 (D.C. Cir. 1981). The mere fact that the government subpoenaed materials does not automatically reveal grand jury inner workings. *See id.*; *see also, e.g., SEC v. Dresser*, 628 F.2d 1368, 1383 (D.C. Cir. 1980) (rule does not require "a veil of secrecy be drawn over all matters occurring in the world that happen to be investigated by the grand jury"); *United States v. Lartey*, 716 F.2d 955, 964 (2d Cir. 1983) (same); *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960) (rule "is intended only to protect against disclosure of what is said or

what takes place in the grand jury room . . . it is not the purpose of the Rule to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury.”).

This makes sense: the purpose is to protect the secret workings of the grand jury, not preclude inquiry into all other matters to which materials presented to a grand jury could be relevant. Otherwise, a witness could permanently shield materials from broad disclosure simply by adding them to its grand jury production.[1]

In its Request, Oracle seeks “disclosure of business records independently generated and sought for legitimate purposes for their own sake.” Objections at 5; *see also* McDonell Decl., ¶¶ 1-2, Exs. 1 & 2. These documents can provide no information about the grand jury’s inner workings. As Judge Legge pointed out, no witness identities will be disclosed, no testimony shared, and no grand jury actions revealed. *See id.*, ¶ 3, Ex. 3 at 6. Defendants concede that in these circumstances, disclosure of the subset of requested documents “ordinarily does not compromise the secrecy of grand jury proceedings.” Objections at 5; *see also United States v. Dynavac*, 6 F.3d 1407, 1411-12 (9th Cir. 1993) (“[I]f a document is sought for its own sake rather than to learn what took place before the grand jury, and if its disclosure will not compromise the integrity of the grand jury process, Rule 6(e) does not prohibit its release.”).[2]

---

[1] Further, as explained above, under Defendants’ analysis, they could *choose* to produce those same documents at any time, without regard to the secrecy of the grand jury – a distinctly unbalanced result.

[2] Defendants’ cases are distinguishable. In *State of Tex. v. United States Steel Corp.*, 546 F.2d 626 (5th Cir. 1977), the party sought disclosure of grand jury transcripts. Oracle does not. *In re John Doe Grand Jury Proc.*, 537 F. Supp. 1038, 1044-45 (D.R.I. 1982), concerned a request by a government attorney to take documents from one grand jury and provide them to another, without following the formal request procedure. *In re Sulfuric Acid Antitrust Litig.*, 2004 WL 769376, *1-2 (N.D. Ill. April 9, 2004), addressed a requesting party’s ability to seek documents produced to a grand jury simply because they had been, in fact, so produced, and did not discuss a party’s interest in the substance of the documents sought. *Board of Ed. of Evanston v. Admiral Heating & Ventilation, Inc.*, 513 F. Supp. 600, 605 (N.D. Ill. 1981), reiterated that if “data is sought for its own sake for its intrinsic value in furtherance of a lawful investigation rather than to learn what took place before a grand jury” it is discoverable, but did not agree that the requesting party met that test.

### E. Oracle's Requests Seek Highly Relevant Documents

Having no law, Defendants have only their repeated assertions that Oracle has no interest in the intrinsic value of the requested documents and, therefore, must only be interested in the inner workings of the grand jury. *See* Opposition at 5-9. But repetition of a false premise and statements taken out of context cannot carry the day. Oracle is now, and has always been, interested in the substance of the documents responsive to the Request because they bear directly on its allegations in this matter.

