Walsh v. Apple, Inc. et al
Doc. 97 Att. 1

# EXHIBIT B

Dockets.Justia.com

JONES DAY

555 CALIFORNIA STREET • 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104-1500
TELEPHONE: 415-626-3939 • FACSIMILE: 415-875-5700

Direct Number: 415.875-5820
jmcdonell@JonesDay.com

November 16, 2007

**HIGHLY CONFIDENTIAL INFORMATION – ATTORNEYS EYES ONLY**

VIA EMAIL

Zachary J. Alinder
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067

**Re: *Oracle Corporation, et al v. SAP AG, et al***

Dear Zac:

This letter responds to your November 8, 2007 letter and Bree Hann's letters of November 7 and 12, 2007. Regarding section III of your November 8 letter, Scott Cowan has responded separately by email regarding the stipulation language.

**I. The November 8 Letter.**

A. Resolved Issues.

Based on the representations in your letter, we understand the issues below to have been resolved. Please let us know if our understanding is incorrect in any way.

With regard to sections I.A. and I.D. of your letter (TN's Responses to Oracle Corp.'s Interrogatories Nos. 3, 13, 14, 17, and 19, and TN's Responses to Oracle USA's Interrogatories Nos. 7 and 8), while we disagree with your position on TN's responses and your characterization of our efforts to provide you with technical assistance, we consider these issues resolved. We are confident that the SAS database provides the information you seek. If, after review of the database, you disagree, we expect that you will fulfill your obligation to meet and confer further prior to filing any motion to compel. It would be a waste of both sides' time and effort to engage in motion practice without first discussing and attempting to resolve any perceived deficiencies in the information.

As to section I.B. (TN's Responses to Oracle Corp.'s Interrogatories Nos. 4, 5, 6, 7, 9, 23, and 24), all but Nos. 23 and 24 were resolved during the November 6 meet and confer. Nos. 23 and 24 are discussed further below.

With respect to section II. A. (General Objection No. 13), this will confirm that no documents are being withheld based on the objection and that this issue has been resolved.

As to section II.C. (TN's Responses to Oracle's Document Request Nos. 32, 49, and 50 and SAP's Responses to Oracle's Document Request No. 62), all but No. 32 were resolved during the November 6 meet and confer. No. 32 is discussed further below. With respect to No. 62, the "readily identifiable" language was intended to reflect the fact that a document may not be readily recognizable as a translation of a document responsive to Oracle's requests unless it is filed next to, or otherwise associated with, the responsive document. That being said, the "readily identifiable" language was not meant to, and did not, affect our obligation to perform a reasonable search for responsive documents.

B. Amended and/or Supplemental Responses.

With regard to section I.B. (TN's Responses to Oracle Corp.'s Interrogatories Nos. 4, 5, 6, 7, 9, 23, and 24), we will supplement the response to No. 5, as agreed on November 6. We will also supplement the response to No. 23. As to No. 24, we did not represent that all TN marketing and sales people were involved in Safe Passage, but that all likely or potentially were involved. In any event, we will supplement the response to No. 24.

As to section I.E. (TN's Responses to Oracle Corp.'s Interrogatory Nos. 25 and Oracle USA's Interrogatory No. 10), we will supplement our responses to these interrogatories.

With respect to section I.F. (TN's Response to Oracle Corp.'s Interrogatory No. 8), while we disagree that our response is deficient, we plan to supplement it in an effort to resolve this dispute.

Similarly, with regard to section II. B (TN's Responses to Oracle's Document Request Nos. 9, 16, 21, and 36, and SAP's Responses to Oracle's Document Request Nos. 8, 15, 20, and 28), although we do not believe that our responses are deficient or otherwise improper, we will attempt to address the concerns you have raised during the meet and confer process by amending the responses.

With regard to section II.C. (TN's Responses to Oracle's Document Request Nos. 32, 49, and 50 and SAP's Responses to Oracle's Document Request No. 62), while we disagree that any clarification of the response to No. 32 is necessary, we plan to amend it, as you have requested, to state that TN will produce responsive, nonprivileged documents. As noted above, Request Nos. 49, 50, and 62 have already been resolved.

With regard to section II.D. (TN's Responses to Oracle's Document Requests Nos. 2-4 and 7, and SAP's responses to Oracle's Document Requests Nos. 5 and 7), we will amend our responses to Nos. 2-4. The remaining responses are discussed below.

C. Issues in Dispute.

With regard to section I.C. of your letter (TN's Responses to Oracle USA's Interrogatories Nos. 4, 5, and 6), we stand by our previous objections and responses. This does not, as you contend, mean that TN "concedes that it has no factual basis to support these affirmative defenses." It simply means that we have a good faith belief that our objections are well founded for the reasons provided in the responses and during the meet and confer process, *i.e.*, that these are, for example, unduly burdensome and premature contention interrogatories.

With regard to section II.D. (TN's Responses to Oracle's Document Requests Nos. 2-4 and 7, and SAP's responses to Oracle's Document Requests Nos. 5 and 7), we stand by our objections and responses to Nos. 5 and 7.[1] SAP has *thousands* of current and former employees. Request No. 5 would require it to search its files for information concerning the former employment of all of them, as well as the former employment of all current and former SAP officers and directors and third-party consultants retained by SAP now or in the past. This clearly is overbroad and unduly burdensome. Request No. 7 is similarly overbroad and burdensome in that it seeks "all" documents relating to compensation of TN employees for achieving sales objectives. SAP has properly limited its response to documents sufficient to show the information requested. SAP is not obligated to undertake the burden of producing additional documents that are cumulative or duplicative simply because they may exist. SAP has also properly limited its response to sales objectives relating to PeopleSoft and JDE users, the only users relevant to this litigation.

