Walsh v. Apple, Inc. et al
Doc. 97 Att. 4

# EXHIBIT E

Dockets.Justia.com

JONES DAY

555 CALIFORNIA STREET • 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104-1500
TELEPHONE: 415-626-3939 • FACSIMILE: 415-875-5700

Direct Number: (415) 875-5820
jmcdonell@JonesDay.com


December 12, 2007

**HIGHLY CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY**

**VIA EMAIL**

Geoffrey M. Howard, Esq.
Zachary J. Alinder, Esq.
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067

Re: *Oracle Corporation, et al. v. SAP AG, et al.*

Dear Counsel:

This follows up on our telephone discussions of November 16 and 21 and December 7, and on my letter of November 19 and your November 27 response thereto.

My November 19 letter set forth certain deficiencies in Plaintiffs' responses to TomorrowNow, Inc.'s ("TN") first sets of document requests and interrogatories. Your November 27 response letter begins with three "preliminary issues," to which I reply as follows:

First, your suggestion that my November 19 letter raised certain issues "for the first time" is misleading and beside the point. Virtually all of the issues I raised derive directly from Plaintiffs' written responses to TN's discovery requests and therefore they were not new issues as of the date of my letter. Your implication that Defendants agreed to work through all discovery issues at once is baseless. I am unaware of any such agreement, and you have not identified one. Your suggestion that you might attempt to back out of agreements concerning discovery that you have previously made is unproductive at best. For now, I can only encourage you to honor those agreements and Defendants reserve all rights to seek appropriate remedies should you not do so.

Second, my letter identified the deficiencies in Oracle's discovery responses without extensive discussion of the bases for our belief that our discovery requests are appropriate and should be enforced. I did so to provide an outline of the issues for discussion on November 21 and believe that it was helpful to have sent you the letter in advance of that call. Per your request, in this letter I include more detail on the reasons the discovery we seek must be permitted.

Third, your characterization of the "agreement" with respect to the 69 customers identified in the draft preservation order (the so-called "Identified Customers") on page two of your letter (*i.e.*, "Oracle agreed to exchange the license agreements for all TomorrowNow customers in exchange for the full Notes Database, the associated customer file server data and the related customer on-boarding documents") clashes with your assertion in that same paragraph that "Oracle is entitled to discovery on, and SAP is obligated to produce information regarding,

SAP'S access to, and use of, Oracle's SSMs across SAPs *entire customer base*" (emphasis added). Therein lays the tension. We have produced the SAS database and are in the process of producing the associated file server data and the related on-boarding documents and Plaintiffs need to produce the licenses. If Plaintiffs want the remainder of our production to be as to all customers, then Plaintiffs need to make their production relate to those same customers. Otherwise, we are back to the same double standard with respect to this issue as before.[1]

In the following sections, per your request, I have included more discussion of the reasons the information and documents we seek must be produced.[2]

**1. Access to Customer Connection (Requests Nos. 52 & 118)**

In response to Requests Nos. 52 and 118, Plaintiffs previously agreed to provide Jones Day and Defendants' consultants with access to Customer Connection from their offices and from their laptops in remote locations. This will take place via a VNC code, accessing a computer at Bingham's offices, on which Customer Connection will be active. Further, this access will be designated "Highly Confidential" under the protective order. While this was not our preferred method, we agreed initially to try your proposal and reserved our right to object to these restrictions if they prove too onerous or otherwise are objectionable.

In your November 27 letter, you proposed restrictions that are not acceptable. For example, the limitation to four hours per week after the first week is unreasonable. In our December 7 call, Geoff Howard suggested that we try the access for the first week, with each side reserving rights as to what is ultimately appropriate and adequate, and that we revisit the issue thereafter. This is acceptable.

We also made clear that this access will be confidential attorney work product, and you agreed that there would be no effort by Plaintiffs to use our access to Customer Connection as a means to access our work product.

**2. Mapping of Products and Software and Support Materials (Requests Nos. 44-47)**

We continue to ask for information and documents that map the Oracle products at issue in this case to the Software and Support Materials ("SSM") available on Customer Connection to which Oracle believes a licensee of these products is entitled. This information is responsive to Interrogatories Nos. 4 and 7 as well as Requests Nos. 44-47.

