Walsh v. Apple, Inc. et al

Doc. 97 Att. 5

# EXHIBIT F

Dockets.Justia.com

BINGHAM

Zachary J. Alinder
Direct Phone: (415) 393-2226
Direct Fax: (415) 393-2286
zachary.alinder@bingham.com

January 4, 2007

**Via Electronic Mail**

**HIGHLY CONFIDENTIAL INFORMATION - ATTORNEYS EYES ONLY**

Jason McDonnell, Esq.
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104-1500

**Re: *Oracle Corporation, et al. v. SAP AG, et al.***

Dear Jason:

This letter responds to your further meet and confer letter dated December 12, 2007, addressing both the preliminary and specific discovery issues that you raise.

As to the preliminary issues, it is a fact that your November 19th letter raised many new discovery issues for the first time. We were surprised to see SAP raising discovery issues for the first time after more than two months, and many hours of meet and confer discussions and pages of correspondence, had passed since Oracle served its September 14, 2007 responses. In order to maintain a level playing field and treat similar topics fairly, some of these new issues may require us to re-open dialogue concerning our discovery requests as well. Regardless, we will continue to work in good faith to resolve our differences on all of the outstanding discovery disputes.

Second, there is no conflict between the agreement reached – to exchange TomorrowNow's customer support database and related files for the customer license agreements – and the statement that Oracle is entitled to full discovery on the SAP Defendants' access and use of Oracle's Software and Support Materials ("SSMs") across the entire TomorrowNow customer base. Despite the fact that the customer support database is far more central to the case than license agreements for customers that may not even be at issue here, the agreement we reached, which you grossly mischaracterized in your last letter, was a compromise to allow early exchange of documents that each side deemed important. It does not control the relevant scope of discovery from the SAP Defendants, in particular as to the access and use of Oracle's intellectual property.

The SAP Defendants unlawfully accessed and used Oracle's intellectual property. Oracle is entitled to discover what the SAP Defendants did with that intellectual property across all of TomorrowNow's customers. It does not follow that Oracle must provide discovery about speculative defenses for customers who the parties have not yet established are at issue, across the entire company. Indeed, it appears that SAP has adopted this approach

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T 415.393.2000
F 415.393.2286
bingham.com

as its litigation strategy to punish Oracle through overbroad discovery as a penalty for enforcing intellectual property rights that SAP admits it trampled. We expect the Court soon to reject this approach. It simply is not the case that because SAP stole Oracle intellectual property, Oracle must turn over every document about every customer and every discussion about its product line and third party support it may have. Your attempt to impose this burden on Oracle is unreasonable, particularly because you have not identified any compelling reason why Oracle should produce documents as to all TomorrowNow customers. Instead, we understand you are suggesting that such information should be produced as a quid pro quo. We are not inclined to accept this suggestion.

We next address the specific issues raised in your letter.

**1. Access to Customer Connection (Requests Nos. 52 & 118)**

Consistent with the terms discussed on December 27th, we provided Jones Day and its experts with access to Customer Connection yesterday, and we understand that this access continues today. To confirm our discussion on December 27th, and clarify the language in your letter, we have agreed that defendants' access will be subject to the highly confidential designation, such that only those on defendants' side with access to Oracle designated highly confidential information will have access to Customer Connection or the information derived from that access. Oracle will monitor defendants' access to Customer Connection, including by recording it, and such monitoring or recording will not be considered confidential information of defendants. With the exception of the IP ranges you have provided for the computers you will use to access the computer at Mandiant's headquarters to access Customer Connection through the VNC connection, Oracle will not capture information about defendants' computers or computer systems used to access Customer Connection through the Mandiant computers as discussed above. Oracle will not attempt to discover information on defendants' computers or computer systems used to log in to the Mandiant computer for the purpose of accessing Customer Connection.

