Walsh v. Apple, Inc. et al Doc. 107



IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ORACLE CORPORATION, et al.,

Plaintiffs,

v.

SAP AG, et al.,

Defendants.
_______________________________________/

No. C-07-01658 PJH (EDL)

**ORDER REGARDING SCOPE OF DISCOVERY OF ELECTRONICALLY STORED INFORMATION, INCLUDING LIMITS ON NUMBER OF CUSTODIANS TO BE SEARCHED AND SAMPLING**

On July 1, 2008, the Court held a discovery conference in this case brought under the Copyright Act, 17 U.S.C. §§ 101, et seq., and the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, et seq. in which Plaintiffs allege that Defendant TomorrowNow, which has been acquired by Defendant SAP, improperly downloaded software and support materials on behalf of its customers in violation of those customers' licenses with Oracle. For the reasons stated at the conference and set forth herein, the Court issues the following Order.

**Custodian limits**

In addition to other document discovery, such as from centralized repositories, the parties agree that discovery of custodians should be focused on a subset of each party's potentially relevant custodians and agree that the opposing party may select who to designate as custodian and in which order the searches and production will be done. However, the parties disagree on the number of custodians each should search. Plaintiffs have reduced the number of proposed custodians of Defendants for Defendants to search to a total of 165, while Defendants continue to propose that they search 115. The issue is one of proportionality under Federal Rule of Civil Procedure

Dockets.Justia.com

26(b)(2)(C)(iii). Plaintiffs argue that discovery from 165 custodians is necessary and proportionate to the needs of the case, while Defendants respond, inter alia, that because they are only capable of producing documents from an average of ten custodians a month, and the average cost per custodian is about $100,000, discovery of 165 custodians would take more than one year, past the discovery cutoff, and cost approximately $16.5 million.

In determining proportionality, that is, whether the burden or expense of the proposed discovery outweighs the likely benefit, the Court considers the following factors: "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." See Fed. R. Civ. P. 26(b)(2)(C)(iii). Plaintiffs argue that millions of dollars spent on this one portion of discovery is justified given that Defendants allegedly engaged in serious intellectual property violations through extensive illegal downloads, creation of multiple infringing software environments, and theft of "many hundreds" of customers, such that it "appears" that damages are at least "several hundreds of millions of dollars and likely are at least a billion dollars." Jt. Discovery Conference Statement (docket number 102) at 3. Further, Defendants, like Plaintiffs, are a large company with considerable resources.

Defendants counter that even while employing in excess of fifty contract attorneys and a software vendor in addition to litigation counsel, they have only been able to produce documents at the monthly rate of ten average-size custodians based on Defendants' ability to review 500,000 documents per month (i.e., on average, each custodian had 48,000 documents in his or her files), at the average cost of $100,000 per custodian. Accordingly, discovery of 165 custodians as Plaintiffs urge would cost the staggering sum of $16.5 million – on top of other discovery costs from searches of centralized repositories and targeted searches, not to mention lay and expert depositions and interrogatories. Moreover, the amount of time such an extensive production would take at the current rate would run afoul of the firm discovery cut-off date of June 19, 2009 and trial date of February 8, 2010 set by Judge Hamilton. While Plaintiffs argue that Defendants have created some of their own burden by including irrelevant material, they do not argue that Defendants have understaffed their efforts or that the costs are inflated or out of line with the cost of similar efforts,



**United States District Court**
For the Northern District of California

provided that Defendants present an adequate evidentiary basis to support the average cost of $100,000 as they have agreed to do no later than July 8, 2008. Further, Defendants point out that Plaintiffs have not provided any real analysis of their damages, and argue that rather than "many hundreds" of customers, only roughly seventy converted from Oracle to TomorrowNow and then SAP. In addition, although Plaintiffs believe that extensive custodian discovery is imperative, the Court notes that Plaintiffs did not propose shifting any part of these enormous costs to them.

While this case is undoubtedly important to the parties and implicates the public policy against theft of intellectual property, and may perhaps involve millions of dollars, those factors do not make the needs of the case so extraordinary that this Court can justify forcing Defendants to spend an additional $5 million (subject to verification as promised regarding the actual cost to date) on custodian searches alone, beyond the already costly search of 115 custodians to which they have agreed (at an expected cost of $11.5 million). The Court is mindful that the cost of discovery is only one consideration among many in determining the proportionality of discovery. However, the Court will not condone forcing Defendants to expend $16.5 million on custodial searches for just one aspect of what will undoubtedly be extensive discovery in this case.

Most fundamentally, this Court must construe and administer the discovery rules in accordance with the wise mandate of Rule 1: "the just, speedy, and inexpensive determination of every action and proceeding." Most major document-intensive cases in federal court can be said to involve important public policies, such as the integrity of our securities markets, the viability of competition and the protection of intellectual property, and not infrequently expose parties to millions of dollars in potential damages. Many of the parties (although by no means all), like Defendants here, have large resources. However, if they have to expend many millions of dollars on discovery in each lawsuit that fits this profile because of the explosion in the amount and types of electronically stored information, to recast Calvin Coolidge's saying, the business of America (and other nations) will no longer be business. Instead, businesses will be mired in exorbitantly costly litigation where the process of discovery becomes so onerous and prohibitively expensive that it no longer facilitates resolution on the merits as a means to an end, but dominates and derails the litigation process. Indeed, if the scope of discovery in this case is not contained and managed in an efficient and cost-

effective way, it will run afoul of the deadlines set by the trial judge and produce an avalanche of information that could not be presented to a jury in a manner and time frame that it could digest.

