Walsh v. Apple, Inc. et al Doc. 136

BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle Corporation, Oracle USA, Inc.,
and Oracle International Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br>v.<br><br>SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. 07-CV-01658 PJH (EDL)<br><br>**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF CLAWED BACK DOCUMENTS**<br><br>Date: TBD<br>Time: TBD<br>Courtroom: E, 15th Floor<br>Judge: Hon. Elizabeth D. Laporte |



Dockets.Justia.com

## TABLE OF CONTENTS

Page

I. THE COURT SHOULD ORDER THE NON-PRIVILEGED EXEMPLAR CONTESTED DOCUMENTS TO BE PRODUCED ..... 2

A. The Three Exemplar Non-Privileged Documents ..... 2

B. Only Legal Advice Is Privileged ..... 3

C. Under the Law, Contested Documents Nos. 1-3 (and 4) Are Not Privileged ..... 4

II. THE COURT SHOULD ORDER DEFENDANTS TO PRODUCE THE EXEMPLAR DOCUMENTS ABOUT THE RULES OF ENGAGEMENT ..... 5

A. Relevant Factual Background ..... 5

1. Defendants' Strategic Use of Privilege In Anticipation of This Litigation ..... 5

2. Production and Use by Parties of Rules of Engagement Evidence ..... 6

3. How and When Defendants Clawed Back Documents ..... 7

4. Defendants' Inconsistent Treatment of Comparable Documents ..... 8

B. The Three Exemplar Rules of Engagement Documents ..... 8

C. Defendants Have Implicitly And Selectively Waived The Attorney-Client Privilege As To Communications About The Rules of Engagement ..... 9

III. CONCLUSION ..... 11

<u>TABLE OF AUTHORITIES</u>

Page

<u>Cases</u>

*Accord Rambus Inc. v. Samsung Elecs. Co. Ltd.*, 2007 W.L. 3444376 (N.D. Cal. Nov. 13, 2007) .......... 9

*B. F. G. of Ill., Inc. v. Ameritech Corp.*, 2001 W.L. 1414468 (N.D. Ill. Nov. 13, 2001) .......... 4

*Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003) .......... 9, 11

*Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992) .......... 9, 10

*Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323 (N.D. Cal. 1985) .......... 3, 4, 9

*Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975) .......... 9, 10

*Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322 (9th Cir. 1995) .......... 9

*In re Sealed Case*, 737 F.2d 94 (D. D.C. 1984) .......... 4

*U.S. v. Chevron Corp.*, 1996 U.S. Dist. LEXIS 4154 (N.D. Cal. March 13, 1996) .......... 4

*U.S. v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065 (N.D. Cal. 2002) .......... 4

*United States v. Roberson*, 859 F.2d 1376 (9th Cir. 1988) .......... 3

*Williams v. Sprint/United Mgmt. Co.*, 2007 WL 38397 (D. Kan. Jan. 5, 2007) .......... 11

<u>Rules</u>

Fed. R. Civ. P. 26 .......... 7

Fed. R. Evid. 501 .......... 3

## I. INTRODUCTION

Plaintiffs Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation (together "Oracle" or "Plaintiffs") move to compel production of six examples of documents that Defendants SAP AG and SAP America, Inc. (together, "SAP"), and Defendant TomorrowNow, Inc. ("TN") initially produced, but then recalled on grounds of attorney-client privilege ("AC Privilege").

Oracle knows the contents of over 100 of these documents because Defendants produced them (often multiple times) before clawing them back. Many others appear to fit the same categories by their descriptions on SAP's privilege log. The documents presented here for the Court's *in camera* review illustrate two larger categories of documents Defendants should produce: (1) non-privileged documents and (2) documents over which the privilege has been implicitly or selectively waived.

Those in the first category simply are not privileged. Some of these documents merely reflect the fact that legal advice was sought – an activity that is not in itself privileged, while others convey or reflect business discussion and not legal advice. Defendants' overuse of the AC Privilege to protect such items is inappropriate and should be curtailed.

