BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle Corporation, Oracle USA, Inc., and
Oracle International Corporation

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice)*
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE CORPORATION, *et al.*,

Plaintiffs,

v.

SAP AG, *et al.*,

Defendants.

Case No. 07-CV-1658 PJH (EDL)

**JOINT DISCOVERY CONFERENCE STATEMENT**

Date: October 10, 2008
Time: 2:00 p.m.
Courtroom: E, 15th Floor
Judge: Hon. Elizabeth D. Laporte



Dockets.Justia.com

Plaintiffs Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation (collectively, "Oracle") and Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. (collectively, "Defendants," and with Oracle, the "Parties") hereby submit this Joint Discovery Conference Statement.

The Parties jointly request that the Court schedule sixty minutes on October 10, 2008 to further discuss the following discovery issues. In addition, because the Parties believe the Court's regularly scheduled discovery conferences have greatly facilitated the discovery process in this matter and will continue to do so, the Parties jointly request that the Court confirm that discovery conferences have been set for November 26 and January 8, as discussed at the last conference. The Parties were unable to agree on joint discovery conference statement language and so submit separate statements below.

**1. <u>Data Warehouse Review and Production</u>**

In its Requests for Production, dated August 2, 2007, Oracle sought copies of the software and other materials downloaded from Oracle, and of the Oracle software (and works allegedly derived from that software) that are maintained on TomorrowNow's computer systems. These materials relate to Oracle's copyright infringement claims, among others.

As the Court may recall from the technical tutorial, these materials are voluminous, making copying and production logistically difficult. As the Parties have continuously reported, in approximately April 2008 the parties agreed to an arrangement that permits remote access review of certain servers that house these materials so that Oracle can designate relevant material that it wants copied and produced (the "Data Warehouse Agreement"). To date, Defendants have through the Data Warehouse made over 9 terabytes of data from 61 partitions (*i.e.*, from the user's perspective, these are physical or virtual "drives"—often referred to as the "C" drive or "G" drive, etc.) on a total of 39 servers available for Oracle's remote review.

The Data Warehouse review began in mid-July, and by mid-August Oracle completed its review of the materials from 52 server partitions that Defendants made available containing 5.55 terabytes of data. However, because of a number of unexpected technical complexities, Defendants have not yet made available portions of two servers referenced as the "G partition" of

DCITBU01 and the AS/400, a total of least an additional 7 terabytes of information. And, three other servers (DCITBU02, PSDEV01 and PSDEV03) containing approximately 3.5 terabytes of information also involve unexpected technical problems. Defendants contend that DCITBU02 and PSDEV03 have been available for review since September 4th and PSDEV01 has been available since September 24th, even though the Parties may still need work out a separate procedure for handling a small portion of one of those servers. Oracle disagrees. Some or all of these five servers are believed to contain software fixes and updates created by TomorrowNow, and copies of Oracle software either downloaded and/or used by TomorrowNow, among other things. Oracle contends these materials, constituting a total of 10.5 terabytes, are the most critical to evaluating its liability and damages claims.

For the past several weeks, production of data from the Data Warehouse that Oracle has tagged for copying from the servers made available for review has been delayed for a number of reasons, including: (a) the volume of data; (b) unexpected interruptions at Jones Day-Houston caused by Hurricane Ike; and (c) the Parties' disagreement regarding the application of clawback provisions in the Agreed Protective Order to data actually produced from the servers in the Data Warehouse. Defendants experienced some delays in providing a compromise proposal on the clawback issue, but Oracle received that proposal on October 1 and is in the process of reviewing it. The Parties hope to resolve the clawback interpretation issue prior to the Discovery Conference, but if not, they will seek the Court's further guidance on that issue at the conference.

Defendants continue to work to make available for inspection the portions of the two servers that have not been fully reviewed (i.e., "G partition" of DCITBU01 and the AS/400). The 7 terabyte server, DCITBU01, has presented and continues to present numerous technical challenges, however, Defendants' expect to report additional progress on that server before the discovery conference. The Parties anticipate that the AS/400 will require an in-person review by the Parties' counsel and their experts, and that that review will occur no later than early to mid-November. Oracle desires to conduct that review much sooner, and now has concerns about the ultimate preservation, in a forensically reliable manner, of the data on these servers.

Oracle's position is that the delays associated with the production of data and information

from the servers that have been reviewed as a part of the Data Warehouse and the technical problems associated with the five servers identified above has slowed progress of the extrapolation stipulation and has delayed (and for a portion of the data, precluded) access to a total of 10.5 terabytes of information, thereby threatening the current case schedule. Notwithstanding the delay in the delivery of actual copies of the data to Oracle, Defendants' position is that Oracle has had, and still has, access through the Data Warehouse to review and inspect any data on any of the now 61 server partitions containing over 9 terabytes of data that they have made available. The Parties continue to meet and confer on establishing a schedule and efficient means for: (a) making the "G partition" of DCITBU01 and the AS/400 available for review by Oracle; (b) producing copies of the voluminous materials Oracle has tagged for copying as part of the Data Warehouse procedure; and (c) confirming the forensic reliability and availability of large amounts of data. The Parties hope to resolve these scheduling and logistical issues prior to the discovery conference, but if not, they will seek the Court's further guidance on these issues at the conference.

**2. Targeted Searches**

Over three months ago, the Parties and the Court agree that targeted searches are a necessary complement to the custodian productions, especially in light of the current case schedule and discovery deadlines. Following extensive meet and confer and direction from the Court regarding the targeted search process, on August 29, 2008, Oracle served its First Set of Targeted Search Requests on Defendants (*see* attached Exhibit A). Oracle intended those Requests as "narrow searches by topic where document production would come from centralized sources and/or from those persons most likely to have responsive documents," as agreed by the Parties in their August 21, 2008 Joint Discovery Conference Statement and as ordered by the Court in its August 29, 2008 Order Following Discovery Conference. In their Initial and Supplemental Responses to Plaintiffs' First Set of Targeted Search Requests, Defendants objected to production under much of Oracle's targeted search Requests on the ground that the searches requested were not sufficiently targeted (*see* attached Exhibits B & C). For the documents that Defendants agreed to produce, Defendants have stated that production would begin within 30

days and would likely take 90 days to complete. *Id.*

The Parties met and conferred on September 11 in an effort to resolve Defendants' objections and the question of timing of production. Oracle's position is that its targeted searches are similar to those that Defendants had already seen in the drafts that had been exchanged since May 2008 and refined further over the course of the following four months of meeting and conferring and discussion of the topic with the Court (*see* attached Exhibit D at pp. 7-8). Oracle contends that Defendants' former proposed targeted searches included requests covering topics almost identical in form and scope to Oracle's, including requests for "financial information," for "information concerning the reasons [Oracle] lost customers to TomorrowNow," and for "policy and procedure documents…." (*see id.* at pp. 17-18). During the September 11 meet and confer, Defendants stated their position that they need not serve targeted searches for discovery for which Oracle had already agreed to produce the responsive information. Defendants otherwise disagree with Oracle's position and will be prepared at the hearing to demonstrate otherwise.

Oracle also believes Defendants' refusal to respond to its financial information targeted search violates the agreement and the Court's guidance, which directed targeted searches in part as a remedy for the same objections Defendants now raise and in response to concerns about discovery costs.[1] Defendants believe that they have complied with the Court's instructions and

[1] As explained in the Parties' August 21 Joint Discovery Statement, and as discussed at the last three discovery conferences, Oracle also contends that it has not received damages causation evidence from Defendants comparable to that produced by Oracle. To that end, Oracle requested from Defendants, as part of its Financial Documents Targeted Search Request, "reports sufficient to confirm that the 61 customers listed in the Customer List attached to Jane Froyd's July 18, 2008 email are the only SAP customers who either (1) had a contract with TN as a component of their Safe Passage deal, or (2) were previously (or, to the extent the customer was sold TN and SAP products/support together, at the same time) a TN customer who SAP then mined for further sales of software or service." Defendants objected to this portion of Oracle's Request as not part of a targeted search for financial information. Oracle contends that this information is directly relevant to proving Oracle's damages case and is targeted, as it seeks documents likely to be contained within central repositories, like Defendants' customer relationship management databases, rather than in custodial sources. Moreover, damages causation documents have already been requested by Oracle, and production of these documents has already been agreed to by Defendants or ordered by the Court, including in the July 3 and August 29 Orders. *See, e.g.*, Oracle's Second Set of Requests for Production to Defendants No. 6 & 13-20; *see also* July 3 Order at 5 (ordering production of exemplar "win/loss reports, customer surveys, and the electronic customer relationship management database" and an annotated list of customers "that moved to TomorrowNow and/or SAP" from Oracle); August 29 Order at 1 (ordering "service related revenue" information to be added to the annotated list of customers). Further, Oracle requested additional customer win/loss causation documents as its third targeted search request. Defendants' objections to that request are attached hereto as Exhibits B and C.

are in the process of gathering the information that is responsive to those portions of Oracle's targeted search requests to which Defendants have no objection.

The Parties agree that targeted searches were intended as a means to help streamline the Parties' ability to gain information located in many places across the Parties' organizations. However, it is now clear that while the Parties have agreed on the concept and procedural process for submitting written targeted search requests and responses, they have very different positions regarding: (a) the proper subject and scope of the targeted searches, including how, if at all, targeted searches limit the Parties' ability to serve new requests for production of documents pursuant to Rule 34; (b) how the requests should be bundled for purposes of calculating how many searches are being made against the limit of ten searches per side; and (c) whether documents that are the subject of previously joined discovery disputes should be included in the targeted search process; and (d) in context of all of the other discovery in the case, how quickly documents must be collected and produced in response to a targeted search.

Oracle has proposed a compromise in which it would count its financial document targeted search request as three targeted searches, breaking the financial information into three separate categories: (1) customer-related financials, (2) acquisition and Safe Passage related damages documents, and (3) intellectual property related profit margin, development costs, and valuation amounts. Oracle proposed that any such agreement would be mutual, such that the financial documents, which Defendants have sought from Oracle in their initial proposed targeted search requests and the subsequent related meet and confer, shall also count as three targeted searches. Defendants' response to that proposal is that it does not resolve any one of the four basic areas of disagreement between the Parties (*i.e.*, subject/scope, bundling, previously joined issues, and timing of production).

While there is another meet and confer on this issue scheduled before the discovery conference, at this point, the Parties believe that they may be at an impasse regarding the implementation of the targeted search process and that they need the Court's assistance in order to move forward. The Parties have attached for the Court's review prior to the hearing Exhibits A through D, which are the current Targeted Searches and related Objections and Responses thereto

as well as the representations the Parties made to the Court about the previously exchanged targeted searches in the June 24 Joint Discovery Conference Statement. The Parties will be prepared to provide additional information and argue their positions during the discovery conference on the four basic areas of disagreement relating to targeted searches. Oracle believes that additional relevant emails exist on this topic and will bring those with it to the hearing as well. Depending on what issues, if any, are resolved at the discovery conference, and if the Court deems necessary, the Parties are also prepared to more fully brief and argue, on an expedited schedule, all four of these issues as well.

**3. Discovery Time Ranges**

The Parties continue to meet and confer on the timing and scope of production in response to requests for production, interrogatory responses and targeted searches beyond the previously-agreed discovery time ranges. As the Court is aware, the Parties agreed at the start of discovery to a presumptive January 1, 2004 front-end cut-off date for responsive materials, with a further agreement that certain topics or later discovery may warrant adjustments to this general rule. Oracle's recently-filed Second Amendment Complaint alleges wrongdoing dating back to 2002 and post-dating the filing of the original Complaint.

The Parties continue to agree that it may be possible and appropriate for the Parties to locate and produce certain limited categories of responsive documents, from certain custodians and document sources, that date back to at least January 1, 2002, as well as certain limited categories of documents post-dating the filing of the action. As explained in the July 18 Joint Discovery Conference Statement, the Parties have exchanged proposed lists of document categories for which each believes the discovery time ranges should be expanded. The Parties continue to meet and confer regarding these categories.

**4. De-Designation of Highly Confidential and Confidential Documents**

By the October 10th Discovery Conference, Defendants expect to be complete with their re-review of the approximately 27,000 SAP AG and SAP America documents that Defendants initially stamped "Highly Confidential." Oracle continues to believe that an insufficient number of documents have been re-designated and de-designated by Defendants, and reserves its right to

challenge the designations. The Parties continue to meet and confer on this issue and will apprise the Court of their progress at the October 10 Discovery Conference. The Parties also continue to meet and confer on whether, and how, the confidentiality designations for TomorrowNow's document production, deposition testimony, and other discovery responses should be re-designated or de-designated based on the fact that TomorrowNow is expected to wind down its operations by October 31, 2008. Oracle proposed a method for accomplishing this de-designation on August 15 and discussed it with the Court at the last discovery conference. Defendants will provide a response to that proposal, and the Parties will meet and confer on that response, before the October 10 discovery conference.

