Walsh v. Apple, Inc. et al Doc. 184

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAP AG, et al.,<br><br>Defendants. | Case No. 07-CV-1658 PJH (EDL)<br><br>**DEFENDANTS' FRCP 12(B)(1) AND 12(B)(6) MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR COPYRIGHT INFRINGEMENT, INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, BREACH OF CONTRACT, UNFAIR COMPETITION, AN ACCOUNTING AND UNJUST ENRICHMENT**<br><br>Date: November 19, 2008; Time: 9:00 a.m.<br>Courtroom: 3, 17th Floor<br>Judge: Hon. Phyllis J. Hamilton |



Dockets.Justia.com

# TABLE OF CONTENTS


| | | | Page |
|---|---|---|---|
| I. | STATEMENT OF ISSUES | | 2 |
| II. | INTRODUCTION AND SUMMARY OF ARGUMENT | | 2 |
| III. | FACTUAL AND PROCEDURAL BACKGROUND | | 4 |
| | A. | History of Plaintiffs' Belated Amendments to the Complaint | 4 |
| | B. | The Third Amended Complaint | 5 |
| | C. | History of Plaintiffs' Belated Production of Inter-Company Agreements | 5 |
| IV. | LEGAL STANDARDS | | 6 |
| V. | ARGUMENT | | 7 |
| | A. | JDEE and OSC May Not Assert Copyright Claims in this Court | 7 |
| | | 1. This Court Lacks Subject Matter Jurisdiction Over JDEE's Claim for Extraterritorial Copyright Infringement | 8 |
| | | 2. OSC Does Not Have Standing to Bring a Copyright Claim | 10 |
| | B. | The Copyright Act Preempts Several of Plaintiffs' Claims | 12 |
| | | 1. Legal Standard for Preemption Under the Copyright Act | 12 |
| | | 2. Plaintiffs' Claims for Intentional and Negligent Interference with Prospective Economic Advantage Are Preempted | 14 |
| | | 3. Plaintiffs' Breach of Contract Claim Is Preempted | 18 |
| | | 4. Plaintiffs' Claims for Unfair Competition Are Preempted | 19 |
| | | 5. Plaintiffs' Claims for an Accounting Are Preempted | 21 |
| | | 6. To the Extent Plaintiffs' Claims Are Preempted, the Court Should Dismiss Those Claims Without Leave to Amend | 22 |
| | C. | Plaintiffs' Claims for Breach of Contract Should Be Dismissed Because Defendants Are Not Parties to the Alleged Contracts | 22 |
| | D. | Plaintiffs' Claims for Unjust Enrichment Should Be Dismissed Without Leave to Amend | 24 |
| VI. | CONCLUSION | | 25 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aagard v. Palomar Builders, Inc.*,
344 F. Supp. 2d 1211 (E.D. Cal. 2004) .......... 17

*ABKCO Music, Inc. v. LaVere*,
217 F.3d 684 (9th Cir. 2000) .......... 7

*Accuimage Diagnostics Corp. v. Terarecon, Inc.*,
260 F. Supp. 2d 941 (N.D. Cal 2003) .......... 14

*Allarcom Pay Television Ltd. v. General Instrument Corp.*,
69 F.3d 381 (9th Cir. 1995) .......... 8, 9, 10

*Altera Corp. v. Clear Logic, Inc.*,
424 F.3d 1079 (9th Cir. 2005) .......... 17, 18

*Bell Atlantic Corp. v. Twombly*,
127 U.S. 1955 (2007) .......... 7

*Brackett v. Hilton Hotels Corp.*,
No. C 08-02100 WHA, 2008 WL 2632675 (N.D. Cal. June 30, 2008) .......... 17

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) .......... 7

*Canyon County v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2007) .......... 8

*Centerprise Int'l, Ltd. v. Micron Tech., Inc.*,
538 F.3d 1107 (9th Cir. 2008) .......... 7

*Cetacean County v. Bush*,
386 F.3d 1169 (9th Cir. 2004) .......... 8

*Del Madera Props. v. Rhodes & Gardner, Inc.*,
820 F.2d 973 (9th Cir. 1987) .......... 13, 20

*EPIS, Inc. v. Fidelity & Guaranty Life Ins. Co.*,
156 F. Supp. 2d 1116 (N.D. Cal. 2001) .......... 22

*Estate of Watts v. Dickerson*,
162 Cal. App. 3d 1160 (1984) .......... 23

*Falcon Enters. v. Nobel Devs., Inc.*,
No. CV06-1404 (RSL), 2007 U.S. Dist. LEXIS 15809 (W.D. Wash. Mar. 5, 2007) .......... 22

*Firoozye v. Earthlink Network*,
153 F. Supp. 2d 1115 (N.D. Cal. 2001) .......... 19

*Geraci v. Homestreet Bank*,
347 F.3d 749 (9th Cir. 2003) .......... 7

*Idema v. Dreamworks*,
162 F. Supp. 2d 1129 (C.D. Cal. 2001) .......... 15, 16, 21, 22

*In re Netflix Antitrust Litig.*,
506 F. Supp. 2d 308 (N.D. Cal. 2008) .......... 7

*J'Aire Corp. v. Gregory*,
24 Cal. 3d 799 (1979) .......... 14

## TABLE OF AUTHORITIES
## (continued)

Page(s)

*Kodadek v. MTV Networks, Inc.*,
152 F.3d 1209 (9th Cir. 1998) .......... 20, 21

*Kokkonen v. Guardian Life Ins. Co. of America*,
511 U.S. 375 (1994) .......... 6

*L.A. News Serv. v. Reuters TV Int'l*,
149 F.3d 987 (9th Cir. 1998) .......... 8, 9

*La Cienega Music Co. v. ZZ Top*,
53 F.3d 950 (9th Cir. 1995) .......... 7

*Lance v. Coffman*,
549 U.S. 437 (2007) .......... 6

*Laws v. Sony Music Entm't, Inc.*,
448 F.3d 1134 (9th Cir. 2006) .......... 13

*Melchior v. New Line Prods., Inc.*,
106 Cal. App. 4th 779 (2003) .......... 25

*Motown Record Corp. v. George A. Hormel & Co.*,
657 F. Supp. 1236 (C.D. Cal. 1987) .......... 13, 16, 21, 22

*Netbula, LLC v. Bindview Dev. Corp.*,
516 F. Supp. 2d 1137 (N.D. Cal. 2007) .......... 23

*Ott v. Home Savings & Loan Ass'n.*,
265 F.2d 643 (9th Cir. 1958) .......... 23

*Papasan v. Allain*,
478 U.S. 265 (1986) .......... 7

*Paracor Fin. v. General Elec. Capital Corp.*,
96 F.3d 1151 (9th Cir. 1996) .......... 25

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) .......... 11

*Penpower Tech. Ltd. v. S.P.C. Tech.*,
No. 07-3621 SC, 2008 WL 248486 (N.D. Cal. June 17, 2008) .......... 21

*Plummer v. Ehlers*,
50 Cal. App. 2d 352 (1942) .......... 23

*Reddy v. Litton Indus., Inc.*,
912 F.2d 291 (9th Cir. 1990) .......... 7

*Reichert v. General Ins. Co. of America*,
68 Cal. 2d 822 (1968) .......... 22

*Selby v. New Line Cinema Corp.*,
96 F. Supp. 2d 1053 (C.D. Cal. 2000) .......... 19

*Silvers v. Sony Pictures Entm't*,
402 F.3d 881 (9th Cir. 2005) .......... 10

*Subafilms, Ltd. v. MGM-Pathe Comm'ns Co.*,
24 F.3d 1088 (9th Cir. 1994) .......... 8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Summit Machine Tool Mfg. Corp. v. Victor CNC Sys., Inc.*,
7 F.3d 1434 (9th Cir. 1993) .......... 13, 20

*Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) .......... 10, 14, 20

*Thomas v. Walt Disney Co.*,
C-07-4392 CW, 2008 U.S. Dist. LEXIS 14643 (N.D. Cal. Feb. 14, 2008) .......... 22

*U.S. v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .......... 11

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003) .......... 7, 8, 11

*Worth v. Universal Pictures, Inc.*,
5 F. Supp. 2d 816 (C.D. Cal. 1997) .......... 21

*Youst v. Longo*,
43 Cal. 3d 71 (1987) .......... 14

**Statutes**

17 U.S.C. § 103 .......... 13

17 U.S.C. § 106 .......... 12, 13

17 U.S.C. § 301(a) .......... 13

17 U.S.C. § 102 .......... 13

17 U.S.C. 501(b) .......... 10

28 U.S.C. 1338 .......... 8

California Business & Profession Code § 17200 .......... 19, 20

**Other Authorities**

1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts .......... 23

Nimmer on Copyright § 1.01 .......... 21

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 1, 3, 6, 7

Fed. R. Civ. P. 12(b)(6) .......... 1, 3, 7, 8

**TO PLAINTIFFS ORACLE USA, INC., ET AL. AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on November 19, 2008 at 9:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled Court, located at Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, 94102, Defendants SAP AG, et al. ("Defendants"), by their undersigned counsel, will and hereby do move the Court, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiffs' claims for copyright infringement, interference with prospective economic advantage, breach of contract, unfair competition, an accounting and unjust enrichment.

Specifically, Defendants request that the Court dismiss without leave to amend: (1) the copyright claims of Oracle Systems Corporation pursuant to Rule 12(b)(6) because that entity lacks standing to sue for copyright infringement; (2) the copyright claims of J.D. Edwards Europe Limited pursuant to Rule 12(b)(1) because the Court lacks subject matter jurisdiction over that entity's non-U.S. rights; (3) Plaintiffs' claims for intentional and negligent interference with prospective economic advantage, breach of contract, and an accounting pursuant to Rule 12(b)(6) because they are preempted by the Copyright Act; (4) Plaintiffs' claim for breach of contract pursuant to Rule 12(b)(6) because Defendants are not parties to the alleged contracts; and (5) Plaintiffs' claims for unjust enrichment pursuant to Rule 12(b)(6) because there is no such legally cognizable claim. Defendants' motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Tharan Gregory Lanier and supporting exhibits, and such further argument and evidence that may be presented at or before the hearing on this Motion.

Pursuant to their Stipulation of September 11, 2008, the parties will meet and confer on a briefing schedule for this motion, and should they reach agreement on such schedule, Defendants will re-notice the motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF ISSUES

1. Whether J.D. Edwards Europe Limited's copyright claims should be dismissed because this Court lacks subject matter jurisdiction over J.D. Edwards Europe Limited's claims, which are based solely on non-US rights.

2. Whether Oracle Systems Corporation's copyright claims should be dismissed because Oracle Systems Corporation lacks standing to sue for copyright infringement.

3. Whether Plaintiffs' claims for intentional and negligent interference with prospective economic advantage, breach of contract, unfair competition, and an accounting are preempted by the Copyright Act and should dismissed to the extent of preemption.

4. Whether Plaintiffs' claim for breach of contract should be dismissed in its entirety for failure to state a claim because Defendants are not parties to the alleged contracts.

5. Whether Plaintiffs' claims for unjust enrichment should be dismissed because unjust enrichment is not a legally cognizable claim.

6. Whether dismissal of Plaintiffs' claims should be without leave to amend because amendment would be futile.

## II. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs'[1] Third Amended Complaint ("TAC") attempts to state a laundry list of claims against defendants SAP AG, SAP America, Inc. (together, "SAP"), and TomorrowNow, Inc. ("TN") (collectively, "Defendants"). The core of Plaintiffs' claims is the allegation that Defendants copied, distributed, created derivative works, and profited from certain of Plaintiffs' allegedly copyrighted material. However, under the Copyright Act, only one plaintiff, OIC, may be eligible to assert a copyright claim against Defendants. In an attempt to circumvent the Copyright Act's standing requirements and to inflate the scope of what is, at bottom, a copyright case, Plaintiffs have asserted a variety of state law claims that are preempted by the Copyright Act or that should be dismissed for other reasons.

[1] Plaintiffs listed in the TAC include Oracle USA, Inc. ("Oracle USA"), Oracle International Corporation ("OIC"), Oracle Systems Corporation ("OSC"), Oracle EMEA Limited (OEMEA), and J.D. Edwards Europe Limited ("JDEE") (collectively, "Plaintiffs"). Original plaintiff Oracle Corporation has been apparently dropped entirely from the case.

A major problem with Plaintiffs' core claim for copyright infringement is that two of the three copyright plaintiffs are ineligible to bring it. To the extent that JDEE has any rights in the copyrights at issue, those rights are limited to territories outside of the United States. However, only claims based on U.S. rights are cognizable under the Copyright Act. Thus, JDEE's claim does not and cannot arise under United States law, and this Court lacks subject matter jurisdiction over it.

Similarly, OSC's claim for copyright infringement should be dismissed. Under the Copyright Act, only an owner or an exclusive licensee of a copyright may bring an action for infringement of that copyright. In their TAC, Plaintiffs do not allege that OSC is or ever has been an owner or exclusive licensee of the asserted copyrights. Plaintiffs allege only that at some point in time, OSC's predecessors-in-interest owned exclusive rights in certain of the copyrights at issue. Based on the allegations in the TAC, OSC lacks standing, and its purported copyright claims should be dismissed.

Dismissal of JDEE's and OSC's copyright claims should be without leave to amend because re-pleading will not cure the defects identified in this motion. The agreements upon which Plaintiffs rely to assert ownership of the copyrights-in-suit (and that may be considered on this motion under Rule 12(b)(1) and Rule 12(b)(6)) confirm that (1) JDEE has no exclusive rights in the asserted copyrights that can be enforced in the United States, and (2) OSC is not and never has been an owner or exclusive licensee of the copyrights at issue. Amendment cannot change these facts.

Additionally, many of Plaintiffs' non-copyright claims are preempted, at least in part. Just as parties may not assert a copyright claim for which they have no standing, neither may they circumvent the requirement of standing by recasting their copyright allegations as state law claims. The Copyright Act sets forth a copyright holder's exclusive remedies for purported infringement of its exclusive rights. Yet, Plaintiffs attempt to advance state law claims for intentional and negligent interference with prospective economic advantage, breach of contract, unfair competition, and an accounting by relying on the very same conduct upon which Plaintiffs' copyright claims are based. All of the facts asserted by the Plaintiffs fall within the

categories of copying, distributing, and creating derivative works of copyrighted material. Accordingly, in their state law claims, Plaintiffs have done no more than to restate their copyright claims; restatement does not avoid preemption, it compels it. All these claims are preempted by the Copyright Act to the extent that they are based on Defendants' purported impermissible copying, distributing, and creating derivative works of Plaintiffs' copyrighted material.

Finally, Plaintiffs have asserted claims that have no basis in the underlying documents or the law. It is evident from the documents incorporated by reference into the complaint, and on which Plaintiffs base the claim for breach of contract, that Defendants are not parties to the alleged contracts. Thus, Plaintiffs' claim for breach of contract should be dismissed. Similarly, Plaintiffs' claim for unjust enrichment should be dismissed with prejudice because unjust enrichment is not a separate cause of action under California law. No amendment can change these facts, and these claims should be dismissed without leave to amend.

