Walsh v. Apple, Inc. et al
Doc. 197 Att. 1

# EXHIBIT 2

Dockets.Justia.com

## ORACLE/OZARK

## CONTRIBUTION, ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ORACLE/OZARK CONTRIBUTION, ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Agreement") is made and entered into as of January 31, 2006 (the "Effective Date"), by and between Oracle Corporation, a Delaware corporation ("Oracle"), and Ozark Holding Inc., a Delaware corporation and wholly-owned subsidiary of Oracle ("Ozark").

## RECITALS

WHEREAS, each of Oracle and Ozark has determined that it is desirable and in the best interest of said entities and its stockholders to reorganize the corporate organizational structure (the "Reorganization") in connection with the contemplated acquisition of Siebel Systems, Inc.;

WHEREAS, in connection with the Reorganization, Oracle desires to contribute to Ozark certain of Oracle's assets, and Ozark desires to assume all of Oracle's obligations with respect to such assets, as more fully described below;

WHEREAS, this Agreement is intended to effect the transfer of the Assets by Oracle to Ozark, and the assumption by Ozark of the Liabilities, in each case with an effective time as of 4:57 p.m. Pacific Standard Time on the Effective Date (the "Effective Time"); and

WHEREAS, after the Effective Time on the Effective Date, Oracle will change its name to "Oracle Systems Corporation" and Ozark will change its name to "Oracle Corporation":

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements set forth below, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereby agree as follows:

## ARTICLE 1
## ASSETS AND LIABILITIES

Section 1.1 Assigned Assets. For purposes of this Agreement, "Assigned Assets" mean the following:

(a) All pre-paid or deferred corporate tax assets;

(b) All indemnification agreements between Oracle, on the one hand, and any director, officer or employee of Oracle or any of Oracle's wholly-owned and majority-owned subsidiaries, on the other;

(c) All assets under each employee benefit or stock compensation plan of Oracle as to which Oracle has been designated or identified, as the plan sponsor, including agreements between Oracle and its employees relating thereto, other than all assets (i) under any stock compensation plans with respect to Oracle's Sub-Plan for Option Grants to French Employees (2002) under Oracle's Amended and Restated 2000 Long-Term Equity Incentive Plan (the "French Plan") and (ii) with respect to tax qualified stock options granted to employees of Oracle's subsidiaries in Italy (the "Tax Qualified Italian Options");



Highly Confidential Information - Attorneys' Eyes Only ORCL00182293

(d) All permits, licenses, consents, approvals, franchises, certificates of inspection or authority, authorizations and orders, and any waiver of the foregoing, issued by any legislative, executive or judicial unit of any governmental entity (foreign, federal, state or local) or any department, commission, board, agency, bureau, official or other regulatory, administrative or judicial authority thereof;

(e) All rights, claims or causes of action of Oracle against third parties to the extent arising out of the Assigned Assets or the Assumed Liabilities; and

(f) All assets, properties and rights, including any contracts, agreements, permits or licenses, to the extent related to the Assigned Assets or the Assumed Liabilities (as defined below) or otherwise required for the operation of Ozark's retained business, its activities as a publicly-traded company, its activities as a parent company of a multinational group of companies or its compliance with applicable regulatory requirements.

Section 1.2 Excluded Assets. For purposes of this Agreement, "Excluded Assets" means all of the assets, properties and rights of Oracle, wherever located (including in the possession of vendors, third parties or elsewhere), whether real, personal or mixed, tangible, intangible or contingent including, without limitation, those assets identified or described in clauses (a) through (l) below, but excluding such assets, properties and rights that are identified or described as "Assigned Assets" in Section 1.1:

(a) All cash and cash equivalents of Oracle (including any marketable securities or certificates of deposit), including those deposited in escrow accounts in connection with the acquisition of companies and assets by Oracle or its subsidiaries, including, without limitation, those accounts set forth on Schedule I attached hereto;

(b) All California and other real property and interests in California real property owned by Oracle, including all land, buildings and lease improvements of any kind or nature situated thereon, together with all easements, appurtenances, leases, tenancies, options, rights-of-way and other real property rights and interests relating thereto;

(c) All of the rights, title and interest in, to and under each of the following agreements, including any amendments or extensions thereto: (i) that certain Technology License Contract dated June 1, 1999 between Oracle and Beijing Oracle Software Systems Limited, a company organized under the laws of the Peoples Republic of China ("Oracle China"); (ii) that certain Note Pledge and Security Agreement dated June 15, 2002 between Oracle and Oracle China; (iii) that certain Grid Note dated June 30, 2003 between Oracle and Oracle China; (iv) that certain Promissory Note dated June 30, 2003 between Oracle and Oracle China;

