Walsh v. Apple, Inc. et al Doc. 201

BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corp., Oracle Systems Corp., Oracle EMEA Ltd., and J.D. Edwards Europe Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE USA, INC., a Colorado corporation, ORACLE INTERNATIONAL CORPORATION, a California corporation, ORACLE SYSTEMS CORPORATION, a Delaware corporation, ORACLE EMEA LIMITED, an Irish private limited company, and J.D. EDWARDS EUROPE LIMITED, an Irish private limited company,

Plaintiffs,

v.

SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,

Defendants.

CASE NO. 07-CV-01658 PJH (EDL)

**ORACLE'S OPPOSITION TO DEFENDANTS' FRCP 12(B)(1) AND 12(B)(6) MOTION TO DISMISS PLAINTIFFS' CLAIMS FOR COPYRIGHT INFRINGEMENT, INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, BREACH OF CONTRACT, UNFAIR COMPETITION, AN ACCOUNTING AND UNJUST ENRICHMENT**

Date: November 19, 2008
Place: Courtroom 3, 17th Floor
Judge: Hon. Phyllis J. Hamilton



Dockets.Justia.com

TABLE OF CONTENTS


Page

I. PRELIMINARY STATEMENT ..... 1
II. STATEMENT OF ISSUES ..... 2
III. STANDARD ON MOTION TO DISMISS AND FOR LEAVE TO AMEND ..... 3
IV. JDEE IS A PROPER COPYRIGHT PLAINTIFF ..... 3
- A. Extraterritoriality Is Not A Jurisdictional Issue ..... 3
- B. JDEE's Claim Succeeds Based On Domestic Conduct ..... 4
- C. Additional Evidence Proves SAP Infringed In The U.S. ..... 6

V. OSC IS A PROPER COPYRIGHT PLAINTIFF ..... 8
VI. THE COPYRIGHT ACT DOES NOT PREEMPT ANY CLAIMS ..... 10
- A. The Act Does Not Preempt The Interference Claims ..... 12
  - 1. Interference Claims Based On Fraud May Proceed ..... 12
  - 2. The Act Does Not Preempt Claims Based On Certain Private Contractual Use Restrictions ..... 13
    - a. The Act does not preempt the inducement of breach claims ..... 13
    - b. The Act does not preempt certain claims based on software access and misuse ..... 14
  - 3. The Interference Claims May Rest On Wholly Extraterritorial Activity And Are Not Preempted ..... 15
  - 4. SAP Relies On Inapposite Cases ..... 16
- B. The Act Does Not Preempt The Breach of Contract Claim ..... 17
- C. The Act Does Not Preempt Oracle's Unfair Competition Claim ..... 18
- D. The Act Does Not Preempt Oracle's Accounting Claim ..... 20

VII. ORACLE HAS A VALID BREACH OF CONTRACT CLAIM ..... 21
- A. SAP Is Liable Under The Contracts To The Extent It Entered Them In Bad Faith, As Oracle Has Alleged ..... 21
- B. SAP Is Liable Based On Its Own Acceptance Of The Terms ..... 23

VIII. CALIFORNIA LAW RECOGNIZES A CLAIM FOR UNJUST ENRICHMENT/RESTITUTION ..... 24
IX. CONCLUSION ..... 25

## TABLE OF AUTHORITIES

Page

**CASES**

*Aagard v. Palomar Builders, Inc.*,
344 F. Supp. 2d 1211 (E.D. Cal. 2004) .......... 16, 17

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
944 F.2d 971 (2d Cir. 1991) .......... 9

*Allarcom Pay Television, Ltd. v. General Instrument Corp.*,
69 F.3d 381 (9th Cir. 1995) .......... 5, 16

*Altera Corp. v. Clear Logic*,
424 F.3d 1079 (9th Cir. 2005) .......... passim

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006) .......... 4

*Beilstein-Institut Zur Förderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc.*,
2006 WL 3218719 (N.D. Cal. Nov. 7, 2006) .......... 11, 18, 19

*Bell Atlantic Corp. v. Twombly*,
550 U.S. ---- .......... 3

*Blazevska v. Raytheoon Aircraft Co.*,
522 F.3d 948 (9th Cir. 2008) .......... 4

*Dielsi v. Falk*,
916 F. Supp. 985 (C.D. Cal. 1996) .......... 12

*Doe v. United States*,
58 F.3d 494 (9th Cir. 1995) .......... 3

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .......... 3

*Environmental Defense Fund, Inc. v. Massey*,
986 F.2d 528 (D.C. Cir. 1992) .......... 5

*Erickson v. Pardus*,
--- U.S. ---- .......... 3

*Estate of Watts v. Dickerson*,
162 Cal. App. 3d 1160, 1164 (1984) .......... 23

*Falcon Enters. v. Nobel Devs. Inc.*,
2007 U.S. Dist. LEXIS 15809 (W.D. Wash. Mar. 5, 2007) .......... 21

*Firooyze v. Earthlink Network*,
153 F. Supp. 2d 1115 (N.D. Cal. 2001) .......... 17

TABLE OF AUTHORITIES
(continued)

Page

*G.S. Rasmussen & Assocs. v. Kalitta Flying Servs., Inc.*,
958 F.2d 896 (9th Cir. 1992)........ 10

*Hofer v. Gap, Inc.*,
516 F. Supp. 2d 161 (D. Mass. 2001) ........ 22

*Idema v. Dreamworks*,
162 F. Supp. 2d 1129 (C.D. Cal. 2001) ........ 10, 16, 17, 20

*Ileto v. Glock, Inc.*,
349 F.3d 1191 (9th Cir. 2003)........ 3

*In re Dynamic Random Access Memory Antitrust Litigation*,
536 F. Supp. 2d 1129 (2008)........ 24

*Jeppi v. Brockman Holding Co.*,
34 Cal. 2d 11 (1949) ........ 22

*Jonathan Browning, Inc. v. Venetian Casino Resort, LLC*,
2007 WL 4532214 (N.D. Cal. Dec. 19, 2007) ........ 18

*Kodadek v. MTV Networks*,
152 F.3d 1209 (9th Cir. 1998)........ 10, 19, 20

*LA News Serv. v. Reuters Television Int'l, Ltd.*,
149 F.3d 987 (9th Cir. 1998)........ 5

*Lectrodryer v. Seoulbank*,
77 Cal. App. 4th 723 (2000) ........ 24

*Litecubes LLC v. Northern Light Prods., Inc.*,
523 F.3d 1353 (Fed. Cir. 2008)........ 4

*Melchior v. New Line Prods., Inc.*,
106 Cal. App. 4th 779 (2003) ........ 24

*Meridian Proj. Sys. v. Hardin Construction Co.*,
426 F. Supp. 2d 1101 (E.D. Cal. 2006)........ 11, 15

*Motown Record Corp. v. George A. Hormel & Co.*,
657 F. Supp. 1236 (C.D. Cal. 1987)........ 16, 21

*Nat'l Car Rental Sys. v. Computer Associates Int'l, Inc.*,
991 F.2d 426 (8th Cir. 1993)........ 13, 17

*Ott v. Home Savings & Loan Ass'n*,
265 F.2d 643 (9th Cir. 1958)........ 22

*Paracor Fin. v. General Elec. Capital Corp.*,
96 F.3d 1151 (9th Cir. 1996)........ 24

## TABLE OF AUTHORITIES
(continued)

Page


*Penpower Tech., Ltd. v. S.P.C. Tech.*,
2008 WL 2468486 (N.D. Cal. June 17, 2008) .......... 19, 20

*Perfect 10, Inc. v. Amazon, Inc.*,
487 F.3d 701 (9th Cir. 2007) .......... 14, 15

*Plummer v. Ehlers*,
50 Cal. App. 2d 352 (1942) .......... 22

*ProCD v. Zeidenberg*,
86 F.3d 1447 (7th Cir. 1996) .......... 13

*Salim v. Lee*,
202 F. Supp. 2d 1122 (C.D. Cal. 2002) .......... 10

*Selby v. New Line Cinema Corp.*,
96 F. Supp. 2d 1053 (C.D. Cal. 2000) .......... 17, 18

