Walsh v. Apple, Inc. et al Doc. 223

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE PHYLLIS J. HAMILTON, JUDGE

ORACLE USA, INC., et al., )
)
Plaintiffs, )
)
v. ) NO. 07-CV-01658 PJH
)
SAP AG et al., )
)
Defendants. )
)

San Francisco, California
Wednesday, November 26, 2008

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiffs: Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
BY: **GEOFFREY M. HOWARD**
**Attorney at Law**
JOHN POLITO
Attorney at Law
ANTHONY FALZONE
Attorney at Law

For Defendants: Jones Day
Silicon Valley Office
1755 Embarcadero Road
Palo Alto, CA 94303
BY: **THARAN GREGORY LANIER**
**Attorney at Law**

Reported By: **CHRISTINE TRISKA, CSR, RPR**
Pro-Tem Reporter

Dockets.Justia.com

Wednesday, November 26, 2008

9:20 A.M.

**P R O C E E D I N G S**

THE CLERK: Calling Civil Case 07 dash 1658, Oracle et al. versus SAP AG, et al.

MR. HOWARD: Good morning, your Honor.

THE COURT: Good morning. Your appearance.

MR. HOWARD: I was waiting for my colleague.

Jeff Howard on behalf of Oracle, your Honor.

MR. LANIER: Good morning, your Honor. Gregory Lanier of Jones Day for the Defendants.

THE COURT: Good morning. All right. This matter is on for hearing on the motion to dismiss filed by SAP.

I do have some questions. I guess the way that we'll do it is we'll start first with the copyright infringement allegations and then perhaps -- then the preemption argument. Those are the more difficult of the issues, I think, that are raised. The breach of contract and the unjust enrichment are not terribly problematic. So let's start first, then, with the copyright infringement allegations.

I'm a little unclear about the appropriate way to analyze this motion. It's purportedly brought under both 12(b)(1) and 12(b)(6). The arguments aren't entirely clear to me why it should be viewed as -- I mean the result could

very well be different depending upon the standard the Court imposes. It's not entirely clear to me that it's appropriate to look at the merits at this particular stage.

But I think the more troubling aspect of the case is it's not -- the Complaint isn't very clear, and it's not clear to me whether or not either of the two organizations, entities that are at issue in this portion of the motion, that's JDEE and OSC, whether or not they were either owners -- actual owners of copyrights that are asserted or exclusive licensees of the copyrights. And even though you've kind of made different arguments, it seems to me the ownership issue comes into play with respect to either one of these entities.

So whether or not we look at the extraterritorial activity of JDEE or the standard or capacity of OSC, it seems to me that the Complaint isn't entirely clear.

What's not clear is -- because there are multiple plaintiffs and multiple defendants it's not clear to me which plaintiffs are asserting which claims against which particular Defendants.

Are all the plaintiffs asserting all the claims against all the defendants, and do they all have equivalent status? That's not clear at all. So that's a difficulty I'm having with the copyright issue.

MR. LANIER: Your Honor, then, if I may, first touching on the ownership question and then circling back,

because it gets to the question of whether this is a 12(b)(1) or 12(b)(6) and whether it even matters at this stage, it's important to look at the two different parties, JDEE and OSC, separately, because they were in a different position. That's why we split our motion as to them.

OSC is not now and never has been an owner or exclusive licensee of any of the copyrights at issue. There's no dispute about that fact. It is not now an owner. It is not now an exclusive licensee. It has never been an owner and it has never been an exclusive licensee. So the only -- so from our perspective that ends it.

17 U.S.C. 501(b) makes it very clear that only the owner or exclusive licensee may bring suit. Then there's a related question of, if I'm the owner today may I reach back and assert claims based on conduct that occurred before I became an owner? That's a different issue.

They are trying to conflate these issues for reasons I'll explain in a moment. But the core point as to OSC is that it is now not and never has been an owner, and there's no dispute about that. In fact, the allegations in Plaintiffs' Complaint are that OSC is a successor-in-interest to parties that have been owners. That's, then, where the issue comes about potentially reaching back.

What Plaintiffs allege, and as a matter of fact we don't disagree with them, is that OSC is a successor-in-interest

to some of the corporations that were collapsed together to form the current Oracle Corporation.

One brief word of background, your Honor. You may recall that though this is *Oracle versus SAP*, the software that's at issue here was developed by other companies, for the most part PeopleSoft and JD Edwards. Oracle acquired those companies in early 2005 around the time that SAP acquired the TomorrowNow company. Over the years, principally in 2005, Oracle then took steps to organize its corporate ownership together. So OSC is a result of that. Nothing untoward about that. That is normal in the course of mergers and acquisitions.

OSC is the result of transferring non-IP assets -- no intellectual property -- but assets to form what's now called OSC. And how it became Oracle Corporation to OSC I don't think matters for purposes of this motion.

But the core point for OSC and why it's a 12(b)(6) motion is that it is not now and never has been an owner or exclusive licensee of any copyright interests. So from our perspective it simply does not have standing.

Plaintiffs argue that because it is a successor-in-interest -- I'm sorry, your Honor.

THE COURT: Standing is more a jurisdictional question.

MR. LANIER: Standing for -- copyright standing is

typically treated as an issue to be resolved on 12(b)(6), your Honor. All the cases that we put before your Honor treat copyright standing as a 12(b)(6) issue. That's why there's a little bit different issue with JDEE, where it's a question of JDEE purports to be an exclusive licensee, and it's a question of where its rights exist. That's typically treated as a jurisdiction question, whereas copyright standing is to be treated under 12(b)(6). And the parties agree the issue is ripe for resolution.

THE COURT: More as an element of the claim.

