Walsh v. Apple, Inc. et al Doc. 224

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ORACLE CORPORATION, et al.,

Plaintiffs,

v.

SAP AG, et al.,

Defendants.

_______________________________________/

No. C 07-1658 PJH

**ORDER GRANTING MOTION TO DISMISS IN PART AND DENYING IT IN PART**

Defendants' motion to dismiss for lack of subject matter jurisdiction and failure to state a claim came on for hearing before this court on November 26, 2008. Plaintiffs appeared by their counsel Geoff Howard, John Polito, and Anthony Falzone, and defendants appeared by their counsel Tharan Gregory Lanier. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion in part and DENIES it in part.

**BACKGROUND**

This is a case alleging theft and misuse of intellectual property. Plaintiffs are Oracle USA, Inc. ("Oracle USA"), Oracle International Corporation ("OIC"), Oracle Systems Corporation ("OSC"), Oracle EMEA Limited ("OEMEA"), and J.D. Edwards Europe Limited ("JDEE") (collectively, "Oracle").

Oracle USA is a Colorado corporation, and is the successor to PeopleSoft USA ("PeopleSoft), and to certain PeopleSoft and J.D. Edwards ("JDE") entities.[1] OIC is a California corporation, and owns and licenses certain intellectual property, including

[1] JDE was bought out by PeopleSoft in 2003. PeopleSoft, in turn, was acquired by Oracle USA in 2005.

Dockets.Justia.com

United States District Court
For the Northern District of California

business enterprise software programs used throughout the world. Intellectual property rights held by certain PeopleSoft and JDE entities were transferred to OIC as part of the acquisition of PeopleSoft. OSC is a Delaware corporation and is a successor-in-interest to certain PeopleSoft and JDE entities. OEMEA is an Irish private limited company with its principal place of business in Ireland, and is also a successor-in-interest to certain PeopleSoft and JDE entities. JDEE is a nonresident Irish private limited company that licenses certain intellectual property throughout the world.

Defendants are SAP AG ("SAP AG"), SAP America, Inc. ("SAP America"), and TomorrowNow, Inc. ("TomorrowNow" – now SAP TomorrowNow or "SAP-TN") (collectively "SAP"). SAP AG is a German corporation. SAP America is a Delaware corporation, and is a wholly-owned subsidiary of SAP AG. SAP-TN is a Texas corporation, and is a wholly-owned subsidiary of SAP America.

The events that led to the filing of this lawsuit began in late 2004, when Oracle USA announced its impending acquisition of PeopleSoft. Oracle alleges that SAP AG decided at that time to offer support and maintenance services for PeopleSoft customers, starting in early 2005. Oracle asserts that in order to do this, SAP AG acquired TomorrowNow.

TomorrowNow was a small software services company, headquartered in Texas, which had been founded by a group of former PeopleSoft software engineers and technicians. TomorrowNow claimed to compete with PeopleSoft, JDE, and Oracle by providing low-cost customer support and maintenance services to customers of those companies running assorted versions of their software programs.

Oracle alleges that prior to the acquisition by SAP AG, TomorrowNow had previously been illegally accessing PeopleSoft via "non-production" copies of PeopleSoft's software. After acquiring TomorrowNow, SAG AG renamed it SAP-TN, and then allegedly conspired to leverage the stolen Oracle intellectual property (the PeopleSoft software) to "entice customers to migrate to SAP software applications" and to cover up the illegality of that plan/program, which was referred to as the "Safe Passage" program. Oracle claims that SAP proceeded, through SAP-TN, to illegally download Oracle's proprietary,

copyrighted software products, from Oracle's password-protected customer support website, for its PeopleSoft and J.D. Edwards product lines, and then was able to offer Oracle customers "cut-rate support services."

