Walsh v. Apple, Inc. et al Doc. 240 Att. 3

# EXHIBIT 9

McDonell Declaration ISO Motion to Compel Production of Documents Relating to CedarCrestone

Dockets.Justia.com

BINGHAM

Christopher B. Hockett
Direct Phone: 415.393.2612
Direct Fax: 415.393.2286
chris.hockett@bingham.com

February 7, 2008

**Via Hand Delivery**

**Contains Information Designated Confidential Pursuant to Protective Order**

Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center
San Francisco, CA 94111

**Re: *Oracle Corp., et al. v. SAP AG, et al.*: Oracle's Opposition to Defendants' Motion to Compel No. 1**

Dear Judge Legge:

Plaintiffs Oracle Corporation, et al. ("Oracle") submit this letter brief in opposition to Defendants' January 28, 2008 motion to compel.

## I. INTRODUCTION

**REDACTED FOR RELEVANCE**

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T 415.393.2000
F 415.393.2286
bingham.com

---

[1] Support services involve supplying additional software code, consisting of software updates, bug fixes and related documentation ("Software and Support Materials," or "SSMs"), to keep Oracle software current and functioning properly.

REDACTED FOR RELEVANCE

### C. Defendants' Requests For Third-Party Support Information Are Overbroad, Unrelated To A Claim Or Defense, And Unduly Burdensome (Requests 29-34 & 39-40, Interrog. 9)

Defendants next seek to compel information relating to "all" third-party support for Oracle products. Through this discovery, Defendants are again attempting to maximize discovery burdens on Oracle by reaching far beyond the elements of any claim or defense. Nothing in this case relates to the "market" for third-party support. This case is about Defendants' unlawful access to, and downloading from, Oracle's password-protected website and their use of those downloaded materials.

Oracle's relationships with other third-party support providers, including the companies with whom Oracle may contract to provide support for its customers, have nothing to do with Oracle's copyright and theft allegations or any defenses to those claims. *Nugget Hydroelectric v. PG&E*, 981 F.2d 429, 438-39 (9th Cir. 1992) (upholding denial of broad discovery as to PG&E's relationships with other private power suppliers, because only a fraction would be relevant to the claim). When confronted with Defendants' overbroad discovery requests, Oracle properly objected, and limited its responses to the SSMs and other topics at issue in the litigation. *See, e.g., Surfvivor Media*, 406 F.3d 625, 629 & 635 (9th Cir. 2005) (proper to limit request for discovery on all of defendant's product types to only those product types affirmatively identified by plaintiff in trademark case). Such limitations give life to Rule 26(b)'s requirement that discovery be "reasonably calculated to lead to the discovery of admissible evidence."

#### 1. Oracle Properly Limited Or Objected To Each Request

##### a. Partner Documents (Request 29 and Interrog. 9)

Request 29 and Interrogatory 9 seek identification of all companies that provide third-party support for any Oracle product referred to in the Complaint or at issue in this litigation. None of this information relates to whether Defendants stole Oracle's copyrighted software, or any conceivable defense to those allegations. However, in an effort to forestall motion practice, Oracle did respond with information about independent "third-party support" companies with business models similar to SAP TN – as opposed to third parties that enter into Oracle partner agreements and <u>*pay Oracle*</u> for the right to provide support.[3]

Through several weeks of meet and confer correspondence and discussions, Defendants agreed to this limitation, which Oracle confirmed in its January 4th meet and confer letter. On January 10th, Defendants reversed course and demanded that Oracle also identify and produce information about Oracle's *partners* that provide support, such as Accenture. Defendants have provided no rationale for extending discovery to companies that partner with Oracle, rather than

---

[3] Moreover, most of these partners are located in remote areas outside of the United States, where it makes less sense for Oracle to provide support – and which makes these partners even less relevant.

compete directly with Oracle, like SAP TN does. *In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y.1975) (discovery standard "is not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'"). Defendants say only that "Rimini Street illustrates the importance of this discovery." Motion at p. 4. They then discuss an interview with Rimini Street's CEO.

