Walsh v. Apple, Inc. et al
Doc. 240 Att. 4

# EXHIBIT 11

McDonell Declaration ISO Motion to Compel
Production of Documents Relating to CedarCrestone

Dockets.Justia.com

Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 774-2644
Fax: (415) 982-5287

Special Discovery Master

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,<br><br>Defendants. | **CASE NO. 07-CV-1658 (MJJ)**<br><br>**JAMS Reference No. 1100053026**<br><br>**REPORT AND RECOMMENDATIONS RE: DISCOVERY HEARING NO 1** |

**THIRD PARTY SUPPORT**

Defendants seek extensive documents and interrogatory information concerning support of Oracle's products by third parties. They want detailed information regarding the third parties and their contractual relationship to Oracle. This request is tangential at best.

The downloading in this case was done either by the customers themselves or by TN as the support company representing those customers. What is the relevance of Oracle's relationships with other third party support. That information does not appear to be directly or presently relevant. Defendant argues that it will have something to do with damages, and with possible abandonment of some copyrights by Oracle. However, such extensive third party discovery does not now appear to be justified by those narrow potential arguments. Defendants also argue that the third party support contracts may shed some light on Oracle's license agreements with TN or the customers. But at present we do not know what language of the license agreements, or other documents granting consent to the customers to download, will be in dispute in this case.

The Special Discovery Master therefore recommends that these requests be denied, without prejudice, until a later showing of relevance and appropriateness.

**COPYRIGHT INFORMATION**

**REDACTED FOR RELEVANCE**

**REDACTED FOR RELEVANCE**

The Special Discovery Master submits this Report And Recommendations to the District Court pursuant to paragraph 3(a) of the stipulation and order of January 8, 2008.

Dated: February 22, 2008

Charles A. Legge
Hon. Charles A. Legge (Ret.)
Special Discovery Master

# EXHIBIT 12

McDonell Declaration ISO Motion to Compel
Production of Documents Relating to CedarCrestone

PAGES 1 - 76

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE ELIZABETH D. LAPORTE, MAGISTRATE JUDGE

ORACLE CORPORATION, ET AL., )
)
)
PLAINTIFFS, )
)
VS. ) NO. C07-1658 PJH (EDL)
)
SAP AG, ET AL., )
) SAN FRANCISCO, CALIFORNIA
)
DEFENDANTS. ) THURSDAY
) AUGUST 28, 2008
) 9:00 O'CLOCK A.M.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFFS:**

COPY

BINGHAM MCCUTCHEN LLP
THREE EMBARCADERO CENTER
SAN FRANCISCO, CALIFORNIA 94111-4067
BY: GEOFFREY M. HOWARD, ESQUIRE AND
DONN PICKETT, ESQUIRE AND
HOLLY HOUSE, ATTORNEY AT LAW
262-9212

AND

JENNIFER GLOSS, SENIOR CORPORATE COUNSEL
ORACLE
500 ORACLE PARKWAY
REDWOOD SHORES, CALIFORNIA 940656
650-506-7114

FURTHER APPEARANCES ON NEXT PAGE

**REPORTED BY:** ***KATHERINE WYATT, CSR #9866, RMR***
*OFFICIAL REPORTER - U.S. DISTRICT COURT*

FURTHER APPEARANCES:

FOR DEFENDANTS:

JONES DAY
555 CALIFORNIA STREET
26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104-1500
BY: JASON MCDONELL, ESQUIRE AND

ELAINE WALLACE, ATTORNEY AT LAW

AND

JONES DAY
717 TEXAS
SUITE 3300
HOUSTON, TEXAS 77002-2712
BY: SCOTT W. COWAN, ESQUIRE

AND

JONES DAY
1755 EMBARCADERO ROAD
PALO ALTO, CALIFORNIA 94303

BY: JANE FROYD, ATTORNEY AT LAW

**MR. MCDONELL:** HE DENIED IT WITHOUT PREJUDICE SUBJECT TO OUR MAKING A FURTHER FOUNDATIONAL SHOWING.

**THE COURT:** ALL RIGHT.

**MR. MCDONELL:** AND IF THEY DON'T GIVE US ANY INFORMATION ABOUT THE PARTNERSHIP PROGRAM, WE ARE HAMSTRUNG IN OUR ABILITY TO MAKE THAT --

**THE COURT:** WELL, ISN'T THERE A CERTAIN AMOUNT THAT IS PUBLIC ON THAT?

**MR. MCDONELL:** THERE IS. THERE IS. AND WE WILL CERTAINLY INCLUDE THAT.

**THE COURT:** I MEAN, YOU KNOW, I WOULD -- I MEAN, AND IF THERE'S SOME, YOU KNOW, READILY ACCESSIBLE SAMPLE AGREEMENTS ABOUT -- THAT ARE NONPUBLIC THAT YOU CAN GIVE TO THEM THAT GIVES THEM JUST A LITTLE MORE DETAIL ABOUT IT WITHOUT GOING INTO EXCRUCIATING DETAIL ABOUT ALL THE PARTNERS AND HOW IT ACTUALLY WORKS AND HOW MUCH MONEY THEY MAKE, BUT JUST THE STRUCTURE OF IT, YOU OUGHT TO JUST GIVE IT TO THEM. AND MAYBE THAT WILL HELP YOU ASSESS WHETHER IT IS OR ISN'T RELEVANT.

I'M DUBIOUS ABOUT WHETHER IT'S RELEVANT. I'LL TELL YOU THAT RIGHT NOW.

**MR. MCDONELL:** THAT WILL BE OUR BURDEN ON THE MOTION, YOUR HONOR.

**THE COURT:** SO, I MEAN, YOU KNOW, I THINK OVER THE YEARS I'VE HEARD ABOUT IT IN SOME CONTEXT OR ANOTHER. I CAN'T REMEMBER WHAT. AND IT DOES SEEM LIKE A COMPLETELY DIFFERENT

THING. AND THAT THE RELEVANCE WOULD BE -- IF THERE IS ANY -- WOULD BE OUTWEIGHED BY THE BURDENSOME.

**MR. MCDONELL:** I WON'T ARGUE THE MOTION NOW.

**THE COURT:** OKAY. OBVIOUSLY, I COULD CHANGE MY MIND, YOU KNOW, DEPENDING ON WHAT THE SHOWING WAS. SO I WON'T PRECLUDE YOU FROM ARGUING THAT. BUT YOU SHOULD THINK ABOUT WHETHER THERE'S SOME STEP SHORT OF THAT, YOU KNOW.

OKAY.

**MR. MCDONELL:** OKAY.

**REDACTED FOR RELEVANCE**

CERTIFICATE OF REPORTER

I, KATHERINE WYATT, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED BY ME INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL CONFERENCE.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS 4TH DAY OF SEPTEMBER, 2008.

S/S KATHY WYATT

# EXHIBIT 13

McDonell Declaration ISO Motion to Compel
Production of Documents Relating to CedarCrestone

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MAGISTRATE JUDGE ELIZABETH D. LAPORTE

| | |
|---|---|
| ORACLE CORPORATION, a Delaware Corporation; ORACLE, USA, INC., a Colorado Corporation; and ORACLE INTERNATIONAL CORPORATION, a California Corporation, Plaintiffs, | Case No. C07 1658 PJH(EDL) |
| vs. | FURTHER DISCOVERY CONFERENCE |
| SAP AG, a German Corporation; SAP AMERICA, INC., a Delaware CORPORATION; TOMORROWNOW, INC., a Texas Corporation; and DOES 1 50, Inclusive, Defendants. | |

November 25, 2008

TRANSCRIPT OF AUDIO RECORDING OF DISCOVERY CONFERENCE

TRANSCRIBED BY: FREDDIE REPPOND



f85111bb-b4f8-42bc-8568-ef023cb86a17

**REDACTED FOR RELEVANCE**

THE COURT: Yeah. I mean I'd rather have them off, but I can't do it based on what was just said. And, you know

Now, you have some motions I know that you're looking at.

MR. COWAN: We do. We do, Your Honor. And there's really only the copyright one I think we could treat in a way that Ms. House has treated the second half of theirs, which is the EBS redact of one.



f85111bb-b4f8-42bc-8568-ef023cb86a17

But on the CedarCrestone let me just try to succinctly state the issue there. We had, when we were before Special Master Legg we brought an issue with respect to whether we could get discovery of Oracle regarding the partner relationships. He denied that discovery without prejudice. We came back to you after that. You denied our request; said go back to public sources but again without prejudice.

They now have issued a third party subpoena to CedarCrestone, which is one of their partners. We have cross noticed CedarCrestone; but we now believe they have opened the door and that we are entitled to discover documents from Oracle regarding their partnership relationship with CedarCrestone; and just that partner. We're not looking at this stage

THE COURT: Only CedarCrestone. What did you subpoena them for and for what purpose?

MS. HOUSE: The reason we subpoenaed them was because they were one of the potential suitors to purchase TomorrowNow. We didn't what we were seeking is their documents related to any representations that were made in connection with those negotiations, particularly related to any liability issues, because that's relevant; and they're not the only one. All the suitors, all the potential



f85111bb-b4f8-42bc-8568-ef023cb86a17

THE COURT: Hang on. You're talking a mile a minute; and that doesn't mean I can understand it. It's a mistake I notice lawyers make a lot, which is, running out of time, they talk faster. But in fact, that might as well be not said.

MS. HOUSE: Okay.

