BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., *et al.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., a Colorado corporation, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>SAP AG, a German corporation, *et al.*,<br><br>Defendants. | CASE NO. 07-CV-01658 PJH (EDL)<br><br>**PLAINTIFFS' MOTION FOR ENTRY OF FINAL JUDGMENT UNDER FED. R. CIV. P. 54(B) OR CERTIFICATION FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B) REGARDING DISMISSAL OF PLAINTIFFS OSC AND JDEE**<br><br>Date: March 4, 2009<br>Time: 9:00 a.m.<br>Place: Courtroom 3, 17th Floor<br>Judge: Hon. Phyllis J. Hamilton |



Dockets.Justia.com

TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. OSC's Claims For Past Infringement Of Copyrights In PeopleSoft And J.D. Edwards Materials ........ 4

B. JDEE's Claims For Past Infringement Of Copyrights In J.D. Edwards Materials ........ 5

C. The Court's Dismissal Of OSC And JDEE And Its Potential Effect ........ 6

III. ARGUMENT ........ 7

A. The Court's Order Leaves It Unclear Whether Pre-Merger Infringement Claims Remain Live ........ 7

B. The Court's Order Leaves It Unclear Whether EMEA-Related Infringement Claims As To Certain J.D. Edwards Copyrights Remain Live ........ 9

C. If No Other Plaintiff May Pursue OSC's Pre-Merger Claims Or JDEE's EMEA-Related Claims, Then The Court Should Enter Final Judgment, Or Certify Its Order For Immediate Appeal ........ 10

1. The Court Should Enter Final Judgment Against OSC And JDEE Pursuant To Rule 54(b) ........ 11

a. The Court's Order Of Dismissal Is Final As To OSC And JDEE ........ 12

b. The Issues To Be Decided On Appeal Will Not Overlap With The Issues That Remain In The Case ........ 12

c. There Is No Just Reason To Delay The Appeal ........ 13

2. In The Alternative, The Court Should Certify Its Order For Interlocutory Appeal Pursuant To 28 U.S.C. § 1292(b) ........ 14

a. The Court's Order Presents Controlling Questions Of Law ........ 15

b. There Are Substantial Grounds For Disagreement Concerning The Court's Order ........ 15

c. An Immediate Appeal Will Advance The Ultimate Termination Of This Litigation ........ 17

IV. CONCLUSION ........ 17

## TABLE OF AUTHORITIES

Page

**FEDERAL CASES**


*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971 (2d Cir. 1991) ........ 8, 9, 15

*Avista Corp. v. Wolfe*, 549 F.3d 1239 (9th Cir. 2008) ........ 8

*Bank of Lincolnwood v. Federal Leasing, Inc.*, 622 F.2d 944 ........ 11

*Bassiri v. Xerox Corp.*, 463 F.3d 927 (9th Cir. 2006) ........ 14

*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519 (9th Cir. 1987) ........ 11, 12, 13

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482 (9th Cir. 1993) ........ 12, 13

*Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24 (1923) ........ 9

*Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1 (1980) ........ 12

*Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507 (1950) ........ 11

*Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259 (6th Cir. 1988) ........ 7

*Gunter v. Hutcheson*, 497 F.Supp. 362 (D. Ga. 1980) ........ 14

*Heit v. Tenneco, Inc.*, 319 F. Supp. 884 (D. Del. 1970) ........ 4, 8

*In re Cement Antitrust Litigation*, 673 F.2d 1020 (9th Cir. 1982) ........ 15

*Indiana Harbor Belt Co. v. American Cyanamid Co.*, 860 F.2d 1441 (7th Cir. 1988) ........ 11

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987 (9th Cir. 1998) ........ 16

TABLE OF AUTHORITIES
(continued)

Page

*Mercado v. Ritz-Carlton San Juan Hotel & Casino*,
410 F.3d 41 (1st Cir. 2005) .......... 14

*Nat'l Ass'n of Home Builders v. Norton*,
340 F.3d 835 (9th Cir. 2003) .......... 12

*Raffoler, Ltd. v. Peabody & Wright, Ltd.*,
671 F. Supp. 947 (E.D.N.Y. 1987) .......... 8

*Romine v. Diversified Collection Svcs., Inc.*,
155 F.3d 1142 (9th Cir. 1998) .......... 14

*S.E.C. v. Capital Consultants LLC*,
453 F.3d 1166 (9th Cir. 2006) .......... 11, 12

*Shirey v. Bensalem Township*,
663 F.2d 472 (3d Cir. 1981) .......... 11

*Silvers v. Sony Pictures Entm't, Inc.*,
402 F.3d 881 (9th Cir. 2005) (en banc) .......... 8, 9, 15, 16

*Texaco, Inc. v. Ponsoldt*,
939 F.2d 794 (9th Cir. 1991) .......... 13

*Theriot v. Trumbull River Svcs, Inc.*,
835 F.Supp. 465 (C.D. Ill. 1993) .......... 14

