BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice)*
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesoday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE USA, INC., *et al.*,

Plaintiffs,

v.

SAP AG, *et al.*,

Defendants.

Case No. 07-CV-1658 PJH (EDL)

**JOINT DISCOVERY CONFERENCE STATEMENT**

Date: February 13, 2009
Time: 2:00 p.m.-
Courtroom: E, 15th Floor
Judge: Hon. Elizabeth D. Laporte



Dockets.Justia.com

Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited (collectively, "Oracle") and Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. (collectively, "Defendants," and with Oracle, the "Parties") hereby submit this Joint Discovery Conference Statement.

The Parties jointly request that the Court schedule ninety minutes on February 13, 2009 to further discuss the following discovery issues.

**1. <u>Data Warehouse Review and Production</u>**

In its Requests for Production, dated August 2, 2007, Oracle sought copies of the software and other materials downloaded from Oracle's Customer Connection support site, and of the Oracle software (and works allegedly derived from that software) maintained on TomorrowNow's computer systems.

As discussed at prior conferences, these materials are voluminous, making copying and production logistically difficult. Many of the 93 server partitions that have been reviewed contain tens or hundreds of gigabytes of data, or even terabytes of data. As the Parties have continually reported, in approximately April 2008 they agreed to an arrangement that permits remote access review of certain servers that house these materials so that Oracle can designate what it believes is relevant material that it wants copied and produced (the "Data Warehouse" agreement or protocol). Oracle began its review under that agreement in mid-July, and, as of January 30, 2009, has now reviewed and tagged for production all available materials, comprising 93 images. Oracle has requested certain metadata from these images, and Defendants have represented that substantially all requested metadata for those respective images has been produced.

Of the 68 images reviewed through the Data Warehouse protocol prior to December 1, 2008, Oracle has currently requested production of selected files and folders from 24 unique images. Of the 25 images reviewed through the Data Warehouse protocol on or after December 1, 2008 (all of which relate to Siebel), Oracle has currently requested production of selected files and folders from an additional six unique images.

On November 26, 2008, the Court ordered Defendants to complete production of Data Warehouse files on a rolling basis, but no later than February 16, 2009. As of February 2, 2009, Defendants have represented that they have completed production of all non-Siebel images save PSDEV01_HD3 and PSDEV03_DB1. According to Oracle's calculations, Defendants produced almost all (99% of files by file count; 99% of files by size) of the non-Siebel files. No Siebel productions, other than production of the requested metadata reports, have yet occurred. If Defendants continue at their present pace, the Parties believe that production of non-Siebel files will be completed by the date ordered by the Court. While no date has been set by the Court for production of the requested Siebel data, comprising approximately 95,434 files and 733.9 GB, the Parties believe that all Siebel files can be produced by February 28, 2009.

One partition, DCITBU01_G, and one server, the AS/400, have been reviewed outside the Data Warehouse protocol. For DCITBU01_G, Defendants represent that they have produced all of the logical files and folders for this partition made from a November 2007 backup tape except for personal, family photos and one redacted privilege document. Since the metadata produced was from a May 2007 version of DCITBU01_G, the Parties will meet and confer regarding differences between the produced metadata and the metadata for the produced images, which Oracle contends can have a seriously prejudicial impact on review and analysis of the data. For the AS/400, Defendants produced backup tapes for a November 2008 full system backup of the two requested partitions of the AS/400 machine, and backup tapes comprising a May 2007 partial backup of the same two partitions. During the January 8 Discovery Conference, at which Oracle challenged Defendants' designation of the AS/400 tapes as Highly Confidential, the Court suggested that the Parties "craft a special provision for this which it's just confidential but you limit the access" to persons in specific categories. January 8, 2009 Transcript at 5:5-8. The Parties will meet and confer on this issue.

