Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAP AG, et al.,<br><br>Defendants. | Case No. 07-CV-1658 PJH (EDL)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ENTRY OF FINAL JUDGMENT UNDER FED. R. CIV. P. 54(B) OR CERTIFICATION FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B) REGARDING DISMISSAL OF PLAINTIFFS OSC AND JDEE**<br><br>Date: March 4, 2009; Time: 9:00 a.m.<br>Courtroom: 3, 17th Floor<br>Judge: Hon. Phyllis J. Hamilton |



Dockets.Justia.com

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 1
II. BACKGROUND AND SUMMARY OF ARGUMENT .......... 1
III. ARGUMENT .......... 3
  A. Plaintiffs' Disguised Attempt To Seek Reconsideration Is Improper And Should Be Rejected .......... 3
    1. The disguised request for reconsideration is procedurally improper .......... 4
    2. Plaintiffs' request has no basis as to OSC or JDEE .......... 4
      (a) OSC .......... 4
      (b) JDEE .......... 5
  B. Entry Of Rule 54(b) Final Judgment Is Not Appropriate .......... 6
    1. Plaintiffs' own motion proves that the claims are "inextricably intertwined." .......... 7
      (a) Underlying alleged conduct .......... 8
      (b) OSC and OIC .......... 8
      (c) JDEE and OIC .......... 9
    2. Plaintiffs have not shown that any equities suggest that there is no just reason for delay .......... 9
  C. Certification Under § 1292(b) Is Also Improper .......... 11
    1. This Court's order did not involve a controlling question of law .......... 12
    2. There are no substantial grounds for disagreement .......... 14
    3. An interlocutory appeal will not materially advance the litigation .......... 14
IV. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) .......... 12

*Althin v. W. Suburban Kidney Ctr.*,
874 F. Supp. 837, 1994 U.S. Dist. LEXIS 17067 (N.D. Ill. Nov. 30, 1994) .......... 6

*Coopers & Lybrand v. Livesay*,
437 U.S. 463 (1978) .......... 11

*Co-opportunities, Inc. v. Nat'l Broad. Co.*,
510 F. Supp. 43 (N.D. Cal. 1981) .......... 5

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
446 U.S. 1 (1980) .......... 7, 8, 9

*DeSilva Constr. Corp. v. Herrald*,
213 F. Supp. 184 (M.D. Fla. 1962) .......... 5

*Essex Music, Inc. v. ABKCO Music & Record, Inc.*,
743 F. Supp. 237 (S.D.N.Y. 1990) .......... 6

*Frank Briscoe Co. v. Morrison-Knudsen Co.*,
776 F.2d 1414 (9th Cir. 1985) .......... 10

*Hogan v. Consol. Rail Corp.*,
961 F.2d 1021 (2d Cir. 1992) .......... 7, 10

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1982) .......... 11, 13

*Lanard Toys Ltd. v. Novelty Inc.*,
511 F. Supp. 2d 1020 (C.D. Cal. 2007) .......... 5

*Lenz v. Universal Music Corp.*,
No. C 07-3783 JF (RS), 2008 U.S. Dist. LEXIS 91890 (N.D. Cal. Oct. 28, 2008) .......... 14

*Lerner v. Atl. Richfield Co.*,
690 F.2d 203 (Temp. Emer. Ct. App. 1982) .......... 13

*Little Earth of United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*,
738 F.2d 310 (8th Cir. 1984) .......... 9

*McFarlin v. Conseco Servs., LLC*,
381 F.3d 1251 (11th Cir. 2004) .......... 12

*McGlinchey v. Shell Chem. Co.*,
No. C-84-0474-SC, 1985 U.S. Dist. LEXIS 22117 (N.D. Cal. Mar. 1, 1985) .......... 10

*Morrison-Knudsen Co. v. Archer*,
655 F.2d 962 (9th Cir. 1981) .......... 7, 8

*Sears, Roebuck & Co. v. Mackey*,
351 U.S. 427 (1956) .......... 7

*Shurance v. Planning Control Int'l, Inc.*,
839 F.2d 1347 (9th Cir. 1988) .......... 15

## TABLE OF AUTHORITIES
## (continued)


**Page(s)**

*Sierra Foothills Pub. Util. Dist. v. Clarendon Am. Ins. Co.*, No. CV F 05-0736 AWI SMS (NEWDJ), 2006 U.S. Dist. LEXIS 55863 (E.D. Cal. July 25, 2006) ........ 12

*United States Rubber Co. v. Wright*, 359 F.2d 784 (9th Cir. 1966) (per curiam)), *aff'd*, 459 U.S. 1190 (1983) ........ 11

