BINGHAM MCCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., *et al.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE USA, INC., a Colorado corporation, *et al.*,

Plaintiffs,

v.

SAP AG, a German corporation, *et al.*,

Defendants.

CASE NO. 07-CV-01658 PJH (EDL)

**PLAINTIFFS' REPLY RE MOTION FOR ENTRY OF FINAL JUDGMENT UNDER FED. R. CIV. P. 54(B) OR CERTIFICATION FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B) REGARDING DISMISSAL OF PLAINTIFFS OSC AND JDEE**

Date: March 4, 2009
Time: 9:00 a.m.
Place: Courtroom 3, 17th Floor
Judge: Hon. Phyllis J. Hamilton



Dockets.Justia.com

# TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. The Law Precludes The Forfeiture SAP Urges .......... 2

B. If No Party May Pursue OSC's Pre-Merger Or JDEE's EMEA-Related Claims, Then The Court Should Enter Final Judgment Or Certify Its Order For Immediate Appeal .......... 6

1. The Court Should Enter Final Judgment Against OSC And JDEE Pursuant To Rule 54(b) .......... 6

a. The Court's Order Of Dismissal Is Final As To OSC And JDEE .......... 7

b. The Issues To Be Decided On Appeal Will Not Overlap With The Issues That Remain In The Case .......... 7

c. There Is No Just Reason To Delay The Appeal .......... 9

2. In The Alternative, The Court Should Certify Its Order For Interlocutory Appeal Pursuant To 28 U.S.C. § 1292(b) .......... 10

a. The Court's Order Presents Controlling Questions Of Law .......... 11

b. There Are Substantial Grounds For Disagreement Concerning The Court's Order .......... 12

c. An Immediate Appeal Will Advance The Ultimate Termination Of This Litigation .......... 13

III. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

Page

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
944 F.2d 971 (2d Cir. 1991) ... 3, 5, 12

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000) ... 11

*Bassiri v. Xerox Corp.*,
463 F.3d 927 (9th Cir. 2006) ... 11

*Co-opportunities, Inc. v. Nat'l Broad. Co.*,
510 F. Supp. 43 (N.D. Cal. 1981) ... 4

*Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*,
819 F.2d 1519 (9th Cir. 1987) ... 8

*Core-Vent Corp. v. Nobel Indus. AB*,
11 F.3d 1482 (9th Cir. 1993) ... 6, 7, 9, 10

*Crown Die & Tool Co. v. Nye Tool & Mach. Works*,
261 U.S. 24 (1923) ... 3, 4

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
446 U.S. 1 (1980) ... 6

*Delaware Valley Surgical Supply, Inc. v. Johnson & Johnson*,
523 F.3d 1116 (9th Cir. 2008) ... 11

*DeSilva Constr. Corp. v. Herrald*,
213 F. Supp. 184 (M.D. Fla. 1962) ... 4

*Dickinson v. Petroleum Conversion Corp.*,
338 U.S. 507 (1950) ... 6

*Forry, Inc. v. Neundorfer, Inc.*,
837 F.2d 259 (6th Cir. 1988) ... 4

*Heit v. Tenneco, Inc.*,
319 F. Supp. 884 (D. Del. 1970) ... 4

*Hogan v. Consol. Rail Corp.*,
961 F.2d 1021 (2d Cir. 1992) ... 6, 9

*In re Cement Antitrust Litigation*,
673 F.2d 1020 (9th Cir. 1982) ... 10, 11

TABLE OF AUTHORITIES
(continued)

Page

*Indiana Harbor Belt R.R. v. American Cyanamid Co.*,
860 F.2d 1441 (7th Cir. 1988) .......... 6

*Lanard Toys Ltd. v. Novelty Inc.*,
511 F. Supp. 2d 1020 (C.D. Cal. 2007) .......... 4

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*,
149 F.3d 987 (9th Cir. 1998) .......... 13

*McFarlin v. Conseco Servs., LLC*,
381 F.3d 1251 (11th Cir. 2004) .......... 11

*Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*,
410 F.3d 41 (1st Cir. 2005) .......... 10

*Morrison-Knudsen Co. v. Archer*,
655 F.2d 962 (9th Cir. 1981) .......... 7

*Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.*
832 F. Supp. 1378 (C.D. Cal. 1993) .......... 5

