Walsh v. Apple, Inc. et al
Doc. 295 Att. 1

# EXHIBIT L

Dockets.Justia.com

**Additional Certificate (17 U.S.C. 706)**

# Certificate of Registration

SEAL OF THE UNITED STATES COPYRIGHT OFFICE 1870

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

Marybeth Peters

Register of Copyrights, United States of America

## FORM TX

For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

R

TX 5-456-777

EFFECTIVE DATE OF REGISTRATION

27 SEP 2001

Month Day Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**1**

TITLE OF THIS WORK ▼
PEOPLESOFT 8 CUSTOMER RELATIONSHIP MANAGEMENT

PREVIOUS OR ALTERNATIVE TITLES ▼

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. Title of Collective Work ▼

If published in a periodical or serial give: Volume ▼ Number ▼ Issue Date ▼ On Pages ▼

**2**

a NAME OF AUTHOR ▼
PEOPLESOFT, INC.

DATES OF BIRTH AND DEATH
Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"? ☒ Yes ☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ U.S.A. / Domiciled in ▶ }

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☒ No
Pseudonymous? ☐ Yes ☒ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
COMPUTER SOFTWARE PROGRAM

b NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ / Domiciled in ▶ }

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

c NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ / Domiciled in ▶ }

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**3**

a YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED
2001 ◀ Year
This information must be given in all cases.

b DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information ONLY if this work has been published.
Month ▶ JUNE Day ▶ 29 Year ▶ 2001
U.S.A. ◀ Nation

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
PEOPLESOFT, INC.
4305 HACIENDA DRIVE, SUITE 120
PLEASANTON, CA 94588

See instructions before completing this space.

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

DO NOT WRITE HERE OFFICE USE ONLY

APPLICATION RECEIVED
SEP 27 2001
ONE DEPOSIT RECEIVED
SEP 27 2001
TWO DEPOSITS RECEIVED
FUNDS RECEIVED

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions. • Sign the form at line 8.

DO NOT WRITE HERE

EXAMINED BY OHM | FORM TX

CHECKED BY

☐ CORRESPONDENCE Yes

FOR COPYRIGHT OFFICE USE ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

## 5

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▶ **Year of Registration** ▶

## 6

**DERIVATIVE WORK OR COMPILATION**

a **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

See instructions before completing this space.

b **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

NEW SOFTWARE CODE

## 7

a **DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼ PEOPLESOFT, INC.

Account Number ▼ DA084719

b **CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

PEOPLESOFT, INC.
ATTN: GIGI REMINGTON
4305 HACIENDA DRIVE, SUITE 120
PLEASANTON, CA 94588

Area code and daytime telephone number ▶ (925) 694-8295

Fax number ▶ (925) 694-7184

Email ▶ gigi_remington@peoplesoft.com

## 8

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

Check only one ▶

☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of PEOPLESOFT, INC.

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

GIGI REMINGTON Date ▶ 9/26/01

Handwritten signature (X) ▼

X G. Remington

## 9

Certificate will be mailed in window envelope to this address:

Name ▼
PEOPLESOFT, INC
ATTN: GIGI REMINGTON

Number/Street/Apt ▼
4305 HACIENDA DRIVE, SUITE 120

City/State/ZIP ▼
PLEASANTON, CA 94588

YOU MUST:
- Complete all necessary spaces
- Sign your application in space 8

SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money order payable to *Register of Copyrights*
3. Deposit material

MAIL TO:
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

As of July 1, 1999, the filing fee for Form TX is $30.

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

June 1999—200,000
WEB REV: June 1999
U.S. GOVERNMENT PRINTING OFFICE: 1999-454-879/49

# CONTINUATION SHEET FOR APPLICATION FORMS

- This Continuation Sheet is used in conjunction with Forms CA, PA, SE, SR, TX, and VA, only. Indicate which basic form you are continuing in the space in the upper right-hand corner.
- If at all possible, try to fit the information called for into the spaces provided on the basic form.
- If you do not have enough space for all the information you need to give on the basic form, use this Continuation Sheet and submit it with the basic form.
- If you submit this Continuation Sheet, clip (do not tape or staple) it to the basic form and fold the two together before submitting them.
- **Space A of this sheet is intended to identify the basic application.**
  **Space B is a continuation of Space 2 on the basic application. Space B is not applicable to Short forms.**
  **Space C (on the reverse side of this sheet) is for the continuation of Spaces 1, 4, or 6 on the basic application or for the continuation of Space 1 on any of the three Short Forms PA, TX, or VA.**

**FORM ____ /CON**

TX 5-456-777

| PA | PAU | SE | SEG | SEU | SR | SRU | TX | TXU | VA | VAU |
|---|---|---|---|---|---|---|---|---|---|---|

EFFECTIVE DATE OF REGISTRATION

Sept. 27 2001
(Month) (Day) (Year)

CONTINUATION SHEET RECEIVED
SEP 27 2001

Page 3 of 4 pages

**DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY**

**A** Identification of Application

IDENTIFICATION OF CONTINUATION SHEET: This sheet is a continuation of the application for copyright registration on the basic form submitted for the following work:

- TITLE: (Give the title as given under the heading "Title of this Work" in Space 1 of the basic form.)
  PEOPLESOFT 8 CUSTOMER RELATIONSHIP MANAGEMENT
- NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S): (Give the name and address of at least one copyright claimant as given in Space 4 of the basic form or Space 2 of any of the Short Forms PA, TX, or VA.)
  PEOPLESOFT, INC.

