BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice)*
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesoday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE USA, INC., *et al.*,

Plaintiffs,

v.

SAP AG, *et al.*,

Defendants.

Case No. 07-CV-1658 PJH (EDL)

**JOINT DISCOVERY CONFERENCE STATEMENT**

Date: May 26, 2009
Time: 2:00 p.m.
Courtroom: E, 15th Floor
Judge: Hon. Elizabeth D. Laporte



Dockets.Justia.com

Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited (collectively, "Oracle") and Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. (collectively, "Defendants," and with Oracle, the "Parties") submit this Joint Discovery Conference Statement. The Parties jointly request that the Court schedule ninety minutes on May 26, 2009 for this conference.

## I. Joint Administrative Motion to Modify Case Scheduling Order

Following several weeks of extensive negotiation, on May 12, 2009, the Parties jointly filed an administrative motion to modify the case scheduling order. In that motion, the Parties seek, among other things, an extension of the fact discovery cut-off to December 2009 and of the trial date to June 2010. On May 15, Judge Hamilton set a Case Management Conference for May 28. Until Judge Hamilton rules on the motion, of course, the Parties will continue to work under the current case schedule, which includes a June 19, 2009 fact discovery cut-off date.

## II. Scope of Deposition Hours Limit

*Oracle's Position*: Oracle provides this update and explanation to give this Court context for the Parties' other dispute relating to depositions, and because Oracle has been forced to take a noticed deposition off-calendar due to Defendants' position.

On May 12, half an hour after Oracle filed the Parties' joint administrative motion to modify the case scheduling order, Defendants informed Oracle that they believe that the current 350-hour deposition limit set by Judge Hamilton includes expert deposition time. (Defendants contend their timing was driven by Oracle's third-party deposition notices, but Oracle had served only three that week before Defendants notified Oracle regarding their position.)

Oracle believes this interpretation is without basis for several reasons. First, Judge Hamilton issued her May 5 2005 Case Management Order in the context of discussing only fact discovery proposals by the Parties. Second, under Defendants' interpretation, the Parties would have had to guess, all this time, how many of their 350 hours they would need to reserve for an unknown number of experts. (Expert disclosures are not due until June 1 – shortly before the June 19 fact discovery cut-off.) Third, expert discovery is not limited under the Federal Rules as is fact

discovery. Fourth, Defendants did not express their interpretation to the Court at any time during the Parties' discovery conferences with the Court. Fifth, during the lengthy negotiations leading up to the joint motion and stipulation, the Parties discussed the need for additional deposition hours in the context of fact witnesses only. *See, e.g.*, Joint Administrative Motion, Docket Item 304, at 6 ("Because the Parties now agree that the post-litigation activity through October 31, 2008 – which Judge Laporte has noted is highly relevant – should be included in this case, they also agree that some additional deposition time is needed relative to the Parties' claims and defenses for that time period. Further, regardless of whether they ultimately agree on an extrapolation methodology or stipulation regarding TomorrowNow's software fixes, as described above, the Parties agree that certain additional depositions of TomorrowNow's personnel should be allowed for several issues, including allowing Oracle to better understand the process by which TomorrowNow supported - and continued to support through October 31, 2008 - its PeopleSoft, JD Edwards, and Siebel customers, including SAP's decisions relevant to TomorrowNow's activities.").

Defendants' position has forced Oracle to take the long-scheduled fact deposition of SAP America's CEO off-calendar until Judge Hamilton decides the issue, and Oracle may need to take the same precautionary measures regarding other party depositions (including of SAP's executive chairman and critical TN technical witnesses) and hard-to-schedule third party customer discovery in the period before the current June 19, 2009 fact cut-off.

*Defendants' Position:* This is an issue that is for Judge Hamilton to decide and there is no decision required of this Court. Unlike other informational items contained elsewhere in this statement that may eventually require guidance or a ruling from this Court, this issue is solely the province of Judge Hamilton. Indeed, as of this writing, Oracle has already filed its administrative motion seeking a ruling from Judge Hamilton on this issue. Because, however, of Oracle's insistence on burdening this Court with its shrill argument (belying its insecurity) on this issue in this statement, Defendants provide the following context.

Defendants have not "forced" Oracle to take any depositions off-calendar. Rather, Oracle is making decisions how to use its remaining hours, including by serving eight new deposition notices

in the last week.

The Parties' discussions regarding the interpretation of the 350 hour limit was initiated by Defendants because Oracle's recent spate of deposition notices suggest that Oracle may be attempting to force an increase in deposition hours by exceeding the limit through fact discovery alone. Defendants' position was, and continues to be, the only reasonable construction of the order. The 350 hour deposition limit is an aggregate limit applying to the combined hours of fact and expert depositions. Judge Hamilton's May 5, 2008 Order does not distinguish fact and expert discovery with respect to deposition hours-a point made even more clear by the fact that other parts of the same order do make such a distinction and the limit on deposition hours appears in the order *after* setting limits on both non-expert and expert discovery:

… NON-EXPERT DISCOVERY CUTOFF: June 19, 2009.

DISCLOSURE OF EXPERTS (retained and non-retained) : June 1, 2009.

REBUTTAL: July 31, 2009.

EXPERT DISCOVERY CUTOFF: October 9, 2009.