Defendants do not and cannot deny that the documents sought by Oracle's Request directly relate to the allegations Oracle makes in its FAC. Nor can they credibly deny that Oracle seeks those documents because of their direct relationship to the issues in this case. For example, if Defendants created documents they then provided to the government in connection with its investigation – such as descriptions of SAP TN's use of Oracle's intellectual property, or summaries of the "improper downloads," or presentations explaining SAP's knowledge of SAP TN's activities, or chronologies or lists of those involved – those documents would be highly relevant admissions. Moreover, any pre-existing business files relating to Oracle's allegations that Defendants provided to the government are obviously relevant. Such documents could, *e.g.*, demonstrate what Defendants did with Oracle's intellectual property, when, and why, or what and when the SAP Defendants knew of SAP TN's infringing activities. Defendants have no argument as to why these documents, sought by the Request, are not relevant, or why Oracle would not be interested in their substance for their own sake (as opposed to their relation to any grand jury subpoena).[3]

Oracle's counsel explained the relevance of the documents and its reasons for wanting them to Judge Legge in its opening letter brief and at the hearing. *See, e.g.*, House

---

[3] Defendants do not object on grounds of undue burden, as they have no doubt carefully cataloged their production to the government, specially Bates-labeled it, and burned it onto easily-replicable CDs. In addition, any post-investigation communications are easily identified. It is no burden to produce such already-compiled documents. *See, e.g.*, *In re WorldCom*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) ("For easily understood reasons, Defendants have not raised [undue burden] as an obstacle, [because the documents] have already been compiled.").

Decl., ¶ 5, Ex. C (Oracle's original motion to compel) at 3 (describing merits of responsive, historic documents); ¶ 6, Ex. D at 94:3-6 ("If there's a nice presentation to the government that talks about the facts and history, and lays it all out in a nice, easy way, that is an admission that obviously is very useful."), 106:23-107:2 ("We don't care what took place before the grand jury. We want the intrinsic – the reason we're doing this [] is because we want to see the historic underlying data, and in addition, any kind of voluntary submissions or presentations.").

Unable to defeat Oracle's demonstration of the relevance of the documents at issue, Defendants focus on Oracle's counsel's additional interest in obtaining those documents in the manner Defendants provided them to investigators, because Defendants may have produced to the government in a more readily understandable compilation than they have produced documents to Oracle. *See* Objections at 5-9. But that added benefit (even if it proves true) is not improper and in no way undermines Oracle's desire for those documents for their own sake. No matter how Defendants produced their documents to the government, those documents relate directly to Oracle's allegations in this lawsuit. Their production represents an efficient way to obtain highly relevant information.

As Defendants concede, that reality means that production of the documents will not implicate grand jury secrecy concerns, and therefore there is no basis to withhold the documents. *See* Objections at 5 ("Disclosure of business records independently generated and sought for legitimate purposes for their own sake ordinarily does not compromise the secrecy of grand jury proceedings."); *id.* at 8 ("Civil parties may compel disclosure when the document is 'sought for its own sake.'"); *see also Dynavac*, 6 F.3d at 1411-12; *Dresser*, 628 F.2d at 1382-83; *Dress Carriers*, 280 F.2d at 54.

### F. Defendants' Alternative Solution Is Inadequate and Does Not Justify Non-Production in Response to the Request

As a fallback to having to produce in response to the Request, Defendants promise they will produce to Oracle any documents responsive to the Request if called for by

another request.[4] *See* Objections at 8. But that assurance cannot remedy their failure to produce the numerous documents called for by the Request not even arguably shielded by Rule 6(e), including documents produced other than in response to any grand jury subpoena, communications with investigators, and presentations to government personnel. Nor does the assurance provide comfort, given Defendants' numerous objections to Oracle's other requests and their self-serving discovery limitations. If Defendants have provided to the government a document they have not produced to Oracle because it belongs to a custodian to whom they have not agreed, or is in a date-range outside of the current case parameters, or for any other reason or objection that Oracle has not litigated, Oracle will not get it.[5] Defendants' alternative does not equate to the discovery the Request provides, nor further the search for the truth in this matter.[6]

****

Getting Defendants' productions to and communications with the government provides Oracle with a safety net given Defendants' refusal to produce all relevant material in this matter on burden grounds. Moreover, Defendants concede that, as a matter of law, they cannot withhold an otherwise-responsive document from Oracle just because they also provided that document to the grand jury. *See* Objections at 8 ("Defendants are not declining to produce any relevant document merely on the grounds that the document was provided to the grand jury."), n.7 ("Civil parties may compel disclosure when the document is 'sought for its own sake.'") (internal citation omitted). Defendants can easily and must immediately provide Oracle documents responsive to its Request.