With respect to section II.E (TN's Response to Oracle's Document Request No. 84, and SAP's response to Oracle's Document Request No. 55), we stand by our objections and responses. Neither TN nor SAP will produce documents provided to the government.

As to section II.F. (TN's Responses to Oracle's Document Request Nos. 86, 88, and 89, and SAP's Responses to Oracle's Document Request Nos. 57, 59, and 60), we stand by our objections and responses to these requests. Obviously, any documents we intend to rely on at trial (other than for impeachment purposes) will be produced before trial pursuant to Fed. R. Civ. P. Rule 26(a)(3)(C). But it is far too premature to request that information now, at the outset of discovery, and we are under no obligation to provide it to you now. *Id.* Nor are we required to disclose our work product concerning which documents "support or undermine" or "relate to" our claims or defenses, which is the call of these requests. With regard to the term "catchall," this is simply another way of expressing our objection that these requests are overbroad and unduly burdensome, objections for which, of course, there is ample authority in the Federal Rules and related case law.

As to section II.G. (TN's Responses to Oracle's Document Requests Nos. 48 and 76-79), we stand by our objections and responses. We understand from your letter that you may revisit this issue at some point in the future and we will, of course, be willing to reconsider our position at that time.

## II. The November 12 Letter.

1. <u>TN's Responses to Oracle's Second Set of Interrogatories</u>.

Interrogatory No.1: This will confirm that other than for the 22 customers identified in its response, TN is not currently aware of alternative names or related companies for any customer listed on Exhibit 1.

Interrogatory No. 2: The spreadsheet referred to in the response to this interrogatory was produced on November 9 (*see* TN (Disc).10).

---

[1] Nos. 2-4 are addressed in section B above.

Interrogatory No. 3: To the extent that TN has the additional information you have requested, we will amend the response to include it.

2. SAP AG's and SAP America's Responses to Oracle Corporation's First Set of Interrogatories.

With regard to the term "Identify," to the extent that SAP AG and SAP America have the additional information you request, we will supplement our responses to include it.

Interrogatory Nos. 1 (SAP America) and 2 (SAP AG): To the extent that we are able to specifically identify the TN employees with whom the SAP employees listed in the responses communicated, we will supplement our responses to include it.

Interrogatory Nos. 3 (SAP America) and 4 (SAP AG): Based on our investigation to date, we believe that the responses to these interrogatories are complete. However, we will check again to be sure and either confirm that that is the case or supplement the responses as necessary.

Interrogatory No. 6 (SAP America): Consistent with our response to section I.E. of the November 8 letter above, we will supplement our response to this interrogatory.

**III. The November 7 Letter.**

In response to the first question in the letter, General Objection No. 9 has not affected any of TN's RFA responses. Regarding the specific RFAs identified in the letter, our response is as follows:

1. RFA No. 9: Exhibit A is not one of the documents referred to by the two TN employees, thus TN stands by its denial of this request.

2. RFA Nos. 11 and 12: TN stands by its objections, including that these RFAs seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3. RFA Nos. 14 and 16: TN's objections are well-founded. For example, "agreed to" is ambiguous. Does Oracle mean "agreed to" in the sense that a legally-binding agreement was created? If so, that is a conclusion of law and TN, assuming it is obligated to answer the RFA at all (which it is not), is entitled to deny it. The same applies to "using" in the context of whether a legally-binding agreement was created. These RFAs are not, as you contend, the same as Nos. 13 and 15, which ask only if TN "reviewed" the terms of use, not whether TN "agreed" to them. TN will not amend its responses to these RFAs.

4. RFA Nos. 17: TN continues to maintain that the terms in this RFA are ambiguous. Moreover, even construing each term broadly, TN denies the RFA. Mr. Thomas's deposition testimony does not undermine TN's position. The fact that TN servers are located in a separate facility does not mean that TN created a separate facility "for the purpose of downloading Software and Support Materials."

5. RFA Nos. 62, 63, and 64: TN stands by its objections. For example, the meaning Oracle assigns to the term "many" or "via" may be entirely different from that intended by Exhibit II and Oracle has not defined these terms. Moreover, if the intent of these requests is to obtain information about the meaning or basis for TN's public relations statements, an RFA is not an appropriate discovery vehicle. Oracle can inquire about meaning or basis for such statements by interrogatory or deposition.

6. RFA Nos. 67, 68, and 88: TN stands by its objections to these RFAs.

7. RFA Nos. 79, 81, 82, and 83: These requests improperly seek admissions on conclusions of law as to which TN is not obligated either to admit or deny. Moreover, TN stands by its position that it lacks sufficient knowledge to admit or deny these requests. Oracle's refusal to provide a Customer Connection password For TN's counsel's use and the product mapping information we have repeatedly requested has effectively prevented TN from obtaining sufficient information to respond to these RFAs. Your contention that TN has "already admitted the truth of these statements" mischaracterizes TN's answer

Sincerely,

Jason McDonell

cc: Chris Hockett (via email)
Geoff Howard (via email)
Bree Hann (via email)