[1] The Complaint alleges a scheme to lure away as much of Oracle's customer base as possible, as well as future customers. *See, e.g.*, ¶¶ 2, 16, 46, 49, 55, 133. This includes allegedly releasing "a torrent of marketing materials designed to exacerbate and leverage" perceived but unfounded customer uncertainty (¶ 54) and deploying sales people to pressure customers to switch to TN (¶ 55). Presumably these allegations form part of the basis for Oracle's unfair competition and interference claims. Oracle can't have it both ways, *i.e.*, allege in its Complaint a broad unlawful scheme that includes far beyond just downloads but then try to limit discovery to customers for whom TN allegedly downloaded. In other words, Oracle cannot, for example, allege that the perceived customer uncertainty was "unfounded" and then refuse to turn over documents about its customers.

[2] This is not an exhaustive discussion, but rather is sufficient to justify the discovery sought. We reserve the right to supplement as appropriate.

During our November 21 call and in your November 27 letter you stated that you were working on this issue and expected to have something to us soon. This is a very high priority for us, so I would appreciate it if you would either produce the information forthwith or let me know by email when we can expect it to be produced.

**3. Termination Policies (Request No. 48)**

Request No. 48 seeks documents relating to Oracle's policies and procedures for terminating customers' access to Customer Connection after the customers' maintenance end date has passed. Oracle has improperly limited its agreement to produce documents to those relating to Identified Customers.

We believe the requested documents are relevant to the interpretation of customer agreements, causation of damages, mitigation of damages, acquiescence,[3] consent[4] and to Plaintiffs' broad allegations that customers have no rights to download or access other than as limited by contracts.[5] For example, there may be evidence that Oracle knowingly permitted customers to access Customer Connection after the maintenance end dates had passed. Oracle has claimed "damage to the confidential nature of the information on Oracle's website."[6] The extent to which Oracle has protected the alleged confidentiality of that information is thus at issue. There is no basis to limit this discovery to the Identified Customers, as Oracle may have abandoned its alleged rights by widely permitting access to others. Moreover, if the evidence shows that Oracle permitted other customers and/or third party service providers to access Customer Connection after the termination date, then this may show that such access was not the cause of customers going to TN.

You have agreed to consult further with your client on this request and we await your final response.

**4. Audit Rights (Requests Nos. 49-50)**

Requests Nos. 49 and 50 seek discovery of Oracle's rights, policies and practices with respect to audits of its customers' access to, or Downloads from, Customer Connection, any associated SSMs, and any similar Oracle support websites. Oracle has refused to produce such documents, except those related to Identified Customers.

This discovery is appropriate for the same reasons as discussed in the preceding section concerning Termination Policies. Thus, we disagree with your assertion that "whether and how Oracle audits its customers' access to Customer Connection has nothing to do with SAP's illegal access to, downloading of, and misuse of Oracle's SSM's." Among other things, we need all

[3] Acquiescence in allegedly infringing acts may result in abandonment, which constitutes a defense to a copyright infringement claim. *See, e.g.*, 4 Nimmer on Copyright, sec. 13.07.

[4] *See, e.g.*, Answer to First Amended Complaint, Sixteenth Affirmative Defense.

[5] *See, e.g.*, First Amended Complaint, ¶ 3.

[6] *See* Plaintiffs' Amended and Supplemental Responses and Objections to Defendant TomorrowNow, Inc.'s First Set of Interrogatories, p. 20.

documents showing whether Oracle was aware of downloads by any customers that were allegedly beyond the scope of the customers' contractual rights and Oracle's responses in such situations. The production should also include any documents reflecting any auditing or monitoring of usage by customers and/or third party support vendors of passwords to access SSMs.

**5. Electronic Software Updates ("ESUs") and Software Application Requests ("SARs") (Request No. 51)**

Request No. 51 seeks Documents sufficient to show all Electronic Software Updates ("ESUs") and Software Application Requests ("SARs") relating to the Software and Support Materials, and the system code for each such SAR and ESU. Oracle has improperly limited its agreement to produce to SSMs allegedly downloaded by Defendants only.