**2. Mapping of Products and Software and Support Materials (Requests Nos. 44-47 and Interrogatory Nos. 4 and 7)**

While the product mapping information is contained on Customer Connection, which you currently have access to, we have discovered that there is no document that will provide the information you have requested in any meaningful way. To accommodate the requests, including the response sought in your interrogatories, we are creating spreadsheets that link the system codes for the JD Edwards SSMs to the licensed support products. Similar to the topology map that you produced in advance of the first TomorrowNow 30(b)(6) deposition, we are willing to produce these spreadsheets, as compilation documents sufficient to show the product mapping information requested and in satisfaction of our production obligations pursuant to your request for that information, if you agree that you will not (1) claim that Oracle has waived any privilege or immunity, including but not limited to work product protection; (2) request any other

data that Oracle has compiled in the process of creating the system code mapping we will produce, or (3) attempt to depose any Oracle consulting expert or attorney regarding the preparation of the system code documents. Please let us know if you will agree to that limitation and we will provide the requested information.

**3. Termination Policies (Request No. 48)**

As to Request No. 48, and a number of others below, you state that it is improper to limit this request to "Identified Customers." We disagree. Oracle's termination policy documents related to other customers are not relevant here. The only basis that you have provided for going beyond the "Identified Customers" is your speculation that "there may be evidence that Oracle knowingly permitted customers to access Customer Connection after the maintenance end dates had passed" or "may have abandoned its alleged rights by widely permitting access to others." That speculation is insufficient to support such broad discovery. In addition, even if it were the case that Oracle had "permitted access to others," that is not abandonment. *See, e.g., Dodd, Mead & Co., Inc. v. Lilienthal*, 514 F. Supp. 105, 108 (S.D.N.Y. 1981) (Abandonment requires an "overt act which manifests an intent to surrender rights in the copyrighted material," "[m]ere inaction or negative behavior will not suffice."). On the contrary, courts have regularly rejected the failure to pursue third party infringers as a defense to copyright infringement. *See, e.g., Capitol Records, Inc. v. Naxos of America, Inc.*, 372 F.3d 471, 484 (2d Cir. 2004).

Similarly, any "acquiescence" to unrelated customers' use of Customer Connection after their termination dates would not support your purported defenses here. "[A]cquiescence is a personal defense," which merely results in a loss of rights as against the defendant. *Novell, Inc. v. Weird Stuff, Inc.*, 0094 WL 16458729, n.15 & 17 (N.D. Cal. 1993) (holding acquiescence/estoppel theory as to third parties not a defense to both trademark and copyright infringement). You have provided no support for the proposition that activities with its own customers or other, unrelated third parties, could constitute acquiescence in the illegal acts of SAP in this context, and we are aware of none. Unless you have some different reason, Oracle is not currently inclined to produce this information because it is not likely to lead to the discovery of admissible evidence.

**4. Audit Rights (Requests Nos. 49-50)**

Similar to Request No. 48, we disagree that there is any basis for Oracle to produce audit information beyond the "Identified Customers." Whether Oracle was aware of other unrelated customers downloading beyond their contractual rights has no relevance to the claims here. As explained above in Section 3, the defenses of acquiescence and abandonment do not justify discovery of unrelated customers. Further, these requests do not even call for "all documents showing whether Oracle was aware of the downloads by any customers that were allegedly beyond the scope of the customers contractual rights and Oracle's responses in such situations," as you state in your December 12th letter. There is no basis for Oracle to produce any additional documents. However, in the interest of reaching a compromise, subject to and without waiving the foregoing objections and the objections in the prior responses, in addition to the documents Oracle

has already agreed to produce, Oracle will further agree to search for and produce any general policies and procedures relating to Oracle's rights to audit a customer's access to, or downloads from, Customer Connection to the extent such documents exist, are not privileged, and can be located following a reasonable search.

**5. Electronic Software Updates ("ESUs") and Software Application Requests ("SARs") (Request No. 51)**

After reviewing your further explanation, we are not persuaded that the additional data requested is either relevant or falls within the scope of this request. We had hoped for a detailed explanation of how this material would be relevant to a claim or defense, but do not see that you have provided such an explanation.

**6. Contacts with TN Employees (Requests Nos. 25-27)**

Your further explanation concerning these former employee documents further confirms that Requests Nos. 25-27 are a fishing expedition that would require Oracle to search the files of every employee at the company. Your quoted language from the Complaint is not part of a claim or defense, as we have explained, and does not justify the type of burdensome discovery you propose. You have not explained how restrictions Oracle believes it has imposed on its former employees is relevant to a claim or defense.