On balance, after consideration of all of the factors, the Court concludes that custodian discovery should be limited to 120 custodians, subject to Defendants' proof of the estimated costs of custodian discovery. Defendants assure the Court, and Plaintiffs recognize, that such verification will be filed no later than July 8, 2008. As stated by the Court at the conference, Plaintiffs were to have notified Defendants by e-mail by July 2, 2008 regarding the form of proof that Plaintiffs would consider sufficient. The Court declines Plaintiffs' invitation to impose non-mutual custodian limits on the parties, specifically, to order Plaintiffs to produce discovery from one-third to one-half of Defendants' total number of custodians. Judge Hamilton imposed equal discovery limits on the parties and Plaintiffs have failed to make an adequate showing why custodian discovery should be unequal. As Plaintiffs themselves point out, they contemplate seeking millions of dollars if not more in damages, and Defendants may need to explore that area proportionately. In so ruling, however, the Court does not suggest that Defendants necessarily should use their full allotment of custodians, which is a ceiling, not a floor. The parties may reserve any number of the 120 custodians for later discovery. The Court does not expect to increase the number of custodians absent a showing of extraordinarily good cause.

**Sampling and extrapolation**

The Court has urged the parties to consider sampling of the voluminous evidence, to provide a basis for the parties' experts to extrapolate the extent of illegal activity and associated damages, in lieu of a likely futile and undoubtedly exorbitantly costly and labor-intensive attempt to produce and review all of it. See, e.g., Fed. Jud. Ctr., Manual for Complex Litig. (Fourth), § 11.493 (2004) ("Acceptable sampling techniques, in lieu of discovery and presentation of voluminous data from the entire population, can save substantial time and expense, and in some cases provide the only practicable means to collect and present relevant data."). Plaintiffs propose applying this approach to the Defendants' use of software environments to create allegedly infringing derivative works and distribute such works. There may be other topics that would also lend themselves to this approach. The parties agree that this approach has merit, but need to agree on a detailed protocol with the

assistance of their experts. Accordingly, no later than July 18, 2008, the parties shall file a proposal for extrapolation, at a minimum as to software environments. The parties should consider including as part of any proposed protocol a provision that they may not attack each other's experts' conclusions on the grounds that the conclusions were reached based on an agreed-upon sampling of the evidence.

**Damages causation evidence**

Plaintiffs argue that they have not received comparable damages causation evidence from Defendants, such as, a summary report as to why Plaintiffs' customers did or did not move to TomorrowNow, or documentation of any of the claimed Safe Passage deals. At the hearing, Defendants stated that they would produce exemplars of win/loss reports, customer surveys, and the electronic customer relationship management database which they believe are comparable to what Plaintiffs produced. Defendants shall provide the exemplars no later than July 11, 2008. Defendants also agreed to provide a list of the roughly seventy customers that moved to TomorrowNow and/or SAP; the list should include the more clearcut instances of transfer as well as the less clear transfers, annotated accordingly, and production should begin promptly with the more clearcut cases. Defendants shall provide this list no later than July 18, 2008.

**Search terms**

Plaintiffs contend that they have formulated a list of search terms that hits one hundred percent of the responsive documents, while limiting the volume of documents that must then be manually reviewed for privilege and the like, before production. Defendants have not yet hit one hundred percent with an acceptable attendant decrease in the number of documents that must be manually reviewed, but are continuing to refine their efforts. The parties shall resolve this issue no later than July 11, 2008, and should be guided by the Court's comments at the hearing that it is not necessary or likely practical for Defendants to establish a search protocol that ensures reaching one hundred percent of responsive documents while also providing meaningful cost savings by reducing the volume of documents that must be manually reviewed.

**Targeted searches**

The parties agree that targeted searches should be used to conduct reasonably well-defined

searches for information in likely sources other than the files of the designated custodians. Targeted searches can include searches of centralized repositories on specific topics or of employees' files based on asking them to identify relevant documents on particular topics. The parties also agree that targeted searches should be limited to ten per side. Further, the parties agreed at the hearing that any limited targeted searches would not count against the custodian limit. Accordingly, no later than July 18, 2008, the parties shall propose to the Court a plan for the timing of the targeted searches.

**Board meeting minutes**

At the hearing, Defendants proposed treating Board meeting minutes as very highly confidential and redacting them for irrelevant information. No later than July 18, 2008, the parties shall propose a plan for handling discovery of Board meeting minutes.

**Further discovery conferences**

Further discovery conferences are scheduled for July 24, 2008 at 2:30 p.m. and August 28, 2008 at 10:00 a.m. No later than one week before the discovery conference, the parties shall submit a joint discovery conference statement setting out in a non-argumentative fashion the substance of any discovery disputes, organized issue by issue, that is, setting forth each parties' position on each issue and proposed reasonable resolution before moving on to the next issue.

**IT IS SO ORDERED.**

Dated: July 3, 2008

Elizabeth D. Laporte

ELIZABETH D. LAPORTE
United States Magistrate Judge