The second category of documents relate to SAP's extensive production of, but simultaneous assertions of the AC Privilege as a shield over, information regarding the creation and application of the SAP/TN "Rules of Engagement." This purported company policy allegedly separated aspects of SAP's and TN's businesses from one another in an attempt to avoid passing Oracle's intellectual property from TN to SAP. Defendants have vigorously wielded this policy as evidence – a "sword" – to support their argument that the Rules of Engagement created a firewall to stop TN's liability from bleeding over to SAP. At the same time, Defendants have asserted the AC Privilege as a shield to preclude discovery into the purpose, the creation and the application of the Rules of Engagement. Moreover, Defendants have been inconsistent – and selective – in their assertions of the AC Privilege on these subjects, allowing inquiry to make their points but foreclosing full inquiry that would allow Oracle to discover the details underlying these Rules. By asserting defenses in the litigation based on the

same subject matter as that contained in the recalled documents (and allowing selective disclosure), Defendants have waived the AC Privilege, and are precluded from relying on the advice of counsel as a defense (sword), while refusing to produce documents and testimony relating to that advice (using the same privilege to shield discovery).

Out of the 104 documents Defendants have clawed back to date, nearly half of them (49) fall into the two categories at issue here: (1) documents not privileged on their face; and (2) documents involving lawyers' efforts to shield liability by creating corporate separation through the Rules of Engagement. Oracle contests the claim of AC Privilege over all 49 of these documents. *See* accompanying Declaration of Geoffrey M. Howard ("Howard Dec."), Ex. A (table of documents) (the "Contested Documents"). The parties have met and conferred extensively about the documents Defendants have clawed back. *Id.* at ¶ 27. Per the Court's Order resulting from the July 24, 2008 discovery conference, Oracle also shared a copy of this motion with Defendants a day before filing; on August 1, 2008, Defendants withdrew their claim of privilege as to one of the six illustrative documents Oracle proposes herein for *in camera* review. *Id.* at ¶ 28.

Consistent with the procedures worked out with the Court, Oracle makes this motion to compel, and proposes for *in camera* review the illustrative sample documents described below.[1] Oracle believes that the Court's ruling on the six exemplar documents presented will aid the meet and confer process relating to the voluminous additional documents in each category, as well as other privilege issues under discussion by the parties, including Oracle's ability to probe into discovery in those areas where Defendants seek to use legal advice as a sword and shield.

## I. THE COURT SHOULD ORDER THE NON-PRIVILEGED EXEMPLAR CONTESTED DOCUMENTS TO BE PRODUCED

### A. The Three Exemplar Non-Privileged Documents

The three documents Oracle proposes for *in camera* review as examples of the first

[1] Because Defendants have clawed them back, Defendants are actually providing the Court with the non-redacted copies of the six documents at issue. Oracle has requested they do so in conjunction with Oracle's filing of this motion.

category – documents not privileged on their face – are:

(1) An email (Bates labeled TN-OR00854803-804) [redacted] that transmission does not imbue the underlying self-described business analysis with attorney-client privilege. *See* Howard Dec., Ex. B (Contested Document #1).

(2) A powerpoint presentation (Bates labeled TN-OR00164402-410) containing [redacted] Thus, the document itself admits that the more limited business analysis it contains is not privileged. *See id.*, Ex. C (Contested Document #2).

(3) An email concerning [redacted] *See id.*, Ex. D (Contested Document #3).[2]

**B. Only Legal Advice Is Privileged**

Analyses of privilege in federal question cases such as this case are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501; *see United States v. Roberson*, 859 F.2d 1376, 1378 (9th Cir. 1988). Under the common law, the party asserting the privilege has the burden of "establish[ing] all elements of the privilege, including confidentiality, which is not presumed . . . and non-waiver . . . ." *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 327

---

[2] Defendants withdrew their claim of privilege as to this document only on August 1, 2008, hours before this motion was filed. Howard Dec. at ¶ 28. Because Oracle did not have time to submit a substitute document, and because the document is still illustrative of the wider category of documents over which Defendants have inappropriately claimed AC Privilege, Oracle submits Exhibit D for the Court's consideration of the broader category.

(N.D. Cal. 1985).