**5. <u>Sampling and Extrapolation</u>**

The Parties continue to discuss a document/data and testimony-based approach for collecting and presenting evidence regarding certain processes by which TomorrowNow generated and distributed support products to its customers. While progress has been made, and as the Court is aware, the Parties have engaged statistical experts and have held several meet and confers during the months of July and August, many details remain to be negotiated, such as the extent to which statistical validity shall be required.

During the August 28 Discovery Conference, in exploring alternatives that may exist to sampling, the Parties agreed that Oracle would identify testimony that it contends should apply to all of TomorrowNow's development activities, and that Defendants would then either stipulate could be applied across all of TomorrowNow's development activities or else state the specific subject matter as to which further testimony would be required from TomorrowNow. Oracle is currently working on identifying the proposed extrapolation testimony under this potential agreement and expects to provide the same to Defendants before the October 10 Discovery Conference.

**6. <u>Case Schedule</u>**

<u>Oracle's Position</u> - In the best case scenario, the various delays in discovery-including Data Warehouse, targeted searches, document production and depositions-have put the case schedule in jeopardy. It is also now a possibility that Oracle will not have access to crucial

evidence if the technical issues arising out the Data Warehouse project do not get resolved promptly and in way that maintains the integrity of that data.

Regarding depositions, on May 29, 2008, Oracle requested dates for twelve key SAP AG and SAP America witnesses: Benjamin Wilk, Christopher Faye, Gerhard Oswald, Henning Kagermann, James Mackey, Jeff Word, John Zepecki, Josef Schmidt, Leo Apotheker, Shai Agassi, Thomas Ziemen, and Werner Brandt (serving notices on June 4). While some of these have now been completed, the process of obtaining dates and document productions has been difficult and slow. Many (Wilk (who was only offered in Germany and not so far in the US), Faye, Word, Agassi, Oswald) are not completed, and some (Agassi, the architect of the TomorrowNow acquisition) are not even scheduled and apparently will not be until 2009. Several will occur in Germany, requiring advance planning with the U.S. Consulate, among other logistical hurdles, and almost all of them have substantial foreign language documents in their production. And, despite the Court's guidance, Defendants continue to make substantial document productions on the literal eve of important depositions.

Oracle has recently served an additional 10 deposition notices, and anticipates approximately 25-30 more, not counting third party depositions which have yet to begin. (As of now, Oracle has used approximately 145 deposition hours of the 350 allowed by Judge Hamilton). Unless Defendants start responding far more promptly with documents and dates, Oracle will not be able to complete these depositions in the time allowed. In addition, Defendants have refused to provide any discovery related to other Oracle products that evidence indicates they infringed, including Oracle's Siebel, Hyperion, Retek and eBusinessSuite software. This discovery is not, as Defendants say, an "endless broadening." These claims are the reason Judge Hamilton substantially expanded the discovery limits and extended the schedule in the first place. In short, the overall case schedule appears to be in jeopardy.[2]

[2] Oracle anticipates filing a Third Amended Complaint to make technical amendments related to the plaintiff entities for each claim, as stated in the Parties' September 11, 2008 Stipulation Regarding Oracle's Proposed Third Amended Complaint, these minor amendments will not require any delay in the case schedule. Per the September 11 Stipulation, Oracle provided Defendants with its proposed Third Amended Complaint and a supplemental production of documents related to the proposed amendments on before September 29, 2008. *See* September 11, 2008 Stipulation Regarding Oracle's Proposed Third Amended Complaint. *Id.* Also according to the Parties' agreement, Defendants now have until October 6, 2008 to either

Defendants' Position – The Court has instructed Oracle to focus its claims and discovery in order to meet the case schedule established by Judge Hamilton. This case was filed 19 months ago and trial is 16 months away. Oracle has not quantified, much less even estimated, the monetary damages it seeks from Defendants. Oracle is attempting to file its fourth complaint in this case, this time by adding new party-plaintiffs and deleting certain party-plaintiffs. Moreover, Oracle intends to move to compel Defendants to produce documents related to additional software lines (Seibel, eBusiness Suite, Hyperion and Retek). So, rather than focusing its claims and discovery in this case, Oracle seeks to endlessly broaden and lengthen this case.

Defendants continue to expend millions of dollars each month timely meeting its discovery obligations in this case. That ongoing expenditure has yielded great progress, which to date includes production of over 3.3 million bates-numbered pages from Defendants' files and 54 separate custodians' data. Not counting the 11 additional custodians named by Oracle on September 20th, Defendants have produced documents for all but 3 custodians previously identified by Oracle.

Six of the twelve deponents listed above have been deposed. Four are scheduled for deposition before the end of the year, and two of those will be complete before Thanksgiving, which was the original goal. One of the two currently unscheduled depositions (Wilk) was scheduled, but was unilaterally cancelled by Oracle. The other (Agassi) is a former executive board member for whom, as Defendants have explained to Oracle, there are many more logistical complexities in obtaining his documents and deposition because he is not a current employee. Currently, the goal is to have all twelve of the requested depositions complete before year end.

With respect to the 10 depositions Oracle has recently requested, Defendants expect to be able to present 5 of the 10 for deposition before year-end. Four of the witnesses, for whom Oracle had not previously sought documents, will take more time, but Defendants' goal is to

---

(continued…)

stipulate to Oracle filing that Complaint or respond to the Second Amended Complaint. *Id.* If Defendants stipulate to Oracle filing the proposed Third Amended Complaint, Oracle will file that Complaint within two calendar days of receiving the stipulation signed by Defendants, and Defendants will respond to that Complaint within seven calendar days of it being filed. *Id.*

produce them for deposition in January or February 2009. The timing of one of the witnesses depends on the resolution of the Parties' dispute as to whether the Seibel software line should be added at this stage in the case.

**7. Oracle's Anticipated Motions to Compel**

**(a) Motion to Compel Response to Targeted Searches**

As noted above, the Parties have an outstanding dispute as to the format of the targeted searches. Due to the importance of these documents, in particular for Oracle's damages calculation and for upcoming depositions, and the impact on the case of not having these documents for critical depositions, Oracle believes that this dispute needs to be resolved on an expedited basis. As indicated above, it either requests guidance from the court at this conference or, if the Court prefers, Oracle will file a formal motion to compel though it asks to do so on shortened time.

**(b) Motions to Compel Related to Redacted Documents Needed for Upcoming Depositions**

The deposition of SAP's CEO, Henning Kagermann, was held on September 25th and 26th. On September 2, 2008, Defendants produced SAP Executive Board minutes that had been heavily redacted. Similarly, on September 30 and October 1, Oracle took the deposition of SAP AG's "Global Business Owner"/"Program Manager" for TomorrowNow, Thomas Ziemen. At Ziemen's deposition, Defendants clawed back a portion of a document reacting to a news report on third party service provider's obligations to protect Oracle's IP as purportedly reflecting legal communications, though none of the authors or recipients were lawyers (the author was a SAP marketer). Oracle could not effectively question Mr. Kagermann or Mr. Ziemen about these respective documents as a result. Further, additional Executive board members' depositions are scheduled shortly; indeed the deposition of Leo Apotheker occurred in the meantime in Germany on October 2. The questioning of all of the SAP board members will continue to be impaired by the redaction and clawback of these documents.

Oracle requests that the Court evaluate the appropriateness of the redaction and clawback on an expedited basis, so further questioning will not be affected. In order to facilitate an *in*

*camera* review, Defendants have agreed to bring copies of the unredacted and redacted version of the subject documents to the discovery conference or provide them earlier if the Court prefers.

**(c) Motion to Compel Further Responses to Interrogatories and Requests for Production Regarding New Products**

On August 27, 2008, Defendants responded to Oracle's Second Set of Requests for Production of Documents and Second and Third Sets of Interrogatories. In this discovery, Oracle inquired into Defendants' misuse of Oracle's Siebel, eBusiness Suite, Hyperion and Retek software lines, but Defendants refused to produce any information related to these products. While the Parties continue to meet and confer on a number of outstanding deficiencies that Oracle claims with respect to those Responses, the Parties appear to have reached an impasse as to whether Defendants will respond to any interrogatories or produce any documents related to these additional software lines.

**8. <u>Defendant's Anticipated Motions to Compel</u>**

**(a) Documents Related to Potential new Plaintiffs**

As noted above, Plaintiffs' seek to amend their complaint to add new party-plaintiffs. If Oracle is successful in joining these new parties, then Defendants seek an order compelling the new plaintiffs to respond, on an expedited basis, to all of Defendants' outstanding discovery requests to the current plaintiffs as if the discovery had been originally propounded to the new plaintiffs. In words, Defendants seek to avoid any delays or negative impacts that would otherwise be caused by the untimely addition of these new parties that should have joined this case when it was first filed.

**(b) Copyright Related Documents and Information**

Defendants continue to meet and confer with Oracle regarding their anticipated motion to compel copyright documents and information, which were mentioned during the last discovery conference. If the parties are unable to resolve their disputes, Defendants will discuss a briefing schedule with Oracle and present a proposal to the Court at the October 10 conference. Defendants anticipate that the motion will address Oracle's refusal to: (a) provide a meaningful response to an interrogatory requesting it to identify the materials allegedly covered by each

copyright registration at issue in the case; (b) provide Rule 30(b)(6) deposition testimony on the same topic and, with respect to derivative works, basic identifying information about the creation, ownership, and content of the underlying works and the content of the material allegedly added; and (c) produce (or even search for) work for hire agreements it contends exist or documents sufficient to identify the individuals who created the materials allegedly covered by the registrations.

**(c) Motion to Compel Damages Related Documents**

Defendants also continue to meet and confer with Oracle regarding their anticipated motion to compel damages related information that was discussed at the last discovery conference. Defendants plan to present a briefing schedule to the Court for this motion as well if the issues remain unresolved at the October 10 conference. Defendants anticipate that the motion will address two issues. The first is simply a date certain for production of financial information that Oracle has already agreed to produce more than two months ago. The second concerns Defendants' request for production of Oracle's and PeopleSoft's charts of accounts and general ledgers. Defendants requested the general ledgers because they appear to be a source of cost information Defendants need to calculate Oracle's alleged lost profits. Oracle objected based on burden.

DATED: October 3, 2008

BINGHAM McCUTCHEN LLP

By: /s/ Geoffrey M. Howard
Geoffrey M. Howard
Attorneys for Plaintiffs
Oracle Corporation, Oracle International Corporation, and Oracle USA, Inc.

In accordance with General Order No. 45, Rule X, the above signatory attests that concurrence in the filing of this document has been obtained from the signatory below.

DATED: October 3, 2008

JONES DAY

By: /s/ Jason McDonell
Jason McDonell
Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

# EXHIBIT A

BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle Corporation, Oracle USA, Inc.,
and Oracle International Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br>v.<br><br>SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. 07-CV-01658 PJH (EDL)<br><br>**PLAINTIFFS' FIRST SET OF TARGETED SEARCH REQUESTS TO DEFENDANTS** |

**PROPOUNDING PARTIES**: Plaintiffs Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation

**RESPONDING PARTY**: Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc.

**SET NUMBER:** One

Pursuant to the agreement of the Parties, as set forth in the August 21, 2008 Joint Discovery Conference Statement, plaintiffs Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation (collectively, "Oracle") hereby request that defendants SAP AG, SAP America, Inc. ("SAP America" and together with SAP AG, "SAP"), and TomorrowNow, Inc. ("TN") (collectively, "Defendants" or "You") respond to the following targeted search requests, and produce Documents as required by the agreed Targeted Search Protocol.

## DEFINITIONS

Unless otherwise indicated, the following definitions shall apply to each of the Targeted Search Requests below.

1. "And" and "or" shall be construed both conjunctively and disjunctively and each shall include the other whenever such construction will serve to bring within the scope of these Requests any information that would not otherwise be brought within their scope.

2. "Communication" means any and all contact or transmission of information between two or more Persons, whether in a face-to-face meeting, telephone conversation, or otherwise, or whether by letter, electronic mail, instant messaging system, facsimile transmission, cable, letters, correspondence, video conference, message, or any other method or medium of information transfer or exchange.