## III. FACTUAL AND PROCEDURAL BACKGROUND

### A. History of Plaintiffs' Belated Amendments to the Complaint

Oracle Corp., Oracle USA, and OIC (the "Original Plaintiffs") filed their initial complaint on March 22, 2007. *See* Lanier Decl. ¶ 1. The initial complaint did not include a copyright infringement claim. On June 1, 2007, the Original Plaintiffs amended that complaint and filed the First Amended Complaint ("FAC"). *See* Lanier Decl. ¶ 2. The FAC included a copyright infringement claim based on copyright registrations that OIC obtained after the filing of the initial complaint. In January 2008, the Original Plaintiffs informed Defendants that they planned to amend the complaint a second time but could not do so until they had obtained additional copyright registrations. *See* Lanier Decl. ¶ 3. Repeating these representations to the Court and Defendants at the Case Management Conference in April 2008, the Original Plaintiffs again attributed the delay in filing the Second Amended Complaint ("SAC") to their efforts to obtain additional copyright registrations. *See* Lanier Decl. ¶ 4. On July 28, 2008, pursuant to a stipulation, the Original Plaintiffs finally filed the SAC. *See* Lanier Decl. ¶ 5. Of the 40 additional copyright registrations identified in the SAC, all of them pre-date the FAC, and all but

three are allegedly based on works that pre-date the original complaint as well. *See id.*

### B. The Third Amended Complaint

The TAC is the *fourth* complaint filed in this case. On August 28, 2008, after being informed that Defendants might respond to the SAC by motion, the Original Plaintiffs informed Defendants that they planned to seek leave to amend again to make "some adjustment to the plaintiff entities currently described in the Second Amended Complaint." Lanier Decl. ¶ 6. On September 11, 2008, the parties entered into a stipulation regarding the Original Plaintiffs' proposed TAC, pursuant to which the Original Plaintiffs would provide to Defendants a draft TAC and would "make reasonable efforts to complete a supplemental production of documents related to the proposed amendments" by September 29, 2008. Lanier Decl. ¶ 15. On September 29, 2008, the Original Plaintiffs provided SAP with the draft TAC and a supplemental production. *See* Lanier Decl. ¶ 16. The supplemental production consisted of additional copyright-related materials and 18 inter-company agreements. *Id.* On October 6, 2008, Defendants stipulated to filing of the TAC, and the Plaintiffs filed the TAC on October 8, 2008. *See* Lanier Decl. ¶ 17.

The TAC removes Oracle Corp. as a plaintiff entirely and drops Oracle USA from Plaintiffs' copyright infringement claim. Additionally, in contrast to the SAC, the TAC identifies the subset of plaintiffs asserting each cause of action.

### C. History of Plaintiffs' Belated Production of Inter-Company Agreements

The TAC followed the Original Plaintiffs' purported recent "discovery" of documents relating to ownership of the copyrights-in-suit ("inter-company agreements") that Defendants had been seeking for more than a year (and which, presumably, Plaintiffs and their counsel reviewed prior to bringing the original copyright claims). *See id.* The agreements define the relationships of the companies Oracle acquired in its 2005 acquisition spree. Of particular interest, they define which companies hold IP rights relevant to this case.

The Original Plaintiffs long delayed producing these critical documents. Defendants had first asked the Original Plaintiffs to produce inter-company agreements on July 26, 2007, the day fact discovery opened. *See* Lanier Decl. ¶ 7. The Original Plaintiffs agreed, but as of the

fall of 2007, had not done so. *See id.* Defendants raised the Original Plaintiffs' failure to produce these and other relevant documents in meet and confer communications in October, November, and December 2007, and specifically put the Original Plaintiffs on notice that Defendants might raise legal challenges based on the inter-company agreements. ("We believe that it is not unlikely that the alleged licensing was not handled in the way you have alleged."). Lanier Decl. ¶ 8. On January 4, 2008, the Original Plaintiffs again said that they would produce the requested documents but by the end of January, still had not done so. *See* Lanier Decl. ¶ 9. On January 28, 2008, Defendants raised the issue in a motion to compel submitted to the Special Discovery Master. *See* Lanier Decl. ¶ 10. On February 25, 2008, some seven months after Defendants first requested them, the Original Plaintiffs finally produced a few inter-company agreements. *See* Lanier Decl. ¶ 11. Believing the Original Plaintiffs' production to be incomplete, Defendants continued to attempt to meet and confer on the issue. *See id.* On July 22, 2008, a full year after Defendants requested them, the Original Plaintiffs produced several additional inter-company agreements. *See* Lanier Decl. ¶ 12. Defendants then asked the Original Plaintiffs to confirm that they had produced all responsive inter-company agreements. *See* Lanier Decl. ¶ 13. The Original Plaintiffs initially refused to give a straightforward answer to that question, and then on August 27 admitted "that there may be some additional responsive documents related to inter-company agreements." Lanier Decl. ¶ 14. Finally, after another production, Plaintiffs' counsel confirmed at the October 10, 2008 Discovery Conference that Plaintiffs had produced all agreements for the Plaintiffs named in the TAC related to the ownership of the copyrights in issue. *See* Lanier Decl. ¶¶ 16, 18.

## IV. LEGAL STANDARDS

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's statutory or constitutional power to adjudicate the case. *See* Fed. R. Civ. P. 12(b)(1); *Lance v. Coffman*, 549 U.S. 437 (2007). When a party challenges subject matter jurisdiction, a court presumes lack of subject matter jurisdiction, and the plaintiff bears the burden of proving otherwise. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Centerprise Int'l, Ltd. v. Micron Tech., Inc.*,

538 F.3d 1107, 1110 (9th Cir. 2008). In ruling on a Rule 12(b)(1) motion, a court may look beyond the complaint and consider evidentiary matters outside of the pleadings. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the claims stated in the Plaintiffs' complaint. *See In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 313 (N.D. Cal. 2008). In ruling on a Rule 12(b)(6) motion, the Court construes all material allegations stated in the complaint, as well as any reasonable inferences that may be drawn from those material allegations, in the light most favorable to the plaintiff and "on the assumption that all of [the] allegations are true." *See Bell Atlantic Corp. v. Twombly*, 127 U.S. 1955, 1965 (2007); *see also Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003). If the factual allegations in the complaint are not sufficient to support a right to relief above the speculative level, then the claim must be dismissed. *Bell Atlantic Corp.*, 127 U.S. at 1965 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Moreover, leave to amend should not be granted where it is plain that the plaintiff cannot cure the defects in the complaint. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338-39 (9th Cir. 1996) (affirming district court's denial of leave to amend where "granting leave to amend . . . would have been futile); *La Cienega Music Co. v. ZZ Top*, 53 F.3d 950, 954 (9th Cir. 1995) (affirming district court's denial of leave to amend copyright claims because "the substitution of words would not have changed the substance of the complaint"), overruled by statute on another point as noted in *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 685 (9th Cir. 2000); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (affirming district court's denial of leave to amend claims where plaintiff lacked standing to bring certain claims; holding that "[i]t is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile").