(d) That certain Master Services Agreement dated June 1, 2003 and that certain Master Cost Allocation Agreement dated June 1, 2003, including any amendments or extensions thereto, among Oracle and certain of its subsidiaries;

(e) That certain forward contract between Oracle and Bank of America dated February 28, 2005, with notional amount of Yen 66,000,000,000, including any amendments or extensions thereto;

(f) That certain interest rate swap confirmation agreement between Oracle and Citibank, N.A., dated February 19, 2002, including any amendments or extensions thereto;

(g) All assets (i) under any stock compensation plans with respect to the French Plan and (ii) with respect to the Tax Qualified Italian Options;

(h) All deferred and prepaid charges, recoverable deposits, advances, expenses, sums and fees of Oracle arising from payments made prior to the Effective Date for goods or services where such goods or services have not been received as of the Effective Date;

(i) All equity, joint venture or similar interests held beneficially or of record by Oracle in its subsidiaries or other entities;

(j) All policies of insurance and any proceeds or return of premiums thereunder;

(k) All goodwill; and

(l) The corporate charter, seal, minute books, stock record books and other similar documents relating to the organization, maintenance and existence of Oracle.

Section 1.3 Assumed Liabilities. For purposes of this Agreement, "Assumed Liabilities" means the following:

(a) All accounts payable and accrued payment obligations of Oracle to the extent relating to or arising out of the Assigned Assets;

(b) All obligations and liabilities relating to or arising out of the Assigned Assets, including any obligations and liabilities under any of Oracle's employee benefit and stock compensation plans, other than the French Plan and other than with respect to the Tax Qualified Italian Options;

(c) All obligations of Oracle under all guarantees made by Oracle of any indebtedness of an affiliate or subsidiary of Oracle to a third party; and

(d) All current or deferred corporate tax liabilities of Oracle.

Section 1.4 Excluded Liabilities. For the purposes of this Agreement, "Excluded Liabilities" means Oracle's debts, liabilities, guarantees, assurances, commitments and obligations of any nature or description, whether fixed, contingent or absolute, asserted or unasserted, matured or unmatured, liquidated or unliquidated, accrued or not accrued, known or unknown, due or to become due, whenever or however arising, and whether or not the same would be required by U.S. generally accepted accounting principles to be reflected in financial statements or disclosed in the notes thereto, in each case to the extent arising out of or relating to the Excluded Assets, including, without limitation, the Excluded Liabilities identified or described in clauses (a) through (c) below, in each case whether such Excluded Liabilities arise or accrue prior to, on or after the Effective Date, but excluding such debts, liabilities, guarantees, assurances, commitments and obligations that are identified or described as "Assumed Liabilities" in Section 1.3:

(a) All obligations with respect to Excluded Assets;

(b) All notes payable to any third parties; and

(c) All obligations under the $150,000,000 6.91% Senior Notes due 2007 issued by Oracle on February 24, 1997, and any related interest rate swap agreements or other related financial



Highly Confidential Information - Attorneys' Eyes Only ORCL00182295

derivative contracts, including that certain interest rate swap confirmation agreement with Citibank, N.A., dated February 19, 2002 and any amendments or extensions thereto.

## ARTICLE 2
## CONTRIBUTION, ASSIGNMENT AND ASSUMPTION

Section 2.1 Contribution of Assigned Assets. Oracle hereby contributes, assigns, transfers and conveys to Ozark, and Ozark hereby receives and accepts from Oracle, all of Oracle's right, title and interest in and to the Assigned Assets with effect as of the Effective Time. The parties acknowledge and agree that the Excluded Assets will be excluded from the transfer of the Assigned Assets hereunder.

Section 2.2 Assumption of Assumed Liabilities. Ozark hereby assumes the Assumed Liabilities with effect as of the Effective Time and agrees to pay, perform, satisfy and discharge the Assumed Liabilities in accordance with their respective terms. The parties acknowledge and agree that the Excluded Liabilities will be excluded from the assumption of the Assumed Liabilities hereunder.