*Silvers v. Sony Pictures Entertainment, Inc.*,
402 F.3d 881 (9th Cir. 2005) (en banc) .......... 9

*Subafilms, Ltd. v. MGM-Pathe Comms. Co.*,
24 F.3d 1088 (9th Cir. 1994) .......... 4, 5

*Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) .......... 19, 20

*Update Art, Inc. v. Modin Publ'g. Ltd*,
843 F.2d 67 (2d Cir. 1988) .......... 5

*Valente-Kritzer Video v. Pinckney*,
881 F.2d 772 (9th Cir. 1989) .......... 11, 12

*Wall Data Inc. v. Los Angeles County Sheriff's Dep't*,
447 F.3d 769 (9th Cir. 2006) .......... 21

*Wrench LLC v. Taco Bell Corp.*,
256 F.3d 446 (6th Cir. 2001) .......... 17

*Worth v. Universal Pictures, Inc.*,
5 F. Supp. 2d 816 (C.D. Cal. 1997) .......... 16, 20


### STATUTES


17 U.S.C. § 101, *et seq*. .......... 3

17 U.S.C. § 106 .......... passim

17 U.S.C. § 106(1)-(3), (5) .......... 5

TABLE OF AUTHORITIES
(continued)

Page

17 U.S.C. § 301(a) .......... 10

17 U.S.C. § 301(d) .......... 12

17 U.S.C. § 501(b) .......... 8, 9

17 U.S.C. § 602(a)(2) .......... 6

18 U.S.C. § 1343 .......... 18

18 U.S.C. § 1962 .......... 18

28 U.S.C. §§ 1331, 1338(a) .......... 3

Cal. Bus. & Prof. Code §§ 17200, *et seq.* .......... 18

Cal. Civ. Code §§ 2315, 2319 .......... 22

Cal. Civ. Code § 2343(2) .......... 22

Cal. Penal Code § 496 .......... 18

Pub. L. 110-403 § 105(b)(2) .......... 6

Stored Communications Act, 18 U.S.C. §§ 2701-11 .......... 18

**RULES**

Federal Rule of Civil Procedure Rule 12(b)(1) .......... 3, 4

Federal Rule of Civil Procedure Rule 12(b)(6) .......... 3, 4

**OTHER AUTHORITIES**

1 *Nimmer on Copyright* § 1.01[B][1][a], at 1-22 .......... 11, 13

3 *Nimmer on Copyright* §12.02[B], at 12-60 .......... 9

Mark A. Lemley, *Terms of Use*, 91 MINN. L. REV. 459, 466 (2006) .......... 21

Restatement (Third) of Agency, § 2.02 (2006) .......... 22

## I. PRELIMINARY STATEMENT

The SAP AG executive board of directors approved the purchase of a corrupt company, SAP TN.[1] The board and its advisors knew SAP TN competed with Oracle by breaking the law. Publicly, SAP said that Oracle could not hurt SAP. Privately, SAP launched a massive campaign to harm Oracle, damage its stock price, and generally undermine Oracle at every turn. Some of this campaign relied on illegal – even criminal – conduct. Some of that conduct forms the basis for the allegations in this case. So far, in response to Oracle's lawsuit, SAP has admitted in its Answer it took "inappropriate" downloads from Oracle's systems. It also has now taken the unusual step of shutting down SAP TN's global operations after evidence uncovered a vast, years-long program of copyright infringement and other wrongdoing aimed at Oracle.

SAP's motion raises five basic arguments that nit and pick around the edges of Oracle's claims. For each, SAP gets the law wrong, the facts wrong, or both.

*Extraterritoriality Does Not Block JDEE As a Plaintiff.* In its first argument, SAP gets the law wrong three times. SAP contends the Court lacks jurisdiction over JDEE's copyright claim based on the extraterritoriality limitation of the Copyright Act (the "Act"). However, a controlling United States Supreme Court case shows extraterritoriality is not a jurisdictional issue. SAP then argues, incorrectly, that the scope of JDEE's license controls when, in fact, the law focuses on the location of the infringing conduct as the controlling test (which Oracle alleges happened in Texas). Finally, SAP omits from its analysis recent controlling amendments to the Act, which confirm that distribution from the United States (as Oracle alleges) to a foreign location is actionable.

*OSC Has Standing.* SAP continues its errors in its attack on OSC's standing. It misreads the relevant documents, which reveal that OIC received *copyrights* from OSC's

---

[1] The Oracle Plaintiffs are collectively referred to as "Oracle." Oracle refers to Defendant TomorrowNow, Inc. as "SAP TN," and collectively with Defendants SAP AG and SAP America, Inc. as "SAP" or "Defendants."

predecessors-in-interest but not *pre-existing copyright claims*. OSC, on the other hand, succeeded to existing copyright claims but not the actual copyrights. The law is clear that OSC may proceed as the plaintiff on the claims to which it succeeded.

*The Act Does Not Preempt Non-copyright Claims.* SAP's preemption arguments miss the point. SAP may wish this case was only about its admitted, years-long pattern of deliberate copyright infringement. But SAP also engaged in a wide array of civil and criminal law violations distinct from the rights granted Oracle pursuant to § 106 of the Act ("§ 106"). Oracle's state law claims depend on conduct that is qualitatively different from its copyright claims. Oracle has a right to pursue these claims. SAP cannot escape liability for this conduct on the grounds that it *also* infringed Oracle's copyrights.

*SAP Entered Contracts And Broke Them.* SAP broke the promises it made when it clicked through Oracle's password-protected website in order to access Oracle's customer support materials. The law holds it to account on those contracts.

*Unjust Enrichment/Restitution Is A Claim.* Although not every court agrees, the better rule, including the one followed by this Court, is that California law recognizes a claim titled "Unjust Enrichment" or "Restitution" (Oracle called its claim "Unjust enrichment/Restitution"). SAP's motion makes no mention of these many cases.

## II. STATEMENT OF ISSUES

1. Whether JDEE can maintain a copyright action based on SAP's infringement in Texas and exploitation of that infringement into JDEE's territory.

2. Whether OSC may sue on pre-existing copyright infringement claims it holds.

3. Whether the Copyright Act preempts state law claims, even though each claim has extra elements making it qualitatively different from Oracle's copyright claim.

4. Whether SAP accepted certain clickthrough contracts in bad faith, making it liable for breach of those contracts.

5. Whether the Court should dismiss Oracle's unjust enrichment claim even though Oracle properly pled it and numerous courts endorse it.

6. Whether – if the Court were to dismiss any claim – it should also grant leave to

amend, because the claim could be cured and courts freely grant leave to amend.

## III. STANDARD ON MOTION TO DISMISS AND FOR LEAVE TO AMEND

A motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Specific facts are unnecessary – the allegations need only give the defendant "fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, --- U.S. ----, ----, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, ---- - ----, 127 S. Ct. 1955, 1964-65 (2007)). The Court takes all allegations of material fact in the complaint as true. *Erickson*, 127 S. Ct. at 2200. So long as the complaint states "enough facts to state a claim for relief that is plausible on its face," the Court should deny a motion to dismiss. *Twombly*, 127 S. Ct. at 1966-67, 1974.

If a court dismisses a complaint for failure to state a claim, it should grant, "with extreme liberality," leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-1052 (9th Cir. 2003) (internal citations omitted).

## IV. JDEE IS A PROPER COPYRIGHT PLAINTIFF

SAP moves to dismiss JDEE's copyright claim on jurisdictional grounds by arguing it concerns "wholly extraterritorial" activity. *See* SAP's Motion to Dismiss ("MTD") at 8-10. SAP moves under the wrong rule, misunderstands the applicable test, and misses recent relevant amendments to the Act.