MR. LANIER: Exactly right, your Honor. It's an element of 17 U.S.C. 501(b), an owner or exclusive licensee may bring suit -- only an owner or exclusive licensee.

So what Oracle does in its opposition to the motion on OSC is to say, "Well, it's a successor-in-interest, therefore it acquired the right to sue for past infringement when it acquired all these other assets, and as a result it can sue."

The response to that, your Honor, is -- in addition to the cases that are in our papers -- is 17 U.S.C. 501(b) -- only an owner or exclusive licensee may initiate suit. It's right there in the statute. It's very clear. Oracle Systems Corporation, OSC is not an owner or exclusive licensee.

So the question of whether it could reach back to file suit based on pre-existing infringement is irrelevant,

because it can't file suit for copyright infringement. It doesn't have standing.

It's important to note that Oracle International Corporation --

THE COURT: But as the successor-in-interest didn't it acquire such standing?

MR. LANIER: It did not, your Honor, for two reasons.

Before the creation -- or the transfer or the creation of the current OSC -- and it had a different name at the time -- all of the intellectual property rights of the pre-existing companies were transferred to Oracle International Corporation, OIC. That's one of the named Plaintiffs on the copyright claim. We are not challenging its standing or the Court's subject matter jurisdiction on its claims. OIC remains in the case. OIC took transfer of all the IP interests of the companies that then became OSC.

What's missing is an express assignment of the right to sue for past causes of action. No one received that assignment. And here's the -- two of the cases -- I'm sorry, your Honor.

THE COURT: Why is it critical that that kind of express assignment have been made?

MR. LANIER: Because the law of this circuit as applied in this district in the *Co-opportunities* case, relying on the *De Silva* case, makes it very clear that there cannot be a

suit for infringement prior to the time one takes ownership or becomes an exclusive licensee of an express, written assignment.

The reason for that is in the statute, your Honor, because the statute U.S.C. 17 501 (b) not only says that only an owner or exclusive licensee may file a suit, it says may file suit for infringement that occurred while it was an owner. So the law is -- again the *Co-opportunities* and *De Silva* cases are the key cases, and they are in our papers -- requires an express assignment.

Now, part of the confusion may be that something is missing here. There is no express assignment of the right to sue for past infringement to Oracle International Corp., OIC. That's the party that we don't challenge its standing at this point. It's in the case. It owns the copyrights today. It didn't receive an assignment for the right to sue for past infringement. JDDE did not -- we'll turn to JDDE in a moment. OSC did not. So we don't know if anyone received an assignment for the right to sue for past infringement, but OSC did not.

Plaintiffs' opposition concedes that point and argues that it got the assignment by virtue -- by operation of law by virtue of acquiring the companies that had held that right. And again, your Honor, I would point to the *Co-opportunities* and *De Silva* cases that expressly hold even in the case of what they called a quote, "family", closed

quote of companies that the assignment must be expressed and it must be in writing. So OSC doesn't have standing.

But your Honor, from our perspective all of that -- that argument is irrelevant, because 17 U.S.C. 501(b) says only an owner or exclusive licensee may initiate a suit, and there is no dispute or complaint -- the allegations of the Complaint are crystal clear: OSC is not a current owner or exclusive licensee. It is a successor-in-interest to such entities.

So that's the issue with OSC. It's typically treated on 12(b)(6). There's no dispute about that in this case, and that's how the case is treated. It's a matter of standing as an element of the claim.

The JDDE issue -- I'm prepared to turn to that, your Honor.

THE COURT: Sure.

MR. LANIER: Thank you. JDEE is slightly different, and that's because JDEE is a party to a contract, which we put on the record before your Honor. It's Exhibit One to the Lanier Declaration.

JDEE is an exclusive licensee today, at present. And that's in -- you'll see paragraph 6.2 of Lanier Exhibit One, and that's the -- I've forgotten the name. I think it's a research and cooperation agreement. But Lanier Exhibit One, paragraph 6.2.

But it's worth -- I'll draw your Honor's attention to one specific provision to that paragraph to point out, as we point out in our papers, that JDEE has a right -- has an exclusive -- and then there are a variety of other words -- license in the countries set forth in Exhibit A. And Exhibit A provides that JDEE has its exclusive right in the countries that are colloquially called EMEA, Europe, Middle East and Africa.

It does not have any rights in the United States. There's no dispute about that fact. Its rights are as set forth in paragraph 6.2.

It's also, if your Honor is going to study this a little after, worth looking at paragraphs 6.1.1 and 6.1.2 of that same agreement, Lanier Exhibit One. And those specifically provide that the reason for this structure -- 6.1.1 makes it very clear that the reason for the structure is in order to assure enforcement of intellectual property rights. So the parties to this agreement had this issue in mind.

So now here's what's not disputed, and then we get to the fight. What's not disputed is that JDEE is a party to this agreement, and it has the exclusive license set forth in 6.2, and that exclusive license gives it limited rights but exclusive rights in EMEA, outside the United States.

Now, why it is a question of jurisdiction as

opposed to standing, your Honor, is because JDEE has an exclusive license. So it meets -- on the surface of it it meets the first -- the first element is 17 U.S.C. Section 501 (b). It is an owner or exclusive licensee today.

The point, though, is that JDEE does not have any rights in the United States. And it's important to make a distinction here. This -- our argument is not that if you hold the U.S. rights -- and let's take a scenario. Let's say just hypothetically for argument JDEE held U.S. rights, and I import -- I copy some of its software and I export it to France.

Our argument is not that that action is beyond the jurisdiction of this Court. There are other challenges to the damage claim. That is not our argument, because in that scenario JDEE has U.S. rights. They have a right that's recognized under the U.S. copyright. They can come before your Honor and say, "I've got a complaint. I want this relief," and then we can argue over the damages and everything else, whether it's copyrightable and all that stuff.