Oracle filed the present action on March 22, 2007, and filed the TAC on October 8, 2008, pursuant to stipulation. Oracle alleges 10 causes of action in the TAC: (1) copyright infringement, by OIC, OSC, and JDEE, against all defendants; (2) violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a), by Oracle USA and OIC, against all defendants; (3) violations of the Computer Data Access and Fraud Act, California Penal Code § 502, by Oracle USA and OIC, against all defendants; (4) breach of contract, by Oracle USA, against all defendants; (5) intentional interference with prospective business advantage, by Oracle USA, OIC, and OEMEA, against all defendants; (6) negligent interference with prospective business advantage, by Oracle USA, OIC, and OEMEA, against all defendants; (7) unfair competition, under California Business & Professions Code § 17200, by Oracle USA, OIC, and OEMEA, against all defendants; (8) trespass to chattels, by Oracle USA, against all defendants; (9) unjust enrichment and restitution, by Oracle USA, OIC, and OEMEA, against all defendants; and (10) a claim for an accounting, by Oracle USA, OIC, and OEMEA, against all defendants.

SAP now seeks an order dismissing the first (as alleged by JDEE and OSC), fourth, fifth, sixth, seventh, ninth, and tenth causes of action.

## DISCUSSION

A. Legal Standards

Subject matter jurisdiction is fundamental and cannot be waived. Billingsly v. C.I.R., 868 F.2d 1081, 1085 (9th Cir. 1989). The court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction. Id. On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of demonstrating that subject matter jurisdiction exists over the complaint. See, e.g., Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001); see also Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). In determining

whether it has subject matter jurisdiction, the court is not limited to the allegations of the complaint. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2001). Rather, the court is permitted to look beyond the complaint to extrinsic evidence, and need not assume the truth of the plaintiff's allegations. Id.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). All allegations of material fact are taken as true. Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007). However, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, __, 127 S.Ct. 1955, 1965 (2007). A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 1966-67.

B. Defendants' Motion

1. Copyright infringement as alleged by JDEE and OSC

In the first cause of action, plaintiffs allege that all three defendants infringed copyrights in Oracle's software applications and software and support materials. They assert that OIC owns a valid and enforceable copyright in all of its software applications and software and support materials, and has obtained all rights and title in copyrights formerly held by PeopleSoft and JDE entities. They assert further that OSC is "the successor-in-interest to previous owners of certain copyrights at issue in this case," and that JDEE is "an exclusive licensee of certain copyrights at issue in this case." TAC ¶¶ 148-151. They list more than 80 specific copyrights that they claim have been infringed. See TAC ¶¶ 153, 155.

SAP argues that the first cause of action should be dismissed for lack of subject matter jurisdiction as to JDEE, because JDEE's claims are based solely on non-US rights. SAP also asserts that the first cause of action should be dismissed for failure to state a claim as to OSC, because only the copyright holder (OIC) or an exclusive licensee has

standing to sue for copyright infringement.

a. JDEE

SAP asserts that JDEE's claims are wholly extrajurisdictional and therefore must be dismissed. Federal copyright laws do not have extraterritorial application, and acts of infringement that occur entirely outside the jurisdiction of the United States are not actionable under the Copyright Act. Subafilms, Ltd. v. MGM-Pathe Comm'ns Co., 24 F.3d 1088, 1090 (9th Cir. 1994). For the Act to apply, at least one alleged infringement must be completed entirely in the United States. Los Angeles News Serv. v. Reuters TV Int'l, Ltd., 149 F.3d 987, 990 (9th Cir. 1998).

In the third amended complaint, plaintiffs assert that "JDEE is an exclusive licensee of certain copyrights at issue in this case." TAC ¶¶ 46, 151-152. However, SAP contends, the only agreement under which JDEE is granted any exclusive rights in the copyrights at issue in this case limit JDEE's rights to Europe, the Middle East, and Africa. Thus, SAP argues, because JDEE has no rights in the United States – does not own the copyrights, is not an exclusive licensee of the copyrights, and has distribution rights only outside the U.S. – there can be no infringement of JDEE's rights under the U.S. Copyright Act. Since JDEE's rights exist only outside the U.S., any infringement of those rights can occur only outside of the U.S.