This example does not help Defendants' position, since Rimini Street is within the category of third-party vendors about which Oracle did in fact agree to produce certain information. More to the point, as discussed further below in part b., Oracle's conduct with, views about, and information regarding Rimini Street – or any other third-party support provider – do not relate to any claim or defense in this case. This case is about Defendants' theft and misuse of Oracle's intellectual property. The Court should reject Defendants' invitation to broaden discovery to areas that would not logically lead to the discovery of admissible evidence, such as Oracle's relationships with its "partners."

**b. Information About Rimini Street Is Not Related To A Claim Or Defense (Requests 30-31)**

**REDACTED FOR RELEVANCE**

**c. Oracle's Third-Party Support Policies Do Not Relate To A Claim Or Defense (Requests 32-34)**

Similar to the requests regarding Rimini Street, none of these three requests relates to any claim or defense. Defendants claim in their motion that Oracle's discovery limitations "conceal[] from

discovery Oracle's third-party support policies and practices." Oracle's actions with other third parties cannot form the basis for a defense to Oracle's specific allegations that Defendants downloaded unlicensed SSMs and misused them as part of Defendants' competition with Oracle. Despite the lack of relevance, Oracle again offered far more than the law requires.

Request 32 seeks "Oracle's position regarding the propriety of providing third-party support or maintenance for Oracle products or the permissible methods for doing so." The only documents that would show "Oracle's position" on the propriety of SAP TN's support methods are any part of the customer license agreements that may address a customer's rights or limitations regarding third-party support and Oracle policies regarding the propriety of SAP TN's use of the SSMs, including any Terms of Use provided on Oracle's support website. Oracle has agreed to search for and produce these documents. Oracle should be required to go no further.

Request 33 seeks communications between "Oracle and any third party, including customers, industry and other analysts, and third-party support or maintenance vendors concerning permissible methods of third-party support." A request for communications between *any* third party and Oracle – a company with over 69,000 employees – is overbroad and unduly burdensome on its face. And, as discussed above, Oracle already agreed to produce the customer contracts and Oracle policies concerning the propriety of SAP TN providing third-party support. Oracle also agreed to produce documents relating to customer negotiations and relevant communications in the customer contract files. For the reasons discussed above in section b., documents concerning other third-party support vendors cannot support Oracle's claims or Defendants' defenses here. Nevertheless, in meet and confer, Oracle also agreed to produce communications between Oracle and industry analysts discussing SAP TN – based on its understanding that Defendants would produce equivalent materials from their files. Defendants are entitled to no more.

Finally, Request 34 seeks communications between "Oracle and industry or other analysts concerning TN." This duplicates Request 33, as to which Oracle already agreed to provide communications with industry analysts discussing SAP TN. Defendants do not even attempt to explain how any analyst communications are relevant here (they are not), but regardless, Defendants should receive no more than Oracle has already offered.

**d. Denials And Grants Of Access To Oracle Online Support Services (Requests 39-40)**

Request 39 seeks all documents relating to any occasions on which Oracle has denied access to *any* Oracle website to *any* Oracle customer or third-party support provider. Oracle properly limited production pursuant to this request to the 69 customers whose credentials Oracle has determined Defendants improperly used to download SSMs, rather than "all" customers, as discussed above, in Section B. Expanding this request to "all" of Oracle's thousands of customers is certainly invasive, unduly burdensome and harassing. Further, Oracle has numerous websites. Defendants do not even attempt to explain how documents unrelated to the Oracle's customer support website – Customer Connection – could be relevant here (they are not). At base, Oracle's conduct with its own customers – including occasions on which Oracle has denied website access to its thousands of customers – has nothing to do with what Defendants may properly download. Therefore, this request seeks discovery unrelated to a claim or defense and imposes an unreasonable burden on Oracle – unless or until Oracle or Defendants can determine which additional customers beyond the initial 69 are relevant to this case.

Request 40 seeks all documents relating to any occasions on which Oracle has granted access to any Oracle website to a third-party support provider. Defendants do not even attempt to support

the relevance of this overbroad request. They cannot. As discussed above in Section b., documents broadly relating to third-party support do not relate to the claims or defenses here. Nevertheless, Oracle agreed to provide documents relating to occasions on which it has entered into an express, written agreement with a third-party support provider relating to access to Customer Connection (the Oracle website at issue in this litigation). Oracle's response is more than sufficient here.