THE COURT: So this is before TomorrowNow instead of being sold shut down; is that what you're talking about?

MS. HOUSE: Right. They tried to get some potential buyers.

THE COURT: Okay. All right. And so

MS. HOUSE: And they've cross noticed and done a subpoena. So if they want to subpoena CedarCrestone for whatever documents they think they want, then fine. But in terms of talking about a motion to compel Oracle, if they we still think and for the very reasons you viewed it as, quote, dubious when we argued this to you in August and Judge Legg viewed it as tangential at best both of those are quotes we'll be happy to oppose a motion to compel partner related discovery from Oracle, because it is totally out of line with what is at issue in this case, which is independent service nonsupported, nonpartner service. We don't need to go back and do the whole argument we did in front of you in



f85111bb-b4f8-42bc-8568-ef023cb86a17

August. If they bring a motion to compel, we'll oppose it.

THE COURT: Right

MR. COWAN: Your Honor, given

THE COURT: I don't think what she's saying, if it's the case that they subpoenaed them regarding something unrelated to the partnership, then I don't see that as opening the door per se.

MR. COWAN: The issue really goes to, if they're going to pursue a reasonable royalty as the theory of copyright damages, we're entitled to discover

THE COURT: Well, that's a different issue. I mean I don't think it has anything to do with subpoenaing them about efforts to buy TomorrowNow.

MR. COWAN: They've asked for CedarCrestone's analysis of TomorrowNow's business model. They've asked for documents related to PeopleSoft and JDE code

THE COURT: Wait, I don't

MR. COWAN: Okay. You're right.

THE COURT: They either I don't know what those things mean. If they had to do with a partnership, that's one thing. If they didn't, then it's another. If they didn't, it doesn't open the door. If separately, though, you think that those denials

without prejudice should be revisited because you have a better argument now, that's a different question.

MR. COWAN: We do and

THE COURT: If you're pursuing a reasonable royalty, I mean, yeah. And then, of course, anything that any royalties that Oracle has entered into for something similar. Now, the question is how similar? I'm not going rule on that now. I mean, you know, if the issue is how similar, they're saying it's not similar at all because it's a different kind of thing, it's not a support contract, then you know I don't remember what you all said or what I said before.

MR. COWAN: Fair enough. And I think you've given us enough guidance on this point. We will either reach an agreement or an impasse and tee that up in a motion.

THE COURT: Okay.

MR. COWAN: Thank you.

MS. HOUSE: Thank you.

**REDACTED FOR RELEVANCE**



f85111bb-b4f8-42bc-8568-ef023cb86a17

# EXHIBIT 14

McDonell Declaration ISO Motion to Compel
Production of Documents Relating to CedarCrestone

Robert A. Mittelstaedt (State Bar No. 60359)
ramittelstaedt@jonesday.com
Jason McDonell (State Bar No. 115084)
jmcdonell@jonesday.com
Elaine Wallace (State Bar No. 197882)
ewallace@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

**ORACLE USA, INC., a Colorado corporation, ORACLE INTERNATIONAL CORPORATION, a California corporation, ORACLE SYSTEMS CORPORATION, a Delaware corporation, ORACLE EMEA LIMITED, an Irish private limited company, and J.D. EDWARDS EUROPE LIMITED, an Irish private limited company,**

**Plaintiffs,**

**v.**

**SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,**

**Defendants.**

**Case No. 07-CV-1658 PJH (EDL)**

**FEDERAL RULE OF CIVIL PROCEDURE 45(B) NOTICE OF INTENT TO SERVE THIRD-PARTY SUBPOENA**

**NOTICE OF INTENT TO SERVE THIRD-PARTY SUBPOENA**

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT Pursuant to Rule 45 of the Federal Rules of Civil Procedure, defendants SAP AG, a German corporation, SAP America, Inc. a Delaware

corporation, and TomorrowNow, Inc., a Texas corporation (collectively "defendants") intend to serve a third-party subpoena requesting documents and things, as detailed in Exhibit 1 to this Notice which contains a copy of the subpoena to be served on the third-party identified therein in Exhibit 1 to this Notice.

Dated: November 21, 2008

JONES DAY

By: [signature]
Jason McDonell
Jones Day
Attorneys for Defendants
SAP AG, SAP AMERICA, INC., AND
TOMORROWNOW, INC.

EXHIBIT 1

**Issued by the**

# UNITED STATES DISTRICT COURT

Northern District of Georgia

Oracle USA, Inc., et al.

V.

SAP AG, a German corp., SAP America, Inc., a Delaware corp., TomorrowNow, Inc. a Texas corp.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 07-CV-1658 PJH (EDL)
Pending in: United States District Court, Northern District of California, San Francisco Division

TO: CedarCrestone, Inc.
c/o Corporation Service Co., REGISTERED AGENT
40 Technology Pkwy South, #300
Norcross, GA 30092 Phone: 1-800-927-9800

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
PLEASE SEE EXHIBIT A, attached hereto

| PLACE | DATE AND TIME |
|---|---|
| Production to be delivered to: Jones Day, 1420 Peachtree Street, N.E. Suite 800, Atlanta, Georgia 30309-3053 | 12/24/2008 at 9:30 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature] Partner (Attorney for Defendants) | 11/21/08 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jason McDonell, Jones Day, 555 California Street, 26th Floor, San Francisco, CA 94104

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

SERVED ON (PRINT NAME) MANNER OF SERVICE

SERVED BY (PRINT NAME) TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ______________________ ______________________

DATE SIGNATURE OF SERVER

______________________

ADDRESS OF SERVER

______________________

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

American LegalNet, Inc
www.FormsWorkflow.com

## EXHIBIT A

**TO: CedarCrestone, Inc. c/o**

**Corporation Service Company, REGISTERED AGENT**

**40 Technology PKWY South, #300**

**Norcross, GA 30092 Phone: 1-800-927-9800**

PLEASE TAKE NOTICE THAT Pursuant to Rule 45 of the Federal Rules of Civil Procedure, defendants SAP AG, a German corporation, SAP America, Inc., a Delaware corporation, and TomorrowNow, Inc., a Texas corporation (collectively "Defendants") request that CedarCrestone, Inc. ("CedarCrestone") produce at the offices of Jones Day, 1420 Peachtree Street N.E., Suite 800, Atlanta, Georgia 30309-3053 on December 24, 2008 at 9:30 a.m., or at such time and place as may be mutually agreed upon by the parties, the documents, electronic data, and things described herein that are in CedarCrestone's possession, custody, and/or control, and thereby permit defendants and/or their representatives to inspect copies, or create copies of originals for such inspection.

## DEFINITIONS

Unless otherwise indicated, the following definitions shall apply to each of the below Requests for Production and Inspection.

1. The term "CEDARCRESTONE," "YOU," or "YOUR," means and includes nonparty CedarCrestone, and all of its current and former subsidiaries and affiliates; all divisions, predecessors, successors and assigns of each of the foregoing; and all current officers, directors, employees, agents, consultants, attorneys, accountants, administrators and all other persons, organizations, or others acting or purporting to act on behalf, or under the control, of each of the foregoing, including all temporary employees and independent contractors.

2. The term "ORACLE" means and includes plaintiffs Oracle USA, Inc., a Colorado corporation; Oracle International Corporation, a California corporation; Oracle Systems Corporation, a Delaware corporation; Oracle EMEA Limited, an Irish private limited company; and J.D. Edwards Europe Limited, an Irish private limited company; all current and former

subsidiaries and affiliates thereof; all divisions, predecessors, successors and assigns of each of the foregoing.

3. The term "TOMORROWNOW" means and includes TomorrowNow, Inc., a Texas corporation; all current and former subsidiaries and affiliates thereof; and all divisions, predecessors, successors and assigns.

4. The term "DOCUMENT(S)" means and includes, without limitation, written, printed, typed, recorded, computerized, electronic, taped, graphic or other matter, in whatever form, whether in final or draft, including, but not limited to, all materials and things that constitute "writings" or "recordings" within the meaning of Rule 1001 of the Federal Rules of Evidence or documents within the meaning of Rule 34 of the Federal Rules of Civil Procedure. The terms "DOCUMENTS(S)" further includes, but is not limited to, the original and each copy of any writings, including any copy that differs in any respect from the original or other versions, of the DOCUMENTS(S), such as, but not limited to, copies containing notations, insertions, corrections, marginal notes, or any other variations; records, or files; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; email; telephone message records or logs; computer and network activity logs; data on hard drives; backup data; data on removable computer storage media such as tapes, disks, and cards; printouts; document image files; web pages; databases; spreadsheets; software; hardware; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; charts; digital or chemical process photographs; video, phonographic, tape, or digital records or transcripts; drafts; jottings; and notes.

5. The term "COMMUNICATION" means any transmission of information from one person to another.

6. The term "ORACLE SOFTWARE AND SUPPORT MATERIALS" means, without limitation, all programs, program updates, software updates, minor releases, major releases, bug fixes, patches, custom solutions, and instructional materials created or owned by

ORACLE; or derived from copied from, or based on any such ORACLE materials across the entire family of PeopleSoft and JD Edwards branded products.

7. The term "USE," with reference to ORACLE SOFTWARE AND SUPPORT MATERIALS, means to study, alter, manipulate, reverse-engineer, distribute, copy or replicate, in whole or in part, or otherwise interact with.