*Wood v. GCC Bend LLC*,
422 F.3d 873 (9th Cir. 2005) .......... 9

**FEDERAL STATUTES**

17 U.S.C. § 205 .......... 7, 8

17 U.S.C. § 501 .......... 8, 12, 13

17 U.S.C. § 602 .......... 10, 16

28 U.S.C. § 1292 .......... 7, 11, 14, 15

Pub. L. 100-568, 102 Stat. 2853 (1988) .......... 8

PRO IP Act of 2008, Pub. L. 110-403, 122 Stat. 4256 (2008) .......... 10, 16

TABLE OF AUTHORITIES
(continued)

Page

**STATE STATUTES**

Del. Code Ann. tit. 8, § 253 .......... 4, 8

Del. Code Ann. tit. 8, § 259 .......... 4

**RULES**

Fed. R. Civ. P. 12 .......... 14

Fed. R. Civ. P. 54 .......... passim

**OTHER AUTHORITIES**

3 *Nimmer on Copyright* § 12-02 (1990).......... 8, 9

## I. INTRODUCTION

The Court's order dismissing plaintiffs Oracle Systems Corporation ("OSC") and J.D. Edwards Europe ("JDEE") from this case raises novel issues of law with important consequences in this case, and beyond. In light of those issues and consequences, Oracle respectfully asks this Court to expedite the appeal of that order by entering a final judgment as to OSC and JDEE, or certifying its order for interlocutory appeal.

This Court dismissed OSC's copyright claims based on the fact OSC did not obtain an express transfer of the right to sue on past infringement claims when it merged with PeopleSoft, Inc. ("PeopleSoft") and two of PeopleSoft's J.D. Edwards subsidiaries, which indisputably had those claims at the time of the merger. So far as we know, no court has ever held an express transfer is necessary in that situation. The applicable case law recognizes that copyright owners *retain* claims for past infringement they do not expressly transfer with ownership of a copyright. This settled rule suggests that claims survive, not vanish, when the owner of a right to sue merges into a successor corporation. The new rule the Court adopted here threatens not only the viability of Oracle's untransferred claims, but the viability of *any* past claims for infringement following *any* merger involving copyright owners.

The Court dismissed JDEE's copyright claims on the ground they were extraterritorial in nature, even though JDEE alleged that U.S. copyrights were infringed and the vast bulk of infringing conduct occurred in the U.S. This ruling, if widely adopted, threatens to leave large quantities of infringing conduct undertaken in the U.S. unactionable in U.S. courts.

Oracle does not seek reconsideration of the Court's order. But, with all respect due to the Court, Oracle believes the Court ruled incorrectly on both of these issues, and the consequences of this ruling may be significant. Defendant SAP AG and its U.S. subsidiaries SAP America, Inc. and, TomorrowNow, Inc. (collectively, "SAP") undertook a vast and lengthy program of infringing conduct. SAP undertook massive infringement of copyrights in PeopleSoft products before, during and after the March 2005 merger of PeopleSoft into what is now OSC. The Court's decision to dismiss OSC leaves it unclear whether Oracle (through plaintiff Oracle International Corporation, which owns the copyrights through valid transfer from

PeopleSoft and certain J.D. Edwards entities), can pursue infringement claims for the infringement SAP committed prior to the March 1, 2005 mergers. Similarly, SAP undertook sweeping infringement of copyrights held by JDEE. The Court's ruling leaves it unclear whether Oracle can pursue the full array of those infringement claims, too.

If the Court's view is that the remaining parties may pursue claims for all of this conduct, an appeal may be unnecessary at this time. But if the Court's ruling means the remaining parties cannot pursue certain pre-merger or EMEA-related copyright infringement claims, Oracle must appeal that decision. The question of whether Oracle may appeal now or must instead wait until the conclusion of the case then becomes critical.

If Oracle has to delay its appeal until the conclusion of the entire case, a successful appeal would require the parties to start this litigation all over again years from now. This would impose tremendous inefficiency for the parties and the Court alike. If, on the other hand, the Court permits Oracle to pursue its appeal now, the Parties and the Court will know whether the claims brought by OSC and JDEE are in or out of the case before the remainder of the case concludes at the trial court level.

Oracle submits there is no just reason to delay an appeal. OSC and JDEE alleged only claims for copyright infringement, so the Court's dismissal of these parties from the case is clearly final as to them. The dismissal of OSC and JDEE presents issues unique to them, which do not overlap with any issues that remain pending before this Court. Unless the Court clarifies that OIC holds the claims brought by OSC and JDEE, then the Court should therefore enter final judgment against OSC and JDEE, along with the findings necessary to permit an appeal, pursuant to Federal Rule of Civil Procedure 54(b). In the alternative, the Court should certify its order for interlocutory appeal.

## II. BACKGROUND

Oracle initiated this action after discovering that SAP had engaged in a vast, systematic program of copyright infringement and other wrongdoing aimed at Oracle. *See*

Oracle's Third Am. Compl. ("TAC"), Docket No. 182, ¶¶ 13, 15-17, 92-101.[1] Oracle's initial Complaint focused on Defendants' downloading of Oracle's customer support materials for PeopleSoft and J.D. Edwards software in the latter half of 2006, based on Oracle's own records. *See id.* ¶¶ 92-96, 107-13.