Oracle contends that the Data Warehouse review has also been affected by the Parties' November 7, 2008 agreement regarding the Expanded Discovery Timeline, under which the Parties agreed to produce certain documents predating 2004 and post-dating March 22, 2007. Specifically, the Parties agreed that some documents relevant to "TN/SAP customers" and

documents relevant to TomorrowNow's business model were within the scope of post-March 22, 2007 discovery. Defendants take the position that this agreement was never intended to include, and does not extend to, the Data Warehouse review. Defendants' position is that large server partitions in the Data Warehouse and the huge volumes of associated data are not "centralized" sources under either the intent, or express terms, of the Expanded Discovery Timeframe Agreement. Oracle disagrees, and on February 2, 2009, Oracle requested that Defendants produce all Data Warehouse servers again, to the extent that they contain TomorrowNow-branded support materials, materials sent to TomorrowNow's customers, project management and other documents relating to TomorrowNow's delivery of services to its customers, documents reflecting migration and off-boarding of TomorrowNow's local environments, and other documents post-dating March 22, 2007 that fall within the Expanded Discovery Timeline. Defendants are producing responsive, non-privileged data from certain databases and SharePoint sites (*e.g.*, SAS and Pathfinder) that were used to track TomorrowNow's maintenance service activity. The Parties will meet and confer on this issue and seek Court guidance if unable to agree.

Assuming that Defendants complete production of non-Siebel files from the original discovery timeline in compliance with this Court's order, Defendants will have produced over 4,300 GB of server images between October 25, 2008 and February 16, 2009. As expected, Oracle's ongoing analysis of this vast amount of data, though time-consuming, has and will continue to provide Oracle with information not available from any other source. While Oracle had access to the data through the review process beginning in July 2008 and had substantially completed its data selections from the original servers by mid-August 2008, Defendants did not begin actual production of copies of any Data Warehouse data until October 25, 2008. Though Oracle appreciates Defendants' recent production efforts, Oracle believes that the delay in production has prejudiced its and its experts' ability to analyze the data and initiate focused follow-up discovery.

In light of Oracle's investigation of Defendants' post-litigation conduct, Oracle believes it will need to analyze a substantial amount of the additional support materials that TomorrowNow

sent to its customers in 2007 and 2008, which are not currently available on the Data Warehouse servers. While Oracle does not know the volume of this 2007 and 2008 data, if the volume is similar to prior collections, hundreds or thousands of additional gigabytes will need to be reviewed and produced. Oracle must then analyze that information after production. Thus, even with Defendants' full cooperation, there will be likely very little time left under the current discovery schedule in which Oracle will be able to leverage its analysis of TomorrowNow's 2007 and 2008 fixes to inform non-expert discovery; without Defendants' immediate and full cooperation as to Data Warehouse review and production for 2007 and 2008 data, the current discovery schedule will be threatened. Defendants do not believe that the detailed evaluation sought by Oracle is appropriate or necessary in this case.

**2. <u>Production of TomorrowNow's SAS Database</u>**

As the Court is aware, to track and monitor its work and customers, TomorrowNow built and used a large Lotus Notes database, called the SAS database. Early in this case, Defendants' counsel stressed to the Court the importance of the SAS database in answering Oracle's questions about how TomorrowNow conducted its business and supported its customers. Defendants first produced a copy of the SAS database, limited to PeopleSoft and JDE customers, in fall 2007. That production was made from an April 2007 "snapshot" of the database. And, under Defendants' agreement to produce "foundational" discovery relating to TomorrowNow's servicing of Siebel customers, Defendants recently produced the SAS database for Siebel customers that contains the records through TomorrowNow's cessation of operations on October 31, 2008. Now, as part of the Expanded Discovery Timeframe Agreement, Defendants have agreed to supplement their previous productions of the SAS records for TomorrowNow's PeopleSoft and J.D. Edwards customers, and estimate that production will be made in mid-February 2009.

Oracle believes that these delays in production of the complete SAS database, like the delays in production of Data Warehouse and custodial data and the delays in reaching an extrapolation agreement, threaten the current discovery schedule. Oracle uses information from SAS extensively in depositions to explore the fix development and testing process. Understanding Defendants' post-litigation conduct is becoming increasingly important to Oracle, but without post-litigation SAS records, Oracle cannot fully verify and understand testimony related to that conduct (for example, testimony from Rod Russell, TomorrowNow's post-litigation development manager, and Catherine Hyde, the longest tenured developer at TomorrowNow other than Andrew Nelson). The Court has permitted Oracle to depose these witnesses again with the post-April 2007 material, but the continued delay and inherent inefficiency has impacts on the schedule.

Because of the importance of the SAS database, Oracle requests that the Court address a specific deadline for its production at the February 13 Discovery Conference.