*United States v. Woodbury*, 263 F.2d 784 (9th Cir. 1959) ........ 11

*Wood v. GCC Bend, LLC*, 422 F.3d 873 (9th Cir. 2005) ........ 7, 8, 9, 10, 11

*Zenix Indus. USA, Inc. v. King HWA Indus. Co.*, 920 F.2d 937, 1990 U.S. App. LEXIS 21358 (9th Cir. Dec. 7, 1990) ........ 6

**Statutes**

28 U.S.C. § 1292(b) ........ *passim*

Fed. R. Civ. P. 54(b) ........ *passim*

**Other Authorities**

10 *Moore's Federal Practice* § 54.23[3] (2007) ........ 7

3 *Nimmer on Copyright* § 12.02 (1990) ........ 6

**Rules**

Civil L.R. 7-9 ........ 2, 4

## I. INTRODUCTION

Plaintiffs'[1] motion should be denied without burdening the Court with oral argument. While the title suggests that Plaintiffs seek only entry of a Rule 54(b) final judgment as to OSC and JDEE, or leave to appeal pursuant to 28 U.S.C. § 1292(b), the motion is actually a thinly-veiled request for reconsideration of this Court's order, based on the very same arguments that this Court considered, and properly rejected, in dismissing OSC and JDEE in the first place. Plaintiffs' disappointment notwithstanding, there is no basis for an interim appeal.

The bottom line is clear: "Oracle" has already had *four* tries, over the past two years of litigation, to come up with plaintiffs to assert its purported copyright claims. Enough is enough. "Oracle" should prepare to try the case as it stands. This motion should be denied.

## II. BACKGROUND AND SUMMARY OF ARGUMENT

Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. ("Defendants") moved to dismiss Plaintiffs' Third Amended Complaint on several grounds. By an order dated December 15, 2008, the Court granted the motion in part and dismissed it in part. Plaintiffs' motion addresses two aspects of that ruling, the Court's dismissal of: (1) all copyright claims by OSC because it is not now and never has been an owner or exclusive licensee of the copyrights at issue in this case, and (2) JDEE's alleged copyright claims because JDEE's sole rights exist outside the United States.

After the Court's ruling, Defendants answered the Third Amended Complaint. (Dkt. No. 225.) More than four weeks after that, and well more than 30 days after the Court's order dismissing JDEE and OSC, Plaintiffs brought this motion. (Lanier Decl. ¶ 2 and Ex. 1.)

Plaintiffs' motion begins with repeated protestations that they are not seeking reconsideration of the Court's order. That is just as well, because Plaintiffs never sought, much less received, leave to seek such reconsideration. Little wonder, then, that the motion's title does not acknowledge what Plaintiffs are really doing. Under the rules, this disguised

[1] Plaintiffs listed in the Third Amended Complaint included Oracle USA, Inc. ("Oracle USA"), Oracle International Corporation ("OIC"), Oracle Systems Corporation ("OSC"), Oracle EMEA Limited ("OEMEA"), and J.D. Edwards Europe Limited ("JDEE"). JDEE and OSC have been dismissed and original plaintiff Oracle Corporation has been apparently dropped entirely from the case. Oracle USA, OIC, and OEMEA are now the only "Plaintiffs."

reconsideration motion, based solely on arguments already considered by the Court, is at least procedurally improper, if not sanctionable. *See* Civil L.R. 7-9(a), (b) & (c).

Trying to sidestep this problem, Plaintiffs suggest that they merely need "clarification" of how dismissal of OSC and JDEE affects remaining plaintiff OIC's claims. Not so.

Plaintiffs know full well the impact of dismissing OSC. The Court dismissed OSC because Plaintiffs failed to allege that OSC "is or ever has been an owner or exclusive licensee of the asserted copyrights" or that OSC received an express transfer of the right to sue. (Dkt. No. 224 at 7.) That the Court dismissed OSC in no way gives OIC the right to sue in its stead. In fact, Plaintiffs' own lawyer told the Court, in opposing dismissal, that OIC does not have a right to sue for infringement that occurred before OIC acquired the copyrights at issue: "nobody has that [right] if it's not OSC." (Lanier Decl. ¶ 3 and Ex. 2 at 20.) There was nothing ambiguous in that declaration, nor is there anything in the Court's ruling that requires "clarification."

As to JDEE, the Court properly held that it lacked jurisdiction over JDEE's claims because JDEE has no rights in the United States, and thus any infringement of JDEE's rights would be wholly extraterritorial. (*See* Dkt. No. 224 at 6.) No party briefed or argued the impact on OIC of dismissing JDEE, which was irrelevant to the motion itself. Plaintiffs' request for a determination of that issue now seeks at best an advisory opinion, and at worst a premature summary judgment ruling, with no evidence submitted in support of the request.