*Raffoler, Ltd. v. Peabody & Wright, Ltd.*,
671 F. Supp. 947 (E.D.N.Y. 1987) .......... 4

*Romine v. Diversified Collection Svcs., Inc.*,
155 F.3d 1142 (9th Cir. 1998) .......... 9

*S.E.C. v. Capital Consultants LLC*,
453 F.3d 1166 (9th Cir. 2006) .......... 6

*San Mateo Country Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.*,
979 F.2d 1356 (9th Cir. 1992) .......... 10

*Silvers v. Sony Pictures Entertainment, Inc.*,
402 F.3d 881 (9th Cir. 2005) (en banc) .......... 3, 5, 11, 12

*Steering Committee v. United States*,
6 F.3d 572 (9th Cir. 1993) .......... 11

*Texaco, Inc. v. Ponsoldt*,
939 F.2d 794 (9th Cir. 1991) .......... 7, 8

*Theriot v. Trumbull River Servs., Inc.*,
835 F. Supp. 465 (C.D. Ill. 1993) .......... 10

TABLE OF AUTHORITIES
(continued)


Page

*Wood v. GCC Bend, LLC*,
422 F.3d 873 (9th Cir. 2005) ........ 8

**FEDERAL STATUTES**

17 U.S.C. § 501 ........ 8, 12

17 U.S.C. § 602 ........ 6, 13

28 U.S.C. § 1292 ........ 2, 3, 11, 13

**STATE STATUTES**

Del. Code Ann. Title 8, § 259 (2008) ........ 4

**RULES**

Cir. R. 27-12 ........ 10

Fed. R. Civ. P. 54 ........ passim

## I. INTRODUCTION

SAP urges this Court to ignore the serious and far reaching consequences of a ruling contrary to settled law. SAP spends the first six pages of its brief opposing a motion for reconsideration that Oracle does not bring. The apparent point of this phantom opposition is to preserve, unreviewed, a ruling that results in a significant forfeiture of claims. While SAP would no doubt enjoy this windfall, the law does not permit the forfeiture SAP seeks. That is why Oracle asks the Court to either clarify its ruling to avoid that forfeiture, or permit Oracle to appeal now, while time remains to resolve the legal issues in a timely and efficient manner.

Notwithstanding SAP's attempts to complicate the issue, the problem regarding pre-merger claims is simply framed: The entities that owned the copyrights at issue in this case during the first several years of SAP's infringement assigned ownership of those copyrights to Oracle International Corporation ("OIC"), but did not expressly transfer the right to sue on past infringement; those entities then merged into Oracle Systems Corporation ("OSC"). If neither OSC nor OIC can assert pre-merger infringement claims, these claims have presumably disappeared, with no basis in law for such a result in these circumstances.

SAP has urged exactly that result from the beginning, but in three briefs on the subject, it has never cited authority that supports it. Decisions from the Ninth Circuit, Second Circuit and U.S. Supreme Court all demonstrate that a party who transfers ownership of copyrights, but does not expressly transfer the right to sue on past infringements, *retains* the right to sue on past infringements. No authority suggests those *retained* rights can vanish whether by merger or any other event. On the contrary, it is well-established that all rights, including the right to sue on accrued claims, pass automatically to the surviving company in a merger.

SAP urges a similar forfeiture as to the EMEA-related claims of J.D. Edwards Europe ("JDEE"). SAP points out that JDEE may not pursue claims for infringing acts undertaken in the U.S. affecting EMEA rights because the Court has concluded that JDEE holds only extraterritorial rights. Yet SAP also asserts that OIC, which holds domestic rights, cannot pursue those claims for infringement, either. Again, SAP urges the Court toward a result that lets no party recover for years of infringing conduct occurring in the United States.

Oracle asks the Court to clarify its order because that order leaves it unclear whether any party in the case can assert the pre-merger infringement claims alleged by OSC, or the EMEA-related infringement claims alleged by JDEE. If the Court's order means no party can assert those claims, then we respectfully submit that the Court has made an important error with significant consequences. It is imperative to correct that error now, by expediting the appeal of the Court's dismissal order.