**B** Continuation of Space 2

**d** NAME OF AUTHOR ▼ — DATES OF BIRTH AND DEATH Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☐ No
AUTHOR'S NATIONALITY OR DOMICILE Name of Country: OR { Citizen of ▶ ____ Domiciled in ▶ ____
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK Anonymous? ☐ Yes ☐ No Pseudonymous? ☐ Yes ☐ No — If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

**e** NAME OF AUTHOR ▼ — DATES OF BIRTH AND DEATH Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☐ No
AUTHOR'S NATIONALITY OR DOMICILE Name of Country: OR { Citizen of ▶ ____ Domiciled in ▶ ____
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK Anonymous? ☐ Yes ☐ No Pseudonymous? ☐ Yes ☐ No — If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

**f** NAME OF AUTHOR ▼ — DATES OF BIRTH AND DEATH Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☐ No
AUTHOR'S NATIONALITY OR DOMICILE Name of Country: OR { Citizen of ▶ ____ Domiciled in ▶ ____
WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK Anonymous? ☐ Yes ☐ No Pseudonymous? ☐ Yes ☐ No — If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

*Use the reverse side of this sheet if you need more space for continuation of Spaces 1, 4, or 6 of the basic form or for the continuation of Space 1 on any of the Short Forms PA, TX, or VA.*

CONTINUATION OF (Check which): ☐ Space 1 ☐ Space 4 ☑ Space 6

**C**

**Continuation of other Spaces**

PEOPLESOFT 8 CUSTOMER RELATIONSHIP MANAGEMENT:

PeopleSoft 8 CRM CTI Integration
PeopleSoft 8 CRM FieldService
PeopleSoft 8 CRM HelpDesk for Employee Self-Service
PeopleSoft 8 CRM HelpDesk
PeopleSoft 8 CRM Interaction Management
PeopleSoft 8 CRM Marketing
PeopleSoft 8 CRM Mobile Sales for WAP Phones
PeopleSoft 8 CRM Portal Pack
PeopleSoft 8 CRM Sales
PeopleSoft 8 CRM Sales Product Configurator
PeopleSoft 8 CRM Support for Customer Self-Service
PeopleSoft 8 CRM Support

**Certificate will be mailed in window envelope to this address:**

Name ▼
PEOPLESOFT, INC.
ATTN: GIGI REMINGTON

Number/Street/Apt ▼
4305 HACIENDA DRIVE, SUITE 120

City/State/ZIP ▼
PLEASANTON, CA 94588

**YOU MUST:**
- Complete all necessary spaces
- Sign your application

**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE**
1. Application form
2. Nonrefundable fee in check or money order payable to *Register of Copyrights*
3. Deposit Material

**MAIL TO:**
Library of Congress, Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

**D**

Fees are effective through June 30, 2002. After that date, check the Copyright Office Website at www.loc.gov/copyright or call (202) 707-3000 for current fee information.

November 1999—30,000
WEB REV: June 1999
PRINTED ON RECYCLED PAPER
U.S. GOVERNMENT PRINTING OFFICE: 2000-461-113/78

# CONTINUATION SHEET FOR APPLICATION FORMS

FORM ____ /CON

TX 5-456-777

| PA | PAU | SE | SEG | SEU | SR | SRU | TX | TXU | VA | VAU |
|---|---|---|---|---|---|---|---|---|---|---|

EFFECTIVE DATE OF REGISTRATION

Sept. 27 2001
(Month) (Day) (Year)

CONTINUATION SHEET RECEIVED
SEP 27 2001

Page 3 of 4 pages

- This Continuation Sheet is used in conjunction with Forms CA, PA, SE, SR, TX, and VA, only. Indicate which basic form you are continuing in the space in the upper right-hand corner.
- If at all possible, try to fit the information called for into the spaces provided on the basic form.
- If you do not have enough space for all the information you need to give on the basic form, use this Continuation Sheet and submit it with the basic form.
- If you submit this Continuation Sheet, clip (do not tape or staple) it to the basic form and fold the two together before submitting them.
- **Space A of this sheet is intended to identify the basic application.**
  **Space B is a continuation of Space 2 on the basic application. Space B is not applicable to Short forms.**
  **Space C (on the reverse side of this sheet) is for the continuation of Spaces 1, 4, or 6 on the basic application or for the continuation of Space 1 on any of the three Short Forms PA, TX, or VA.**

**DO NOT WRITE ABOVE THIS LINE. FOR COPYRIGHT OFFICE USE ONLY**

## A — Identification of Application

IDENTIFICATION OF CONTINUATION SHEET: This sheet is a continuation of the application for copyright registration on the basic form submitted for the following work:

- TITLE: (Give the title as given under the heading "Title of this Work" in Space 1 of the basic form.)
  PEOPLESOFT 8 CUSTOMER RELATIONSHIP MANAGEMENT
- NAME(S) AND ADDRESS(ES) OF COPYRIGHT CLAIMANT(S): (Give the name and address of at least one copyright claimant as given in Space 4 of the basic form or Space 2 of any of the Short Forms PA, TX, or VA.)
  PEOPLESOFT, INC.

## B — Continuation of Space 2

**d** NAME OF AUTHOR ▼ — DATES OF BIRTH AND DEATH: Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☐ No

AUTHOR'S NATIONALITY OR DOMICILE (Name of Country): OR {Citizen of ▶ ____ / Domiciled in ▶ ____}

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? ☐ Yes ☐ No; Pseudonymous? ☐ Yes ☐ No. If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

**e** NAME OF AUTHOR ▼ — DATES OF BIRTH AND DEATH: Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☐ No

AUTHOR'S NATIONALITY OR DOMICILE (Name of Country): OR {Citizen of ▶ ____ / Domiciled in ▶ ____}

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? ☐ Yes ☐ No; Pseudonymous? ☐ Yes ☐ No. If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

**f** NAME OF AUTHOR ▼ — DATES OF BIRTH AND DEATH: Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"? ☐ Yes ☐ No

AUTHOR'S NATIONALITY OR DOMICILE (Name of Country): OR {Citizen of ▶ ____ / Domiciled in ▶ ____}

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK: Anonymous? ☐ Yes ☐ No; Pseudonymous? ☐ Yes ☐ No. If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of the material created by the author in which copyright is claimed. ▼

*Use the reverse side of this sheet if you need more space for continuation of Spaces 1, 4, or 6 of the basic form or for the continuation of Space 1 on any of the Short Forms PA, TX, or VA.*

CONTINUATION OF (Check which): ☐ Space 1 ☐ Space 4 ☑ Space 6

**C**

**Continuation of other Spaces**

PEOPLESOFT 8 CUSTOMER RELATIONSHIP MANAGEMENT:

PeopleSoft 8 CRM CTI Integration
PeopleSoft 8 CRM FieldService
PeopleSoft 8 CRM HelpDesk for Employee Self-Service
PeopleSoft 8 CRM HelpDesk
PeopleSoft 8 CRM Interaction Management
PeopleSoft 8 CRM Marketing
PeopleSoft 8 CRM Mobile Sales for WAP Phones
PeopleSoft 8 CRM Portal Pack
PeopleSoft 8 CRM Sales
PeopleSoft 8 CRM Sales Product Configurator
PeopleSoft 8 CRM Support for Customer Self-Service
PeopleSoft 8 CRM Support

Gigi Remington 7/22/02

**Certificate will be mailed in window envelope to this address:**

Name ▼
PEOPLESOFT, INC.
ATTN: GIGI REMINGTON

Number/Street/Apt ▼
4305 HACIENDA DRIVE, SUITE 120

City/State/ZIP ▼
PLEASANTON, CA 94588

[illegible]
- Complete all necessary spaces
- Sign your application

SEND ALL 3 ELEMENTS IN THE SAME PACKAGE
1. Application form
2. Nonrefundable fee in check or money order payable to *Register of Copyrights*
3. Deposit Material

[illegible]
Library of Congress, Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

**D**

Fees are effective through June 30, 2002. After that date, check the Copyright Office Website at www.loc.gov/copyright or call (202) 707-3000 for current fee information.

November 1999—30,000
WEB REV. June 1999
PRINTED ON RECYCLED PAPER
U.S.GOVERNMENT PRINTING OFFICE: 2000-461-113/78

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California
County of ALAMEDA } ss.

On 7/22/02 (Date), before me, CONSTANCE F. McTAGGART (Name and Title of Officer (e.g., "Jane Doe, Notary Public")),

personally appeared GIGI REMINGTON (Name(s) of Signer(s)),

☐ personally known to me
☐ proved to me on the basis of satisfactory evidence

to be the person~~(s)~~ whose name~~(s)~~ is/are subscribed to the within instrument and acknowledged to me that ~~he~~/she/~~they~~ executed the same in ~~his~~/her/~~their~~ authorized capacity~~(ies)~~, and that by his/her/their signature~~(s)~~ on the instrument the person~~(s)~~, or the entity upon behalf of which the person(s) acted, executed the instrument.

CONSTANCE F MC TAGGART
COMMISSION 1250488
NOTARY PUBLIC-CALIFORNIA
ALAMEDA COUNTY
MY Commission exp. Jan. 18, 2004

Place Notary Seal Above

WITNESS my hand and official seal.

Constance F. McTaggart
Signature of Notary Public

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: CONTINUATION SHEET FOR APPLICATION FORMS TX-5-456-777

Document Date: 9/27/01 - EFFECT. DATE Number of Pages: 1 DBL-SIDED

Signer(s) Other Than Named Above: ______

**Capacity(ies) Claimed by Signer**

Signer's Name: ______

☐ Individual
☐ Corporate Officer — Title(s): ______
☐ Partner — ☐ Limited ☐ General
☒ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: ______

Signer Is Representing: PEOPLESOFT, INC.

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org Prod. No. 5907 Reorder: Call Toll-Free 1-800-876-6827

# EXHIBIT M

Knowledge Mosaic®

# PEOPLESOFT INC

## FORM 10-K
(Annual Report)

Filed 03/25/02 for the Period Ending 12/31/01

| | |
|---|---|
| Address | 4460 HACIENDA DRIVE<br>PLEASANTON, CA 94588-8618 |
| Telephone | 925-225-3000 |
| CIK | 0000875570 |
| SIC Code | 7372 - Prepackaged Software |
| Industry | Software & Programming |
| Sector | Technology |
| Fiscal Year | 12/31 |

Powered By EDGAR Online
http://www.edgar-online.com
© Copyright 2008, EDGAR Online, Inc. All Rights Reserved.
Distribution and use of this document restricted under EDGAR Online, Inc. Terms of Use.

## PART I

### Item 1. *Business*

*This Business section and other parts of this Form 10-K contain forward-looking statements that involve risks and uncertainties. Our actual results may differ significantly from the results discussed in the forward-looking statements. Factors that might cause such a difference include, but are not limited to, those discussed below and in "Management's Discussion and Analysis of Financial Condition and Results of Operations." Forward-looking statements contained throughout this Annual Report include, but are not limited to, those identified with a footnote (1) symbol.*

### General

PeopleSoft, Inc. designs, develops, markets and supports a family of enterprise application software products for use throughout large and medium sized organizations. These organizations include corporations, higher education institutions and federal, state, provincial and local government agencies worldwide. We provide enterprise application software for customer relationship management, human resources management, financial management and supply chain management, along with a range of industry-specific products. Within each of our application suites we offer world class embedded analytics and portal applications. Our applications offer a high degree of flexibility, rapid implementation and scalability across multiple databases and operating systems. In addition to enterprise application software, we offer a variety of services to our customers including implementation assistance, project planning, on-line analytic processing deployment, software product enhancements, product support and training.

Our strategy is to offer comprehensive applications that enable organizations to manage, analyze and enhance their relationships with customers, employees and suppliers. PeopleSoft enterprise software applications manage mission critical business processes, including specific applications for customers, employees and suppliers.

Incorporated in Delaware in 1987, we shipped our first software product, a human resources management system, in December 1988. In 1992, we introduced the first of a series of financial management software products, and, in 1994, we introduced the first of a series of supply chain management products. Since that time, we have introduced several additions to our existing product lines, plus industry specific software products. These industry specific applications include manufacturing products, public sector financial management products, public sector human resources management products, student administration solutions products for the higher education market and human resources and financial management products for the U.S. federal government market.

We began shipping our first internet based enterprise applications, PeopleSoft 8 ™, in September 2000, marking our largest technological advance in enterprise software in more than a decade. PeopleSoft 8 includes pure internet collaborative applications that enable organizations to create a real-time, collaborative network of customers, employees and suppliers. PeopleSoft 8 applications can be accessed anytime and from anywhere with a standard internet browser because they do not require software to be installed on the user's personal computer. In December 1999, we acquired The Vantive Corporation ("Vantive"), a supplier of customer relationship management applications. We have built upon the Vantive products and in June 2001, began shipping a solution called PeopleSoft Customer Relationship Management ("PeopleSoft 8 CRM"), a comprehensive suite that integrates with other PeopleSoft applications.