DISCOVERY LIMITATIONS: Depositions: 350 hours each side. …

Further, although the Parties made competing proposals for the number of hours regarding "fact depositions" in the Parties' April 17, 2008 CMC statement (*e.g.*, Defendants proposed 250 hours for "fact depositions"), the Court did not accept either proposal. Instead, the Court's order addressed depositions generally and ordered a limit on the number of deposition hours without narrowing that limit solely to "fact depositions." Moreover, the minutes of the April 24, 2008 CMC plainly state "Each side will be allowed 350 hours for depositions." Defendants' interpretation is also consistent with the applicable rules, as there is no distinction between fact and expert depositions in either the text or the Advisory Committee Notes of Fed. R. Civ. P. 30.

**III. <u>Outstanding Deposition Requests</u>**

*Oracle's Position:* On May 11, Defendants served a Rule 30(b)(6) notice on Oracle USA, Inc., for deposition on May 29, 2009. The notice includes twelve separate topics, most with multiple sub-topics, and seeks testimony not only as to Oracle, but also as to PeopleSoft and JD

Edwards, back to 2002. The deposition notice is attached as Exhibit A. If all the Oracle witnesses were identified and prepared on these multiple topics, Oracle would expect at least twenty witnesses would be required – many of whom have already been deposed as individuals. On May 13, Defendants asked via email for deposition dates for nine individual Oracle witnesses, many of whom are high-level executives and/or reside out-of-state or abroad. Defendants are well aware about how difficult it is to schedule such individuals for deposition; indeed it took months to get a far smaller set of Defendant witnesses scheduled. They do not and cannot justify why they waited until a month before the discovery cut-off to first seek such vast deposition discovery from Oracle.

Even if the Parties weren't in the last month of fact discovery, Oracle would object that the Rule 30(b)(6) notice is overbroad. Moreover, that notice and the request for nine additional Oracle depositions have been requested too late to be accommodated in the time remaining before the fact discovery cut-off on June 19. Oracle has offered to produce three of the nine witnesses before the cut-off and has asked Defendants to substantially narrow their Rule 30(b)(6) notice. It will continue to meet and confer with Defendants, and will serve its formal objections to the Rule 30(b)(6) notice per the Federal Rules. However, Oracle believes that, absent significant curtailment of the notice, motion practice and Court intervention will be required.

*Defendants' Position:* Despite Oracle's representations above, Defendants recently requested only a total of an additional nine individual depositions and one additional Rule 30(b)(6) deposition. The timing of Defendants' requests for the depositions of these witnesses is the result of Oracle's delays in producing documents and other witnesses that have recently been reviewed and deposed. Defendants have sought witnesses and documents under the rules in a timely fashion after the need and relevance has become apparent. Moreover, Oracle's complaint regarding the timing of Defendants' request for additional depositions is inexplicable in light of the fact that during the past week Oracle has noticed eleven separate third party depositions in seven separate states throughout the country (which are in addition to eight party depositions that Oracle already has scheduled for the same time period). Defendants are working with Oracle and those third parties to schedule those depositions before the current close of discovery (*i.e.*, June 19th). And,

likewise, Defendants expect Oracle to work with Defendants to schedule the depositions of the nine individual witnesses as well as the requested additional 30(b)(6) deposition before the end of the current discovery period

Both sides in this dispute and the large multi-office law firms that represent them have sufficient resources to complete all of the requested depositions in the time allotted. The parties have managed to double track other depositions in this case without any complaint or problem. There is no basis whatsoever (under the rules or otherwise) for Oracle to move forward with all eleven of its recently noticed depositions and at the same time impose the unilateral discovery limitation that Defendants must pick three of the nine individual witness depositions that Defendants requested over a month before the end of the current discovery period.

## IV. Third-Party Deposition Scheduling

*Oracle's Position*: As if it were not enough that Defendants are demanding so many last-minute Oracle depositions, they are also interfering with Oracle's attempts to complete third-party depositions before the June 19 fact discovery cut-off. Oracle has been working diligently with various former TomorrowNow customers to schedule short depositions before June 19. As the Court is aware, finding time on third-party entities' schedules for depositions is always difficult, and so Oracle has told these customers that its questions will take no more than 2 hours of their time. Now these dates and times are in jeopardy, because, once noticed, Defendants have been contacting these customers and telling them that *they* will need more time than Oracle and/or that the selected dates or times do not work for Defendants' counsel. For example, the deposition of Pepsi America was scheduled for Friday, May 22; Pepsi had made themselves available from 8 am to 2 pm, and Oracle had indicated it expected to take no more than two hours of testimony. Nonetheless, Defendants insisted to Pepsi that the reserved time would be insufficient for Defendants' needs, and demanded that the deposition not go forward absent a full day of customer availability. They have sent similar emails to other noticed customers. Of course, Defendants are free to subpoena these customers themselves, but they appear to prefer to derail Oracle's already-scheduled depositions.