---

[4] This proffered willingness, while inadequate, further undermines any burden argument. *See* n.3, *supra*.

[5] This reality also undermines any duplicativeness objection.

[6] As a final defense, Defendants present a parade of horribles that they say will take place if the Court affirms Judge Legge's ruling that production of these limited documents does not infringe on grand jury secrecy. Objections at 9-11. Defendants' hysteria is unsubstantiated and irrelevant to the legal questions at hand. Moreover, for decades, courts have granted production of such documents without the grand jury system collapsing. *See, e.g., Dynavac*, 6 F.3d at 1411-12; *Dresser*, 628 F.2d at 1382-83; *Dress Carriers*, 280 F.2d at 54.

## III. JUDGE LEGGE PROPERLY DENIED DEFENDANTS' VAST EMPLOYEE COMMUNICATION DISCOVERY

In contrast to Defendants' argument for severe limits on their custodians at the May 28, 2008 Discovery Conference, Defendants' affirmative discovery strategy against Oracle continues to seek overbroad and unduly burdensome requests directed at *all* 69,000 Oracle employees.[7] Requests Nos. 25-26, and Defendants' appeal of Judge Legge's limitation of the same, make that inconsistency clear.

### A. Procedural Background re Defendants' Requests Nos. 25 and 26

On July 26, 2007, Defendants served their First Set of Requests for Production of Documents. In Request No. 25, Defendants sought "All Documents relating to any Communications between Oracle, or anyone acting on its behalf, and any current or former TN employee concerning TN, SAP America, or SAP AG." McDonell Decl., ¶ 4, Ex. 4 (Requests Nos. 25 and 26 and Oracle's responses). In Request No. 26, Defendants sought "All Documents relating to any Communications between Oracle, or anyone acting on its behalf, and any person or entity currently or formerly affiliated with TN, concerning TN, SAP America, or SAP AG." *Id*. Oracle responded on September 14, 2007 that it would not produce documents in response to Requests Nos. 25 and 26, objecting primarily on the grounds that (a) the documents that Defendants sought were "in no way limited to the issues raised by the Complaint," and (b) the requests imposed an undue burden by requiring Oracle to determine if any of its thousands of personnel have documents relating to communications, or communications themselves, with any of the unknown number of current or former employees of Defendants. *Id*.

The parties met and conferred numerous times in person, by phone, and in correspondence concerning these Requests. *See* House Decl., ¶¶ 7-10, Exs. E (December 12, 2007 letter from Mr. McDonell to Mr. Alinder and Mr. Howard), F (January 4, 2008 letter from Mr. Alinder to Mr. McDonell), G (January 14, 2008 email from Mr. Alinder to Mr. McDonell), &

---

[7] For context, Oracle's employee base is approximately the population of Walnut Creek, California – a startling contrast to the total of 110 SAP and TN custodians that Defendants propose searching. *See* City of Walnut Creek Demographic Statistics (http://www.ci.walnut-creek.ca.us/header.asp?genericId=1&catId=1&subCatId=1).

H (January 24, 2008 email from Mr. McDonell to Mr. Alinder). Purportedly to limit the scope of these Requests, Defendants amended the Requests to focus on communications "about TN," but they refused to limit the *scope* of the search to anything less than all Oracle employees' communications with all current and former TN-affiliated employees, which because of SAP-TN's status as a wholly-owned subsidiary of SAP could be taken to even mean all SAP employees. Thus, the search demanded by Defendants still encompasses all employees at Oracle in order to find the "narrowed" subject matter.