The type of data this request seeks includes, but is not limited to, the underlying data used by Change Assistant to link ESUs and SARs to particular system codes, as we have discussed at length with you. More specifically, as we have explained, it appears that such capabilities in Change Assistant allow users of that software to specify system codes as a means to download ESUs and SARs that Oracle believes are linked to those system codes. It appears that Change Assistant's search capabilities by system codes has to be enabled in the software by some internal or external reference to an Oracle generated table or other database which "maps" the ESRs and SARs to particular system codes. While we cannot be sure without seeing the data, it is possible that Oracle's production of that table or database could satisfy Request No. 51.

**6. Contacts with TN Employees (Requests Nos. 25-27)**

Requests Nos. 25 and 26 seek documents relating to communications between Oracle, or anyone acting on its behalf, and any current or former TN employees and affiliated entities concerning TN, SAP America, or SAP AG. Request No. 27 seeks documents reflecting the terms of employment with Oracle for TN employees who formerly worked for Oracle. Oracle has refused to produce any documents in response to these requests.

Requests Nos. 25 and 26 are appropriate for the reasons discussed in the section concerning Termination Policies, above. It most certainly is relevant if Oracle employees were aware of conduct by Defendants that Plaintiffs now allege to be inappropriate. Oracle also seems to claim that TN was mining for Oracle employees to get information about Oracle. For example, Oracle alleges in the Complaint that "SAP intentionally targets Oracle's employees to extract their knowledge of Oracle's new products."[7]

Your objection seems primarily to be one of burden, in that you do not want search for the files of "low-level Oracle employees around the globe" to locate the evidence concerning TN. In order to address that concern, we are willing to narrow the request (at this time) to documents relating to communications concerning TN. We will reserve the right to seek the other documents at a later time, if necessary. By thus limiting the requests to communications with or concerning the employees of a single third party (*i.e.*, TN), they are reasonably focused. In fact,

---

[7] First Amended Complaint, ¶ 71.

Oracle itself is seeking in discovery the identification of all former Oracle employees who worked for SAP or TN, and we will produce identifying information for TN employees.

Documents in response to Request No. 27 should be produced so TN can evaluate the restrictions, if any, that Oracle believes it has imposed on its former employees. Your suggestion that we try to get these documents from the employees themselves is not a valid excuse. Many employees may no longer work for TN and, in any case, the fact that Defendants may have other means of locating the documents does not relieve Plaintiffs of their duty to produce them. Indeed, it should be relatively easy for Oracle to locate and produce these documents.

7. **Third Party Support (Requests Nos. 29-34 & 39-40)**

Requests Nos. 29-34, 39 and 40 seek documents concerning third party support of Oracle's products. In response to Request No. 29, you have identified the universe of third party support providers in your response to Interrogatory No. 9, and that will suffice for now.

Requests 30-34 seek, among other information, Oracle's communications with Rimini Street and its employees (Nos. 30, 31), Oracle's position on the proper methods of providing third party maintenance (Nos. 32, 33), and Oracle's communications with industry analysts concerning TN (No. 34). This discovery is appropriate for the same reasons as discussed in the preceding section concerning Termination Policies. To the extent that Oracle has acquiesced in similar activities by other third party support vendors, it could support defenses based on acquiescence, abandonment and consent.

The third party support market is relevant to the issue of alleged damages. Oracle alleges that it lost customers as a result of allegedly improper downloads, etc. That puts into issue the extent to which Oracle lost business to other third party services and derivatively how those companies were doing business. Defendants need full discovery to determine whether the customers alleged to have been inappropriately acquired by TN would have selected a different third party vendor if TN was unavailable. In such a circumstance, Oracle would have lost the revenue in any event. Moreover, Oracle's activities and knowledge concerning third party support are relevant, as Oracle may in fact retain customers for its database or other products by virtue of such organizations. Customers that would otherwise leave Oracle altogether may be retained by Oracle for some purposes if they are able to get support elsewhere. Thus, far from causing damage to Oracle, such third party support activities may increase Oracle's revenues.

In response to Requests Nos. 30-31, you have tentatively agreed to produce Oracle's communications with Rimini Street "regarding TomorrowNow or Oracle's specific allegations about TomorrowNow in the litigation." That is insufficient. We need full responses to these requests.

In searching for responsive documents, we expect that Oracle will thoroughly search files related to *United States v. Oracle* concerning Oracle's acquisition of PeopleSoft. It stands to reason that Oracle would have collected and created documents concerning the market for third party support in connection with that matter.