Your effort to limit the scope of the request does not address the burden issue - you still appear to demand a company-wide search of all files for evidence that someone at Oracle "knew" from a former TN employee that TN was engaged in a vast conspiracy to steal Oracle's intellectual property. We do not believe the tangential, speculative nature of this information justifies the burden of searching for it.

**7. Third Party Support (Requests Nos. 29-34 & 39-40)**

As to Request No. 29, thank you for your confirmation that Interrogatory Response No. 9 sufficiently responds to this request.

As to Requests Nos. 30-34, Oracle will agree to further supplement these Requests in the manner proposed below.

For Request Nos. 30-31, subject to and without waiving the objections stated in Oracle's prior responses, Oracle will agree to produce non-privileged communications between Oracle and Rimini Street about SAP TN and the allegations of Oracle's First Amended Complaint to the extent that such documents exist and can be located following a reasonable search.

For Request No. 32, subject to and without waiving the objections stated in Oracle's prior response, Oracle will agree to produce policies regarding the propriety of SAP TN providing third-party support or maintenance for legacy J.D. Edwards and PeopleSoft

software applications to the extent that such documents exist, are not privileged, and can be located following a reasonable search.

For Request Nos. 33 and 34, subject to and without waiving the objections stated in Oracle's prior responses, Oracle will produce non-privileged communications between Oracle and industry analysts (e.g., Gartner, Inc.) discussing TomorrowNow to the extent that such documents exist and can be located following a reasonable search."

We do not believe defendants are entitled to discovery more broadly addressing the third party support market outside of TomorrowNow. To the extent you defend this discovery as damages discovery, it could only conceivably be relevant if limited to information about SAP/TomorrowNow. To even get that, you would have to contend that Oracle benefited from SAP's theft of Oracle's intellectual property. Although we highly doubt you will actually pursue such a theory at trial, we believe our proposed compromise offers more than you are entitled to discover when the relevance and seriousness of this theory is weighed against the burden of responding to these requests. Indeed, your suggestion that Oracle go back through the litigation files of a case that is nearly four years old reveals that the real purpose of these requests is to impose a material burden on Oracle as a price for attempting to enforce its intellectual property rights.

As to Request Nos. 39 and 40, your further explanation confirms that Oracle's current response is appropriate.

**8. Oracle and Affiliated Support of SAP Products (Request No. 41)**

As to Request No. 41, Oracle still does not see the relevance here of documents concerning the provision of support or maintenance services, by Oracle or anyone acting on its behalf, for "any other company's products...." There is simply no basis for production of such irrelevant documents, particularly considering the broad scope and undue burden that production in response to this request would entail.

**9. Copyright (Requests Nos. 61, 63 & 87)**

As to Request No. 61, your December 12th letter ignores that SAP has taken the position that requests that seek documents that support or refute certain facts are objectionable. *See* November 16, 2007 Meet and Confer Letter from Mr. McDonnell to Mr. Alinder at page 3 ("Nor are we required to disclose our work product concerning which documents 'support or undermine' ... our claims or defenses, which is the call of these requests."). In our phone discussion following the November 16th letter you noted this objection and appeared to agree that "what is good for the goose is good for the gander." Your December 12th letter, however, makes no mention of this apparent contradiction in your position.

As to Request No. 63, in our November 27th letter, we requested that to the extent SAP disputes whether a particular SSM that Oracle has alleged was illegally downloaded by SAP is copyrighted, please identify that SSM and we will provide access to the

copyrighted material that we contend covers that SSM. Please provide that list at your earliest convenience.

As to Request No. 87, Oracle will agree to produce records sufficient to show ownership of the relevant intellectual property and any transfer of that ownership to Oracle. We do not understand your licensing validity point, since, even under your argument, you do not appear to contend that none of the plaintiff entities have the right to bring the claims in the First Amended Complaint.

**10. Customer Complaints (Request No. 64)**

As to Request No. 64, your further explanation is not persuasive. Your contention that Oracle should produce every complaint from every customer related to every product Oracle sells exposes this request as an improper attempt to burden Oracle and punish it for seeking redress for defendants' theft.