A fundamental requirement of an attorney-client communication is that it must be "made for the primary purpose of securing legal advice or legal services." *Id.* The mere presence of an attorney in a communication does not render the communication privileged. *Id.* Rather, when an attorney acts as a conduit for communications between business decision-makers the "primary purpose" of the communication is neither a request nor an offer of legal advice. *Id.*; *see also B. F. G. of Ill., Inc. v. Ameritech Corp.*, 2001 W.L. 1414468, at *7 (N.D. Ill. Nov. 13, 2001) (noting that "where the court finds that a party used in-house counsel to apply a veneer of privilege to non-privileged business communications, the court should impose costs on that party"). Similarly, when an in-house attorney renders business advice alone, such communications are not privileged. *In re Sealed Case*, 737 F.2d 94, 99 (D. D.C. 1984) ("Company can shelter [attorney's] advice only upon a clear showing that [attorney] gave it in a professional legal capacity."); *U.S. v. Chevron Corp.*, 1996 U.S. Dist. LEXIS 4154, at *9 (N.D. Cal. March 13, 1996) (same); *see also U.S. v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002) ("Because in-house counsel may operate in a purely or primarily business capacity in connection with many corporate endeavors, the presumption that attaches to communications with outside counsel does not extend to communications with in-house counsel.").

### C. Under the Law, Contested Documents Nos. 1-3 (and 4)[3] Are Not Privileged

The three exemplar Contested Documents do not appear to contain legal advice or constitute related communications. Contested Documents #1 and #2 (Howard Dec., Exs. B-C) [redacted]. Neither document's primary purpose is a request or offer of legal advice. In Contested Document #3 (*id.*, Ex. D), [redacted]

---

[3] Contested Document #4 concerns the Rules of Engagement and is described in Section III.B below. However, as it discusses [redacted] it also is not privileged on its face under the law discussed in this section.

[redacted]

These documents are representative of Defendants' general practice of overstating the AC Privilege. The Court should order Defendants to produce them (and any comparable documents or information Defendants have withheld on AC Privilege grounds).

## II. THE COURT SHOULD ORDER DEFENDANTS TO PRODUCE THE EXEMPLAR DOCUMENTS ABOUT THE RULES OF ENGAGEMENT

### A. Relevant Factual Background

#### 1. Defendants' Strategic Use of Privilege In Anticipation of This Litigation

SAP has planned to use the AC Privilege to shield itself from liability since before it bought TN in January 2005. Before the TN purchase, SAP knew that TN violated Oracle's copyrights and that Oracle would "very likely" sue. It concocted a plan to create a firewall between SAP and TN in an attempt to limit liability to the smaller company. [redacted] *See* Howard Dec., Ex. E. [redacted] *Id.*, Ex. F. [redacted] *Id.*, Ex. G.

In January 2005, the diligence team (which included members of the SAP executive board) submitted an analysis and recommendation to the full board to approve moving forward with an acquisition of TN. [redacted] *Id.*, Ex. H.

SAP then acquired TN, with full knowledge of its illegal conduct, and adopted the plan to shield itself from liability. SAP instructed its lawyers to create separation between the SAP entities and TN, not just in the corporate structure, but in the relationship between the entities. Immediately post-acquisition, SAP created a set of rules to govern interaction between the

companies (known as the "Rules of Engagement"). SAP did this for the singular purpose of limiting its own liability for what it knew to be TN's ongoing illegal conduct. [redacted] *Id.*, Ex. I. [redacted] *Id.*, Ex. J.

**2. Production and Use by Parties of Rules of Engagement Evidence**

After the anticipated litigation by Oracle actually commenced, Defendants continued to assert or waive AC Privilege as it suited them strategically. For instance, Defendants relied on the Rules of Engagement as evidence of their purportedly responsible treatment of Oracle's intellectual property and as a basis for limiting SAP's liability in their Answer to Oracle's First Amended Complaint, in press conferences and in responses to Oracle's discovery. *See* Answer ¶ 2 (claiming that Defendants "respect IP rights" and "have taken and are taking steps to assure that TN's business is conducted" properly); Howard Dec., Ex. K (Def. Supp. Response to Interrogatory No. 6, [redacted]), Ex. L (SAP Press Release, claiming that SAP "intentionally created a business structure that maintained a firewall" between SAP and TN).

Moreover, Defendants permitted Oracle to inquire about the Rules of Engagement in depositions of their witnesses, [redacted] *See* Howard Dec., Ex. M (Nelson Vol. 2 at 208:10-211:8, testifying about [redacted]

[redacted]). *See also, e.g.*, *id.*, Ex. N (Shenkman Vol. 1 at 295:16-298:5, testifying that [redacted]), Ex. O (Shenkman Vol. 2 at 396:14-397:10, testifying that [redacted] and at 399:11-19, testifying about [redacted]), Ex. P (Mackey Vol. 1 at 279:8-280:24, agreeing that [redacted] and at 251:14-253:12, testifying that [redacted]).