3. "Document(s)" is used in these Requests as broadly as is allowed under the Federal Rules of Civil Procedure, and thus includes without limitation writings; records; files; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; email; telephone message records or logs; computer and network activity logs; data on hard drives; backup data; data on removable computer storage media such as tapes, disks, and cards; printouts; Document image files; web pages; databases; spreadsheets; software; hardware; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements;

worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; charts; digital or chemical process photographs; video, phonographic, tape, or digital records or transcripts thereof; drafts; jottings; and notes. "Document(s)" also includes any copies that differ in any respect from the original or other versions of the Document(s), such as, but not limited to, copies containing notations, insertions, corrections, marginal notes, or any other variations.

## INSTRUCTIONS

1. If You claim any form of privilege as a ground for not producing or for redacting any Document, You shall provide the following information for each Document withheld or redacted: (1) the Document's preparation date and the date appearing on the Document; (2) the name, present and last known addresses, telephone numbers, titles (and positions), and occupations of those individuals who prepared, produced, reproduced, and received said Document, including all authors, senders, recipients, "cc" recipients, and "bcc" recipients; (3) the number of pages withheld; and (4) a description sufficient to identify the Document without revealing the information for which the privilege is claimed, including the general subject matter and character of the Document (*e.g.*, letter, memorandum, notes, etc.).

2. If only a portion of a responsive Document is privileged against disclosure, You must produce the responsive non-privileged portion of the Document in redacted form, provided that the redacted material is identified and the basis for the claim of privilege is stated as provided in Instruction No. 1 above.

3. If a Document once existed, but has been lost or destroyed, or otherwise is no longer in Your possession, custody, or control, identify the Document and state the details concerning the loss of such Document, including the name, title, and address of the present custodian of any such Document, if known to You.

4. Pursuant to Federal of Civil Procedure 26(e), Your responses to the following Targeted Search Requests are to be promptly supplemented to include any subsequently acquired Documents and information.

5. Subject to the Parties' agreement to extend the discovery timeline, and unless

otherwise stated, all Requests refer to the period of time since January 1, 2002 and through the present day.

## <u>TARGETED SEARCH REQUESTS</u>

**<u>TARGETED SEARCH REQUEST NO. 1:</u>**

**FINANCIAL DOCUMENTS**

The following subset of Defendants' relevant financial Documents: (a) Documents comparable to Oracle's relevant "Customer-Specific Financial Reports," as described in Briana Rosenbaum's August 27, 2008 email to Jason McDonell for all TN customers, for all Safe Passage deals with TN as a component, and for SAP sales to TN customers after acquisition of TN; (b) summary sales and profit numbers for all TN customers, for Safe Passage deals with TN as a component, and for SAP sales to TN customers after acquisition of TN; (c) reports sufficient to confirm that the 61 customers listed in the Customer List attached to Jane Froyd's July 18, 2008 email are the only SAP customers who either (1) had a contract with TN as a component of their Safe Passage deal, or (2) were previously (or, to the extent the customer was sold TN and SAP products/support together, at the same time) a TN customer who SAP then mined for further sales of software or service; (d) quantifications or analyses of actual or projected revenue that would be or was lost by Oracle, or any harm that might be or was caused to Oracle, from TN, from SAP's acquisition of TN, or from SAP's incorporation of TN into its Safe Passage program including, but not limited to, Documents related to the 1:10 and 1:18 metrics contained in Hurst Depo. Ex. 174 and other instances where these metrics were adopted or rejected by SAP; (e) Documents reflecting TN's expected contributions to Safe Passage (including anticipated service revenues and assistance in driving applications sales); (f) financials reflecting actual or projected benefits related to TN's service on any Oracle-branded software and any follow-on sales projected in connection with TN's offering of such service; (g) all business cases (and assumptions and financial backup regarding the same) related to the TN acquisition and any proposed expansions of TN service to any Oracle-owned software; (h) pro-formas and forecasts (and associated assumptions and financial back-up) for sales, revenue, and profits for the Safe Passage program overall (including for the TN aspect); (i) research, reports, and analyses

regarding how long TN customers might be expected to remain on TN service, and how long TN customers were expected to continue using Oracle products before migrating to SAP software (relevant Documents would include SAP's historic applications sales pipeline close rates and SAP's historic service contract and application license renewal rates); (j) SAP's and TN's research and development costs associated with the development of support products (both TN support products and SAP support products for SAP applications); (k) SAP's profit margins for service and applications sales and Documents explaining how they are calculated; and (l) Documents showing SAP's valuation of the intellectual property of any company it has acquired (including, but not limited to, Business Objects).

**TARGETED SEARCH REQUEST NO. 2:**

**CORPORATE POLICIES RELATED TO COPYRIGHTS, TECHNICAL SUPPORT SERVICES AND USE OF THIRD PARTY SOURCE CODE**

The following subset of Defendants' Relevant Policy and Procedure Documents: (a) Defendants' policies or procedures for opening Oracle's or any third party's source code locally; (b) general polices and procedures related to analyzing, auditing, and terminating customer access to Defendants' support materials, including but limited to access by any customer or independent third party support provider related to the customer; and (c) Defendants' copyright registration and enforcement policies and procedures for (1) determining authorship, (2) determining ownership (including policies and procedures regarding works made for hire and works developed by independent contractors and the form agreements used in doing so), (3) determining originality, (4) determining copyrightability of the subject matter, (5) determination of pre-existing works to the registered work, (6) determining the publication date, (7) determining when to file the application, (8) providing deposit materials to the Copyright Office, (9) assigning registered works between or among Defendants or any parent or subsidiary, (10) licensing registered works between or among Defendants or any parent or subsidiary, (11) determining whether a work constitutes a derivative work; and (12) determining when and how to enforce copyrights registered by any of Defendants.

**<u>TARGETED SEARCH REQUEST NO. 3:</u>**

**CUSTOMER WIN/LOSS CAUSATION DOCUMENTS**

Defendants' Relevant Won/Lost Customer Causation Evidence, akin to that Provided in Oracle's At-Risk Reports, including Documents that would explain why any of TN's customers (including any of the 61 identified customers in the Customer List attached to Jane Froyd's July 18, 2008 email) left Oracle, what Communications were made to any of them about TN's use of Oracle's intellectual property and the importance to them of those representations, and the relevance to any Safe Passage customer of the TN aspect of the Safe Passage offering. Per meet and confer discussions, in addition to the SAS database snapshot already produced, likely sources would include the fully updated SAS database, relevant Documents from Defendants' customer relationship management databases, (including, *e.g.*, comments or emails of the principal SAP service representative for the SAP/TN accounts), win/loss reports discussing any customers gained from Oracle, and customer survey data (about the customers' decisions to choose TN or SAP).

DATED: August 29, 2008

BINGHAM McCUTCHEN LLP

By: /s/ Holly A. House
Holly A. House

Attorneys for Plaintiffs
Oracle Corporation, Oracle International Corporation, and Oracle USA, Inc.

## PROOF OF SERVICE

I am over 18 years of age, not a party to this action and employed in the County of San Francisco, California at Three Embarcadero Center, San Francisco, California 94111-4067. I am readily familiar with the practice of this office for collection and processing of correspondence by Electronic Mail, and they are deposited and/or sent that same day in the ordinary course of business.

Today I served the following documents:

**PLAINTIFFS' FIRST SET OF TARGETED SEARCH REQUESTS TO DEFENDANTS**

☒ (BY ELECTRONIC MAIL) by transmitting via electronic mail document(s) in portable document format (PDF) listed below to the email address set forth below on this date.


Jason McDonell, Esq.
Elaine Wallace, Esq.
Jones Day
555 California Street
26th Floor
San Francisco, CA 94104
Tel: (415) 626.3939

jmcdonell@JonesDay.com
ewallace@JonesDay.com

Jane L. Froyd, Esq.
Jones Day
1755 Embarcadero Road
Palo Alto, CA 94303
Tel: (650) 739-3939

jfroyd@JonesDay.com


I declare under penalty of perjury that this declaration was executed on August 29, 2008, at San Francisco, California.

Zachary Alinder /BLR/

Zachary J. Alinder

# EXHIBIT B

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, et al.,<br>Plaintiffs,<br>v.<br>SAP AG, et al.,<br>Defendants. | Case No. 07-CV-1658 (PJH) EDL<br>**DEFENDANTS' INITIAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF TARGETED SEARCH REQUESTS TO DEFENDANTS (SET ONE)** |

PROPOUNDING PARTY: Plaintiffs Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation

RESPONDING PARTY: Defendants TomorrowNow, Inc., SAP America, Inc., and SAP AG

SET NUMBER: One

Pursuant to the parties' agreements and the August 29, 2008 Order regarding targeted searches, Defendants TomorrowNow, Inc. ("TN"), SAP America, Inc. and SAP AG (collectively, "Defendants") serve this their initial objections and responses to the First Set of Targeted Search Requests by Plaintiffs Oracle Corporation, Oracle USA, Inc. and Oracle International Corporation (collectively, "Plaintiffs"):

## GENERAL OBJECTIONS AND RESPONSES

1. Defendants object to the requests because they are not "narrow searches by topic" as the parties agreed they would be and as the Court ordered on August 29, 2008. The August 29, 2008 Order states "[t]he Parties may request from the other side up to 10 targeted searches, *i.e.*, narrow searches by topic where document production would come from centralized sources and/or from those persons most likely to have responsive documents." Defendants have been and remain willing to meet and confer with Plaintiffs in an effort to reach an agreement whereby Plaintiffs will amend the form and scope of Plaintiffs' First Set of Targeted Searches in order to comply with the parties' previous agreements and the Court's August 29, 2008 Order.

2. Defendants object to the requests because they contain numerous compound subparts relating to multiple topics and, if properly propounded and individually counted, they would greatly exceed the ten targeted search limit established by the August 29, 2008 Order.

3. Defendants object to the requests to the extent that they are vague, overbroad, oppressive, harassing and unduly burdensome.

4. Defendants object to the requests to the extent that they are not tied to the allegations in this case and therefore not reasonably calculated to lead to the discovery of admissible evidence.

5. As with all of Plaintiffs' other discovery requests, Defendants' reasonable inquiry and related responses to these discovery requests shall be limited in a manner consistent with the Court's orders and the parties' agreements that provide limits on the parties' discovery obligations in this case. Defendants object to the requests to the extent that they can be interpreted to require Defendants to make any further search or production beyond what the parties have agreed and the Court has ordered, because such an interpretation of the requests would make them overbroad and unduly burdensome.

6. Any response by Defendants indicating that they will produce documents is not a confirmation that such documents exist or are in Defendants' possession, custody or control. Such response indicates only that Defendants, subject to their objections, will produce such documents to the extent that they do exist and are in one or more of Defendants' possession, custody or control.

7. Defendants will produce confidential and proprietary information of Defendants and/or of third parties that is in Defendants' possession, only under the Agreed Protective Order entered in this case, which permits designating such documents, depending on their content, as CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY.

8. Defendants object to Plaintiffs' instructions to the extent that those instructions seek to require Defendants to produce documents in a form other than that in which those documents are maintained in the ordinary course of business. Subject to and without waiving their objections, Defendants will produce relevant, responsive non-privileged documents as they are typically maintained, subject only to the parties' agreement regarding mechanics of production.

9. Defendants object to each request, definition and instruction to the extent they seek to impose upon Defendants duties and/or responsibilities greater than those imposed by the Federal Rules of Civil Procedure, the Local Rules of this Court, any applicable orders of this Court or any stipulation or agreement of the parties

10. Defendants object to each request, definition and instruction to the extent they seek

to require Defendants to speculate or guess as to whether Plaintiffs will contend that any potentially responsive documents "contradict" (or any similar concept) any positions taken by Defendants or "support" (or any similar concept) any positions taken by Plaintiffs.

11. Defendants object to each request to the extent it seeks the production of documents and/or things that are not relevant to any claim or defense in this action, or reasonably calculated to lead to the discovery of admissible evidence that is relevant to any claim or defense, under Rule 26(b)(1) of the Federal Rules of Civil Procedure. Defendants specifically object to each request as unduly burdensome, oppressive and calling for information that is neither relevant to any claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence, to the extent the request seeks documents or information unrelated to PeopleSoft or J.D. Edwards ("JDE") products. PeopleSoft and JDE products are the only products Plaintiffs have placed at issue in this case and are the only products for which Defendants will produce documents or other data.

12. Defendants object to each request to the extent it seeks documents that are protected from disclosure by any applicable privilege, including but not limited to the attorney-client privilege, the attorney work product doctrine, the privilege afforded non-testifying experts by Rule 26(b) of the Federal Rules of Civil Procedure, or that is otherwise protected from disclosure under the Federal Rules of Civil Procedure, the Federal Rules of Evidence or relevant statutory or case law. Should any production of any such privileged documents by Defendants occur, it is inadvertent and shall not constitute a waiver of: (a) any privilege; (b) any other ground for objecting to discovery with respect to such documents or any other documents; (c) Defendants' right to claw any such document back or (d) Defendants' right to object during this litigation or otherwise to the use of any such document. Defendants will log such privileged information in accordance with the parties' agreements.