## V. ARGUMENT

### A. JDEE and OSC May Not Assert Copyright Claims in this Court

JDEE's copyright claim should be dismissed under Rule 12(b)(1) because the Court lacks subject matter jurisdiction over the claim, as all of JDEE's rights regarding the copyrights at issue lie outside the United States. *See* Fed. R. Civ. P. 12(b)(1). OSC's current claim should

be dismissed under Rule 12(b)(6) because OSC lacks standing, as it is neither an owner nor the exclusive licensee of the asserted copyrights. *See Cetacean County v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004); *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 n.7 (9th Cir. 2007) (holding that the issue of statutory standing is resolved under Rule 12(b)(6)); *Warren*, 328 F.3d at 1140 (same).[2]

1. **<u>This Court Lacks Subject Matter Jurisdiction Over JDEE's Claim for Extraterritorial Copyright Infringement</u>.**

District courts have original jurisdiction over civil actions arising under federal copyright law. *See* 28 U.S.C. 1338. However, federal copyright laws "do not have extraterritorial application"; as a result, acts of infringement that occur entirely outside the jurisdiction of the United States are not actionable under the Copyright Act. *See Subafilms, Ltd. v. MGM-Pathe Comm'ns Co.*, 24 F.3d 1088, 1090 (9th Cir. 1994) ("eighty years of consistent jurisprudence" supports the conclusion that "wholly extraterritorial acts of infringement are not cognizable under the Copyright Act"); *Allarcom Pay Television Ltd. v. General Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995) ("[F]ederal copyright law does not apply to extraterritorial acts of infringement."). Rather, "'[f]or the Act to apply, at least one alleged infringement must be completed entirely within the United States.'" *L.A. News Serv. v. Reuters TV Int'l*, 149 F.3d 987, 990 (9th Cir. 1998) (quoting *Allarcom*, F.3d at 387). Since claims predicated on wholly extraterritorial acts of infringement do not arise under the Copyright Act, they cannot provide the basis for subject matter jurisdiction.

JDEE's claims are wholly extraterritorial. Plaintiffs allege that "JDEE is an exclusive licensee of certain copyrights at issue in this case." D.I. 182 (TAC, ¶¶ 46, 151-52). However, the one and only agreement under which JDEE is granted any exclusive rights in the copyrights at issue in this case limits JDEE's rights to Europe, the Middle East, and Africa ("EMEA").

[2] Defendants acknowledge Plaintiffs' contention that OIC is the owner of all of the asserted copyrights and for the purpose of this motion *only*, accept this contention at face value (as of the date of their transfer by certain PeopleSoft and J.D. Edwards entities). Defendants intend to challenge both OIC's ownership as to each asserted registered work, and their alleged copyrightability, after additional discovery (including, for example, further discovery into how OIC asserts ownership over many alleged "works for hire" when it cannot identify the alleged authors or prove that they assigned their rights to OIC's predecessors).

Specifically, the June 4, 1998 Research and Development Cost Sharing Agreement between J.D. Edwards World Source Company ("Source"), JDEE, and J.D. Edwards (Singapore) Pte. Ltd. ("JDES") ("June 4, 1998 Agreement") grants JDEE the "exclusive, transferable, perpetual, irrevocable, royalty-free right and license ***in the countries set forth in Exhibit A*** . . . under any Developed Technology, to practice, use and modify the Developed Technology in order to develop, reproduce, use, make, have made, sell and otherwise distribute, directly or indirectly, Products." Lanier Decl. ¶ 19 (Ex. 1) (emphasis added). Exhibit A provides that the geographical territory in which JDEE possesses the right and license to the technology covered by the agreement is EMEA. *Id.* Thus, under the terms of the June 4, 1998 Agreement, to the extent that JDEE has any rights in the copyrights at issue, those rights are limited to territories *outside* of the United States. Therefore, any infringement of JDEE's rights must necessarily be extraterritorial. For these reasons, JDEE's claim does not and cannot arise under United States law, and this Court lacks subject matter jurisdiction over it.

Finding that this Court lacks subject matter jurisdiction over JDEE's copyright claims is consistent with the law in this Circuit. In *L.A. News*, plaintiff copyright owner sued for infringement based on defendant having made unauthorized copies of plaintiff's copyrighted videotape in the U.S. and then transmitting the video to defendant's London branch office, which broadcast the video to its London subscribers. 149 F.3d 987, 990 (9th Cir. 1998). Acknowledging the well-settled rule that "the Copyright Act does not apply extraterritorially," the Ninth Circuit held that plaintiff's copyright infringement claim arose under the Copyright Act because the plaintiff had U.S. rights in the copyright at issue, and as a result the defendant's acts of copying in the U.S. violated plaintiff's rights under the U.S. Copyright Act. *Id.* at 991-992. Only because plaintiff had a right to sue in U.S. federal court for U.S.-based acts of infringement was plaintiff then able to recover for the extraterritorial exploitation of those illegal copies abroad. *See id.*

By contrast, where, as here, a copyright plaintiff has no U.S. rights, the Ninth Circuit has found that the Copyright Act does not apply to that plaintiff's infringement claims. *See Allarcom*, 69 F.3d at 387. In *Allarcom*, plaintiff possessed an exclusive license to broadcast

certain copyrighted movies in Western Canada. *Id.* at 383. When one defendant broadcast the copyrighted movies into plaintiff's territory from the U.S., the plaintiff sued defendants for copyright infringement. *Id.* at 384. The Ninth Circuit concluded that no alleged infringement had been completed in the U.S. *Id.* at 387. Although defendant arguably had "initiated a potential infringement in the United States by broadcasting the . . . signal, which contained copyrighted material," these U.S. acts did not infringe plaintiff's Canadian rights; rather, infringement of plaintiff's exclusive rights to distribute in Western Canada, to which U.S. copyright law did not apply, "was only completed in Canada once the signal was received and viewed." *Id.* Like the *Allarcom* plaintiff, JDEE only has non-U.S. rights to the copyrights at issue; as a result, it cannot bring an U.S. copyright infringement claim. Thus, this court lacks subject matter jurisdiction over those claims.

There is no set of facts that Plaintiffs could include in an amended complaint that would provide this Court with subject matter jurisdiction over JDEE's copyright claim. The June 4, 1998 Agreement is the only document produced by Plaintiffs that confers upon JDEE certain exclusive rights in the copyrights at issue. Indeed, at the October 10, 2008 Discovery Conference, Plaintiffs' counsel confirmed that Plaintiffs have produced all agreements for the Plaintiffs named in the TAC related to determining ownership of and rights to the copyrights in issue. *See* Lanier Decl. ¶¶ 18, 27 (Ex. 9). Thus, JDEE's only exclusive rights in the asserted copyrights are in EMEA and not in the U.S., which rights cannot be enforced under the Copyright Act. This Court's dismissal of JDEE's copyright claim should therefore be without leave to amend because amendment would be futile.

**2. <u>OSC Does Not Have Standing to Bring a Copyright Claim</u>.**

Under the Copyright Act, only the "legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that right while he or she is the owner of it." 17 U.S.C. 501(b). *Only* copyright owners and exclusive licensees of a copyright may enforce a copyright or license. *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008); *Silvers v. Sony Pictures Entm't*, 402 F.3d 881, 885 (9th Cir. 2005). In their TAC, Plaintiffs do not allege that OSC is or ever has been an owner or exclusive

licensee of the asserted copyrights. Plaintiffs allege only that "OSC is a successor in interest to certain PeopleSoft and J.D. Edwards entities" and that "OIC, JDEE and ***OSC's predecessors-in-interest*** owned one or more exclusive rights in certain copyrights at issue in this case at a point in time during which Defendants infringed those exclusive rights." D.I. 182 (TAC, ¶ 36, 152) (emphasis added). By failing to allege that *OSC* is or has ever been either an owner or exclusive licensee of certain of the asserted copyrights, Plaintiffs have failed to plead that OSC has standing to bring suit to enforce the copyrights. Therefore, OSC has failed to state a claim for copyright infringement, and its copyright infringement claims should be dismissed.