Section 2.3 Deliveries. In furtherance of the transactions contemplated by Sections 2.1 and 2.2, the parties agree to execute and deliver, and they will cause their respective subsidiaries to execute and deliver (a) such bills of sale, stock powers, certificates of title, assignments of contracts, subleases and other instruments of transfer, conveyance and assignment as, and to the extent, necessary or convenient to evidence the transfer, conveyance and assignment by Oracle to Ozark of all of Oracle's right, title and interest in and to the Assigned Assets, and (b) such assumptions of contracts and other instruments of assumption as, and to the extent, necessary or convenient to evidence the valid and effective assumption of the Assumed Liabilities by Ozark. The parties contemplate that they may enter into one or more additional instruments of transfer with respect to some of the Assigned Assets to be transferred from Oracle to Ozark to the extent necessary or convenient to comply with local legal or filing requirements; provided, however, that such additional instruments of transfer will not enhance, decrease or modify any of the rights or obligations of the parties from those contained in this Agreement.

Section 2.4 No Representations or Warranties. Ozark acknowledges and agrees that (a) Oracle is not making any representations or warranties, express or implied, as to the condition, quality, merchantability or fitness of any Assigned Asset transferred pursuant to this Agreement or otherwise, (b) all such Assigned Assets are being transferred on an "as is," "where is" basis (and in the case of any real property, by means of a quitclaim or similar form deed or conveyance), and (c) Ozark will bear the economic and legal risks that any conveyance will prove to be insufficient to vest in it good and marketable title to the Assigned Assets, free and clear of any security interest, pledge, lien, charge, claim or other encumbrance of any nature whatsoever.

Section 2.5 Transfers Not Effected as of the Effective Time.

(a) The parties acknowledge and agree that some of the transfers contemplated by this Agreement may not be effected as of the Effective Time due to the inability of the parties to obtain necessary consents or approvals or the inability of the parties to take certain other actions necessary to effect such transfers. To the extent any transfers contemplated by this Agreement have not been fully effected as of the Effective Time, Oracle and Ozark will cooperate and use commercially reasonable efforts to obtain any necessary consents or approvals or take any other actions necessary to effect such transfers as promptly as practicable following the Effective Time.

(b) Notwithstanding anything to the contrary in this Agreement, this Agreement will not effect the transfer or assignment of any Contract or other Assigned Asset by Oracle to Ozark to the



Highly Confidential Information - Attorneys' Eyes Only ORCL00182296

extent that such transfer or assignment would constitute a material breach of such Contract, a violation of applicable law, or cause forfeiture or loss of such Asset.

(c) If an attempted assignment would be ineffective or would impair Ozark's rights under any such Assigned Asset so that Ozark would not receive all such rights, then the parties will use commercially reasonable efforts to provide to, or cause to be provided to, Ozark, to the extent permitted by law, the rights of any such Assigned Asset and take such other actions as may reasonably be requested by the other party in order to place Ozark, insofar as reasonably possible, in the same position as if such Assigned Asset had been transferred as contemplated hereby. In connection therewith, (a) Oracle will promptly transfer to Ozark when received all benefits derived by Oracle with respect to any such Assigned Asset, and (b) Ozark will pay, perform and discharge on behalf of Oracle all of Oracle's obligations with respect to any such Assigned Asset in a timely manner and in accordance with the terms thereof which it may do without breach. If and when such consents or approvals are obtained or such other required actions have been taken, the transfer of the applicable Assigned Asset will be effected in accordance with the terms of this Agreement.

Section 2.6 Mistaken Assignments and Assumptions. From time to time after the Effective Date either party may discover (a) Assigned Assets that, contrary to the intent of this Agreement, by mistake or omission, were transferred to Ozark or retained by Oracle and/or (b) Assumed Liabilities that, contrary to the intent of this Agreement, by mistake or omission, were assumed or were not assumed, as the case may be, by Ozark. The parties will cooperate in good faith to effect the transfer or re-transfer of such Assigned Assets, and/or the assumption or re-assumption of such Assumed Liabilities, to or by the appropriate party, provided that this Section 2.6 will not alter the original intent of the parties as evidenced by this Agreement with respect to the Assigned Assets to be transferred to, or Assumed Liabilities to be assumed by, Ozark. Each party will reimburse the other or make such financial or other adjustments, if any, necessary to remedy any mistakes or omissions relating to any of the Assigned Assets transferred or any Assumed Liabilities assumed pursuant to this Section 2.6.

## ARTICLE 3
## MISCELLANEOUS

Section 3.1 Further Assurances. The parties hereto will each perform such acts, execute and deliver such instruments and documents, and do all such other things as may be reasonably necessary to accomplish the transactions contemplated in this Agreement. Except as otherwise expressly provided in this Agreement, Oracle will not be obligated to incur any out-of-pocket costs, expenses and fees in connection with its obligations under this Section 3.1, including, without limitation, any attorneys' fees, recording, assignment or other similar fees.

Section 3.2 Governing Law. The internal laws of the State of California (without reference to its principles of conflicts of law) govern the construction, interpretation and other matters arising out of or in connection with this Agreement (whether arising in contract, tort, equity or otherwise).