### A. Extraterritoriality Is Not A Jurisdictional Issue

JDEE has exclusively licensed certain United States copyrights at issue in this case. It alleges that SAP infringed its exclusive rights in these copyrights pursuant to 17 U.S.C. § 101, *et seq*. *See* Oracle's Third Amended Complaint ("TAC"), D.I. 182, ¶¶ 147-62. This Court has federal subject matter jurisdiction over that claim. *See* 28 U.S.C. §§ 1331, 1338(a).

SAP moves to dismiss the claim under Rule 12(b)(1), contending the Court lacks

subject matter jurisdiction over it because the Act does not apply extraterritorially. *See* MTD at 8 (citing *Subafilms, Ltd. v. MGM-Pathe Comms. Co.*, 24 F.3d 1088 (9th Cir. 1994)). In a footnote, the *Subafilms* court expressly left open the question of whether extraterritoriality is a limitation on subject matter jurisdiction, or simply a limitation on the scope of claims cognizable under the Act. *See Subafilms*, 24 F.3d at 1091 n.5.

The United States Supreme Court resolved this issue after the *Subafilms* decision. In *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), the Court adopted a "bright line" rule that courts should treat statutory limitations not expressly identified as jurisdictional by the Legislature as non-jurisdictional restrictions. *See id.* at 516. Since no provision of the Act states that its territorial limitations are jurisdictional (*see Subafilms*, 24 F.3d at 1095-98), under *Arbaugh* the Court must treat extraterritoriality as a claim limitation, not a jurisdictional question. Indeed, courts have done just that since *Arbaugh*. *E.g., Litecubes LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353, 1366-68 (Fed. Cir. 2008) (question of whether an action is "within the extraterritorial limitation" of the Act "should be treated as an element of the claim, not a predicate for subject matter jurisdiction"). Thus, while extraterritorial limitations might affect the scope of appropriate claims under the Act, they have no effect on this Court's jurisdiction over JDEE's well-pled claims. *See Litecubes*, 523 F.3d at 1368-69. SAP's challenge lies not to the jurisdiction of the Court under Rule 12(b)(1), but to the sufficiency of JDEE's allegations under Rule 12(b)(6).

### B. JDEE's Claim Succeeds Based On Domestic Conduct

Oracle does not object to the Court considering the evidence submitted by SAP even if the Court treats SAP's motion as a Rule 12(b)(6) motion. In the event the Court disagrees with Oracle's analysis and proceeds under Rule 12(b)(1), Oracle has submitted additional evidence for the Court's consideration, summarized in Section III.E., below. However, regardless of the rule under which it proceeds, SAP's extraterritoriality challenge depends on the alleged "geographical" limitations in JDEE's exclusive license. *See* MTD at 8-9. SAP reasons that because JDEE's rights "are limited to territories outside of the United States . . . . any infringement of JDEE's rights must necessarily be extraterritorial." *Id.* at 9 (emphasis

omitted). SAP is wrong for at least three reasons.

First, when the regulated conduct takes place in the United States, the presumption against extraterritoriality "does not apply." *Blazevska v. Raytheoon Aircraft Co.*, 522 F.3d 948, 954 (9th Cir. 2008). The conduct being regulated here is the unauthorized reproduction and public display of copyrighted works, preparation of derivative works, and distribution of infringing copies. *See* 17 U.S.C. § 106(1)-(3), (5). JDEE alleges that SAP committed these acts in Texas. *See* TAC ¶¶ 97-98, 156-59 (alleging unauthorized reproduction, preparation of derivative works, distribution, and public display by SAP's Texas subsidiary).

While the Act does not apply where "infringing actions . . . take place entirely outside the United States," *Subafilms*, 24 F.3d at 1091, 1095, it does apply where a defendant infringes in the United States and then exploits that infringement abroad. *See LA News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 990-92 (9th Cir. 1998) (extraterritorial limitation does not preclude claim based on foreign exploitation of copies made in New York). Here, JDEE alleges SAP committed numerous acts of infringement in the U.S. and exploited them worldwide. Based on these allegations, JDEE is "entitled to recover damages flowing from the exploitation abroad of the domestic acts of infringement committed by defendants." *LA News Serv.*, 149 F.3d at 992; *see Update Art, Inc. v. Modin Publ'g. Ltd*, 843 F.2d 67 (2d Cir. 1988) (the Act applicable where "illegal reproduction of the poster occurred in the United States and then was exported to Israel").

Second, SAP's argument that the effects of SAP's infringement will be felt beyond United States borders misses the point. "Even where the significant effects of the regulated conduct are felt outside U.S. borders, [a] statute . . . does not present a problem of extraterritoriality, so long as the conduct which Congress seeks to regulate occurs largely within the United States." *Environmental Defense Fund, Inc. v. Massey*, 986 F.2d 528 at 531 (D.C. Cir. 1992). SAP tries to avoid this rule by arguing that none of its many infringements were complete as to JDEE until the infringing material landed abroad. *See* MTD at 10. In support, it cites only to *Allarcom*, which establishes no such rule. *See Allarcom Pay Television, Ltd. v. General Instrument Corp.*, 69 F.3d 381, 383-85 (9th Cir. 1995). In that case, the defendant had a

license to broadcast the copyrighted content in the U.S. *Id.* For this reason, by definition, the defendant could not commit an act of infringement in the United States. It was not the plaintiff's status as only a foreign rights holder that defeated its copyright claim. Instead, the plaintiff could not pursue its claims because the defendant had a license to do what it did in the United States and could not commit a domestic act of infringement. *Id.* Here, SAP had no license. As a result, it committed many acts of infringement in the U.S., including the distribution of unauthorized reproductions and derivative works worldwide.

Finally, Congress has now erased any doubt that the unauthorized distribution of infringing works abroad constitutes an act of infringement in the United States. Congress recently amended the Act to specify that the act of exporting unauthorized copies from the United States, by itself, infringes the distribution right. *See* PRO IP Act of 2008, Pub. L. 110-403 § 105(b)(2), 122 Stat. 4256, 4259-60 (2008). (amending 17 U.S.C. § 602(a)(2) to read "exportation from the United States, without the authority of the owner of copyright under this title, of copies . . . is an infringement of the exclusive right to distribute copies . . . under section 106"). To the extent SAP exported infringing material into what it asserts is JDEE's "geographical territory," the TAC alleges that exportation occurred in Texas. Pursuant to § 602, the infringement of JDEE's distribution rights occurred there too. *See id.*

Because JDEE's copyright claim does not rely on "infringing actions that take place entirely outside the United States," JDEE's copyright claim does not implicate, much less violate, the presumption against extraterritoriality.

**C. Additional Evidence Proves SAP Infringed In The U.S.**

The evidence produced in discovery to date (with seven months of discovery remaining) establishes that copyright infringement occurred in the U.S., including the creation of competitive, derivative support products to be distributed throughout the world.[2]

Prior to acquiring SAP TN, SAP AG identified SAP TN's "offsite production

---

[2] This evidence is submitted for purposes of the Rule 12(b)(1) motion only, in the event the Court disagrees with Oracle that the extraterritoriality issue should proceed under Rule 12(b)(6).

copies and the form of delivery of regulatory updates" – from its Texas location – as cause for "likely legal action" by Oracle. Decl. of Chad Russell in Supp. of Oracle's Opp'n to MTD ("Russell Decl.") ¶ 12 & Ex. K at SAP-OR 91831, 835. SAP considered it "very likely that TomorrowNow [was] using the software outside the contractual use rights granted to them . . . ." *Id.* ¶ 20 & Ex. S at SAP-OR 91724. Despite those findings, post-acquisition, SAP continued to assemble a massive library of more than 8 million downloaded files from Oracle's servers, and an equally massive repository of thousands of copies of Oracle's software applications. Decl. of Kevin Mandia in Supp. of Oracle's Opp'n to MTD ("Mandia Decl.") ¶¶ 2-6. All software environments used by SAP were "[redacted]" and there are no "[redacted]" *Id.* ¶ 6 (and cited materials); Russell Decl. ¶ 8 & Ex. G at 120:22-121:4. SAP used these resources in Texas, for instance by "[redacted]" to create and deliver updates to multiple customers. Mandia Decl. ¶ 7 (and cited materials); Russell Decl. ¶ 10 & Ex. I at 20:14-21:10.