This is different. JDEE has no rights in the United States. Therefore, as the *Allarcom* and *L.A. News* cases -- it's useful to contrast, compare those two cases -- make clear it has -- its rights cannot be infringed in the United States. If its rights cannot be infringed in the United States no active infringement can be completed in the United States, its claims

are beyond the reach of this Court. It's an issue of extraterritoriality, which as the *Silver* and *Sybersounds* cases make it clear, there's 80 years of jurisprudence, the Copyright Act does not apply extraterritorially.

And it's worth for a moment touching on the *Allarcom* and *L.A. News* cases that are -- again, that are in our papers, your Honor. Both of those -- they give you the opposite sides of the same story. They get to the same principle.

In *L.A. News* the plaintiff there had rights -- worldwide rights, therefore they had rights within the United States. And somebody took some videotapes -- copyrighted videotapes and exported them, and they said, "We've got a copyright complaint." The defendants said, "No. That's extraterritorial. You sent it out of the country. Your damages happened there." And there the court said, "Well, no, because they had rights in the United States."

The question was not the locus of the conduct. It was the locus of the rights. That's the issue -- U.S. rights.

*Allarcom* --

THE COURT: The copyrights, though, are U.S. copyrights.

MR. LANIER: Correct.

THE COURT: There's no dispute about that.

MR. LANIER: Absolutely right.

THE COURT: And the agreement permits JDEE to distribute outside of the United States.

MR. LANIER: The agreement -- there's two points -- you're absolutely right. There's two points to follow up on on that vein.

The agreement doesn't just say, "I give you, JDEE, U.S. copyrights." It says, "I give you the rights to all this intellectual property" -- it could be patent rights, trademark rights, know-how, et cetera, et cetera. So it gets a variety of intellectual property rights. And JDEE is conferred one and only one right, which is the right to distribute and to make some changes to distribute in EMEA, outside the United States.

So yes, your Honor, there's no question that for purposes of this case we are talking about matters that they claim to be covered by the U.S. copyrights. There will be fights about that later for this motion. U.S. copyrights are at issue.

But the question is not, where did the conduct occur, which is why all of the pages and pages about who shot John and who did what where is irrelevant to this motion. It's not where the conduct occurred. It's not even for this motion where the harm occurred. It's where the rights exist. And JDEE has no rights in the United States. It may not come before this Court on a copyright claim.

And a final note, your Honor, I mentioned that the issue about, is this 12(b)(1)? Is it 12(b)(6)? Is it jurisdictional or is it not?

From our perspective two things are important: The first is that the issue doesn't matter. They concede the issue is ripe. It's ready for resolution. The only impact it might have on the Court's ruling is whether you consider all of that other evidence, which is irrelevant on the merits anyway.

But the other point is that it is verbally treated as a question of subject matter jurisdiction. The *Arbaugh* case dealt with Title VII issues, where the number of employees of the companies -- I'm sure your Honor is familiar -- the number of employees of the company is an aspect of the claim.

And in that case the Supreme Court and Justice Ginsburg held that that issue was not a question of jurisdiction. It was a question -- or it was not a question of jurisdiction. It was a question of the element of the claim.

And critically the procedural posture was very different. In *Arbaugh*, this issue was coming up after a jury verdict where a 12(b)(6) motion would have been too late anyway. So it really mattered what the outcome was there.

Here, though, all the cases treat territoriality as

a question of jurisdiction, rights or rights under the Copyright Act, and even cases subsequent to *Arbaugh*, cases decided the same year but subsequent to *Arbaugh* in this district, the *Williams* case, for example, treat the question of territoriality as a question of jurisdiction. So it arises under 12(b)(1).

Regardless, your Honor, from our perspective again, it doesn't matter whether it's 12(b)(1) or 12(b)(6). It is ripe and appropriate for resolution on this motion. We brought one motion that asserted theories up -- two different theories under 12, but separated it out as to the two different parts.

THE COURT: All right. So you're essentially relying on 12(b)(6) for OSC and 12(b)(1) for JDEE?

MR. LANIER: That's correct, your Honor.

THE COURT: All right. Your response?

MR. HOWARD: Good morning, your Honor.

Let me start with the question that you started with, which is why the three Plaintiffs, and then I'll respond to Mr. Lanier. I think Mr. Lanier actually covered it.

A plaintiff has standing if it is the owner or the exclusive licensee. OIC is the owner, and so it is a proper plaintiff. It exclusively licensed certain of its copyrights to JDEE, and so as the exclusive licensee, JDEE is also a

proper copyright plaintiff. And there's been no challenge to JDEE's standing before the Court.

OSC -- and I'm going to start with OSC because Mr. Lanier did -- OSC has standing as the successor-in-interest to owners of accrued, preexisting claims for copyright infringement. In their papers and here today there is looseness with which Section 501 is being described.

What 501 says is that, "An owner or exclusive licensee may" -- and now I'm quoting -- "institute an action for infringement of that particular right committed while he or she is the owner of it."

So OSC's predecessors-in-interest -- there's three companies -- were owners of a right under a copyright between 2002 and 2005.

We have alleged that those rights held by those entities were infringed during that time period, in other words, in the language of 501 while they were the owners of it.

THE COURT: But clearly not while OSC was an owner, because they succeeded in interest after the copyright alleged infringement occurred.

MR. HOWARD: Exactly right. So there's no dispute that there was a claim for copyright infringement that was held by the predecessors-in-interest right up until 2005; right?