In opposition, plaintiffs assert that JDEE is a proper copyright plaintiff, and that in any event, extraterritoriality is not a jurisdictional issue. Plaintiffs claim that JDEE has "exclusively licensed certain U.S. copyrights at issue in this case," and that it alleges that SAP infringed its exclusive rights to those copyrights (citing TAC ¶¶ 147-162).

Plaintiffs concede that the Copyright Act does not apply where infringing actions take place outside the U.S., but contend that it does apply when a defendant infringes in the U.S. and then "exploits that infringement abroad." Plaintiffs allege that here, SAP committed numerous acts of infringement in the U.S. and "exploited them worldwide," and that based on these allegations, JDEE is entitled to recover damages flowing from the "exploitation abroad of the domestic infringement committed by the defendants."

The court finds that the motion must be GRANTED as to the copyright infringement claim asserted by JDEE. Plaintiffs do not allege that JDEE has any rights that could give cause to a claim of copyright infringement under the U.S. Copyright Act. Because the only right in U.S. copyrights that JDEE possesses is the right to distribute some of the software products outside the U.S., the only infringement that could have occurred as to JDEE would be infringement of its right to distribute extraterritorially.

b. OSC

As for the copyright infringement claim as to OSC, plaintiffs allege that OSC "is a successor in interest to certain PeopleSoft and J.D. Edwards entities," and that "OIC, JDEE, and OSC's predecessors-in-interest owned one or more exclusive rights in certain copyrights at issue in this case at a point in time during which [d]efendants infringed those exclusive rights." TAC ¶ 152. SAP notes, however, that Oracle does not allege in the TAC that OSC is or ever has been an owner or exclusive licensee of the asserted copyrights.

Under the Copyright Act, only a "legal or beneficial owner of an exclusive right under a copy right is entitled . . . to institute an action for any infringement of that right while he is the owner of it." 17 U.S.C. § 501(b); see also Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1144 (9th Cir. 2008) (only copyright owners and exclusive licensees of a copyright may enforce a copyright or license).

SAP contends that by failing to allege the OSC is or ever has been an owner or exclusive licensee of certain of the asserted copyrights, plaintiffs have failed to plead that OSC has standing to bring suit to enforce those copyrights. Thus, SAP asserts, plaintiffs have failed to state a claim for copyright infringement as to OSC. SAP also contends that there is no evidence that OSC ever owned nor exclusively licensed any of the copyrights at issue, or ever received an express transfer of the right to sue for accrued infringement claims.

In opposition, plaintiffs assert that OSC is a proper copyright plaintiff. Plaintiffs claim that OSC has the right, through merger, to bring copyright claims that existed before March 1, 2005, for certain copyrights at issue. They contend that the documents submitted by the



United States District Court
For the Northern District of California

parties reveal that OSC, as the surviving entity after several mergers, holds rights to sue that were not transferred to OIC.

Plaintiffs argue that the evidence shows that OSC's predecessors-in-interest assigned "all . . . right, title and interest in . . . all copyrights" to OIC. Plaintiffs claim that this language did not transfer existing claims (and that if it had, OIC could assert them), but rather, that the pre-existing claims remained with OSC's predecessors-in-interest, and were subsequently acquired by OSC "through merger." Thus, plaintiffs contend, OSC has standing to assert these claims as the surviving entity.

The court finds that the motion must be GRANTED as to the copyright infringement claim asserted by OSC. Plaintiffs have not established that OSC is or ever has been an owner or exclusive licensee of the asserted copyrights. The intercompany agreements on which plaintiffs rely do not establish that the right to sue for copyright infringement was expressly transferred to OSC as a consequence of the various mergers.

2. Breach of contract, interference with prospective business advantage, unfair competition, and accounting

SAP argues that the fourth cause of action for breach of contract, the fifth and sixth causes of action for interference with prospective business advantage, the seventh cause of action for unfair competition, and the tenth cause of action for an accounting must all be dismissed because they are preempted by the Copyright Act.