**2. Defendants' New Arguments Regarding Parol Evidence, Cross-Use and Copyright Damages Do Not Justify Broad Third-Party Support Discovery**

**REDACTED FOR RELEVANCE**

**REDACTED FOR RELEVANCE**

## III. CONCLUSION

For the foregoing reasons, Oracle respectfully requests that Your Honor deny Defendants' motion to compel.

Sincerely yours,

Christopher B. Hockett

cc: Robert Mittelstaedt (via email only)
Jason McDonell (via email only)
Greg Lanier (via email only)
Scott Cowan (via email only)
Joshua Fuchs (via email only)

# EXHIBIT 10

McDonell Declaration ISO Motion to Compel
Production of Documents Relating to CedarCrestone

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

--O0o--

ORACLE CORPORATION, a Delaware Corporation; ORACLE, USA, INC., a Colorado Corporation, and ORACLE INTERNATIONAL CORPORATION, a California Corporation,

Plaintiffs,

Vs. No. 07-CV-01658-PJH (EDL)

SAP AG, a German Corporation, SAP AMERICA, INC., a Delaware CORPORATION, TOMORROWNOW, INC., a Texas Corporation, and DOES 1-50, Inclusive,

Defendants.
_______________________________/

VIDEOTAPED RULE 30(b)(6) DEPOSITION OF

ORACLE CORPORATION

Designee: RICHARD CUMMINS

Tuesday, September 23, 2008

Volume II, Pages 256 - 436

HIGHLY CONFIDENTIAL INFORMATION - ATTORNEYS' EYES ONLY

Reported By: WENDY E. ARLEN, CSR #4355, CRR, RMR
Job 412497



f4294576-cc2c-45bf-9a42-2d77645a99c8

**REDACTED FOR RELEVANCE**

12:18

A.
Q.
A.

12:19 Q.

A.

12:19 Q.

A. Okay.
Q. Is that a slide you created, the one that
12:19 says Partner Model?
A. It is one I created with input from the
partner team.
MS. HOUSE: And I'm going to object. This is
outside the scope. We're not putting Mr. Cummins up
12:20 on the issue of service partners. You have an
understanding on that. That's something that we



f4294576-cc2c-45bf-9a42-2d77645a99c8

12:20
simply aren't allowing testimony into. If you want to have a very brief discussion with him, I'll listen to your questions, but third party partners is something that Mr. LaPorte has said doesn't make sense. We're not offering Mr. Cummins on that. We've specifically objected.

MR. McDONELL: Okay, but it does -- why don't you listen to my questions and see. I think I should be entitled to have some leeway here to see --

12:20
MS. HOUSE: Oracle partners are not the same as third party service. We have it well established with the court that is outside the scope of what's relevant in this lawsuit. I'll listen to your question, but I'm not giving you much leeway.

12:20
Q. MR. McDONELL: Okay. So turn to page 87638 in Exhibit 65, please.
A. Okay.
Q. REDACTED FOR RELEVANCE
12:21
A.
12:21
Q.

CERTIFICATE OF REPORTER

I, WENDY E. ARLEN, a Certified Shorthand Reporter, hereby certify that the witness in the foregoing deposition was by me duly sworn to tell the truth, the whole truth and nothing but the truth in the within-entitled cause;

That said deposition was taken down in shorthand by me, a disinterested person, at the time and place therein stated, and that the testimony of the said witness was thereafter reduced to typewriting, by computer, under my direction and supervision.

That before completion of the deposition, review of the transcript was not requested. If requested, any changes made by the deponent (and provided to the reporter) during the period allowed are appended hereto.

I further certify that I am not of counsel or attorney for either or any of the parties to the said deposition nor in any way interested in the event of this cause and that I am not related to any of the parties thereto.

DATED:____________________, 2008

________________________________

WENDY E. ARLEN CSR, No. 4355



f4294576-cc2c-45bf-9a42-2d77645a99c8