8. The term "CUSTOMER" refers to YOUR current and former clients, end-users, buyers, purchasers, and/or consumers.

9. The terms "and" as well as "or" shall be construed disjunctively and conjunctively as necessary in order to bring within the scope of the following Requests all information which might otherwise be construed to be outside their scope.

10. The use of the singular form of any word includes the plural and vice versa.

11. Any pronoun shall be construed to refer to the masculine, feminine, or neuter gender as in each case is most inclusive.

## INSTRUCTIONS

1. With respect to a DOCUMENT or thing that YOU contend is privileged, immune or otherwise excludable from discovery, provide: (i) the DOCUMENT or thing's preparation date and the date appearing on the DOCUMENT or thing; (ii) the name, present and last known addresses, telephone numbers, titles and positions, and occupations of those individuals who prepared, produced, reproduced, and received said DOCUMENT or thing, including all authors, senders, recipients, "cc" recipients, and "bcc" recipients; (iii) the number of pages withheld in the DOCUMENT or the size, volume or quantity of the thing withheld; and (iv) a description sufficient to identify the DOCUMENT or thing without revealing the information for which the privilege is claimed, including the general subject matter and character of the DOCUMENT or thing (*e.g.*, letter, memorandum, notes).

2. With respect to a DOCUMENT or thing that YOU contend is privileged only in part, produce the responsive non-privileged portion of the DOCUMENT or thing in redacted form, provided that the redacted material is identified and the basis for the claim of privilege is stated in accordance with Instruction number 1 above.

3. Unless otherwise specified, the relevant time period for YOUR response to these requested DOCUMENTS and things shall be from January 1, 2002 to and including the date of YOUR response.

## REQUESTS FOR PRODUCTION AND INSPECTION

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS reflecting or referring to COMMUNICATIONS between YOU and ORACLE concerning TOMORROWNOW.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS reflecting or referring to COMMUNICATIONS between YOU and ORACLE concerning YOUR USE of ORACLE SOFTWARE AND SUPPORT MATERIALS.

**REQUEST FOR PRODUCTION NO. 3:**

DOCUMENTS sufficient to show all licenses, contracts, partnership agreements, and/or other agreements or authorizations, to USE ORACLE SOFTWARE AND SUPPORT MATERIALS.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS reflecting or referring to COMMUNICATIONS about any actual or contemplated license, contract, partnership agreement, and/or other agreement or authorization, to USE ORACLE SOFTWARE AND SUPPORT MATERIALS.

**REQUEST FOR PRODUCTION NO. 5:**

DOCUMENTS sufficient to show the types of services YOU provide to CUSTOMERS when acting as a Certified Advantage Partner of Oracle, as described on YOUR website www.cedarcrestone.com.

**REQUEST FOR PRODUCTION NO. 6:**

DOCUMENTS sufficient to show any effort, strategy, plan, business model and/or action by YOU to USE ORACLE SOFTWARE AND SUPPORT MATERIALS in connection with providing services or selling products.

**REQUEST FOR PRODUCTION NO. 7:**

DOCUMENTS sufficient to show the consideration, if any, paid by YOU to ORACLE for

the USE of ORACLE SOFTWARE AND SUPPORT MATERIALS.

**REQUEST FOR PRODUCTION NO. 8:**

DOCUMENTS sufficient to identify all CUSTOMERS for which YOU have provided support services by USING ORACLE SOFTWARE AND SUPPORT MATERIALS.

**REQUEST FOR PRODUCTION NO. 9:**

DOCUMENTS sufficient to show the services YOU provided to become eligible for the 2008 Titan Award Winner for "The SOA and Integration Solution," as described on YOUR website, www.cedarcrestone.com.

**REQUEST FOR PRODUCTION NO. 10:**

DOCUMENTS sufficient to show the services YOU provided to become eligible for the 2007 Oracle Titan Award for "PeopleSoft Solution," as described on YOUR website, www.cedarcrestone.com.

**REQUEST FOR PRODUCTION NO. 11:**

DOCUMENTS relating or referring to any competition between YOU and ORACLE to provide support services to CUSTOMERS.

**REQUEST FOR PRODUCTION NO. 12:**

DOCUMENTS relating or referring to the above-captioned lawsuit.

# EXHIBIT 15

McDonell Declaration ISO Motion to Compel
Production of Documents Relating to CedarCrestone

**PEABODY & ARNOLD LLP**
COUNSELLORS AT LAW

FEDERAL RESERVE PLAZA
600 ATLANTIC AVENUE, BOSTON, MA 02210-226
(617) 951-2100 FAX (617) 951-2125

BOSTON, MA PROVIDENCE, RI

DALE A. COGGINS
[617] 951.2049
dcoggins@peabodyarnold.com

December 8, 2008

**BY FACSIMILE**

Jason McDonell, Esquire
Jones Day
555 California Street, 26th floor
San Francisco, CA 94194

Re: Subpoena to CedarCrestone, Inc. in Oracle/SAP litigation

Dear Mr. McDonell:

I am serving this objection on you on behalf of my client, CedarCrestone, Inc. Pursuant to FRCP Rule 45, CedarCrestone, as a non-party, objects to the Subpoena to Produce Documents served on it by SAP in Oracle USA, Inc., et al. v. SAP AG, et al. It makes this objection while reserving its right to file a motion to quash or to object on other bases to the subpoena and any portions of it, as well as to any other subpoenas with which it may be served, or to seek a protective order.

As CedarCrestone reads the requests, they could require that CedarCrestone, which is an Oracle customer itself and whose business is supporting Oracle's customers, to provide many thousands, perhaps hundreds of thousands, of documents relating to CedarCrestone's provision of services to hundreds of clients over a seven year period. CedarCrestone objects to the subpoena because of the overbroad, vague, ambiguous, and burdensome requests it includes and the fact that the requests seek confidential and proprietary information. It also objects on the basis of relevance. CedarCrestone objects generally to the subpoena to the extent it seeks to impose any obligations greater than those set forth in the Federal Rules of Civil Procedure and to the extent it seeks information protected by privilege and attorney work product.

CedarCrestone objects to the definition of "YOU" to the extent it includes people and companies which are not currently in existence and/or are not under the control of CedarCrestone. It objects to the seven year time period set out in the subpoena as unreasonable and unrelated to any relevant purpose. It objects to SAP's request for information which it can obtain from Oracle, the plaintiff in the litigation, without causing CedarCrestone, a non-party, the enormous time and expense it would require to collect, review, and produce the documents requested by SAP.

In addition to these general objections applicable to the subpoena as a whole and to the individual requests, CedarCrestone objects to each of the requests as set forth below.

<u>REQUEST FOR PRODUCTION NO. 1</u>:

**All DOCUMENTS reflecting or referring to COMMUNICATIONS between you and ORACLE concerning TOMORROWNOW.**

CedarCrestone has approximately 680 employees. Since it is an Oracle partner, virtually all of its employees have regular contact with Oracle employees. Since the Oracle/SAP litigation has been reported so widely in the press, it is likely that a very high percentage of those 600 individuals have had communications with Oracle regarding TomorrowNow. It would be extremely burdensome for CedarCrestone to canvass 680 employees to collect all documents reflecting or referring to communications between them and Oracle concerning TomorrowNow. CedarCrestone objects to this request because it is vague, ambiguous, overbroad and would be extremely burdensome, time consuming, and expensive to comply with. It also objects on the basis that CedarCrestone's communications with Oracle do not appear relevant in any way to Oracle's claim against SAP as set out in the Third Amended Complaint.

<u>REQUEST FOR PRODUCTION NO. 2</u>:

**All DOCUMENTS reflecting or referring to COMMUNICATIONS between YOU and ORACLE concerning YOUR USE of ORACLE SOFTWARE AND SUPPORT MATERIALS.**

This request would require CedarCrestone to produce extensive documents relating to its own use of Oracle Software and Support Materials pursuant to its license as an Oracle customer. This information does not appear in any way relevant to the Oracle/SAP litigation. In addition, Request 2 appears to ask, in summary, that CedarCrestone produce all documents relating to CedarCrestone's accessing Oracle Software and Support Materials over a seven year period. Since virtually all of CedarCrestone's customers hire CedarCrestone to provide Oracle PeopleSoft support to them, it appears to CedarCrestone that SAP is requesting that CedarCrestone produce extensive documents related to virtually every CedarCrestone client project. CedarCrestone has had hundreds of customers over the period since 2002, in addition to being an Oracle customer itself. CedarCrestone objects to this request because it is vague, ambiguous, overbroad and would be extremely burdensome to comply with.

**REQUEST FOR PRODUCTION NO. 3:**

**DOCUMENTS sufficient to show all licenses, contracts, partnership agreements, and/or other agreements or authorizations, to USE ORACLE SOFTWARE AND SUPPORT MATERIALS.**

This request would require CedarCrestone to produce its own contracts with Oracle, entered into as an Oracle customer. Such contracts are covered by a confidentiality agreement and do not appear in any way relevant to the Oracle/SAP litigation. Oracle is easily able to provide all contracts with third parties, including CedarCrestone, related to its Software and Support Materials if the court deems such documents relevant. With regard to services provided to a specific licensed customer, CedarCrestone does not access Software and Support Materials except as authorized by and in support of that customer and with respect only to Software and Support Materials which that customer had a current right to have and use.