As discovery proceeded, Oracle learned that Defendants' campaign of infringement and other wrongdoing dated back to at least 2002, and involved illicit copying of software applications themselves, not simply support materials. *See* TAC ¶¶ 14, 18, 114-20. Thus, Oracle learned that SAP had undertaken massive infringement of copyrights held by PeopleSoft and J.D. Edwards well before Oracle acquired PeopleSoft in 2005, and that infringement continued uninterrupted well after that acquisition. *See id.* ¶¶ 18, 121-28.

Oracle also discovered that SAP's pattern of infringement built on itself over time. Before, during and after March 2005, Defendants made copy after copy of PeopleSoft and J.D. Edwards software environments in Bryan, TX, and elsewhere in the United States. *See* TAC ¶¶ 18, 117-20. As part of their business model, Defendants copied and updated these environments continually, using proprietary material downloaded from PeopleSoft and Oracle. *See id.* Oracle alleges and contends the copying and other infringing activity continued through different iterations of SAP TN's business model, and with SAP's substantial, knowing assistance, complicity and facilitation after the acquisition of TN on January 19, 2005. *See id.* ¶¶ 129-38.

On June 1, 2007, and again on July 28, 2008, Oracle amended its Complaint to allege claims based on the significant additional infringement it had uncovered. *See generally* Oracle's First Am. Compl., Docket No. 31; Oracle's Second Am. Compl., Docket No. 132. Upon determining that, due to corporate transactions on March 1, 2005, resulting from Oracle's January 2005 acquisition of PeopleSoft, additional parties were required to assert claims for

---

[1] Oracle cites to materials already filed with the Court by their docket entry number to avoid the inefficiency of re-submitting them.

infringement of copyrights in PeopleSoft and J.D. Edwards products and claims, Oracle further amended its Complaint.

### A. OSC's Claims For Past Infringement Of Copyrights In PeopleSoft And J.D. Edwards Materials

Prior to March 1, 2005, PeopleSoft owned the copyrights in the PeopleSoft products and customer support materials infringed by SAP. *See* Plaintiffs' Opp'n to Defs.' FRCP 12(b)(1) and 12(b)(6) Mot. to Dismiss ("Oracle's Opp'n"), Docket No. 201, 9:1-5; *see also* TAC ¶ 152. Also prior to March 1, 2005, PeopleSoft, J.D. Edwards World Source Company ("Source") and J.D. Edwards YOUCentric Company ("YOUCentric") owned the copyrights in the J.D. Edwards products and customer support materials infringed by SAP. *See id.* On March 1, 2005, PeopleSoft, Source and YOUCentric each transferred ownership of those copyrights to OIC. *See* Decl. of Tharan Gregory Lanier in Supp. of Defs' FRCP 12(b)(1) and 12(b)(6) Mot. to Dismiss ("Lanier Decl."), Docket No. 191, ¶¶ 21-22 & Exs. 3-4; TAC ¶ 149. Following that transfer, PeopleSoft, Source and YOUCentric merged into the entity now known as OSC, pursuant to Del. Code Ann. tit. 8, § 253. *See* Decl. of Chad Russell in Supp. of Oracle's Opp'n to Defs' FRCP 12(b)(1) and 12(b)(6) Mot. to Dismiss, Docket No. 202, ¶¶ 2-4 & Exs. A-C. Accordingly, all remaining assets owned by PeopleSoft, Source and YOUCentric at the time of the merger became the property of OSC. *See* Del. Code Ann. tit. 8, § 259 (2008) ("When any merger or consolidation shall have become effective under this chapter . . . all property, rights, privileges, powers and franchises, and all and every other interest shall be thereafter as effectually the property of the surviving or resulting corporation as they were of the several and respective constituent corporations."); *Heit v. Tenneco, Inc.,* 319 F. Supp. 884, 887 (D. Del. 1970) ("[W]hen a merger becomes effective all assets of the merged corporation, including an[y] causes of action which might exist on its behalf, pass by operation of law to the surviving company.") (citations omitted).

The transfers of copyright ownership to OIC executed by PeopleSoft, Source and YOUCentric did not include an express transfer of the right to sue for past infringements. *See* Lanier Decl., ¶¶ 21-22 & Exs. 3-4; Oracle's Opp'n 9:27-10:3. Unless the right to sue for past

infringements simply disappeared upon merger, it must reside with one of two parties: OSC or OIC. If PeopleSoft, Source and YOUCentric, respectively, retained the right to sue for past infringements, that right passed to OSC upon the merger of each into OSC. Accordingly, the TAC added OSC as a copyright infringement plaintiff, asserting infringement of copyrights occurring prior to March 1, 2005. *See* TAC ¶¶ 147-62. If PeopleSoft, Source and YOUCentric implicitly transferred the right to sue for past infringements to OIC with the underlying copyrights, then OIC would presumably hold that right. OIC has been a plaintiff in this case from the beginning.