**3. <u>Sampling and Extrapolation</u>**

As the Court is aware, the Parties have been discussing for many months possible ways to shortcut the collection and presentation of the substantial evidence regarding TomorrowNow's downloading and use of Oracle's software and how TomorrowNow provided its services to its customers. As reported at the last three Discovery Conferences, the Parties are currently trying to finalize a stipulation based on general testimony regarding certain of TomorrowNow's processes. The Parties agreed to provide to the Court, by the February 13 Discovery Conference, "either a final stipulation or an extended explanation of the reasons, if any, why the Parties are unable to reach a final stipulation." The Parties have not agreed to a final stipulation, although they have spent many additional hours in meet and confer discussions and have made continued progress since the last conference.

As the Parties stated in the last Discovery Conference Statement, "[t]he goal of the stipulation is to reduce the amount of deposition discovery that would otherwise be required to collect such evidence on a fix-by-fix or release-by-release basis." The Court agreed at the first discovery hearing that an extrapolation proposal is a good way to address Oracle's concerns regarding the discovery scope and time limits sought by Defendants in this case, stating, "I want you to start today, and refine this, talk to your experts." July 1, 2008 Transcript [Docket Item 105], 49:11-12. Since then, the Parties have met and conferred extensively, and Oracle has provided three specific proposals for Defendants' consideration, on July 17, October 21, and January 21, which, despite substantial meeting and conferring, have yet to be accepted by Defendants. However, the Parties are still discussing Oracle's January 21 proposal, which is attached as Exhibit A, under seal, for the Court's review.

Though Defendants have made it clear that their willingness to negotiate shall not be construed as an indication that they will ultimately agree to any proposed stipulation, the Parties have made significant progress. However, significant obstacles remain. First, Defendants require that any stipulation be based on actual witness testimony, including some witnesses currently scheduled to be re-deposed. Second, given Oracle's position that the extrapolation stipulation should apply to certain post-litigation conduct, certain portions of the updated SAS database, not yet produced to Oracle, are also relevant to negotiation of the stipulation. Third, as the Parties have discussed with the Court previously, a primary consideration for Defendants is the degree to which the Parties must agree on how the stipulation will be used. Defendants will not agree to the stipulation unless Oracle discloses how the stipulation will be used in Oracle's damages model. Oracle contends that the stipulation should be treated as any other fact learned through discovery. Oracle contends that, just as it would not agree that a deposition answer can only be used for

liability and not damages, the stipulation should be treated the same way, since it is intended to replace that same testimony.

Now, with the discovery cut-off quickly approaching, and after 7 months of trying and so far failing to reach agreement on extrapolation or a stipulation, Oracle believes it will need to seek additional discovery beyond the limits set by the Court and additional time to complete that discovery. Otherwise, Oracle contends that it will have been prevented from developing a reasonably complete factual story and fully developing its damages case. Oracle believes that Defendants' witnesses have testified that to understand how TomorrowNow used each individual copy of Oracle's software, and delivered each individual fix, Oracle would need to depose each of the developers and technical personnel. There are at least 44 such persons from the PeopleSoft side of TomorrowNow's business and at least 33 from the J.D. Edwards side. It is Oracle's position that without an agreed stipulation, individual fix-by-fix and witness-by-witness discovery and presentation of evidence would take substantially more resources and time. As an example, for a Rule 30(b)(6) deposition regarding the development and delivery of just a few fixes, Defendants presented three TomorrowNow deponents and Oracle used nearly 6 hours of deposition time.

The Parties ask the Court to discuss this issue at the February 13 Discovery Conference.

**4. <u>Privilege Log Issues</u>**

As the Parties and the Court discussed at the January Discovery Conference, Oracle is concerned about Defendants' compliance with the Parties' agreement and the Court's May 29, 2008 order, which Oracle contends requires production of a privilege log within 45 days of a given production. Defendants contend that they have substantially complied with the Parties' agreement and the Court's orders regarding the production of privilege logs.

At Oracle's request, on January 7, 2009, Defendants provided certain information regarding the logs they have produced since September 22, so that Oracle could evaluate for

which productions Defendants have not complied with the Parties' agreement and the Court's order. That statement shows that Defendants exceeded the Court's 45-day deadline for privilege log entries for several custodians, including Henning Kagermann (76 days), Leo Apotheker (70 days), and Chris Faye (63 days). Oracle is still reviewing and evaluating this information to determine what relief under the Parties' agreements and the Court's orders it may seek. Defendants have asked for additional information regarding Oracle's privilege logs, which Oracle contends it has already provided. The Parties will meet and confer on any remaining disputes regarding the Parties' privilege logs.