The Court's order needs no clarification, much less any procedurally inappropriate reconsideration. This is especially so because the "consequences" of which Plaintiffs so bitterly complain are the inevitable, legally dictated result of their own choices, aided by sophisticated counsel, in planning and documenting their corporate structure.

Plaintiffs' requests for leave to appeal via Rule 54(b) or § 1292(b) are equally meritless. They underscore that Plaintiffs either hold a fundamental misapprehension of the copyright claims they have added, dropped, or asserted on behalf of the ever-changing cast of plaintiffs, or that Plaintiffs want to scuttle the case schedule carefully crafted by the Court. Either is regrettable, and neither merits the requested relief.

Specifically, Plaintiffs' own brief admits that the dismissed claims of OSC and JDEE are "inextricably intertwined" with the remaining claims and defenses in this case (Dkt. No. 258 at 14), such that an interlocutory appeal of these dismissals would be a recipe for piecemeal appeals of the same issues that will be resolved at a trial of what remains. Nor is there any controlling question of pure law in the Court's dismissal order, let alone one as to which there are substantial grounds for disagreement. And in any event, there is no reasonable likelihood that an immediate appeal will materially advance the termination of this litigation. As this Court is well aware, there is virtually no chance that the Ninth Circuit could resolve such an appeal before the scheduled trial date. Yet Plaintiffs' own motion suggests a desire to stall the rest of the case until that resolution if the Court grants an immediate appeal. (Indeed, Plaintiffs waited over one month after the order was entered—well past the 30 days for an ordinary appeal from final judgment—to even suggest to Defendants that the Court's order was "unclear." (Lanier Decl. ¶ 2 and Ex. 1.))

Plaintiffs put themselves in this position, choosing to structure and document their corporate structure as they did, then failing in four attempts over almost two years to name proper copyright plaintiffs. The law as applied to Plaintiffs' licenses and agreements is clear, and the so-called consequences do not undermine the Court's ruling. The motion should be denied.

## III. ARGUMENT

### A. Plaintiffs' Disguised Attempt To Seek Reconsideration Is Improper And Should Be Rejected.

Plaintiffs' motion not only omits any mention of "reconsideration" from its title, its prose repeatedly asserts that Plaintiffs are *not* seeking reconsideration of this Court's order dismissing OSC and JDEE. (*See, e.g.*, Dkt. No. 258 at 1, 9 n.3.) The substance of the motion, however, is otherwise. There is no way to read it other than as seeking reconsideration. (*See, e.g.*, *id.* at 9 n.3 (not-so-subtly stating that "[w]hile Oracle does not seek reconsideration of the Court's order . . . the Court remains free to revisit its order"); *id.* at 1 (alleging that the Court "ruled incorrectly" and that the Court's "novel" ruling "threatens" "settled" copyright rules).) Plaintiffs'

reconsideration request is procedurally improper, sanctionable, and, in any event, meritless.

**1. <u>The disguised request for reconsideration is procedurally improper.</u>**

Under this Court's rules, "[n]o party may notice a motion for reconsideration without first obtaining leave of Court to file the motion." Civil L.R. 7-9(a). It is undisputed that Plaintiffs never sought, much less received, such leave. Nor could they have successfully done so. The rules limit reconsideration to situations involving: (1) a material difference in fact or law that was not presented to the Court, provided that "in the exercise of reasonable diligence the party applying for reconsideration did not know of such fact or law" at the time of the order; (2) new material facts or a change in law after the order; or (3) a "manifest failure by the Court to consider material facts or dispositive legal arguments" presented to the Court. Civil L.R. 7-9(b). Plaintiffs' motion does not make any such arguments. Rather, it simply rehashes the same arguments the Court found unpersuasive in dismissing OSC and JDEE in the first place.[2] That violates the Local Rules, which make clear that "[n]o motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." Civil L.R. 7-9(c). Plaintiffs offer nothing but repetition, which should be ignored.

**2. <u>Plaintiffs' request has no basis as to OSC or JDEE.</u>**

Although Defendants have no duty to respond to Plaintiffs' arguments (*see* Civil L.R. 7-9(d)), it is worth quickly noting that those arguments are no better now than when the Court first considered and properly rejected them.

**(a) <u>OSC</u>**

As to OSC, Plaintiffs' assertion that "[t]he Court's order leaves it unclear which party [OIC or OSC], if any, may assert pre-[March 1, 2005] infringement claims," is disingenuous.

---

[2] For example, in both their opposition and in their present motion, Plaintiffs argue that OSC acquired the right to sue on past claims from its predecessors-in-interest (*compare* Dkt. No. 213 at 9-10, *with* Dkt. No. 258 at 9 n.3); that JDEE had claims for domestic infringement (*compare* Dkt. No. 213 at 5-8, *with* Dkt. No. 258 at 10); and that the recent statutory amendments ensured that JDEE had a claim (*compare* Dkt. No. 213 at 6, *with* Dkt. No. 258 at 10). There are no new arguments in this motion.