SAP urges the Court not to let Oracle have its say in the Ninth Circuit, but its arguments illustrate that the Court's order meets the criteria for entry of final judgment under Fed. R. Civ. P. 54(b) (or, alternatively, for interlocutory certification). The Court's order dismissing OSC and JDEE disposes of all claims for both parties, and so is final as to both parties. In addition, the jurisdictional issues of standing and extraterritoriality are separate, distinct and plainly severable from the underlying factual merits of the infringement claims that remain before this Court. Finally, Ninth Circuit law (as opposed to the Second Circuit law relied upon by SAP) recognizes that a consolidated trial on common issues, and the resulting cost-savings and expediency, merit a Rule 54(b) judgment. If the Ninth Circuit reinstates OSC or JDEE as plaintiffs, that should happen sooner rather than later so all claims can proceed to trial together. Delayed reinstatement of either OSC or JDEE would lead to a second round of litigation, imposing significant and unnecessary costs on the Court and the parties alike.

If the Court concludes no party may assert pre-merger or EMEA-related infringement claims, there is every reason to expedite the appeal of that decision and no reason to delay it. The Court should grant Oracle's motion and enter final judgment as to OSC and JDEE or certify its dismissal order for interlocutory appeal.

## II. ARGUMENT

### A. The Law Precludes The Forfeiture SAP Urges

SAP spends the first six pages of its opposition complaining that Oracle's motion is a "thinly-veiled" and "disguised" motion for reconsideration that should be denied out of hand. (*See* Defs.' Opp'n to Pls.' Mot. for Entry of Final J. under Fed. R. Civ. P. 54(b) or Certification for Interlocutory App. Pursuant to 28 U.S.C. § 1292(b) Regarding Dismissal of Pls. OSC and

JDEE ("SAP Opp'n"), Docket No. 273, at 1-6.) SAP is mistaken. Oracle seeks only to determine whether an appeal is necessary at this time, and if so, it seeks the right to pursue that appeal in the most timely and efficient manner. While the Court remains free to reconsider its dismissal order on its own, Oracle neither requests nor demands reconsideration.

The reason SAP would have the Court deny Oracle's motion without careful consideration is simple: SAP seeks a windfall. It infringed for years, and now wants to escape liability on the grounds that the claims against it simply disappeared when one entity merged into another. SAP does not mention or discuss any of the authority that expressly precludes such a forfeiture. SAP does not acknowledge, and would have the Court ignore, the law that establishes mergers do not extinguish the right to sue on past infringements. (*See* Pls.' Mot. for Entry of Final J. under Fed. R. Civ. P. 54(b) or Certification for Interlocutory App. Pursuant to 28 U.S.C. § 1292(b) Regarding Dismissal of Pls. OSC and JDEE ("Oracle Mot."), Docket No. 258, at 7-8.) It also ignores the rule that courts should interpret statutes, including the Copyright Act, to avoid unintended forfeiture of property rights. (*See* Oracle Mot. at 8.)

SAP also does not mention the controlling authority on which the Court based its decision to dismiss OSC, *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 (9th Cir. 2005) (en banc). SAP would have the Court ignore the fact that *Silvers* did not involve a merger or any transfer of ownership. *Silvers* does not suggest, much less hold, that a past owner of a copyright or its successor in interest lacks standing to assert past infringements. (*See* Oracle Mot. at 8-9.) SAP also does not mention *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971 (2d Cir. 1991), which *Silvers* adopted expressly. (*See* Oracle Mot. at 8, 15.) SAP ignores *Silvers* and *ABKCO* because those cases make it clear that when a copyright owner transfers ownership of a copyright, but does not expressly transfer the right to sue on past claims, the transferring party *retains* the right to sue on past infringements. *See ABKCO*, 944 F.2d at 980. (*See also* Oracle Mot. at 7-8.) Indeed, *Silvers* relies on a U.S. Supreme Court case that holds the right to sue on past infringements is retained by a party who transfers ownership of a patent, and *Silvers* explains that that case applies equally to copyrights. *See Silvers*, 402 F.3d at 888 (citing *Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 44 (1923)). (*See*

*also* Oracle Mot. at 9.) SAP does not mention *Crown Die*, either.

These authorities establish that a party who transfers ownership of a copyright to another party, but does not expressly transfer the right to sue for past infringements of that same copyright, *retains* the right to sue on past infringements. Accordingly, there should be no dispute that PeopleSoft, Source and YOUCentric *retained* the rights to sue on past infringements following their transfer of copyright ownership to OIC. The question, then, is what happened to those rights.