### Software Product Architecture

We believe that our product architecture provides the system performance required for intensive record keeping and high volume on-line transaction processing. Our applications are designed for ease of use and are compatible with personal productivity applications such as word processors and spreadsheets. Our software products are designed specifically for use with relational database management systems, or RDBMSs, which offer power and functionality superior to flat files, hierarchical or other non-relational databases that are generally used with legacy software applications. Our software products are also scaleable, permitting changes in network size, server platforms and other architectural components with minimal disruption. Further, our software products are available across major RDBMS software and server hardware platforms. We believe



ORCL00058423

## SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the Registrant has duly caused this Report to be signed on its behalf by the undersigned, thereunto duly authorized.

PEOPLESOFT, INC.

By: /s/ KEVIN T. PARKER

Kevin T. Parker
*Executive Vice President, Finance and Administration, Chief Financial Officer (Principal Financial and Accounting Officer)*

Dated: March 20, 2002

## POWER OF ATTORNEY

KNOW ALL PERSONS BY THESE PRESENTS, that each person whose signature appears below constitutes and appoints jointly and severally, Craig Conway and Kevin Parker, and each one of them, his attorneys-in-fact, each with the power of substitution, for him in any and all capacities, to sign any and all amendments to this Annual Report (Form 10-K) and to file the same, with exhibits thereto and other documents in connection therewith, with the Securities and Exchange Commission, hereby ratifying and confirming all that each said attorneys-in-fact, or his substitute or substitutes, may do or cause to be done by virtue hereof.

Pursuant to the requirements of the Securities Exchange Act of 1934, this Report has been signed below by the following persons on behalf of the Registrant and in the capacities and on the dates indicated.

| Signature | Title | Date |
|---|---|---|
| /s/ DAVID A. DUFFIELD<br>David A. Duffield | Chairman of the Board of Directors | March 20, 2002 |
| /s/ ANEEL BHUSRI<br>Aneel Bhusri | Vice Chairman of the Board of Directors | March 20, 2002 |
| /s/ CRAIG A. CONWAY<br>Craig A. Conway | President, Chief Executive Officer and Director (Principal Executive Officer and Director) | March 20, 2002 |
| /s/ KEVIN T. PARKER<br>Kevin T. Parker | Executive Vice President, Finance and Administration, Chief Financial Officer (Principal Financial and Accounting Officer) | March 20, 2002 |
| /s/ A. GEORGE BATTLE<br>A. George Battle | Director | March 20, 2002 |
| /s/ FRANK J. FANZILLI, JR.<br>Frank J. Fanzilli, Jr. | Director | March 20, 2002 |
| /s/ STEVEN D. GOLDBY<br>Steven D. Goldby | Director | March 20, 2002 |
| /s/ CYRIL J. YANSOUNI<br>Cyril J. Yansouni | Director | March 20, 2002 |



ORCL00058472

**Exhibit 99.1**

PeopleSoft, Inc.
4460 Hacienda Drive
Pleasanton, California 94588

March 20, 2002

Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, D.C. 20549

Re: Report of Independent Public Accountants by Arthur Andersen

Ladies and Gentlemen:

In connection with the delivery of the Report of Independent Public Accountants relating to the audit of the consolidated balance sheets of PeopleSoft, Inc. (a Delaware corporation) and subsidiaries as of December 31, 2001 and 2000, and the related consolidated statements of operations, stockholders' equity and cash flows for the years then ended by Arthur Andersen LLP ("Arthur Andersen") which has been included by PeopleSoft in its annual report on Form 10-K for the fiscal year ended December 31, 2001, Arthur Andersen has represented to PeopleSoft that the audit was subject to Arthur Andersen's quality control system for the U.S. accounting and auditing practice to provide reasonable assurance that the engagement was conducted in compliance with professional standards, that there was appropriate continuity of Arthur Andersen personnel working on the audit, availability of national office consultation, and availability of personnel at foreign affiliates of Arthur Andersen to conduct the relevant portions of the audit.

Very truly yours,

**PeopleSoft, Inc.**

*By: /s/ KEVIN T. PARKER*
*-------------------*
*Kevin T. Parker*
*Executive Vice President and Chief Financial Officer*

---

**End of Filing**

Powered By EDGAR Online

**© 2005 | EDGAR Online, Inc.**

# EXHIBIT N

PeopleSoft. | Sun microsystems

# PeopleSoft Customer1 Implementation

GAINING THE SAME BENEFITS AS OUR CUSTOMERS:
PEOPLESOFT DEPLOYS PEOPLESOFT 8 CRM ON SUN
IN LESS THAN 100 DAYS

PeopleSoft 8 CRM represents the culmination of PeopleSoft's efforts to rearchitect and rewrite the Vantive CRM application to take full advantage of Internet-based technology and introduce many other benefits. PeopleSoft used the Vantive solution before the acquisition of Vantive Corporation in 1999 and continued to use it until the company became its own first customer for PeopleSoft 8 CRM. With Customer1, PeopleSoft demonstrated the value of the solution to other organizations in search of better customer relationship management, and also paved the way for them to achieve similar successes. Other companies can use Customer1 as a model for their own implementations, and can learn from the project team's experiences about best practices in CRM implementation. They can also consider using the same hardware-software stack with confidence that its components, such as the IBM DB2 database, have been demonstrated to integrate with one another synergistically and that PeopleSoft and Sun are well prepared to assist with integration issues.

Customer1 is being implemented in phases beginning with the Sales & Marketing module that is already in production. Phase two will extend the system's applicability into Support—providing PeopleSoft 8 CRM's benefits to PeopleSoft's call center and to customers themselves, who will have portal access to their own cases. Phase three will integrate back office Financials applications into the CRM system, providing a complete 360° view of the customer.

Enterprise Collaboration is a key PeopleSoft guiding principle. To achieve this mission, PeopleSoft's motto is "one customer, one PeopleSoft, one application—all built on a solid data integrity model." Through Customer1, PeopleSoft demonstrated its commitment to this motto and proved its benefits.