Defendants' interference is preventing Oracle from scheduling these important depositions in the limited time remaining. Many customers cannot make themselves available for a full day but are willing to be deposed for the little time Oracle has requested of them. Defendants' new insistence that Oracle's remaining deposition hours are not limited to fact testimony, such as from these third parties, also impedes the taking of any of this highly relevant customer discovery. Oracle asks for the Court's guidance; for example, the Court could order that Oracle's customer depositions could go forward per the availability of the witnesses and that, if Defendants believe they need more time, they could notice their own depositions on separate days. Alternatively, the Court could order that Oracle's customer depositions could be scheduled and concluded beyond the June 19th discovery cut off date to accommodate the witnesses' schedules and Defendants' insistence on full days. Oracle has already suggested to Defendants that these depositions could take place by telephone or videoconference, to lower costs and eliminate the need for time-consuming travel.

*Defendants' Position:* Oracle's position ignores the primary purpose of a deposition notice-*i.e.*, to give the opposing party an opportunity to appear and ask questions of the noticed witness. Moreover, the relief requested by Oracle is impractical and inefficient because it would require two separate out-of-state depositions for each of the eleven third party depositions it has noticed.

Defendants requested Oracle to meet and confer about the scheduling of these depositions and, in response, Oracle refused. Defendants provided Oracle with assurance that Defendants will work with Oracle and all of the third parties to make sure all of these third party depositions are completed before June 19.Oracle knew when it noticed these depositions that it would involve the logistics of scheduling with three separate parties and their counsel. And, it also should have known that Defendants would likely want to question these witnesses. Until Defendants conduct a few of these depositions and see what issues Oracle plans to raise during them, Defendants cannot accurately predict exactly what fraction of the 7 hour limit Defendants will need with each of these witnesses. Thus, for the first few of the depositions, Defendants have made the simple and

reasonable request that each witness reserve at least a full day for deposition in order to allow both Parties time to fully cross examine the witness within one 7 hour deposition. It is quite possible that both Parties can complete their questioning in less than a full day, but Defendants need to analyze the first few depositions before agreeing to limit the deposition to anything less than the seven hours total per witness that is permitted under the rules.

This Court has already addressed this deposition hour allocation issue with respect to other depositions. Defendants believe that guidance is equally applicable here. Moreover, to the best of Defendants knowledge, the third parties are being cooperative in scheduling these depositions in the most efficient manner that will accommodate the needs of all parties in this case during one single deposition that is one day or less in length. If the third parties are forced to have their witnesses prepare and sit for two separate depositions, Defendants expect that cooperation would significantly diminish.

## V. <u>Allegations of Document Preservation Issues</u>

*Oracle's Position*: In the Motion to Compel section, below, Defendants state that "it appears that there may be preservation issues for some [Oracle] custodians." This is the second time that Defendants have made vague allegations that Oracle may not have complied with its preservation obligations. Until today, Defendants never attempted to clarify for Oracle what these preservation issues may be. Their statement, below, that Oracle may have failed to preserve pre-2004 documents for "certain custodians" remains vague and without the type of detail a Party should expect when such a serious charge is made. If Defendants truly believe there is an issue, Oracle would like to know what it is, so that it can attempt to address the perceived concern. Vague accusations are impossible to address.

*Defendants' Position*: The preservation issue referenced relates to Oracle's apparent failure to preserve pre-2005 documents for certain custodians (*e.g.*, Nancy Lyskawa). This is unrelated to the April 29 email exchange (which related to a dispute over the number of key custodians for which Defendants contend they are entitled to request pre-2004 data). Defendants will meet and confer with Oracle on this preservation issue and there is no action item for the Court

at this time.

## VI. Allegedly Deficient Discovery Responses

Both Parties have raised concerns through the meet and confer process regarding the sufficiency of the other's discovery responses. Their respective positions are set forth below.

*Oracle's Position*: Oracle believes many of Defendants' responses to Oracle's Interrogatories, Requests for Production, and Targeted Searches are deficient – either incomplete, incorrect, or improperly refused. Numerous Interrogatories require supplementation or revision, and Defendants' document productions in response to Requests for Production and Targeted Searches need significant supplementation (and in some cases, implementation). Oracle has sent several meet and confer letters to Defendants on these issues, and awaits responses. If Defendants do not timely and thoroughly amend and supplement their responses, Oracle expects to move to compel. As for its own responses to Defendants' discovery, Oracle is in the process of amending and supplementing some of its responses, and is confident that it has met its obligations as to the remainder.

*Defendants' Position*: Defendants' discovery responses are not deficient. Nonetheless, Defendants are in process of supplementing their responses by May 22, 2009 under the Courts' scheduling orders and the applicable rules. If Oracle still has issues with Defendants' responses after they are supplemented on May 22, then Defendants will meet and confer with Oracle in an attempt to resolve any remaining disputes.

Defendants are in the process of communicating with Oracle with respect to Defendants' complaints regarding Oracle's discovery responses. For example, Oracle has yet to articulate a damages theory or to produce key damages documents, including basic financial documents and customer contracts files. Rather than articulate a complete list of Defendants' complaints, at least some of which will hopefully be cured through Oracle's May 22nd supplementation, Defendants will instead review Plaintiffs' supplemental discovery responses and then, if necessary, raise any remaining issues with the Court at the May 26th discovery conference and/or via a motion to compel.