Defendants also refused Oracle's requests to limit the burden by compiling a list of Oracle employees, who Defendants believe may have communicated with SAP TN employees, for Oracle to search. *See* House Decl., ¶¶ 9-10, Exs. G & H. Despite the lack of relevance of any of this "chatter," and although it had no obligation to do so, Oracle proposed as a compromise to produce documents responsive to those requests from the numerous custodian files it had already collected – which are the custodians most relevant to the issues in the case and include numerous high-level executives – to the extent that such documents existed and were not privileged. House Decl., ¶ 9, Ex. G.

Resisting even that compromise, on February 19, 2008, Defendants moved to compel Oracle to produce documents in response to these two requests, among many others. On March 19, 2008, Judge Legge issued his Second Report and Recommendation ("Second Report"), finding that the "scope of this request is staggering. Combining the personnel of all of the companies, the number of people involved totals thousands. The present scope of the request is unreasonable." *See* McDonell Decl., ¶ 5, Ex. 5 (Second Report) at 6:25-27; *see also* ¶ 6, Ex. 6 (March 4, 2008 hearing transcript) at 91:10-22 (requests would require a "vast" search by Oracle for vague communications between 69,000 Oracle employees and at least 300 current and former SAP employees). Judge Legge noted that "Oracle has agreed to produce documents responsive to these requests that come from the voluminous custodial files which it has already collected," and accordingly, recommended "that Oracle be required to produce those things which it has tendered, but that the requests for <u>all communications</u>, and <u>all documents relating to communications</u> . . . be

denied as overly burdensome and of limited relevance." *Id.* ¶ 5, Ex. 5 at 7:9-13 (emphasis in original). Defendants' appeal followed.

### B. Defendants' Employee Communication Discovery Is Unduly Burdensome and Improper

Defendants attempt to justify their appeal of Judge Legge's limitation on these overbroad and unduly burdensome requests in three ways. First, they argue that the recommendation is arbitrary and prejudicial because Oracle did not go out and collect documents specifically responsive to these two requests. Second, Defendants assert that the requested documents are relevant and necessary to their defense. Third, they claim that they have proposed reasonable ways to narrow the requests. None of these arguments withstands any scrutiny. Judge Legge heard each of these arguments and agreed with Oracle. The Court likewise should refuse to sanction Defendants' abusive all-employee-communication discovery.

#### 1. Judge Legge's Recommendation Reached a Reasonable Compromise, and Is Not Arbitrary or Prejudicial

Defendants' first argument is that Judge Legge's recommendation is arbitrary and prejudicial, because it required Oracle to produce the requested employee communications from the voluminous custodial files already gathered by Oracle, but did not require Oracle to go out and separately search through the entire company for such communications. That is nonsense. The compromise recommended by Judge Legge is simply a reasonable limitation on Defendants' unreasonable requests.

Oracle objected to any production of documents in response to these requests on the grounds that they are hopelessly overbroad and unduly burdensome. *See* McDonell Decl., ¶ 6, Ex. 6 at 92:5-24. Moreover, Oracle noted that there is no specific custodian or group within Oracle that would have a regular business purpose for such communications. *See id.* at 91:17-22. Nonetheless, and although it had no obligation to do so, as a compromise, Oracle proposed that it would search the custodians it had already gathered for information responsive to these Requests. These custodians were gathered precisely because they were the persons most knowledgeable

about Oracle's Complaint and Defendants' allegations and defenses asserted in response. *See id.* at 93:16-25 ("Judge Legge: Well, aren't you both on both sides first of all going to the custodians who seem like the most knowledgeable custodians to have information that you want and they want? Aren't you doing that? Mr. Howard: Well, I hope so. We certainly are…."). Indeed, as Judge Legge found in making his recommendation, the wide-ranging scope of Defendants' document requests already required a "voluminous" collection of custodians from Oracle.[8] *See id.*, ¶ 5, Ex. 5 at 7:9.

The compromise that Judge Legge recommended reasonably limited Defendants' overbroad and unduly burdensome Requests. That is far from arbitrary or prejudicial.