Request No. 39 seeks documents relating to Oracle's denial of access to its websites, FTP sites, or other online services to customers or third-party support vendors based on conduct. Oracle has refused to produce such documents, except as to Identified Customers. Request No. 40 seeks documents relating to any occasions on which Oracle has granted access to any Oracle website, FTP site, or other online service to a third-party support or maintenance vendor for the purpose of providing third-party support or maintenance services. Oracle has only agreed to produce any such express written agreements. Requests 39 and 40 are appropriate for the reasons discussed in the preceding section concerning Termination Policies. Your limitation to Identified Customers is inappropriate for the reasons set forth in connection with the discussion of that issue, above.

**8. Oracle and Affiliated Support of SAP Products (Request No. 41)**

Request No. 41 seeks documents concerning support or maintenance services Oracle, or anyone acting on its behalf (including Systime), offers for any other company's products, including policies, practices, and procedures with respect to downloads, online support sites and customer log-in credentials in connection with such services. Oracle has refused to produce any documents in response to this request. This request is appropriate for the reasons set forth in connection with the discussions of Termination Policies and Third Party Support, above.

**9. Copyright (Requests Nos. 61, 63 & 87)**

Request No. 61 seeks documents that have any tendency to support or refute any of the facts set forth in the federal copyright registrations for Oracle's alleged Registered Works. Oracle has refused to produce any documents in response to this request. This is a very finite request. If, for example, Oracle has documents that undermine any representation it made to the Copyright Office in connection with its copyright applications, they must be produced.

Request No. 63 seeks copies of each of the Registered Works. Oracle has agreed to meet and confer "to determine an appropriate way for defendants' counsel to inspect the registered current development environments." Please advise us of any proposal you have in this regard. We do not understand why Plaintiffs do not simply produce this material on CDs.

Request No. 87 seeks documents relating to the licenses referred to in ¶ 20 the Complaint (*i.e.*, the alleged licenses from OIC to Oracle Corporation and Oracle USA). In response, Oracle has agreed only to produce the product licenses themselves. The ownership and validity of these licenses is an issue in this case, and Defendants are entitled to discovery into that issue. Thus, any documents that may bear on the validity (*e.g.*, disputes concerning validity, mistakes in the inter-company licensing, etc.) must be produced. We believe that it is not unlikely that the alleged licensing was not handled in the way you have alleged.

**10. Customer Complaints (Request No. 64)**

Request No. 64 seeks documents relating to customer complaints about Oracle's support or maintenance services for products referred to in the Complaint or at issue in this litigation, including complaints about the cost of such support or maintenance, the length of time it takes Oracle to respond to customer requests or resolve customer problems, Oracle's failure to provide

adequate support or maintenance or the prospects of Oracle providing long-term, quality support, and the "software upgrade cycles" referenced in ¶ 47 of the Complaint. Oracle has limited its response to documents related to Identified Customers for products allegedly unlawfully downloaded by Defendants.

These documents are relevant to the issue of damages, including the issue of the causation of damages. To the extent that Oracle alleges that it has lost sales as a result of the actions of Defendants, Defendants should be given broad discovery of the reasons that Oracle loses customers. These documents may show that Oracle would have lost some or all of the alleged lost sales because of poor service or other customer complaints. Documents showing complaints about service by customers other than the Identified Customers will help Defendants identify and understand the types of problems that may have caused customers to leave Oracle. In addition, such documents might show that Oracle benefits from third party maintenance, *i.e.*, by retaining customers for its other database and software products.[8]

In this regard, we suspect that Oracle maintains a customer relations management ("CRM") system, one component of which is a database of Oracle's customer communications. Oracle should produce all documents, including those in any CRM database, that reflect customer communications about its service and support. This should include all Oracle products, as customers may have left Oracle due to dissatisfaction with Oracle products that are not specifically at issue in this case.

**11. Damages (Requests Nos. 65-68, 70-71, 79, 101, 107 and Interrogatory No. 5)**

In your letter, you resist discovery on damages issues on grounds that "the law does not require Oracle to prematurely state all the bases for its damages." We strongly believe that substantial productive discovery into damages issues can and should occur immediately. Postponing this discovery to the "expert phase" of discovery is not workable.