**11. Damages (Requests Nos. 65-68, 70-71, 79, 101, 107 and Interrogatory No. 5)**

Your letter is the first time that you have attempted to meet and confer regarding Oracle's responses to Request Nos. 65 and 66, which Oracle served on September 14, 2007. These requests seek broad discovery of financial documents, as to which Oracle properly limited the discovery to the software applications at issue here. In your December 12th letter, you state that Oracle must produce such information "for *all* JD Edwards and PeopleSoft products." Please identify which JD Edwards and PeopleSoft products you believe require damages discovery, but that were not part of the downloading scheme by the SAP Defendants, so that we can evaluate this request further. This may also resolve the issues raised with respect to Request Nos. 67-68, as stated in your December 12th letter.

As to the remaining Damages Requests (Nos. 70-71, 79, 101, 107 and Interrogatory No. 5), Oracle has already explained why any further response to these requests is premature and improper. *See* November 27th Meet and Confer Letter from Mr. Alinder to Mr. McDonnell. However, as we have made clear in our meet and confer discussions, Oracle is not withholding underlying damages-related documents on the basis that expert discovery has not begun. To the contrary, Oracle has already provided thousands of pages of documents responsive to these requests, and is preparing to produce shortly documents reflecting customers Oracle lost to TomorrowNow as the result of TomorrowNow's illegal activity, and other customers with whom Oracle negotiated discounts due to TomorrowNow's illegal activity. Finally, Oracle is willing consider further limits to make these requests more reasonable, and regardless, will continue to produce additional damages-related documents as its damages from defendants' conduct becomes clearer through discovery and investigation.

**12. Oracle's Acquisitions, Etc. (Requests Nos. 75, 82-84, 90 & 97)**

As to Request Nos. 75, 83-84 and 90, SAP has yet to explain how these documents could be relevant to the claims and defenses in this litigation. Background allegations in a complaint do not give the defendant broad license to sweeping discovery on each allegation, particularly when not critical to the elements of a claim or defense. *See, e.g., Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union, AFL–CIO–CLC*, 103 F.3d 1007, 1012-13 (D.C. Cir. 1997) ("[T]he standard of relevancy is not so liberal as to allow a party to ... explore matter which does not presently appear germane on the theory that it might conceivably become so.") (internal quotes omitted). Although we strongly dispute the relevance of these requests, we are willing to search for relevant and responsive documents within the universe of already-collected material, which includes executives and other Oracle employees who we would expect to have responsive information. We are not willing to undertake the substantial additional burden of going back out into the company specifically to collect materials responsive to this request.

We will consider Request Nos. 82 and 97 resolved at this point.

**13. Project Fusion (Request No. 81)**

SAP has yet to explain how the requested documents related to Project Fusion are relevant to the claims or defenses asserted here. We believe they are not.

**14. Safe Passage (Requests Nos. 92-93)**

As to Request Nos. 92-93, although we strongly dispute the relevance of these requests, we are willing to search for relevant and responsive documents within the universe of already-collected material, which includes executives and other Oracle employees who we would expect to have relevant responsive information. We are not willing to undertake the substantial additional burden of going back out into the company specifically to collect materials responsive to this request.

**15. Document Retention Policies (Request No. 76)**

Document retention by Oracle is not an issue in the case. Thus, there is no basis for Oracle to produce all of its document retention policies. The current iteration of Oracle's document retention policies and related schedules are more than sufficient here.

**16. Organization Charts (Request No. 77)**

Oracle does not maintain organizational charts in the form you may be considering. However, in an effort to respond to Request No. 77, subject to the objections stated in Oracle's prior response, Oracle will agree to produce a form of organizational structure covering relevant groups at Oracle to the extent that such documents exist, are non-privileged, and can be located following a reasonable search.

* * * * *

We look forward to discussing the outstanding discovery issues with you later today.

Sincerely yours,

Zachary J. Alinder

cc: Chris Hockett
Geoff Howard
Holly House
Scott Cowan
Joshua Fuchs