### 3. How and When Defendants Clawed Back Documents

Oracle also used many of the documents Defendants eventually clawed back when it drafted its initial Second Amended Complaint ("SAC"). In April 2008, Oracle shared its initial draft SAC with Defendants. Defendants responded by delivering their first claw-back letter, targeting documents cited by the SAC and asserting that they had inadvertently produced 15 documents in total that were subject to privilege protection.[4] *See* Howard Dec., Ex. R (April 17, 2008 Claw-Back Letter). A second letter over a month later pulled back an additional 87 documents, *id.*, Ex. S (May 29, 2008 Claw-Back Letter), and a third letter recalled two more documents. *Id.*, Ex. T (July 2, 2008 Claw-Back Letter). After receiving each letter, Oracle promptly took steps to destroy all copies but one of each document, and sequestered the remaining copies, in compliance with Fed. R. Civ. P. 26(b)(5)(B), with the Protective Order in this matter and with the Court's instructions at the May 28, 2008 hearing where the procedure for this motion was initially discussed. *Id.*, ¶ 29.

### 4. Defendants' Inconsistent Treatment of Comparable Documents

Faced with Defendants' clawback demands, Oracle conducted a search of Defendants' productions and learned that Defendants had produced hundreds of communications similar to

---

[4] Although Defendants did not specify at the time of the original clawback letters the type of privilege claimed, Defendants subsequently provided Oracle with a Privilege Log Relating to Claw-Back Documents, *see* Howard Dec., Ex. Q, in which all of the clawed back documents are identified as being protected by the AC Privilege.

the clawed-back documents. For example, a recent electronic search for SAP attorney Chris Faye's name returned 1,085 documents in the SAP and TN document productions, many dealing with subjects substantially similar to the clawed-back documents. Howard Dec., ¶ 30. Oracle pointed out the large number of Faye documents, in particular, to Defendants during the meet and confer process, but Defendants offered no explanation for why some fell within the privilege and others did not. *Id.* At no point since the initial discovery of the "inadvertently produced" documents have Defendants requested that Oracle return any of the other documents that deal with the same topics and involve the same attorneys. *Id.*

**B. The Three Exemplar Rules of Engagement Documents**

Of the many documents in Defendants' clawback set related to the Rules of Engagement, Oracle asks the Court to evaluate the following:

(4) An email [redacted] *See* Howard Dec., Ex. U (Contested Document #4) (also falls within category of not privileged documents because it is a business analysis).

(5) An email [redacted] *See* Howard Dec., Ex. V (Contested Document #5).

(6) An email [redacted] *See* Howard Dec., Ex. W (Contested Document #6).

**C. Defendants Have Implicitly And Selectively Waived The Attorney-Client Privilege As To Communications About The Rules of Engagement**

As to the three exemplar documents referencing the Rules of Engagement (or any other

such documents or evidence on the subject), Defendants cannot "establish . . . non-waiver," *see Hartford Fire*, 109 F.R.D. at 327, because they have waived the privilege for two related reasons. First, Defendants have asserted their efforts to institute the Rules of Engagement as a defense, and have produced information related to that effort involving attorneys, but have blocked proper inquiry into the full scope of those efforts. Second, in doing so, Defendants have selectively (or perhaps wholly) waived the privilege as it relates to the Rules of Engagement by allowing testimony and producing documents involving them.

A party waives the privilege by affirmatively placing at issue the very information for which it claims the privilege, thus using it as both a "shield and a sword," and resulting in an implicit waiver. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992); *see also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (this "fairness principle" is "often expressed in terms of preventing a party from using the privilege as both a shield and a sword"). The Ninth Circuit applies a three-prong test for a finding of implicit waiver. *See Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322 (9th Cir. 1995) (adopting "*Hearn* test" from *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)) ("*Lane*"). An implied waiver of the attorney-client privilege occurs when:

> (1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense.

*Id.* at 1326. *Accord Rambus Inc. v. Samsung Elecs. Co. Ltd.*, 2007 W.L. 3444376, *3 (N.D. Cal. Nov. 13, 2007) (following *Lane*).