13. Defendants' responses to Plaintiffs' requests do not constitute admissions or acknowledgements that the information sought is within the proper scope of discovery or admissible at trial or that any non-privileged documents responsive to a particular request may exist.

14. Defendants' responses to Plaintiffs' requests are made without in any way waiving: (a) the right to object on the grounds of authenticity, competency, relevancy, materiality, privilege or admissibility, to the extent that any documents produced in response hereto are ever attempted to be introduced as evidence for any purpose in any subsequent proceeding in, or the hearing of, this action or any other action and (b) the right to object on any grounds to any other discovery requests involving or relating to the same or similar subject matter of Plaintiffs' requests.

15. Defendants object to the requests to the extent they seek to require Defendants to search for, review or produce inaccessible information, data or other materials. Defendants will not search for, review or produce inaccessible information, data or other materials.

16. Defendants object to the definition of "Communication" as being overly broad and unduly burdensome to the extent the requests containing the defined term require production of any documents or other data showing "any and all contact."

17. Defendants object to Instruction number 5 to the extent it imposes a burden or obligation to which the parties have not yet agreed. The parties are still in the process of meeting and conferring regarding the limited issues for which the parties will agree to expand the discovery time period.

## TARGETED SEARCH REQUESTS

**TARGETED SEARCH REQUEST NO. 1:**

**FINANCIAL DOCUMENTS**

The following subset of Defendants' relevant financial Documents: (a) Documents comparable to Oracle's relevant "Customer-Specific Financial Reports," as described in Briana Rosenbaum's August 27, 2008 email to Jason McDonell for all TN customers, for all Safe Passage deals with TN as a component, and for SAP sales to TN customers after acquisition of TN; (b) summary sales and profit numbers for all TN customers, for Safe Passage deals with TN as component, and for SAP sales to TN customers after acquisition of TN; (c) reports sufficient to confirm that the 61 customers listed in the Customer List attached to Jane Froyd's July 18, 2008 email are the only SAP customers who either (1) had a contract with TN as a component of their Safe Passage deal, or (2) were previously (or, to the extent the customer was sold TN and SAP

products/support together, at the same time) a TN customer who SAP then mined for further sales of software or service; (d) quantifications or analyses of actual or projected revenue that would be or was lost by Oracle, or any harm that might be or was caused to Oracle, from TN, from SAP's acquisition of TN, or from SAP's incorporation of TN into its Safe Passage program including, but not limited to, Documents related to the 1:10 and 1:18 metrics contained in Hurst Depo Ex. 174 and other instances where these metrics were adopted or rejected by SAP; (e) Documents reflecting TN's expected contributions to Safe Passage (including anticipated service revenues and assistance in driving applications sales); (f) financials reflecting actual or projected benefits related to TN's service on any Oracle-branded software and any follow-on sales projected in connection with TN's offering of such service; (g) all business cases (and assumptions and financial backup regarding the same) related to the TN acquisition and any proposed expansions of TN service to any Oracle-owned software; (h) pro-formas and forecasts (and associated assumptions and financial back-up) for sales, revenue, and profits for the Safe Passage program overall (including for the TN aspect); (i) research, reports, analyses regarding how long TN customers might be expected to remain on TN service, and how long TN customers were expected to continue using Oracle products before migrating to SAP software (relevant Documents would include SAP's historic applications sales pipeline close rates and SAP's historic service contract and application license renewal rates); (j) SAP's and TN's research and development costs associated with the development of support products (both TN support products and SAP support products for SAP applications); (k) SAP's profit margins for service and applications sales and Documents explaining how they are calculated; and (l) Documents showing SAP's valuation of the intellectual property of any company it has acquired (including, but not limited to, Business Objects).

**<u>RESPONSE TO TARGETED SEARCH REQUEST NO. 1</u>:**

Defendants object to this request because it is compound and not a "narrow search by topic where document production would come from centralized sources and/or from those persons most likely to have responsive documents." More specifically, this request is improper because it contains numerous compound subparts relating to multiple topics. The alleged topic of

this request is "financial documents," but only the separately lettered subparts (a), (b), (f) and (k) seek primarily financial documents. Subparts (c) through (e) and (h) relate to the topics of sales and marketing. Subparts (g), (i) and (l) relate to the topic of business strategy. Subpart (j) relates to the topic of research and development. Neither the parties' agreement nor the Court's August 29, 2008 Order permit such a compound request. As currently worded, this request is anything but "targeted."

Defendants object to this request to the extent that it exceeds the number of targeted searches permitted by the Court. If each portion of this request were properly propounded and individually counted, then it would exceed the limit of ten targeted searches established by the August 29, 2008 Order. Specifically, just counting the separately lettered and distinct subparts (*i.e.*, (a) through (l)), this request contains twelve separate targeted search requests. And, if the multiple subparts contained within each separately lettered subparts are included, then this request constitutes even more than twelve separate targeted search requests. Moreover, even if each general "topic" could be counted as one "targeted" search, as shown in the preceding paragraph, this request seeks documents on at least four distinct topics, and thus at a bare minimum this request should be construed as four separate targeted search requests.

Because this request is a combination of multiple targeted search requests, Defendants object to the extent that Plaintiffs seek to require Defendants to choose, among the multiple requests, subparts and topics, which request(s), subpart(s) or topic(s) to which Defendants will respond by searching for and producing documents. Until Plaintiffs reasonably focus this request on a single topic and sufficiently narrow that request in the manner contemplated by the parties' agreement and the Court's August 29, 2008 Order, Defendants do not intend to produce any documents in response to this request.

Moreover, Defendants object to this request to the extent that Plaintiffs' currently pending document requests do not call for production of the documents sought by this targeted search request. Specifically, subparts (c) and (f) through (l) of this request either in whole or in part seek information that is not currently covered by any pending request for production of documents propounded by Plaintiffs in this case.

Defendants further object to this request as overly broad, unduly burdensome, designed to harass and not relevant or likely to lead to the discovery of admissible evidence because it is not limited to the claims and product lines at issue in this case, which are only the PeopleSoft and JDE product lines.

Defendants object to the extent that numerous terms and phrases throughout this request are vague and ambiguous. For example, the italicized words in the phrases: "*summary* sales and profit numbers" in subpart (b); "who SAP then *mined*" in subpart (c); "any *harm* that might be or was caused" in subpart (d); "*driving* applications sales" in subpart (e); "*benefits* related to TN's service," "any *follow-on* sales" and "Oracle-*branded*" in subpart (f); "financial *backup* regarding the same" and "Oracle-*owned*" in subpart (g); and "*associated* assumptions and financial *back-up*" in subpart (h), read in context of each subpart, lack sufficient specificity and thus make each affected subpart vague and ambiguous.

Defendants object to subpart (b) to the extent that it seeks "summary sales and profit numbers" of TN's customers, as opposed to TN's sales and profit information relating to revenue TN received from those customers. Such information is neither relevant to the issues in this case nor likely to lead to the discovery of admissible evidence.

Defendants object to the use of the phrase "related to" in subparts (d), (f) and (g) to the extent that it makes that subpart vague, overbroad, unduly burdensome and to the extent that, depending on the construction of "related to," it is used to seek information that is neither relevant nor likely to lead to the discovery of admissible evidence.

Defendants object to subpart (h) as being overbroad, unduly burdensome and seeking information that is neither relevant nor likely to lead to the discovery of admissible evidence, to the extent that it seeks documents, data or other information regarding Safe Passage that has no relevance to TN.

Defendants object to subpart (i) as being overbroad, unduly burdensome and seeking information that is neither relevant nor likely to lead to the discovery of admissible evidence, to the extent that it seeks documents, data or other information regarding "SAP's historic applications sales pipeline close rates and SAP's historic service contract and application license

renewal rates" that are related to any customer other than those TN customers who became SAP customers after SAP's acquisition of TN.

Defendants object to subpart (j) as being overbroad, unduly burdensome and seeking information that is neither relevant nor likely to lead to the discovery of admissible evidence, to the extent that it seeks documents, data or other information regarding "SAP's … research and development costs associated with the development of support products … for SAP applications."

Defendants object to subparts (k) and (l) in their entirety because they are overbroad, unduly burdensome and seek information that is neither relevant nor likely to lead to the discovery of admissible evidence.

Defendants object to the extent that this request is not "self-contained" as required by the August 29, 2008 Order.

Defendants object to Plaintiffs' attempt to conduct cumulative discovery to the extent that this requests seeks documents, data or other information that Defendants have already produced in this case. This objection includes, but is not limited to, an objection to any attempt by Plaintiffs to require Defendants to segregate or otherwise separately identify any documents, data or other information contained within any document production that any Defendant has made or will make in this case.

Defendants object to the extent that information responsive to this targeted search request will be produced in the ordinary course of the custodian-based production in this case by Defendants. Any attempt by Plaintiffs to seek such duplicative discovery is cumulative, overbroad and harassing.

Defendants object to this request to the extent that it calls for documents protected by any applicable privilege, including but not limited to, the attorney-client privilege, the attorney work product doctrine and/or the consulting-only expert privilege.

Defendants incorporate by reference as if fully set forth herein in response to this request, each of the seventeen General Objections and Responses contained on pages 2 through 5 above, as well as each of Defendants' objections and responses to each of Plaintiffs' document requests

that relate to this request. Defendants are not, by responding to this request, waiving any of their objections to any of Plaintiffs' document requests.

Subject to and without waiving their objections, Defendants' initial response to this request is as follows:

In response to subparts (a), (b) and (f), Defendants are currently searching for responsive financial data within SAP's ISP system and TomorrowNow's financial systems along with making inquiries of relevant employees. Certain SAP and TomorrowNow financial data that is responsive to subparts (a), (b) and/or (f) has already been produced at TN-OR 00000029–1007, a/k/a TN (Disc).1, TN-OR 00004204–276, a/k/a TN (Disc).5, TN-OR 00404006–040, a/k/a TN (Disc).34, TN-OR 01361343, a/k/a TN (Disc).61, SAP-OR 00164624–17227, a/k/a SAP (Disc). 28, SAP-OR 00203255–5606, a/k/a SAP (Disc). 42, SAP-OR 00205621, a/k/a SAP (Disc). 43, SAP-OR 00205623–638, a/k/a SAP (Disc). 44 and within the Excel spreadsheets sent from Jason McDonell to Geoff Howard on August 1 and 28, 2008.

As contemplated by the August 29, 2008 Order, Defendants reserve their right to supplement this response with additional information regarding the actions Defendants are taking to gather documents and other information in response to this request, including the anticipated time frames in which Defendants expect to begin production in response to the non-objectionable portions of this request. The necessary conditions precedent to any such supplement, however, are: (a) additional meeting and conferring between the parties regarding the proper form and scope of this request and (b) a subsequent agreed amendment of this request or, if necessary, Court intervention and a ruling on Defendants' request for such an amendment.

**TARGETED SEARCH REQUEST NO. 2:**

**CORPORATE POLICIES RELATED TO COPYRIGHTS, TECHNICAL SUPPORT SERVICES AND USE OF THIRD PARTY SOURCE CODE**

The following subset of Defendant's Relevant Policy and Procedure Documents: (a) Defendants' policies or procedures for opening Oracle's or any third party's source code locally; (b) general policies and procedures related to analyzing, auditing, and terminating customer access to Defendants' support materials, including but [sic] limited to access by any customer or

independent third party support provider related to the customer; and (c) Defendants' copyright registration and enforcement policies and procedures for (1) determining authorship, (2) determining ownership (including policies and procedures regarding works made for hire and works developed by independent contractors and the form agreements used in doing so), (3) determining originality, (4) determining copyrightability of the subject matter, (5) determination of pre-existing works to the registered work, (6) determining the publication date, (7) determining when to file the application, (8) providing deposit materials to the Copyright Office, (9) assigning registered works between or among Defendants or any parent or subsidiary, (10) licensing registered works between or among Defendants or any parent or subsidiary, (11) determining whether a work constitutes a derivative work; and (12) determining when and how to enforce copyrights registered by any of Defendants.