This dismissal should be without leave to amend. After months of delay, Plaintiffs produced the inter-company agreements relevant to the allegation the OSC is a successor-in-interest to "certain PeopleSoft and J.D. Edwards entities." Nothing produced by Plaintiffs, even after they knew they needed to change the plaintiffs in this case, shows that OSC ever owned or exclusively licensed the copyrights in issue. Rather, the agreements show that OSC's predecessors-in-interest transferred all of their intellectual property directly to OIC, a different company, *prior* to merging with OSC (then known as Oracle Corporation), and *not* to OSC itself.[3]

Specifically, before 2006, OSC was known as Oracle Corporation ("pre-2006 Oracle Corporation").[4] In 2005, PeopleSoft, Inc. and J.D. Edwards & Company, LLC transferred all of their intellectual property directly to OIC, after which they merged with and into the pre-2006

---

[3] The Court may consider the inter-company agreements in this motion to dismiss under Rule 12(b)(6) because a court may consider "documents incorporated by reference in the complaint" without converting the motion to dismiss into a motion for summary judgment. *U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Even if not attached to the complaint or explicitly referenced, courts consider a document to be incorporated by reference if its authenticity is not contested and if it is a document "upon which the plaintiff's complaint necessarily relies." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (superseded by statute on other grounds); *see also Warren*, 328 F.3d at 1141 n.5 (court could consider employment agreements with work for hire provisions in connection with a 12(b)(6) motion to dismiss plaintiff's copyright claims for lack of standing because complaint relied on validity of the agreements). Permitting consideration of such documents "[p]revent[s] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino*, 146 F.3d at 706.

[4] *See* Oracle/Ozark Contribution, Assignment and Assumption Agreement, dated January 31, 2006, between Oracle Corporation and Ozark Holding Inc. (Lanier Decl. ¶ 20 (Ex. 2)).

Oracle Corporation.[5] Under a separate agreement, several J.D. Edwards companies transferred all of their intellectual property directly to OIC *before* merging with the pre-2006 Oracle Corporation.[6] Neither of these agreements grants the pre-2006 Oracle Corporation ownership in or an exclusive license to any copyrights. In fact, none of the inter-company agreements produced by the Plaintiffs grant the pre-2006 Oracle Corporation or OSC ownership or exclusive rights in any intellectual property at all.

At the October 10, 2008 Discovery Conference, Plaintiffs' counsel confirmed that Plaintiffs had produced all agreements for the Plaintiffs named in the TAC related to the ownership of and rights to the copyrights in issue as it affects standing. *See* Lanier Decl. ¶¶ 18, 27 (Ex. 9). Because the inter-company agreements incorporated by reference into Plaintiffs' complaint confirm that OSC is not and never has been an owner or exclusive licensee of the copyrights at issue, Plaintiffs cannot amend their complaint to allege that OSC has standing to sue for copyright infringement. Dismissal of OSC's copyright claim should be without leave to amend.

### B. The Copyright Act Preempts Several of Plaintiffs' Claims

#### 1. <u>Legal Standard for Preemption Under the Copyright Act</u>.

Pursuant to the Copyright Act, the owner of a copyrighted work has a number of "exclusive rights" with respect to that work, including the rights to display, perform, reproduce or distribute copies of the work, and to prepare derivative works. 17 U.S.C. § 106. In addition to providing exclusive rights to the holder of a copyright, the Copyright Act also describes when the Act preempts legal and equitable rights granted by state common law or statute:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether

[5] *See* March 1, 2005 PeopleSoft/JDE LLC OIC Asset Transfer Agreement between Oracle Corporation, Oracle International Corporation, PeopleSoft, Inc. and J.D. Edwards & Company, LLC (Lanier Decl. ¶ 21 (Ex. 3)).

[6] *See* March 1, 2005 OIC Asset Transfer Agreement by and among Oracle Corporation, Oracle International Corporation, PeopleSoft, Inc. and J.D. Edwards & Co., LLC, J.D. Edwards YOUCentric and J.D. Edwards World Source Company (Lanier Decl. ¶ 22 (Ex. 4)).

> published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).

The Ninth Circuit has adopted a two-part test to determine whether a state law claim is preempted by the Copyright Act. *See Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2006). First, a court "must determine whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *Id.* at 1137. Second, a court must determine whether the rights under the state law are "equivalent" to the rights under section 106 of the Copyright Act (i.e., the exclusive rights of reproduction, preparation of derivative works, distribution, and display). *Id.* at 1138; 17 U.S.C. § 106.

To survive preemption, a state law claim based on acts that would constitute copyright infringement "must protect rights which are *qualitatively different* from the copyright rights." *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987) (emphasis added). The state law claim must contain "an element not shared by the federal law . . . that changes the nature of the action." *Summit Machine Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1439-40 (9th Cir. 1993) (citations omitted). A court should perform more than a literal comparison of the elements required to prove a copyright cause of action and those required to prove the state law action; the court should conduct a fact-specific analysis of a plaintiff's claim to determine whether the "extra element" alleged "establish[es] *qualitatively different conduct* on the part of the infringing party." *Motown Record Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236, 1240 (C.D. Cal. 1987) (emphasis added); *Laws*, 448 F.3d at 1144 ("The mere presence of an additional element ('commercial use') . . . is not enough to qualitatively distinguish Laws's right of publicity claim from a claim in copyright."); *Del Madera Props.*, 820 F.2d at 977.

The Ninth Circuit has made clear that plaintiffs may not simply recast copyright claims as state law claims to circumvent the standing requirements of the Copyright Act; permitting litigation of these state claims "would defeat Congress' intent to have federal law occupy the

entire field of copyright." *Sybersound*, 517 F.3d at 1150-51. Plaintiffs' latest amendment shows how blatant, and misplaced, is Plaintiffs' attempt to circumvent the Copyright Act's standing requirement. Having realized that Oracle USA lacks standing to sue for copyright infringement, Plaintiffs have dropped Oracle USA as a copyright plaintiff. Yet, as a party to each of the remaining state law claims, Oracle USA asserts state law claims as the basis to recover for the same conduct on which Plaintiffs' copyright infringement claim is based. Such preempted claims should be dismissed.

**2. <u>Plaintiffs' Claims for Intentional and Negligent Interference with Prospective Economic Advantage Are Preempted</u>.**

Plaintiffs' fifth and sixth claims, for intentional and negligent interference with prospective economic advantage, are preempted by the Copyright Act. As numerous courts have found, interference claims based on what is really alleged copyright infringement address rights equivalent to those addressed by the Copyright Act and are preempted.

Under California law, a claim for intentional interference with prospective economic advantage requires a plaintiff to demonstrate: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts by the defendant designed to disrupt the relationship; (4) actual disruption of the relationship and (5) economic harm to the plaintiff proximately caused by the acts of defendant. *See Youst v. Longo*, 43 Cal. 3d 71 n.6 (1987). A claim for negligent interference with prospective economic advantage requires a plaintiff to demonstrate all elements of a claim for intentional interference with prospective economic advantage, and the plaintiff also must "allege defendant owed plaintiff a duty of care." *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 957 (N.D. Cal 2003) (citing *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803-04 (1979) (setting forth elements to determine when a duty of care is owed)).

In support of their interference claims, Plaintiffs allege that "Oracle has and had an expectancy in continuing advantageous economic relationships with current and prospective purchasers and licensees of Oracle's support services and software" and that Defendants'

purported "unlawful and wrongful conduct" interfered with its current and prospective customer relationships. D.I. 182 (TAC, ¶¶ 186-187, 196). In particular, Plaintiffs aver that Defendants disrupted Plaintiffs' ongoing and prospective customer relationships by marketing and providing support services for Oracle software, which were only possible as a result of an alleged "illegal" business model. *See* D.I. 182 (TAC, ¶ 188). As Plaintiffs allege, the "unlawful and wrongful" conduct on which the TN business model allegedly was based boils down to a series of alleged copyright infringements: (1) downloading (i.e., copying) Software and Support Materials from Customer Connection, (2) copying enterprise software applications and Software and Support Materials and (3) preparing derivative works based on these Software and Support Materials through the use of the enterprise software applications and Software and Support Materials.[7] D.I. 182 (TAC, ¶ 119 ("SAP TN's business processes rely on repeated copyright infringement . . .") and ¶ 156 (enumerating the bases for Plaintiffs' copyright cause of action)). In other words, the alleged "wrongful" acts are alleged acts of copyright infringement.