Section 3.3 Severability. If any provision of this Agreement is determined to be invalid, illegal or unenforceable, the remaining provisions of this Agreement remain in full force, if the essential terms and conditions of this Agreement for each party remain valid, binding and enforceable.

Section 3.4 Entire Agreement. This Agreement constitutes the final agreement between the parties with respect to the subject matter contained herein, and is the complete and exclusive statement of the parties' agreement on the matters contained herein. All prior and contemporaneous negotiations and agreements between the parties with respect to the matters contained herein are superseded by this Agreement.



Highly Confidential Information - Attorneys' Eyes Only ORCL00182297

Section 3.5 Third Party Beneficiaries. Nothing in this Agreement is intended, nor shall it be constructed, to confer any rights or benefits upon any person (including, but not limited to, any employee or former employee of any party hereto) other than the parties hereto.

Section 3.6 Successors and Assigns. This Agreement shall be binding upon and inure to the parties hereto and their respective successors and assigns, provided, however, that no party hereto will assign its rights or delegate its obligations under this Agreement without the express written consent of the other parties hereto.

Section 3.7 Amendment. No change, modification or amendment of this Agreement shall be valid or binding on the parties unless such change or modification shall be in writing signed by the party or parties against whom the same is sought to be enforced.

Section 3.8 Counterparts. The parties may execute this Agreement in multiple counterparts, each of which constitutes an original as against the party that signed it, and all of which together constitute one agreement. The signatures of both parties need not appear on the same counterpart. The delivery of signed counterparts by facsimile or email transmission that includes a copy of the sending party's signature is as effective as signing and delivering the counterpart in person.

[This space intentionally left blank]



Highly Confidential Information - Attorneys' Eyes Only

ORCL00182298

IN WITNESS WHEREOF, each of the parties has caused this Oracle/Ozark Contribution, Assignment and Assumption Agreement to be executed on its behalf by a duly authorized officer on the date first set forth above.

| "Oracle" | "Ozark" |
|---|---|
| ORACLE CORPORATION, a Delaware corporation | OZARK HOLDING INC., a Delaware corporation |
| By: [signature] | By: ______________________ |
| Name: Daniel Cooperman | Name: Deborah Lange |
| Title: Senior Vice President, General Counsel & General Counsel | Title: Senior Vice President |

[Signature page for Oracle/Ozark Contribution, Assignment and Assumption Agreement]



Highly Confidential Information - Attorneys' Eyes Only

IN WITNESS WHEREOF, each of the parties has caused this Oracle/Ozark Contribution, Assignment and Assumption Agreement to be executed on its behalf by a duly authorized officer on the date first set forth above.

**"Oracle"**

ORACLE CORPORATION, a Delaware corporation

By: ____________________________

Name: Daniel Cooperman

Title: Senior Vice President, General Counsel & General Counsel

**"Ozark"**

OZARK HOLDING INC., a Delaware corporation

By: [signature]

Name: Deborah Lange

Title: Senior Vice President

[Signature page for Oracle/Ozark Contribution, Assignment and Assumption Agreement]



Highly Confidential Information - Attorneys' Eyes Only

## SCHEDULE I

| ORACLE ACTIVE ACCOUNTS | A/C |
|---|---|
| ORACLE/360 Commerce Escrow | 18836300 |
| ORACLE/360 Commerce Paying Agent | 18863400 |
| ORACLE/Profitlogic Escrow | 18207200 |
| ORACLE/Profitlogic Paying Agent | 18204900 |
| ORACLE/Profitlogic Holder Rep Fund | 18207201 |
| ORACLE/WWW Sistemas Escrow | 16258400 |
| ORACLE/Global Logistics Escrow | 15006200 |
| ORACLE/Global Logistics Paying Agent | 15006300 |
| ORACLE/Thor Techologies Escrow | 18635700 |
| ORACLE/Thor Techologies Paying Agent | 18635100 |
| ORACLE/Thor Techologies Custody Agent | 18638400 |
| ORACLE/OBLIX Escrow | 17439900 |
| ORACLE/TIMESTEN Escrow | 18035000 |
| ORACLE/TIMESTEN Paying Agent | 18035100 |
| ORACLE/TRIPLEHOP Escrow | 18027000 |
| ORACLE/WebGain Escrow | 12559300 |
| PEOPLESOFT/ISTANTE Escrow | 16808100 |
| PEOPLESOFT/ISTANTE Paying Agent | 16808101 |



Highly Confidential Information - Attorneys' Eyes Only ORCL00182301