As a software company itself, SAP employs thousands of developers. It had to know that without more developers, SAP could not logistically provide support to its numerous customers if it stopped the improper practice of copying a fix from one customer environment and distributing it to its other customers to "[redacted]" Russell Decl. ¶ 20 & Ex. S at SAP-OR 91724.

Nevertheless, shortly after it acquired SAP TN, SAP AG created a revised business case to "[redacted]" including in Europe. *Id.* ¶ 13 & Ex. L at SAP-OR 157405. To accomplish this expansion, the SAP AG executive board approved [redacted] in order to expand SAP TN's operations globally, including in Europe to "[redacted]" and to "[redacted]" *Id.* at SAP-OR 157408, 414; *see also id.* ¶ 11 & Ex. J at 356:2-357:3; 361:15-364:11. According to SAP AG's CEO, [redacted]. *Id.* at 301:15-303:12; 358:19-360:6.

A year later, SAP created "[redacted]" [redacted] "[redacted]" *Id.* ¶ 16 & Ex. O at SAP-OR 139923, 928-929. On July 25, 2006, SAP's Apollo group proposed to launch a "[redacted]" and including existing Oracle JD Edwards customers in Europe. *Id.* ¶ 18 & Ex. Q at SAP-OR 18638, 657-659. By January 2007, in its "Management Summary – TomorrowNow," SAP bragged that it had "[redacted]" and that SAP TN "[redacted]" ¶ 15 & Ex. N at SAP-OR 7497. It projected the "[redacted]" in 2007. *Id.* This could have no other meaning than the continued recruitment, in part, of JD Edwards customers in Europe to receive SAP's support from its server bank and developer group in Texas. Indeed, SAP's customer relationship ("SAS") database indicates that by the time of the litigation SAP had at least [redacted]. *Id.* ¶ 21 & Ex. T.

These facts demonstrate that SAP's infringing acts relating to JDEE customers in Europe originated and occurred in the U.S. SAP marketed to and contracted with these customers in Europe, but supported them with the same software copies, downloads, and derivative work assembly-line in Texas that it used for all of its other customers.

## V. OSC IS A PROPER COPYRIGHT PLAINTIFF

SAP's argument that OSC lacks standing relies on a misunderstanding of the relevant documents and of the case law regarding assignment of copyright claims. OSC has the right, through merger, to bring copyright infringement claims that existed before March 1, 2005, for certain copyrights at issue. *See* TAC ¶¶ 36, 150 & 152.

SAP correctly states that an owner or exclusive licensee of a copyright may "institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). However, existing claims for infringement do not automatically transfer with the copyrights that gave rise to those claims. A careful reading of the documents submitted by the parties reveals that OSC, as the surviving entity after several mergers, holds rights to sue that were not transferred to OIC.

Oracle alleges infringement beginning in 2002. TAC ¶ 18. From 2002 until March 1, 2005, J.D. Edwards World Source Co., J.D. Edwards YOUCentric Co. and PeopleSoft, Inc., (collectively, "OSC's predecessors-in-interest") held exclusive rights to certain registered works at issue. During that time, these entities had standing to bring infringement claims arising from SAP's infringing activities. 17 U.S.C. § 501(b).

On March 1, 2005, OSC's predecessors-in-interest assigned their copyrights to OIC. *See* Decl. of Tharan Gregory Lanier in Supp. of MTD ("Lanier Decl.") ¶¶ 21-22 & Exs. 3-4 ("Lanier Decl."). OSC's predecessors-in-interest then merged into OSC. *See* Russell Decl. ¶¶ 2-4 & Exs. A-C. Thus, as of March 1, 2005, either OIC (as assignee of the copyrights) or OSC (as successor-in-interest to what remained) had the right to sue for infringement of the exclusive rights previously owned by OSC's predecessors-in-interest that occurred between 2002 and March 1, 2005.

To assign existing copyright claims, a conveyance must contain explicit language to that effect. Otherwise, "the assignor retains the right to bring actions accruing during its ownership of the right, even if the actions are brought subsequent to . . . assignment [of the infringed copyright]." *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991). In *ABKCO*, the assignee was held to have standing to assert existing pre-assignment claims under a conveyance that included rights "***which may have heretofore arisen*** or which may hereafter arise." *Id.* (emphasis supplied); *see also Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 890 & n.1 (9th Cir. 2005) (en banc) (quoting *ABKCO* and distinguishing between conveyance of a copyright and "convey[ance] [of] the right to recover . . . by instituting a copyright action"). This assignment transferred all existing claims. By contrast, assignment of "all right, title and interest in and to the copyrights" does not assign existing claims. *See, e.g.,* 3 *Nimmer on Copyright* §12.02[B], at 12-60 ("[A] grant of copyright – even if it purports to convey 'all right, title and interest' – is generally construed not to assign existing causes of action, unless expressly included.").

OSC's predecessors-in-interest assigned "all . . . right, title and interest in . . . all copyrights" to OIC. *See* Lanier Decl. ¶ 21 & Ex. 3 at ORCL 43703; *id.* ¶ 22 & Ex. 4 at ORCL

43709. This language did not transfer existing claims (if it had, OIC could assert them). The pre-existing claims therefore remained with OSC's predecessors-in-interest. OSC acquired them through merger and has standing to assert them as the surviving entity.

## VI. THE COPYRIGHT ACT DOES NOT PREEMPT ANY CLAIMS

Next, SAP argues that the Act preempts five state law claims – intentional and negligent interference, breach of contract, unfair competition, and accounting. Curiously, SAP did not move to dismiss these same claims in response to the First Amended Complaint, which it answered. The Act preempts the state law claims only if (1) the work falls under the general subject matter of the Act; and (2) the rights the plaintiff asserts under state law are "equivalent" to those provided by the Act. *See* 17 U.S.C. § 301(a). Here, all of the challenged claims have "extra elements" that make them not "equivalent" to rights protected by the Act.[3]

To determine preemption, the Court should assess each claim to determine if it has an "extra element" beyond the rights provided by § 106. 17 U.S.C. § 301(a). Section 106 protects the rights to control reproduction, preparation of derivative works, distribution, public display and public performance of copyrighted works.[4] 17 U.S.C. § 106. To determine whether a claim alleges an "extra element," the Court should "engage in a fact-specific inquiry into the *actual* allegations underlying the claims at issue in the case . . . ." *Idema v. Dreamworks*, 162 F. Supp. 2d 1129, 1190 (C.D. Cal. 2001) (emphasis in original) (noting that the Ninth Circuit implicitly adopted this approach in *Kodadek v. MTV Networks*, 152 F.3d 1209, 1212 (9th Cir. 1998)); *accord Salim v. Lee*, 202 F. Supp. 2d 1122, 1125 (C.D. Cal. 2002). In so doing, the Court assesses whether the state law claim is "qualitatively different" – even if just by one

---

[3] SAP has also stated it intends to challenge the copyrightability of some works at issue in this case. *See* Defendants' Answer to First Amended Complaint (D.I. 36), First Affirmative Defense; *see also* MTD at 8 n.2. If SAP's challenge demonstrates that certain works are excluded from the subject matter of copyright, then state law claims concerning such works would not be preempted. *See* 17 U.S.C. § 301(a). Moreover, Oracle could still pursue state law claims based on the improper use of uncopyrightable material. *See G.S. Rasmussen & Assocs. v. Kalitta Flying Servs., Inc.*, 958 F.2d 896, 901-04 (9th Cir. 1992).