Then what happens in 2005 is that those

predecessors-in-interest transfer their ownership in the copyrights to OIC, but they do not transfer their ownership of the claims that had arisen and which had given them standing in the pre-2005 time period.

THE COURT: Would they still have standing under that agreement? I mean, either -- I don't quite understand your argument. Either they retain the express right to sue, in which case they would no longer be owners as of the date this suit was filed, or they transferred it and OSC would be the owner.

I don't see how all three could possibly be in the same position.

MR. HOWARD: Well, in fact -- well, no. The cases distinguish -- and Mr. Nimmer distinguishes in his treatise between the ownership of the right and the ability to bring a claim for infringement of the right while the entity owned it.

And so, for example, the *Silvers* case, Ninth Circuit case, distinguishes between the conveyance of a copyright and the conveyance of a right to recover for infringement of that copyright.

That case approvingly cites the *ABKCO* case, and the language of that case is "that the assignor," which in this case are the predecessors-in-interest to OSC:

> -- "the assignor retains the right to bring actions accruing during its ownership of the right even if the actions

are brought subsequent to assignment."

That's a quote.

So --

THE COURT: So if the assignor retains the rights, how does that qualify OSC as a successor-in-interest in having the same rights? I don't understand how both can be in the same standing.

MR. HOWARD: So let me then, please, get to that point, because I wanted to first establish that -- and I don't think there's any dispute about it -- that the predecessor-in-interest retained the right to sue even after they transferred the copyrights to OIC.

So we're now in March 2005. OIC holds the copyrights, and the predecessors-in-interest have retained the right to sue. The only question then to your Honor's question is -- the only question is what happened to that right to sue when the predecessors-in-interest merge into OSC and cease to exist? Does the claim just evaporate into thin air?

That's what Mr. Lanier is suggesting; that there is a claim for infringement, that there is an infringer, and that there is an action that can be brought, and that simply by the result of merger that claim just evaporates into thin air and suddenly nobody has it.

THE COURT: Do you disagree that it has to be

expressly transferred or retained?

MR. HOWARD: Yes and no. Let me explain that.

I agree that it has to be expressly transferred when the transferor continues to exist. Mr. Lanier cited the *Co-opportunities* case to your Honor. In the *Co-opportunities* case the ownership was transferred but not the right to sue. Judge Patel then allowed the assignor subsequently three years later to make a second assignment solely of the right to sue, and then the assignee was held to have the ability to bring that preexisting claim.

The crucial difference there and the crucial difference in the *De Silva* case that was also cited to your Honor is that somebody was there to make that second assignment.

Here there is no prior entity. They have -- the agreements that have been provided to your Court say they have ceased to exist. So everything that is about them, everything that they have has been merged into OSC.

And it would defeat justice for sure -- and it certainly isn't part of merger law -- that the claims that *ABKCO* and *Co-opportunities* and *Silvers* and *Nimmer* and everybody say, the claims that still existed because they had accrued at the time that those entities owned the copyrights, it would defeat justice to say that they just disappeared. Of course they don't. They continue with the person who

succeeds to those entities.

So it's not a case --

THE COURT: And what do -- which of the cases specifically says that?

MR. HOWARD: Your Honor, no case has been cited to you by either side where the transferring entity has ceased to exist. But that is the dispositive factual difference.

If it is true that the assignor retains the right to sue, then there's -- then that right is there. And the distinction between *Co-opportunities* and *De Silva*, where somebody is there, a corporation or a sole proprietor is there who can sign the caption and bring the claim into you for resolution, the difference between those cases and this one is that now nobody has that if it's not OSC. And of course it has to be OSC because they've acquired everything.

THE COURT: Such result could have been avoided obviously by having express conveyance at the time of the merger; correct?

MR. HOWARD: I suppose that if we wanted to put ourselves back into the *Co-opportunities* time period we could have done that, but it's different. There is no reason to do that because a merger is everything. There's no question as there is when the transferor continues to exist. There is no question that something has been retained. Nothing has been retained. In a merger nothing gets left by the wayside because

everything that is held by that entity passes through to the successor-in-interest.

The same can't be said for the cases where that entity or sole proprietor continues to exist. Then the question has to be asked: Did they actually transfer the right to sue in addition to the copyright?

THE COURT: All right. Let's move on.

Did you want to respond?

MR. LANIER: All of that still doesn't matter because 17 U.S.C. 501(b) says: "The legal or beneficial owner of an exclusive right under a copyright," and it goes from there.

So the person that may come before your Honor and seek redress under the copyright laws must be a legal or beneficial owner. There is no question that at the present time OSC is neither a legal or beneficial owner of an exclusive right. It's not the owner. It's not the exclusive licensee.

All of the cases that permit someone to reach back and say, "I have the right to sue for past infringement," involves someone who's an owner or exclusive licensee. The reason the law permits that is because I might own the copyrights -- I might exclusively license them to your Honor. Either of us could sue my colleague over there. Then the question is who gets to sue for the old stuff? That's where -- that's where you might have -- that's why you need

to do these assignments.

But in this circumstance the dispositive fact that's admitted in the Complaint itself is that OSC is not the legal or beneficial owner at the present time. It does not have standing, period.

MR. HOWARD: Your Honor, may I just say one other thing?

If that -- that statement ignores *Nimmer*, which cites *ABKCO*. *Nimmer* says:

> "Absent retroactive grant to the infringer only the grantor, not the grantee, has standing to sue for pre-grant infringement."

So it just isn't the case that you have to currently at the time you bring your suit be the owner of the copyright. *Nimmer* is clear, *ABKCO* is clear, and *Silvers* is clear. You can bring a claim if you were the owner, in the words of 501, "at the time it accrued."

Here when the merger into OSC happened nobody knew about these claims.