In general, the Copyright Act preempts legal and equitable rights granted by state common law or statute. 17 U.S.C. § 301(a). In order to determine whether a state law claim is preempted by the Copyright Act, a court must first determine whether the "subject matter" of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103, and must then determine whether the rights under the state law are "equivalent" to rights under § 106 of the Copyright Act (the exclusive rights of reproduction, preparation of derivative works, distribution, and display). Laws v. Sony Music Entm't, Inc., 448 F.3d 1134, 1137-38.

To survive preemption, a state law claim based on acts that would constitute



United States District Court
For the Northern District of California

infringement "must protect rights that are qualitatively different from the copyright rights." Del Madera Props. v. Rhode & Gardner, Inc., 820 F.2d 973, 977 (9th Cir. 1987). The state law claim must contain an element not shared by the federal law, that changes the nature of the action. Summit Machine Tool Mfg. Corp. v. Victor CNC Sys., Inc., 7 F.3d 1434, 1439-40 (9th Cir. 1993). Plaintiffs may not simply recast copyright claims as state law claims to circumvent the standing requirements of the Copyright Act, as that would defeat Congress' intent to have federal law occupy the entire field of copyright. Sybersound, 517 F.3d at 1150-51.

SAP asserts that in each of the state law claims – breach of contract, interference with prospective business advantage, unfair competition, and accounting – plaintiffs are seeking to recover for the same conduct on which the copyright infringement claim is based. Thus, SAP contends, the state law claims are preempted by the copyright claim. SAP also asserts that amendment cannot save these claims, and that the dismissal should be without leave to amend.

Plaintiffs agree that the Copyright Act preempts any state claim that is based on copyright infringement. Plaintiffs assert, however, that each of the challenged claims has "extra elements" making the claims "not equivalent to" rights protected under the Act. Plaintiffs contend that each of the challenged state law claims alleges such factual elements – and it is this that makes the state law claims qualitatively different from the copyright infringement claim.

The court finds that the motion must be DENIED, except as to the extent that the state law claims are based on the alleged copyright infringement – in which case the parties agree they are preempted by the Copyright Act. SAP does not dispute plaintiffs' assertion that the TAC alleges other actions (fraud, unauthorized use, and harm to private contractual rights and expectations) that form the basis of the state law claims, and which are not preempted by the Copyright Act.

3. Breach of contract

SAP asserts that the fourth cause of action for breach of contract should also be

dismissed for failure to state a claim because defendants are not parties to the alleged contracts. To establish breach of contract, a plaintiff must show the existence of a contract between the parties, that the plaintiff performed his contractual duties or was excused from performing them, that the defendant failed to perform his contractual duties, and that the breach caused the plaintiff damages. EPIS, Inc. v. Fidelity & Guaranty Life Ins. Co., 156 F.Supp. 2d 1116, 1124 (N.D. Cal. 2001) (citing Reichert v. General Ins. Co. of America, 68 Cal. 2d 822, 830 (1968)).

Here, plaintiffs allege that defendants "breached the Customer Connection Terms of Use, the Special Terms of Use, the SAR legal restrictions and/or the Legal Download Agreement." TAC ¶ 183. As described in the TAC, each of those agreements constitutes a "clickwrap agreement" that governs access to plaintiffs' websites. TAC ¶¶ 54-60. Plaintiffs assert that defendants agreed to be bound by each of the four asserted contracts when "the Defendants accessed or downloaded Software and Support Materials from Customer Connection." TAC ¶ 181.

However, SAP contends, this allegation is belied by the content of the contracts themselves. SAP asserts that under each of those four contracts, only customers with agreements with an Oracle entity are contemplated as parties to the contract. See TAC ¶¶ 54-60. For example, SAP notes, the "Customer Connection Terms of Use" explicitly identifies the party to whom the agreement is directed as the "Customer."

In addition, SAP contends, the "Special Terms of Use," the "SAR Legal Restrictions," and the "Legal Download Agreement" each reveal that the intended offerees are customers, by referring to the offeree's separate agreements with an Oracle entity (e.g. – "Your access to a Secured Website is permitted via your personal username and password and your use is governed under a separate agreement between you and your employer and PeopleSoft;" "All use and distribution of the Software is governed by the terms of the software license agreement that is in effect between you and PeopleSoft;" "Your username and password are provided to you for your sole use in accessing this Server and are confidential information subject to your existing confidentiality agreement with Oracle |



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

PeopleSoft."