**REQUEST FOR PRODUCTION NO. 4:**

**All DOCUMENTS reflecting or referring to COMMUNICATIONS about any actual or contemplated license, contract, partnership agreement, and/or other agreement or authorization, to USE ORACLE SOFTWARE AND SUPPORT MATERIAL.**

This request would require CedarCrestone to produce its own contracts with Oracle, entered into as an Oracle customer. Such contracts are covered by a confidentiality agreement and do not appear in any way relevant to the Oracle/SAP litigation. Oracle is easily able to provide all contracts with third parties, including CedarCrestone, related to its Software and Support Materials if the court deems such documents relevant. With regard to services provided to a specific licensed customer, CedarCrestone does not access Software and Support Materials except as authorized by and in support of that customer and with respect only to Software and Support Materials which that customer had a current right to have and use.

**REQUEST FOR PRODUCTION NO. 5:**

**DOCUMENTS sufficient to show the types of services YOU provide to CUSTOMERS when acting as a certified Advantage Partner of Oracle, as described on YOUR website www.cedarcrestone.com.**

To the best of CedarCrestone's knowledge, its website is sufficient to show the types of services it provides to customers.

**REQUEST FOR PRODUCTION NO. 6:**

**DOCUMENTS sufficient to show any effort, strategy, plan, business model and/or action by YOU to USE ORACLE SOFTWARE AND SUPPORT MATERIALS in connection with providing services or selling products.**

Request 6 requests documents "sufficient to show" any effort, strategy, plan, business model, and/or action by CedarCrestone to use Oracle Software and Support Materials in connection with providing services or selling products. CedarCrestone objects to this request as vague, as it does not know what SAP means by "sufficient to show". However, CedarCrestone's website describes its product offerings. The only use CedarCrestone makes of Oracle Software and Support Materials in connection with providing services or selling products is in the course of accessing material for clients as permitted by the client license.

**REQUEST FOR PRODUCTION NO. 7:**

**DOCUMENTS sufficient to show the consideration, if any, paid by YOU to ORACLE for the USE of ORACLE SOFTWARE AND SUPPORT MATERIALS.**

CedarCrestone objects to this request as it would require disclosure of the confidential terms of CedarCrestone's own license agreement with Oracle (as an Oracle customer), which is not relevant to any issue in the Oracle/SAP litigation. It would also require production of materials easily available from Oracle itself. As to services it provides to its customers, CedarCrestone does not pay Oracle for use of Oracle Software and Support Materials. The only use CedarCrestone makes of Oracle Software and Support Materials is in the course of accessing material for clients as permitted by the client license.

**REQUEST FOR PRODUCTION NO. 8:**

**DOCUMENTS sufficient to identify all CUSTOMERS for which YOU have provided support services by USING ORACLE SOFTWARE AND SUPPORT MATERIALS.**

Since virtually all of CedarCrestone's customers hire CedarCrestone to provide Oracle/PeopleSoft support to them, it appears to CedarCrestone that SAP could be requesting that CedarCrestone produce documents related to virtually every CedarCrestone client project. CedarCrestone has had hundreds of customers over the period since 2002, in addition to being an Oracle customer itself. CedarCrestone objects to this request because it is vague, ambiguous, overbroad, would be extremely burdensome to comply with, would require information proprietary and confidential to CedarCrestone, and the information requested is not relevant.

**REQUEST FOR PRODUCTION NO. 9:**

**DOCUMENTS sufficient to show the services YOU provided to become eligible for the 2008 Titan Award Winner for "The SOA and the Integration Solution," as described on YOUR website, www.cedarcrestone.com.**

CedarCrestone does not understand this request. To the best of its knowledge, all Oracle Partners are eligible for awards.

**REQUEST FOR PRODUCTION NO. 10:**

**DOCUMENTS sufficient to show the services YOU provided to become eligible for the 2007 Oracle Titan Award for "PeopleSoft Solution," as described on YOUR website, www.cedarcrestone.com.**

CedarCrestone does not understand this request. To the best of its knowledge, all Oracle Partners are eligible for awards.

**REQUEST FOR PRODUCTION NO. 11:**

**DOCUMENTS relating or referring to any competition between YOU and ORACLE to provide support services to CUSTOMERS.**

CedarCrestone does not understand what is meant by "competition" in this request. While CedarCrestone provides various types of support to Oracle customers, it does not view doing so as engaging in competition with Oracle.

**REQUEST FOR PRODUCTION NO. 12:**

**DOCUMENTS relating or referring to the above-captioned lawsuit.**

CedarCrestone has approximately 680 employees. Since it is an Oracle partner and since the Oracle/SAP litigation has been reported so widely in the press, it is likely that a very high percentage of those 680 individuals have some type of documents relating to the lawsuit between Oracle and TomorrowNow. It would be extremely burdensome for CedarCrestone to canvass 680 employees to collect all documents reflecting or referring to documents concerning the lawsuit between Oracle and TomorrowNow. CedarCrestone objects to this request because it is vague, ambiguous, overbroad and would be extremely burdensome, time consuming, and expensive to comply with. It also objects on the basis that CedarCrestone's documents referring

or relating to the Oracle/SAP lawsuit do not appear relevant in any way to Oracle's claim against SAP as set out in the Third Amended Complaint.

With regard to relevance, given the nature of CedarCrestone's business as an Oracle Certified Advantage Partner which assists Oracle PeopleSoft customers with their Oracle PeopleSoft applications, the requests for documents do not appear to CedarCrestone to be designed to lead to the production of relevant evidence in Oracle's lawsuit against SAP. Since receiving the subpoena, CedarCrestone has learned that there have been two orders in the Oracle/SAP litigation denying SAP's requests to engage in discovery related to Oracle's partners.

The first finding was made by Judge Legge and was included in Report and Recommendations re: Discovery Hearing No 1 dated February 22, 2008. That document states in relevant part:

> Defendants seek extensive documents and interrogatory information concerning support of Oracle's products by third parties. They want detailed information regarding the third parties and their contractual relationship to Oracle. This request is tangential at best.
>
> The downloading in this case was done either by the customers themselves or by TN as the support company representing those customers. What is the relevance of Oracle's relationships with other third party support. That information does not appear to be directly or presently relevant. Defendant argues that it will have something to do with damages, and with possible abandonment of some copyrights by Oracle. However, such extensive third party discovery does not now appear to be justified by those narrow potential arguments. Defendants also argue that the third party support contracts may shed some light on Oracle's license agreements with TN or the customers. But at present we do not know what language of the license agreements, or other documents granting consent to the customers to download, will be in dispute in this case.
>
> The Special Discovery Master therefore recommends that these requests be denied, without prejudice, until a later showing of relevance and appropriateness.

The second ruling is included in Transcript of Proceedings held on 8-28-08, before Judge Elizabeth LaPorte. The transcript states that the Court did not think discovery related to Oracle partners was "significantly relevant to open it up". She noted that Judge Legge had already ruled similarly on the issue and said that she was "dubious about whether it's relevant". She stated: "..[I]t does seem like a completely different thing. And that the relevance would be – if there is any – would be outweighed by the burdensome."

Based on the judicial statements quoted above, it is CedarCrestone's understanding that the court has stated that SAP is not permitted to seek discovery from third party Oracle partners because the relevance of any such discovery is dubious and far outweighed by the burdensome nature of the discovery. CedarCrestone is not a party to this litigation and objects to SAP's subpoena for the reasons set forth herein.

Cordially,

Dale Coggins

Dale A. Coggins

693951_1

**PEABODY & ARNOLD LLP**
COUNSELLORS AT LAW

600 ATLANTIC AVENUE, BOSTON, MA 02210-2261
[617] 951.2100 FAX [617] 951.2125

BOSTON, MA PROVIDENCE, RI

# Facsimile

| FROM: DALE A. COGGING | | |
|---|---|---|
| DIRECT DIAL: [617] 951.2049 | | EMAIL: dcoggins@peabodyarnold.com |
| DATE: December 8, 2008 | NO. OF PAGES: 8 | CLIENT/MATTER: |

Please deliver to:

| NAME | COMPANY | FAX NUMBER | VOICE NUMBER |
|---|---|---|---|
| Jason McDonell, Esquire<br>Robert Mittelstaedt, Esquire<br>Elaine Wallace, Esquire | Jones Day | 415.875.5700 | |

COMMENTS:

**Confidentiality Note:** The documents accompanying this facsimile contain information from the law firm of Peabody & Arnold LLP, which may be confidential and/or privileged. The information is intended only for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, you are hereby notified that any disclosure, copying distribution or the taking of any action in reliance on the contents of this facsimile is strictly prohibited, and that the documents should be returned to this Firm immediately. If you have received this facsimile in error, please notify us by telephone immediately so that we can arrange for the return of the original documents to us at no cost to you. IF YOU EXPERIENCE ANY PROBLEMS WITH THIS TRANSMISSION OR DO NOT RECEIVE ALL PAGES, PLEASE CALL 617.261.5042 or 617.261.7042

# EXHIBIT 16

McDonell Declaration ISO Motion to Compel
Production of Documents Relating to CedarCrestone

BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corp., Oracle Systems Corp., Oracle EMEA Ltd., and J.D. Edwards Europe Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation, ORACLE INTERNATIONAL CORPORATION, a California corporation, ORACLE SYSTEMS CORPORATION, a Delaware corporation, ORACLE EMEA LIMITED, an Irish private limited company, and J.D. EDWARDS EUROPE LIMITED, an Irish private limited company,<br><br>Plaintiffs,<br>v.<br><br>SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. (Misc.)<br><br>Pending in: 07-CV-1658 PJH (EDL)<br><br>NORTHERN DISTRICT OF CALIFORNIA SAN FRANCISCO DIVISION<br><br>**PLAINTIFFS' NOTICE OF OBJECTIONS AND OBJECTIONS TO THIRD-PARTY SUBPOENA SERVED BY DEFENDANTS ON NON-PARTY CEDARCRESTONE, INC.** |

A/72772950.1

TO DEFENDANTS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that pursuant to Rule 45(b)(1) of the Federal Rules of Civil Procedure, plaintiffs Oracle USA, Inc., a Colorado corporation, Oracle International Corporation, a California corporation, Oracle Systems Corporation, a Delaware corporation, Oracle EMEA Limited, an Irish private limited company, and J.D. Edwards Europe Limited, an Irish private limited company (collectively, "Oracle"), hereby object to each and every request and definition contained in the third-party subpoena noticed by defendants SAP AG, a German corporation, SAP America, Inc., a Delaware corporation, and Tomorrownow, Inc., (collectively, "defendants") on November 21, 2008 and served on non-party CedarCrestone, Inc. ("Subpoena"), for the reasons set forth below.