There is no evidence that any entity involved in the Oracle-PeopleSoft merger intended to abandon the right to sue on these pre-March 1, 2005, infringements, the evidence of which Oracle did not discover until well after the acquisition. *See* TAC ¶ 14. Yet insofar as neither OSC nor OIC holds the right to sue for past infringements, that right would seem to have been extinguished.

### B. JDEE's Claims For Past Infringement Of Copyrights In J.D. Edwards Materials

In 1998, Source issued an exclusive license to JDEE, which states, in pertinent part:

> Source hereby grants to [JDEE] an exclusive . . . license in the countries set forth in Exhibit A . . . to practice, use and modify the Developed Technology in order to develop, reproduce, use, make, have made, sell and otherwise distribute, directly or indirectly, Products.

Lanier Decl. ¶ 19 & Ex. 1 at Section 6.2. The countries identified in Exhibit A include Europe, the Middle East and Africa ("EMEA"). *See* Lanier Decl. ¶ 19 & Ex. 1 at Ex. A. If JDEE has an exclusive license for rights to certain J.D. Edwards copyrights that would otherwise belong to OSC or OIC, JDEE is the proper plaintiff for infringement of those rights. Accordingly, the Third Amended Complaint added JDEE as a copyright plaintiff, asserting claims for infringing conduct based on JDEE's license to U.S. copyrights that (1) occurred in the United States; and (2) affected JDEE's rights in EMEA. *See* TAC ¶¶ 147-62; Oracle Opp'n 5:20-6:17.

### C. The Court's Dismissal Of OSC And JDEE And Its Potential Effect

In response to the Third Amended Complaint, SAP moved to dismiss the copyright claims alleged by OSC and JDEE, as well as portions of the state law claims alleged by the other Oracle plaintiffs. See Defs.' FRCP 12(b)(1) and 12(b)(6) Mot. to Dismiss, Docket No. 184, 3:1-20. SAP did not move to dismiss any copyright claims asserted by OIC, which became the owner of all relevant copyrights in the PeopleSoft and J.D. Edwards materials as of March 1, 2005. *Cf. id.* at 3:1-2 (arguing that "two of the three copyright plaintiffs" should be dismissed). Accordingly, there is no dispute OIC has standing to pursue all claims for the infringement of copyrights in these materials occurring on or after March 1, 2005 (save for any EMEA-related claims JDEE might still hold).

On November 15, 2008, the Court granted SAP's motion to dismiss the copyright claims asserted by OSC and JDEE without leave to amend, but denied SAP's motion in all other respects. *See* Order Granting Motion to Dismiss In Part And Denying In Part ("Dismissal Order"), Docket No. 224, at 13-14. This left OIC as the sole plaintiff alleging copyright claims.

The bulk of Oracle's copyright claims relate to infringing conduct undertaken on or after March 1, 2005, and remain actionable by OIC. Nonetheless, the Court's ruling may have a substantial effect on the scope of copyright claims that remain in the case. In dismissing OSC, the Court left it unclear whether OIC, as the copyright owner, has standing to pursue any copyright infringement occurring prior to March 1, 2005, regardless of whether that infringement concerns PeopleSoft or J.D. Edwards materials. Similarly, by dismissing JDEE, the Court left it unclear whether OIC has standing to pursue any claims relating to the distribution of products that infringe certain copyrights in J.D. Edwards materials from the U.S. into EMEA.

To the extent the Court intended by its Order to dismiss all copyright claims formerly held by PeopleSoft and J.D. Edwards prior to their March 1, 2005 merger into what is now OSC and any claims held by JDEE, Oracle has no choice but to appeal. If that appeal must await the final resolution at the trial court level of the remaining claims, then the parties, the Court and any trier of fact will have to essentially try this case over again. To avoid this inefficiency, Oracle asks this Court to make the Dismissal Order appealable now by entering

final judgment as to OSC and JDEE pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, or by certifying its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## III. ARGUMENT

### A. The Court's Order Leaves It Unclear Whether Pre-Merger Infringement Claims Remain Live

SAP challenged OSC's standing to assert pre-merger copyright claims, and the Court's jurisdiction over the copyright claims JDEE asserted pursuant to its exclusive license. (P. 5, above.) SAP did not move to dismiss any portion of OIC's copyright claims. (*Id.*) Accordingly, the Court neither addressed nor adjudicated the question of whether OIC may assert pre-merger claims, or claims for infringing conduct undertaken in the U.S. affecting EMEA. *See* Dismissal Order at 4:15-7:13, 13:22-14:5.

The Court's order leaves it unclear which party, if any, may assert pre-merger infringement claims. Because PeopleSoft, Source and YOUCentric no longer exist, they can no longer assert or transfer infringement claims. To the extent any party has the right to assert pre-merger copyright claims, that right must lie with either OIC (the party to which PeopleSoft, Source and YOUCentric transferred all of their copyrights), or OSC (the successor-in-interest to PeopleSoft, Source and YOUCentric that would retain anything not transferred).