**5. Customer List**

In the January 5, 2009 Joint Discovery Conference Statement, the Parties previewed for the Court their attempts to come to an agreement regarding the list of TomorrowNow customers in "Exhibit 1," which was attached to Defendants' First Set of Requests for Production to Oracle, dated July 26, 2007. The Court ordered Defendants to "produce an updated Exhibit 1 containing a complete list of TomorrowNow customers no later than January 9, 2009." January 9, 2009 Order Following Discovery Conference ¶ 3. Defendants provided Oracle with a Supplemental Exhibit 1 on January 9. Supplemental Exhibit 1 adds 40 new customer names, deletes 18 names, provides alternative names for 26 customers, and corrects what Defendants contend are typographical errors in the names of some other customers. Only two of the alternative names reflected in Supplemental Exhibit 1 are also listed as "alternative customer names" in Defendants' latest Response to Oracle's Second Set of Interrogatories to Defendant TomorrowNow, Inc. No. 1 (dated January 15, 2008), and Defendants have not yet amended or supplemented their Response to this Interrogatory to reflect this new information. However, those alternative names listed on Supplemental Exhibit 1 are clearly indicated as "a/k/a."

Although Oracle is still assessing the full impact of these changes, as Oracle explained in the January 5, 2009 Joint Discovery Conference Statement, Defendants' modifications to Exhibit 1 will at least require Oracle to spend many additional hours and resources to (a) find and review these newly-added customers' contract files, (b) prepare and produce relevant materials, (c) adjust its main document review and production process to include these customers, (d) re-examine

Defendants' discovery responses and production in light of these customers, and (e) investigate and subpoena these new customers, if necessary. In addition, Oracle contends that it has spent considerable time and resources responding to discovery based on the original Exhibit 1, and Oracle contends that it has served discovery, responded to discovery, and met and conferred based on the original list (which it has only in December learned was both incomplete, and contained the names of 18 now-deleted customers, and provided alternative or edited names for over 30 customers).[1]

Defendants do not believe Oracle has suffered any prejudice from these changes. Of the 40 new customer names contained in Supplemental Exhibit 1, all but 5 did not become customers until after the lawsuit was filed. Thus, Defendants contend that the vast majority did not even become discoverable until after the Parties agreed, at Oracle's request, to expand the relevant discovery time period on November 18, 2008. Defendants' position is that any additional time Oracle spends on discovery of these customers is a direct consequence of its own decision to expand the relevant discovery time frame. Moreover, although Defendants contend that these new customers did not become discoverable until recently, Defendants contend that they have exceeded their discovery obligations by producing responsive documents for these customers throughout discovery anyway. Thus, Defendants contend that Oracle knew or should have known about these customers well before Supplemental Exhibit 1 was served.

**6. De-Designation of TomorrowNow Documents**

As the Court is aware, TomorrowNow ceased operations on October 31, 2008. For approximately six months, the Parties have met and conferred on whether, and how, the confidentiality designations for TomorrowNow's document production, deposition testimony, and other discovery responses should now be re-designated or de-designated. The Parties are close to

[1] To name only a few examples, Defendants have asked for, and Oracle has produced, software licenses and support contracts (Defendants' First Set of Document Requests to Plaintiffs "Defendants' RFP" No. 1), negotiations of support contracts (Defendants' RFP No. 4), downloads from Oracle's Customer Connection (Defendants' RFP No. 18), and customer-specific financial reports listing contract and license pricing information, for all of the customers identified in the original Exhibit 1. Defendants dispute that Oracle has produced this information for all customers identified in the original Exhibit 1. Defendants are currently analyzing the deficiencies in Oracle's production and customer-specific financial reports and will be raising the issue shortly in a meet and confer.

an agreement, but need to seek the Court's assistance at the February 13 Discovery Conference to resolve a few remaining issues. Oracle's current proposal is attached as Exhibit B, with its suggested terms in italics; Defendants will file their current proposal tomorrow as Exhibit C, with their suggested terms underlined. All other terms have been accepted by the Parties.

**7. Case Schedule and Discovery Limits**

The Parties present their separate statements below. Neither Party agrees with the other's characterization of events or positions, but in the interest of efficiency, does not comment on those characterizations here.