(Dkt. No. 258 at 7.) In arguing against dismissal of OSC, Plaintiffs' counsel *admitted* (nay, affirmatively argued) that OIC does not have a right to sue for infringement prior to March 1, 2005, when it acquired the copyrights at issue. Indeed, counsel represented to the Court that "*nobody has that* [*right*] *if it's not OSC*." (Lanier Decl. ¶ 2 and Ex. 2 at 20 (emphasis added).) The meaning of the Court's ruling is thus clear—neither OSC nor any party has standing to sue for infringement prior to March 1, 2005.

The Court's ruling is also clearly correct. The long-accepted rule is that transfers of the right to sue for past causes of action must be express; that rule applies with equal force in the merger context, *see Co-opportunities, Inc. v. Nat'l Broad. Co.*, 510 F. Supp. 43, 46 (N.D. Cal. 1981); *DeSilva Constr. Corp. v. Herrald*, 213 F. Supp. 184, 193 (M.D. Fla. 1962), and where the companies are closely related, *see Lanard Toys Ltd. v. Novelty Inc.*, 511 F. Supp. 2d 1020, 1033 (C.D. Cal. 2007). Plaintiffs do not cite a single case holding otherwise. It is undisputed there was no such express transfer here, and the legal consequences are clear.

OSC does not have the right to assert any copyright claims because it is not now and never has been an owner or exclusive licensee. OIC cannot sue for infringement before March 2005, because it was only then that OIC acquired the copyrights. That no Plaintiff has the right to pursue those claims is the inevitable consequence of Plaintiffs' choice not to include an express transfer of the right to sue in their merger documents, and Plaintiffs have only themselves to blame. They should not blame the Court or accuse its ruling of ambiguity.

**(b) <u>JDEE</u>**

Plaintiffs' histrionics about the potential impact of the Court's order as to JDEE are beside the point (*see* Dkt. No. 258 at 1 (positing that the "ruling, if widely adopted, threatens to leave large quantities of infringing conduct undertaken in the U.S. unactionable in U.S. courts")), mostly because they are not true—it is black-letter law that the U.S. Copyright Act does not extend to extraterritorial rights, and the ruling as to JDEE changed nothing (not the law, and not the licenses for which Plaintiffs themselves are responsible). Plaintiffs' arguments against the dismissal are no different, and no better, than they were the first time around. JDEE's wholly extraterritorial rights cannot be enforced here.

Nor is there any need to "clarify" now what the Court's order regarding JDEE means for OIC's claims. That issue was not relevant to the motion to dismiss, which was addressed solely to jurisdiction over JDEE's claims, nor was this "consequence" relevant to, much less determinative of, the outcome of the motion.[3] What Plaintiffs really seek by this motion is an advisory opinion (or more aptly, summary judgment with no supporting evidence) on that question now. There is no basis for such an advisory opinion.

And, most telling, even if the Court did reach the question, Plaintiffs' contention, that OIC may sue to enforce the rights of its exclusive licensee JDEE, is foreclosed by well established law: Once a "'copyright owner grants an exclusive license of particular rights, only the exclusive licensee and not his grantor may sue for later occurring infringements of such rights.'" *Essex Music, Inc. v. ABKCO Music & Record, Inc.*, 743 F. Supp. 237, 242 (S.D.N.Y. 1990) (quoting 3 *Nimmer on Copyright* § 12.02 at 12-29 & n.13 (1990)) (emphases omitted); *Althin v. W. Suburban Kidney Ctr.*, 874 F. Supp. 837, 1994 U.S. Dist. LEXIS 17067, at *17 (N.D. Ill. Nov. 30, 1994) (table) (same). Indeed, a licensor may be found liable for infringing the exclusive rights of its licensee. *See Essex Music*, 743 F. Supp. at 242; *Zenix Indus. USA, Inc. v. King HWA Indus. Co.*, 920 F.2d 937, 1990 U.S. App. LEXIS 21358, at *6 (9th Cir. Dec. 7, 1990) (table). Neither JDEE nor OIC can assert in this Court the extraterritorial rights exclusively licensed to JDEE.

Plaintiffs' request for reconsideration or "clarification" of the Court's order dismissing OSC and JDEE should be denied.

**B. Entry Of Rule 54(b) Final Judgment Is Not Appropriate.**

Surprisingly, though Plaintiffs' motion purports to seek immediate appeal of the Court's dismissal of OSC and JDEE, justifying that unusual request accounts for less than half of Plaintiffs' brief. This is for good reason. In arguing for reconsideration and clarification, Plaintiffs make key admissions that show that the prerequisites for appeal are not met here.