According to SAP, they disappeared—just vanished into thin air. Specifically, SAP contends that any "transfer" of the rights to sue on past claims from PeopleSoft, Source or YOUCentric to OSC had to be express, or else those rights disappeared upon the merger of these entities into OSC. (*See* SAP Opp'n at 5 ("[T]ransfers of the right to sue for past [copyright infringement] must be express").)[1] That is simply and demonstrably wrong. A merger has been held not to effect a transfer for purposes of the Copyright Act. *See Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 262 (6th Cir. 1988); *Raffoler, Ltd. v. Peabody & Wright, Ltd.*, 671 F. Supp. 947, 952 & n.2 (E.D.N.Y. 1987). (*See also* Oracle Mot. at 7-8.) Again, SAP simply ignores these cases, which demonstrate that no "transfer" occurred from PeopleSoft, Source or YOUCentric to OSC. Far from disappearing, the rights of PeopleSoft, Source and YOUCentric, including the right to sue on accrued claims, passed automatically to OSC under Delaware law. *See* Del. Code Ann. tit. 8, § 259 (2008) ("When any merger or consolidation shall have become effective under this chapter . . . all property, rights, privileges, powers and franchises, and all and every other interest shall be thereafter as effectually the property of the surviving or resulting corporation as they were of the several and respective constituent corporations"); *Heit v.*

---

[1] All of the authorities SAP cites in support of this contention concern the question of whether an *assignee* of copyrights can sue on pre-assignment claims without an express transfer of those past claims. *See Co-opportunities, Inc. v. Nat'l Broad. Co.*, 510 F. Supp. 43 (N.D. Cal. 1981); *DeSilva Constr. Corp. v. Herrald*, 213 F. Supp. 184 (M.D. Fla. 1962); *Lanard Toys Ltd. v. Novelty Inc.*, 511 F. Supp. 2d 1020 (C.D. Cal. 2007)). That is not the question here. The question here is whether the *assignor* and its successor in interest retain the right to sue on past claims when that right is not transferred expressly.

*Tenneco, Inc.*, 319 F. Supp. 884, 887 (D. Del. 1970) (merger causes accrued causes of action to pass by operation of law to surviving company).

There is simply no authority to support the forfeiture SAP demands. The authorities above—all cited in Oracle's moving papers and completely ignored by SAP—establish that a party who transfers a copyright to another party, but does not expressly transfer the right to sue on past infringements, *retains* the right to sue on past infringements. That *retained* right to sue on past claims then transfers to the surviving entity in a merger. That means OSC should have standing to assert the claims it alleged. If OSC does not, then OIC should, as the new owner of the copyrights at issue. There is no basis to suggest, much less conclude, the right to sue on pre-merger infringement claims was forfeited as a result of the merger.[2]

Similarly, no basis exists to impose the forfeiture SAP urges in respect to EMEA-related claims. Having convinced the Court that JDEE's infringement claims based on infringing conduct occurring in the U.S. are "extraterritorial" on the ground that JDEE holds only foreign rights, SAP now suggests that OIC, the party that holds domestic rights, cannot pursue those claims either. (*See* SAP Opp'n at 6.) SAP urges this result on the ground that a copyright owner who grants an exclusive license cannot sue for later infringement of those rights. *See id.* But if JDEE has only foreign rights, as SAP convinced the Court, those are the only exclusive rights JDEE could possibly hold. Those exclusively foreign rights cannot preclude OIC from suing on infringing conduct that occurred in the United States. Once again, SAP urges the Court to ignore

---

[2] Neither *Silvers* nor *ABKCO* involved an assignor that merged into one party immediately after having conveyed ownership to another party. Accordingly, neither case forecloses the possibility that OIC has standing to pursue pre-merger claims through an implied transfer. *Cf. Parfums Givenchy, Inc. v. C & C Beauty Sales, Inc.* 832 F. Supp. 1378, 1384 (C.D. Cal. 1993) ("Although an assignment of a copyright ordinarily is presumed not to convey the right to sue for prior causes of action, this presumption is not conclusive, but instead depends on the particular circumstances of the assignment.") Implied transfer is a far more equitable interpretation than a forfeiture of all rights to sue on pre-merger claims. To avoid this obviously equitable result, SAP seizes on a snippet from the oral argument on its original motion to dismiss and tries to turn it into an admission by Oracle that OIC could not assert these claims if OSC cannot. (*See* SAP Opp'n at 2, 5.) Counsel's statement does not state or suggest any party is waiving any rights, and likewise should not be construed as a forfeiture of important rights.

the controlling law (here, the recent amendments to 17 U.S.C. § 602, which were not addressed in the Court's dismissal order) and then go a step beyond that by precluding other parties from asserting the claims when neither the law nor common sense supports the forfeiture SAP urges.