The purpose of this white paper is to present the Customer1 Project's most important elements so readers can make more informed decisions about embarking on similar projects of their own. The analysis presents the scope of the undertaking and the benefits that were achieved, and gives the reader a head start on learning from the PeopleSoft-Sun experience. Both PeopleSoft and Sun are pleased to provide substantially more detail on their strategies and tactics for PeopleSoft 8 CRM on Sun success. They are also available to provide consulting assistance to customers in search of the many benefits that are already accruing to PeopleSoft itself.

## Background

PeopleSoft provides pure Internet, collaborative, enterprise software that enables organizations to reduce costs and increase productivity through collaboration with their customers, suppliers, and employees. PeopleSoft's integrated applications include Customer Relationship Management, Enterprise Service Automation, Supply Chain Management, Human Capital Management, Financial Management, and Enterprise Performance Management. More than 4,700 organizations in 107 countries run their day-to-day operations on PeopleSoft enterprise software.

With such a large and geographically dispersed client base, PeopleSoft has long regarded customer relationship management as an essential technology for maintaining high levels of customer satisfaction and for keeping its own personnel efficient. For many years PeopleSoft relied on Vantive CRM to satisfy those needs, and they developed strong interfaces between Vantive CRM and PeopleSoft's

**PeopleSoft, Inc.**
**Corporate Headquarters**
4460 Hacienda Drive
Pleasanton, California 94588 USA
Phone: +1-888-773-8277 or +1-925-694-3000
Internet: www.peoplesoft.com

**Sun Microsystems, Inc.**
**Corporate Headquarters**
901 San Antonio Road
Palo Alto, California 94303-4900 USA
Phone: +1-800-555-9SUN or +1-650-960-1300
Internet: www.sun.com

Copyright © 2002 PeopleSoft, Inc. PeopleSoft, the PeopleSoft logo, PeopleTools, PS/nVision, PeopleCode, PeopleBooks, PeopleTalk, and Vantive are registered trademarks, and "People power the internet." and Pure Internet Architecture are trademarks of PeopleSoft, Inc. All other company and product names may be trademarks of their respective owners. The information contained herein is subject to change without notice. All rights reserved. Published 2002. Printed in the USA.

Restricted Rights. The information contained in this document is proprietary and confidential to PeopleSoft, Inc.

No part of this document may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopying and recording, for any purpose without the express written permission of PeopleSoft, Inc.

This document is subject to change without notice, and PeopleSoft does not warrant that the material contained in this document is error-free. If you find any problems with this document, please report them to PeopleSoft in writing.

This document contains or may contain statements of future direction concerning possible functionality for PeopleSoft's software products and technology. All functionality and software products will be available for license and shipment from PeopleSoft only if and when generally commercially available. PeopleSoft disclaims any express or implied commitment to deliver functionality or software unless or until actual shipment of the functionality or software occurs. The statements of possible future direction are for information purposes only and PeopleSoft makes no express or implied commitments or representations concerning the timing and content of any future functionality or releases.

9/27/2002

Copyright © 2002 Sun Microsystems, Inc. Sun, Sun Microsystems, the Sun Logo, Java, Solaris, Sun Fire, SunSpectrum Platinum, Sun Enterprise, and Ultra are trademarks or registered trademarks of Sun Microsystems, Inc. in the United States and other countries. All SPARC trademarks are used under license and are trademarks or registered trademarks of SPARC International, Inc. in the United States and other countries. Products bearing SPARC trademarks are based upon an architecture developed by Sun Microsystems, Inc. The OPEN LOOK and Sun Graphical User Interface was developed by Sun Microsystems, Inc. for its users and licensees. Sun acknowledges the pioneering efforts of Xerox in researching and developing the concept of visual or graphical user interfaces for the computer industry. Sun holds a non-exclusive license from Xerox to the Xerox Graphical User Interface, which license also covers Sun's licensees who implement OPEN LOOK GUIs and otherwise comply with Sun's written license agreements.

This product or document is protected by copyright and distributed under licenses restricting its use, copying, distribution, and decompilation. No part of this product or document may be reproduced in any form by any means without prior written authorization of Sun and its licensors, if any. Third-party software, including font technology, is copyrighted and licensed from Sun suppliers.

Parts of the product may be derived from Berkeley BSD systems, licensed from the University of California. UNIX is a registered trademark in the U.S. and other countries, exclusively licensed through X/Open Company, Ltd.

RESTRICTED RIGHTS: Use, duplication, or disclosure by the U.S. Government is subject to restrictions of FAR 52.227-14(g)(2)(6/87) and FAR 52.227-19(6/87), or DFAR 252.227-7015(b)(6/95) and DFAR 227.7202-3(a).

DOCUMENTATION IS PROVIDED "AS IS" AND ALL EXPRESS OR IMPLIED CONDITIONS, REPRESENTATIONS AND WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT, ARE DISCLAIMED, EXCEPT TO THE EXTENT THAT SUCH DISCLAIMERS ARE HELD TO BE LEGALLY INVALID.

LFC9.0 Printed in USA 10/02 FE1736-0/3K

# EXHIBIT O

Published on *Infoworld* (http://www.infoworld.com)



# PeopleSoft preps new supply chain software

By Joris Evers
Created *19 Mar 2003 - 12:15pm*

PeopleSoft plans to launch new supply chain planning software in May in a renewed effort to win market share from rivals including Oracle and J.D. Edwards, an analyst briefed by PeopleSoft wrote in a report released Monday.




PeopleSoft has struggled in the supply chain area, as the company failed when it tried to integrate technology it acquired with its purchase of supply chain specialist Red Pepper in 1996, Patrick Walravens, managing director and senior analyst at San Francisco investment bank JMP Securities wrote.

However, PeopleSoft now apparently has rewritten Red Pepper's products using its own application development tools, he wrote. The revamped supply chain planning software will be launched in early May at PeopleSoft's Leadership Summit in Las Vegas, Walravens wrote.

The new software will have special features for companies that outsource manufacturing tasks. It will also offer extensive analytic capabilities that link with PeopleSoft's Enterprise Warehouse business intelligence application, according to Walravens, who said in his report that he met with PeopleSoft executives last Friday.

Supply chain planning is a "significant potential growth area" for PeopleSoft, since the vendor has very little presence in the area today. PeopleSoft has set itself a goal to become the world's number two SCM (supply chain management), behind SAP, Walravens wrote. Supply chain planning is a segment of SCM.