**VII. Remaining Targeted Searches**

As the Court may recall, after significant meet and confer, the Parties agreed to a discovery protocol that included a limited number of custodians and some number of non-custodian searches. Regarding the latter, after more meet and confer, the Parties agreed to a targeted search protocol and process in the August 21, 2008 Discovery Conference Statement. The Court included that protocol and process in its August 29, 2008 Order Following Discovery Conference. Under the agreement and Order, each Party may serve ten targeted searches to seek categories of documents from non-custodial sources. This process gives the Parties the ability to obtain important information that might not be covered by custodian productions, such as financial records, while protecting against excessive burden from unlimited non-custodial searches.

Since then, Oracle claims it has formally served three targeted searches and Defendants claim they have served one. Defendants claim that Oracle has conceded that it has served at least five, while Oracle contends that Defendants have served at least seven. The Parties further dispute (a) whether various other requests for non-custodial documents should be counted towards each Party's limits and (b) how the targeted searches relate to the Parties' formal Request for Production of Documents. The Parties discussed this dispute on May 11, 2009 and have agreed to provide lists of the non-custodial searches they believe have been requested by the other side. After exchanging lists, the Parties will attempt to come to agreement on how many targeted searches remain for each side, if any. If they are unable to agree, they will seek the Court's assistance at the May 26 Discovery Conference.

**VIII. Extrapolation Proposal**

*Oracle's Position*: With the Court's assistance, for nearly a year the Parties have been negotiating an "extrapolation stipulation" about TomorrowNow's general processes, as testified to by its Rule 30(b)(6) witnesses, to alleviate the burden on both Parties to collect and analyze the extensive evidence regarding TomorrowNow's downloading and use of Oracle's software on an individual fix-by-fix basis over time. As the Court has confirmed, "that's always been . . . the incentive for the Defendants to stipulate; that is to say the alternative is to spend a huge amount,

more money and time on unearthing every fact." Transcript of November 25, 2008 Discovery Conference at 34:18-22. Oracle's third proposed stipulation on this topic took months of meet and confer efforts to develop. That proposal was attached as Exhibit A to the February 9, 2009 Joint Discovery Conference Statement (under seal).

Since then, Defendants have not continued with the negotiation process. In fact, during the Parties' negotiations on the joint motion to amend the case schedule (Defendants' below description of which Oracle does not endorse), on April 21, Defendants' counsel stated they would provide a list of what facts they are willing to stipulate to, but they have not done so to date. Oracle remains more than willing to continue to negotiate, although it believes Defendants' past conduct indicates that they have no interest in reaching any stipulation at all.

*Defendants' Position*: This issue regarding Oracle's proposed factual stipulation is not yet ripe for discussion. The Parties have focused their efforts over the past several weeks on reaching an agreed procedural stipulation regarding the case schedule, additional dispositive motion practice and what, if any, additional amendments Oracle will be allowed to make to its complaint in this case. That joint procedural stipulation, which was recently filed with Judge Hamilton (and is included with this Court's chamber's copy of this statement) specifically mentions the state of progress of the Parties' discussions regarding Oracle's extrapolation proposal. The Parties are scheduled to appear before Judge Hamilton on May 28th to discuss their joint procedural stipulation, which acknowledges that an agreement regarding extrapolation and/or a factual stipulation is not a pre-condition for the requested relief in that procedural stipulation. This joint procedural stipulation is in part a compromise in lieu of an extrapolation stipulation to provide Oracle with additional discovery.

## IX. Defendants' Renewed Request for Oracle Partner Discovery

*Oracle's Position:* Despite having sought extensive discovery related to Oracle partners and being rebuffed first by Judge Legge, and then by this Court, because of the dissimilarity between partners and independent competitors,[1] Defendants have again asked Oracle to produce

[1] A year ago, recognizing the vast amount of genuinely relevant discovery needed and the waste and burden of discovery into such obviously dissimilar contractual arrangements, Judge Legge

partner discovery beyond that ordered on February 11, 2009 in response to Defendants' Motion to Compel. After extensive briefing and argument, the Court rejected Defendants' request for Rule 30(b)(6) testimony related to partners, and ordered:

> With respect to Defendants' Motion to Compel, the Court concludes that Defendants are entitled to some non-burdensome information regarding Plaintiffs' partnership program as potentially relevant to damages. Specifically, Plaintiffs shall provide a list of the "small percentage of its partners" with which Oracle contracts to provide support services for PeopleSoft, J.D. Edwards or Siebel applications. See Declaration of Colleen Kelly ¶ 3. Plaintiffs shall produce its partnership agreement(s) with CedarCrestone for the relevant time frame from 2002 through 2008. Plaintiffs shall also produce to Defendants the two master agreements regarding support, including fee schedules, referenced at the hearing.

Oracle has done so, and has also agreed to follow up and produce any additional price lists or fee schedules or policy statements incorporated by reference in the form partner agreements Oracle was ordered to (and has) produced that haven't already been produced. Defendants have again asked for far more than that; they have resurfaced their rejected Rule 30(b)(6) deposition request, identified for deposition two Oracle individuals solely connected to partner programs, and asked for production of voluminous additional partner-related production, including of all historic and current partner agreements. Oracle hopes another Motion to Compel battle will not be necessary and that Defendants will abide by this Court's prior limitations on partner discovery.