**2. These All-Employee-Communications Requests Are of Limited Relevance at Best, and Were Properly Weighed Against the Burden**

Defendants correctly state that information is discoverable if it is "reasonably calculated to lead to the discovery of admissible evidence," but they overreach in their interpretation of "reasonably calculated":

> It is no longer sufficient, as a precondition for conducting discovery, to show that the information sought 'appears reasonably calculated to lead to the discovery of admissible evidence.' After satisfying this threshold requirement counsel *also must* make a common sense determination, taking into account all the circumstances, that the information sought is of sufficient potential significance to justify the burden the discovery probe would impose, that the discovery tool selected is the most efficacious of the means that might be used to acquire the desired information (taking into account cost effectiveness and the nature of the information being sought), and that the timing of the probe is sensible, i.e., that there is no other juncture in the pretrial period when there would be a clearly happier balance between the benefit

---

[8] *See, e.g.*, House Decl., ¶ 11, Ex. I (Oracle's Responses and Supplemental Responses to TomorrowNow Inc.'s First Set of Document Requests, Responses Nos. 2, 4, 82-84, 90, 92-93, & 95-96) (agreeing to produce custodian documents, contracts, and accompanying correspondence files generally relating to SAP's acquisition of SAP TN, the Safe Passage program, SAP TN's development capability, Defendants' plans to offer maintenance support through SAP TN, Defendants' contacts with potential customers regarding support by SAP TN, the rights of SAP TN customers to access Software and Support Materials (defined in the Requests) on Customer Connection, and the negotiation of support contracts for SAP TN customers).

> derived from and the burdens imposed by the particular discovery effort.

*In re Convergent Technologies Securities Litigation***,** 108 F.R.D. 328, 331 (N.D. Cal. Oct 28, 1985) (emphasis in original).

Judge Legge made such a "common sense determination." He considered the arguments of potential relevance against the "staggering" burdens of Defendants' all-employee-communications requests. McDonell Decl., ¶ 5, Ex. 5 at 6:25. He also considered Defendants' speculative arguments in support, *i.e.*, that information relevant to their defenses *might* be contained within these employee communications and that Oracle employees may have communicated in isolated instances with TomorrowNow. *See id.* at 6:26-7:2; *see also* Objections at 13. That speculation is insufficient to warrant such vast requests. *See, e.g., Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) (citation omitted) ("While Rule 26(b)(1) . . . provides for broad discovery, courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses.").

As their claimed support for this speculation, Defendants discuss two documents that they claim show that communications have occurred related to their defenses.

Defendants claim that the first document shows that "PeopleSoft consented to one of its customers providing software to TN." Objections at 13. But this case involves Defendants' theft and misuse of copyrighted software and support materials. It is not about the receipt of demonstration software that a customer *was licensed to use*. Try as they might, Defendants cannot transform that document into evidence that Oracle had any knowledge of any illegal use by SAP TN of the software it discusses. It certainly does not reflect Oracle's "consent" to copyright infringement. *Id*. Judge Legge agreed that this document was "not a sufficient basis to require the production, or even inquiries for production, of such a vast request." McDonell Decl., ¶ 5, Ex. 5 at 7:6-7. There is no basis for this Court to conclude otherwise.

The second document also fails to show any knowledge by Oracle of any copyright infringement or illegal downloading by SAP TN, as Defendants misleadingly imply in their