Request No. 65 seeks documents containing basic Oracle financial information for support and maintenance services *for the products* referred to in the Complaint or at issue in this litigation. Request No. 66 seeks similar documents *for the Named Customers and the TN Customers*. In response to both of these requests, Oracle has agreed to produce documents "sufficient to show Oracle's revenues, costs and profit margins for support or maintenance services" relating to "applications for which Oracle has alleged that Defendants downloaded Software and Support Materials from Oracle's systems . . . ."

We do not agree that Oracle can limit its production to information concerning applications that are subject of the alleged Downloads. The alleged Downloads are only part of Oracle's Complaint and Oracle also makes allegations concerning cross-use. Accordingly, Defendants are entitled to discovery of this information for all families of products allegedly at issue in this case, both for downloads and cross-use allegations. Our request is that Oracle produce such information for *all* JD Edwards and PeopleSoft products.

---

[8] As discussed in fn. 1, above, Oracle cannot allege in its complaint that perceived customer uncertainty was "unfounded" but refuse to turn over documents relating to communications with customers.

Requests Nos. 67 and 68 seek Oracle's financial information for products and services *other* than those referred to in the Complaint, including for Named Customers and TN Customers for products other than those referred to in the Complaint. If Oracle produces the requested documents in response to Requests Nos. 65 and 66, as discussed in the preceding paragraph, we are willing to postpone our efforts to compel compliance with this request for now.

In response to Request No. 70 (documents relating to any alleged loss of revenues or profits by Oracle as a result of the conduct alleged in the Complaint), Request No. 101 (documents relating to the alleged cost of the investigation) and Request No. 107 (documents relating to the allegation in ¶ 92 of the Complaint that "Oracle has suffered injury, damage, loss, and harm, including, but not limited to, loss of profits from sales to current and potential customers of Oracle support services and licenses for Oracle's software programs"), Oracle continues to refuse production until the "expert discovery phase." This refusal is unjustified. The cost of the investigation should be readily discernable. Moreover, even if Oracle does not yet have every document that may relate to is alleged losses, it most certainly has some of them and they must be produced.

Request No. 71 seeks documents relating to Oracle's fees for support and maintenance of the Oracle products referred to in the Complaint or at issue in the litigation, including documents concerning how those fees are set and any relationship between the price of a product and the amount Oracle charges for support and maintenance of that product. In its written response, Oracle has refused to produce documents, except for documents showing service terms with Identified Customers. For reasons stated above, the limitation to Identified Customers is not acceptable or fair. Your November 27 letter suggests that such documents will be provided, but not until the "expert discovery phase." There is no reason to wait for that phase, as these documents should exist and be readily identifiable now.

Request No. 79 seeks documents relating to the allegation that "Oracle has invested billions of dollars in research, development, and engineering," as alleged in ¶ 3 of the Complaint. In response, Oracle has made a general reference to its public SEC filings only, without identifying any particular filing or any specific information. If you plan to rely on any particular SEC filings to support this allegation, such documents must be produced. If you choose to produce no other documents in response to this request, then Oracle should be barred from offering any others into evidence at any time.

Interrogatory No. 5 requests information about how Oracle believes any activity alleged in the Complaint has damaged it, including how Oracle was damaged by each allegedly improper download and, if Oracle claims to have lost any customer as a result of any activity alleged in the Complaint, all facts and inferences upon which Oracle bases that claim for each customer allegedly lost. In response, Oracle asserts that "as a minimum and without limitation Oracle has lost the Named Customers as a result of activity alleged in the First Amended Complaint," but provides no supporting information. In your November 27 letter, you again claim that discovery into damages is "premature" and propose to answer it with Oracle's expert damages reports when due. Again, we believe that much of the information Oracle will rely on for its damages case is known and available to Oracle and should be produced. For example, if Oracle believes it has lost certain profit margins as a result of the activities alleged, it should produce the supporting

documents. Oracle has information about TN's customers and, if Oracle believes that it has lost any revenue or profits from any such customer, it should produce the supporting evidence.