In *Hearn*, "defendants assert[ed] the privilege in aid of the[ir] affirmative defense," meaning that "all the elements common to a finding of waiver [were] present":

> [D]efendants invoked the privilege in furtherance of an affirmative defense they asserted for their own benefit; through this affirmative act they placed the protected information at issue, for the legal advice they received [was] germane to the [defense] they raised; and one result of asserting the privilege [was] to deprive plaintiff of information necessary to 'defend' against defendants' affirmative defense, for the protected information [was] also germane to plaintiff's [evidentiary] burden . . . .

*Hearn*, 68 F.R.D. at 581. These elements are similarly present here. SAP and TN have invoked the AC Privilege in support of their position that SAP and TN acted in a lawful manner, via their firewall arrangement to protect intellectual property. Under the law, by touting the Rules of Engagement as a basis to limit SAP's liability, Defendants have placed at issue that strategy and communication. *Compare Chevron*, 974 F.2d at 1162-63 ("[T]o the extent that [defendant] claims that its tax position is reasonable because it was based on advice of counsel, [defendant] puts at issue the tax advice it received.").

At the same time that SAP witnesses have asserted the Rules were created by and as a result of advice of their attorneys and indeed, have shared some of the communications made by those attorneys on the subject, they have denied Oracle full access to the strategy and communications behind their creation. For example, Defendants have clawed back the three exemplar documents and comparable documents and denied Oracle the opportunity to question witnesses about aspects of the Rules creation. Howard Dec., Exs. U, V, W (Contested Documents #4-6), Ex. A (listing comparable clawed back documents), and Ex. O (Shenkman Vol. 2 at 396:14-397:10 and 465:9-16, [redacted]). Yet Defendants have voluntarily revealed substantial information in an apparent effort to bolster their defense, by producing hundreds of documents concerning the Rules of Engagement in response to Oracle's document requests, including documents that convey [redacted]. *See, e.g., id.*, Ex. X (TN-OR00980230, in which [redacted]) and Ex. Y (TN-OR01088467, in which [redacted]). Also, *after* the second clawback letter, Defendants allowed both Arlen Shenkman and James Mackey to testify about [redacted] *See id.*, Exs. N, O, P (Shenkman and Mackey excerpts); *see also* Section III.A.2 above.

In addition, even if Defendants were not relying on the Rules of Engagement as a defense, they have waived the privilege by producing information related to them. This selective

waiver is strategic and unfair. To selectively claim the AC Privilege as they have done allows Defendants to shade the story of how and why the Rules were adopted and denies Oracle access to vital information that would allow it to understand and present the whole story. In essence, Defendants are asking Oracle (and the ultimate fact-finders) to take on faith their assertion that SAP and TN acted in a lawful manner, based on the portion of the materials that Defendants choose to share. That is simply not fair. Nor does the law permit it: "The court thus gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it." *Bittaker*, 331 F.3d at 720.

Under the law, Defendants cannot assert that a firewall existed between SAP and TN such as to protect SAP from liability and yet deny Oracle full discovery about the firewall. If Defendants choose to continue to pursue their claim of privilege as to the Contested Documents, they must "abandon the claim[s] that give[] rise to the waiver." *See id.* [5]

## III. CONCLUSION

Based on the foregoing, Oracle respectfully requests that the Court order Defendants to produce the Contested Documents in unredacted form and also to confirm to Defendants that the Court's analysis in this matter should guide Defendants' ongoing claims of privilege.

DATED: August 1, 2008 BINGHAM McCUTCHEN LLP

By: /s/ Geoffrey M. Howard
Geoffrey M. Howard
Attorneys for Plaintiffs
Oracle Corporation, Oracle USA, Inc., and
Oracle International Corporation

---

[5] In addition, the sheer number of times Defendants have produced the same documents they now seek to claw back, and the volume of substantively similar documents Defendants have not clawed back, supports a finding of waiver. *Cf. Williams v. Sprint/United Mgmt. Co.*, 2007 WL 38397, *4 (D. Kan. Jan. 5, 2007) (finding waiver where attorney intentionally produced redacted version of document protected by attorney client privilege, noting the distinction "between an 'inadvertent' disclosure and a disclosure that is 'advertent and intended where the person making discovery was merely unaware of the legal consequences'").