**RESPONSE TO TARGETED SEARCH REQUEST 2:**

Defendants object to this request because it is compound and not a "narrow search by topic where document production would come from centralized sources and/or from those persons most likely to have responsive documents." More specifically, this request is improper because it contains numerous compound subparts relating to multiple topics. The alleged topic of this request is "corporate policies," but that topic is not sufficiently narrow. Moreover, the further description in the title of this request establishes on its face that the request seeks documents, data and other information on at least three topics: (a) use of third party source code; (b) technical support services; and (c) copyrights. Neither the parties' agreement nor the Court's August 29, 2008 Order permit such a compound request. As currently worded, this request is anything but "targeted."

Defendants object to this request to the extent that it exceeds the number of targeted searches permitted by the Court. If each portion of this request were properly propounded and individually counted, then, combined with Plaintiffs' Targeted Search Request No. 1, it would exceed the limit of ten targeted searches established by the August 29, 2008 Order. Specifically, just counting the subtopics in the title of the requests and the separately lettered and distinct subparts (*i.e.*, (a) through (c)), this request contains at least three separate targeted search requests.

And, if the multiple subparts contained within each separately lettered subpart are included, then this request constitutes much more than three separate targeted search requests.

Because this request is a combination of multiple targeted search requests, Defendants object to the extent that Plaintiffs seek to require Defendants to choose, among the multiple requests, subparts and topics, which request(s), subpart(s) or topic(s) to which Defendants will respond by searching for and producing documents. Until Plaintiffs reasonably focus this request on a single topic and sufficiently narrow that request in the manner contemplated by the parties' agreement and the Court's August 29, 2008 Order, Defendants do not intend to produce any documents in response to this request.

Moreover, Defendants object to this request to the extent that Plaintiffs' currently pending document requests do not call for production of the documents sought by this targeted search request. Specifically, each subpart (a) through (c) of this request seeks information that is not currently covered by any pending request for production of documents propounded by Plaintiffs in this case.

Defendants further object that this request is overly broad, unduly burdensome, designed to harass and not relevant or likely to lead to the discovery of admissible evidence because it is not limited to the claims and product lines at issue in this case, which are only the PeopleSoft and JDE product lines.

Defendants object to the extent that numerous terms and phrases throughout this request are vague and ambiguous. For example, the italicized words in the phrases: "source code *locally*" in subpart (a), as well as "*general* policies and procedures" and "*independent* third party support provider" in subpart (b), read in context of each subpart, lack sufficient specificity and thus make each affected subpart vague and ambiguous.

Defendants object to the use of the phrase "related to" in subpart (b) to the extent that it makes that subpart vague, overbroad, unduly burdensome and to the extent that, depending on the construction of "related to" it is used to seek information that is neither relevant nor likely to lead to the discovery of admissible evidence.

Defendants object to subpart (a) as overbroad, unduly burdensome and seeking information that is neither relevant nor likely to lead to the discovery of admissible evidence, to the extent that they seek documents, data or other information regarding SAP's corporate policies that do not relate and/or apply to TN.

Defendants object to subparts (b) and (c) in their entirety because they are overbroad, unduly burdensome and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.

Defendants object to Plaintiffs' attempt to conduct cumulative discovery to the extent that this request seeks documents, data or other information that Defendants have already produced in this case. This objection includes, but is not limited to an objection to any attempt by Plaintiffs to require Defendants to segregate or otherwise separately identify any documents, data or other information contained within any document production that any Defendant has made or will make in this case.

Defendants object to the extent that information responsive to this targeted search request will be produced in the ordinary course of the custodian-based production in this case by Defendants. Any attempt by Plaintiffs to seek such duplicative discovery is cumulative, overbroad and harassing.

Defendants object to this request to the extent that it calls for documents protected by any applicable privilege, including but not limited to, the attorney-client privilege, the attorney work product doctrine and/or the consulting-only expert privilege.

Defendants incorporate by reference as if fully set forth herein in response to this request, each of the seventeen General Objections and Responses contained on pages 2 through 5 above, as well as each of Defendants' objections and responses to each of Plaintiffs' document requests that relate to this request. Defendants are not, by responding to this request, waiving any of their objections to any of Plaintiffs' document requests.

Subject to and without waiving their objections, Defendants' initial response to this request is as follows:

Defendants have produced the relevant policy documents from the TN Corporate Library.nsf (TN-OR 00001278–4196, a/k/a TN (Disk).1) and produced the SAP policy documents with respect to TN (TN-OR 0000016–28, a/k/a TN (Disk).1).

As contemplated by the August 29, 2008 Order, Defendants reserve their right to supplement this response with additional information regarding the actions Defendants are taking to gather documents and other information in response to this request, including the anticipated time frames in which Defendants expect to begin production in response to the non-objectionable portions of this request. The necessary conditions precedent to any such supplement, however, are: (a) additional meeting and conferring between the parties regarding the proper form and scope of this request and (b) a subsequent agreed amendment of this request or, if necessary, Court intervention and a ruling on Defendants' request for such an amendment.

**TARGETED SEARCH REQUEST NO. 3:**

**CUSTOMER WIN/LOSS CAUSATION DOCUMENTS**

Defendants' Relevant Won/Lost Customer Causation Evidence, akin to that Provided in Oracle's At-Risk Reports, including Documents that would explain why any of TN's customers (including any of the 61 identified customers in the Customer List attached to Jane Froyd's July 18, 2008 email) left Oracle, what Communications were made to any of them about TN's use of Oracle's intellectual property and the importance to them of those representations, and the relevance to any Safe Passage customer of the TN aspect of the Safe Passage offering. Per meet and confer discussions, in addition to the SAS database snapshot already produced, likely sources would include the fully updated SAS database, relevant Documents from Defendants' customer relationship management databases, (including, *e.g.*, comments or emails of the principal; SAP service representative for the SAP/TN accounts), win/loss reports discussing any customers gained from Oracle, and customer survey data (about the customers' decisions to choose TN or SAP).

**RESPONSE TO TARGETED SEARCH REQUEST NO. 3:**

Defendants object to this request to the extent that when this request is combined with Plaintiff's Targeted Search Request Nos. 1 and 2 (as those requests are currently worded), it

exceeds the number of targeted searches permitted by the Court. Until Plaintiffs reasonably focus their Targeted Search Request Nos. 1 and 2 each on a single topic and sufficiently narrow those requests in the manner contemplated by the parties' agreement and the Court's August 29, 2008 order (*i.e.*, such that this request is actually Plaintiffs' third targeted search request), Defendants do not intend to produce any documents in response to this request.

Defendants further object that this request is overly broad, unduly burdensome, designed to harass and not relevant or likely to lead to the discovery of admissible evidence because it is not limited to the claims and product lines at issue in this case, which are only the PeopleSoft and JDE product lines.

Defendants object to the definition and use of the term "Communications" in this request because, as defined and used, it is overly broad and unduly burdensome to the extent that this request seeks production of any documents, data or other information showing "any and all contact."

Defendants object to the phrase "Oracle's intellectual property" in this request because when read in context with this request, that phrase lacks sufficient specificity and thus makes the request vague and ambiguous.

Defendants object to Plaintiffs' attempt to conduct cumulative discovery to the extent that this request seeks documents, data or other information that Defendants have already produced in this case. This objection includes, but is not limited to an objection to any attempt by Plaintiffs to require Defendants to segregate or otherwise separately identify any documents, data or other information contained within any document production that any Defendant has made or will make in this case.

Defendants object to the extent that information responsive to this targeted search request will be produced in the ordinary course of the custodian-based production in this case by Defendants. Any attempt by Plaintiffs to seek such duplicative discovery is cumulative, overbroad and harassing.

Defendants object to the extent that this request is not "self-contained" as required by the August 29, 2008 Order.

Defendants object to this request to the extent that it calls for documents protected by any applicable privilege, including but not limited to, the attorney-client privilege, the attorney work product doctrine and/or the consulting-only expert privilege.

Defendants incorporate by reference as if fully set forth herein in response to this request, each of the seventeen General Objections and Responses contained on pages 2 through 5 above, as well as each of Defendants' objections and responses to each of Plaintiffs' document requests that relate to this request. Defendants are not, by responding to this request, waiving any of their objections to any of Plaintiffs' document requests.

Subject to and without waiving their objections, Defendants' initial response to this request is as follows:

Defendants have produced, and continue to collect and will produce, responsive causation evidence including but not limited to: documents from TN's SAS database, documents from TN's CRM database, TN's Salesforce.com database, SAP CRM reports, SAP win/loss reports, SAP customer surveys, SAP customer contracts, and SAP contract view documents. Defendants have already produced responsive documents at TN-OR 00000029–1007, a/k/a TN (Disc).1, TN-OR 00009569, a/k/a TN(Hard Drive).5, TN-OR 00004204–276, a/k/a TN (Disc).5, TN-OR 00404006–040, a/k/a TN (Disc).34, TN-OR 01361343, a/k/a TN (Disc).61, SAP-OR 00164624–17227, a/k/a SAP (Disc). 28, SAP-OR 00203255–5606, a/k/a SAP (Disc). 42, SAP-OR 00205621, a/k/a SAP (Disc). 43, SAP-OR 00205623–638, a/k/a SAP (Disc). 44, and within the Excel spreadsheets sent from Jason McDonell to Geoff Howard on August 1 and 28, 2008..

As contemplated by the August 29, 2008 Order, Defendants reserve their right to supplement this response with additional information regarding the actions Defendants are taking to gather documents and other information in response to this request, including the anticipated time frames in which Defendants expect to begin production in response to the non-objectionable portions of this request. The necessary conditions precedent to any such supplement, however, is: (a) additional meeting and conferring between the parties regarding the proper form and scope of this requests; and (b) a subsequent agreed amendment of Plaintiffs' Targeted Search Request Nos.

1 and 2 or, if necessary, Court intervention and a ruling on Defendants' request for such an amendment.

Dated: September 8, 2008.

JONES DAY

By: Jason McDonell /ew
Jason McDonell

Counsel for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

## PROOF OF SERVICE

I, Elaine Wallace, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 555 California Street, 26th Floor, San Francisco, California 94104. On September 8, 2008, I served a copy of the attached document(s):

**DEFENDANTS' INITIAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF TARGETED SEARCH REQUESTS TO DEFENDANTS (SET ONE)**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☒ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Donn Pickett, Esq.
Geoffrey M. Howard, Esq.
Holly House, Esq.
Zachary J. Alinder, Esq.
Bree Hann, Esq.
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
*donn.pickett@bingham.com*
*holly.house@bingham.com*
*geoff.howard@bingham.com*
*zachary.alinder@bingham.com*
*bree.hann@bingham.com*

Executed on September 8, 2008, at San Francisco, California.

By: [signature]
Elaine Wallace

HUI-102746v1

# EXHIBIT C

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE CORPORATION, et al.,

Plaintiffs,

v.

SAP AG, et al.,

Defendants.

Case No. 07-CV-1658 (PJH) EDL

**DEFENDANTS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF TARGETED SEARCH REQUESTS TO DEFENDANTS (SET ONE)**

PROPOUNDING PARTY: Plaintiffs Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation

RESPONDING PARTY: Defendants TomorrowNow, Inc., SAP America, Inc., and SAP AG

SET NUMBER: One

Pursuant to the parties' agreements and the August 29, 2008 Order regarding targeted searches, Defendants TomorrowNow, Inc. ("TN"), SAP America, Inc. and SAP AG (collectively, "Defendants") serve this their supplemental objections and responses to the First Set of Targeted Search Requests by Plaintiffs Oracle Corporation, Oracle USA, Inc. and Oracle International Corporation (collectively, "Plaintiffs"):

## GENERAL OBJECTIONS AND RESPONSES

1. Defendants object to the requests because they are not "narrow searches by topic" as the parties agreed they would be and as the Court ordered on August 29, 2008. The August 29, 2008 Order states "[t]he Parties may request from the other side up to 10 targeted searches, *i.e.*, narrow searches by topic where document production would come from centralized sources and/or from those persons most likely to have responsive documents." Defendants have been and remain willing to meet and confer with Plaintiffs in an effort to reach an agreement whereby Plaintiffs will amend the form and scope of Plaintiffs' First Set of Targeted Searches in order to comply with the parties' previous agreements and the Court's August 29, 2008 Order.

2. Defendants object to the requests because they contain numerous compound subparts relating to multiple topics and, if properly propounded and individually counted, they would greatly exceed the ten targeted search limit established by the August 29, 2008 Order.

3. Defendants object to the requests to the extent that they are vague, overbroad, oppressive, harassing and unduly burdensome.

4. Defendants object to the requests to the extent that they are not tied to the allegations in this case and therefore not reasonably calculated to lead to the discovery of admissible evidence.