Plaintiffs' interference claims, therefore, are preempted by the Copyright Act. The district court for the Central District of California reached the same conclusion in an analogous case, *Idema v. Dreamworks*, 162 F. Supp. 2d 1129, 1193 (C.D. Cal. 2001). In that case, the court found that plaintiffs' claims for intentional and negligent interference with prospective economic advantage preempted by the Copyright Act where, as here, the plaintiffs' state law claims merely: (1) restated the conduct upon which the plaintiff's copyright claims were based and (2) alleged lost business resulting from the purported acts of infringement. *Id.* (dismissing with prejudice plaintiffs' claims for intentional and negligent interference with prospective economic advantage). In *Idema*, the plaintiffs alleged that the 1997 movie "The Peacemaker"

---

[7] Plaintiffs' allegations that Defendants impermissibly "used" Plaintiffs' software are simply allegations that Defendants impermissibly copied, reproduced, and prepared derivative works of Plaintiffs' software, and do not constitute an extra element above and beyond copyright infringement; indeed, Plaintiffs' allegations of "use" are used to support its copyright infringement claim. *See e.g.*, D.I. 182 (TAC, ¶156) ("Through the acts alleged above, Defendants have violated Oracle's exclusive right to reproduce and make copies of its copyrighted Software and Support Materials, including materials covered by the registrations listed above, by: . . . using these software copies for other improper business purposes, including, without limitation, training employees, troubleshooting, researching general and specific support issues, and marketing to prospective customers.")

was "based at least in part on the life story, and/or on several versions of a partly fictionalized story of the life of the lead Plaintiff, Idema, a former 'Green Beret.'" 162 F. Supp. 2d at 1133. The *Idema* plaintiffs alleged a number of claims, including not only copyright infringement, but also intentional and negligent interference with prospective economic advantage. *Id.* at 1137 n.11. Defendants moved to dismiss those claims as preempted by the Copyright Act. *Id.* at 1193. The Court found that

> the alleged "wrong" addressed by Plaintiffs' Ninth and Tenth Claims for Relief, for Intentional and Negligent Interference with Prospective Economic Advantage, is a "wrong" which is intended to be exclusively addressed by the federal Copyright Act: namely, the alleged encroachment on one's exclusive right to profit from sale or reproduction of one's original work(s) of authorship. The SAC claims that Defendants' alleged theft of Idema's Story "interfered with the prospective business relationship between plaintiffs" and unspecified potential contractors with whom Plaintiffs had "come close to closing deals" or had "prospective business relationships." [Citation omitted.] This claim does not protect any right "qualitatively different" from those rights protected by copyright.

*Id.* Finding that the claims for intentional and negligent interference with prospective advantage were merely a "restatement" of the claims for copyright infringement, the court dismissed the claims with prejudice as preempted. *Id.* Thus, where a plaintiff simply alleges conduct that infringes a copyright holder's exclusive rights (i.e., displaying, performing, reproducing, distributing, or preparing derivative works) and intrusion upon plaintiff's right to profit from those exclusive rights, the only remedy for such conduct is provided under the Copyright Act.

As in *Idema*, Plaintiffs' claims for interference with prospective economic advantage seek only to enforce Plaintiffs' asserted rights under the Copyright Act—namely, to prevent others from copying and distributing protected works, preparing derivative works, and profiting from these acts—and fail to allege any additional elements that would transform the actions into ones qualitatively different from Plaintiffs' copyright action. At bottom, Plaintiffs' interference claims merely seek to enforce Plaintiffs' claimed exclusive right to market, distribute, and profit from the copyrighted works and derivative works. As such, Plaintiffs' claims for interference with prospective economic advantage are preempted by the Copyright Act and should be dismissed. *See also Motown*, 657 F. Supp. at 1240 (finding plaintiffs failed to plead an "extra

element" to prevent preemption of its intentional and negligent interference with prospective economic advantage claims because plaintiffs' claims were based on defendants' alleged distribution of a derivative work that interfered with plaintiffs' ability to exploit the market for the copyrighted work and its derivatives); *Aagard v. Palomar Builders, Inc.*, 344 F. Supp. 2d 1211, 1219 (E.D. Cal. 2004) (finding plaintiffs' claim for intentional interference with prospective economic advantage preempted by Copyright Act where plaintiffs' interference claim was based on alleged "loss of business as a result of [Defendant's] sale of [Plaintiff's copyrighted] Plans").

Finding that the Copyright Act preempts Plaintiffs' claims for interference with prospective economic advantage is consistent with two recent decisions in this Circuit regarding Copyright Act preemption. In *Brackett v. Hilton Hotels Corp*, No. C 08-02100 WHA, 2008 WL 2632675, at *1 (N.D. Cal. June 30, 2008), the plaintiff alleged that the value of her artwork included the fact that she sold prints in only limited quantities. Thus, when defendants impermissibly mass-produced her limited edition print for use in hotel rooms across the country, the Court found that plaintiff had alleged an "extra element" beyond mere copyright infringement because she had alleged that her customers who had previously bought a "limited edition" print had suffered a diminution in value of that print—a harm not otherwise redressed by the Copyright Act. *Id.* at *9. Accordingly, the Court denied defendant's motion to dismiss plaintiff's state law tortious interference claims on the ground that plaintiff had alleged an "extra element" by claiming diminished value of artwork previously sold. *Id.* By contrast, Plaintiffs in this case do not seek through their claims of interference with prospective economic relations redress of an "extra element" of harm not addressed by the Copyright Act. Rather, Plaintiffs only seek relief for alleged lost business and profits *as a result of the copying and distribution of copyrighted materials,* or purported copyright infringement—relief provided exclusively under the Copyright Act.

Similarly, in *Altera Corp. v. Clear Logic, Inc*, 424 F.3d 1079, 1089-90 (9th Cir. 2005), the Ninth Circuit held that a tortious interference claim was not preempted by the Copyright Act because it contained an "extra element" beyond alleged copyright infringement. In *Altera*, the

plaintiff alleged damage resulting from defendant's impermissible use of the output of plaintiff's copyrighted software to create defendant's product. *Id.* at 1089. Because the right at issue in *Altera* was "not the reproduction of the software . . . but is more appropriately characterized as the use of the bitstream," which the court noted was "not within the rights protected by the federal Copyright Act," the court found that the plaintiff had alleged an additional element that prevented preemption by the Copyright Act. *Id.* at 1089-90. Because the plaintiff sought protection of a use of the copyrighted product not otherwise protected by the Copyright Act, the court denied defendant's motion to dismiss on the basis of preemption.

Unlike the *Altera* plaintiff, Plaintiffs do not seek redress for conduct not otherwise addressed by the Copyright Act. Plaintiffs' interference claims, including their allegations of improper "use," seek only protection of Plaintiffs' alleged exclusive rights under the Copyright Act to copy, distribute, prepare derivative works of, and profit from copyrighted works. Thus, Plaintiffs' claims for intentional and negligent interference with prospective economic advantage are preempted by the Copyright Act and should be dismissed.

### 3. <u>Plaintiffs' Breach of Contract Claim Is Preempted</u>.

Plaintiffs' fourth cause of action for breach of contract is also preempted by the Copyright Act. Specifically, to the extent that Plaintiffs' breach of contract claim seeks to enforce rights related to alleged "use" of Software and Support Materials available through Customer Connection, Plaintiffs' breach of contract claim restates their copyright infringement allegations and is preempted by the Copyright Act. In the TAC, Plaintiffs allege that Defendants' purported breaches of contract consist of:

- **Accessing or using portions of the Software and Support Materials**, not expressly licensed to and/or paid for by Defendants or the customers in whose name Defendants accessed Customer Connection and took the Software and Support Materials . . . . ;
- **Using the Software and Support Materials** other than in support of a customer's authorized use of Oracle software for which a customer holds a supported license from Oracle;
- **Using the Software and Support Materials** without a legitimate business purpose; and

- **Using the Software and Support Materials** in ways other than the furtherance of a relationship with Oracle.