[4] Despite SAP's assertion to the contrary, there are no § 106 rights to "profit from" or "market" copyrighted works. *See* MTD at 16, 18.

element – from the copyright claim. *Altera Corp. v. Clear Logic*, 424 F.3d 1079, 1089 (9th Cir. 2005) (citing *Summit Mach. Tool Mfg. v. Victor CNC Sys.*, 7 F.3d 1434, 1439-40 (9th Cir. 1993)).

Oracle's claims contain several "extra elements" that make them qualitatively different from the rights protected by the Act:

- *Fraud*. Fraud and misrepresentation claims have "extra elements," which prevent preemption. *See Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir. 1989); *Beilstein-Institut Zur Förderung Der Chemischen Wissenschaften v. MDL Info. Sys., Inc.*, 2006 WL 3218719 at *4 (N.D. Cal. Nov. 7, 2006) ("[E]ven if the copyright infringement allegation underlying the 'unlawful' prong of plaintiff's § 17200 claim is preempted, plaintiffs may assert . . . an independent alternate theory. Plaintiffs have done so by alleging fraudulent business practices.").
- *Use*. Section 106 of the Act generally does not provide protection against unauthorized "use" of copyrighted materials. *Altera*, 424 F.3d at 1090; *see also Rasmussen*, 958 F.2d at 904 (section 301 does not preempt state law claim based on unauthorized use of uncopyrightable certificate)..
- *Contractual Relationships*. Private, bargained-for contractual rights and relationships are also outside the scope of the limited rights provided by § 106, except perhaps to the extent those rights overlap with a § 106 right. *Altera*, 424 F.3d at 1089 ("Most courts have held that the [] Act does *not* preempt the enforcement of contractual rights."); *Meridian Proj. Sys. v. Hardin Construction Co.*, 426 F. Supp. 2d 1101, 1108-09 (E.D. Cal. 2006) (holding that a breach of contract claim alleging violation of an end-user license agreement for software was not preempted); *see also* 1 *Nimmer on Copyright* § 1.01[B][1][a], at 1-22 (The "vast majority of contract claims will presumably survive scrutiny . . . .").

Each of the challenged state law claims alleges factual elements that make it qualitatively different from Oracle's copyright claims. *See, e.g.*, TAC ¶¶ 183, 188-89, 198-99 (alleging extra element of unauthorized use); ¶¶ 183, 191-92, 201-02 (alleging extra element of harm to private contractual rights or expectations); ¶¶ 164-67, 172-75, 188-90, 198-00, 205, 207-08 & 223 (alleging extra element of fraud); and ¶¶ 30, 76, 87, 110, 137 (alleging extraterritorial misconduct). Moreover, Oracle alleges these extra elements separate from its copyright claims, which it expressly excludes from the challenged claims. *See id.* ¶¶ 180-212 & 222-25. Accordingly, and as the analysis below establishes, the Act does not preempt any of the challenged state law claims.

### A. The Act Does Not Preempt The Interference Claims

Oracle alleges that SAP has intentionally and negligently interfered with its expectation of revenue from existing and future customers. This revenue comes from software maintenance contract renewals, new customer maintenance contracts, and new license deals from existing and future maintenance customers. TAC ¶ 191, 201. SAP argues that the Act preempts these claims because they "do not seek redress for conduct not otherwise addressed by the [] Act." MTD at 18.

SAP's motion to dismiss Oracle's interference claims fails for three reasons. First, the interference claims rely on allegations of fraud and deception, elements not found in the Act. Second, the Act does not preempt interference claims that rest on inducements to breach, or actual breaches, of private contractual software use restrictions not equivalent to any § 106 right. Third, in addition to also recovering on its existing copyright claims, to the extent Oracle discovers that SAP committed any particular acts of infringement entirely overseas, and unconnected to its domestic infringement, Oracle also may recover for those acts on an interference theory.

#### 1. Interference Claims Based On Fraud May Proceed

The Act does not preempt interference claims based on misrepresentation, fraud, or deceit. *Valente-Kritzer*, 881 F.2d at 776 (element of misrepresentation is an "extra element" that defeats preemption); *Dielsi v. Falk*, 916 F. Supp. 985, 991-992 (C.D. Cal. 1996) (holding that a fraudulent promise not to violate the rightsholder's "authorship rights" was not preempted under *Valente-Kritzer*). Oracle has alleged multiple underlying fraudulent activities. *See* TAC ¶ 190 (listing violations including Computer Fraud and Abuse Act, wire fraud, and fraud in connection with an access device). Consistent with *Valente-Kritzer* , interference claims based on these activities are not preempted. As a separate and independent ground to deny SAP's motion, the Act does not preempt the federal causes of action listed in TAC ¶ 190. *See* 17 U.S.C. § 301(d).

In addition to these specific statutory claims involving fraud, Oracle also alleges an overall pattern of fraudulent and deceptive conduct by SAP in furtherance of its interference.

*See* TAC ¶¶ 165, 172-75, 188. These allegations support claims different from the rights protected by § 106. But even if the interference claims reach conduct protected by § 106, the claims may proceed because they "add" additional elements to, and are "qualitatively different" from, the rights of distribution, reproduction, creation of derivative works, and public display.

### 2. The Act Does Not Preempt Claims Based On Certain Private Contractual Use Restrictions

Oracle also alleges interference based on violations of contractual rights. "Most courts have held that the [] Act does *not* preempt the enforcement of contractual rights." *Altera,* 424 F.3d at 1089 (emphasis in original) (reviewing cases on unauthorized use from the Seventh Circuit, Eighth Circuit and Federal Circuit); *see also ProCD v. Zeidenberg*, 86 F.3d 1447, 1454 (7th Cir. 1996) (reviewing cases from the Fourth, Fifth, and Federal Circuits and affirming that "courts usually read preemption clauses to leave private contract rights unaffected."); 1 *Nimmer on Copyright* § 1.01[B][1][a], at 1-22 (The "vast majority of contract claims will presumably survive scrutiny . . . ."). Software licenses typically restrict how a licensee can use the software. These software "use" restrictions are "qualitatively different" than the rights contemplated in § 106. *Altera,* 424 F.3d at 1089-90; *see also Nat'l Car Rental Sys. v. Computer Associates Intl., Inc.*, 991 F.2d 426 (8th Cir. 1993) (followed by *Altera*). The interference claims here rest in part on the violation, direct or induced, of the same types of use restrictions.

#### a. The Act does not preempt the inducement of breach claims

Inducing a customer's breach of contractual use restrictions on a competitor's software gives rise to a valid interference claim. *Altera*, 424 F.3d at 1089-90. In *Altera*, the plaintiff's license agreements with its customers stated that customers could only "use the Licensed Programs for the sole purpose of programming [devices manufactured by the Plaintiff]." *Id.* at 1082. The plaintiff alleged that defendant Clear Logic induced breach of this contract by using the "Licensed Programs" to generate information ("a bitstream") to deliver to Clear Logic, who in turned used the information to manufacture competing devices. *Id.* Clear Logic moved to dismiss, arguing that the Act preempted the interference claim based on this alleged conduct. The Ninth Circuit affirmed Judge Ware's finding of no preemption because this

type of "use of the software's end-product is not within the rights protected by the [] Act." *Id.* at 1090.

Oracle has alleged that SAP interfered with its prospective economic advantage by inducing breach, including through improper and deceptive use of usernames and passwords, of several agreements governing access to Oracle's password-protected customer support site Customer Connection. TAC ¶ 102, 188, 189. As in *Altera*, Oracle's inducement of breach allegations involve private contractual rights outside the scope of the Act. Moreover, because the Act does not preempt the breach of website restrictions, it also does not preempt interference accomplished through inducing such a breach. *See Perfect 10, Inc. v. Amazon, Inc.*, 487 F.3d 701, 717-19 & n.7 (9th Cir. 2007).