THE COURT: Okay. All right. We need to move on.

MR. HOWARD: So I'll address the JDEE issue next.

Your Honor's exactly right. JDEE has a U.S. right. It is a U.S. copyright that has been exclusively licensed to it, and that is a U.S. right. It's not a European right; it's a

U.S. right.

The question, then, is not what the geographic scope of that right is -- and it's much broader than what Mr. Lanier said. He said there's only one and only one right, which is distribution. That's not so. The right is to modify, develop, reproduce, make, have made, sell -- all of the rights that go with the U.S. copyright.

The law is very clear. It is not the geographic scope of that right. It is the location of the conduct. It is the location where the regulated conduct occurs.

Mr. Lanier has overruled the Ninth Circuit's affirmance of your Honor in the *Blazevska* case, where you held that it's the location of the conduct that matters when you're looking at the extraterritorial bar to a statute.

Here we have alleged the conduct that violates the U.S. right and the scope of the license I just read. That conduct was copying in the United States, in Texas, of U.S. rights that were exclusively licensed to JDEE, and then the exploitation of that infringing act into JDEE's territory.

And if there was any doubt about it under *Blazevska*, under *Massey* on which your Honor also relied in that decision, as we pointed out in our opposition, and which got no response in the reply and no response now, the Congress has just amended the Copyright Act, and it has made clear in Section 602 that the exportation of infringement is

actionable in the United States. And that is all that we have alleged here.

There was copying that infringed JDEE's rights -- their U.S. rights. It was exported into Europe, where JDEE has the exclusive license to distribute. That conduct that we have alleged is infringing occurred in the United States, and it is actionable, and I don't think there can be any question about that.

If your Honor would like me to address the 12(b)(1) versus 12(b)(6) issue I'm certainly happy to do that as well. It was brought under 12(b)(1). It's not brought under 12(b)(6). It is not properly brought under 12(b)(1), which I think is sufficient at this point to deny the motion.

The *Arbaugh* case sets forth -- the U.S. Supreme Court sets forth a bright line rule. That's the language of the Supreme Court. And the bright line rule is that unless Congress in a federal statute has specifically made extraterritoriality a jurisdictional issue, then it's not. It is a criteria, an element of the claim that's properly treated under 12(b)(6). So the motion is not proper under 12(b)(1).

The *Litecubes* case, which is a federal circuit case, applies *Arbaugh* to the Copyright Act and properly so, because the Copyright Act, as did the Title VII in *Arbaugh* does not have that statement of Congressional intent.

Mr. Lanier refers to the *Williams* case, which was Judge Breyer's affirmance of Magistrate James's report, and in that case I just wanted to point out to your Honor there's no mention at all of *Arbaugh*, and in fact the reference by Judge Breyer to Judge James occurred prior to the *Arbaugh* decision. Judge James issued her OSC prior to the *Arbaugh* decision, and I think it's fairly clear from the decision that neither the parties nor the court were considering *Arbaugh* at the time of that decision.

THE COURT: All right. We need to move along to the preemption argument. All right.

I'm a little unclear about what's in dispute. I mean, it seems to me that the -- I mean, the Defendants' argument is that the state claims for the most part are preempted by the Copyright Act.

There is a statement, however, in each of the various different arguments that to the extent that each claim relies upon the Copyright Acts, that they are preempted, but to the extent that there are other allegations, and the other allegations are kind of these misrepresentation, fraud, deceit claims, that there isn't. So it seems to me you all are in agreement.

I am not sure that I can articulate, because I'm not sure you all have articulated exactly what the something extra is with respect to each of the claims.

MR. LANIER: Thank you, your Honor.

I think we are in agreement -- and it's important to start there and then to point out why -- if we are in agreement why do we even need to have this motion? That thought probably crossed your Honor's mind.

We are in agreement -- parties agree that to the extent the various state law claims are based on conduct of acts of alleged copyright infringement they are preempted by the copyright laws.

THE COURT: Right.

MR. LANIER: Now, as all of the decisions before your Honor have pointed out -- well, one other point we're in agreement on -- in fact, they are so much in agreement on it that in the Third Amended Complaint Plaintiffs tell you that they actually carved those allegations out of those various different claims.

'Cause if you look at the incorporation paragraph at the beginning of every state law cause of action where it says, "We rely on these paragraphs," they chop out the allegation, the specific paragraphs that assert the cause of action for copyright infringement. So they are so much in agreement with us that they say they did it.

The problem, and why we had to bring the motion, is that isn't actually what happened, because each and every one of the state law claims is based on paragraphs that allege

acts of copyright infringement, even if they are not expressly based on the claim of copyright infringement.

Let me just give your Honor a couple of examples. Paragraph 19, which is incorporated into every one of the state law claims, alleges illegal downloading and illegal copying. Paragraph 101, which is incorporated into every one of the state law claims, further describes illegal downloading. Paragraph 114, which is incorporated in one of them says "thousands of copies." Paragraph 118 of the Third Amended Complaint, which is also incorporated into those state law claims -- it's the basis of those claims -- talks about impermissible copying and the creation of derivative works.

So each and every one of the state law claims is based on acts of alleged copyright infringement and is preempted.

Now, why this issue is always tricky and troublesome is because you can't just rely on broad labels -- preempted, therefore the whole claim goes. You have to, unfortunately, look at the specific conduct alleged.

Every case that has been put in front of your Honor dives down into, what facts do they allege? Do they allege that you copied? Okay. That's preempted. Do you allege that they did something that is not protected by the copyright laws? That's not preempted.

And in our reply brief we try to do some of that work for your Honor by -- your Honor may recall in our reply brief we've actually taken the allegations that they relied on in their various state law claims and done strike-throughs, and we think this stuff is covered by the copyright laws. So I won't repeat all that here. It's in our reply brief, your Honor.