SAP argues that because plaintiffs have not alleged that defendants are "customers" to whom the offers set forth in each agreement are extended, defendants cannot have manifested acceptance that gives rise to a valid contract between plaintiffs and defendants, and because defendants are not parties to the alleged agreements, the breach of contract claim should be dismissed.

In opposition, plaintiffs argue that they have a valid breach of contract claim, on two bases. First, they contend that SAP is liable under the contracts to the extent it entered them in bad faith. In the TAC, plaintiffs allege that SAP breached the Customer Connection Terms of Use, the Special Terms of Use, the SAR Legal Restrictions, and the Legal Download Agreement (collectively, the "Customer Connection Agreements"). TAC ¶¶ 180-184. These are referred to as "clickwrap" or "clickthrough" agreements, which means the online user encounters the agreements' terms on a given website, and must select "I agree" or "Yes" before he/she/it can continue to access the password-protected sections of the website.

Plaintiffs allege in the TAC that SAP repeatedly entered into these agreements by selecting the "I agree" option, and then breached the agreements by accessing the websites in violation of the contractual terms or by lawfully accessing the sites and then violating the use restrictions by using the accessed materials to support other customers. TAC ¶¶ 15-17, 54-60, 99, 102-104, 106, 180-184. Plaintiffs contend that SAP then asserted in its answer to the first amended complaint that its agreements with its own customers (who were also Oracle customers) permitted its conduct as to the Oracle materials (citing Answer, ¶¶ 2-3, 5, 8-10, 15, 68, 72, 76-81, 131-132, 141-142, and Second, Third, and Ninth Affirmative Defenses).

However, plaintiffs contend, SAP is now attempting to argue that the agreements it entered into (by clicking "I Agree") can bind only Oracle's actual customers – not SAP – as SAP claims that the fact that TomorrowNow was acting on behalf of Oracle customers in accessing plaintiffs' websites is irrelevant (for purposes of stating a claim for breach of

contract).

Plaintiffs argue that SAP is liable for breach of contract if it entered the contracts on behalf of its customers without a good-faith belief that it had the authority to do so. Plaintiffs contend that that is exactly what they allege in the TAC – that SAP knew it did not have authority from its customers to access the Customer Connection materials, or to use the materials it obtained in knowing breach of use restrictions.

Plaintiff's second argument is that SAP is liable based on its own acceptance of the terms of the clickwrap agreements. The only way that SAP could have proceeded through Oracle's website to the password-protected areas was to repeatedly agree to the enforceable terms it encountered. Plaintiffs argue that as a matter of law, SAP cannot claim that it is not bound by those agreements.

In response to SAP's argument that Oracle only extended the offer to "customers" with agreements with an Oracle entity, plaintiffs assert that the contracts do not define their audience, but instead contemplate that any person using the websites can contract to the terms of the Customer Connection Agreements. Plaintiffs argue that based on this alone, they have made out a claim of breach of contract.

In reply, SAP reiterates that the breach of contract claim should be dismissed because defendants are not parties to the alleged contracts. SAP contends that because the SAP entities were not the intended offerees of the contracts, they cannot be parties to the contracts.

The court finds that the motion must be DENIED. Plaintiffs have stated a claim for breach of contract, based on the existence of the clickwrap agreements. Many courts have found clickwrap agreements to be enforceable. See, e.g., A.V. v. iParadigms, Ltd. Liability Co., 544 F. Supp. 2d 473, 480 (E.D. Va. 2008) (citing cases). The remaining disputes underlying SAP's arguments involve disputed factual issues and are therefore not appropriate for resolution on a Rule 12(b)(6) motion.

4. Unjust enrichment

SAP contends that the ninth cause of action for unjust enrichment should be



United States District Court
For the Northern District of California

dismissed because unjust enrichment is not a legally cognizable claim. Unjust enrichment is a theory of recovery in quasi-contract, in which a plaintiff contends that a defendant obtained a benefit to which the defendant was not entitled. Paracor Fin. v. General Elec. Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996). In a 2003 decision, the California Court of Appeals stated that there is no cause of action for unjust enrichment in California.