**OBJECTIONS**

1. Oracle objects to defendants' Subpoena in its entirety because the discovery sought has previously been denied by the Special Discovery Master, Judge Legge. (*See* Report and Recommendations Re: Discovery Hearing No. 1, filed on 3/14/08, at p. 7). Defendants' Subpoena seeks documents, things, and information that are not relevant to the claims or defenses asserted by the parties to this litigation, or the subject matter of this litigation, and are not reasonably calculated to lead to the discovery of admissible evidence. Judge Legge has denied defendants' request to seek documents concerning third-party support of Oracle's products, and of any purported contractual relationships between third-party support providers and Oracle. (*See id.*) In rejecting defendants' "narrow potential arguments" that third-party support providers "might have something to do with damages," Judge Legge denied this discovery "until a later showing of relevance and appropriateness" has been made by defendants. (*Id.*) Defendants have not made any showing of relevance.

2. Oracle objects to defendants' Subpoena in its entirety because, in light of Judge Legge's rulings and the bases for them, Judge Laporte has instructed defendants to make a foundational showing of the relevance of such discovery. (*See* 8/28/08 Discovery Hearing Transcript before Hon. Laporte, at pages 60-61.) Furthermore, with respect to discovery on Oracle third-party support partners, Judge Laporte has stated that she is "dubious about whether its relevant." (*Id.*

at p. 61:19.) Indeed, defendants have repeatedly represented to the Court that they will raise the third-party support discovery issue by a motion to compel, in light of Judge Legge's earlier rulings (see above). (*See* 8/21/08 Joint Discovery Conference Statement; 8/28/08 Transcript of Discovery Hearing before Hon. Laporte, at pages 61-62). The Court's August 29, 2008 Order Following Discovery Conference orders that "Defendants may file . . . their motion to compel third party information. . . . The parties shall meet and confer on a briefing schedule for the motions to compel." (*See* August 29, 2008 Order Following Discovery Conference at ¶ 4). Defendants have yet to meet and confer on a briefing schedule for their motion to compel. Instead, defendants are now seeking formal discovery directly from a third-party on the very issues they have asserted they will first prove up before the Court and receive the Court's further ruling. CedarCrestone unnecessarily is now caught in the middle.

6. Oracle objects to the Subpoena to the extent that it calls for production of documents and information that is protected by the attorney-client privilege, the attorney work-product doctrine, and other applicable privileges and immunities.

7. Oracle objects to the Subpoena in its entirety as unduly burdensome because the burden of reviewing and designating irrelevant documents outweighs any benefit of production. There is no benefit to be gained by the production, review and designation of information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Dated: 12-9-08

By: Lucia MacDonald

Lucia MacDonald
BINGHAM MCCUTCHEN LLP
Attorneys for Plaintiffs Oracle USA, Inc., Oracle International Corporation, Oracle Systems Corporation, Oracle EMEA Limited, and J.D. Edwards Europe Limited

## CERTIFICATE OF SERVICE

I am over 18 years of age, not a party to this action and employed in the County of San Francisco, California at the offices of Bingham McCutchen LLP, located at Three Embarcadero Center, San Francisco, California 94111-4067. I am readily familiar with the practice of this office for collection and processing of correspondence by U.S. Mail, and they are deposited and/or sent that same day in the ordinary course of business. Today I served the attached:

**PLAINTIFS' NOTICE OF OBJECTIONS AND OBJECTIONS TO THIRD-PARTY SUBPOENA SERVED BY DEFENDANTS ON NON-PARTY CEDARCRESTONE, INC.**

☒ (BY MAIL) by causing a true and correct copy of the above to be placed in the United States Mail at San Francisco, California in sealed envelope(s) with postage prepaid, addressed as set forth below. I am readily familiar with this law firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence is deposited with the United States Postal Service the same day it is left for collection and processing in the ordinary course of business.

☒ (BY ELECTRONIC MAIL) by transmitting via electronic mail the document(s) identified above in portable document format ("PDF") to the e-mail addresses listed below.

Robert A. Mittelstaedt, Esq.
Jason McDonell, Esq.
Elaine Wallace, Esq.
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104 Tel:415-626-3939
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier, Esq.
Jane L. Froyd, Esq.
Jones Day
1755 Embarcadero Road
Palo Alto, CA 94303
Tel: (650) 739-3939
tglanier@jonesday.com
jfroyd@jonesday.com

Dale A. Coggins, Esq.
Peabody & Arnold LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210-2261 Tel: 617-951-2049
dcoggins@peabodyarnold.com

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made and that this declaration was executed on December 8, 2008, in San Francisco, California.

Lisa Lee

A/72772950.1

# EXHIBIT 17

McDonell Declaration ISO Motion to Compel
Production of Documents Relating to CedarCrestone

ORACLE | PeopleSoft



# Oracle and PeopleSoft Alliances and Channels Guide

## *Contents*


- Operational Guidelines During Transition Period 3
- Agreements, Licensing & Sales Transactions 5
- Support 7
- Education & Enablement 8
- General Oracle PartnerNetwork FAQ 9
- Contacts and Resources 11


PLEASE NOTE: [illegible]

05 0083

ORACLE

Copyright © 2005, Oracle. All rights reserved. Oracle is a registered trademark of Oracle Corporation and/or its affiliates. Other names may be trademarks of their respective owners. Printed in the U.S.A. V3-02-22

## INTRODUCTION

On January 18, 2005, we unveiled our plans for how together, the global partner community of more than 14,250 and the combined workforce of Oracle and PeopleSoft of nearly 50,000 will provide unparalleled innovation and support to our 23,000 applications customers around the world.

The combination of Oracle and PeopleSoft brings together the best and brightest talent in the software industry, enabling us to accelerate innovation and offer our customers superior solutions at a lower price. The combined companies now represent more applications and database customers than any other company in the world. Together, we offer customers leading solutions and services from more than 1,300 applications partners worldwide with Oracle, PeopleSoft and J.D. Edwards capabilities. As we move into the future, partners are essential to Oracle's economy and growth strategy. With the combination of the two companies, Oracle looks forward to embracing our partners and the opportunities created through these synergies, while retaining focus on our primary objectives of customer satisfaction and retention, and our partners' continued success and growth.

This new organization will offer our partners more opportunities for growth and enhanced abilities to meet customer demands through the highest quality solutions and services, leading to greater customer satisfaction. Partnership with Oracle opens the door for partners, Oracle employees and our customers to leverage the strengths, competencies and expertise of a global community of more than 14,000 partners. The synergy created through these partnerships and the integration of Oracle and PeopleSoft will provide the opportunity to grow into more industries, across broader geographies and channels, and into additional market segments.

To enhance and simplify the partnering experience for Oracle and PeopleSoft partners and employees, we are pleased to provide you with the Alliances & Channels Guide. Initially written to provide information to PeopleSoft partners and employees about how Oracle currently conducts partnering business as well as how PeopleSoft Partner Connection members should conduct business during the transition period, this document will be updated over time to be a comprehensive guide to your understanding of the sales processes, business practices, licensing and pricing, support and education essential to success for our partner ecosystem and the customers it services. Updates will be provided regularly to ensure that you have the most current information necessary to transact business with the combined Oracle and PeopleSoft companies.

## OPERATIONAL GUIDELINES DURING TRANSITION PERIOD

The integration of PeopleSoft Partner Connection and Oracle PartnerNetwork will occur over the next few months, with every effort made to ensure a seamless process and to provide partners with a rich program that supports every aspect of their PeopleSoft and Oracle business. Throughout the transition, Oracle will communicate the very latest information and resources to address questions and highlight new opportunities. Both programs will continue to operate fully in parallel until the integration is complete, in order to provide the highest level of support for our partners' business.

During this transition period, partners in both programs should continue to conduct all business as usual until further notification. To ensure continuity of the business during this period, the standard operating models, and processes that have been in place at PeopleSoft will remain in place so that partners and customers can continue their business with little to no interruption. This applies to all partner activities including:

- Program membership
- Agreements
- Pricing
- Licensing
- Software orders
- Education
- Support
- Logo usage
- All other benefits offered through PeopleSoft Partner Connection

As changes are made, partners will be notified with specific details on updated processes, practices and contact points. Information will be available through updated versions of this document and instructions on the PeopleSoft Partner Connection and Oracle PartnerNetwork portals, as well as through direct communication with account management teams and the respective contact centers.