If neither OIC nor OSC hold pre-merger claims, then these claims have simply disappeared, and no entity has recourse against Defendants' intentional infringement of these copyrights prior to March 1, 2005. Nothing in the Copyright Act, or any other law, suggests the right to sue on past infringement claims disappears upon a copyright owner's merger without an express transfer of that right. In prior cases, federal courts have applied state merger law so that statutory prerequisites to infringement suits did not extinguish pre-merger claims. *See, e.g., Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 262 (6th Cir. 1988) (holding under Ohio state merger law that surviving entity's copyright infringement claim would not be dismissed for failure to record under former 17 U.S.C. § 205(d), then a "jurisdictional prerequisite to suit");

*Raffoler, Ltd. v. Peabody & Wright, Ltd.*, 671 F. Supp. 947, 952 & n.2 (E.D.N.Y. 1987) (same, under New York law).[2] Section 501(b) should be interpreted so as to preserve the claims of copyright owners who entered into a merger. *Cf. Heit*, 319 F. Supp. at 887-88 (holding that a merger under Del. Code Ann. tit. 8, § 253 had transferred all claims previously held by the various constituent corporations to the sole surviving corporation). The law abhors a forfeiture, and that core doctrine should guide interpretation of § 501 here. *See Avista Corp. v. Wolfe*, 549 F.3d 1239, 1250 (9th Cir. 2008) (stating that courts should "construe statutes to avoid . . . arbitrary forfeitures of property rights").

The controlling authority on which the Court relied, *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881 (9th Cir. 2005) (en banc), does not support a forfeiture in this circumstance, much less dictate one. *Silvers* holds that a party who owned the copyright at the time of infringement, and *continues to own it afterward*, cannot assign to a third party the bare right to sue on past infringements. *Id.* at 890.

Here, the question is whether a *past* owner of a copyright retains the right to sue on infringements that occurred during the period of its ownership when the right to sue on those past infringements is not expressly transferred to the new copyright owner along with ownership of underlying copyrights. *Silvers* did not address that question. *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971 (2d Cir. 1991), a case adopted and followed by *Silvers*, did address that question. *ABKCO* holds that a former copyright owner *does* retain the right to sue on pre-existing infringement claims absent an express transfer of that right to the new owner. *See ABKCO*, 944 F.2d at 980 (absent express transfer of past claims, "the assignor retains the right to bring actions accruing during its ownership of the right, even if the actions are brought subsequent to the assignment") (citing 3 *Nimmer on Copyright* § 12-02, at 12-29 - 12-30 (1990)). *ABKCO* did not suggest the right to sue on past infringements could be forfeited upon transfer of

---

[2] Former 17 U.S.C. § 205(d), which required recordation after transfer prior to filing of an infringement action, was repealed by Congress in 1988. *See* Pub. L. 100-568, 102 Stat. 2853 (1988).

the underlying copyrights; the question was simply whether that right was held by the new owner or the original owner of those copyrights. *See id.*

Even if *Silvers* did apply here, it would not lead to the forfeiture of any past infringement claims. In resolving the question of standing before it, the *Silvers* court looked to the Supreme Court's decision in *Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24 (1923). In that case the Supreme Court considered what happens when a patent owner assigns its patent to one party and the right to sue on past infringement to another party. *See Crown Die*, 261 U.S. at 44; *Silvers,* 402 F.3d at 888. The Supreme Court did not hold the right to sue on past infringements disappears; it concluded the party who was assigned the right to sue on past infringements "must compel [the] assignor of the claims to sue for him." *Id.*[3]

Thus, no authority holds or suggests that a party who assigns copyrights, but not the right to sue on past infringements, suddenly forfeits the right to sue on those past infringements, whether upon a merger or otherwise. Pre-merger infringement claims could not have simply disappeared upon the merger of PeopleSoft and the J.D. Edwards entities into the entity now known as OSC. Either OSC or OIC must hold these claims. If the Court intended to rule that OSC does not hold pre-merger claims, it should specify that OIC may pursue them. Alternatively, if the Court's ruling rests on the notion that there exists no express transfer of the pre-existing claims to OIC, then it should permit Oracle to cure that problem with an assignment of pre-merger infringement claims from OSC to OIC**.**

### B. The Court's Order Leaves It Unclear Whether EMEA-Related Infringement Claims As To Certain J.D. Edwards Copyrights Remain Live

Similar confusion exists as to whether the Court's Dismissal Order allows OIC to pursue the infringement claims based on infringing materials that Defendants created in the

---

[3] Here, OSC stands in the shoes of the parties who assigned ownership of the copyrights at issue to OIC. Accordingly, *Crown Die* and *ABKCO* demonstrate that OSC is the proper party to assert pre-merger infringement claims. While Oracle does not seek reconsideration of the Court's order dismissing OSC, the Court remains free to revisit its order. *See Wood v. GCC Bend LLC*, 422 F.3d 873, 882 (9th Cir. 2005) ("[D]istrict judges may always revisit their prior rulings . . . .").

United States and exported into EMEA.