**a. Oracle's Statement**

Oracle is increasingly concerned about the pace of discovery and the Parties' ability to conclude their obligations prior to the June 2009 fact discovery cut-off and under the current discovery limits.

Regarding the case schedule, as explained above, it is unlikely that Oracle will obtain the requested Data Warehouse materials in time to explore, analyze, and follow up on that analysis before the fact discovery cut-off. Similarly, Oracle must wait for a full copy of the SAS database to take informed and efficient depositions and to aid its understanding of Defendants' conduct. And if the Parties are unable to reach an extrapolation stipulation, the dozens of then-necessary depositions of TomorrowNow personnel will require more time than remains before the fact discovery cut-off.[2]

In addition, Oracle believes the current deposition discovery limits will need to be expanded. Oracle has taken approximately 230 of its 350 allotted deposition hours, which translates to roughly 17 deposition days remaining. Eight more depositions are currently

[2] Indeed, Oracle is still awaiting dates for witnesses it requested several weeks ago, including Rule 30(b)(6) witnesses for SAP AG, SAP America, and TomorrowNow relating to Project Blue (depositions noticed January 12, 2009) and Patty VonFeldt (deposition noticed January 14, 2009). And Defendants' document production continues to present challenges to Oracle's resources. For example, Andrew Nelson's deposition is scheduled for February 26, and on February 6, Defendants produced approximately 18,000 documents from his files. Further, Oracle has noticed discrepancies in Defendants' production between custodians, which may indicate that Defendants' custodians' materials are not being properly preserved or collected. Oracle surfaced this issue to Defendants on February 8 and will meet and confer with Defendants once they have had an opportunity to respond to the issue.

calendared, and twelve have been noticed and are waiting to be scheduled. Oracle expects these witnesses to take the remainder of its allotted time. When the Court set the initial deposition limits, Oracle's understanding of the scope of Defendants' infringing conduct was limited; since then, Oracle has uncovered a significantly broader pattern of misconduct, requiring much more exploration in discovery. While Oracle has been careful to take only the depositions of individuals and representatives with case-crucial information, and indeed is nearly done with SAP witnesses, many other important witnesses remain. For example, to understand the scope of Defendants' conduct and its effect on Oracle, Oracle must take the depositions of dozens of TomorrowNow's former customers; Defendants' late additions to the Exhibit 1 customer list, as described above, have only increased the evidence Oracle must collect through these customer depositions. The huge amount of information in the Data Warehouse will require deposition testimony to understand; moreover, and as explained above, if the Parties are unable to agree to an extrapolation proposal, Oracle must take the depositions of at least 77 TomorrowNow development and technical witnesses, which cannot be done under the current deposition hour limits. Finally, Defendants' post-litigation infringement and misconduct, about which Oracle is only just now learning, will require additional deposition time to explore and understand. For these and other reasons, Oracle expects to request additional deposition hours.

The Parties will meet and confer on these issues and Oracle may seek appropriate relief from Judge Hamilton.

**b. Defendants' Statement**

Defendants are very concerned about Oracle's rate of document production. Based on past productions, and Oracle's proposal going forward, Defendants do not believe that Oracle can complete its document production before the June 19 fact discovery cut-off, and certainly not in sufficient time to allow for depositions, other follow-up discovery, and any discovery motions that may be necessary. For example, Oracle has not yet produced: (a) 8 of the 13 custodians identified in September 2008; (b) any of the 7 custodians identified on October 24, 2008; or (c) any of the 4 custodians identified on December 19, 2008. Oracle also has not completed production of two group email accounts it started producing last year.

Oracle has indicated that it intends to produce the group email address documents on a rolling basis starting the week of February 9 and extending throughout February. Following completion of that production, Oracle intends to produce three of the September custodians (Catz, Phillips, and Ellison) through March. Thus far, Oracle has not provided production dates for the remaining September, October, or December custodians, but based on the current production rate, the earliest they will be produced is April. If so, Defendants will not have sufficient time for depositions and follow-up discovery. Moreover, if Oracle is still producing in April or May documents for custodians identified in 2008, it is unlikely to meet the June 19 cut-off for custodians identified in 2009. On February 5, Defendants asked Oracle to agree to the following production schedule: (a) all remaining custodians identified in September to be produced by February 27; and (b) the group email addresses and all remaining October and December custodians to be produced by March 31. Defendants also named an additional 11 custodians on February 5 and believe that a production deadline of April 15 for those custodians is appropriate.