---

[3] That SAP did not move to dismiss copyright claims asserted by OIC in no way amounts to a concession that OIC has standing to pursue the claims at issue, contrary to what Plaintiffs would have this Court believe. (Dkt. No. 258 at 6.) There are motions yet to come.

Plaintiffs' request for entry of final judgment as to OSC and JDEE under Rule 54(b) is meritless. In light of the "'historic federal policy against piecemeal appeals,'" *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956)), entry of Rule 54(b) final judgment "should be the exception, not the rule," 10 *Moore's Federal Practice* § 54.23[3] (2007). For this reason, Rule 54(b) requests are not "granted routinely." *Wood v. GCC Bend, LLC*, 422 F.3d 873, 879 (9th Cir. 2005) (internal quotation marks omitted). Rather, entry of Rule 54(b) final judgment should be "exercised sparingly," and reserved only for "the infrequent harsh case." *Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1025 (2d Cir. 1992) (internal quotation marks omitted); *see also Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981) ("Judgments under Rule 54(b) must be reserved for the unusual case . . . .").

In analyzing whether a case fits in this exceedingly narrow category, this Court must "act as a 'dispatcher'" to determine whether "'the interest of sound judicial administration'" requires an exception to the general rule that appeal must await final judgment as to all claims and all parties. *Curtiss-Wright*, 446 U.S. at 8 (quoting *Sears, Roebuck & Co.*, 351 U.S. at 435, 437). The Court may direct entry of a final judgment only if it "expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). That determination, in turn, rests on two factors: (1) "judicial administrative interests," including the "interrelationship" of the claims and whether piecemeal appeals would require appellate courts to "decide the same issues more than once"; and (2) the equities involved. *Curtiss-Wright*, 446 U.S. at 8, 10. Plaintiffs' motion falls well short on both.

**1. <u>Plaintiffs' own motion proves that the claims are "inextricably intertwined</u>."**

Consideration of judicial administrative interests is necessary "to assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.'" *Wood*, 422 F.3d at 878 (quoting *Curtiss-Wright*, 446 U.S. at 8) (internal quotation marks omitted). These interests permit entry of Rule 54(b) final judgment only where "the adjudicated claims [are] separable from the others," and "the nature of the claim [is] such that no appellate court

would have to decide the same issues more than once." *Id.* at 878 n.2 (discussing *Curtiss-Wright*). Claims that are "closely related, factually and legally," are "not truly separable," *id.* at 879-80, and therefore "'similarity of legal or factual issues will weigh heavily against entry of judgment,'" *id.* at 882 (quoting *Morrison-Knudsen*, 655 F.2d at 965). This Court need look no further than Plaintiffs' motion itself, and the current complaint, for proof that these requirements are not met here.

**(a) <u>Underlying alleged conduct</u>**

Before the dismissal, Plaintiffs had asserted infringement claims by OSC, JDEE, and OIC that were based on the same alleged misconduct, and which raise the same basic questions that should properly be the focus of this case: did TomorrowNow copy any of the Plaintiffs' software, was that copying beyond that permitted to Plaintiffs' various licensees, was any plaintiff with standing harmed, and if so, what damages resulted? It is precisely because the misconduct underlying their claims is so similar that Plaintiffs can argue (without a hint of irony) that reversal of the dismissal of OSC and JDEE would require "the court and any trier of fact . . . to essentially try *this case*"—the case presently remaining, with only OIC—"over again." (Dkt. No. 258 at 6 (emphasis added).) The alleged claims of the dismissed parties (JDEE and OSC) simply are not separable from the remaining claims.

**(b) <u>OSC and OIC</u>**

Plaintiffs' brief also highlights other interconnections between the law and facts underlying OIC's claim with the law and facts underlying the claims of OSC and JDEE. As to OSC, Plaintiffs expressly admit that the claims asserted by OSC (which were dismissed), and those asserted by OIC (which will go forward), are "inextricably intertwined." (Dkt. No. 258 at 14 ("Prior infringement was exploited in conjunction with later infringement to expand the scope and impact of SAP's wrongdoing. . . . What happened before the acquisition [on March 1, 2005] is inextricably intertwined with what happened after it.").) That is undoubtedly true. Beyond the fact that they challenge the same activity by TomorrowNow, both OSC's and OIC's claims turn on the terms of the copyright transfer from various entities to OIC. Analysis of those transfer terms is essential to determining which party has the right to sue for past

infringement, as Plaintiffs admit. (*Id.* at 5.) The question in both claims is whether, under the transfer terms and the law, the right to sue for past infringement passed to OIC or remained with the transferors. (*See id.* ("If PeopleSoft, Source and YOUCentric, respectively, retained the right to sue for past infringements, that right passed to OSC upon the merger of each into OIC. . . . If PeopleSoft, Source and YOUCentric implicitly transferred the right to sue for past infringements to OIC with the underlying copyrights, then OIC would presumably hold that right.").) These factual and legal issues are common to the alleged claims of OSC and OIC.