### B. If No Party May Pursue OSC's Pre-Merger Or JDEE's EMEA-Related Claims, Then The Court Should Enter Final Judgment Or Certify Its Order For Immediate Appeal

If OIC may not pursue pre-merger infringement claims in place of the dismissed plaintiffs, or claims for infringement of certain J.D. Edwards products in EMEA, then Oracle must appeal that decision to avoid the forfeitures that would result. SAP tries to distract the Court from the obvious and substantial benefits of expediting that appeal to avoid the potential reinstatement of significant additional claims against it as long as possible. That does not constitute grounds to prevent an appeal, and all relevant factors support an appeal now.

#### 1. The Court Should Enter Final Judgment Against OSC And JDEE Pursuant To Rule 54(b)

SAP does not dispute the clear purpose of Rule 54(b). The rule addresses the "potential for injustice for litigants who had to await the conclusion of the entire litigation even though their rights on certain issues had been conclusively resolved early on." *Indiana Harbor Belt R.R. v. American Cyanamid Co.*, 860 F.2d 1441, 1443 (7th Cir. 1988) (citing *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511-12 (1950)); *accord S.E.C. v. Capital Consultants LLC*, 453 F.3d 1166, 1173-74 (9th Cir. 2006) (also citing *Dickinson*). (*See also* Oracle Mot. at 11.) Instead, SAP reports that the Second Circuit says Rule 54(b) judgments should be issued "sparingly" and only in "the infrequent harsh case." (SAP Opp'n at 7 (citing *Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1025 (2d Cir. 1992)).) While it is true that Rule 54(b) judgments must be the exception rather than the rule in light of the policy against piecemeal appeals, *see Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980), Rule 54(b) judgments are appropriate where the court dismisses all the claims of certain parties. See *Capital Consultants*, 453 F.3d at 1174 (order disposing of all claims of some parties falls "squarely within Rule 54(b)"). Rule 54(b) judgments are also appropriate where the court dismisses a party on jurisdictional grounds that are severable from the merits of the lawsuit. *Core-Vent*

*Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993).[3]

Here, all of the Rule 54(b) criteria are met and entry of final judgment is appropriate. The Court's order dismissing OSC and JDEE is final as to both parties, the appeal from that order presents jurisdictional issues of standing and extraterritoriality that are plainly distinct and several from the merits of the infringement claims that remain before this Court, and entering a Rule 54(b) judgment is the only way to avoid the tremendous inefficiency that would result if the claims alleged by OSC and JDEE are reinstated years from now, following the conclusion of this matter.

**a. The Court's Order Of Dismissal Is Final As To OSC And JDEE**

SAP does not dispute the Court's dismissal order is final as to OSC and JDEE. (*See* SAP Opp'n at 6-9.) That order resolved all claims asserted by those parties. (*See* Oracle Mot. at 12.)

**b. The Issues To Be Decided On Appeal Will Not Overlap With The Issues That Remain In The Case**

The fundamental question that arises from the Court's order dismissing OSC and JDEE for lack of jurisdiction is whether each of these parties has standing to assert the claims alleged. Whether the court has jurisdiction over OSC's claims turns on strictly legal issues and the simple and undisputed terms of the copyright assignments. (*See* Oracle Mot. at 12-13; P. 3-5, above.) Whether the Court has jurisdiction over JDEE's claims turns on the common law of extraterritoriality and the scope of JDEE's license, the terms of which are also undisputed. (*See* Oracle Mot. at 13; P. 5, above.) These questions are obviously severable from the merits of Oracle's infringement claims, making a Rule 54(b) judgment appropriate. *See, e.g., Core-Vent,*

---

[3] Citing *Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981), SAP also suggests Rule 54(b) judgments must be "reserved for the unusual case." (SAP Opp'n at 7.) But SAP neglects to mention the Ninth Circuit itself has declared that *Morrison-Knudsen* reflects "an outdated and overly restrictive view of the appropriateness of Rule 54(b) certification." *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991).