To help achieve its growth goals, PeopleSoft plans to increase its sales team by 150 people this year. Over half the additions will be in the U.S., according to Walravens.

SCM software is meant to help enterprises run their supply chain more efficiently with the goal of reducing inventory and cost. The two main types of SCM software are planning

applications and execution applications. Planning applications help determine the best way to place an order, while execution applications track the flow of goods, manage related materials and equipment, and handle financial information of the transactions.

Representatives of Pleasanton, Calif.-based PeopleSoft didn't immediately return calls seeking comment.

Applications Developer World Application development Applications Architecture Business Customer relationship management Data management Deployment and management E-commerce Enterprise application integration ERP (enterprise resource planning) Middleware Networking SOA (service-oriented architecture)

---

**Source URL (retrieved on *14 Apr 2009 - 7:20pm*):** http://www.infoworld.com/d/applications/peoplesoft-preps-new-supply-chain-software-668

# EXHIBIT P




« Back | Print

# Two years to number two

## PeopleSoft wants a bigger share of the supply chain software market

### By Malcolm Wheatley, contributing editor -- MSI, 5/1/2003

PeopleSoft, the Pleasanton, Calif.-based company that is widely recognized as the number one supplier of human resources applications, has decided to get serious about selling supply chain management software. So serious, in fact, that PeopleSoft CEO Craig Conway has hired an executive from Dallas-based i2 Technologies—a best-of-breed supply chain management software vendor—and given him a two-year deadline to catapult PeopleSoft to the number two position in that market.

Currently, SAP AG, Walldorf, Germany, is supply chain market leader, with a 26-percent share, according to Boston-based analyst firm AMR Research. PeopleSoft is fifth in the AMR rankings, with a 7-percent market share, just behind Oracle, Redwood Shores, Calif., and i2, which command 10 percent and 9 percent of the market, respectively.

The second most popular choice for supply chain software—taken by 23 percent of companies—is homegrown custom systems. But that is likely to change as manufacturers continue to look for ways to cut technology costs.

PeopleSoft already counted supply chain management as its fastest-growing business unit in fiscal 2002, but most of that growth came from sales of its supplier relationship management applications, rather than from core manufacturing and supply chain planning products.

Patrick D. Quirk is the new vice president and general manager of PeopleSoft's supply chain management division. Six months into his new job, Quirk believes he knows what it will take to make PeopleSoft the number two supply chain software vendor. The biggest task, he says, will be changing the perception that PeopleSoft is adept at developing world-class human resources and financial applications, but lacks that same level of expertise on the manufacturing and supply chain side of the house.

That problem became clear when Quirk contracted with AMR Research to do "a month-long deep dive" into PeopleSoft's supply chain business. "The bottom line is that PeopleSoft hasn't been taken seriously as a supplier of manufacturing-specific enterprise software," says Jim Shepherd, senior vice president at AMR.

That had to be disheartening for a company that has been competing in the manufacturing software space for at least seven years. But Quirk says PeopleSoft simply has expended more energy on the promotion of its human resources applications. He also says he is doubling his budget for supply chain-specific marketing, and changing the way salespeople are paid, so as to make selling supply chain software a priority.

"Manufacturing software has a year-long sales cycle, while human resource software has a three-month to six-month cycle," explains Quirk. "If you're a salesperson with a target to hit, where are you going to focus your energies?"

AMR's Shepherd says Quirk's focus on a revised sales and marketing approach is wise, because PeopleSoft actually has good supply chain software; it's just that most of the market is not familiar with its offerings in this

space.

"The hardest thing to do is fix a product," Shepherd says, "and PeopleSoft doesn't really have to do that. It has a good technology story, a good brand, and a large customer base. Let's face it: in today's world, if all you've got to fix is your sales and marketing—and you have the money to do it—then you're in pretty good shape."

PeopleSoft, as one of the few software vendors that is turning a profit in these tough economic times, is in shape to fix its marketing problems. But Quirk says the company will continue improving its supply chain products.

Quirk adds that a June release of the entire enterprise software suite—PeopleSoft 8.8—incorporates better supply chain planning capability, and links it to other aspects of the suite, such as its business planning and budgeting capabilities. "In other words, there will be a better linkage between the planning systems and the transactional system," he says.

As Quirk quickly concedes, some supply chain management capabilities were purchased years back, when PeopleSoft acquired Red Pepper and Distinction—moves that got PeopleSoft into the space in the first place. Only now has PeopleSoft got around to more fully incorporating this functionality into the mainstream release, instead of just offering it to customers as a "bolt-on." Better late than never, though: the code has now been rewritten in People Tools, says Quirk, and hard-wired into the PeopleSoft enterprise data warehouse.

Indeed, the whole Red Pepper and Distinction experience offers insight to PeopleSoft's future: still more acquisitions. If a manufacturing or supply chain software vendor is up for sale, Quirk happily confirms that he's in a position to go to Conway for the green light. Even better, PeopleSoft professes to have learned its lesson regarding how to absorb the companies it purchases. "We've learned a lot about acquisitions," concedes Quirk, pointing to the purchase of catalog management company Cohera last December as the difference between now and the Red Pepper days. "Red Pepper was kept as a separate business unit, with the people in a separate location—we don't do that now," he says.

The omens, then, are good. With a beefed-up sales and marketing strategy, an upgraded product, and the chance of an acquisition or two, PeopleSoft lacks just one thing: customers with open wallets. But here, too, Quirk is sanguine, pointing out that 80 percent of the company's manufacturing customers are mid-market. "And according to AMR, 25 percent of companies in the mid-market currently are evaluating ERP offerings, having held back in the run up to Y2K," he says. "Right now, our mid-market pipeline is very strong."

« Back | Print

© 2009, Reed Business Information, a division of Reed Elsevier Inc. All Rights Reserved.