*Defendants' Position*: Oracle has been ordered to produce certain partner discovery in response to Defendants' motion to compel. As of this writing, Oracle's production is incomplete and inadequate. The Parties are meeting and conferring on that issue. In addition, ongoing deposition discovery has confirmed that there were in fact pre-existing PeopleSoft partner

---

denied this same discovery, ruling that partner discovery was "tangential at best." This Court weighed in on the relevance of partner discovery several times. *See, e.g.*, August 28, 2008 Discovery Conference at 61:19-62:2 ("I am dubious about whether it's relevant…. it does seem like a completely different thing. And that the relevance would be - if there is any - would be outweighed by the burden[],"); January 8, 2009 Discovery Conference at 54:24-55:2 ("Oracle can choose to have partners that it authorizes to use its IP; and that's completely different from somebody ripping it off"); February 10, 2009 Motion to Compel hearing at 31:5-8 ("So I view the totally independent third parties as the most relevant to damages. But I view the in-between authorized partners as maybe having some relevance, but not as much"); *id.* at 46:14-47:1 (describing requests for the detail behind Oracle's support partner agreements as "pretty attenuated").

relationships that are equally relevant and should be discoverable. Oracle contends that the Court has implicitly denied discovery of those partner agreements. Defendants disagree and will be prepared to discuss this issue at the conference.

**X. <u>Hyperion, Retek, and EBS Discovery</u>**

*Oracle's Position*: As the Court will recall, Oracle has sought discovery into Defendants' use of and support services provided for Hyperion, Retek, and EBS (the "HRE Products") for almost a year, which Defendants resisted at every opportunity. After extensive meet and confer discussions, during which Defendants provided a declaration from Andrew Nelson claiming that TomorrowNow never actually supported these applications, Oracle moved to compel. Prior to the motion hearing, Defendants supplemented the Nelson declaration with one by Thomas Ziemen, which was similarly inadequate. On February 11, the Court ordered Defendants to promptly provide additional information so that the declarations would answer the questions Oracle laid out in its motion papers.

Defendants provided those additional SAP declarations on April 14. However, the new declarations solve none of the problems with Nelson's or Ziemen's previous submissions. None is over two pages. Shelley Nelson – who was a TN employee – states that she met with a third party to discuss and evaluate support of EBS, and that she is unaware that the third party provided TN with any EBS software. But she does not state that TN and SAP never had any EBS software, and she is silent on Hyperion. The other declarations state, in conclusory fashion, how the HRE Products fit into Safe Passage and that the individual declarants are unaware that SAP or TN provided support for the HRE Products or performed data migration for HRE customers.

Once again, Oracle is left with its major questions unanswered: what did Defendants do to evaluate providing support for the HRE Products, such that they were able to get SAP Board approval for the business cases on each? No declarant answers the key question, whether Defendants accessed or used HRE software or other Oracle confidential or proprietary materials in the process of that evaluation. Oracle still, after all this time, does not have the basic information necessary to evaluate its potential claims relating to the HRE Products, and so plans to renew its

motion to compel. It will ask the Court to set a briefing schedule at the May 26 Discovery Conference.

*Defendants' Position*: If Judge Hamilton grants the parties' Joint Administrative Motion to Modify Case Scheduling Order, this issue will be mooted per agreement of the Parties that Oracle will not pursue these claims. In any event, Defendants have both complied with this Court's Orders resulting orders regarding the HRE Products and timely produced four additional declarations. Oracle misconstrues those four declarations (which Defendants will have available at the conference for review by the Court if necessary). Moreover, Oracle allowed the pleading amendment deadline to pass without adding any specific claims regarding the HRE Products despite Defendants' production of numerous documents relating to those products and Oracle's opportunity at numerous depositions to ask questions relating to those products. Oracle's continued attempts to seek any further HRE discovery are improper for the reasons previously stated in Defendants' Opposition to Oracle's motion to compel discovery regarding the HRE Products.

## XI. Defendants' Insurance Carriers Access to Confidential and Highly Confidential Information

Defendants first raised this issue with the Court in January. The Court stated that, for each carrier, Defendants should provide Oracle with a name of an attorney and/or adjuster who would be given access to Confidential and Highly Confidential information. Defendants raised this issue again at the March discovery conference, stating that Defendants' insurers had some problems with the Court's formulation. The Court noted that providing insurance carriers with access to the information they need is an important objective and that the Parties should work together on the logistics required to provide Defendants' carriers that information.

Defendants then sent the insurance carriers' latest proposal to Oracle on May 4, 2009. Oracle requested, and Defendants provided, follow-up information that same day. Defendants are now awaiting Oracle's response. Oracle contends that Defendants' current proposal vastly expands the Court's direction about the number of persons who would have access to Oracle Confidential

and Highly Confidential material, and proposes several new categories of allowed activity not previously discussed or contemplated in the current Protective Order. Oracle will try to get a counterproposal to Defendants before the next Discovery Conference. If an agreement cannot be reached before the May 26 Discovery Conference, Defendants will request a hearing on a motion to compel related to this issue.

## XII. Anticipated Motions to Compel

### (a) Oracle's Anticipated Motions to Compel

As outlined above, Oracle may bring motions to compel related to Defendants' deficient discovery responses, including interrogatory, request for production, and targeted search responses, as well as the HRE Products.