Objections. *See id.*, ¶ 8, Ex. 8 (July 10, 2002 letter from Mr. Chavez to Mr. Ravin); Objections at 14. This document relates to (1) certain SAP TN marketing materials that "create the false impression that TomorrowNow is affiliated with or sponsored or endorsed by PeopleSoft"; (2) certain marketing materials that were disparaging of PeopleSoft; and (3) the potential misappropriation of a PeopleSoft customer list. *See* McDonnell Decl., ¶ 8, Ex. 8. None of that is relevant to the current lawsuit, nor to a laches or statute of limitations defense. Oracle cannot be expected to run an all-employee search for vague communications based on an unrelated cease and desist letter from PeopleSoft to TomorrowNow. Defendants' strained interpretation of these documents cannot support the vast discovery program they propose. *See Harvard Pilgrim Health Care of New England v. Thompson*, 318 F. Supp. 2d 1, 12-13 (D.R.I. 2004) (rejecting request for "discovery to ensure that there is no other relevant document, regulation, memorandum, or internal policy or procedure that might crop up at some point during this case," as "inappropriate and irrelevant broad-ranging discovery" given the claims in the underlying action).

Judge Legge considered Defendants' relevance argument and properly rejected it. *See* McDonell Decl., ¶ 5, Ex. 5 at 6-7. While Judge Legge agreed that documents that related to their defenses were relevant subject matter, he found that the Requests were not *reasonably calculated* to reach that subject matter: "[M]aking inquiries of thousands of employees is not the way to [seek these documents]." *Id.* at 7:1-2. Judge Legge was correct, and his "common sense" recommendation was proper.

**3. Defendants Refused to Narrow These Requests in Any Meaningful Way**

Defendants' final argument is that they narrowed these Requests sufficiently during the meet and confer process. The burdens of production described above refute that claim. As Defendants conceded during the oral argument to Judge Legge, their idea of narrowing these Requests was to limit them to *all* communications from *all* employees "about TomorrowNow's business." McDonell Decl., ¶ 6, Ex. 6 at 86:21-23. Contrary to Defendants' assertion that the "Special Master ignored these proposals" (Objections at 14), the Special Master explicitly considered Defendants' proposed "narrowing" and found that it did not narrow the *scope* of the

search at all. *See* McDonell Decl., ¶ 6, Ex. 6 at 86:24-87:13 ("Well, I wouldn't view that as a narrowing. It seems to me that concerning TN [] necessarily means its business. It's the aspect of all Oracle employees contacting any current or former TN employees. It's that part, not the subject. . . . Yeah, I just find staggering. . . . [H]ow can they answer this question without going to everybody in the office?").

Further, Defendants' proposal that Oracle search custodians electronically for the term "TomorrowNow" does not change the "staggering" burden that would be involved in identifying the custodians to search and the expense of collecting the electronic files on which to implement the search. Defendants never wavered from their position that Oracle search *all* employees who may have had *any* communications with *anyone* currently or formerly employed by Defendants.[9] There simply is no way – electronic or otherwise – to perform Defendants' requested search without imposing a colossal and unwarranted burden on Oracle. Accordingly, Judge Legge's compromise recommendation for limited production from Oracle was appropriate, as was his recommendation to deny the remainder of "the requests for <u>all communications</u>, and <u>all documents relating to communications</u> . . . as overly burdensome and of limited relevance." McDonell Decl., ¶ 5, Ex. 5 at 7:9-12.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

[9] Defendants rejected the only reasonable narrowing of their requests: Oracle's proposal that they compile a list of those Oracle employees (if any) that their own records and investigation indicated communicated with SAP TN employees. *See* House Decl., ¶ 9, Ex. G. Despite bearing the burden of a factual predicate for their request and despite the vast difference in size between the companies' records required for review to establish any such list, Defendants made the unsubstantiated argument that "Oracle is in the best position to determine which of its employees have had communications with TN." *See id.*, ¶ 10, Ex. H.

## IV. CONCLUSION

For the foregoing reasons, Oracle respectfully requests that the Court (a) compel Defendants to produce documents related to any government investigation touching on Oracle's allegations in this matter, and (b) deny Defendants' vast requests that Oracle search for all SAP TN-related communications.

DATED: May 30, 2008

BINGHAM McCUTCHEN LLP

By: /s/ *Holly A. House*
Holly A. House
Attorneys for Plaintiffs
Oracle Corporation, Oracle International Corporation, and Oracle USA, Inc.