**12. Oracle's Acquisitions, Etc. (Requests Nos. 75, 82-84, 90 & 97)**

Several requests go directly to allegations Oracle has made about its acquisitions and related matters, including Request No. 75 (documents relating to the effect of Oracle's acquisition of PeopleSoft on Oracle's ability to compete in the "business software applications business," as alleged in ¶ 43 of the Complaint), Request No. 82 (the "competitive threat from Oracle" referred to in ¶13 of the Complaint), Request No. 83 (whether TN had the "development capability to meet the support commitments as advertised in the 'Safe Passage'" program, as alleged in ¶ 13 of the Complaint), Request No. 84 (TN's development capability, as referred to in ¶13 of the Complaint), and Request No. 90 ("the threat that a combined Oracle and PeopleSoft entity would pose to its competitive position for business software applications," as alleged in ¶ 44 of the Complaint).

Oracle has only agreed to produce documents from the files of "already identified custodians" for Requests Nos. 75, 83, 84 and 90. Oracle has not identified those custodians nor has it provided any reason to believe they would be the appropriate custodians for which to limit this search. In your letter, you suggest that you would be "willing to consider" and exchange of lists of custodians. That offer misses the point. The point is that Oracle has elected to limit its search for responsive documents to a group of custodians for which there is no reason to believe they are likely to have the responsive documents. Defendants have not followed such a nonsensical approach. A search should be done of the appropriate custodians and files.

In response to Request No. 82, Oracle has limited its response to documents relating to SAP's acquisition of TN. We are willing to review those documents before deciding whether to insist on production of other documents.

Similarly, Request No. 97 seeks documents relating to the allegation that "Oracle continued to take market share and expand its product offerings, including through its September 12, 2005 announcement that it would acquire Siebel Systems," as alleged in paragraph 57 of the Complaint. In response, Oracle has only agreed to produce the documents relied upon for allegation. Again, we are willing to review those documents before deciding whether to insist on production of other documents.

**13. Project Fusion (Request No. 81)**

Request No. 81 seeks documents relating to "Project Fusion," referred to in paragraph 12 of the Complaint as "aimed at taking market share from No. 1 ranked SAP," or to "Off SAP." In response, Oracle has refused to produce any documents. Oracle made this an issue in the complaint, and now claims the request is overbroad. What does Oracle propose that would be less burdensome?

**14. Safe Passage (Requests Nos. 92-93)**

Request No. 92 seeks documents relating to the "Safe Passage" program referred to in the Complaint and Request No. 93 seeks documents relating to the allegation that "SAP TN's new parent companies directed it to begin to implement a two-phase plan to increase SAP's enterprise application market share," as alleged in paragraph 51 of the Complaint.

Here again, Oracle has only agreed to produce documents from the files of "already identified custodians," but has neither identified those custodians nor provided any reason to believe they would be the appropriate custodians for which to limit this search. Oracle has made these issues in its complaint and must produce discovery from the custodians likely to have responsive documents, whether or not they are otherwise identified.

**15. Document Retention Policies (Request No. 76)**

Request No. 76 seeks documents relating to Oracle's document retention policies, practices, and procedures, including those relating to electronic data retention, preservation, and destruction, and the retention, preservation, and destruction of paper documents. In response, Oracle has only agreed to produce "the current iteration of its document retention policy and schedule relevant to the information at issue in this litigation." In your letter, you profess not to understand the relevance of this request. This is a relatively standard request, the purpose which is to help us determine the location and existence of discoverable evidence. Oracle should produce all policies applicable to the time period referenced in its complaint back to January 2004.

**16. Organization Charts (Request No. 77)**

Request No. 77 seeks documents sufficient to show Oracle's organizational structure, including the names of, and relationships among, groups or departments within Oracle, the names of, and relationships among, employment positions at Oracle, and the identities of the persons who hold, or have held, those positions.

Oracle has only agreed to produce documents from the files of "already identified custodians," but has neither identified those custodians nor provided any reason to believe they would be the appropriate custodians for which to limit this search.

Defendants reasonably need Oracle's organization charts for people who touch on allegations in this case. Oracle has made these issues in its complaint and must produce discovery from the custodians likely to have responsive documents, whether or not they are otherwise "already identified custodians."

Very truly yours,

Jason McDonell

cc: Christopher B. Hockett, Esq. (via email)
Bree Hann, Esq. (via email)

SFI-574594v1