5. As with all of Plaintiffs' other discovery requests, Defendants' reasonable inquiry and related responses to these discovery requests shall be limited in a manner consistent with the Court's orders and the parties' agreements that provide limits on the parties' discovery obligations in this case. Defendants object to the requests to the extent that they can be interpreted to require Defendants to make any further search or production beyond what the parties have agreed and the Court has ordered, because such an interpretation of the requests would make them overbroad and unduly burdensome.

6. Any response by Defendants indicating that they will produce documents is not a confirmation that such documents exist or are in Defendants' possession, custody or control. Such response indicates only that Defendants, subject to their objections, will produce such documents to the extent that they do exist and are in one or more of Defendants' possession, custody or control.

7. Defendants will produce confidential and proprietary information of Defendants and/or of third parties that is in Defendants' possession, only under the Agreed Protective Order entered in this case, which permits designating such documents, depending on their content, as CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY.

8. Defendants object to Plaintiffs' instructions to the extent that those instructions seek to require Defendants to produce documents in a form other than that in which those documents are maintained in the ordinary course of business. Subject to and without waiving their objections, Defendants will produce relevant, responsive non-privileged documents as they are typically maintained, subject only to the parties' agreement regarding mechanics of production.

9. Defendants object to each request, definition and instruction to the extent they seek to impose upon Defendants duties and/or responsibilities greater than those imposed by the Federal Rules of Civil Procedure, the Local Rules of this Court, any applicable orders of this Court or any stipulation or agreement of the parties

10. Defendants object to each request, definition and instruction to the extent they seek

to require Defendants to speculate or guess as to whether Plaintiffs will contend that any potentially responsive documents "contradict" (or any similar concept) any positions taken by Defendants or "support" (or any similar concept) any positions taken by Plaintiffs.

11. Defendants object to each request to the extent it seeks the production of documents and/or things that are not relevant to any claim or defense in this action, or reasonably calculated to lead to the discovery of admissible evidence that is relevant to any claim or defense, under Rule 26(b)(1) of the Federal Rules of Civil Procedure. Defendants specifically object to each request as unduly burdensome, oppressive and calling for information that is neither relevant to any claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence, to the extent the request seeks documents or information unrelated to PeopleSoft or J.D. Edwards ("JDE") products. PeopleSoft and JDE products are the only products Plaintiffs have placed at issue in this case and are the only products for which Defendants will produce documents or other data.

12. Defendants object to each request to the extent it seeks documents that are protected from disclosure by any applicable privilege, including but not limited to the attorney-client privilege, the attorney work product doctrine, the privilege afforded non-testifying experts by Rule 26(b) of the Federal Rules of Civil Procedure, or that is otherwise protected from disclosure under the Federal Rules of Civil Procedure, the Federal Rules of Evidence or relevant statutory or case law. Should any production of any such privileged documents by Defendants occur, it is inadvertent and shall not constitute a waiver of: (a) any privilege; (b) any other ground for objecting to discovery with respect to such documents or any other documents; (c) Defendants' right to claw any such document back or (d) Defendants' right to object during this litigation or otherwise to the use of any such document. Defendants will log such privileged information in accordance with the parties' agreements.

13. Defendants' responses to Plaintiffs' requests do not constitute admissions or acknowledgements that the information sought is within the proper scope of discovery or admissible at trial or that any non-privileged documents responsive to a particular request may exist.

14. Defendants' responses to Plaintiffs' requests are made without in any way waiving: (a) the right to object on the grounds of authenticity, competency, relevancy, materiality, privilege or admissibility, to the extent that any documents produced in response hereto are ever attempted to be introduced as evidence for any purpose in any subsequent proceeding in, or the hearing of, this action or any other action and (b) the right to object on any grounds to any other discovery requests involving or relating to the same or similar subject matter of Plaintiffs' requests.

15. Defendants object to the requests to the extent they seek to require Defendants to search for, review or produce inaccessible information, data or other materials. Defendants will not search for, review or produce inaccessible information, data or other materials.

16. Defendants object to the definition of "Communication" as being overly broad and unduly burdensome to the extent the requests containing the defined term require production of any documents or other data showing "any and all contact."

17. Defendants object to Instruction number 5 to the extent it imposes a burden or obligation to which the parties have not yet agreed. The parties are still in the process of meeting and conferring regarding the limited issues for which the parties will agree to expand the discovery time period.

## TARGETED SEARCH REQUESTS

**TARGETED SEARCH REQUEST NO. 1:**

**FINANCIAL DOCUMENTS**

The following subset of Defendants' relevant financial Documents: (a) Documents comparable to Oracle's relevant "Customer-Specific Financial Reports," as described in Briana Rosenbaum's August 27, 2008 email to Jason McDonell for all TN customers, for all Safe Passage deals with TN as a component, and for SAP sales to TN customers after acquisition of TN; (b) summary sales and profit numbers for all TN customers, for Safe Passage deals with TN as component, and for SAP sales to TN customers after acquisition of TN; (c) reports sufficient to confirm that the 61 customers listed in the Customer List attached to Jane Froyd's July 18, 2008 email are the only SAP customers who either (1) had a contract with TN as a component of their Safe Passage deal, or (2) were previously (or, to the extent the customer was sold TN and SAP

products/support together, at the same time) a TN customer who SAP then mined for further sales of software or service; (d) quantifications or analyses of actual or projected revenue that would be or was lost by Oracle, or any harm that might be or was caused to Oracle, from TN, from SAP's acquisition of TN, or from SAP's incorporation of TN into its Safe Passage program including, but not limited to, Documents related to the 1:10 and 1:18 metrics contained in Hurst Depo Ex. 174 and other instances where these metrics were adopted or rejected by SAP; (e) Documents reflecting TN's expected contributions to Safe Passage (including anticipated service revenues and assistance in driving applications sales); (f) financials reflecting actual or projected benefits related to TN's service on any Oracle-branded software and any follow-on sales projected in connection with TN's offering of such service; (g) all business cases (and assumptions and financial backup regarding the same) related to the TN acquisition and any proposed expansions of TN service to any Oracle-owned software; (h) pro-formas and forecasts (and associated assumptions and financial back-up) for sales, revenue, and profits for the Safe Passage program overall (including for the TN aspect); (i) research, reports, analyses regarding how long TN customers might be expected to remain on TN service, and how long TN customers were expected to continue using Oracle products before migrating to SAP software (relevant Documents would include SAP's historic applications sales pipeline close rates and SAP's historic service contract and application license renewal rates); (j) SAP's and TN's research and development costs associated with the development of support products (both TN support products and SAP support products for SAP applications); (k) SAP's profit margins for service and applications sales and Documents explaining how they are calculated; and (l) Documents showing SAP's valuation of the intellectual property of any company it has acquired (including, but not limited to, Business Objects).

**RESPONSE TO TARGETED SEARCH REQUEST NO. 1:**

Defendants object to this request because it is compound and not a "narrow search by topic where document production would come from centralized sources and/or from those persons most likely to have responsive documents." More specifically, this request is improper because it contains numerous compound subparts relating to multiple topics. The alleged topic of

this request is "financial documents," but only the separately lettered subparts (a), (b), (f) and (k) seek primarily financial documents. Subparts (c) through (e) and (h) relate to the topics of sales and marketing. Subparts (g), (i) and (l) relate to the topic of business strategy. Subpart (j) relates to the topic of research and development. Neither the parties' agreement nor the Court's August 29, 2008 Order permit such a compound request. As currently worded, this request is anything but "targeted."

Defendants object to this request to the extent that it exceeds the number of targeted searches permitted by the Court. If each portion of this request were properly propounded and individually counted, then it would exceed the limit of ten targeted searches established by the August 29, 2008 Order. Specifically, just counting the separately lettered and distinct subparts (*i.e.*, (a) through (l)), this request contains twelve separate targeted search requests. And, if the multiple subparts contained within each separately lettered subparts are included, then this request constitutes even more than twelve separate targeted search requests. Moreover, even if each general "topic" could be counted as one "targeted" search, as shown in the preceding paragraph, this request seeks documents on at least four distinct topics, and thus at a bare minimum this request should be construed as four separate targeted search requests.

Because this request is a combination of multiple targeted search requests, Defendants object to the extent that Plaintiffs seek to require Defendants to choose, among the multiple requests, subparts and topics, which request(s), subpart(s) or topic(s) to which Defendants will respond by searching for and producing documents. Until Plaintiffs reasonably focus this request on a single topic and sufficiently narrow that request in the manner contemplated by the parties' agreement and the Court's August 29, 2008 Order, Defendants do not intend to produce any documents in response to this request.

Moreover, Defendants object to this request to the extent that Plaintiffs' currently pending document requests do not call for production of the documents sought by this targeted search request. Specifically, subparts (c) and (f) through (l) of this request either in whole or in part seek information that is not currently covered by any pending request for production of documents propounded by Plaintiffs in this case.

Defendants further object to this request as overly broad, unduly burdensome, designed to harass and not relevant or likely to lead to the discovery of admissible evidence because it is not limited to the claims and product lines at issue in this case, which are only the PeopleSoft and JDE product lines.

Defendants object to the extent that numerous terms and phrases throughout this request are vague and ambiguous. For example, the italicized words in the phrases: "*summary* sales and profit numbers" in subpart (b); "who SAP then *mined*" in subpart (c); "any *harm* that might be or was caused" in subpart (d); "*driving* applications sales" in subpart (e); "*benefits* related to TN's service," "any *follow-on* sales" and "Oracle-*branded*" in subpart (f); "financial *backup* regarding the same" and "Oracle-*owned*" in subpart (g); and "*associated* assumptions and financial *back-up*" in subpart (h), read in context of each subpart, lack sufficient specificity and thus make each affected subpart vague and ambiguous.

Defendants object to subpart (b) to the extent that it seeks "summary sales and profit numbers" of TN's customers, as opposed to TN's sales and profit information relating to revenue TN received from those customers. Such information is neither relevant to the issues in this case nor likely to lead to the discovery of admissible evidence.

Defendants object to the use of the phrase "related to" in subparts (d), (f) and (g) to the extent that it makes that subpart vague, overbroad, unduly burdensome and to the extent that, depending on the construction of "related to," it is used to seek information that is neither relevant nor likely to lead to the discovery of admissible evidence.

Defendants object to subpart (h) as being overbroad, unduly burdensome and seeking information that is neither relevant nor likely to lead to the discovery of admissible evidence, to the extent that it seeks documents, data or other information regarding Safe Passage that has no relevance to TN.

Defendants object to subpart (i) as being overbroad, unduly burdensome and seeking information that is neither relevant nor likely to lead to the discovery of admissible evidence, to the extent that it seeks documents, data or other information regarding "SAP's historic applications sales pipeline close rates and SAP's historic service contract and application license

renewal rates" that are related to any customer other than those TN customers who became SAP customers after SAP's acquisition of TN.

Defendants object to subpart (j) as being overbroad, unduly burdensome and seeking information that is neither relevant nor likely to lead to the discovery of admissible evidence, to the extent that it seeks documents, data or other information regarding "SAP's … research and development costs associated with the development of support products … for SAP applications."

Defendants object to subparts (k) and (l) in their entirety because they are overbroad, unduly burdensome and seek information that is neither relevant nor likely to lead to the discovery of admissible evidence.

Defendants object to the extent that this request is not "self-contained" as required by the August 29, 2008 Order.

Defendants object to Plaintiffs' attempt to conduct cumulative discovery to the extent that this requests seeks documents, data or other information that Defendants have already produced in this case. This objection includes, but is not limited to, an objection to any attempt by Plaintiffs to require Defendants to segregate or otherwise separately identify any documents, data or other information contained within any document production that any Defendant has made or will make in this case.

Defendants object to the extent that information responsive to this targeted search request will be produced in the ordinary course of the custodian-based production in this case by Defendants. Any attempt by Plaintiffs to seek such duplicative discovery is cumulative, overbroad and harassing.

Defendants object to this request to the extent that it calls for documents protected by any applicable privilege, including but not limited to, the attorney-client privilege, the attorney work product doctrine and/or the consulting-only expert privilege.

Defendants incorporate by reference as if fully set forth herein in response to this request, each of the seventeen General Objections and Responses contained on pages 2 through 5 above, as well as each of Defendants' objections and responses to each of Plaintiffs' document requests

that relate to this request. Defendants are not, by responding to this request, waiving any of their objections to any of Plaintiffs' document requests.