D.I. 182 (TAC, ¶ 183) (emphasis added).

This Court has held that where, as here, "a plaintiff's breach of contract claim only asserts that a defendant violated a promise not to use a certain work, that breach of contract claim is preempted." *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1126 (N.D. Cal. 2001) (Breyer, J.) (finding that plaintiff's breach of contract claim only survived preemption because plaintiff alleged an extra element above and beyond a copyright claim—a promise to pay); *see also Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1061-62 (C.D. Cal. 2000) (finding that a breach of contract claim premised on a promise not the use the ideas contained in plaintiff's copyrighted work "does not prohibit any conduct beyond that prohibited by the Copyright Act" and is preempted by the Act). Plaintiffs have not alleged that Defendants violated any promise over and above a promise not to use the works asserted, such as a promise to pay for use of those works; for this reason, Plaintiffs' breach of contract claim is therefore equivalent to their copyright infringement claims and is preempted by the Copyright Act. Thus, to the extent that Plaintiffs' breach of contract claims are based on allegations that Defendants' impermissibly used Plaintiffs' copyrighted material, this Court should dismiss Plaintiffs' breach of contract action.

### 4. <u>Plaintiffs' Claims for Unfair Competition Are Preempted</u>.

Plaintiffs' seventh cause of action for unfair competition under California Business & Profession Code section 17200 is preempted under the Copyright Act. California's statutory unfair competition law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Plaintiffs allege that Defendants violated California's unfair competition law by providing support services for Oracle software pursuant to a purportedly illegal business model consisting of "computer fraud, trespass, breach of contract, interference with business relationships and other illegal acts and practices as alleged above." D.I. 182 (TAC, ¶¶ 205-206). Plaintiffs allege that, in this way, "Defendants have improperly and unlawfully taken commercial advantage of Oracle's investment in its confidential, proprietary, and

copyrighted Software and Support Materials and underlying software applications." D.I. 182 (TAC, ¶ 209). As discussed *supra*, Plaintiffs' complaints about the TN business model boil down to a series of alleged copyright infringements, including downloading, copying, and preparing derivative works based on Plaintiffs' Software and Support Materials. Similarly, Plaintiffs' interference claims and breach of contract claims merely seek to enforce Plaintiffs' claimed exclusive rights under the Copyright Act to market, distribute, and profit from the copyrighted works and derivative works.

The Ninth Circuit has made clear that where, as here, a plaintiff's section 17200 claims are based on rights equivalent to those protected by the Copyright Act, those claims are preempted. *See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir. 1998). In *Kodadek*, the plaintiff alleged that he had created the characters "Beavis and Butthead" and had shown drawings of those characters to the defendants. *Id.* at 1210. When, years later, plaintiff saw the characters on television, he sued defendants for copyright infringement and unfair competition. *See id.* In support of his claim for unfair competition, plaintiff alleged that defendants had "'publish[ed] and plac[ed] on the market for sale products bearing the images subject to the copyright ownership of the plaintiff.'" *Id.* at 1212 (quoting plaintiff's complaint). In light of these allegations, the court held that plaintiff's unfair competition claim was "based solely on rights equivalent to those protected by the federal copyright laws," and therefore was preempted. *Id.* at 1213.

The same result should apply here. To the extent that Plaintiffs' unfair competition claim is based on alleged copyright infringement, it is preempted and should be dismissed.[8] *See Sybersound*, 517 F.3d at 1152 (upholding district court's dismissal of unfair competition claim as preempted "[t]o the extent the improper business act complained of is based on copyright

[8] To the extent that Plaintiffs' unfair competition claims are based on a theory of misappropriation, such claims are preempted by the Copyright Act as well. *See Del Madera Props.*, 820 F.2d at 977 (holding that unfair competition claims based on "the alleged misappropriation of time and effort in creating" copyrighted material are "part and parcel of the copyright claim" and are preempted by the Copyright Act); *Summit*, 7 F.3d at 1441 (finding that unfair competition claims based on allegations that defendant "misappropriated the time and effort expended in the development and production of its *idea*" for copyrighted material are preempted by the Copyright Act) (emphasis in original).

infringement); *Penpower Tech. Ltd. v. S.P.C. Tech.*, No. 07-3621 SC, 2008 WL 248486, at *5-*6 (N.D. Cal. June 17, 2008) (relying on *Kodadek* to hold that plaintiffs' unfair competition claim based on sale of infringing software was preempted by the Copyright Act).

### 5. **Plaintiffs' Claims for an Accounting Are Preempted.**

Plaintiffs' tenth cause of action for an accounting is preempted by the Copyright Act to the extent that it seeks to enforce rights equivalent to those protected by the Copyright Act. According to the TAC, Plaintiffs' claim for an accounting is based on alleged "unlawful conduct," including:

> (b) Intentionally and/or negligently interfering with Oracle's prospective economic advantage with its existing and potential customers;
>
> (c) Improperly, willfully, and unlawfully taking commercial advantage of Oracle's investment in its Software and Support Materials, for the purpose of sabotaging Oracle's ability to do business and compete in the market . . . .

D.I. 182 (TAC, ¶ 223). As discussed *supra*, Plaintiffs' intentional and negligent interference with prospective economic advantage claims, which are the basis of the claim for an accounting, merely restate Plaintiffs' claims for copyright infringement. Similarly, in alleging that Defendants took "commercial advantage of Oracle's investment in its Software and Support Materials," Plaintiffs have done no more than describe conduct that infringes a copyright holder's right to profit from the exclusive rights set forth under the Copyright Act—the remedy for which is provided under the Copyright Act.[9] *See Idema*, 162 F. Supp. 2d at 1133.

Where, as here, the facts alleged in support of a claim for an accounting "are rooted primarily on contentions that defendants infringed on plaintiffs' copyrighted work," that claim is

---

[9] Plaintiffs' allegations that Defendants' conduct was "for the purpose of sabotaging Oracle's ability to do business and compete in the market" do not present an "extra element" that prevents federal preemption. *See Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816, 822 (C.D. Cal. 1997) (finding the plaintiffs' allegations of intent and scienter to support its intentional interference with prospective economic advantage claim could not save the claim from preemption by the Copyright Act, as intent does not qualify as an "extra element" for preemption purposes) (citing Nimmer on Copyright § 1.01[B][1][g] 1-14); *Motown*, 657 F. Supp. at 1240 (finding plaintiffs' claims for intentional interference with prospective economic advantage preempted because "the fact that cross-appellants pleaded additional elements of awareness and intentional interference . . . goes merely to the scope of the right; it does not establish qualitatively different conduct on the part of the infringement party, nor a fundamental nonequivalence between the state and the federal rights implicated").

preempted and should be dismissed. *Motown*, 657 F. Supp. at 1241 (dismissing plaintiffs' claim for an accounting as preempted because claim was "equivalent to rights and remedies provided for under the copyright statute"); *Falcon Enters. v. Nobel Devs., Inc.*, No. CV06-1404 (RSL), 2007 U.S. Dist. LEXIS 15809, at *9 (W.D. Wash. Mar. 5, 2007) (citing *Motown* in dismissing plaintiffs' claim for an accounting as preempted). Thus, Plaintiffs' claims for an accounting should be dismissed as preempted to the extent that they rely on allegations that Defendants' committed copyright infringement.