**b. The Act does not preempt certain claims based on software access and misuse**

Oracle alleges more than inducement. It also alleges that SAP directly violated many restrictions governing access and use in agreements related to Software and Support Materials and Customer Connection. These are essentially the same allegations that support Oracle's breach of contract claim, and both claims may proceed for the same reasons. SAP violated access and use restrictions, and did so in the course of unlawfully interfering with Oracle's expected revenues.[5] These restrictions provide the extra element that precludes preemption of the economic interference claims.[6]

The following access and use allegations, among others, qualitatively differ from § 106 rights:

---

[5] As explained below in Section VII(A), SAP is directly liable for breaches where it entered into contracts on behalf of a principal without a good faith belief it could do so. *See* Cal. Civ. Code § 2343(2).

[6] The fact-finder in this case *might* ultimately determine that some use restrictions overlap with a § 106 right. That is particularly so where SAP used software in violation of Oracle's § 106 rights, although even in that instance if SAP then used the software in ways separate from § 106 rights, those uses may not fall within the scope of the Act. Regardless, for these reasons and because the inquiry can turn on specific facts, Oracle does allege certain uses as copyright violations too. *E.g.*, TAC ¶ 156. However, the Court cannot resolve these issues on a Rule 12(b)(6) motion.

- Use of "any portion of the software not expressly licensed to and paid for by the licensee," sublicensing or disclosure to third parties, any use of the software and documentation by third parties, and "any use [of licensed software] other than by the customer for production, backup, archival and in-house disaster recovery purposes." TAC ¶¶ 52- 53.
- Access to unlicensed Software and Support Materials on Customer Connection (*see, e.g.*, TAC ¶¶ 15, 102, 183);
- Access to Customer Connection by using improper credentials (*see, e.g.*, TAC ¶¶ 16, 99, 102);
- Access to Customer Connection without a legitimate business purpose (*see, e.g.*, TAC ¶¶ 102, 183);
- Access to Customer Connection not in furtherance of a relationship with Oracle (*see, e.g.*, TAC ¶¶ 91, 102, 183); and
- Using and referencing downloaded Software in unauthorized ways (*see, e.g.*, TAC ¶¶ 18, 102, 117-18, 183, 188).

<u>Use</u> - The allegations relating to "use" restrictions may proceed for the reasons described above in Section VI.A.2. *See Altera*, 424 F.3d at 1090 ("[U]se of the software's end-product is not within the rights protected by the [] Act."); *Meridian Proj. Sys.*, 426 F. Supp. 2d at 1108-09 (holding that a breach of contract claim regarding usage of software in violation of an end-user license agreement was not preempted).

<u>Access</u> - Access is not copying. SAP *accessed* Oracle's systems, and the content on Customer Connection, in some cases without ever making a *copy*. Thus, Oracle's allegations of access involve an "extra element" and survive preemption. *See, e.g.*, *Perfect 10*, 487 F.3d at 717-719 & n.7. SAP seems to agree. In the part of its motion directed to the contract claim, it references only four of Oracle's five bullet-points in TAC ¶ 183, ignoring the one solely about "access," and then says, "to the extent that Plaintiffs' breach of contract claims are based on allegations that Defendants' [sic] impermissibly *used* Plaintiffs' copyrighted material, this Court should dismiss Plaintiffs' breach of contract action." MTD at 18-19 (emphasis supplied). SAP does not say the same about "access."

**3. The Interference Claims May Rest On Wholly Extraterritorial Activity And Are Not Preempted**

Oracle alleges, and has discovered evidence that proves, direct copyright infringement in the U.S. SAP's argument that these allegations involve "wholly extraterritorial"

infringement, are therefore not actionable under the Act, is wrong as explained above. *See* Sec. IV, above, and MTD at 8-10.

However, discovery may reveal direct copyright infringement that occurred entirely outside of the U.S., unconnected to any direct infringement in the U.S. (Certain of SAP TN's servers and a substantial amount of SAP AG's electronic files have not yet even been produced). In that event, in addition to its existing copyright claims, Oracle also may pursue interference claims based on SAP's wholly extraterritorial direct infringement. *See Allarcom*, 69 F.3d at 384.

**4. SAP Relies On Inapposite Cases**

SAP cites to several distinguishable cases from other California district courts finding preemption of economic interference claims. For various reasons, none support SAP's motion.

First, Oracle agrees that the Act preempts claims for economic interference alleging intent as the only extra element. *See Motown Record Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236, 1240 (C.D. Cal. 1987); *Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816, 822 (C.D. Cal. 1997). "Intent" to violate copyrights does not save a non-copyright claim. However, as discussed above, Oracle relies not on intent, but on either or both of contractual use restrictions not equivalent to § 106 rights, or fraud, as the extra element of its economic interference claims. Therefore, *Motown* and *Worth* do not apply.

Second, SAP contends the Act preempts interference claims alleging only lost sales opportunities of copyrighted materials to unspecified customers. *See, e.g., Aagard v. Palomar Builders, Inc.*, 344 F. Supp. 2d 1211, 1219 (E.D. Cal. 2004) (finding preempted by the distribution right an "intentional interference with prospective economic advantage counterclaim [that did] not involve a contractual relationship" but only alleged "loss of business" due to unauthorized sale of claimant's copyrighted work); *Idema*, 162 F. Supp. 2d 1129, 1191 (C.D. Cal. 2001) (finding economic interference claims with respect to unspecified prospective customers to be preempted by the distribution and reproduction rights).

As discussed above, Oracle has interference claims that rely on activity separate

and apart from SAP's illegal reproduction and distribution of software. SAP also obtained – and maintained – through fraudulent conduct and by violating use restrictions in private contracts, customer relationships that Oracle would have had. While the parties continue to develop an agreed-upon list of relevant customers, SAP does not argue that Oracle has failed to specify any customers whose payments it would have received but for SAP's interference. Therefore, *Aagard* and *Idema* do not support preemption of the interference claims.

### B. The Act Does Not Preempt The Breach of Contract Claim

Oracle's breach of contract claims survive for the same reason that its economic interference claims based on breach and inducing breach survive. *See* Sec. VI, above. The breaches alleged by Oracle provide "extra element[s] that [make] the right[s] asserted qualitatively different from those protected under the [] Act." *Altera*, 424 F.3d at 1089; *see also Nat'l Car Rental*, 991 F.2d at 431.

SAP's other cases do not support its preemption argument. In *Firooyze v. Earthlink Network*, 153 F. Supp. 2d 1115 (N.D. Cal. 2001), the contract claim was in fact *not preempted*, because the plaintiff alleged a breach of the promise to pay for a copyrighted work – "A promise to pay for the work constitutes an extra element such that a breach of contract claim is not preempted by section 301." *Firooyze*, 153 F. Supp. 2d at 1127.[7] Similarly, Oracle's claims include "extra elements" of access and use.

*Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053 (C.D. Cal. 2000), cited by SAP, dealt with an alleged implied-in-fact contract, not a written website access agreement. The *Selby* court disclaimed any general rule preempting contract claims, and adopted *National Car Rental*'s "fact specific approach requiring an analysis of whether 'the right in question is infringed by the mere act of reproduction, performance, distribution, or display.'" *Id.* at 1061-

---

[7] What SAP claims as the "holding" in *Firooyze* is actually a superficial summary in dicta of *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446 (6th Cir. 2001), which also found a contract claim not preempted. Consistent with the Ninth Circuit, *Wrench* limited its theoretical preemption only to uses swallowed up by § 106. 256 F.3d at 457 (hypothesizing that "[if] the promise amounts only to a promise to refrain from reproducing, performing, distributing or displaying the work, then the contract claim is preempted.").

62. The *Selby* court found preemption only because the implied contract plead by the plaintiff did not "prohibit any conduct beyond that prohibited by the [] Act." *Id.* at 1061. Unlike in *Selby*, Oracle has pled express access restrictions that prohibit conduct other than copying, distribution, derivative works, or public display.