The important point is this: Labels don't decide the issue. They agreed with us on all of these points. They agreed that you need to go claim by claim, conduct by conduct and decide, is this preempted or not? Because as your Honor knows, a state law claim could attack a broad swath of activity.

Fundamentally this case is about two things: It's about whether TomorrowNow was properly on those Plaintiffs' computers, and there's a variety of claims in the case not at issue here -- Computer Fraud and Abuse Act, California CDAC, trespass to chattels -- that aren't at issue here.

The other thing that this case is about is copyright infringement. What was done with the software that shouldn't have been done?

Those claims are covered by the Copyright Act and they are prohibited. We've tried in our reply brief to say, "This stuff is prohibited." Their biggest argument in response is to say, "well, use." We don't say -- we say not

only that you copied and created derivative works and distributed, which are all rights unequivocally covered by the Copyright Act, but you also "used" the software. That's different. That's not preempted by the copyright laws.

That's wrong for two reasons, your Honor, and the *Altera* case, which is in the papers, is key here. In *Altera* the Ninth Circuit considered the preemption argument involving software, and the Ninth Circuit actually found no preemption. But it's important to look at why it did.

In *Altera* what the Ninth Circuit did is said you have to make this distinction -- distinguish between copying the software. That's an act of copyright infringement. If I make a copy and I give it your Honor, that's an act of copyright infringement if I don't have permission to do it.

But if I take the software and I run the software to run my business -- I take some PeopleSoft financials and I run my business based on that and I don't pay for it, that's not covered by the copyright laws -- my copying, my distribution, my derivative works are.

So in *Altera* what the Ninth Circuit distinguished between was copying or other copyright-related activities with the software and use of its output. Those types of claims are not preempted. They are legitimately different.

But everything -- and again we touched upon this in our reply papers, your Honor -- everything that Plaintiffs

say is extra and different is one of two things: It's either access to computers -- and we do not claim that those claims are preempted by the copyright laws. That's not our motion, never has been -- or it's a use. And they say, "It's use, therefore it's different." But you have to look behind the label of "use" just like the Ninth Circuit did in *Altera* and say, what does use mean? And if use is copying, if it's creating a derivative work, if it's distributing, or the other rights protected by the copyright laws then that's preempted.

So it's unfortunately a preemption issue that this many state law claims creates an incredible amount of work for the Court. We've tried to do some of that in our reply paragraphs with a strike-through.

The core point is that it's a fact-specific analysis, not a label-specific analysis. And in view of the Court's time -- and I know you have another matter -- I can stop here, and I could of course go on. We'll stop here.

THE COURT: All right.

MR. HOWARD: Thank you, your Honor. I certainly agree that it's a fact-specific analysis, and that's why this simply isn't proper in a 12(b)(6) motion.

Your Honor made some remarks when we first appeared before you about the length of our Complaint. But let me say that even the length of our Complaint can't begin to capture

what happened over several years where software is being used every single day by many different people.

Our allegations are summaries of conduct that occurred. And in some of those -- in some of those -- and they are -- and that conduct occurs pursuant to hundreds of different customer license agreements, some of them with varying terms that affect how that software can be used.

So what -- really what the Defendants are asking you to do is to give an advisory opinion, or to grant summary judgment based on facts that differ according to the day, according to the person, according to the year, according to the software, and according to the license agreement. And I just don't think that is the thing that the Court should be doing now on a 12(b)(6) motion.

And the reason that's critical is that there are instances, as we have alleged, where software was copied or distributed or derivative works were made. Those are the things that Section 106 reserves exclusively to the Copyright Act.

But the law is clear that where there are contractual restrictions that restrict the use of that software, or where there has been a misrepresentation that is used in the course of unfair competition or used in the course of interference, then that is not preempted by the Copyright Act.

And so in each of these instances with each of

these allegations both are true. And we will prove that both are true depending on the day, depending on the year, depending on the release of the software, depending on the license agreement at issue.

And we have -- specifically with respect to the interference claim we have pointed you to many cases where there is a copyright allegation, and there is use of that same copied software in ways that are not contemplated as a specific restriction under 106, and where those claims are allowed to proceed. They are routinely allowed to proceed.

And so let me conclude by positing sort of two different scenarios. In Scenario One, there is a copy which is made, and its a violation of 106, and that copy is then used in ways that violate the applicable license agreements, which is what the *National Car Rental* case said was improper, what the *ProCD* case said was improper, what *Meridian*, *Summit* -- all of these cases say: You can't do it if it's a right that's separate and apart from a private contractual right, separate and apart from the rights under 106.

But there is a whole other category -- there's a second category of claims where that copy that I used as my predicate, that copy is not a violation of 106. So simply the word "copy" doesn't mean anything, because it may be a licensed copy.

And we've even said in our Complaint that there

were instances where the access to Customer Connection may have been properly within the scope of the customers' agreement, or the copy may, depending on the license agreement -- may have been properly offered -- not a 106 violation, but then just as in the *National Car Rental* case, just as in the *Summit* case, you take that copy and you use it. And that use is an interference, and it gives rise to inducement of breach as in *Altera*, and breach as in *National Car Rental* and *Summit* and *Meridian* and all of those other cases.

So depending on the factual scenario those all should be allowed to proceed.

THE COURT: All right. Let's move onto the breach of contract.

The difficulty that I have with this, it seems to me that this is the essence of the lawsuit about whether or not the clickwrap agreements are binding agreements between your client and Oracle or whether they only apply to customers. That seems to me to be the heart of the agreement, and it's -- I'm very reluctant on a 12(b)(6) motion to grant the relief that you're seeking.