> The phrase "Unjust Enrichment" does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so. Unjust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself. It is synonymous with restitution.

Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793 (2003) (quotations and citations omitted). SAP cites Melchior, and argues that because the claim for unjust enrichment is not legally cognizable, it should be dismissed without leave to amend.

In opposition, plaintiffs assert that "a slew" of California state and federal courts do permit a cause of action for unjust enrichment (citing only two). Plaintiffs also argue that the cases cited by SAP do not support its position. They contend that the Paracor decision supports a finding that the cause of action exists, as it held that under California law, "unjust enrichment is an action in quasi-contract." Paracor, 96 F.3d at 1167. They assert that the Melchior court acknowledged that the plaintiff may have been entitled to "restitution under a quasi-contract theory" but had waived any such claim by failing to plead it. Melchior, 106 Cal. App. 4th at 793.

Plaintiffs argue that because they pled this cause of action as "Unjust Enrichment/Restitution," seeking a constructive trust and full restitution of all amounts in which defendants have been unjustly enriched, the court should find that the ninth cause of action states a claim.

In reply, SAP contends that despite the assertion that the ninth cause of action is meant to be a claim for restitution, it does not actually plead a claim for restitution, and that the mere use of the word "restitution" in the heading of the cause of action does not constitute fair notice to SAP as to what is being pled. SAP argues that the ninth cause of action is not a claim seeking damages in quasi-contract as a alternative to seeking



United States District Court
For the Northern District of California

damages for breach of contract or tort, but is instead an claim seeking damages on top of, and based on, the breach of contract and state law tort claims.

Under an unjust enrichment theory, restitution may be awarded either (1) in lieu of breach of contract damages, where an asserted contract is found to be unenforceable or ineffective, or (2) where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct, but the plaintiff has chosen not to sue in tort. McBride v. Boughton, 123 Cal. App. 4th 379, 388 (2004). Thus, a claim for restitution is inconsistent and incompatible with a related claim for breach of contract or a claim in tort. Id.; see also Paracor, 96 F.3d at 1167. SAP asserts that because the ninth cause of action seeks damages over and above the damages also sought for breach of contract and under the tort causes of action, plaintiffs cannot state a claim for unjust enrichment.

The court finds that the motion must be DENIED. The FAC adequately states a claim for unjust enrichment/restitution. A defendant is not entitled to have a cause of action dismissed for failure to state a claim simply because it conflicts with another cause of action. Thus, to the extent that plaintiffs are ultimately able to prevail under a breach of contract theory or a tort theory, they will be precluded from also recovering under a claim of unjust enrichment. However, for pleading purposes, plaintiffs are entitled to plead inconsistent causes of action. See Fed. R. Civ. Pro. 8(e)(2); Oki America, Inc. v. Microtech Int'l, Inc., 872 F.2d 312, 314 (9th Cir. 1989); In re Wal-Mart Wage and Hour Employment Practices Litig., 490 F. Supp. 2d 1091, 1117 (D. Nev. 2007).

**CONCLUSION**

In accordance with the foregoing, the court hereby GRANTS the motion to dismiss in part and DENIES it in part.

The motion to dismiss for lack of subject matter jurisdiction is GRANTED as to the copyright infringement claims asserted by JDEE and OSC. Based on the evidence submitted, the dismissal is without leave to amend.

The motion to dismiss the state law claims (fourth, fifth, sixth, seventh, and tenth causes of action) on grounds of preemption by the Copyright Act is DENIED, except to the



United States District Court
For the Northern District of California

extent that those claims are based on the alleged copyright infringement. The motion to dismiss the breach of contract claim and the unjust enrichment claim for failure to state a claim is DENIED.

**IT IS SO ORDERED.**

Dated: December 15, 2008

PHYLLIS J. HAMILTON
United States District Judge

United States District Court
For the Northern District of California