The following information provides an overview of how business is conducted at Oracle as well as direction on how any potential change might affect partners. It is not provided to ask partners to adhere to these Oracle policies and practices immediately. As mentioned above, until notified, all partners should conduct their business with PeopleSoft as they have to date.

## AGREEMENTS, LICENSING, PRICING & SALES TRANSACTIONS

### PeopleSoft – Oracle Partner Agreement Mapping

| PeopleSoft Agreement | Corresponding Oracle Agreement or Policy |
|---|---|
| Alliance Master Agreement | Oracle PartnerNetwork Agreement |
| Channel Partner Master Agreement | Full Use License Distribution Agreement |
| NA | Application Specific Full Use License Agreement |
| NA | Embedded Software License Agreement |
| OEM Agreement | Specific negotiated agreement |
| VAR Agreement | Specific negotiated agreement |
| Lead Referral Agreement | OMM Policy + Confirmation Letter |

## *Oracle Agreement Definitions*

- **Oracle PartnerNetwork Agreement**
  Prospective partners join the Oracle PartnerNetwork program by executing an Oracle PartnerNetwork Agreement. This agreement gives partners access to the Oracle PartnerNetwork portal and the many benefits and resources available through the program. The agreement outlines the specific terms and definitions for offerings available, such as free development licenses, market development funds, and partner education for all three levels of partnership: Partner, Certified Partner, and Certified Advantage Partner. Depending on how the partner company is structured, the agreement will be Standard, Worldwide (with identified Associates), or Associate (attached to a Worldwide member).

- **Full Use Distribution Agreement (FUDA)**
  A Full Use License grants the end user full rights to develop custom applications with the Oracle software. This gives the customer the most flexibility and generally speaking, is the most appropriate license level for System Integrators to distribute.

- **Application Specific Full Use Distribution Agreement (ASFU)**
  An ASFU License can only be used in conjunction with the application with which it was sold. ASFU is designed to provide a cost effective model for ISV's to resell Oracle licenses with their application software. To apply for an ASFU agreement, the partner first needs to download and complete an ASFU Application Package Registration Form.

- **Embedded Software License Distribution Agreement (ESL)**
  An ESL License is a restricted license sold by a solution provider and embedded in its Application Package. Embedded licenses may only be used by the end user to execute the partner's application program and may not be used with more than one Application Package. An ESL can only be used in conjunction with the Application or Device with which it was sold and the Oracle code must be truly embedded and therefore completely invisible to the end user.

## *Oracle License Types for Partners*

Oracle PartnerNetwork members are granted Development and Demonstration licenses as part of their memberships under the following terms.

- **Development Licenses**
  Development Licenses for Oracle technology programs can be used for the following purposes:
  - To develop or prototype hardware, software products or services for potential distribution with Oracle programs, provided that the partner does not receive any fees related to the development or prototype of such hardware, software products or services
  - To demonstrate the programs to potential end users solely in connection with the partner's value added package or application package pursuant to an agreement with Oracle for the distribution of Oracle programs
  - To provide technical support and/or training for employees and end users solely in connection with the partner's value added package or application package pursuant to an agreement with Oracle for the distribution of Oracle programs

- **Demonstration Licenses**
  Demonstration Licenses are used primarily by a partner who:
  - Demonstrates the programs identified as E-Business Software programs to potential end users solely in connection with the partner's Oracle PartnerNetwork membership
  - Integrate the E-Business Suite Software programs with the partner's application program

## *Registering Transactions with Oracle*

- **Oracle Open Market Model**
  The Open Market Model (OMM) is a comprehensive channel engagement strategy designed to provide partners with maximum opportunities to earn revenues with Oracle. The Model consists of three initiatives:
  - Resale Initiative: Register opportunities upfront to receive cooperation from Oracle.
  - Referral Initiative: Refer opportunities for Oracle to sell directly and qualify to earn a referral fee.
  - Influence Initiative: Play a strategic role in influencing an end user's decision to choose Oracle and qualify to earn an influence fee depending on the level of influence provided.

Companies who are not members of Oracle PartnerNetwork may also register opportunities in the Referral Initiative and earn a referral fee.

## *Pricing & Licensing*

Oracle's standard pricing and licensing structures can be found by going to the Oracle home page under "About Oracle" in the "Resources" section.

## *Placing Orders*

Orders for end-user customers can be placed through Oracle or through a VAD, depending on the partner's agreement. Each order between the partner and the partner's end users for Oracle program licenses and services is subject to a legally binding end-user license agreement. If a partner submits orders directly to Oracle, and not through a VAD, it can be done online through the Oracle Store (where available) or by submitting a Standard Partner Ordering Document to Oracle. Products can be shipped on CDs or they can be accessed immediately through Electronic Product Delivery.

To place an order for software associated with the Demonstration or Development Licenses, partners simply complete a Development and Demonstration Ordering Document or place their order through the Oracle Store (where available) and request a CD shipment or download the products through Oracle's Electronic Product Delivery site.

## *Frequently Asked Questions – Agreements, Licensing, Pricing & Sales Transactions*

- Agreements

Q: How will Oracle transition PeopleSoft Alliance Partner agreements into Oracle PartnerNetwork agreements?
A: The agreement that Alliance Partners sign is equivalent to Oracle's OPN Agreement. Therefore, Oracle will endeavor to transition all partners over to the Oracle PartnerNetwork Program and the OPN Agreement as soon as possible. An OPN agreement will be available in the next few months for partners to execute.

Prior to transitioning to the OPN agreement, partners with an Alliance Master Agreement may operate under the terms of their valid agreement.

Q: How will Oracle transition PeopleSoft Channel Partner agreements into Oracle PartnerNetwork agreements?
A: The agreement that Channel Partners sign is equivalent to Oracle's Full Use Distribution Agreement. Therefore, Oracle will endeavor to transition all partners over to this agreement and into Oracle PartnerNetwork as soon as possible. An agreement to distribute specific PeopleSoft programs will be available in the next few months for partners to execute. Note that partners that continue to distribute PeopleSoft programs will also have the right to distribute Oracle technology programs once an agreement is executed.

Q: If a partner requests to sign or renew a PeopleSoft agreement before the Oracle agreements are available, what process should be followed?
A: Any such urgent requests during this transitional period shall be forwarded through the regional Alliances & Channels integration representatives for immediate consideration.

Q: How will Oracle communicate its intent to transition the existing PeopleSoft agreements to Oracle PartnerNetwork agreements?
A: Once Oracle is prepared to transition the partners, a "Program Welcome Packet" will be sent to all partners. The packet will include timing for the transition from their existing PeopleSoft agreement, benefits for joining Oracle's program, sample OPN and/or Distribution Agreements, instructions on how to execute the new agreements, how to place orders with Oracle for media and resale (if applicable), and where to go for more information.

Q: Will Oracle partners that currently have the right to distribute E-Business Suite programs be entitled to resell PeopleSoft programs as well?
A: At this time, Oracle is not in a position to offer this to right to existing E-Business Suite resellers.

- Pricing & Licensing

Q: Can a PeopleSoft Distributor continue to sell at existing discounts/margins?
A: PeopleSoft Distributors may continue to transact business for PeopleSoft products under existing pricing and discount structures through an existing and current PeopleSoft Channel Partner Master Agreement and should continue using current PeopleSoft Channel Price Lists until notified otherwise. As the partnering programs are merged, we will review best practices in creating the new combined partnering model.

- Placing Orders

Q: Can PeopleSoft partners still order software for use according to their existing PeopleSoft Partner Agreements?
A: Partners should ensure that their Partner Connection membership is kept current to gain access to the latest PeopleSoft software. If the membership is current, then partners can order the software through the existing PeopleSoft software order process on PeopleSoft Partner Connection.

Q: How does a PeopleSoft partner place software orders, either for their own demonstration purposes or for their end users?
A: During the transition period, orders are to be placed using the standard PeopleSoft ordering documents and processes. Once the integration of the companies has occurred, the processes will be integrated within Oracle's standard operating framework, and communicated.

- Open Market Model

Q: Will Oracle extend lead referral privileges and access to Oracle's Open Market Model to PeopleSoft partners?

A: PeopleSoft offers its Alliance and Channels Partners the opportunity to participate in a lead referral program similar to Oracle's Open Market Model. Since these programs are similar, Oracle will endeavor to transition all partners over to Oracle's Open Market Model as soon as possible. In the meantime, partners with a valid Lead Referral Agreement may continue to refer leads pursuant to that agreement.

Q: What will happen to opportunities registered by PeopleSoft partners in the PeopleSoft CustomerOne system?

A: The opportunities will continue to be tracked in the PeopleSoft CustomerOne system until the two companies merge the data into the Oracle system. At that point, all current data will be merged and the then current Oracle Open Market Model policies will apply.

Q: If a PeopleSoft partner has an opportunity registered under the PeopleSoft Lead Referral process, is there a new process that must be followed in order to receive the referral payment?

A: The existing processes established by PeopleSoft will be followed; the partner does not need to follow any additional procedures.

Q: If a PeopleSoft partner identifies an opportunity for a PeopleSoft product offering, what is the process to register the opportunity?

A: If a PeopleSoft partner has a valid Lead Referral Agreement it may continue to follow the current process established by PeopleSoft. Likewise, if the PeopleSoft partner has a valid Channel Partner Master Agreement, it should continue to follow the guidelines and processes pursuant to that Agreement and established by PeopleSoft.