Oracle contended there was no extraterritoriality problem because the infringing conduct took place in the U.S., and because recent amendments to § 602 of the Copyright Act established that exportation of infringing conduct from the U.S. into EMEA was itself an act of infringement completed in the U.S. *See* Oracle Opp'n 6:8-17 (citing PRO IP Act of 2008, Pub. L. 110-403 § 105(b)(2), 122 Stat. 4256, 4259-60 (2008)). The Court held JDEE could not assert those claims because, according to the Court, "the only right in U.S. copyrights that JDEE possesses is the right to distribute some of the software products outside the U.S.," Dismissal Order at 6:3-5, a characterization that mistakenly narrows the scope of JDEE's license. In addition, the Court did not address whether, under the recent amendments to 17 U.S.C. § 602, authorized exportation from the United States to EMEA would result, as Oracle contends, in domestic infringement of JDEE's distribution rights. *See id.* at 5:3-6:6; Oracle Opp'n 6:8-17.

OIC's claims are not affected by that portion of the Court's Dismissal Order regarding extraterritoriality. As the owner of all domestic rights in the U.S. copyrights at issue, OIC has rights that can be (and were) infringed by wholly domestic conduct.[4] If JDEE's rights are held to be wholly extraterritorial despite the recent amendments to 17 U.S.C. § 602, exportation of infringing products to EMEA and beyond necessarily infringes the U.S. rights that OIC holds. If the Court would specify that OIC may pursue these claims, even with respect to those J.D. Edwards copyrights within the scope of JDEE's exclusive license, then Oracle would have no need to appeal the dismissal of JDEE. Otherwise, Oracle believes an appeal at this time is essential.

### C. If No Other Plaintiff May Pursue OSC's Pre-Merger Claims Or JDEE's EMEA-Related Claims, Then The Court Should Enter Final Judgment, Or Certify Its Order For Immediate Appeal

If the Court's order of dismissal means that OIC is unable to pursue pre-merger

---

[4] Were OSC reinstated as a plaintiff, its pre-existing copyright claims would include claims of wholly domestic infringement, as well.

infringement claims, or claims of infringement of certain J.D. Edwards products in EMEA, Oracle must appeal that decision to avoid the unjustified forfeiture that would result from that ruling. In that situation, there is no reason to delay the appeal. Accordingly, the Court should either enter final judgment against OSC and JDEE pursuant to Rule 54(b), or certify its order of dismissal for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

### 1. The Court Should Enter Final Judgment Against OSC And JDEE Pursuant To Rule 54(b)

Where an action presents more than one claim or involves multiple parties, an order disposing of fewer than all the claims, or the rights of fewer than all the parties, does not end the action as to any of the claims or parties unless the court directs entry of a final judgment as to those claims or parties, and expressly determines that "there is no just reason for delay." *See* Fed. R. Civ. Proc. 54(b); *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987) (quoting *Bank of Lincolnwood v. Federal Leasing, Inc.*, 622 F.2d 944, 950 at n.7 (7th Cir. 1980)); *see also Shirey v. Bensalem Township*, 663 F.2d 472, 475 (3d Cir. 1981) (order dismissing all claims of one of four plaintiffs not appealable absent Rule 54(b) judgment). Accordingly, the Court's order dismissing OSC and JDEE is not appealable as a final decision unless the Court enters a final judgment as to these parties pursuant to Rule 54(b), and expressly concludes there is no just reason to delay the appeal of this decision. *See Continental Airlines*, 819 F.2d at 1525; *Shirey*, 663 F.2d at 950.

The primary purpose of adopting Rule 54(b) and providing a mechanism for more timely review of otherwise final orders was to address "potential for injustice for litigants who had to await the conclusion of the entire litigation even though their rights on certain issues had been conclusively resolved early on." *Indiana Harbor Belt Co. v. American Cyanamid Co.*, 860 F.2d 1441, 1443 (7th Cir. 1988) (citing *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511-12 (1950)); *accord S.E.C. v. Capital Consultants LLC*, 453 F.3d 1166, 1173-74 (9th Cir. 2006) (also citing *Dickinson*). Here, the Court should enter final judgment as to OSC and JDEE to avoid both injustice and inefficiency. The Court has resolved the rights of OSC and JDEE conclusively. The Court's decision dismissing these parties presents no issues that would

overlap with those that remain in the case, and an immediate appeal would avoid the possibility of costly re-litigation of the dismissed claims following the resolution of the claims that remain. The Court should therefore enter final judgment as to both OSC and JDEE.

**a. The Court's Order Of Dismissal Is Final As To OSC And JDEE**

Entry of final judgment under Rule 54(b) requires a final decision as to a claim or party. *See, e.g., Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 7 (1980); *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 840 (9th Cir. 2003) (Rule 54(b) judgment appropriate where order "completely disposed" of appellant's claim). OSC and JDEE alleged only copyright infringement claims. The Court's order of dismissal disposed of those claims. Because the Court's decision resolved all claims asserted by OSC and JDEE, it is unquestionably final as these parties. *See Capital Consultants*, 453 F.3d at 1174 (order disposing of all claims of some parties falls "squarely within Rule 54(b)").