In addition to its custodian production, Oracle has not yet produced the PeopleSoft database it claims contains some of the copyright information Defendants have been seeking since the outset of discovery. Oracle informed Defendants almost two months ago about this database. Defendants have requested a date certain for its production but have not received one. The delay in receiving the database is hampering Defendants' ability to take discovery, prepare its defense, and bring its copyright related motion to compel. On February 9, Oracle informed Defendants that it expects to produce the database in two to three weeks.

On January 12, Defendants asked Oracle whether, in light of the Court's statements at the January 8 discovery conference, it would agree to produce its charts of accounts. Oracle responded on January 13 that it would make a reasonable production of the chart of accounts for the plaintiff entities. On January 14, Defendants followed up with a specific request for portions of the charts of accounts for the Plaintiff entities and their PeopleSoft and J.D. Edwards predecessors. On February 3, Oracle informed Defendants that it would produce the charts of accounts for the Oracle Plaintiff entities, but could not confirm that it had charts of accounts for PeopleSoft or JDE. On February 5, Defendants requested that Oracle produce the charts of

accounts for the Oracle entities by February 13 and, on the same date, tell Defendants whether the PeopleSoft and JDE charts of accounts have been located.[3] On February 6, Oracle informed Defendants that it needs 45 days to complete the production of the charts of accounts.

If the parties are unable to reach an agreement regarding the acceleration of Oracle's production schedule so that discovery can be completed within the current case schedule, then Defendants intend to seek the Court's assistance on February 13 in establishing an accelerated schedule. Defendants are also concerned about Oracle's delay in providing deposition dates. For example, Defendants are still awaiting witness names and proposed dates for their Rule 30(b)(6) deposition of OIC on revenues related to the Registered Works (noticed on January 20, 2009).

**6. <u>Anticipated Motions to Compel</u>**

**a. Oracle's Anticipated Motion to Compel**

Oracle continues to be concerned about Defendants' strategic and pervasive use of privilege. As described above, Oracle believes that Defendants have repeatedly failed to comply with the Court's order regarding privilege logs, producing logs long after they are due and in a manner that hinders Oracle's deposition preparation. More disturbingly, it appears that Defendants use privilege as a shield to protect information they wish to conceal, but set it aside for material they wish to share. Oracle is further troubled by Defendants' witnesses' unjustified reliance on spousal privilege, and by growing evidence that the crime-fraud exception to the attorney-client privilege may apply to Defendants' conduct. Oracle fully anticipates bringing a comprehensive motion to compel information Defendants have improperly withheld as privileged.

**b. Defendants' Anticipated Motions to Compel**

**(i) Copyright Related Documents and Information.**

Defendants continue to meet and confer with Oracle regarding their anticipated motion to compel copyright documents and information. Defendants are also waiting for Oracle to produce the PeopleSoft database discussed above. Should the parties be unable to resolve their disputes, Defendants anticipate that the motion will address: (a) Oracle's response to an interrogatory it

[3] Oracle has agreed to update Defendants on the status of the PeopleSoft and JDE charts of accounts by February 13.

agreed to supplement in lieu of Rule 30(b)(6) testimony on identification of the materials allegedly covered by each copyright registration and ownership of the same; (b) production of documents sufficient to identify the individuals who created the materials allegedly covered by the registrations and work for hire agreements it contends exist; and (c) additional testimony and documents from Todd Adler, Oracle's designated 30(b)(6) deponent who signed several of the copyright registration applications at issue, but was precluded (under a claim of privilege) from testifying fully regarding statements he made on those applications and his research and investigation in support of making those statements.

**(ii) Pre-2005 Documents.**

Defendants are concerned about Oracle's failure to produce information pre-dating its acquisition of PeopleSoft in January 2005. At the outset of the case, the parties agreed to limit the discovery time frame to January 1, 2004 through the date of filing of the initial Complaint. In November 2008, at Oracle's request, the parties agreed to expand the discovery time frame to January 1, 2002 through October 31, 2008. Thus far, however, Oracle has largely failed to produce information for the pre-2005 time period. With respect to custodian emails, Oracle contends that pre-2005 emails are archived and thus "inaccessible." Defendants have asked Oracle to substantiate that contention. With respect to the customer-specific financial reports the parties exchanged in January, Defendants have not completed their analysis but it appears that Oracle has not provided information going back to 2002. In addition, as noted above, Oracle has said that it may not be able to produce the charts of accounts for PeopleSoft and JDE.