**(c) <u>JDEE and OIC</u>**

Plaintiffs admit that JDEE's claim requires "the interpretation of JDEE's [exclusive] license" (Dkt. No. 258 at 13), which was granted to JDEE in a 1998 Research and Development Cost Sharing Agreement (*see* Dkt. No. 191 (Lanier Decl. ¶ 19 and Ex. 1)). Plaintiffs' claim that OIC, as copyright owner, may sue for infringement of rights exclusively licensed to JDEE would require interpretation of JDEE's exclusive license, as well as the underlying agreement. Again, these factual and legal issues are common to the claims of both JDEE and OIC.

Accordingly, because the record shows that the issues involved in adjudicating the claims of OSC and JDEE are "largely the same as" those in the remaining claims of OIC, entry of Rule 54(b) judgment undoubtedly "would give rise to successive appeals that would turn largely on identical, and interrelated, facts." *Wood*, 422 F.3d at 880. "This impacts the sound administration of justice," *id.*, for "[i]t would clearly be more efficient to consider the case as a whole [on appeal] . . . , than to have to review the record in this case in detail once now, and then again later at such time as the [remaining] issues come up on appeal," *Little Earth of United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 738 F.2d 310, 314 (8th Cir. 1984). That requires denial of Plaintiffs' motion.

**2. <u>Plaintiffs have not shown that any equities suggest that there is no just reason for delay</u>.**

In analyzing Plaintiffs' Rule 54(b) motion, this Court should also consider "the equities involved." *Curtiss-Wright*, 446 U.S. at 8. Where, as here, there is "[a] similarity of legal or factual issues" between what has been dismissed and what remains, a "Rule 54(b) order will be

proper only where necessary to avoid a harsh and unjust result, documented by further and specific findings." *Frank Briscoe Co. v. Morrison-Knudsen Co.*, 776 F.2d 1414, 1416 (9th Cir. 1985). In other words, the moving party must point to "a seriously important reason" that would justify requiring an appellate court to review the same issues twice. *Wood*, 422 F.3d at 882. Plaintiffs' failure to do so independently justifies denial of their motion.

Plaintiffs' only assertion on this point is that Rule 54(b) judgment would streamline trial proceedings, presenting "the opportunity for significant savings of time, money and effort for all parties and the Court, and the opportunity to avoid the threat of a second, protracted proceeding," because the dismissed and remaining claims are "inextricably intertwined." (Dkt. No. 258 at 14.) But that actually defeats, rather than helps, Plaintiffs' position on the equities. It is black-letter law that "the interrelationship of the dismissed and surviving claims is generally a reason for *not* granting a Rule 54(b) certification, not a reason for granting it." *Hogan*, 961 F.2d at 1026 (emphasis in original). That is because the remaining proceedings at the trial level may "illuminate appellate review of the dismissed claims." *Id.* (internal quotation marks omitted).

Moreover, even on the merits, Plaintiffs' arguments about streamlining and efficiency miss the mark. This Court has already streamlined the trial proceedings by dismissing two plaintiffs, OSC and JDEE, who have no hope of recovery. *See McGlinchey v. Shell Chem. Co.*, No. C-84-0474-SC, 1985 U.S. Dist. LEXIS 22117, at *8 (N.D. Cal. Mar. 1, 1985) ("It is commonplace for the court to streamline and dismiss claims prior to trial.").

Finally, it is black-letter law that a mere concern "that the case will be tried without the [parties] that were previously dismissed . . . does not constitute an 'unusual case' justifying entry of judgment pursuant to Rule 54(b)." *Id*. The avoidance of a possible retrial, without more, is insufficient to justify directed entry of a Rule 54(b) final judgment. *See, e.g., Hogan*, 961 F.2d at 1026 (rejecting "the district court's desire to avoid a retrial"). Indeed, Plaintiffs' tunnel-like focus on the costs of (potentially) two *trials* if this motion is denied overlooks the costs of (a certain) additional *appeal* if its motion is granted. *See Wood*, 422 F.3d at 883 (focusing on appellate costs and noting that "each [appeal] takes time and money"). As the Ninth Circuit has lamented, "the caseload of th[at] court is already huge," *id.* at 882, without having to entertain

piecemeal—and potentially unnecessary—appeals. In 2007, over 16,000 appeals were pending in the Ninth Circuit. Federal Court Management Statistics, *available at* http://www.uscourts.gov/cgi-bin/cmsa2007.pl. The Court has made clear that it simply "cannot afford the luxury of reviewing the same set of facts in a routine case more than once without a seriously important reason." *Wood*, 422 F.3d at 882. Again, Plaintiffs have presented none.