11 F.3d at 1484 (finding entry of final judgment proper under Rule 54(b) where jurisdictional issues were "easily severable from the merits of the lawsuit").

SAP contends that the copyright claims asserted by OSC and JDEE were based on the "same alleged misconduct" and "raise the same basic questions" of liability and damages as OIC's infringement claims. (*See* SAP Opp'n at 8.) SAP then asserts that the fact that its underlying misconduct is the same for all claims precludes a Rule 54(b) judgment. (*See id.*)

SAP misses the point. The Ninth Circuit has stressed repeatedly that "claims with overlapping facts" are not "foreclosed from being separate for purposes of Rule 54(b)." *Wood v. GCC Bend, LLC*, 422 F.3d 873, 881 (9th Cir. 2005). On the contrary, a Rule 54(b) judgment is appropriate where dismissed and non-dismissed claims "require proof of the same facts" so long as the legal issues presented by the appeal are distinct. *See, e.g., Texaco*, 939 F.2d at 798 (affirming appropriateness of Rule 54(b) judgment where district court dismissed plaintiff's claims but did not dismiss defendant's counterclaims concerning same real estate transaction); *Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987) (affirming appropriateness of Rule 54(b) judgment where court dismissed some of plaintiff's claims based on exculpatory contract clause, but left other claims in place because the appeal "efficiently separated the legal from the factual questions"). Accordingly, the question is not whether a defendant's underlying conduct is the same in regard to dismissed and non-dismissed claims. The question is whether an appeal from the dismissed claims will present factual and legal issues distinct from those that remain before the trial court. *See id.*

Here there is no doubt the issues are distinct. SAP itself acknowledges the "focus" of the case that remains centers on whether SAP copied software and other protected materials, whether any plaintiff was harmed, and what damages resulted. (*See* SAP Opp'n at 8.) The appeal will raise none of those questions. It will raise strictly jurisdictional issues: (1) whether OSC has standing under section 501(b) of the Copyright Act based on the simple and undisputed transfers at issue; and (2) whether JDEE asserts wholly extraterritorial claims based the undisputed terms of its license. These issues are factually and legally distinct from SAP's underlying misconduct.

SAP confuses this point again by suggesting there is overlap because the Court would have to look at the same transfers to determine whether "the right to sue for past infringement passed to OIC" or remained with OSC, and may still have to interpret the scope of JDEE's exclusive license. (*See* SAP Opp'n at 9.) But the Court has already decided the right to sue for past claims did not pass to OSC, and SAP asserts the Court's order of dismissal precludes OIC from asserting those claims too. Similarly, the Court has already interpreted the scope of JDEE's exclusive license, and SAP contends the Court's dismissal order precludes both JDEE and OIC from asserting any of those rights. (*See* SAP Opp'n at 6.) So, according to SAP itself, nothing remains to decide on either issue.

The jurisdiction and standing questions presented by an appeal from the Court's dismissal order are legally and factually distinct from the merits issues that remain. The fact that the dismissed plaintiffs have similar claims, if the Court has jurisdiction to hear them, just points out the imperative efficiency of the appeal.

**c. There Is No Just Reason To Delay The Appeal**

The efficiency in expediting Oracle's appeal is plain. If the Ninth Circuit reinstates OSC and JDEE, having only one trial on the claims of all Plaintiffs will cost the parties less and will save the Court's time. Two trials would cost more and would require more of the Court's time. (*See* Oracle Mot. at 14.)

SAP tries to avoid the clear efficiency of an expedited appeal by suggesting that the Second Circuit does not consider the cost of a retrial to be a good reason to enter a Rule 54(b) judgment. (*See* SAP Opp'n at 10 (citing *Hogan v. Consol. Rail Corp.*, 961 F.2d 1021 (2d Cir. 1992)).) But the Ninth Circuit does. *See Romine v. Diversified Collection Svcs., Inc.*, 155 F.3d 1142, 1143 (9th Cir. 1998) ("district judge astutely entered [Rule 54(b) judgment]" against one party so legal issue underlying the dismissal could be resolved on appeal before proceeding with trial); *Core-Vent*, 11 F.3d at 1484 ("We are satisfied that dealing with the jurisdictional issue now may obviate the need for a second trial, and thus aids in the expeditious decision of the