Advertisement

# EXHIBIT Q

BINGHAM

John A. Polito
Direct Phone: 415.393.2314
Direct Fax: 415.393.2286
john.polito@bingham.com

November 18, 2008

**Via Email** (jfroyd@jonesday.com)

Jane L. Froyd, Esq.
Jones Day
1755 Embarcadero Road
Palo Alto, CA 94303

**Re: Oracle USA, Inc., et al. v. SAP AG, et al.**

Dear Ms. Froyd:

We are in receipt of your letter dated October 27, 2008. OIC disagrees with Defendants' characterization of Mr. Adler's preparedness, does not intend to make available further witnesses with regards to Topics 2-4 of Defendants' June 10, 2008 Notice of Deposition (the "30(b)(6) Notice"), and declines to credit back half of Mr. Adler's record time. OIC stands by its objections and instructions on grounds of attorney-client privilege and work-product protection. OIC will not produce written communications subject to these privileges and protections. Finally, your de-designation requests are addressed below.

A. Instructions on grounds of attorney-client privilege and work-product protection during Mr. Adler's 30(b)(6) deposition were proper.

Mr. Adler is an in-house attorney at Oracle who investigates the basis for and helps prepare and prosecute copyright registrations. His investigations in preparation for registering a copyrighted work are generally protected by both work product doctrine and attorney-client privilege.

Defendants suggest that these protections and privileges have somehow been waived because "communications and documents relating to preparing a copyright application are not protected . . . ." Froyd Letter to Howard & Polito, at 9. That is incorrect.

Designation of an attorney as an expert witness may effect a waiver of privileges and protections, as discussed in Vaughan Furniture Co. v. Featureline Manuf., Inc., 156 F.R.D. 123, 128 (M.D.N.C. 1994). However, Mr. Adler was not designated as an expert witness, so Vaughan is inapposite.

Defendants also cite Sadowski v. Gundmundsson, 206 F.R.D. 25 (D.D.C. 2002). The attorney seeking to quash a deposition subpoena in that case began representing the plaintiff in a copyright infringement matter one month ***after*** the relevant copyright registration had been filed. See 206 F.R.D. at 26. He was unsuccessful in asserting that work-product protection should apply to a conversation between plaintiff, plaintiff's attorney and an employee of the Copyright Office. See id. at 26, 27. These facts differ

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T 415.393.2000
F 415.393.2286
bingham.com

from the matter at hand: Mr. Adler communicated in his capacity as counsel with his clients as part of his confidential work product investigation and analysis relevant to determining copyrightability and application strategy.

Finally, Defendants do not explain, and Oracle does not intuit, how cases rejecting disqualification motions predicated on attorneys hypothetically being forced to testify at trial apply to counsel's instructions to Mr. Adler on grounds of privilege and protection. See Nadel & Sons Toy Corp. v. William Shaland Corp., 657 F. Supp. 133, 136 (S.D.N.Y. 1987) (denying disqualification motion grounded on hypothetical obligation to testify); Original Appalachian Artworks, Inc. v. May Dep't Stores Co., 640 F. Supp. 751, 756-67 (N.D. Ill. 1986) (same). Mr. Adler has already testified, so these cases would seem to have no bearing on his deposition.

Oracle vigilantly defended Mr. Adler from Defendants' repeated attempts to invade work product protection and attorney-client privilege. No waiver occurred during the deposition, and Defendants do not suggest that it did. Defendants' novel theory of waiver by registration is unsupported by the law they cite.

**B.** Mr. Adler was sufficiently prepared as a Rule 30(b)(6) witness.

Oracle agrees that OIC had an affirmative duty to "review all matters known or *reasonably available* to the organization, whether from documents, past employees, or other sources." Froyd Letter to Howard & Polito, at 4 (citation and internal punctuation omitted; emphasis supplied). OIC has discharged this duty. While Defendants may be disappointed that OIC could not unearth some information sought in Topics 2-4 of the 30(b)(6) Notice after reasonable investigation, that disappointment does not amount to a violation of Rule 30(b)(6).

Mr. Adler prepared for his 30(b)(6) deposition for several weeks. Adler Depo. at 29:22-30:6. He reviewed numerous copyright registrations as well as all inter-entity agreements relating to ownership that had been produced. Id. at 23:14-27:16. He spoke to current and former Oracle personnel, former personnel from acquired companies, and former outside counsel to acquired companies. Id. at 14:11-22:1.

1. Mr. Adler was sufficiently prepared as to Topic 2, given Oracle's responses and objections.

Defendants had fair warning that testimony of any corporate designee in response to Topic 2 would be limited to the extent that the information sought either did not exist or was not within Oracle's possession, custody or control. In its response to Topic 2, Oracle objected "on the grounds that [Topic 2] seeks information on historical policies and procedures for companies that were acquired long ago, and therefore seeks information that is not within the possession, custody or control of Oracle, or that does not exist." Oracle's response to Topic 2 incorporated Oracle's general objections, which similarly objected to the extent that deposition topics sought "information that either does not exist or is beyond Oracle's possession, custody, or control on the grounds that such topics are overly broad, unduly burdensome and oppressive."

Despite a diligent and ongoing search, Oracle has not yet located any written policies or procedures regarding copyright registration for either J.D. Edwards or PeopleSoft. Mr. Adler's ability to answer questions regarding Topic 2 based on his preparation for deposition was derived from conversations with persons not employed by Oracle, as Mr. Adler acknowledged during his deposition. The limits of those persons' knowledge are the limits as to what information was reasonably available to Mr. Adler for his deposition. Mr. Adler relayed this information to the best of his ability. Under these facts, Rule 30 requires nothing more.

a. J.D. Edwards

Defendants complain about Mr. Adler's preparation regarding legacy J.D. Edwards policies and procedures for registering copyrights. Despite diligent preparation, Mr. Adler was unable to obtain for his deposition information from someone with knowledge of J.D. Edwards' relevant policies and procedures, if such policies and procedures even existed. Cf. Adler Depo. 15:9-24, 137:13-21. The works at issue in this case registered by J.D. Edwards were registered in 1995, 13 years before Mr. Adler's deposition, eight years before PeopleSoft's acquisition of J.D. Edwards and ten years before Oracle's acquisition of PeopleSoft. Given the amount of time that has elapsed, it is not surprising that this is an area where, as Oracle foretold, knowledge of specific policies and procedures proved impossible to obtain.