In addition, Oracle believes that several of Defendants' Rule 30(b)(6) witnesses, including Arlen Shenkman, Terry Hurst, Mark Kreutz, Chris Faye, and Mark White, have been inadequately prepared on their designated topics, and so unable to answer numerous questions reasonably related to those topics. For example, Mr. Faye – designated for SAP AG and SAP America on topics relating to Defendants' claimed directives to remove Oracle IP from TomorrowNow computers – did not know which individuals were present for and knew about the decision to issue the 2007 directive, whether it was put into writing, or whether and when Oracle IP was first removed. As another example, Mr. White, designated for TomorrowNow on the same topics as Mr. Faye, did not know any of the reasons for the supposed 2005 directive, the details of the discussion between SAP and TomorrowNow when that directive was first discussed, or why it was never put into writing. Defendants have, thus far, refused to agree to more than a single additional hour of deposition time with Mr. Kreutz. Oracle accordingly believes it will be necessary to bring a motion to compel, and asks that the Court set a briefing schedule at the May 26 Discovery Conference.

### (b) Defendants' Anticipated Motions to Compel

#### (i) Pre-2005 Documents

Defendants remain concerned about Oracle's continuing failure to produce relevant documents and information that pre-date its acquisition of PeopleSoft. At the outset of the case, the

Parties agreed to limit the discovery time frame to January 1, 2004 through the filing of the litigation. At Oracle's request, the Parties subsequently agreed to expand the timeframe to January 1, 2002 through October 31, 2008. Thus far, however, Oracle has largely failed to produce data for the pre-2005 time period. This includes the customer-specific financial reports discussed above, financial documents, and customer contract files. With regard to custodian documents, while Oracle has now agreed to produce documents it previously claimed were inaccessible, disputes remain over how many custodians for whom Oracle must produce archived email data, and it appears that there may be preservation issues for some custodians. Defendants continue to meet and confer with Oracle on these issues. If the issues are not resolved, Defendants anticipate filing a motion to compel and/or a motion to preclude Oracle from seeking some or all damages for the pre-2005 time period.

**(ii) Other Potential Motions to Compel**

Defendants expect that they will need to file a motion to compel on various issues concerning damages discovery. Defendants may seek order compelling Oracle to: (1) articulate its damages theories; (2) produce a properly prepared Rule 30(b)(6) witness for Oracle International Corporation on issues relating to inter-company royalties including transfer pricing issues; (3) and to produce additional financial records relevant to Oracle's expected claim of lost profits, including without limitation the general ledger information and customer contract files that Defendants have been seeking for months. The parties are also conferring about a claim by Oracle of an auditor-client privilege. The parties are meeting and conferring on these issues and, absent a satisfactory resolution, defendants may need to move to compel.

## XIII. Data Warehouse

In its first set of discovery requests, Oracle sought all copies of the software and other support materials downloaded from Oracle's Customer Connection customer support website by Defendants, as well as all copies of the Oracle software (and works allegedly derived from that software) maintained on TomorrowNow's computer systems. Due to the amount of data responsive to those requests, the Parties agreed to a remote review mechanism whereby Oracle

could review TomorrowNow's servers that Defendants believed were used in the servicing of TomorrowNow's PeopleSoft, J.D. Edwards, and Siebel customers presented in an electronic "Data Warehouse."

The Parties began working on and establishing a protocol for the Data Warehouse in April 2008. Defendants completed the production of the original set of data requested by Oracle in February 2009, in compliance with both this Court's November 26, 2008 Order (as to the majority of servers) and additional agreements between the Parties (as to certain Siebel-related servers and virtual machines). Defendants represent that that production consisted of approximately 8.1 million files and 4.9 TB of data.

As permitted by the existing protocol, on March 16, 2009, Oracle requested further production from the original set of data. Defendants agreed on March 24, 2009 to begin production of those files, under reservation of rights, and stated their belief that it would take 8 to 10 weeks to produce these files. Defendants represent that the further production from the original set of data comprises approximately 6 million files and 2.5 TB of data. As of now, Defendants represent that they have produced all but one of the partitions and believe they are on target to meet the represented 8 to 10 weeks for production.

As of April 3, 2009, Defendants had agreed under reservation of rights to re-collect and make available the following servers, partitions and/or images under the existing Data Warehouse protocol, pursuant to the extended discovery agreement: TN-FS01_F, PSDEV02, PSNT01, PSNT02, PSDEV01 - LV00, PSDEV01 - LV01, DCITBU02_G, TN-WTS01 - D, TN-WTS01 - Z, TN-WTS01 - C, HOMER, YOGI, DCJDDEV03, DCJDENT02, JD-WSVR01 - G and JD-WSVR01 - C. Oracle's review of these materials is ongoing. Both Parties have reserved their rights as to any requests regarding additional Data Warehouse materials for the extended discovery timeframe.

On April 17, 2009, the Parties reached agreement on a final de-designation proposal relating to the confidentiality of documents produced by TomorrowNow. The Parties believe that this proposal has resolved issues relating to the confidentiality of certain servers and databases, but

will meet and confer about the confidentiality of specific Data Warehouse materials should the need arise.