Subject to and without waiving their objections, Defendants' initial response to this request is as follows:

In response to subparts (a), (b) and (f), Defendants are currently searching for responsive financial data within SAP's ISP system and TomorrowNow's financial systems along with making inquiries of relevant employees. Certain SAP and TomorrowNow financial data that is responsive to subparts (a), (b) and/or (f) has already been produced at TN-OR 00000029–1007, a/k/a TN (Disc).1, TN-OR 00004204–276, a/k/a TN (Disc).5, TN-OR 00404006–040, a/k/a TN (Disc).34, TN-OR 01361343, a/k/a TN (Disc).61, SAP-OR 00164624–17227, a/k/a SAP (Disc). 28, SAP-OR 00203255–5606, a/k/a SAP (Disc). 42, SAP-OR 00205621, a/k/a SAP (Disc). 43, SAP-OR 00205623–638, a/k/a SAP (Disc). 44 and within the Excel spreadsheets sent from Jason McDonell to Geoff Howard on August 1 and 28, 2008.

As contemplated by the August 29, 2008 Order, Defendants reserve their right to supplement this response with additional information regarding the actions Defendants are taking to gather documents and other information in response to this request, including the anticipated time frames in which Defendants expect to begin production in response to the non-objectionable portions of this request. The necessary conditions precedent to any such supplement, however, are: (a) additional meeting and conferring between the parties regarding the proper form and scope of this request and (b) a subsequent agreed amendment of this request or, if necessary, Court intervention and a ruling on Defendants' request for such an amendment.

**SUPPLEMENTAL RESPONSE TO TARGETED SEARCH REQUEST NO. 1:**

Subject to, and without waiving any of the foregoing General Objections and the specific objections to Targeted Search Request No. 1, Defendants supplement their response as follows:

In response to subparts (a), (b) and (f), Defendants continue to search for responsive financial data within SAP's ISP system and TomorrowNow's financial system, including TomorrowNow's SharePoint database and a TomorrowNow accounting program containing financial information from prior to SAP's acquisition of TomorrowNow. Defendants continue to

make inquiries with relevant employees, including Albert van Wissen, Bert Oltmans, Joe Busillo, James Zebley, and Joel Bernstein. Defendants estimate that rolling production in response to Targeted Search Request No. 1 will begin in thirty days and that production will be complete in ninety days.

Defendants continue to reserve their right to supplement this response with additional information regarding the actions Defendants are taking to gather documents and other information in response to this request, including the anticipated time frames in which Defendants expect to begin and end production in response to the non-objectionable portions of this request. The necessary conditions precedent to any such supplement, however, are: (a) additional meeting and conferring between the parties regarding the proper form and scope of this request and (b) a subsequent agreed amendment of this request or, if necessary, Court intervention and a ruling on Defendants' request for such an amendment.

**TARGETED SEARCH REQUEST NO. 2:**

**CORPORATE POLICIES RELATED TO COPYRIGHTS, TECHNICAL SUPPORT SERVICES AND USE OF THIRD PARTY SOURCE CODE**

The following subset of Defendant's Relevant Policy and Procedure Documents: (a) Defendants' policies or procedures for opening Oracle's or any third party's source code locally; (b) general policies and procedures related to analyzing, auditing, and terminating customer access to Defendants' support materials, including but [sic] limited to access by any customer or independent third party support provider related to the customer; and (c) Defendants' copyright registration and enforcement policies and procedures for (1) determining authorship, (2) determining ownership (including policies and procedures regarding works made for hire and works developed by independent contractors and the form agreements used in doing so), (3) determining originality, (4) determining copyrightability of the subject matter, (5) determination of pre-existing works to the registered work, (6) determining the publication date, (7) determining when to file the application, (8) providing deposit materials to the Copyright Office, (9) assigning registered works between or among Defendants or any parent or subsidiary, (10) licensing registered works between or among Defendants or any parent or subsidiary, (11) determining

whether a work constitutes a derivative work; and (12) determining when and how to enforce copyrights registered by any of Defendants.

**RESPONSE TO TARGETED SEARCH REQUEST NO. 2:**

Defendants object to this request because it is compound and not a "narrow search by topic where document production would come from centralized sources and/or from those persons most likely to have responsive documents." More specifically, this request is improper because it contains numerous compound subparts relating to multiple topics. The alleged topic of this request is "corporate policies," but that topic is not sufficiently narrow. Moreover, the further description in the title of this request establishes on its face that the request seeks documents, data and other information on at least three topics: (a) use of third party source code; (b) technical support services; and (c) copyrights. Neither the parties' agreement nor the Court's August 29, 2008 Order permit such a compound request. As currently worded, this request is anything but "targeted."

Defendants object to this request to the extent that it exceeds the number of targeted searches permitted by the Court. If each portion of this request were properly propounded and individually counted, then, combined with Plaintiffs' Targeted Search Request No. 1, it would exceed the limit of ten targeted searches established by the August 29, 2008 Order. Specifically, just counting the subtopics in the title of the requests and the separately lettered and distinct subparts (*i.e.*, (a) through (c)), this request contains at least three separate targeted search requests. And, if the multiple subparts contained within each separately lettered subpart are included, then this request constitutes much more than three separate targeted search requests.

Because this request is a combination of multiple targeted search requests, Defendants object to the extent that Plaintiffs seek to require Defendants to choose, among the multiple requests, subparts and topics, which request(s), subpart(s) or topic(s) to which Defendants will respond by searching for and producing documents. Until Plaintiffs reasonably focus this request on a single topic and sufficiently narrow that request in the manner contemplated by the parties' agreement and the Court's August 29, 2008 Order, Defendants do not intend to produce any documents in response to this request.

Moreover, Defendants object to this request to the extent that Plaintiffs' currently pending document requests do not call for production of the documents sought by this targeted search request. Specifically, each subpart (a) through (c) of this request seeks information that is not currently covered by any pending request for production of documents propounded by Plaintiffs in this case.

Defendants further object that this request is overly broad, unduly burdensome, designed to harass and not relevant or likely to lead to the discovery of admissible evidence because it is not limited to the claims and product lines at issue in this case, which are only the PeopleSoft and JDE product lines.

Defendants object to the extent that numerous terms and phrases throughout this request are vague and ambiguous. For example, the italicized words in the phrases: "source code *locally*" in subpart (a), as well as "*general* policies and procedures" and "*independent* third party support provider" in subpart (b), read in context of each subpart, lack sufficient specificity and thus make each affected subpart vague and ambiguous.

Defendants object to the use of the phrase "related to" in subpart (b) to the extent that it makes that subpart vague, overbroad, unduly burdensome and to the extent that, depending on the construction of "related to" it is used to seek information that is neither relevant nor likely to lead to the discovery of admissible evidence.

Defendants object to subpart (a) as overbroad, unduly burdensome and seeking information that is neither relevant nor likely to lead to the discovery of admissible evidence, to the extent that they seek documents, data or other information regarding SAP's corporate policies that do not relate and/or apply to TN.

Defendants object to subparts (b) and (c) in their entirety because they are overbroad, unduly burdensome and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.

Defendants object to Plaintiffs' attempt to conduct cumulative discovery to the extent that this request seeks documents, data or other information that Defendants have already produced in this case. This objection includes, but is not limited to an objection to any attempt by Plaintiffs to

require Defendants to segregate or otherwise separately identify any documents, data or other information contained within any document production that any Defendant has made or will make in this case.

Defendants object to the extent that information responsive to this targeted search request will be produced in the ordinary course of the custodian-based production in this case by Defendants. Any attempt by Plaintiffs to seek such duplicative discovery is cumulative, overbroad and harassing.

Defendants object to this request to the extent that it calls for documents protected by any applicable privilege, including but not limited to, the attorney-client privilege, the attorney work product doctrine and/or the consulting-only expert privilege.

Defendants incorporate by reference as if fully set forth herein in response to this request, each of the seventeen General Objections and Responses contained on pages 2 through 5 above, as well as each of Defendants' objections and responses to each of Plaintiffs' document requests that relate to this request. Defendants are not, by responding to this request, waiving any of their objections to any of Plaintiffs' document requests.

Subject to and without waiving their objections, Defendants' initial response to this request is as follows:

Defendants have produced the relevant policy documents from the TN Corporate Library.nsf (TN-OR 00001278–4196, a/k/a TN (Disk).1) and produced the SAP policy documents with respect to TN (TN-OR 0000016–28, a/k/a TN (Disk).1).

As contemplated by the August 29, 2008 Order, Defendants reserve their right to supplement this response with additional information regarding the actions Defendants are taking to gather documents and other information in response to this request, including the anticipated time frames in which Defendants expect to begin production in response to the non-objectionable portions of this request. The necessary conditions precedent to any such supplement, however, are: (a) additional meeting and conferring between the parties regarding the proper form and scope of this request and (b) a subsequent agreed amendment of this request or, if necessary, Court intervention and a ruling on Defendants' request for such an amendment.

**SUPPLEMENTAL RESPONSE TO TARGETED SEARCH REQUEST NO. 2:**

Subject to, and without waiving any of the foregoing General Objections and the specific objections to Targeted Search Request No. 2, Defendants supplement their response as follows:

In response to subpart (a), Defendants are currently searching for responsive documents including TomorrowNow's new compliance guidelines, SAP's Code of Business Conduct and other responsive SAP policies and procedures located on the SAP portal, including SAP's Global IP policy. Defendants estimate that rolling production in response to Targeted Search Request No. 2 will begin in thirty days and that production will be complete in ninety days.

Defendants continue to reserve their right to supplement this response with additional information regarding the actions Defendants are taking to gather documents and other information in response to this request, including the anticipated time frames in which Defendants expect to begin and end production in response to the non-objectionable portions of this request. The necessary conditions precedent to any such supplement, however, are: (a) additional meeting and conferring between the parties regarding the proper form and scope of this request and (b) a subsequent agreed amendment of this request or, if necessary, Court intervention and a ruling on Defendants' request for such an amendment.

**TARGETED SEARCH REQUEST NO. 3:**

**CUSTOMER WIN/LOSS CAUSATION DOCUMENTS**

Defendants' Relevant Won/Lost Customer Causation Evidence, akin to that Provided in Oracle's At-Risk Reports, including Documents that would explain why any of TN's customers (including any of the 61 identified customers in the Customer List attached to Jane Froyd's July 18, 2008 email) left Oracle, what Communications were made to any of them about TN's use of Oracle's intellectual property and the importance to them of those representations, and the relevance to any Safe Passage customer of the TN aspect of the Safe Passage offering. Per meet and confer discussions, in addition to the SAS database snapshot already produced, likely sources would include the fully updated SAS database, relevant Documents from Defendants' customer relationship management databases, (including, *e.g.*, comments or emails of the principal; SAP service representative for the SAP/TN accounts), win/loss reports discussing any customers

gained from Oracle, and customer survey data (about the customers' decisions to choose TN or SAP).

**RESPONSE TO TARGETED SEARCH REQUEST NO. 3:**

Defendants object to this request to the extent that when this request is combined with Plaintiff's Targeted Search Request Nos. 1 and 2 (as those requests are currently worded), it exceeds the number of targeted searches permitted by the Court. Until Plaintiffs reasonably focus their Targeted Search Request Nos. 1 and 2 each on a single topic and sufficiently narrow those requests in the manner contemplated by the parties' agreement and the Court's August 29, 2008 order (*i.e.*, such that this request is actually Plaintiffs' third targeted search request), Defendants do not intend to produce any documents in response to this request.

Defendants further object that this request is overly broad, unduly burdensome, designed to harass and not relevant or likely to lead to the discovery of admissible evidence because it is not limited to the claims and product lines at issue in this case, which are only the PeopleSoft and JDE product lines.

Defendants object to the definition and use of the term "Communications" in this request because, as defined and used, it is overly broad and unduly burdensome to the extent that this request seeks production of any documents, data or other information showing "any and all contact."

Defendants object to the phrase "Oracle's intellectual property" in this request because when read in context with this request, that phrase lacks sufficient specificity and thus makes the request vague and ambiguous.

Defendants object to Plaintiffs' attempt to conduct cumulative discovery to the extent that this request seeks documents, data or other information that Defendants have already produced in this case. This objection includes, but is not limited to an objection to any attempt by Plaintiffs to require Defendants to segregate or otherwise separately identify any documents, data or other information contained within any document production that any Defendant has made or will make in this case.

Defendants object to the extent that information responsive to this targeted search request will be produced in the ordinary course of the custodian-based production in this case by Defendants. Any attempt by Plaintiffs to seek such duplicative discovery is cumulative, overbroad and harassing.

Defendants object to the extent that this request is not "self-contained" as required by the August 29, 2008 Order.

Defendants object to this request to the extent that it calls for documents protected by any applicable privilege, including but not limited to, the attorney-client privilege, the attorney work product doctrine and/or the consulting-only expert privilege.