#### 6. **<u>To the Extent Plaintiffs' Claims Are Preempted, the Court Should Dismiss Those Claims Without Leave to Amend</u>.**

When a court dismisses a claim as preempted, the dismissal should be without leave to amend because amendment would be futile. *See Idema*, 162 F. Supp. 2d at 1193 (dismissing plaintiffs' intentional and negligent interference with prospective economic advantage claims as preempted with prejudice); *Thomas v. Walt Disney Co.*, No. C-07-4392 CW, 2008 U.S. Dist. LEXIS 14643 , at *25-*26 (N.D. Cal. Feb. 14, 2008) (dismissing plaintiffs' unfair competition claims as preempted without leave to amend because amendment would be futile). Thus, to the extent that Plaintiffs' claims for intentional and negligent interference with prospective economic advantage, breach of contract, unjust enrichment, and an accounting are preempted by the Copyright Act, this Court should dismiss those claims without leave to amend.

### C. Plaintiffs' Claims for Breach of Contract Should Be Dismissed Because Defendants Are Not Parties to the Alleged Contracts

Alternatively, breach of contract claims should be dismissed in their entirety because Defendants are not parties to the alleged contracts. To establish breach of contract, a plaintiff must prove: (1) a contract between the parties, (2) that the plaintiff performed his contractual duties or was excused from performing them, (3) that the defendant failed to perform its contractual duties, and (4) that the breach caused the plaintiff damages. *See EPIS, Inc. v. Fidelity & Guaranty Life Ins. Co.*, 156 F. Supp. 2d 1116, 1124 (N.D. Cal. 2001) (citing *Reichert v. General Ins. Co. of America*, 68 Cal. 2d 822, 830 (1968)). A contract is formed "when a specific offer is communicated to the offeree, and an acceptance is subsequently communicated to the

offeror." *Netbula, LLC v. Bindview Dev. Corp.*, 516 F. Supp. 2d 1137, 1156 (N.D. Cal. 2007). Only the particular person to whom an offer is made can accept that offer. *See Estate of Watts v. Dickerson*, 162 Cal. App. 3d 1160, 1164 (1984) (citing 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 121, at p. 122). Where a general offer is made to a particular class of persons, that offer may be accepted by anyone of the class described. *See Plummer v. Ehlers*, 50 Cal. App. 2d 352, 355 (1942). However, "it is hornbook law even in the realm of bilateral contracts that a revocable offer cannot be accepted by anyone other than the offeree." *Ott v. Home Savings & Loan Ass'n.*, 265 F.2d 643, 646 (9th Cir. 1958) (finding that no valid contract had been formed when plaintiff attempted to accept an offer made to another by sending a letter indicating acceptance); *Plummer*, 50 Cal. App. 2d at 355 (finding that no valid contract had been formed when plaintiff attempted to accept an offer made to a class of persons to which he did not belong).

Plaintiffs allege that "Defendants have breached the Customer Connection Terms of Use, the Special Terms of Use, the SAR legal restrictions and/or the Legal Download Agreement." D.I. 182 (TAC, ¶ 183). As described in the TAC, each of these agreements constitutes a clickwrap agreement that governs access to Plaintiffs' websites. *See* D.I. 182 (TAC, ¶¶ 54-60). Plaintiffs further allege that Defendants agreed to be bound by each of the four asserted contracts "when the Defendants accessed or downloaded Software and Support Materials from Customer Connection." D.I. 182 (TAC, ¶181). However, this statement is belied by the content of the contracts themselves. Although the TAC extensively quotes from the four asserted contracts, it omits critical language from the contracts revealing that only customers with agreements with an Oracle entity are contemplated as parties to the contract—that is, that the four agreements are offers only to customers.[10] *See* D.I. 182 (TAC, ¶¶ 54-60).

For example, the "Customer Connection Terms of Use" explicitly identifies the party to whom the agreement is directed as "Customer." Lanier Decl. ¶ 23 (Ex. 5) ("By using the Oracle Customer Connection Web-based technical support service . . . ***Customer*** (hereinafter, "you") agree to the following terms and conditions . . . ") (emphasis added). Further, the "Special

[10] For the reasons described in footnote 5, *supra*, Defendants are entitled to attach these agreements to the instant motion to dismiss because these agreements are incorporated by reference, through extensive quoting, into the complaint.

Terms of Use," "SAR legal restrictions," and "Legal Download Agreement" each reveal that the intended offerees are customers by referring to the offeree's separate agreements with an Oracle entity. *See* "Special Terms of Use," Lanier Decl. ¶ 24 (Ex. 6) ("Your access to a Secured Website is permitted via your personal username and password and ***your use is governed under a separate agreement between you and your employer and PeopleSoft***") (emphasis added); "SAR legal restrictions," Lanier Decl. ¶ 25 (Ex. 7) ("All use and distribution of the Software is governed by the terms of ***the software license agreement that is in effect between you and PeopleSoft***") (emphasis added); "Legal Download Agreement," Lanier Decl. ¶ 26 (Ex. 8) ("Your username and password are provided to you for your sole use in accessing this Server and are confidential information subject to ***your existing confidentiality agreement with Oracle | PeopleSoft***") (emphasis added).

Because Plaintiffs have not alleged that Defendants are customers to whom the offers set forth in each agreement are extended (indeed, Plaintiffs emphatically allege in the TAC that Defendants are not customers), Defendants cannot have manifested acceptance that gives rise to a valid contract between Plaintiffs and Defendants. As a result, based on the facts as pled in the TAC, Defendants are not parties to the asserted agreements, and Plaintiffs cannot sustain a breach of contract claim against Defendants.[11] Therefore, Plaintiffs' claims for breach of contract should be dismissed. Because amendment of Plaintiffs' claim to allege that Defendants are parties to the asserted contracts would contradict Plaintiffs' current allegations, such amendment is futile. Thus, this Court's dismissal of Plaintiff' breach of contract claims should be without leave to amend.

### D. Plaintiffs' Claims for Unjust Enrichment Should Be Dismissed Without Leave to Amend

Plaintiffs' claims for unjust enrichment should be dismissed because California law does not provide a cause of action for unjust enrichment. Unjust enrichment is a theory of recovery in quasi-contract, in which a plaintiff contends that a defendant obtained a benefit to which the

[11] The fact that TN was acting on behalf of Oracle customers in accessing Plaintiffs' websites does not eliminate the requirement that Defendants be parties to the asserted contracts for these contracts to be enforced against Defendants.

defendant was not entitled. *See Paracor Fin. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *see also Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) (recognizing that "there is no cause of action in California for unjust enrichment" and that unjust enrichment merely describes a theory of recovery). Because Plaintiffs' claim for unjust enrichment is not legally cognizable, it should be dismissed without leave to amend.

## VI. CONCLUSION

For all the foregoing reasons, Plaintiffs' Third Amended Complaint should be dismissed. Specifically: (1) the copyright claims of OSC and JDEE should be dismissed because OSC lacks standing to sue for copyright infringement, and this Court lacks subject matter jurisdiction over JDEE's claims of extraterritorial copyright infringement; (2) Plaintiffs' claims for intentional and negligent interference with prospective economic advantage should be dismissed as preempted by the Copyright Act; (3) Plaintiffs' claims for breach of contract, unfair competition, and an accounting should be dismissed to the extent they are preempted by the Copyright Act; (4) Plaintiffs' breach of contract claims should be dismissed in their entirety because Plaintiffs have failed to properly plead, as required, that Defendants are parties to the asserted contracts; and (5) Plaintiffs' claim for unjust enrichment should be dismissed in its entirety because unjust enrichment is not a cause of action under California law. Because any attempt to amend these claims would be futile, dismissal of these claims should be without leave to amend.

Dated: October 15, 2008

JONES DAY

By: /s/ Tharan Gregory Lanier
Tharan Gregory Lanier

Counsel for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.