### C. The Act Does Not Preempt Oracle's Unfair Competition Claim

California's Unfair Competition Law ("UCL") "includes three prongs – unlawful, unfair and fraudulent – any one of which may independently operate as the theory for a cause of action under § 17200." *Beilstein-Institut*, 2006 WL 3218719 at *4. Each prong of Oracle's unfair competition claim qualitatively differs from its copyright claim, precluding preemption. *See Jonathan Browning, Inc. v. Venetian Casino Resort, LLC*, 2007 WL 4532214, *10 (N.D. Cal. Dec. 19, 2007) (denying motion to dismiss UCL claim based on interference claim).

SAP concedes that the UCL claim in Oracle's TAC relies on allegations outside the Act (*e.g.*, computer fraud and trespass). MTD at 19; *see also* TAC ¶ 205. Because SAP does not challenge those predicate bases for the UCL claim in this motion, the claim survives for that reason alone. *See id*. However, the Court should not find preemption as to *any* predicate act, including the ones targeted by SAP, because Oracle specifically excluded all of its copyright-related allegations from this claim. *See* TAC ¶¶ 204-212.

In support of the unlawful prong of California's UCL, Oracle alleges unlawful conduct (in addition to the computer fraud and trespass claims), distinct from the Act: (i) receipt of stolen property, Cal. Penal Code § 496; (ii) wire fraud, 18 U.S.C. § 1343; (iii) violation of RICO, 18 U.S.C. § 1962; and (iv) violation of the Stored Communications Act, 18 U.S.C. §§ 2701-11. *See* TAC ¶¶ 207-08. The TAC also alleges unfair competition grounded in SAP's intentional and negligent interference with prospective economic advantage, and unjust enrichment. *See id.*; *see also Browning*, 2007 WL 4532214 at *10 (interference claim "provides the extra element that is not preempted by federal law."). Those claims are distinct from Oracle's copyright action. *See* Sec. VI(A), above, and Sec. VIII, below. So too is Oracle's claim under the "fraudulent" prong of the UCL. *See, e.g.*, TAC ¶¶ 207 ("The acts of Defendants constitute fraudulent . . . competition as defined by Cal. Bus. & Prof. Code §§ 17200, *et seq*.");

*see also Beilstein-Institut*, 2006 WL 3218719 at *4-5 (claim under fraudulent business practices prong not preempted). The Act does not preempt them.

Rather than grapple with the actual allegations of Oracle's UCL claim, SAP erroneously compares Oracle's claims with those made in *Kodadek*, *Sybersound*, and *Penpower*. *See* MTD at 20. Application of those cases, however, demands a detailed factual analysis that SAP declines to perform, and which disproves its argument.

In *Kodadek*, in addition to incorporating the copyright claim in its UCL claim by reference, the plaintiff's complaint alleged that "defendants 'have been publishing and placing on the market for sale products bearing the images subject to the copyright ownership of the plaintiff and has thereby been engaging in unfair trade practices and unfair competition against plaintiffs . . . .'" *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212-13 (9th Cir. 1998). Accordingly, "Kodadek's complaint expressly base[d] his unfair competition claim on rights granted by the [] Act." *Id.* at 1213. Oracle did just the opposite – it *excluded* its copyright allegations from the UCL claim. *See* TAC ¶¶ 204-212.

In *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008), the court concluded that to the extent the unfair competition claim relied on copyright infringement, it "was properly dismissed because it is preempted." *Id.* at 1152. The court then engaged in a detailed analysis of the remaining non-preempted unfair competition allegations, which focused on contract breach and misrepresentation. *Id.* at 1152-53. In doing so, it found that the plaintiff had not properly pled these claims, and dismissed them on that basis. *Id.* Like the other half of the *Sybersound* plaintiff's claim, Oracle's unfair competition claim relies on unrelated state and federal violations – all outside the bounds of the Act. Unlike *Sybersound*, Oracle has properly pled those claims – an issue not raised by SAP here.

Finally, in *Penpower Tech., Ltd. v. S.P.C. Tech.*, 2008 WL 2468486 (N.D. Cal. June 17, 2008), the plaintiffs' two unfair competition claims alleged they had suffered "substantial injury, loss and damage to its ownership rights," "loss of customers, dilution of goodwill, confusion of potential customers, injury to their reputation, and diminution of their property rights." *Penpower*, 2008 WL 2468486 at *5. The court "discern[ed] no 'qualitative'

difference between the [UCL] claims and the copyright infringement claim." *Id.* at *6. In contrast, there are numerous "qualitative" differences between Oracle's UCL and copyright infringement claims. TAC ¶¶ 204-12. *Penpower*, like *Kodadek* and *Sybersound*, is inapposite.

**D. The Act Does Not Preempt Oracle's Accounting Claim**

SAP concedes that Oracle's Accounting claim is not preempted to the extent it does not "rely on allegations that Defendants' [sic] committed copyright infringement." MTD at 22. That concession should end the discussion because Oracle explicitly *excluded* its copyright allegations from its Accounting cause of action. *See* TAC ¶¶ 222-25.

First, it excluded the copyright allegations from its incorporation paragraph. *See* TAC ¶ 222 (incorporating all paragraphs except for Oracle's copyright-related allegations). Second, the "unlawful conduct" identified by Oracle in the Accounting cause of action excludes any reference to Oracle's copyright allegations. TAC ¶ 223 (identifying SAP's breach, interference, unfair business, fraudulent access, and trespass as basis for claim). SAP says nothing about, and does not move to dismiss, two of these bases (the fraudulent access and trespass claims). *See* MTD at 21. The Accounting claim survives on these bases alone.

The other claims that underlie the Accounting claim (breach of contract, interference, and unlawful business practices claims), are not pre-empted so the Accounting claim may rely on them as well. *See* TAC ¶ 223(a) & Sec. VI(B), above (breach of contract); TAC ¶ 223(b) and Sec. VI(A), above (interference); TAC ¶ 223(c) and Sec. VI(C), above (unlawful business practices).

SAP's authority does not support a different result. First, SAP cites *Worth* as support for dismissal to the extent that the Accounting claim relates to SAP's interference. MTD at 21 n.9. But the *Worth* court did not find preemption of the plaintiff's accounting claim at all. *Worth*, 5 F. Supp. 2d at 823 (finding accounting not preempted and "necessary for Plaintiffs to determine the amount of damages they are seeking due to the alleged unauthorized use of their screenplay."). Next, SAP cites the procedural background section of *Idema v. Dreamworks* – a case in which the plaintiff did not bring an accounting claim and which has no other apparent bearing on the issues here. *See* MTD at 21.

SAP's third and fourth cases – *Motown* and *Falcon Enters. v. Nobel Devs. Inc.*, 2007 U.S. Dist. LEXIS 15809 (W.D. Wash. Mar. 5, 2007) – do not apply factually. Both courts found that the plaintiff's accounting claim was grounded in its copyright claim, seeking rights and remedies equivalent to those provided for under the copyright statute. *See Motown*, 657 F. Supp. at 1241; *Falcon Enters.*, 2007 U.S. Dist. LEXIS 15809 at *9. Unlike *Motown* and *Falcon*, Oracle's Accounting claim is expressly based on different state law rights and remedies. *See* TAC ¶¶ 222-25. The Act cannot preempt this claim either. *See Firoozye*, 153 F. Supp. 2d at 1132 (denying motion to dismiss Accounting claim if based on non-preempted state claims).

## VII. ORACLE HAS A VALID BREACH OF CONTRACT CLAIM

### A. SAP Is Liable Under The Contracts To The Extent It Entered Them In Bad Faith, As Oracle Has Alleged

Oracle has alleged SAP breached the Customer Connection Terms of Use, the Special Terms of Use, the SAR Legal Restrictions, and the Legal Download Agreement (the "Customer Connection Agreements"). *See* TAC ¶¶ 180-184. These are "clickwrap" or "clickthrough" agreements, which means the online user encounters the agreements' terms on the websites and must select "I agree" or "Yes" before continuing to access the password-protected portions of the websites. Courts recognize these as valid contracts. *See, e.g., Wall Data Inc. v. Los Angeles County Sheriff's Dep't*, 447 F.3d 769, 775 n.5 (9th Cir. 2006); *see also* Mark A. Lemley, *Terms of Use*, 91 MINN. L. REV. 459, 466 (2006) ("every court to consider the issue has held clickwrap licenses enforceable."). SAP does not argue otherwise. *See generally* MTD at 22-24.