MR. LANIER: May I, your Honor?

We agree with you completely. This is -- this issue, this breach of contract gets to the crux of the case, and it points out the central tension that affects every

aspect of their pleading and conduct of the discovery of this case, because Plaintiffs are, to be cliche, trying to have their cake and eat it too.

They are trying to say, "You can get on our systems but you can't get on our systems." That's really what they're saying there. And I would draw your Honor's attention again with limited time to look at page 21 of their opposition brief, lines 23 to 24, and that's really instructive of the problem. And that's where they say: The Defendants accepted the agreement by clicking an "I agree" but then promptly violated it by accessing the website.

It can't be both. If you can click "I agree," if you're an intended offeree who can accept this contract and get on the website, then you can't properly violate it by getting on the website.

And to address your Honor's concern, we understand that. And I hate to say this on behalf of my clients, but there's a remedy. If our clients didn't belong to the website there's a remedy. It's pled in this case. There's a CFAA claim. There's a CDAC claim. There's a trespass-to-chattels claim. Congress and the state of California have gone to a lot of trouble to figure out, what are the remedies that are available if people get on their computers without the right to be there? And those claims are in this case. Now, we have other issues with them.

We'll talk about damages -- not leaving them without those remedies, though.

But the key point is, they chose a person to assert a claim for breach of contract. It's fundamentally at tension with their entire case, and those contracts, if your Honor reads them -- and I draw the Court's attention -- they are all attached to the Lanier Declaration -- each and every one specifically contemplates an ongoing relationship with Oracle -- each and every one of them.

And we put language in our papers -- I could reread them. I won't do it. They are in front of the Court -- every one of those contracts says, "You, the customer" -- but it's not just those words. Let's not rely on labels.

THE COURT: But is it really just a matter of clicking and getting on? Isn't it the use to which the software is put that's at issue and not just the accessing of it?

MR. LANIER: Exactly. And that's why we have to get back to the use, your Honor.

The use. What's the use? Is it downloading it? It's a copy. Is it taking that copy and giving it to someone who doesn't have a right to it? That's a copy -- that's a copyright infringement. Is it tweaking that software, modifying it in some way so then I can give it to someone else? That's creating a derivative work. It's a copy.

So the non-preempted things that could be the

subject of the breach of contract claim all relate to access to computers -- all of them.

And again, there are claims specifically in the case for that, but fundamentally it's important to remember -- these are not contracts we came up with. These aren't contracts that resulted from TomorrowNow and Oracle sitting down and coming up with some agreement, and we're now saying, "Ah-ha, there's a technicality. We can't get on."

TomorrowNow got to those computers in the course of providing service to its customers. Every one of those agreements -- every one of them says, "We have another agreement with you. Your use is in furtherance of our continuing relationship subject to that agreement. Don't do things that violate that agreement."

There is no further agreement between TomorrowNow and them. So the point is, TomorrowNow is not the intended offeree. If somebody reached those agreements it was the people who gave TomorrowNow permission to go there. But that doesn't mean they're without a remedy if the access was improper. They've pled their argument. That's all I have.

THE COURT: I think that's a pretty good argument.

MR. HOWARD: Your Honor, their breach of contract claim relates to one agreement.

THE COURT: Well, I'd like to you respond to counsel's argument that what Oracle is attempting to do is to have it both

ways. Either you have permission, because you're a party to the contractual agreement, in which case using the software wouldn't be a breach of contract although it might be something else, or you are not a party to the agreement, in which case you have something other than a breach of contract.

MR. HOWARD: Sure. I'd be happy to address that. And again it gets back to the idea that there is a wide variety of factual scenarios that are at issue here.

We say in the Complaint that in some instances under some license agreements that customers have with Oracle Defendants could go onto Customer Connection, the website, and download things.

When they do that they agree to use those downloads in a particular way. And in fact they agree not to cross-use them for other customers other than the one whose credentials were used to download these particular items.

So simply accessing in that situation simply creates a contract which then can be breached down the road, and which was breached down the road by the cross-use of those materials in support, for example, of other customers.

Let me give you a very concrete example.

THE COURT: Just so I understand, in some instances the accessing is not a breach of any kind of contractual agreement, and, in fact, is a permissible act on the part of the Defendant.

MR. HOWARD: We say that in the Complaint. That's right, your Honor.

THE COURT: But under some other instances they are not permitted to do so?

MR. HOWARD: Exactly right, your Honor. And so the access to the website -- and please keep in mind, your Honor, that the materials available to download from the website are only one component of the software that's at issue in the case. They are the support materials -- the patches and the bug fixes and the documentation for the ongoing support of the underlying software.

They also copied the underlying software not by going onto the website but by acquiring it from their clients and putting it up on their systems. So we're talking about just these downloads now and the contract that governs the access to and use of those downloads.

So they have a client. Let's say it's Merck. Merck is issued a password credential to get onto the website by Oracle. Merck gives that password credential to defendants. Merck has a license to Software A but not Software B. So Merck is entitled to -- and they give the password depending on the license agreement to defendants -- defendants may be entitled to go onto the website with that credential, take their patches for Software A but not Software B; right?

So when they go on and they download both for

Software A and for Software B, both are true. They are there properly -- under this hypothetical and for purposes of this argument properly to download for A. They are not there -- they do not have permission, they do not have access, and they have breached immediately the access agreement to download for Software B.

They did this repeatedly to the tune of 8 million files. Some of those files were downloaded using credentials for which the customer was licensed. Millions of them were downloaded using credentials for which the customer was not licensed.