Q: Will Oracle extend lead referral privileges and access to Oracle's Open Market Model to PeopleSoft partners?

A: PeopleSoft offers its Alliance and Channels Partners the opportunity to participate in a lead referral program similar to Oracle's Open Market Model. Since these programs are similar, Oracle will endeavor to transition all partners over to Oracle's Open Market Model as soon as possible. In the meantime, partners with a valid Lead Referral Agreement may continue to refer leads pursuant to that agreement.

Q: In order to participate in Oracle's Open Market Model, are partners required to execute an agreement?

A: OPN members (i.e. those companies that are enrolled under Oracle PartnerNetwork) are welcome to participate in the Referral and Influence Initiative under Open Market Model, and OPN members with a valid distribution agreement are welcome to participate in the Resale Initiative as well. Non-OPN partners are welcome to participate in the Referral Initiative under the Open Market Model. No additional agreements are required, however prior to the payment of a fee under the Referral and Influence partners and non-OPN partners are required to sign a confirmation letter detailing the conditions of the payment.

Q: Do existing PeopleSoft partners have the option of executing a Lead Referral Agreement?

A: Requests for Lead Referral Agreements should be forwarded to the local Alliances & Channels team for consideration during this interim period.

Q: If a PeopleSoft partner comes across an opportunity for an Oracle product offering (technology or applications), can the partner register that opportunity under the Open Market Model?

A: A PeopleSoft partner is free to register an Oracle opportunity through the Referral Initiative under Oracle's Open Market Model. The partner will need to register the opportunity at partner.oracle.com as a non-OPN member.

Q: Can an existing OPN member register an opportunity for a PeopleSoft product offering under any of the Open Market Model initiatives?

A: At this time, the Open Market Model is only available for Oracle product opportunities. In the near future, once Oracle is able to offer the Open Market Model initiatives to existing PeopleSoft partners, Oracle will include the PeopleSoft product offerings in each of the initiatives.

Q: Where can a PeopleSoft partner learn more about Oracle's Open Market Model?

A: Information about Oracle's Open Market Model can be found at partner.oracle.com

- General Business Practice

Q: When will final business practices as they relate to PeopleSoft be available?

A: We expect that a majority of the integrated business practices will be available in March.

# EDUCATION & ENABLEMENT

## Education Benefits of the Oracle PartnerNetwork Program

Oracle offers many education benefits to Oracle PartnerNetwork members. These benefits include access to Oracle University Online Library, discounts on Instructor-led classes and Oracle Certified Professional (OCP) exams, reimbursement for two to six OCP exams based on the partner level, and access to guided learning paths and assessments. In addition to formal education, Oracle PartnerNetwork members can access key resources related to applications and technology products on the OPN Portal as well as through the Oracle Technology Network, a primary source for Oracle technical information.

## Technology Migrations

For ISVs who wish to migrate to the Oracle Database platform, there are several migration tools available through the Oracle PartnerNetwork Portal, as well as Product Technology Services that can work directly with partners. The Oracle Migration Service is a set of services, tools, proven best practices, white papers and other resources to help partners optimize their Oracle technology usage. The Product Technology Services team provides support for database and application server migrations from legacy systems (VSAM, Mumps, AS/400) and non-Oracle technologies (MS SQL Server, IBM DB2, Informix, MySQL, BEA Web Logic, IBM WebSphere, JBoss). Oracle PartnerNetwork members can look for more information on the OPN Portal (http://partner.oracle.com > Log in > Development > Development Cycle > Discover Your Development Options: Migrate).

## Frequently Asked Questions – Education

**Q: When can partners begin to access Oracle PartnerNetwork online training to better understand and build competencies on Oracle technologies?**

A: Partners will begin to have access to the OPN portal once their membership has been activated. They will automatically be able to access Oracle technology content and courses. They will need to apply and be accepted to the E-Business Suite Product Focus if they are planning to engage around these products.

**Q: As a member of Oracle PartnerNetwork I receive a substantial level of education benefits including discounts on Oracle University classroom training and Instructor-led Online training. As a PeopleSoft partner, am I entitled to this same level of benefits? Will these benefits be available on the PeopleSoft product courses as well as the Oracle product courses?**

A: Yes. Oracle University provides a generous level of benefits to members of Oracle PartnerNetwork, including discounts on classroom and instructor led online training courses. It is Oracle's intent to provide this same level of benefits to the PeopleSoft partners upon admission to the Oracle PartnerNetwork program. These benefits will apply to all Oracle University courses available to members of the partner program. During the transition period, partners may continue to register for PeopleSoft training courses using PeopleSoft's registration systems under the terms of their existing agreement with PeopleSoft.

**Q: I understand that Oracle provides access to its online learning at no cost as a benefit of membership in the Oracle PartnerNetwork. Previously I have paid for access to PeopleSoft's online content. Will access to the online content now be offered at no cost?**

A: Yes, Oracle University has provided another benefit to OPN members – no-cost access to the Oracle University Online Library. This benefit will continue to be provided to members of Oracle PartnerNetwork. Over time (the schedule has not yet been finalized) the PeopleSoft online content will be migrated into the Oracle University Online Library. When the PeopleSoft content is available in the Oracle University Online Library, members of the Oracle PartnerNetwork program may access it at no cost as a benefit of membership. In the meantime, partners may continue to access the PeopleSoft Online learning under the terms of their existing agreement with PeopleSoft.

**Q: How long will Oracle make the PeopleSoft courses available?**

A: Oracle will continue to make available PeopleSoft courses to partners and customers in several ways: publicly scheduled classes, private events, and online courses. Not all courses will be publicly scheduled, so partners should inquire if interested in a course that does not seem to be available. For the time being, inquiries for partner training may be sent to christine.dover@oracle.com. Oracle intends to maintain the PeopleSoft product training courses in the future, as well as make new ones available. For example, a new release of the PeopleSoft products would include corresponding training courses.

# SUPPORT

## Support Benefits of the Oracle PartnerNetwork Program

Upon becoming an Oracle PartnerNetwork member, partners have access to the many support related benefits of the program, including software updates, the ability to log support service requests (depending on the partner's level in the program), the opportunity to purchase additional support at deep discounts, as well as access to the Oracle MetaLink repository of online technical libraries, discussion forums, and other valuable support resources. Partners are provided with a CSI number upon entry into the program. This CSI allows them access to support services according to their specific level and type of partnership.

## Oracle PartnerNetwork Members with Distribution Agreements

The type of Distribution Agreement a partner has with Oracle dictates how they offer their customers support for Oracle products.

- Support for Full Use Licenses
  Partners with standard Full Use Distribution Agreements distribute the first year of technical support services along with the software programs. The subsequent contractual relationship for the renewal is directly between Oracle and the end user. Partners are also required to communicate the second year support renewal fee calculation to end users when distributing full use licenses to ensure our mutual end user's expectations on first and second year support fees from the partner and Oracle, respectively, are properly set in the event of a difference between the two amounts.

- Support for Application Specific Full Use & Embedded Software Licenses
  With an Application Specific Full Use Distribution or Embedded Software License Agreement, partners have the option of providing support for the application package (including the Oracle programs) to their end users. If partners provide support to end users they are required to pay Oracle a fee for such services for each end user who contracts with them or obtains support from them. Oracle will provide the partner updates, as well as provide the second line of support on the products distributed with the application package so that in the event the partner cannot resolve the end user's technical problems, the partner can contact Oracle for assistance on behalf of their end user(s).
  Partners must have at least one supported development license for each program it distributes with the application package and can use these supported development licenses to contact Oracle for support.

## Frequently Asked Questions – Support

**Q: How will support for PeopleSoft products be provided to partners once the companies have been integrated?**
A: The combined companies are working to integrate the support offerings to customers and partners. The intent is to provide similar benefits to partners working with PeopleSoft and JD Edwards products as current Oracle PartnerNetwork members receive for Oracle products.

**Q: Will PeopleSoft Sales & Support Distributors continue to provide Level 1 and Level 2 support to their customers?**
A: The integration of PeopleSoft's Sales and Support Distributors into Oracle's Support offering for partners is currently occurring. Of utmost importance during this process is the continued relationship with these partners and our mutual end-users. Oracle is reviewing the most effective manner to achieve this while at the same time, ensuring that partners who deliver support can continue to leverage the benefits of the combined world-class support organizations of Oracle and PeopleSoft.

## GENERAL ORACLE PARTNERNETWORK PROGRAM FAQ

As the integration of PeopleSoft Partner Connection and Oracle PartnerNetwork progresses over the next few months, every effort will being made to ensure a seamless process and to provide you with a rich program that supports every aspect of your PeopleSoft and Oracle business. Throughout the transition, we will communicate with you to provide you with the very latest information and resources to address your questions and highlight new opportunities. Both programs will continue to operate fully in parallel until the integration is complete in order to provide you with the highest level of support for your business.

To enhance and simplify your partnering experience with Oracle, the following responses to your frequently asked questions are offered:

**Q: How will the combination benefit partners?**
A: Oracle is committed to providing unwavering support for our partners. The combined Oracle and PeopleSoft companies will offer partners more opportunities for growth and enhanced abilities to meet customer demands through the highest-quality solutions and services, leading to greater customer satisfaction. Partnership with Oracle opens the door for partners to leverage the strengths, competencies, and expertise of a global community of more than 14,000 partners. The synergy created through these partnerships and the integration of Oracle and PeopleSoft will accelerate their growth into more industries, across broader geographies and channels, and into additional market segments.