**b. The Issues To Be Decided On Appeal Will Not Overlap With The Issues That Remain In The Case**

A final judgment under Rule 54(b) will not be denied simply because the remaining claims in a case arise out of the same course of conduct, or involve proof of the same facts. *See Continental Airlines*, 819 F.2d at 1525. But a Rule 54(b) judgment is particularly appropriate where an appeal would present distinct and separable legal issues, and where an appellate court would not have to face the same issues at a later date if the judgment is granted. *See Curtiss-Wright*, 446 U.S. at 8; *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993) (entry of final judgment proper under Rule 54(b) where jurisdictional issues were "easily severable from the merits of the lawsuit"); *Continental Airlines*, 819 F.2d at 1525 (approving entry of Rule 54(b) judgment where the "matters disposed of by the partial summary judgments were sufficiently severable factually and legally from the remaining matters, and they completely extinguished the liability" of one party).

Here, the Court held that OSC lacked standing under section 501(b) of the Copyright Act and concluded there was no subject matter jurisdiction over OSC's claim. *See*

Dismissal Order at 6:8-7:13, 13:24-26. The facts surrounding this issue are not contested; they are supplied by the licensing agreements placed before the Court, the content of which are not in dispute. Whether OSC may properly assert its copyright claims is a legal question that turns on the interpretation of section 501(b) and its application to parties who transfer ownership of copyrights, but do not expressly transfer the right to sue on past infringements and then merge. (P. 7-9, above.) Since OSC has been dismissed from the case entirely, there is no plausible basis to believe this Court will have occasion to revisit this issue in adjudicating the claims that remain. Similarly, there is no reason to believe an appellate court would have to address this question a second time if the Court grants judgment.

The same is true for the dismissal of JDEE. The court dismissed JDEE on the ground its claims were extraterritorial and concluded it lacked jurisdiction over them. *See* Dismissal Order at 5:8-6:6, 13:24-26. That conclusion was based on the Court's interpretation of the license between Source and JDEE and the nature of the rights it granted. (P. 9-10, above.) Again, the terms of that license, or the fact that Oracle has alleged the underlying infringement occurred in the United States, are not disputed. The extraterritoriality issue turns on the interpretation of JDEE's license and the application of the law of extraterritoriality to the undisputed facts. The Court will not have to revisit the extraterritoriality question in resolving the remaining claims of the parties, and an appellate court will not have to decide these issues twice if judgment is entered now.

Given the distinct and severable nature of the issues underlying the Court's dismissal of OSC and JDEE, the Court should enter a Rule 54(b) judgment. *See Core-Vent*, 11 F.3d at 1484; *Continental Airlines*, 819 F.2d at 1525.

**c. There Is No Just Reason To Delay The Appeal**

The Ninth Circuit has emphasized that Rule 54(b) demands a "pragmatic approach" that prioritizes "efficient judicial administration." *Continental Airlines*, 819 F.2d at 1525. Accordingly, entry of final judgment is appropriate where it will "streamline the ensuing litigation." *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991).

Efficiency compels a Rule 54(b) judgment here. If Oracle succeeds in its appeal, the claims asserted by OSC and JDEE will go to trial with the rest of the case. If Oracle must wait to pursue its appeal until the final resolution of all claims by all parties, that reinstatement would require the Court, the parties, and the trier of fact to essentially start this case over again with additional plaintiffs. Finally, SAP's pattern of infringement and wrongdoing spanned a multi-year period that straddled Oracle's 2005 acquisition of PeopleSoft. (P. 3, above.) Prior infringement was exploited in conjunction with later infringement to expand the scope and impact of SAP's wrongdoing. (*Id.*) What happened before the acquisition is inextricably intertwined with what happened after it. Trying to extricate pre-merger claims from post-merger claims is bound to cause additional confusion, and further inefficiency.

An immediate appeal presents the opportunity for significant savings of time, money and effort for all parties and the Court, and the opportunity to avoid the threat of a second, protracted proceeding. There is no just reason to delay that appeal. *See Romine v. Diversified Collection Svcs., Inc.*, 155 F.3d 1142, 1143 (9th Cir. 1998) ("The district judge astutely entered 54(b) [judgment] to resolve [the] legal issue [underlying dismissal of one party] before proceeding with the trial."); *see also Mercado v. Ritz-Carlton San Juan Hotel & Casino*, 410 F.3d 41, 45-46 (1st Cir. 2005) (holding Rule 54(b) judgment appropriate for order dismissing two of three plaintiffs on statute of limitations grounds where appeal involved a "discrete legal issue" and trial would be more efficient if all three plaintiffs proceeded together); *Theriot v. Trumbull River Svcs, Inc.*, 835 F.Supp. 465, 468 (C.D. Ill. 1993) (same, with respect to dismissal of two of three defendants).