Defendants continue to meet and confer with Oracle on these issues. If the parties are unable to resolve them, Defendants anticipate filing a motion to compel Oracle to substantiate its claims that pre-2005 documents are inaccessible or otherwise unavailable, and/or to produce pre-2005 documents and information.

**(iii) Oracle's Responses to Defendants' Second Request for Production.**

Defendants have been attempting to meet and confer with Oracle on its responses to Defendants' Second Set of Request for Production. If the issues related to these requests have not been resolved by the February 13 discovery conference, then Defendants will provide a brief

statement of the remaining disputed issues during the conference and ask the Court to set a motion date.

**(iv) Defendants' Insurance Carriers Access to C and HC Information.**

Defendants have requested and Oracle has refused to permit at least one representative from each of Defendants' insurance carriers to have access to testimony and documents that Oracle has designated as "Confidential" and "Highly Confidential" (HC) under the Agreed Protective Order. Defendants' counsel does not represent Defendants' insurance carriers and thus those carriers need independent access to at least certain portions of Oracle's HC information in order to properly evaluate Oracle's settlement demand that is expected to be made in February pursuant to the settlement magistrate's order. The Court addressed this issue at the January 8th Discovery Conference. The parties are now closer to reaching an agreement on this issue, but if an agreement is not reached beforehand, Defendants will seek additional guidance from the Court on February 13.

DATED: February 9, 2009

BINGHAM McCUTCHEN LLP

By: /s/
Holly A. House
Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited

In accordance with General Order No. 45, Rule X, the above signatory attests that concurrence in the filing of this document has been obtained from the signatory below.

DATED: February 9, 2009

JONES DAY

By: /s/
Jason McDonell
Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and TOMORROWNOW, INC.

# Exhibit A

# Exhibit A

**Lodged with the Court under seal Pursuant to the Stipulated Protective Order filed June 6, 2007, and the [Proposed] Order to File Documents Under Seal filed February 9, 2009**

# Exhibit B

## Exhibit B

Oracle's Proposal Regarding TN De-Designations

1. All documents produced by TN without any confidentiality designation shall remain as such.

2. TN will re-review all documents previously produced by TN with a *"Highly Confidential"* or "Confidential" designation that have been, or will in the future be, used as a deposition exhibit in this case to determine if any of those documents can now be totally de-designated. The review of the current exhibits will be completed by _____, 2009;

3. TN will re-review all documents previously produced by TN with a *"Highly Confidential"* or "Confidential" designation that have been, or will in the future be, filed as an exhibit in this case for any purpose to determine if any of those documents can now be totally de-designated. This review will be completed for existing exhibits by _______, 2009

4. All documents produced by TN in this case prior to 10-31-08 with a "Confidential" designation shall remain designated as such except TN will re-review up to a total of 4000 additional documents (not pages) previously produced by TN with a "Confidential" designation that are identified in one or more groups by Oracle as documents that should be re-reviewed under this subsection to determine if any of those documents can now be totally de-designated. When Oracle makes such a request, TN will respond within 3 business days for each grouping of 500 documents or less.

5. All documents previously produced by TN in this case prior to 10-31-08 with a "Highly Confidential" designation shall be re-designated to "Confidential" except:

a. those documents that contain Oracle source code;

b. any email or other communication in which there is an objective indication that any supervisory board member, executive board member, or attorney of SAP was an author or recipient (direct, cc, bcc, or otherwise); and

c. any paper or electronic document (Word, Excel, PowerPoint or otherwise, *not including email or other communications*) that has any objective indicia whatsoever on its face that it is a SAP document (i.e., SAP employee is an author, any SAP logo, confidential marking, or other words or images that make clear that it is a SAP document).

6. Notwithstanding any of the foregoing, the Parties reserve their rights to raise the protection of any document that contains SAP or Oracle Confidential or Highly Confidential information to Confidential or Highly Confidential at a later date.

7. Notwithstanding any of the foregoing, the Parties do not waive their rights to dispute any of the above confidentiality designations, as well as any attempt to raise the level of

protection of any document to Confidential or Highly Confidential. However, if a dispute occurs, neither Party will raise the argument that the other side has waived any confidentiality protection by virtue of the de-designation process itself.