In any event, an interlocutory appeal would necessarily serve to *delay*, rather than speed along, the litigation. Trial in this matter is currently set for February 8, 2010, less than one year from now. But in 2007, the most recent year for which statistics are available, the median time to complete an appeal in this Circuit (from notice of appeal to the disposition) was 17.4 months. Federal Court Management Statistics, *available at* http://www.uscourts.gov/cgi-bin/cmsa2007.pl. It is thus a virtual certainty that the Ninth Circuit would not decide Plaintiffs' appeal prior to the trial date. The equities thus favor denial of a Rule 54(b) entry of judgment as to the dismissed parties.[4]

**C. Certification Under § 1292(b) Is Also Improper.**

Finally, Plaintiffs' request for § 1292(b) certification must fail. Like Rule 54(b) appeals, the Ninth Circuit has cautioned that § 1292(b) "is to be applied sparingly and only in exceptional cases." *United States v. Woodbury*, 263 F.2d 784, 799 n.11 (9th Cir. 1959); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978); *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982) (citing *United States Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (per curiam)), *aff'd*, 459 U.S. 1190 (1983). Again, the "basic policy" of the federal courts of appeals is "postponing appellate rule until after entry of a final judgment." *Coopers & Lybrand*, 437 U.S. at 475 (internal quotation marks omitted). Like Rule 54(b), § 1292(b), which allows derogation from that policy in narrow circumstances, is to be used only sparingly in exceptional cases. Specifically, § 1292(b) certification is proper only where: (1) an order "involves a controlling question of law," (2) "there is substantial ground for difference of

[4] Plaintiffs' claim that the requested appeal would expedite matters is ironic, in view of Plaintiffs' delay in bringing this motion. Had the ruling been immediately appealable, Plaintiffs would have missed the 30 day deadline for appeal. While that delay is not by itself dispositive of this motion, it is telling.

opinion" on the question, and (3) an immediate appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Plaintiffs' motion fails to meet any of these requirements.

**1. <u>This Court's order did not involve a controlling question of law</u>.**

The first element of § 1292(b), that the order "involves a controlling question of law," encompasses two requirements: (1) there must be a question of pure law, and (2) that legal question must be controlling. Neither is met here.

*First*, Plaintiffs' three sentences on this element (Dkt. No. 258 at 15) omit mentioning that a "question of law" within the meaning of § 1292(b) refers to a "'pure' question of law"; that is, "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000). Section 1292(b) does not apply to "a mixed question of law and fact or an application of law to a particular set of facts." *Sierra Foothills Pub. Util. Dist. v. Clarendon Am. Ins. Co.*, No. CV F 05-0736 AWI SMS (NEWDJ), 2006 U.S. Dist. LEXIS 55863, at *7 (E.D. Cal. July 25, 2006). Rather, it generally connotes a question that an appellate court "'can decide quickly and cleanly without having to study the record.'" *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004) (quoting *Ahrenholz*, 219 F.3d at 677).

In the leading case of *Ahrenholz*, for example, the Seventh Circuit denied § 1292(b) certification on the meaning of a contract. 219 F.3d at 677. Judge Posner, writing for the court, reasoned that "the question of the meaning of a contract, though technically a question of law when there is no other evidence but the written contract itself, is not what the framers of section 1292(b) had in mind." *Id.* at 676.

Like the contract-interpretation question in *Ahrenholz*, the questions in this case are not pure legal questions. Rather, set out above, the questions involved in the dismissal of OSC and JDEE involve mixed questions applying law to fact. The Court's dismissal of both parties turned, at least in part, on the terms of various agreements[5] and the application of those terms to

---

[5] Plaintiffs conceded that those agreements were properly considered on the underlying motion. (Dkt. No. 213 at 9-10; Dkt. No. 258 at 13.)

the law. OSC's claim would require examination of the terms of *two* separate transactions, as well as the application of those terms to copyright law, because OSC argues that two transactions gave it the right to sue: (1) the assignment of copyrights by OSC's predecessors-in-interest to OIC, wherein OSC's predecessors-in-interest allegedly retained the right to sue; and (2) the merger of OSC's predecessors-in-interest into OSC, wherein the right to sue allegedly passed to OSC. (Dkt. No. 213 at 9-10.) Similarly, JDEE's claim "turns on the interpretation of JDEE's license," (Dkt. No. 258 at 13), because the issue is whether JDEE possesses any rights in the United States (Order, Dkt. No. 224 at 6). These are not pure questions of law within the meaning of § 1292(b).