case.").[4] That is particularly so where an order presents a threshold jurisdictional issue. *See Core-Vent*, 11 F.3d at 1484; *see also San Mateo Country Transit Dist. v. Dearman, Fitzgerald & Roberts, Inc.*, 979 F.2d 1356 (9th Cir. 1992) (reviewing Rule 54(b) judgment dismissing one of several defendants for lack of personal jurisdiction). Accordingly, the potential savings in avoiding a costly second trial qualifies as the "seriously important reason" the Ninth Circuit demands for entry of a Rule 54(b) judgment. (*See* SAP Opp'n at 11 (quoting *Wood*, 422 F.3d at 882).)

Unable to effectively dispute the efficiency of expediting the appeal of the Court's dismissal order, SAP suggests it is simply too late to achieve it. (*See* SAP Opp'n at 11.) Specifically, SAP points out that the median time to disposition was 17.3 months in 2007, whereas the trial of this matter begins in about 12 months. (*See id.*) That fact alone hardly demonstrates that OSC and JDEE could not be reinstated before trial. That statistic is simply an average, the issues presented by the Court's dismissal order are straightforward, they could be briefed quickly and efficiently, and the Ninth Circuit does provide a mechanism for expediting an appeal. *See* Cir. R. 27-12 (briefing and hearing of appeal may be expedited for good cause shown).

**2. In The Alternative, The Court Should Certify Its Order For Interlocutory Appeal Pursuant To 28 U.S.C. § 1292(b)**

While certification for interlocutory appeal must be the exception rather than the rule, certification is appropriate where "allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982). That is precisely the situation here. The Court's order dismissing OSC and JDEE presents controlling issues of law as to which there is substantial room for disagreement.

---

[4] Other courts agree. *See, e.g., Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 45-46 (1st Cir. 2005) (Rule 54(b) judgment appropriate for order dismissing two of three plaintiffs on statute of limitations grounds because appeal involved discrete legal issues and trial would be more efficient if all three plaintiffs proceeded together); *Theriot v. Trumbull River Servs., Inc.*, 835 F. Supp. 465, 468 (C.D. Ill. 1993).

Expediting the appeal of that order has the potential to avoid a second round of expensive litigation.

### a. The Court's Order Presents Controlling Questions Of Law

A controlling issue is one that could affect the outcome of the case in the District Court. *See In re Cement Antitrust Litigation*, 673 F.2d at 1026. The Court's order dismissing OSC and JDEE for lack of jurisdiction ends the case for both parties, so it certainly affects the outcome of the case for both of these parties. (*See* Oracle Mot. at 15.) SAP suggests the Court's order is not "controlling" because OIC still has live claims. (*See* SAP Opp'n at 13.) That does not change the fact the Court's order ends the case for OSC and JDEE, which renders it controlling for these parties. *See Delaware Valley Surgical Supply, Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1118 (9th Cir. 2008) (permitting interlocutory appeal to determine standing of one antitrust plaintiff while claims of other plaintiffs proceeded).

SAP goes on to contend interlocutory certification is only appropriate for "pure questions of law" not "mixed question of law and fact" or the "application of law to a particular set of facts." (SAP Opp'n at 12 (citing *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000) and *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004)).) That is not the rule in the Ninth Circuit. *See Steering Committee v. United States*, 6 F.3d 572, 575 (9th Cir. 1993) (rejecting the view that § 1292(b) prohibits review of "mixed questions of law and fact"). The Ninth Circuit routinely adjudicates interlocutory appeals that require the application of law to specific facts. *See, e.g.*, *Delaware Valley*, 522 F.3d at 1119 (allowing interlocutory appeal to determine whether dismissed plaintiff had standing to pursue antitrust claims as a "direct purchaser" where plaintiff bought products from an independent distributor); *Bassiri v. Xerox Corp.*, 463 F.3d 927, 929 (9th Cir. 2006) (allowing interlocutory appeal to determine whether employer's plan was a welfare benefit plan within scope of ERISA, and whether it qualified as a payroll practice specifically exempted from ERISA).