Criticizing Mr. Adler for acknowledging no knowledge of J.D. Edwards' policies and procedures for registering copyrights despite his diligent investigation is inappropriate and at odds with positions Defendants have taken regarding their own 30(b)(6) designees. For instance, Mr. Shenkman was designated as the corporate witness regarding the acquisition of TomorrowNow by SAP. Defendants have taken the position that Mr. Shenkman's ability to "provide general information about the subject matter" of one of only two in-person meetings between SAP and TomorrowNow prior to approval of the acquisition business case by SAP's Executive Board evinced sufficient preparation. See McDonell Letter to Polito (July 29, 2008), at 3. That meeting was less than four years before Mr. Shenkman's 30(b)(6) deposition; Mr. Shenkman was a participant in that meeting, wrote the acquisition business case based on that meeting, and reviewed the business case prior to being deposed. Mr. Shenkman was unable to reply with specificity to any number of questions about both the meeting and documents that arose from that meeting. See generally Polito Letter to McDonell & Wallace (June 23, 2008), at 2-3. Nonetheless, Defendants have taken the position that Mr. Shenkman was adequately prepared to testify as to the acquisition.

By comparison, Mr. Adler provided answers to questions about Exhibits 124 and 125, which were form agreements that included work-for-hire and assignment provisions. See Adler Depo 168:22-172:29. These were the sole exhibits relating to J.D. Edwards's registration policies and procedures (as opposed to copyright registrations) presented to Mr. Adler by Defendants. Mr. Adler's diligent efforts to determine whether J.D. Edwards had policies and procedures regarding registration of copyrights, and to learn the intricacies of their contents, may not have been as successful as Defendants would

123:8-131:15, 133:23-136:1, 138:20-141:14, 141:15-142:25, 143:24-145:2, 179:23-180:19 and 181:9-184:12 at this time.

Where testimony explores both Oracle's current operating procedures and the procedures of acquired companies in such a way that separate confidentiality designations are impossible, Oracle believes it appropriate to maintain a higher level of confidentiality. Therefore, Oracle declines to change the designation of Adler Depo. 176:6-25 at this time.

**3.** Changes in designation

Oracle agrees to de-designate Adler Depo. 61:19-63:3, 146:17-25 and 152:2-25 to Confidential.

Oracle agrees to de-designate Exhibits 120, 122, and 123 so as to have no designation, as these documents were publicly filed with the court.

As Exhibit 117 includes documents publicly filed with the court, Oracle agrees to de-designate the following pages of Exhibit 117 so as to have no designation: ORCL00182315-ORCL00182332, ORCL00182515-ORCL00182517, ORCL00182510-ORCL00182513, ORCL00043749-ORCL00043752, ORCL00043702-ORCL00043707, ORCL00043708-ORCL00043713 and ORCL00182293-ORCL00182301.[1]

Sincerely yours,

John A. Polito

cc: Robert A. Mittelstaedt, Esq.
Jason McDonell, Esq.
Tharan Gregory Lanier, Esq.
Scott W. Cowan, Esq.
Joshua L. Fuchs, Esq.
Elaine Wallace, Esq.

[1] Defendants are incorrect in asserting that Exhibit 117 contains ORCL00182302. Cf. Froyd letter to Polito at 4. ORCL00182514 was publicly filed with the court, but does not appear in Exhibit 117.

# EXHIBIT R

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE: MAGISTRATE JUDGE ELIZABETH D. LAPORTE

--oOo--

| | |
|---|---|
| ORACLE CORPORATION, a Delaware Corporation; ORACLE, USA, INC., a Colorado corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation, | Case No. C07-1658 (PJH) |
| Plaintiffs, | |
| vs. | FURTHER DISCOVERY CONFERENCE |
| SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation; TOMORROWNOW, INC., a Texas corporation; and DOES 1-50, Inclusive, | |
| Defendants. | March 31, 2009 |

CERTIFIED COPY

TRANSCRIPT OF
AUDIO RECORDING OF DISCOVERY PROCEEDINGS
(Confidential pages, 7 through 21, under separate seal)

Transcribed By: Rita R. Lerner, CSR #3179 (2001-418431)

first. Those are five people, either 5-15 or maybe 5-21.

MR. HOWARD: And to the extent that they actually do serve a notice, we can work with them and get them as -- as the parties have been doing all along, the documents 21 days out. So you've got five on 5-15 or 5-21. We can work with them on that. I don't think that's quite much of an issue.

THE COURT: I don't understand that, really. I mean the discovery cutoff is June 19th, so there's got to be -- we have to have one person at a time on this issue.

MR. HOWARD: Okay. I think, your Honor, we can agree to 5-21 in there for those five custodians.

THE COURT: Okay. Is that a weekday? Is 5-21 a weekday?

MS. WALLACE: It's a weekday, your Honor.

THE COURT: So, 5-21, okay, for those five. So that takes care of that issue, I think?

MS. WALLACE: Yes.

THE COURT: The next issue would be what?

MS. WALLACE: The next issue is the same as the (inaudible) -- archived e-mail.

THE COURT: Right.

MS. WALLACE: And software and software license

activation code, and we are still meeting and conferring with Oracle on that.

The issue there is that we -- we asked for it early on in the case, and Judge Light ordered, and Oracle in fact agreed, to produce copies of all software that Oracle alleges has been infringed.

THE COURT: Which is kind of a no-brainer.

MS. WALLACE: Yes.

THE COURT: Yeah.

MS. WALLACE: We don't believe it has all been produced, but we have had problems determining that in part because we don't have the software license activation code. And we've also had trouble matching up, literally, the labels on the CDs that were produced with the copyright registration.

So what we have asked Oracle to do is identify exactly what they've produced in terms of software and tell us where it is in production. And then, also, to the extent that they haven't produced software that they allege has been infringed, to produce copies of that, too. And, then, we have said that we need the software license activation codes, because without those, the software is basically useless.

THE COURT: I take it that's like the key for turning it on, essentially?

CERTIFICATE

I, RITA R. LERNER, Certified Shorthand Reporter, in and for the State of California, do hereby certify:

That the foregoing transcript constitutes a true, full and correct transcript of an audio tape-recording of the proceedings herein and reduced to typewriting under my supervision and control to the best of my ability.

Rita R. Lerner

Rita R. Lerner, CSR No. 3179

Date: April 3rd, 2009