On April 22, Oracle notified Defendants that certain materials in the "IT" folder of the TN-FS01_F server that were made available for review, appeared from their face to potentially include privileged documents. Oracle requested production of this section in its entirety, and suggested that Defendants review the server more closely for privileged material before production. Defendants responded that the "IT" folder consists of 435,729 out of 735,117 files and folders on that server, and for the sake of efficiency, in an attempt to complete production as quickly as possible, requested Oracle make its best attempt to narrow its requests from this folder while still respecting Defendants' privileged or protected material. In an effort to make that possible, Defendants identified specific subfolders that Oracle could mark in their entirety and requested that Oracle agree that the re-posting of this folder does not operate as a waiver of any privilege or protection claims. The Parties continue to meet and confer on this issue.

On May 7, Defendants identified three partitions – HOMER, YOGI, and BU02_G – that they state have software or hardware issues that are currently preventing their re-collection. Defendants have proposed rebooting these servers as a means to solving the access issues. However, if the servers do not restart during this process, the data may be inaccessible. Defendants have provided information regarding the software and hardware issues, and the Parties, in consultation with their respective experts, are continuing to meet and confer regarding the best approach to attempt to collect the data from these three partitions.

DATED: May 19, 2009

BINGHAM McCUTCHEN LLP

By: /s/
Bree Hann
Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited

In accordance with General Order No. 45, Rule X, the above signatory attests that

concurrence in the filing of this document has been obtained from the signatory below.

DATED: May 19, 2009

JONES DAY

By: /s/
Jason McDonell
Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

# Exhibit A

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
San Francisco Office
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
Silicon Valley Office
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAP AG, et al.,<br><br>Defendants. | Case No. 07-CV-1658 PJH (EDL)<br><br>**DEFENDANTS' THIRD NOTICE OF DEPOSITION OF PLAINTIFF ORACLE USA, INC. PURSUANT TO FED. R. CIV. P. 30(b)(6)** |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendants SAP AG, SAP America (together, "SAP"), and TomorrowNow, Inc. ("TN") will take the deposition of Plaintiff Oracle USA, Inc. on May 29, 2008, commencing at 9:00 a.m. at the law offices of Jones Day, 555 California Street, 26th Floor, San Francisco, CA 94104.

The deposition will be recorded stenographically, using real time transcription, by a certified court reporter, and by video and audio by a certified videographer.

Oracle USA, Inc. is hereby requested and required, pursuant to Federal Rule of Civil Procedure 30(b)(6), to designate and produce a witness or witnesses to testify on its behalf on the following topics:

1. **Oracle's customer-specific financial reports i.e. Analytics Contracts Reports OKI3 Reports, and Analytics Licenses Reports (the "Reports"):**

(a) An explanation of each column in each type of Report.

(b) The data contained in the Reports, including: (i) how customer cancellations and/or terminations are reflected in the Reports; (ii) how customer reinstatements are reflected in the Reports, how customer re-licensing is reflected in the Reports (e.g. when a customer cancels support and returns to Oracle by re-purchasing their licenses instead of paying back-support and reinstatement fees); (iii) how any migration from JD Edwards pricing to PeopleSoft pricing is reflected in the Reports; (iv) a description of each of the categories in the "Status Code" column of the Analytics Contracts Reports, including Active, Badserv, Buslost, Cancelled, Contract_Priced, Duplicate, Migrated, Terminated, and Underutil; (v) a description of each of the categories in the "Status Type" column of the Analytics Contracts Reports, including Active, Cancelled, Entered, Entered/Backlog, Expired, Hold, Signed, and Terminated; (vi) a description of each of the categories in the "Contract Status Code" column of the OKI3 Reports, including Approval Rejected, Cancel/Replace, Duplicate Cancellation, X – Obsolete – Customer Declined, X – Obsolete – Move to Competitor; and (vii) a description of the Service Levels described in the Analytics Contracts Reports and the OKI3 Reports, including Product Support, Product

Support Extended Maintenance, Reinstatement Fee, Software Updates, Software Update License & Support, and Software Updates – Extended Maintenance.

(c) The completeness and accuracy of the data contained in the Reports, including the relationship between, and accuracy of, file names and their contents.

(d) Identification of the systems in which the underlying data is maintained, over what period of time, who enters data into the system, who has access to the data, how data was extracted from the system to create the Reports, and who extracted the data.

**2. Charts of Accounts:**

An explanation of the accounts listed in the charts of accounts produced by Oracle in this case and the relationship between those accounts and the associated general ledgers.

**3. Support Policies for PeopleSoft and JDE Products:**

(a) The terms of Oracle's Lifetime Support Policy, including Premier Support, Extended Support, and Sustaining Support levels.

(b) The time period for which the Lifetime Support Policy has been in effect and how it has changed over time, if at all.

(c) Which support services are included in the Premier Support, Extended Support, and Sustaining Support levels and how these three levels differ from one another.

(d) The time period over which the Premier Support, Extended Support, and Sustaining Support levels are (or have been) offered for each Registered Work identified in the Third Amended Complaint.

(e) The amount of additional fees, if any, that customers are required to pay to receive Premier Support, Extended Support, and Sustaining Support.