Defendants incorporate by reference as if fully set forth herein in response to this request, each of the seventeen General Objections and Responses contained on pages 2 through 5 above, as well as each of Defendants' objections and responses to each of Plaintiffs' document requests that relate to this request. Defendants are not, by responding to this request, waiving any of their objections to any of Plaintiffs' document requests.

Subject to and without waiving their objections, Defendants' initial response to this request is as follows:

Defendants have produced, and continue to collect and will produce, responsive causation evidence including but not limited to: documents from TN's SAS database, documents from TN's CRM database, TN's Salesforce.com database, SAP CRM reports, SAP win/loss reports, SAP customer surveys, SAP customer contracts, and SAP contract view documents. Defendants have already produced responsive documents at TN-OR 00000029–1007, a/k/a TN (Disc).1, TN-OR 00009569, a/k/a TN(Hard Drive).5, TN-OR 00004204–276, a/k/a TN (Disc).5, TN-OR 00404006–040, a/k/a TN (Disc).34, TN-OR 01361343, a/k/a TN (Disc).61, SAP-OR 00164624–17227, a/k/a SAP (Disc). 28, SAP-OR 00203255–5606, a/k/a SAP (Disc). 42, SAP-OR 00205621, a/k/a SAP (Disc). 43, SAP-OR 00205623–638, a/k/a SAP (Disc). 44, and within the Excel spreadsheets sent from Jason McDonell to Geoff Howard on August 1 and 28, 2008..

As contemplated by the August 29, 2008 Order, Defendants reserve their right to supplement this response with additional information regarding the actions Defendants are taking

to gather documents and other information in response to this request, including the anticipated time frames in which Defendants expect to begin production in response to the non-objectionable portions of this request. The necessary conditions precedent to any such supplement, however, is: (a) additional meeting and conferring between the parties regarding the proper form and scope of this requests; and (b) a subsequent agreed amendment of Plaintiffs' Targeted Search Request Nos. 1 and 2 or, if necessary, Court intervention and a ruling on Defendants' request for such an amendment.

**SUPPLEMENTAL RESPONSE TO TARGETED SEARCH REQUEST NO. 3:**

Subject to, and without waiving any of the foregoing General Objections and the specific objections to Targeted Search Request No. 3, Defendants supplement their response as follows:

Defendants have produced, and continue to collect and will produce, responsive causation evidence including but not limited to: documents from TN's SAS database, documents from TN's CRM database, TN's Salesforce.com database, SAP CRM reports, SAP win/loss reports, SAP customer surveys, SAP customer contracts, SAP contract view documents, TN's Summary Pipeline Spreadsheet and TN's SharePoint database. Defendants estimate that rolling production in response to Targeted Search Request No. 3 will begin in thirty days and that production will be complete in ninety days.

Defendants continue to reserve their right to supplement this response with additional information regarding the actions Defendants are taking to gather documents and other information in response to this request, including the anticipated time frames in which Defendants expect to begin and end production in response to the non-objectionable portions of this request. The necessary conditions precedent to any such supplement, however, are: (a) additional meeting and conferring between the parties regarding the proper form and scope of this request and (b) a subsequent agreed amendment of this request or, if necessary, Court intervention and a ruling on Defendants' request for such an amendment.

Dated: September 15, 2008.

JONES DAY

By: Jason McDonell (jlf)
Jason McDonell

Counsel for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

# PROOF OF SERVICE

I, Jane L. Froyd, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 555 California Street, 26th Floor, San Francisco, California 94104. On September 15, 2008, I served a copy of the attached document(s):

**DEFENDANTS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF TARGETED SEARCH REQUESTS TO DEFENDANTS (SET ONE)**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☒ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Donn Pickett, Esq.
Geoffrey M. Howard, Esq.
Holly House, Esq.
Zachary J. Alinder, Esq.
Bree Hann, Esq.
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
*donn.pickett@bingham.com*
*holly.house@bingham.com*
*geoff.howard@bingham.com*
*zachary.alinder@bingham.com*
*bree.hann@bingham.com*

Executed on September 15, 2008, at San Francisco, California.

By: Jane L. Froyd

SVI-61362v1

**EXHIBIT D**

BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle Corporation, Oracle USA, Inc., and
Oracle International Corporation

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice)*
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE CORPORATION, *et al.*,

Plaintifs,

v.

SAP AG, *et al.*,

Defendants.

Case No. 07-CV-1658 PJH (EDL)

**JOINT DISCOVERY CONFERENCE STATEMENT**

Date: July 1, 2008
Time: 11:00 a.m.
Courtroom: E, 15th Floor
Judge: Hon. Elizabeth D. Laporte

its relevant customer licenses, and the revenue streams reasonably associated with its customers who left for SAP TN (though Defendants seek much more).[4] Oracle needs to spend the limited time allotted to discovery reviewing Defendants' relevant documents and taking Defendants' depositions, not producing irrelevant information. Thus, whatever custodial limits are imposed on Defendants, Oracle requests that it be ordered to produce between one third and one half of Defendants' total.

**(2) Targeted Searches**

The Parties agree that certain types of information should be specifically looked for from likely sources, such as a centralized database or from the person most likely to have such information – rather than assuming such information would be revealed in custodial productions. Oracle views this as an important safety net against the limited number of custodial productions. Oracle has suggested each Party be able to propound 10 targeted searches, with the ability for good cause shown, to seek the Court's order for more.

In mid-May, two weeks before the last Discovery Conference, Oracle provided Defendants with an initial list of targeted searches it wanted assurance from Defendants they were providing in addition to custodial searches: (1) board materials; (2) financial information; (3) customer contracts for customers (and communications with them) claimed as wins in Defendants' Safe Passage program; (4) Defendants' reports on customer wins, losses and those at risk (analogous reports to reports Oracle found by targeted search and already produced to

---

[4] For instance, Defendants have sought all of Oracle's documents concerning its competition with SAP and all of Oracle's financial documents (at the general ledger level) – discovery far afield from the products and issues in this case. *See, e.g.*, Defendants' RFP No. 91 (seeking all documents relating Oracle's strategy to offer a broad product line "to compete against SAP AG"); Defendants' RFP No. 81 (seeking all documents related to "Project Fusion"); Defendants' First 30(b)(6) Notice of Deposition of Plaintiff Oracle Corp. Topic 6 (seeking to depose a witness on Oracle's general "Sales, marketing, or competitive intelligence . . . relating to SAP and/or TN"). Defendants have also sought all of Oracle's financial documents, at the general ledger level, to support every aspect Oracle business, including all "new software license revenue and expenses," "On Demand revenue and expenses," all "departments" of the PeopleSoft organization, and Oracle's "executive" department. *See, e.g.*, June 6, 2008 Letter from Mr. McDonell to Mr. Howard. And, Defendants have repeatedly requested information about Oracle products and services completely (and admittedly) unrelated to the products at issue in this case. *See, e.g.*, Defendants' RFP No. 67 ("Documents sufficient to show Oracle's revenues, costs, and profit margins for products other than those referred to in the Complaint or at issue in this litigation, and services relating to such products.").

Defendants); (5) documents related to the acquisition of SAP TN (including business cases/financial projections/risk analysis/board reports); (6) relevant policy and procedure documents; and (7) documents related to Project Blue and the issues considered as part of it. On June 19, Defendants stated in meet and confer correspondence that they were willing to perform some of these targeted searches, but not all. For instance, they refuse to look for specific lost customer-related communications as part of a targeted search but instead seek to charge against their custodian limit any searches for specific lost customers; they refuse to produce all acquisition or Project Blue documents but want to rely on the production of such documents from custodians. Meet and confer continues on the specifics of what Defendants will do and which of these categories is not appropriate for targeted search.

Oracle has already performed many robust targeted searches in responding to Defendants' discovery requests (including from approximately 30 to 40 additional custodians and about 10 centralized information sources). In early June Oracle asked for and on June 19 it received, Defendants' proposed additional targeted search list, namely (1) copyright information, (2) IP due diligence in connection with Oracle's acquisition of PeopleSoft, (2) PeopleSoft IP due diligence, (3) all third party "At Risk" reports, (4) all relevant policy and procedure documents, (5) all communications between SAP TN and Oracle, (6) customer files, (7) sales and customer information comparable to those Defendants are agreeing to produce through targeted searches. While the Parties are meeting and conferring on specifics, and Oracle does not agree, *e.g.*, to produce topic number (5), which is one of the subjects of Defendants' current appeal, or to produce "complete" customer files for topic number (6), which is not a targeted search but a request for review of all custodians related to those customers,[5] Oracle has agreed to the concept of appropriate and reciprocal targeted searches but only if they complement the limited custodial production (and not take up slots within it).

The timing of production of these targeted searches needs to be resolved. Oracle believes

---

[5] Additionally, other than some minor clean-up, Oracle has already given Defendants complete "customer files" from the central repositories that Oracle maintains, and, therefore, has already completed the collection, review, and production of documents included in Defendants' sixth topic, to the extent it is a targeted search.

acquired in January 2005, and J. D. Edwards, which PeopleSoft acquired in June 2003. Thus Defendants' discovery of Plaintiffs relates not only to the documents and information of the three Oracle-entity Plaintiffs but to two additional large software companies whose historical documents and information are now, by virtue of a stock purchase, in Oracle's custody. Finally, such a lopsided limit is contrary to the spirit of the Federal Rules of Civil Procedure, which set objective discovery limits per side not per party. Likewise, the District Judge has imposed equal, not disproportionate deposition limits and written discovery limits in this case. Accordingly, there is no basis to start applying discovery limits unevenly in this case, and whatever number the Court sets as the objective numeric limit on custodians should be applied equally to both sides of this case.

**(2) Targeted Searches**

Defendants agree that the use of "targeted searches" is appropriate in addition to custodian searches. Defendants consider a targeted search to be a search of reasonably well-defined information that is located in common files and that are not the personal working files of a particular individual (*e.g.*, a search for financial records maintained by a finance department or customer files maintained by a sales and marketing department). Targeted searches can also include limited searches of a custodian's files (*e.g.*, search of an individual's files for communications with a particular company, as opposed to all search terms or a document by document review that is part of a full custodian search). In light of the enormous time and expense burdens of the full custodian searches in this case, there should be reasonable limits on targeted searches to ensure that the discovery burdens are proportionate.

Defendants propose that each side should be able to propose targeted searches to the other side consistent with their discovery requests. Defendants believe that a presumptive limit of ten reasonably specific targeted searches per side is reasonable.

Defendants have initially identified seven such targeted searches as follows: (1) copyright information; (2) financial information; (3) any analysis by Oracle of the intellectual property assets of PeopleSoft and/or JDE prior to, subsequent to, or in connection with its acquisition of PeopleSoft; (4) information concerning the reasons it lost customers to TomorrowNow; (5) policy

and procedure documents; (6) Oracle's communications with or about TomorrowNow;[11] (7) complete customer files regarding customers lost to TomorrowNow.

Defendants have not, as Oracle claims, refused to do targeted searches on acquisition or Project Blue documents or on communications relating to lost customers. Defendants have informed Oracle that the acquisition and Project Blue documents are largely, if not completely, covered by the custodians whose productions Oracle has received or will receive. Defendants do not believe there are any such documents that are not custodian-based, but to the extent there are, Defendants have agreed to search central repositories for them. Defendants have also agreed to targeted searches relating to lost customers, as discussed further below.

**(3) Search Terms**

The Parties have exchanged lists of search terms in order to narrow the scope of a custodian's electronic documents to be reviewed. Initially, Oracle's search term list contained 978 search terms. Defendants' first draft of its search term list contained 72 search terms. When Defendants ran Oracle's original list of search terms over nine sample custodians that were previously produced, the terms eliminated only 8.2% of the data to be reviewed and still missed 0.4% of Defendants' responsive documents. Defendants' list of 72 search terms resulted in the elimination of 20.6% of the data to be reviewed and missed 10.3% of Defendants' responsive documents.

After this initial process, the Parties continued to meet and confer regarding the list of relevant search terms and their respective testing and validation of such terms. Defendants agreed to compromise by adding to their search term list and refining Oracle's list of 978 terms. Defendants have spent numerous days trying to create and evaluate a list that provides for the highest possible reduction in the data to be reviewed while capturing an acceptably high percentage of responsive documents. However, the Parties disagree on what constitutes an acceptably high percentage of responsive documents. Oracle has made it clear through the meet and confer process that it is interested in nothing less than 100% capture of responsive documents

[11] These communications between Oracle and TomorrowNow are subject to Defendants' pending objection to the Special Master's recommendation, which is scheduled for hearing at the same time as the July 1, 2008 discovery conference.