The TAC describes how SAP repeatedly entered into these agreements by selecting the "I agree" option, and then promptly breached them by accessing the websites in violation of the contractual terms or by lawfully accessing the sites and then violating the use restrictions by using the accessed materials to support other customers.. *See* TAC ¶¶ 15, 16, 17, 54-60, 99, 102, 103, 104, 106, 180-184. SAP, in turn, has repeatedly argued that its agreements with its customers permitted its conduct. *See, e.g.,* Defendants' Answer to First Amended Complaint (D.I. 36), ¶¶ 2, 3, 5, 8-10, 15, 68, 72, 76-81, 131, 132, 141, 142 and Affirmative

Defenses Two, Three, Nine.

Now, SAP improperly shades these admissions. It argues that the agreements it made (and even programmed its Titan software to automatically accept) can only bind Oracle's actual customers, not SAP, and that "[t]he fact that TN was acting on behalf of Oracle customers in accessing Plaintiffs' websites" is irrelevant. MTD at 22-24 & n.11.

SAP misses the point. SAP is liable for breach if it entered the contracts on behalf of its customers without a good faith belief that it had authority to do so. *See* Cal. Civ. Code § 2343(2); 10 Witkin, Vol. 3 (Agency), § 196; *see also Jeppi v. Brockman Holding Co.*, 34 Cal. 2d 11, 18-19 (1949). Oracle has alleged just that: SAP knew it did not have authority from its customers to access the Customer Connection materials or use these materials it obtained in knowing breach of the use restrictions. *See* TAC ¶¶ 15, 16, 17, 54-60, 99, 102, 103, 104, 106, 180-184. SAP is liable on these contracts as a principal ***because*** it claims it acted on behalf of customers.

SAP's authorities are either distinguishable or irrelevant. For example, the point is not that only the particular person, or member of the class, to whom an offer is made can accept that offer. *See Plummer v. Ehlers*, 50 Cal. App. 2d 352, 355 (1942); *Ott v. Home Savings & Loan Ass'n*, 265 F.2d 643, 646 (9th Cir. 1958). SAP could accept the offers on behalf of its principals to further the goals of the agency. *See Ott*, 265 F.2d at 646; *see also* Cal. Civ. Code §§ 2315, 2319; Restatement (Third) of Agency, § 2.02 (2006) ("An agent has actual authority to take . . . acts necessary or incidental to achieving the principal's objectives."); *cf. Hofer v. Gap, Inc.*, 516 F. Supp. 2d 161, 175 (D. Mass. 2007) (plaintiff bound by agent's acceptance of defendant's click-through agreement on its website). However, Oracle has alleged SAP knowingly accepted the offers under false pretenses, with false information, and *without* the actual authority to access Customer Connection in the manner they then did. As a result, SAP exceeded the scope of its agency in bad faith and made *itself* liable for breach of the contract

terms.[8]

**B. SAP Is Liable Based On Its Own Acceptance Of The Terms**

SAP clicked through Oracle's website and repeatedly agreed to the enforceable terms of use it encountered. Now, as a matter of law, it claims it cannot be bound by these agreements based on a complicated interpretation of how the contract terms apply or not to SAP. This analysis is simply not appropriate on a motion to dismiss.

SAP contends that its click agreements do not matter because Oracle extended the four contracts only to "customers with agreements with an Oracle entity." MTD at 23. In effect, SAP apparently believes it can agree to use terms with impunity, safe in knowing that its customers (whose contracts with SAP are not even before the Court) are bound but SAP is not. That is wrong, as both a factual and legal matter.

On their face, the contracts do not define their audience, but instead contemplate that *any* person using the websites can contract to the terms of the Customer Connection Agreements. Since this scenario matches Oracle's allegations exactly, Oracle has sufficiently made out a claim for breach of contract. *See, e.g.*, TAC ¶¶ 15-17, 54-60, 99, 102, 103, 104, 106, 180-184. The contractual language supports this analysis: the agreements extend the offers to "you" or "Customer," but neither term is defined. Instead, the agreements contemplate the offeree as a person accessing the site or server or using Oracle's web-based technical support services. *See* Lanier Decl. ¶ 23 & Ex. 5 (Customer Connection Terms of Use contemplate "customer" as a person "using the Oracle Customer Connection Web-based technical support services); *id.* ¶ 24 & Ex. 6 (Special Terms of Use contemplate "you" as a person "access[ing] and us[ing] [] certain protected and secured areas" of Oracle's website); *id.* ¶ 25 & Ex. 7 (SAR Legal Restrictions contemplate "you" as a person or entity accessing software from Oracle's server); *id.* ¶ 26 & Ex. 8 (Legal Download Agreement contemplates "you" as a person

---

[8] *Estate of Watts v. Dickerson*, 162 Cal. App. 3d 1160, 1164 (1984), cited by SAP, held that when a defendant in a personal injury suit makes a formal settlement offer to a plaintiff under Cal. Code Civ. Proc. § 998, and the plaintiff then dies, the plaintiff's estate cannot accept the offer. This case does not apply to Oracle's claims.

"accessing this Server"). Oracle has further alleged that SAP indicated its acceptance of each of the Customer Connection Agreements' terms when it clicked "Yes" or "I accept" on the websites. *See* TAC ¶¶ 54-60, 180-184. SAP does not dispute that this kind of assent can constitute valid acceptance of Oracle's offers. As a result, SAP's click acceptance of the enforceable website agreements binds it to those terms.

## VIII. CALIFORNIA LAW RECOGNIZES A CLAIM FOR UNJUST ENRICHMENT/RESTITUTION

Citing just two cases, SAP contends "California law does not provide a cause of action for unjust enrichment." MTD at 24. In fact, a slew of California state and federal courts – including several in this district – do permit this cause of action.

Under California law, "the elements for a claim of unjust enrichment [are]: receipt of a benefit and unjust retention of the benefit at the expense of another." *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 726 (2000); *see also In re Dynamic Random Access Memory Antitrust Litigation*, 536 F. Supp. 2d 1129, 1145-46 (N. D. Cal. 2008) (this Court found that the plaintiffs had properly alleged most elements of their unjust enrichment claim under California law). Other courts also recognize the claim.

Oracle meets its pleading burden here. In the TAC, supported by specific examples of unlawful conduct, Oracle alleges that SAP "unjustly received benefits at the expense of" Oracle and SAP "continue[s] to unjustly retain these benefits at the expense of" Oracle. TAC ¶¶ 219-221. Regardless of the title, Oracle's allegations suffice to state a claim for unjust enrichment/restitution under California law.

SAP cites to one Ninth Circuit case, *Paracor*, and one California state case, *Melchior*, as its support. MTD at 24-25. *Paracor* supports Oracle's position that this cause of action exists, holding that under California law "unjust enrichment is an action in quasi-contract…." *Paracor Fin. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). The *Melchior* court acknowledged that the plaintiff may have been "entitled to *restitution* under a quasi-contract theory" but did not plead it and "waived any such claim." *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) (emphasis supplied). Oracle pled its cause of

action as a claim for "Unjust Enrichment/Restitution," seeking a constructive trust and "full restitution of all amounts in which Defendants have been unjustly enriched at [Oracle's] expense." TAC ¶ 221. Accordingly, Oracle's Ninth Cause of Action even survives *Melchior*.

## IX. CONCLUSION

For the foregoing reasons, SAP's motion to dismiss this action should be denied. In the event that the Court is inclined to grant any portion of the motion, Oracle requests leave to amend the TAC.

DATED: October 29, 2008

BINGHAM McCUTCHEN LLP

By: ______________________

Geoffrey M. Howard
Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corp., Oracle Systems Corp., Oracle EMEA Ltd., and J.D. Edwards Europe Ltd.