Now, we have Software A patches and Software B patches. They are all put on the local computer at the defendant's place of business, and they have one thing in common: Both are subject to the contractual use restrictions that were agreed to when they were downloaded, which is they will not be -- among other things, they will not be used to support other customers.

Both were used to support other customers. So regardless of whether there was permission to download the patches for Software A, the breach now, then, occurs subsequently when those are used to go support a customer that's not Merck. And so at that point the agreement that "I will only use this for the customer whose credentials I was using" is breached.

Now -- so there's different ways this breach occurs. And in the Software B case, where the download is of -- in the first instance, in breach of the terms of use materials for which that customer is not licensed California law, code says that if in bad faith you know that you don't have that permission you are directly liable. You are liable as a principal. And that's exactly what he have alleged.

THE COURT: Okay. All right. And lastly, the unjust enrichment.

MR. LANIER: Your Honor, may I have one sentence on that breach of contract?

Look behind the word "use," because all of the things that Mr. Howard alleges are -- these are the other things that were then later the breach of contract are copying: cross-use is copying, providing it to someone else and using it for someone else -- it's a copy. This is software. It's copying.

The only non-preempted claims that could be subject to breach of contract are access claims for which there's a remedy, but nothing else, your Honor.

MR. HOWARD: That just isn't true, your Honor. We've alleged research, training --

THE COURT: I don't want to hear anymore.

All right. Unjust enrichment. I'm not so sure there's any real dispute. You both agree that unjust

enrichment is not necessarily a separate cause of action. It's really a theory of recovery.

Clearly, the -- Oracle's entitled to plead both contract and unjust enrichment, which is synonymous with restitution as an alternative theory. I don't believe there's any dispute that Oracle could not prevail or at least could not recover under both theories. Either there's contract and tort, or there is unjust enrichment restitution, but there's not both.

Is there any dispute to that?

MR. LANIER: There's no dispute as to anything your Honor just said. We agree with all that. But I would draw your Honor's attention later to paragraph 220. That's the core paragraph on the unjust enrichment claim.

So what paragraph 220 establishes is that Oracle has not pled in the alternative. They've not pled alternatively. They've pled cumulatively. That's what they've done here. They have pled that based on breach of the agreements, based on interference, based on a trespass, based on computer fraud, based on our legal claims we get this additional remedy. And they most clearly here do not plead in the alternative, as an alternative to a claim for breach of contract, as an alternative to a tort claim.

THE COURT: That can be cured relatively easily.

MR. HOWARD: Yeah, your Honor, I'm not even sure --

this is a standard form of pleading. You're not -- there is a -- they have said that the contract is unenforceable, and so in that instance the unjust enrichment claim stands in its stead.

To your Honor's question, I think there is an agreement that nobody's entitled to double recovery. The question is whether the theory --

THE COURT: Recovery under both a straight theory of breach of contract and unjust enrichment.

MR. HOWARD: For the same acts.

THE COURT: For the same acts.

MR. HOWARD: For the same acts. So there may be acts for which -- you know, they've said they're going to challenge a whole bunch of things. There may be acts for which your Honor decides there is no contract or tort recovery, but we will still have an unjust enrichment recovery. We agree with that.

MR. LANIER: And we agree with your Honor, this could be -- this can be cured -- this is one that can be cured by amendment, but this is not alternative pleading. This is cumulative pleading. As they pled they are seeking an additional remedy, not an alternative remedy. That can be cured by amendment.

MR. HOWARD: Your Honor, I'm not sure that there is a rule that says you have to say that it's in the alternative, and I'm not sure that it necessarily is the case that it's only in

the alternative where we've alleged, as we are allowed to, that there's the receipt of a benefit and there's the unjust enrichment of the benefit.

That is -- in many ways there are alternative theories that run through his Complaint as there are in any other, and it depends on how the case proceeds whether and which of those is going to proceed at trial.

But I think to say that it's purely an alternative at this point -- it's not necessary. But if that's the Court's view I don't think it needs to be expressly stated in the Complaint.

THE COURT: I'll decide. I kind of think that you haven't really clearly pled restitution. I'm not sure I understand this particular claim in its entirety, but I'll take another look at it. I'll spend a little more time on the case before we issue anything.

The difficulty -- I think that you've made some very good arguments. The real difficulty is that so many of the arguments go to the heart of the dispute, and I'm not sure that I'm comfortable at this juncture of the case -- it seems more appropriate that some of the arguments you've raised should be raised on a dispositive position, although you all have submitted a lot of evidence on the 12(b)(1) issues so there probably is sufficient evidence on a couple of those.

But one of the other difficulties is, as was just raised by counsel in the discussion on the breach of contract, and that is that there are so many variations.

The Complaint is dense and very difficult to follow. I mean, you all have been living with this case for years, and you probably know all the various different permutations. So I'm not sure that I understand -- well, I'm sure I don't understand every way in which Oracle is alleging that the agreements were abused and all the other various ways in which they are arguing their intellectual property was violated by a whole host of conduct. It's not just one act -- one contract, one act.

So I'm not sure that I understand it all enough to give you the kind of relief you're seeking on all of these, although I think there are a couple I can easily resolve -- a couple of issues that can be resolved.

In any event, though, I'll take the matter under submission.

MR. LANIER: Very well. Happy Thanksgiving, your Honor.

MR. HOWARD: Happy Thanksgiving.

MR. LANIER: Thank you. Your Honor.

(End time: 10:22 a.m.)

**CERTIFICATE OF REPORTER**

I, CHRISTINE TRISKA, Pro-Tem Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in 07-CV-01658 PJH, Oracle Corporation et al., v. SAP AG et al., were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

___________/S/ CHRISTINE TRISKA___________

Christine Triska, CSR 12826, RPR

Tuesday, December 9th, 2008