**Q: Does Oracle plan to combine the Partner Connection and Oracle PartnerNetwork programs?**
A: Yes. Oracle will offer PeopleSoft partners the opportunity to expand the breadth and scope of products and solutions available to them by combining the two programs under a single, best-of-breed partner program.

**Q: When does Oracle plan to complete the integration of the two partner programs?**
A: The Oracle Worldwide Alliances & Channels organization has set a very aggressive integration schedule. While the date for completion of the program integration has not been finalized, we expect to dedicate significant resources to ensuring that the partner experience during the transition is smooth and support continues uninterrupted.

**Q: How will the combined partner programs be branded?**
A: The combined partner program will maintain the Oracle PartnerNetwork name and branding conventions.

**Q: What will become of the PeopleSoft Partner Connection membership fees partners paid this year?**
A: We are working hard to quickly assess the fees paid by partners during the last six months. We will communicate direction to these partners as soon as we possibly can.

**Q: How do partners renew their Partner Connection membership with expiration date on or after January 1, 2005?**
A: Partner Connection memberships expiring after January 1, 2005 will be extended until the integration with Oracle PartnerNetwork is completed. Fee structures for the combined programs are being reviewed now.

**Q: Will partners experience a change in Partner Connection membership fees?**
A: We are reviewing fee structures for the combined PeopleSoft Partner Connection and Oracle PartnerNetwork programs. PeopleSoft Partner Connection membership fees paid will be extended until directions for the integration and fee structures for the combined programs are provided to the PeopleSoft Partner Connection members.

**Q: If a partner belongs to PeopleSoft Partner Connection, do they also need to join Oracle PartnerNetwork? If so, what is the process for this?**
A: Until the two programs are integrated, partners in the PeopleSoft Partner Connection program interested in the Oracle PartnerNetwork program will have to join independently. In order to join the Oracle PartnerNetwork program, partners should contact their account manager or the local Oracle PartnerNetwork Interaction Center at partner.oracle.com.

- If partner has a paid, active Partner Connection membership or his Partner Connection membership has been extended, the Oracle PartnerNetwork membership fee will be waived.
- Distribution partners and Partner Connection members whose membership expired before January 1, 2005 are welcome to join Oracle PartnerNetwork at the standard annual membership fee of US$1,995.

**Q: Can a PeopleSoft Partner Connection partner join the Oracle PartnerNetwork Program before the integration of the two programs?**
A: Yes, PeopleSoft Partner Connection partners can join the Oracle PartnerNetwork program at any time. Please be aware that acceptance of terms governing additional benefits post integration may be required.

**Q: For partners not currently enrolled in Oracle PartnerNetwork, what is the annual membership fee?**
A: The Oracle PartnerNetwork global annual membership fee is US$1995 (plus any applicable taxes). Fee structures for the combined programs are currently under review in light of what the newly combined program will deliver.

**Q: Is the Oracle PartnerNetwork Membership fee the same globally?**
A: Yes, Oracle PartnerNetwork has the same annual membership fee globally.

**Q: If a partner belongs to both Partner Connection and Oracle PartnerNetwork and needs to renew either or both program memberships after January 1, 2005, what are the required renewal fees?**
A: As we bring the two programs together we will evaluate the combined program in terms of what is being delivered and assess future membership fees based on this. Until the programs are combined, if the Oracle PartnerNetwork renewal fee is due after January 1, 2005, partners will pay the standard OPN membership fee of US$1995 (plus applicable taxes). If the renewal fee is due for Partner Connection, the partner membership fee paid will be extended until the two programs are integrated, at no additional charge. At that time their membership will roll over to their existing OPN program membership.

**Q: How do partners learn more about the Oracle PartnerNetwork program and partnership with Oracle?**
A: The Oracle PartnerNetwork portal is your best source of information about the program.

**Q: How do partners contact an Oracle PartnerNetwork representative in their respective countries?**
A: The local Oracle PartnerNetwork Interaction Center representative is always available to assist partners. By clicking on the "Contact Us" tab on the Oracle PartnerNetwork portal, partners easily access local phone and email contact information.

**Q: How does Oracle plan to communicate information about the integration process, partnership opportunities, and program support to PeopleSoft partners?**
A: Oracle will continue to communicate information as it becomes available to both partners and customers. Partners may anticipate regular communications from Oracle Alliances & Channels throughout the integration process and, going forward, from Oracle PartnerNetwork.

PeopleSoft Partner Connection members should continue to access the PeopleSoft Connection portal for updated information on program and product strategy. It is our intent to continue to offer PeopleSoft Partner Connection members a monthly newsletter to keep them informed of the integration, PeopleSoft partner information, updates to business processes and general Oracle partnership news. In addition, individual partners will be notified by email communication about relevant updates. We suggest that partners opt in to receive notifications from both PeopleSoft and Oracle. Finally, you may continue to contact PeopleSoft through your regular channels of communication, or you may call the Oracle PartnerNetwork Interaction Center (OPN IC) identified in the Contacts and Resources section of this document or online by clicking on the "Contact Us" tab on the Oracle PartnerNetwork portal at partner.oracle.com.

**Q: How will partners gain access to the tools, training, and information necessary to expand their current product and solution portfolios with Oracle technology?**
A: Partners will be able to gain access easily to these resources through the Oracle PartnerNetwork portal, once the program integration has been completed.

**Q: Will there be a combined Oracle PartnerNetwork portal for PeopleSoft and Oracle partners?**
A: Our goal is to service all our partners through the Oracle PartnerNetwork portal. Until such time when the two programs are fully integrated, PeopleSoft partners will continue to access their benefits through Partner Connection.

**Q. If a partner has Oracle PartnerNetwork access, is he also able to access JDE and PSFT information on the Partner Connection portal?**
A: Until the two programs are integrated, partners must have a current membership in both the PeopleSoft Partner Connection and Oracle PartnerNetwork programs to access respective information and benefits.

**Q: For Partner Connection and Oracle PartnerNetwork members, what membership expiration date will be in effect going forward once the programs are combined?**
A: Partner membership renewal date will default to the existing Oracle PartnerNetwork membership renewal date.

**Q: How do partners connect with existing Oracle PartnerNetwork members offering complementary solutions and services?**
A: As a membership benefit, Oracle offers the Oracle PartnerNetwork Solutions Catalog, a comprehensive global directory of partner solutions and services, used by partners, customers, and Oracle sales to identify and connect with Oracle PartnerNetwork community members. Partner Connection members may publish profiles as soon as the programs have been integrated. With profile publication they will experience marketing and lead generation opportunities.

**Q: Will PeopleSoft partners be able to access all of the benefits available through Oracle PartnerNetwork?**
A: We are currently evaluating the benefits offered through both programs to ensure a similar level of benefits is offered to partners going forward.

**Q: Should PeopleSoft partners put their current PeopleSoft applications marketing on hold?**
A: No, it's business as usual. Partners should refer to the product vision on oracle.com/peoplesoft for additional information.

# CONTACTS AND RESOURCES

## Partner Account Management

If a partner is not sure whom to contact regarding inquiries, please follow these guidelines:

| Scenario | Contact Point |
|---|---|
| ■ PeopleSoft Partner not yet an Oracle PartnerNetwork member | PartnerConnection@PeopleSoft.com |
| ■ In process of becoming an Oracle PartnerNetwork (OPN) member or already an OPN member | The OPN Interaction Center (OPN IC) is available to respond to email or telephone inquiries based on the partner's location.<br>To contact the correct representative, please go to partner.oracle.com and click on "Contact Us". In general, following are the contact points:<br>opnic_ro@oracle.com - Europe, Middle East, Africa OPN IC<br>opnlad_ww@oracle.com - Latin America OPN IC<br>pn_br_ww@oracle.com - Brazil OPN IC<br>prn-apac_au@oracle.com - Asia Pacific OPN IC<br>prn-nas_in@oracle.com - North America OPN IC - Partner level<br>prnmail_us@oracle.com - North America - Certified Partner & Certified Advantage Partner level<br>opninfo_us@oracle.com - Global OPN information |
| ■ Non-Partners | The OPN Interaction Center is available to respond to email or telephone inquiries based on the partner's location. To contact the correct representative, please go to partner.oracle.com and click on "Contact Us". |

## Oracle PartnerNetwork Program

Information on Oracle PartnerNetwork can be found through the Oracle home page under Communities or directly at partner.oracle.com. To receive their PeopleSoft Connection benefits, current PeopleSoft partners should continue to maintain their relationship through PeopleSoft Partner Connection until notified by Oracle.

## PeopleSoft Partner Connection

Information on PeopleSoft Partner Connection can be found on the Partners section of the PeopleSoft home page at www.peoplesoft.com. Current partners can continue to log in to Partner Connection to access their resources and benefits until they have joined Oracle PartnerNetwork and the two sites have been fully integrated. Direction will be provided on both sites for a period of time.

## General Oracle / PeopleSoft Information on Oracle.com

- Oracle.com/peoplesoft/partner
- Customer Town Hall Meeting: Charles Phillips answers customer questions
- Watch the January 18, 2005 Launch of Combined Companies
- See what partners and their customers are saying about the combination of Oracle and PeopleSoft
- Partner and Customer FAQs
- Partner and Customer Commitment Documents