### 2. In The Alternative, The Court Should Certify Its Order For Interlocutory Appeal Pursuant To 28 U.S.C. § 1292(b)

If the Court determines that entry of a final judgment against OSC is inappropriate, the Court may nonetheless certify its order of dismissal for interlocutory appeal. *See* 28 U.S.C. § 1292(b); *Bassiri v. Xerox Corp.*, 463 F.3d 927, 928-929 (9th Cir. 2006) (accepting jurisdiction over interlocutory appeal of order of dismissal pursuant to Rule 12(b)(6) certified ); *Gunter v. Hutcheson*, 497 F.Supp. 362 (D. Ga. 1980) (holding that a court may grant

certification under section 1292(b) where it has determined entry of final judgment under Rule 54(b) would be inappropriate).

Certification under section 1292(b) is appropriate where an order involves a controlling issue of law as to which there is substantial ground for difference of opinion and immediate appeal from the order may materially advance the termination of the litigation. *See* 28 U.S.C. § 1292(b); *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982).

**a. The Court's Order Presents Controlling Questions Of Law**

A controlling issue is one that could materially affect the outcome of the case in the District Court. *See In re Cement Antitrust Litigation*, 673 F.2d at 1026. The Court's order of dismissal prevents OSC and JDEE from pursuing their infringement claims on the merits. These were the only claims that OSC and JDEE alleged, so there can be no doubt the Court's order materially affects the outcome of the case for both of these parties.

**b. There Are Substantial Grounds For Disagreement Concerning The Court's Order**

Interlocutory certification is appropriate where there are "substantial grounds for difference of opinion" concerning the Court's decision. 28 U.S.C. § 1292(b). Here, the Court's dismissal of OSC creates more than just room for disagreement. It creates actual and explicit disagreement between this Court and the Second Circuit on the question of standing, and an implicit disagreement with the Ninth Circuit and the U.S. Supreme Court. As discussed above, the Ninth Circuit has not ruled expressly on the question of whether a previous owner of copyrights may pursue past infringements after transferring the ownership of copyrights to another party. *Silvers* did not address that question. (P. 7-8, above.) But *ABKCO* – the Second Circuit case which *Silvers* expressly adopted in order to maintain national uniformity in copyright law – did address that question. *ABKCO* held that where a party assigns ownership of a copyright but does not expressly assign the right to sue on past infringement, the assignor retains the right to sue on past claims. (P. 8, above) The Supreme Court reached the same result in the patent context, and *Silvers* held that result applies equally in the copyright context. (*Id.*)

Accordingly, *Silvers* and the authorities *Silvers* relies on all suggest OSC should have standing to sue on past infringements, and there is an explicit disagreement between this Court and the Second Circuit on the question of whether an assignor of copyrights retains the right to sue for past infringements. Finally, the Court's order contravenes the well-established rule that statutes should be construed to avoid forfeiture of property rights.

The Court's dismissal of JDEE presents similar room for disagreement. The existing law of extraterritoriality focuses on the location of the defendant's infringing conduct. *See Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 990-92 (9th Cir. 1998) (holding that extraterritoriality does not bar claim where defendant infringed in the U.S. and exploited infringements abroad). In dismissing JDEE, the Court focused instead on the scope of JDEE's exclusive license, and a mistaken reading of that license. The Court adopted Defendants' argument that "[s]ince JDEE's rights exist only outside the U.S., any infringement of those rights can occur only outside the United States." Dismissal Order at 5:16-18. In doing so, the Court ignored recent amendments to the Copyright Act that make foreign distribution from the United States actionable in U.S. courts. *See id.* at 5:3-6:6. Specifically, the PRO IP Act of 2008 amended the Copyright Act to specify that exporting unauthorized copies from the United States infringes the distribution right:

> *. . . [E]xportation from the United States, without the authority of the owner of copyright under this title, of copies or phonorecords, the making of which either constituted an infringement of copyright, or which would have constituted an infringement of copyright if this title had been applicable, is an infringement of the exclusive right to distribute copies or phonorecords under section 106, actionable under sections 501 and 506*

17 U.S.C. 602(a)(2). Section 602 demonstrates that SAP's exportation of unauthorized copies from Texas into EMEA constitutes an act of infringement undertaken in the United States, and therefore resolves any question about extraterritoriality. *See Los Angeles News Serv.*, 149 F.3d at 990-92 (adopting a rule allowing liability for extraterritorial damages where at least one act of infringement occurred in the United States).

**c. An Immediate Appeal Will Advance The Ultimate Termination Of This Litigation**

For the reasons stated above, absent an immediate appeal, the pre-merger and EMEA related claims will create substantial inefficiency for the Court and the parties if later reinstated. (P. 13-14, above.)

## IV. CONCLUSION

Unless it intends to clarify that the remaining plaintiffs may prosecute the claims brought by the dismissed plaintiffs, the Court should either enter final judgment as to OSC and JDEE along with the findings necessary to permit an appeal pursuant to Rule 54(b), or certify its decision for interlocutory appeal.

DATED: January 26, 2009 BINGHAM McCUTCHEN LLP

By: /s/ Geoffrey M. Howard
Geoffrey M. Howard
Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corp., and Oracle EMEA Ltd.