*Second*, even if the dismissal of OSC and JDEE presented pure questions of law, those questions are not "controlling," a separate and independent requirement for § 1292(b) certification. A "controlling" legal question is one, the resolution of which "on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust*, 673 F.2d at 1026. Here again, Plaintiffs' own motion defeats their argument. Urging that that *either* OIC *or* a dismissed party may assert each claim at issue, Plaintiffs take the position that they may still succeed on these claims absent an interlocutory appeal, albeit through a different plaintiff (OIC). (*See* Dkt. No. 258 at 10 ("If the Court would specify that OIC may pursue these claims . . . then Oracle would have no need to appeal the dismissal of JDEE.").) Where a party has multiple avenues for relief and at least one avenue remains in the case, there exists a possibility that "a judgment for or against the petitioner may be entered on the petitioner's claim in a manner that makes immaterial the issues" being appealed. *Lerner v. Atl. Richfield Co.*, 690 F.2d 203, 211 (Temp. Emer. Ct. App. 1982) (holding that partial summary judgment rendered on the face of the pleadings is not a controlling question of law because other possible theories of recovery remained in the case). This, too, defeats Plaintiffs' request for § 1292(b) certification.

### 2. **<u>There are no substantial grounds for disagreement</u>.**

Plaintiffs must also show that there are "substantial grounds" for disagreement on the questions involved in the Court's dismissal of OSC and JDEE. Not so. While there is no need to belabor the point, the Court's dismissals of OSC and JDEE were absolutely correct.

As to OSC, again, Plaintiffs have not cited a single case suggesting that the fact of a merger somehow alters the long-established rule that transfers of the right to sue for past causes of action must be express. (Dkt. No. 224 at 7.) And while Plaintiffs contend that "the Ninth Circuit has not ruled expressly on the question" (Dkt. No. 258 at 15), that again favors Defendants, not Plaintiffs—for "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion under § 1292(b)." *Lenz v. Universal Music Corp.*, C 07-3783 JF (RS), 2008 U.S. Dist. LEXIS 91890, at *5 (N.D. Cal. Oct. 28, 2008) (internal quotation marks omitted).

As to JDEE, Plaintiffs offer nothing more than a repackaging of the arguments they tried (and failed) to persuade the Court of on the motion to dismiss—that "[t]he existing law of extraterritoriality focuses on the location of the defendant's infringing conduct" and that recent amendments "make foreign distribution from the United States actionable in U.S. courts." (Dkt. No. 258 at 16.) Again, Plaintiffs' arguments are wholly irrelevant to JDEE's right to sue, because JDEE has no rights within the United States. (Dkt. No. 224 at 7.) More important, Plaintiffs' disagreement with the Court's ruling (and with the applicable law) does not justify § 1292(b) certification; "a party's strong disagreement with the Court's ruling is not sufficient for there to be a 'substantial ground for difference'; the proponent of an appeal must make some greater showing." *Lenz*, 2008 U.S. Dist. LEXIS 91890, at *6-7 (internal quotation marks and citation omitted). Plaintiffs have failed to make that showing.

### 3. **<u>An interlocutory appeal will not materially advance the litigation</u>.**

Finally, to show that an interlocutory ruling will materially advance the litigation, Plaintiffs rely on the same flawed streamlining and efficiency arguments they raise with respect to Rule 54(b). Those arguments are equally deficient here. Indeed, in the specific context of § 1292(b), the Ninth Circuit has denied certification where an interlocutory appeal could "have

the effect of delaying the resolution of this litigation" where, as here, an "appeal probably could not be completed before [the date] when trial is currently scheduled." *Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1348 (9th Cir. 1988). Again, it is not realistic to think that the Ninth Circuit could decide any appeal here before the scheduled trial date. And it is no answer to suggest that the trial date could be delayed to accommodate Plaintiffs' efficiency concerns, for the inquiry under § 1292(b) is whether appeal will advance the "litigation" as a whole, including both the trial *and* the appeal. *See* 28 U.S.C. § 1292(b) (requiring that certification "materially advance the *ultimate termination* of the litigation") (emphasis added). For this reason, too, § 1292(b) certification must fail.

## IV. CONCLUSION

For all these reasons, Plaintiffs' Motion for Entry of Final Judgment under Fed. R. Civ. P. 54(b) or Certification for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) Regarding Dismissal of Plaintiffs OSC and JDEE should be denied in its entirety.

Dated: February 11, 2009

JONES DAY

By: /s/ Tharan Gregory Lanier
Tharan Gregory Lanier

Counsel for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.