In any event, questions of copyright standing are indisputably subject to interlocutory certification. *Silvers* itself—the principal case this Court relied on in dismissing

OSC's claims—was an interlocutory appeal. *See Silvers*, 402 F.3d at 883. SAP nonetheless suggests interlocutory certification is inappropriate where the court must apply the law to the terms of an agreement. (*See* SAP Opp'n at 12-13.) That, of course, was exactly what the court did in *Silvers*, holding that section 501(b) did not provide standing to a party who obtained only the bare right to sue on past infringement claims. *See Silvers*, 402 F.3d at 890.

The Court's dismissal order presents exactly the sort of clean legal question appropriate for interlocutory certification. The question of OSC's standing turns on the interpretation of section 501(b), and whether the lack of an express transfer to OSC in a merger forecloses OSC from asserting pre-merger infringement claims; that is a straightforward legal question, as the analysis in *Silvers* and *ABKCO* demonstrate. The only facts that matter are the simple, undisputed terms of transfer. The question of whether JDEE's claims are extraterritorial turns on the application of the common-law doctrine of extraterritoriality. The only facts that matter are whether Oracle has alleged infringing conduct that occurred in the United States and the scope of JDEE's rights. It is beyond dispute that Oracle alleges infringing conduct in the United States, and the scope of JDEE's rights are defined in the undisputed terms of its license.

This is not a situation where the appellate court would have to spend time reviewing an extensive record. The jurisdictional questions presented here are overwhelmingly legal, and turn only on a small set of undisputed facts.

**b. There Are Substantial Grounds For Disagreement Concerning The Court's Order**

The Court's dismissal of OSC creates a disagreement with *ABKCO* (which holds previous owners of copyrights retain the right to sue on past infringement where that right is not expressly transferred), and *Silvers*, which adopted *ABKCO*. (*See* Oracle Mot. at 15-16; P. 3-5, above.) It likewise contradicts and frustrates the explicit provisions of Delaware merger law, and the well-established rule that statutes should be construed to avoid forfeitures. (*See* P. 4, above.) SAP ignores these cases, the rules they lay down, and the obvious tension between these cases and this Court's decision. This is not an issue of first impression. (*Contra* SAP Opp'n at 14.) The principles that apply here are well-developed. The Court's order departs from them, and the

parties themselves have shown there are substantial grounds for disagreement concerning the Court's order dismissing OSC.

The same is true of the Court's order dismissing JDEE. Section 602 of the Copyright Act makes it clear that exporting infringing copies from the United States constitutes an act of infringement. JDEE's claim alleged that SAP exported infringing copies from the U.S. into EMEA. Insofar as the exportation is itself an act of infringement, as § 602 says it is, then JDEE's claim is not extraterritorial under the settled law of the Ninth Circuit. *See Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 990-92 (9th Cir. 1998) (extraterritoriality does not bar claim where defendant infringes in the U.S. and exploits infringements abroad). It appears that the Court did not consider the impact of § 602 on this question, and SAP would have the Court ignore it further. (*See* SAP Opp'n at 14.)

#### c. An Immediate Appeal Will Advance The Ultimate Termination Of This Litigation

If the Ninth Circuit reinstates pre-merger and EMEA related claims as to all parties years from now, the Court and the parties face substantial inefficiency. (*See* Oracle Mot. at 13-14, 17; P. 9-10, above.) Litigating these claims anew, after resolving the remaining claims, would require the Court, the parties, and any trier of fact to start all over again. (*Id.*) To the extent substantial grounds exist for the Court of Appeal to undo this artificial division and reinstate the claims of OSC and JDEE, efficiency demands that that occur sooner, not later, and in time for one trial on all claims. Once again, SAP responds by suggesting it may be too late to achieve these goals. But the fact is that is far from clear (*see* P. 10, above) and the potential savings in avoiding a second trial in this matter are staggering. The fundamental purpose of § 1292(b) is to avoid protracted and expensive litigation. The opportunity exists to do that here by certifying the Court's dismissal order for immediate appeal.

## III. CONCLUSION

If the Court's order of dismissal prevents OIC from pursuing pre-merger or EMEA-related claims, the Court should either enter final judgment as to JDEE and OSC along

with the findings necessary to permit an appeal pursuant to Rule 54(b), or certify its decision for interlocutory appeal.

DATED: February 18, 2009

Bingham McCutchen LLP

By: /s/ Geoffrey M. Howard
Geoffrey M. Howard
Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corp., and Oracle EMEA Ltd.