(f) All variations of extended or supplemental support offered by Oracle, PeopleSoft, and JD Edwards from January 1, 2002 through October 31, 2008, including the versions of the Registered Works for which such support was offered, the time periods and types of customers for which such support was offered, the services included in each such support program, the requirements for participation in each such support program, and the amount of any additional fees customers were required to pay for such programs. Examples of extended or supplemental

support programs include: Extension of Support Services for HRMS / Student Administration Software 7.5/7.6 Releases (*see, e.g.*, ORCL000010492-93, ORCL00022614-15, ORCL00020264-65, and ORCL00039727-28); Extension of Support Services for Financials, Distribution, Manufacturing, and Supply Chain Management Software 7.5/7.6 Releases (*see, e.g.*, ORCL00039630-31 and ORCL00096337-38); Supplemental Support for EnterpriseOne Xe, formerly OneWorld XE (*see, e.g.*, ORCL00000180-81, ORCL000003518-19, and ORCL00006176-77); and North American Payroll Tax Update programs (*see, e.g.*, ORCL00087178-94, ORCL00032440-42, and ORCL00009835-56).

**4. <u>Support Pricing</u>:**

(a) The various methods Oracle, PeopleSoft, and JD Edwards, respectively, used from January 1, 2002 to October 31, 2008 to determine the price of support for PeopleSoft and JD Edwards products.

(b) Annual or other regular price increases or decreases for PeopleSoft and JD Edwards products from January 1, 2002 to October 31, 2008.

(c) How PeopleSoft's acquisition of JD Edwards impacted the methods for pricing support of JD Edwards products, and how Oracle's acquisition of PeopleSoft impacted the methods for pricing support of PeopleSoft and JD Edwards products.

(d) How JD Edwards,' PeopleSoft's, and Oracle's published price lists and pricing calculators impact pricing.

**5. <u>Oracle's Support of Third-Party Software Licensed with PeopleSoft and JD Edwards Products</u>:**

(a) How Oracle prices support of any third party products licensed with PeopleSoft and/or JD Edwards products (e.g. Crystal Reports, PowerPlay, WebSphere) and whether any discounts are applied.

(b) Oracle's profit margin on support of third party products and the amount of any royalty and/or pass-through expenses to the third party vendors.

(c) Oracle's policies with regard to cancelling support of third party products.

6. **Tracking and Accounting for Escalated Support and Research and Development Expenses**:

(a) Whether work on escalated support issues (such as bug fixes) is done by support employees or by research and development employees.

(b) Whether Oracle's support or research and development employees report or otherwise track their time and, if so, where such information is stored.

(c) Whether the cost of work done by research and development employees on escalated support issues (such as bug fixes) is allocated to research and development or to support services.

7. **Revenue Recognition**:

How revenues relating to PeopleSoft and JD Edwards sales were recognized in the financial statements, including how discounts were allocated, whether maintenance for the first year was included in license sales, and how services, including consulting, training, and implementation, were allocated to which line of business.

8. **Support Cancellation Rates and Reports**:

Support cancellation rates for PeopleSoft and JD Edwards products from January 1, 2002 through October 31, 2008, and the types of reports Oracle has, or can generate, reflecting such information.

9. **Relationship Among or Between Oracle Entities**:

The relationship among or between the Oracle entities identified in Oracle's charts of accounts.

10. **Terms of Agreements With Customers**:

The terms of the agreements between PeopleSoft, JD Edwards, and/or Oracle upon which Oracle relies for its allegations in paragraphs 52 and 53 of Third Amended Complaint.

11. **Terms of Use, Special Terms of Use, Legal Download Agreements, and Software Application Request ("SAR")**:

(a) The terms of the Terms of Use, Special Terms of Use, Legal Download Agreements, and SAR upon which Oracle relies for its allegations in paragraphs 54 through 60 of Third Amended Complaint.

(b) Oracle's efforts to enforce those terms against any customer, third party support provider, Oracle partner, or any other third party.

**12. <u>PeopleSoft's July 10, 2002 Cease and Desist Letter to TomorrowNow</u>:**

(a) The facts relating to PeopleSoft's July 10, 2002 letter to TomorrowNow (the "2002 Cease and Desist Letter"), including the reasons why PeopleSoft sent the letter and the identities of the individuals involved in the decision to send the letter.

(b) The facts relating to TomorrowNow's July 27, 2002 response to the "2002 Cease and Desist Letter," including what actions, if any, PeopleSoft took in response to TomorrowNow letter, the identities of the individuals involved in the actions, and the reasons for the actions.

Dated: May 11, 2009

JONES DAY

By: ______________________
Elaine Wallace

Counsel for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

## PROOF OF SERVICE

I, Ruth Chavez, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 555 California Street, 26th Floor, San Francisco, California 94101. On May 11, 2009, I served a copy of the attached document(s):

**DEFENDANTS' THIRD NOTICE OF DEPOSITION OF PLAINTIFF ORACLE USA, INC. PURSUANT TO FED. R. CIV. P. 30(b)(6)**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Donn Pickett
Geoffrey M. Howard
Zachary J. Alinder
Bree Hann
Holly A. House
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
*donn.pickett@bingham.com*
*geoff.howard@bingham.com*
*zachary.alinder@bingham.com*
*bree.hann@bingham.com*
*holly.house@bingham.com*

Executed on May 11, 2009, at San Francisco, California.

By: ______________________
Ruth Chavez