Walsh v. Apple, Inc. et al
Doc. 330

# EXHIBIT A

Dockets.Justia.com

BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle Corporation, Oracle USA, Inc.,
and Oracle International Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,

Plaintiffs,

v.

SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,

Defendants.

CASE NO. 07-cv-01658 (PJH)

**PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS**

**REQUEST FOR PRODUCTION NO. 21:**

All Documents relating to SAP AG or SAP America's historic applications sales pipeline close rates, including percent closed, time to close, and factors driving closure.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents relating to SAP AG or SAP America's historic service contract and application license renewal rates, including percent renewed and factors driving renewal.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents relating to licenses, contracts, or agreements between SAP AG or SAP America and any independent (non-affiliated, non-partner) software support service provider for SAP-branded software applications or to any license Defendants deem comparable to the type of license that would have been required between Oracle and SAP TN for the type of activities engaged in by Defendants.

**REQUEST FOR PRODUCTION NO. 27:**

All Documents related to the allocation of the purchase price for Business Objects, including the determination of the fair value in accordance with FAS 141 and 142 of the identified intangible assets acquired.

DATED: July 28, 2008

Bingham McCutchen LLP

By: [signature]
Bree Hann
Attorneys for Plaintiffs
Oracle Corporation, Oracle USA, Inc., Oracle International Corporation

**PROOF OF SERVICE**

I am over 18 years of age, not a party to this action and employed in the County of San Francisco, California at Three Embarcadero Center, San Francisco, California 94111-4067. I am readily familiar with the practice of this office for collection and processing of correspondence by U.S. Mail and Electronic Mail, and they are deposited and/or sent that same day in the ordinary course of business.

Today I served the following document:

**PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS**

☒ (BY ELECTRONIC MAIL) by transmitting via electronic mail document(s) in portable document format (PDF) listed below to the email address set forth below on this date.

☒ (BY MAIL) by causing a true and correct copy of the above to be placed in the United States Mail at San Francisco, California in sealed envelope(s) with postage prepaid, addressed as set forth below. I am readily familiar with this law firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence is deposited with the United States Postal Service the same day it is left for collection and processing in the ordinary course of business.

Robert A. Mittelstaedt, Esq.
Jones Day
555 California Street
26th Floor
San Francisco, CA 94104
Tel: (415) 626.3939

ramittelstaedt@JonesDay.com
jmcdonell@jonesday.com

Tharan Gregory Lanier, Esq.
Jane L. Froyd, Esq.
Jones Day
1755 Embarcadero Road
Palo Alto, CA 94303
Tel: (650) 739-3939

tglanier@JonesDay.com
jfroyd@JonesDay.com

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made and that this declaration was executed on July 28, 2008, at San Francisco, California.

Rosaleen Doran
Rosaleen Doran

# EXHIBIT B

BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle Corporation, Oracle USA, Inc.,
and Oracle International Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,

Plaintiffs,

v.

SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,

Defendants.

CASE NO. 07-CV-01658 PJH (EDL)

**PLAINTIFFS' FIRST SET OF TARGETED SEARCH REQUESTS TO DEFENDANTS**

| | |
|---|---|
| **PROPOUNDING PARTIES**: | Plaintiffs Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation |
| **RESPONDING PARTY**: | Defendants SAP AG, SAP America, Inc., and TomorrowNow, Inc. |
| **SET NUMBER:** | One |

Pursuant to the agreement of the Parties, as set forth in the August 21, 2008 Joint Discovery Conference Statement, plaintiffs Oracle Corporation, Oracle USA, Inc., and Oracle International Corporation (collectively, "Oracle") hereby request that defendants SAP AG, SAP America, Inc. ("SAP America" and together with SAP AG, "SAP"), and TomorrowNow, Inc. ("TN") (collectively, "Defendants" or "You") respond to the following targeted search requests, and produce Documents as required by the agreed Targeted Search Protocol.

## DEFINITIONS

Unless otherwise indicated, the following definitions shall apply to each of the Targeted Search Requests below.

1. "And" and "or" shall be construed both conjunctively and disjunctively and each shall include the other whenever such construction will serve to bring within the scope of these Requests any information that would not otherwise be brought within their scope.

2. "Communication" means any and all contact or transmission of information between two or more Persons, whether in a face-to-face meeting, telephone conversation, or otherwise, or whether by letter, electronic mail, instant messaging system, facsimile transmission, cable, letters, correspondence, video conference, message, or any other method or medium of information transfer or exchange.

3. "Document(s)" is used in these Requests as broadly as is allowed under the Federal Rules of Civil Procedure, and thus includes without limitation writings; records; files; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; email; telephone message records or logs; computer and network activity logs; data on hard drives; backup data; data on removable computer storage media such as tapes, disks, and cards; printouts; Document image files; web pages; databases; spreadsheets; software; hardware; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements;

worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; charts; digital or chemical process photographs; video, phonographic, tape, or digital records or transcripts thereof; drafts; jottings; and notes. "Document(s)" also includes any copies that differ in any respect from the original or other versions of the Document(s), such as, but not limited to, copies containing notations, insertions, corrections, marginal notes, or any other variations.

## INSTRUCTIONS

1. If You claim any form of privilege as a ground for not producing or for redacting any Document, You shall provide the following information for each Document withheld or redacted: (1) the Document's preparation date and the date appearing on the Document; (2) the name, present and last known addresses, telephone numbers, titles (and positions), and occupations of those individuals who prepared, produced, reproduced, and received said Document, including all authors, senders, recipients, "cc" recipients, and "bcc" recipients; (3) the number of pages withheld; and (4) a description sufficient to identify the Document without revealing the information for which the privilege is claimed, including the general subject matter and character of the Document (*e.g.*, letter, memorandum, notes, etc.).

2. If only a portion of a responsive Document is privileged against disclosure, You must produce the responsive non-privileged portion of the Document in redacted form, provided that the redacted material is identified and the basis for the claim of privilege is stated as provided in Instruction No. 1 above.

3. If a Document once existed, but has been lost or destroyed, or otherwise is no longer in Your possession, custody, or control, identify the Document and state the details concerning the loss of such Document, including the name, title, and address of the present custodian of any such Document, if known to You.

4. Pursuant to Federal of Civil Procedure 26(e), Your responses to the following Targeted Search Requests are to be promptly supplemented to include any subsequently acquired Documents and information.

5. Subject to the Parties' agreement to extend the discovery timeline, and unless

otherwise stated, all Requests refer to the period of time since January 1, 2002 and through the present day.

## TARGETED SEARCH REQUESTS

**TARGETED SEARCH REQUEST NO. 1:**

**FINANCIAL DOCUMENTS**

The following subset of Defendants' relevant financial Documents: (a) Documents comparable to Oracle's relevant "Customer-Specific Financial Reports," as described in Briana Rosenbaum's August 27, 2008 email to Jason McDonell for all TN customers, for all Safe Passage deals with TN as a component, and for SAP sales to TN customers after acquisition of TN; (b) summary sales and profit numbers for all TN customers, for Safe Passage deals with TN as a component, and for SAP sales to TN customers after acquisition of TN; (c) reports sufficient to confirm that the 61 customers listed in the Customer List attached to Jane Froyd's July 18, 2008 email are the only SAP customers who either (1) had a contract with TN as a component of their Safe Passage deal, or (2) were previously (or, to the extent the customer was sold TN and SAP products/support together, at the same time) a TN customer who SAP then mined for further sales of software or service; (d) quantifications or analyses of actual or projected revenue that would be or was lost by Oracle, or any harm that might be or was caused to Oracle, from TN, from SAP's acquisition of TN, or from SAP's incorporation of TN into its Safe Passage program including, but not limited to, Documents related to the 1:10 and 1:18 metrics contained in Hurst Depo. Ex. 174 and other instances where these metrics were adopted or rejected by SAP; (e) Documents reflecting TN's expected contributions to Safe Passage (including anticipated service revenues and assistance in driving applications sales); (f) financials reflecting actual or projected benefits related to TN's service on any Oracle-branded software and any follow-on sales projected in connection with TN's offering of such service; (g) all business cases (and assumptions and financial backup regarding the same) related to the TN acquisition and any proposed expansions of TN service to any Oracle-owned software; (h) pro-formas and forecasts (and associated assumptions and financial back-up) for sales, revenue, and profits for the Safe Passage program overall (including for the TN aspect); (i) research, reports, and analyses

regarding how long TN customers might be expected to remain on TN service, and how long TN customers were expected to continue using Oracle products before migrating to SAP software (relevant Documents would include SAP's historic applications sales pipeline close rates and SAP's historic service contract and application license renewal rates); (j) SAP's and TN's research and development costs associated with the development of support products (both TN support products and SAP support products for SAP applications); (k) SAP's profit margins for service and applications sales and Documents explaining how they are calculated; and (l) Documents showing SAP's valuation of the intellectual property of any company it has acquired (including, but not limited to, Business Objects).

## PROOF OF SERVICE

I am over 18 years of age, not a party to this action and employed in the County of San Francisco, California at Three Embarcadero Center, San Francisco, California 94111-4067. I am readily familiar with the practice of this office for collection and processing of correspondence by Electronic Mail, and they are deposited and/or sent that same day in the ordinary course of business.

Today I served the following documents:

**PLAINTIFFS' FIRST SET OF TARGETED SEARCH REQUESTS TO DEFENDANTS**

☒ (BY ELECTRONIC MAIL) by transmitting via electronic mail document(s) in portable document format (PDF) listed below to the email address set forth below on this date.

Jason McDonell, Esq.
Elaine Wallace, Esq.
Jones Day
555 California Street
26th Floor
San Francisco, CA 94104
Tel: (415) 626.3939

jmcdonell@JonesDay.com
ewallace@JonesDay.com

Jane L. Froyd, Esq.
Jones Day
1755 Embarcadero Road
Palo Alto, CA 94303
Tel: (650) 739-3939

jfroyd@JonesDay.com

I declare under penalty of perjury that this declaration was executed on August 29, 2008, at San Francisco, California.

Zachary Alinder /BLR/
Zachary J. Alinder

# EXHIBIT C

Robert A. Mittelstaedt (SBN 060359)
JONES DAY
San Francisco Office
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
Silicon Valley Office
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAP AG, et al.,<br><br>Defendants. | Case No. 07-CV-1658 MJJ<br><br>**DEFENDANTS' RESPONSES TO PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS (SET TWO)** |

**<u>REQUEST FOR PRODUCTION NO. 21</u>:**

All Documents relating to SAP AG or SAP America's historic applications sales pipeline close rates, including percent closed, time to close, and factors driving closure.

**<u>RESPONSE TO REQUEST NO. 21</u>:**

Defendants object to this request on the grounds stated in their General Objections and Responses. Defendants also object that this request is overly broad and unduly burdensome to the extent the request calls for "all documents relating to." Moreover, Defendants object that the phrase "historic applications sale pipeline close rates" is vague. In addition, Defendants object that that this request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent the request calls for data unrelated to Plaintiffs' claims in this case. Defendants further object to this request to the extent that it calls for documents protected by the attorney-client privilege and/or the attorney work product doctrine.

**<u>REQUEST FOR PRODUCTION NO. 22</u>:**

All Documents relating to SAP AG or SAP America's historic service contract and application license renewal rate, including percent renewed and factors driving renewal.

**<u>RESPONSE TO REQUEST NO. 22</u>:**

Defendants object to this request on the grounds stated in their General Objections and Responses. Defendants also object that this request is overly broad and unduly burdensome to the extent the request calls for "all documents relating to." In addition, Defendants object that that this request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent the request calls for data unrelated to Plaintiffs' claims in this case. Defendants further object to this request to the extent that it calls for documents protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents relating to licenses, contracts, or agreements between SAP AG or SAP America and any independent (non-affiliated, non-partner) software support service provider for SAP-branded software applications or to any license Defendants deem comparable to the typc of license that would have been required between Oracle and SAP TN for the type of activities engaged in by Defendants.

**RESPONSE TO REQUEST NO. 23:**

Defendants object to this request on the grounds stated in their General Objections and Responses. Defendants also object that this request is overly broad and unduly burdensome to the extent the request calls for "all documents relating to." In addition, Defendants object that this request is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent the request calls for data unrelated to TomorrowNow's involvement with SAP. Defendants further object that this request improperly assumes that a license was required between a Plaintiff entity and TomorrowNow. Defendants further object to this request to the extent that it calls for documents protected by the attorney-client privilege and/or the attorney work product doctrine.

**REQUEST FOR PRODUCTION NO. 27:**

All Documents related to the allocation of the purchase price for Business Objects, including the determination of the fair value in accordance with FAS 141 and 142 of the identified intangible assets acquired.

**RESPONSE TO REQUEST NO. 27:**

Defendants object to this request on the grounds stated in their General Objections and Responses. Defendants also object that this request is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and designed to harass. Defendants further object to this request to the extent that it calls for documents protected by the attorney-client privilege and/or the attorney work product doctrine.

***Online Access***

Dated: August 27, 2008

JONES DAY

By: Jason McDonell /ew

Jason McDonell

Counsel for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

# EXHIBIT D

# EXHIBIT D

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAP AG, et al.,<br><br>Defendants. | Case No. 07-CV-1658 (PJH) EDL<br><br>**DEFENDANTS' FOURTH SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF TARGETED SEARCH REQUESTS TO DEFENDANTS** |

PROPOUNDING PARTY: Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited

RESPONDING PARTY: Defendants TomorrowNow, Inc., SAP America, Inc., and SAP AG

SET NUMBER: One

Pursuant to the parties' agreements and the August 29, 2008 Order regarding targeted searches, Defendants TomorrowNow, Inc. ("TN"), SAP America, Inc. and SAP AG (collectively, "Defendants") serve this their fourth supplemental objections and responses to the First Set of Targeted Search Requests by Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited (collectively, "Plaintiffs"):

## GENERAL OBJECTIONS AND RESPONSES

1. Defendants object to the requests because they are not "narrow searches by topic" as the parties agreed they would be and as the Court ordered on August 29, 2008. The August 29, 2008 Order states "[t]he Parties may request from the other side up to 10 targeted searches, *i.e.*, narrow searches by topic where document production would come from centralized sources and/or from those persons most likely to have responsive documents." Defendants have been and remain willing to meet and confer with Plaintiffs in an effort to reach an agreement whereby Plaintiffs will amend the form and scope of Plaintiffs' First Set of Targeted Searches in order to comply with the parties' previous agreements and the Court's August 29, 2008 Order.

2. Defendants object to the requests because they contain numerous compound subparts relating to multiple topics and, if properly propounded and individually counted, they would greatly exceed the ten targeted search limit established by the August 29, 2008 Order.

3. Defendants object to the requests to the extent that they are vague, overbroad, oppressive, harassing and unduly burdensome.

4. Defendants object to the requests to the extent that they are not tied to the allegations in this case and therefore not reasonably calculated to lead to the discovery of admissible evidence.

5. As with all of Plaintiffs' other discovery requests, Defendants' reasonable inquiry and related responses to these discovery requests shall be limited in a manner consistent with the

Court's orders and the parties' agreements that provide limits on the parties' discovery obligations in this case. Defendants object to the requests to the extent that they can be interpreted to require Defendants to make any further search or production beyond what the parties have agreed and the Court has ordered, because such an interpretation of the requests would make them overbroad and unduly burdensome.

6. Any response by Defendants indicating that they will produce documents is not a confirmation that such documents exist or are in Defendants' possession, custody or control. Such response indicates only that Defendants, subject to their objections, will produce such documents to the extent that they do exist and are in one or more of Defendants' possession, custody or control.

7. Defendants will produce confidential and proprietary information of Defendants and/or of third parties that is in Defendants' possession, only under the Agreed Protective Order entered in this case, which permits designating such documents, depending on their content, as CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY.

8. Defendants object to Plaintiffs' instructions to the extent that those instructions seek to require Defendants to produce documents in a form other than that in which those documents are maintained in the ordinary course of business. Subject to and without waiving their objections, Defendants will produce relevant, responsive non-privileged documents as they are typically maintained, subject only to the parties' agreement regarding mechanics of production.

9. Defendants object to each request, definition and instruction to the extent they seek to impose upon Defendants duties and/or responsibilities greater than those imposed by the Federal Rules of Civil Procedure, the Local Rules of this Court, any applicable orders of this Court or any stipulation or agreement of the parties

10. Defendants object to each request, definition and instruction to the extent they seek to require Defendants to speculate or guess as to whether Plaintiffs will contend that any potentially responsive documents "contradict" (or any similar concept) any positions taken by

Defendants or "support" (or any similar concept) any positions taken by Plaintiffs.

11. Defendants object to each request to the extent it seeks the production of documents and/or things that are not relevant to any claim or defense in this action, or reasonably calculated to lead to the discovery of admissible evidence that is relevant to any claim or defense, under Rule 26(b)(1) of the Federal Rules of Civil Procedure. Defendants specifically object to each request as unduly burdensome, oppressive and calling for information that is neither relevant to any claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence, to the extent the request seeks documents or information unrelated to PeopleSoft or J.D. Edwards ("JDE") products. PeopleSoft and JDE products are the only products Plaintiffs have placed at issue in this case and are the only products for which Defendants will produce documents or other data.

12. Defendants object to each request to the extent it seeks documents that are protected from disclosure by any applicable privilege, including but not limited to the attorney-client privilege, the attorney work product doctrine, the privilege afforded non-testifying experts by Rule 26(b) of the Federal Rules of Civil Procedure, or that is otherwise protected from disclosure under the Federal Rules of Civil Procedure, the Federal Rules of Evidence or relevant statutory or case law. Should any production of any such privileged documents by Defendants occur, it is inadvertent and shall not constitute a waiver of: (a) any privilege; (b) any other ground for objecting to discovery with respect to such documents or any other documents; (c) Defendants' right to claw any such document back or (d) Defendants' right to object during this litigation or otherwise to the use of any such document. Defendants will log such privileged information in accordance with the parties' agreements.

13. Defendants' responses to Plaintiffs' requests do not constitute admissions or acknowledgements that the information sought is within the proper scope of discovery or admissible at trial or that any non-privileged documents responsive to a particular request may exist.

14. Defendants' responses to Plaintiffs' requests are made without in any way waiving: (a) the right to object on the grounds of authenticity, competency, relevancy, materiality, privilege

or admissibility, to the extent that any documents produced in response hereto are ever attempted to be introduced as evidence for any purpose in any subsequent proceeding in, or the hearing of, this action or any other action and (b) the right to object on any grounds to any other discovery requests involving or relating to the same or similar subject matter of Plaintiffs' requests.

15. Defendants object to the requests to the extent they seek to require Defendants to search for, review or produce inaccessible information, data or other materials. Defendants will not search for, review or produce inaccessible information, data or other materials.

16. Defendants object to the definition of "Communication" as being overly broad and unduly burdensome to the extent the requests containing the defined term require production of any documents or other data showing "any and all contact."

17. Defendants object to Instruction number 5 to the extent it imposes a burden or obligation to which the parties have not yet agreed. The parties are still in the process of meeting and conferring regarding the limited issues for which the parties will agree to expand the discovery time period.

## TARGETED SEARCH REQUESTS

**TARGETED SEARCH REQUEST NO. 1:**

**FINANCIAL DOCUMENTS**

The following subset of Defendants' relevant financial Documents: (a) Documents comparable to Oracle's relevant "Customer-Specific Financial Reports," as described in Briana Rosenbaum's August 27, 2008 email to Jason McDonell for all TN customers, for all Safe Passage deals with TN as a component, and for SAP sales to TN customers after acquisition of TN; (b) summary sales and profit numbers for all TN customers, for Safe Passage deals with TN as component, and for SAP sales to TN customers after acquisition of TN; (c) reports sufficient to confirm that the 61 customers listed in the Customer List attached to Jane Froyd's July 18, 2008 email are the only SAP customers who either (1) had a contract with TN as a component of their Safe Passage deal, or (2) were previously (or, to the extent the customer was sold TN and SAP products/support together, at the same time) a TN customer who SAP then mined for further sales of software or service; (d) quantifications or analyses of actual or projected revenue that would be

Defendants object to subpart (j) as being overbroad, unduly burdensome and seeking information that is neither relevant nor likely to lead to the discovery of admissible evidence, to the extent that it seeks documents, data or other information regarding "SAP's … research and development costs associated with the development of support products … for SAP applications."

Defendants object to subparts (k) and (l) in their entirety because they are overbroad, unduly burdensome and seek information that is neither relevant nor likely to lead to the discovery of admissible evidence.

Defendants object to the extent that this request is not "self-contained" as required by the August 29, 2008 Order.

Defendants object to Plaintiffs' attempt to conduct cumulative discovery to the extent that this requests seeks documents, data or other information that Defendants have already produced in this case. This objection includes, but is not limited to, an objection to any attempt by Plaintiffs to require Defendants to segregate or otherwise separately identify any documents, data or other information contained within any document production that any Defendant has made or will make in this case.

Defendants object to the extent that information responsive to this targeted search request will be produced in the ordinary course of the custodian-based production in this case by Defendants. Any attempt by Plaintiffs to seek such duplicative discovery is cumulative, overbroad and harassing.

Defendants object to this request to the extent that it calls for documents protected by any applicable privilege, including but not limited to, the attorney-client privilege, the attorney work product doctrine and/or the consulting-only expert privilege.

Defendants incorporate by reference as if fully set forth herein in response to this request, each of the seventeen General Objections and Responses contained on pages 2 through 5 above, as well as each of Defendants' objections and responses to each of Plaintiffs' document requests that relate to this request. Defendants are not, by responding to this request, waiving any of their objections to any of Plaintiffs' document requests.

generated. Additionally, Defendants are speaking with the following employees concerning the "financial" subparts of Targeted Search Request. No. 1: Mark Deinert (SAP Corporate Controlling), Christian Jehle (SAP Corporate Controlling), Peter Weber (SAP Corporate Controlling), Phillip Tueroff (SAP Corporate Controlling), Christoph Huetten (SAP Corporate Financial Reporting), Joseph Busillo (SAP Field Finance), Joel Bernstein (SAP Field Finance), George Tramell (SAP Marketing & Revenue Reporting), David Thompson (SAP Finance & Accounting - Sales/Maintenance Revenue), Joseph LaRosa (SAP Revenue Accounting/Pricing), Bromley Jacobs (SAP Accounting), Valerie Le Jeune (SAP Contracts - License & Compliance ), Cindy Kortan (SAP Contracts), Mark Cordrey (SAP Business Development), Thomas Bamberger (SAP Service and Support Operations), Albert van Wissen (TN CFO), and Bert Oltmans (TN Financial).

In response to subpart (l), Defendants continue to stand on all of our objections concerning this subpart.

As Defendants complete production in response to Targeted Search Request No. 1, Defendants reserve the right to update and supplement this response.

**PROOF OF SERVICE**

I, Grace A. Wayte, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 555 California Street, 26th Floor, San Francisco, California 94104. On May 22, 2008, I served a copy of the attached document(s):

**DEFENDANTS' FOURTH SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF TARGETED SEARCH REQUESTS TO DEFENDANTS (SET ONE)**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☒ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Donn Pickett, Esq.
Geoffrey M. Howard, Esq.
Holly House, Esq.
Zachary J. Alinder, Esq.
Bree Hann, Esq.
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
*donn.pickett@bingham.com*
*holly.house@bingham.com*
*geoff.howard@bingham.com*
*zachary.alinder@bingham.com*
*bree.hann@bingham.com*

Executed on May 22, 2009, at San Francisco, California.

By: Grace Wayte
Grace A. Wayte

# EXHIBIT E

BINGHAM MCCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited

JONES DAY
ROBERT A. MITTELSTAEDT (SBN 060359)
JASON McDONELL (SBN 115084)
ELAINE WALLACE (SBN 197882)
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

JONES DAY
THARAN GREGORY LANIER (SBN 138784)
JANE L. FROYD (SBN 220776)
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

JONES DAY
SCOTT W. COWAN (Admitted *Pro Hac Vice*)
JOSHUA L. FUCHS (Admitted *Pro Hac Vice*)
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP America, Inc., and TomorrowNow, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.*,<br>Plaintiffs,<br>v.<br>SAP AG, *et al.*,<br>Defendants. | No. 07-CV-1658 PJH (EDL)<br><br>**~~[PROPOSED]~~ STIPULATED REVISED CASE MANAGEMENT AND PRETRIAL ORDER** |

Based on the Parties' showing of good cause, and pursuant to the direction the Court provided the Parties during the May 27, 2009 Case Management Conference, the Court hereby grants the Parties' joint motion to modify the case management schedule and modifies the May 5, 2008 Case Management and Pretrial Order as follows:

1. Defendants are granted leave to file on August 26, 2009, an additional summary judgment motion regarding Plaintiffs' royalty damages theory. The Parties shall meet and confer as soon as possible to schedule on a priority basis what, if any, discovery may be needed by Plaintiffs before filing of that motion.
2. The case management and pre-trial schedule is now as follows:

| DESCRIPTION | DEADLINE/DATE |
|---|---|
| Defendants to File Summary Judgment Motion Regarding Plaintiffs' Royalty Damages Theory | 08/26/09 |
| Plaintiffs to File Opposition to Defendants' Summary Judgment Motion Regarding Plaintiffs' Royalty Damages Theory | 09/23/09 |
| Last Day to Identify Custodians (w/ 6 in reserve) | 10/02/09 |
| Deadline to Designate Expert Witnesses | 10/02/09 |
| Defendants to File Reply in Support of Summary Judgment Motion Regarding Plaintiffs' Royalty Damages Theory | 10/07/09 |
| Hearing on Defendants' Summary Judgment Motion Regarding Plaintiffs' Royalty Damages Theory | 10/28/09 |
| Last Day to Identify Final 6 Custodians | 11/02/09 |
| Last Day to Serve Discovery Requests | 11/02/09 |
| Deadline to Serve Expert Reports | 11/16/09 |
| Updated Settlement Conference Statements Due | 11/23/09 |
| Settlement Conference | 11/30/09 |
| Deadline to Supplement and/or Correct All Disclosures and Discovery Responses | 12/04/09 |
| Fact Discovery Cut-off | 12/04/09 |
| Last Day to File Motion to Compel | 12/11/09 |
| Deadline to Designate Rebuttal Expert Witnesses | 01/22/10 |
| Deadline to Serve Rebuttal Expert Reports | 02/26/10 |
| Parties to File Dispositive Motions | 03/03/10 |
| Parties to File Oppositions to Dispositive Motions | 03/31/10 |
| Parties to File Replies Re Dispositive Motions | 04/14/10 |
| Expert Discovery Cut-off | 04/23/10 |

| | |
|---|---|
| Hearing on the Parties' Dispositive Motions | 05/05/10 |
| Last Day to Meet and Confer re Joint Pretrial Statement | 07/22/10 |
| Deadline to File Joint Pretrial Statement | 08/05/10 |
| Deadline to File Proposed Joint Voir Dire Questions and Joint Jury Instructions | 08/05/10 |
| Deadline to File Trial Briefs | 08/05/10 |
| Deadline to File Motions in Limine (all in one document) | 08/05/10 |
| Deadline to File Deposition Excerpts | 08/05/10 |
| Deadline to File Witness List | 08/05/10 |
| Deadline to File Exhibit List | 08/05/10 |
| Deadline to Exchange and Submit Exhibits (2 sets to Court) | 08/05/10 |
| Deadline to File Any Request re: Treatment of Conf. or Sealed Docs. | 08/05/10 |
| Deadline to File Proposed Verdict Form | 08/05/10 |
| Deadline to File Opposition to Motions in Limine | 08/19/10 |
| Pretrial Conference | 09/30/10 |
| Trial Commences (estimated 6 weeks) | 11/01/10 |

3. Each side is allowed a total of 450 deposition hours for fact witness depositions.
4. Each side is allowed a total of 15 expert witnesses. The Parties shall meet and confer regarding the time needed for expert depositions.
5. Plaintiffs are permitted to move to amend the complaint by July 15, 2009 to add Siebel-related claims and any other claims or allegations agreed to by the Parties prior to July 15, 2009. All Siebel-related claims shall be asserted at this time. The Parties reserve their respective rights, defenses, and positions with respect to any other amendment.
6. Should Plaintiffs intend to seek any other amendment to the complaint, then Plaintiffs shall make the appropriate motion(s) no later than August 26, 2009. The Parties shall meet and confer prior to the filing of any motion under this paragraph.

Additionally, the following discovery limitations shall apply:

1. For purposes of the following limitations, the phrase "relating to Siebel" used in the context of any new discovery right or obligation created by this Order relating to any discovery sought from Defendants shall: (a) mean documents and testimony of similar scope to those already provided by Defendants in this case relating to PeopleSoft and JD Edwards products and support; and (b) include discovery relating

to Defendants' decision for Defendant TomorrowNow, Inc. ("TomorrowNow") to provide Siebel support, the provision of third-party maintenance and related support services to Siebel customers, and the Siebel portion of Defendants' Safe Passage program to the extent that it involves entities who were customers of both TomorrowNow and SAP (*i.e.*, Defendants SAP AG and SAP America, Inc.). For purposes of the following limitations, the phrase "relating to Siebel" used in the context of any new discovery right or obligation created by this Order relating to discovery sought from Plaintiffs shall: (a) mean documents and testimony of similar scope to those already provided by Plaintiffs in this case relating to PeopleSoft and JD Edwards products and support; and (b) include discovery relating to Siebel software licensing, maintenance, and related support services to Siebel customers for the time frames relevant to this case, whether before and after Plaintiffs' acquisition of Siebel. Notwithstanding this Order, the Parties retain all rights and objections regarding the proper scope of discovery from any party relating to Siebel in this case. Nothing in this Order limits or prevents the Parties from continuing to meet and confer on such disputes about the proper scope of Siebel discovery, or from submitting such disputes to Judge Laporte if necessary for a ruling.

2. Each side is permitted to designate an additional 20 custodians, for a total of 140 custodians per side. Up to 7 of Plaintiffs' additional 20 custodians may be SAP custodians. The Parties will meet and confer regarding the desired custodians and may seek further relief from Judge Laporte if an agreement cannot be reached.
3. In addition to the current expanded timeline agreement between the Parties, Defendants shall produce additional responsive custodian documents (including those relating to Siebel) from March 22, 2007 through October 31, 2008 for Werner Brandt, Gerhard Oswald, and Thomas Bamberger, subject to Defendants' objections to any outstanding document requests.
4. Defendants shall provide the following individual depositions with associated time limits that shall be counted against the total deposition hours available to Plaintiffs:

a. Up to four additional actual clock hours each for Shelley Nelson and James Mackey relating to Siebel and/or Defendants' post-litigation conduct through October 31, 2008, without regard to whether questions on these topics also incidentally relate to issues previously covered with these witnesses. With respect to Shelley Nelson, this additional time may also be used to address any other questions or documents relevant to the claims and defenses in this case that have not been previously asked or used in her prior depositions, with the exception of Plaintiffs' Deposition Exhibit 135.

b. Up to seven additional actual clock hours each for Werner Brandt, Gerhard Oswald, and Martin Breuer relating to Siebel and/or Defendants' post-litigation conduct through October 31, 2008. The seven hours assumes that all seven hours would be conducted in German and thus, per Judge Laporte's prior ruling, would count against Plaintiffs' total allotment as 3.5 hours each.

5. Other than as provided in 4(a) and (b) immediately above, no depositions of individuals from either side will be re-opened without consent of the relevant party or a ruling from Judge Laporte after a showing of good cause.

6. By June 30, 2009:

a. Plaintiffs and TomorrowNow will provide dates for supplemental depositions of the Parties' corporate designees on topics relating to Siebel, subject to any and all objections the Parties may have to the deposition notices.

b. SAP will provide a date for a SAP Rule 30(b)(6) deposition relating to Siebel, for up to 7 hours of record time, subject to any and all objections SAP may have to the deposition notice.

c. SAP will provide dates for supplemental depositions of its corporate designees on topics relating to Siebel other than those addressed during the deposition permitted by paragraph 6(b) above, for up to four hours of record time combined, subject to any and all objections SAP may have to the deposition notices.

7. By July 15, 2009, the Parties will provide the following relating to Siebel:

   a. For Plaintiffs, all relevant organization charts or equivalents, acquisition documents, copyright application/registration documents, customer contracts, customer contract files, customer-specific financial and other records, and copies of software at issue (with license keys). For TomorrowNow, all relevant organization charts or equivalents, customer contracts, customer contract files, customer-specific financial and other records, and, to the extent they exist in a centralized location outside of what is normally included in this case as part of an individual custodian's production, documents reflecting development and implementation of the support model for Siebel customers. For SAP, all relevant organization charts or equivalents, board-level documents, including versions of board meeting minutes and any related board presentation materials previously produced with information relating to Siebel redacted, and SAP's customer contracts, files, and financial and other records for any Siebel customer that was recruited through Safe Passage and was also both a SAP and TomorrowNow customer. All Parties retain all rights and objections to all document requests and the Parties shall retain all rights and objections regarding the proper scope of discovery from any party relating to Safe Passage. To the extent any dispute arises regarding that scope, then it will be subject to further meet and confer and, if necessary, presented to Judge Laporte for a ruling.

   b. For Plaintiffs, all licenses (including exclusive and nonexclusive licenses), assignment agreements, or other agreements relevant to rights to use and/or ownership of the software and/or copyrighted material at issue. Plaintiffs retain the right to raise the same objections previously raised to these requests.

   c. For Plaintiffs, as to any copyrighted works claimed to be derivative works, identification and copies of the underlying work(s) and a list of Plaintiffs' products embodying, including, or constituting any copyrighted works at

issue. Plaintiffs retain the right to raise the same objections previously raised to these requests.

d. For Plaintiffs, Siebel financial information (including chart of accounts and other such information produced as to PeopleSoft and JD Edwards products). For Defendants and relating to Siebel, financial information (including chart of accounts and other such information produced as to PeopleSoft and JD Edwards products). All Parties retain the right to raise the same objections previously raised to these requests.

e. Defendants have given or will give Plaintiffs access to all servers, CDs, DVDs, and other portable media (besides backup tapes) relating to Siebel that after a reasonable search Defendants are aware of at TomorrowNow, and will not separately produce all environments or environment components relating to Siebel on those servers or any other media. If Plaintiffs locate any environment components in the Data Warehouse and mark them for production, then Defendants will produce the files they mark, subject to a privilege review. Defendants will also produce all TomorrowNow fixes provided to Siebel customers, assuming such fixes can be located and are kept in a central location. If such fixes are kept on a server in the Data Warehouse, then Plaintiffs can mark them for production as part of the Data Warehouse review.

f. Each side may identify 20 interrogatory responses that it would like updated in scope consistent with the additional Siebel discovery permitted or required elsewhere in this Order. The Parties retain all objections to any and all such interrogatories.

8. Defendants have provided declarations stating that neither SAP, TomorrowNow, nor any SAP subsidiary provided any third-party maintenance and related support services for eBusiness Suite, Retek, or Hyperion (the "HRE Products"). Plaintiffs have reviewed these declarations and agree they will not propound further discovery

in this case relating to the HRE Products. Defendants agree not to object to providing documents or testimony relating to the JD Edwards, PeopleSoft, or Siebel products on the grounds that any such documents or testimony relating directly to those three products also contain information relating to the HRE Products. Plaintiffs agree that they will not seek to amend their complaint in this case to include new claims attempting to add the HRE Products, but will reserve their rights to file a separate lawsuit relating to the HRE Products at another time, should they obtain any information supporting such claims. Defendants agree not to assert that any such subsequent claims regarding the HRE Products are improper by using an argument that relies on the fact that those claims were not asserted in this lawsuit.

DATED: June 4, 2009

JONES DAY

By: /s/
Tharan Gregory Lanier
Attorneys for Defendants
SAP AG, SAP America, Inc., and TomorrowNow, Inc.

In accordance with General Order No. 45, Rule X, the above signatory attests that concurrence in the filing of this document has been obtained from the signatory below.

DATED: June 4, 2009

BINGHAM McCUTCHEN LLP

By: /s/
Geoffrey M. Howard
Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA, Ltd.

**IT IS SO ORDERED.**

Date: 06/11, 2009

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
Judge Phyllis J. Hamilton

Hon. Phylli
United State

# EXHIBIT F

SAP | Global

# SAP EXTENDS LEADERSHIP IN DELIVERING SOLUTIONS TO THE CFO WITH ACQUISITION OF OUTLOOKSOFT CORPORATION

## Delivers Most Comprehensive Solution for CFOs – Spanning Enterprise Resource Planning (ERP), Governance, Risk and Compliance (GRC) and Corporate Performance Management (CPM)

WALLDORF, Germany and STAMFORD, CT - May 08, 2007 - Extending its leadership in delivering complete solutions for the CFO, SAP AG (NYSE: SAP) today announced its intention to acquire OutlookSoft Corporation, a privately held provider of integrated planning, budgeting, forecasting and consolidation software. Today's announcement marks another milestone in SAP's multi-year plan to holistically address the increasingly sophisticated requirements of the CFO around driving business performance, managing risk, ensuring compliance and spearheading financial transformation in their organizations. In making the announcement, SAP stated that the acquisition is expected to be completed in June 2007, pending approval from the respective antitrust authorities. Terms of the acquisition were not disclosed.

CFOs today face increasing pressure to meet regulatory requirements and drive efficiencies while at the same time playing a strategic role in driving the growth and profitability of the business. SAP's build/partner approach, supplemented by strategic "fill in" acquisitions, has enabled CFOs to benefit from the most comprehensive, integrated set of financial business processes. Building upon the market-leading, cross-industry financial applications suite within SAP ERP, CFOs can ensure business compliance and manage risk with integrated governance, risk and compliance management applications (SAP solutions for GRC) and improve their business performance linking strategy to execution with risk-adjusted planning and corporate performance management (SAP solutions for performance management). The transaction with OutlookSoft is continuing evidence of SAP's strategy to use well-placed acquisitions to complement its broad solution offering by gaining innovative technologies, while maintaining its successful organic growth track record.

"Across industry segments and global markets, CFOs are under tremendous pressure to improve business performance, predictability and stakeholder confidence," said Doug Merritt, corporate officer and member of the Executive Council, head of Business User Development, SAP AG. "Leading companies are looking to establish unified, easy-to-use best practice business processes that enable a predictive and risk-adjusted approach to performance. OutlookSoft completes another key component of our multi-year strategy to build, partner and acquire unique offerings for CFOs, a strategy based on thorough market analysis and customer input. OutlookSoft brings the people, intellectual property and expertise that will enhance the SAP business user experience and add value for a strong cross-section of our customer base."

**OutlookSoft Innovation**

Recognizing customers' needs for an innovative new approach to performance management, OutlookSoft was founded in 1999 to deliver the standard for next-generation solutions based on unprecedented ease-of-use for the business user and unified experience across all performance management processes. OutlookSoft focused on this vision by modernizing solutions for the CFO leveraging Web 2.0 technologies to enable collaboration across the enterprise and delivering real-time, predictive analytics capabilities and finance-ready business process flows, an extensible library of procedures guiding business users through all performance management activities and facilitating collaboration.

The company's vision has been validated by more than 700 customers globally, a record year in 2006 with 25 percent revenue growth and an unprecedented win-rate against its competitors with the latest availability of OutlookSoft 5. OutlookSoft's singular commitment to the CFO, its deep domain knowledge and its vision for next-generation performance management solutions clearly complements SAP's core expertise in integrated financial applications and strengthens the company's strategy to effectively address the increasingly complex requirements of the finance organization.

OutlookSoft's modern, standards-based solution is built on a service-oriented architecture (SOA), thus enabling customers

to take advantage of OutlookSoft 5 and extend the value of their SAP solutions by leveraging integration with SAP's service-enabled applications via a common technology platform, SAP NetWeaver. In particular, SAP NetWeaver Business Intelligence (SAP NetWeaver BI), with over 14,000 installations, will provide the robust BI infrastructure powering the OutlookSoft 5 application and deliver a common user experience to the business user.

"From the beginning, OutlookSoft has focused on helping business users, the executive team and, most importantly, the CFO," said Phil Wilmington, president and CEO, OutlookSoft. "Our solution unifies organizations, disparate systems and processes through innovative technology and accessibility to information. This is an exciting time for our customers and partners, as we combine the business process expertise and technology platform from SAP with the usability and deep functionality of OutlookSoft's performance management application."

**About OutlookSoft**
Headquartered in Stamford, Connecticut, OutlookSoft employs approximately 250 people and has offices in the United States, United Kingdom, France, Switzerland and Italy.
For additional recent news about SAP's solutions for the CFO, please visit:
http://www.sap.com/company/press/press.epx?pressid=7596.

**About SAP**
SAP is the world's leading provider of business software*. Today, more than 39,400 customers in more than 120 countries run SAP® applications—from distinct solutions addressing the needs of small businesses and midsize companies to suite offerings for global organizations. Powered by the SAP NetWeaver® platform to drive innovation and enable business change, SAP software helps enterprises of all sizes around the world improve customer relationships, enhance partner collaboration and create efficiencies across their supply chains and business operations. SAP solution portfolios support the unique business processes of more than 25 industries, including high tech, retail, financial services, healthcare and the public sector. With subsidiaries in more than 50 countries, the company is listed on several exchanges, including the Frankfurt stock exchange and NYSE under the symbol "SAP." (Additional information at <http://www.sap.com>)

(*) SAP defines business software as comprising enterprise resource planning and related applications such as supply chain management, customer relationship management, product life-cycle management and supplier relationship management.

Any statements contained in this document that are not historical facts are forward-looking statements as defined in the U.S. Private Securities Litigation Reform Act of 1995. Words such as "anticipate," "believe," "estimate," "expect," "forecast," "intend," "may," "plan," "project," "predict," "should" and "will" and similar expressions as they relate to SAP are intended to identify such forward-looking statements. SAP undertakes no obligation to publicly update or revise any forward-looking statements. All forward-looking statements are subject to various risks and uncertainties that could cause actual results to differ materially from expectations. The factors that could affect SAP's future financial results are discussed more fully in SAP's filings with the U.S. Securities and Exchange Commission ("SEC"), including SAP's most recent Annual Report on Form 20-F filed with the SEC. Readers are cautioned not to place undue reliance on these forward-looking statements, which speak only as of their dates.

Copyright © 2007 SAP AG. All rights reserved.
SAP, R/3, mySAP, mySAP.com, xApps, xApp, SAP NetWeaver and other SAP products and services mentioned herein as well as their respective logos are trademarks or registered trademarks of SAP AG in Germany and in several other countries all over the world. All other product and service names mentioned are the trademarks of their respective companies. Data contained in this document serve informational purposes only. National product specifications may vary.

**Note to Editors**
Webcasts, keynotes, presentations and podcasts from SAPPHIRE '07 Atlanta are available at www.sapsapphire.com/usa2007/podcast.epx and www.sapsapphire.com/usa2007/webcastsandreplays.epx. Broadcast-standard video content about SAP is available at www.thenewsmarket.com/sap. Registration on the site and video is free to the media.

**For customers interested in learning more about SAP products:**
Global Customer Center: +49 180 534-34-24
United States Only: 1 (800) 872-1SAP (1-800-872-1727)

**For more information, press only:**
Shabana Khan, +1 (650) 461-1332, shabana.khan@sap.com, PDT
SAP Press Office, +49 (6227) 7-46315, CET; +1 (610) 661-3200, EDT; press@sap.com
Astrid Pölchen, SAP, +49 (6227) 7-47644, astrid.poelchen@sap.com, CET
Uwe Schaad, Burson-Marsteller, +49 69 238 09-31, uwe.schaad@bm.com, CET

**Want to learn more?** Contact the SAP sales office nearest you.

Site Map | Platform | Partners | Investors | Careers | Inside Access | Contact SAP
Copyright/Trademark | Privacy | Impressum | Using SAP.com | Text-Only View | Full-Page View

Questions or comments about the Web site?
Contact the webmaster@sap.com.

# EXHIBIT G

SAP | Global

# SAP EXTENDS IDENTITY MANAGEMENT CAPABILITIES IN SAP NETWEAVER WITH ACQUISITION OF MAXWARE

## SAP is Enhancing CIOs' Ability to Centralize Identity Management and Increase Security Across Heterogeneous SOA Landscapes

Vienna, Austria - May 14, 2007 -

Delivering new solutions to help CIOs increase security in today's heterogeneous IT environments, SAP AG (NYSE: SAP) today announced that it is extending the identity management capabilities in the SAP NetWeaver® platform. These enhancements come with the acquisition of MaXware, a privately held provider of identity management software. Building on SAP's knowledge and expertise in core business processes, the addition of new identity management capabilities in SAP NetWeaver will deliver an integrated platform to work across systems and across business processes, to manage identities and ensure security in real-time. The announcement was made at SAPPHIRE® '07, SAP's international customer conference, being held in Vienna, Austria, May 14 – 16.

**Demo**

Experience firsthand the features, functionality, and benefits of SAP NetWeaver.

SAP NetWeaver: The Technology Platform for Flexible Business Strategies

Improving security around information workers involved in one or more business processes is becoming increasingly important as companies move to the highly distributed environment of enterprise service-oriented architecture (enterprise SOA). In addition to increasing security in an enterprise SOA, CIOs are looking to reduce the total cost of running IT through an integrated approach to assigning and administering user roles across many systems. As companies service-enable their applications, the combination of distributed enterprise services with powerful cross-system business processes requires that identities are managed in an integrated, straightforward and simple manner. By combining MaXware's proven, flexible and easy-to-configure identity management solution with SAP's industry-leading business applications and SOA-based platform, SAP can offer an identity management solution that increases flexibility and agility of business units when managing employee identities and when managing identities across company boundaries with customers, distributors or suppliers.

"Security ranks at the top of CIO agendas as they look to further improve security and control access, while lowering the administrative costs associated with managing identities," said Klaus Kreplin, corporate officer and member of the Executive Council, head of SAP NetWeaver Technology, SAP AG. "With the addition of MaXware capabilities, SAP will deliver to customers a lean, integrated and proven identity management solution for heterogeneous IT landscapes. This will be of tremendous benefit to both MaXware and SAP customers."

MaXware provides a comprehensive solution suite and a world-class professional services delivery team, helping companies optimize, integrate and evolve their current identity management processes. MaXware's virtualization and user provisioning technologies form the core of its identity management solution are built on an enterprise SOA and offer identity management as a service—providing scalable, real-time and standards-based access to identity information residing in multiple repositories. MaXware serves 300 customers worldwide in a diverse range of industries, such as technology, manufacturing, business services, defense, energy, healthcare, financial services and public sector. MaXware's corporate headquarters are in Trondheim, Norway, with sales subsidiaries in the United States and the United Kingdom.

"This is a very exciting time for MaXware customers, as they now have access to the global reach and deep solution offerings of SAP," said Stale Svenning, president and CEO, MaXware. "For our employees, this is also an exciting time as we look to new innovations and value we can collectively deliver to CIOs who are managing the heterogeneity of enterprise SOA landscapes."

The addition of MaXware complements SAP's business applications and platform and will enable customers to extend the value of their SAP investments. While the new MaXware capabilities in the platform will provide the functionality to centrally manage and provision identity information in SAP and heterogeneous environments, SAP GRC Access Control can deliver business value to the customer through its rich capabilities and content to support end-to-end compliance and risk management.

The acquisition of MaXware is continuing evidence of SAP's strategy to use well-placed, fill-in acquisitions to complement its broad solution offering by gaining innovative technologies while maintaining its successful organic growth track record. Integration planning is still underway for MaXware's offices and its 30 employees. The acquisition is expected to close May 2007. Terms of the acquisition were not disclosed.

**Continuing Innovation in SAP NetWeaver**

The addition of MaXware builds on the new innovations SAP is delivering in the platform this year. At SAPPHIRE '07 Atlanta, SAP unveiled the next wave of functionality in SAP NetWeaver aligned under four pillars: improved user access and productivity, accelerated application and business process composition, streamlined access to relevant and reliable information across the enterprise and automated governance of enterprise SOA. (See April 24, 2007 press release, titled "SAP Unveils Road Map for Next Wave of SAP NetWeaver Innovations.") Marking the first milestone in the roadmap, SAP announced that SAP NetWeaver Composition Environment (SAP NetWeaver CE), a next-generation set of standards-based and integrated composition tools, has been released to customers and partners for full production use. (See May 9, 2007 press release, titled "SAP NetWeaver® Composition Environment Ready to Power Companies' Enterprise SOA Applications."

**About SAP**

SAP is the world's leading provider of business software*. Today, more than 39,400 customers in more than 120 countries run SAP® applications—from distinct solutions addressing the needs of small businesses and midsize companies to suite offerings for global organizations. Powered by the SAP NetWeaver® platform to drive innovation and enable business change, SAP software helps enterprises of all sizes around the world improve customer relationships, enhance partner collaboration and create efficiencies across their supply chains and business operations. SAP solution portfolios support the unique business processes of more than 25 industries, including high tech, retail, financial services, healthcare and the public sector. With subsidiaries in more than 50 countries, the company is listed on several exchanges, including the Frankfurt stock exchange and NYSE under the symbol "SAP." (Additional information at <http://www.sap.com>)

(*) SAP defines business software as comprising enterprise resource planning and related applications such as supply chain management, customer relationship management, product life-cycle management and supplier relationship management.

Any statements contained in this document that are not historical facts are forward-looking statements as defined in the U.S. Private Securities Litigation Reform Act of 1995. Words such as "anticipate," "believe," "estimate," "expect," "forecast," "intend," "may," "plan," "project," "predict," "should" and "will" and similar expressions as they relate to SAP are intended to identify such forward-looking statements. SAP undertakes no obligation to publicly update or revise any forward-looking statements. All forward-looking statements are subject to various risks and uncertainties that could cause actual results to differ materially from expectations. The factors that could affect SAP's future financial results are discussed more fully in SAP's filings with the U.S. Securities and Exchange Commission ("SEC"), including SAP's most recent Annual Report on Form 20-F filed with the SEC. Readers are cautioned not to place undue reliance on these forward-looking statements, which speak only as of their dates.

Copyright © 2007 SAP AG. All rights reserved.
SAP, R/3, mySAP, mySAP.com, xApps, xApp, SAP NetWeaver and other SAP products and services mentioned herein as well as their respective logos are trademarks or registered trademarks of SAP AG in Germany and in several other countries all over the world. All other product and service names mentioned are the trademarks of their respective companies. Data contained in this document serve informational purposes only. National product specifications may vary.

**Note to Editors**

Webcasts, keynotes, presentations and podcasts from SAPPHIRE '07 Vienna will be available as of Monday, May 14 at www.sapsapphire.com/emea2007/replays.epx. To review the announcements, keynote presentations and other content from SAPPHIRE '07 Atlanta, held in Atlanta, Georgia, April 22-25, visit SAPPHIRE '07 Atlanta Online, www.sapsapphire.com/usa2007/podcast.epx and www.sapsapphire.com/usa2007/webcastsandreplays.epx. Broadcast-

standard video content about SAP is available at www.thenewsmarket.com/sap. Registration on the site and video is free to the media.

**For customers interested in learning more about SAP products:**
Global Customer Center: +49 180 534-34-24
United States Only: 1 (800) 872-1SAP (1-800-872-1727)

**For more information, press only:**
Shabana Khan, +1 (650) 461-1332, shabana.khan@sap.com, PDT
Astrid Pölchen, +49 (6227) 7-47644, astrid.poelchen@sap.com, CET
SAP Press Office, +49 (6227) 7-46315, CET; +1 (610) 661-3200, EDT; press@sap.com
Rachel Allen, Burson-Marsteller, +1 (415) 591-4041, rachel.allen@bm.com, PDT
Uwe Schaad, Burson-Marsteller, +49 69 238 09-31, uwe.schaad@bm.com, CET

**During SAPPHIRE (from May 14 to 16), to speak with press contacts on site, please dial the SAP press room at ++49 6227 7 74069.**

**Want to learn more?** Contact the SAP sales office nearest you.

Site Map | Platform | Partners | Investors | Careers | Inside Access | Contact SAP
Copyright/Trademark | Privacy | Impressum | Using SAP.com | Text-Only View | Full-Page View

Questions or comments about the Web site?
Contact the webmaster@sap.com.

# EXHIBIT H

Global

# SAP TO ACQUIRE BUSINESS OBJECTS IN FRIENDLY TAKEOVER

**WALLDORF, Germany & PARIS--(BUSINESS WIRE)--**SAP AG (NYSE:SAP) and Business Objects S.A. (Nasdaq:BOBJ) (Euronext Paris ISIN code: FR0004026250 – BOB) today announced that the companies have reached an agreement that will bring together two of the information technology industry's leaders, resulting in an unmatched offering for Business Users, enabling timely and accurate decision-making. Under the terms and conditions of the tender offer agreement, SAP will make a cash offer of € 42.00 per ordinary share and for American Depositary Shares (ADS) at the US$ equivalent based on the EUR/US$ exchange rate as of the settlement of the tender offers. The transaction volume taking into account the transaction costs will be slightly above €4.8 billion. The Business Objects board of directors has approved the tender offer agreement between the two companies and anticipates recommending the offer to its shareholders subject to fulfillment of certain regulatory requirements.

Together, SAP and Business Objects intend to offer high-value solutions for process- and business-oriented professionals. The solutions will be designed to enable companies to strengthen decision processes, increase customer value and create sustainable competitive advantage through real-time, multi-dimensional business intelligence. SAP and Business Objects believe that customers will gain significant business benefits through the combination of new, innovative offerings of enterprise-wide business intelligence solutions along with embedded analytics in transactional applications. Additionally, the joint partner ecosystems will be fueled by the industry's most powerful business process platform providing customers with the best enterprise information management platform available for SAP and non-SAP environments.

SAP is the world's leading provider of business software with more than 41,200 customers in more than 120 countries running SAP applications—from distinct solutions addressing the needs of small and midsize enterprises to suite offerings for global organizations. A key component of SAP's growth strategy is to significantly increase its revenues from new products including addressing the growing demands of Business Users.

"We are highly committed to the next generation of applications serving Business Users," said Henning Kagermann, CEO of SAP AG. "The combination of SAP and Business Objects in their respective domains will benefit customers, prospects, partners, employees and shareholders. At SAP, we are excited about the prospect of having Business Objects join the SAP Group."

"The acquisition of Business Objects is in keeping with SAP's stated strategy to double our addressable market by 2010 as announced in 2005," said Kagermann. "SAP will accelerate its growth in the Business User segment, while complementing the company's successful organic growth strategy. With the delivery of the first business process platform; the rapid adoption of our enterprise SOA platform, SAP NetWeaver; and the successful launch of the first complete on-demand business solution for midsized companies, SAP Business ByDesign, SAP can now take the opportunity to focus on the industry's next high-growth opportunity, by accelerating and enhancing our efforts for the Business User category," Kagermann, said.

Headquartered in Paris, France Business Objects is widely recognized as the pioneer of the business intelligence (BI) software category. Today, Business Objects is the world's leading BI software company with solutions spanning the information discovery and delivery, information management, analysis and performance management categories for more than 44,000 customers around the globe.

"Business Objects helps companies transform the way they work through the use of intelligent information," said Bernard Liautaud, Chairman and Founder of Business Objects. "The combination of Business Objects and SAP means that we can truly amplify the reach of Business Intelligence – from the C-suite to Main Street. John Schwarz and I are excited to see the innovation and hard work of our employees and partners validated and soon extended by the portfolio, domain expertise and presence of SAP."

**Transaction expected to be accretive to SAP's earnings per share on a U.S. GAAP basis in 2009 and beyond**

SAP and Business Objects plan to exploit additional revenue opportunities and leverage potential synergies. Additional details regarding specific product, go-to-market and other executional details will be provided after the transaction is complete. Neither company intends to undertake significant restructuring as a result of the transaction.

The closing of the transaction is expected within the first quarter of 2008. On that basis SAP expects the transaction to be accretive to SAP's earnings per share on a U.S. GAAP basis in 2009 and beyond; however, due to acquisition-related one-time effects in 2008 SAP expects the transaction to be dilutive by mid single digits € cents to SAP's 2008 earnings per share on a U.S. GAAP basis.

**Business Objects to Operate Stand-Alone; Companies to Share Executives, Resources**

The two companies announced that Business Objects will operate as a stand-alone business as part of the SAP Group. Business Objects customers will continue to benefit from open, broad and integrated business intelligence solutions – independent of databases and applications – while also gaining the advantage of application alignment for business analytics. Business Objects will significantly enhance its Business Intelligence portfolio scope and capacity with SAP people, know-how and networks.

SAP said that the expertise and solutions from Business Objects would be complimentary to offerings SAP already provides for Business Users – including, for example, category leadership in Governance, Risk and Compliance; business intelligence in the SAP platform; as well as corporate performance management capabilities – including those recently added through tuck-in acquisitions from OutlookSoft and Pilot Software.

When the transaction is complete, John Schwarz will continue as the CEO of the Business Objects entity and is expected to become a member of the SAP Executive Board. Doug Merritt, Corporate Officer, Business User, SAP, will then join the Business Objects entity and report to John Schwarz. Subject to the closing, SAP's Supervisory Board intends to elect Business Object founder Bernard Liautaud to the SAP Supervisory board at the company's next shareholders meeting. Until that time, Liautaud will have an advisory role to Henning Kagermann on aspects of strategy and integration.

**Tender Offer Details and Disclosure Information**

The transaction is to take the form of a tender offer under French law and a parallel tender offer under US law for all Business Objects shares and all American Depositary Shares representing Business Objects ordinary shares (the "ADS"), as well as all convertible bonds issued by Business Objects (the "Convertible Bonds") and all warrants issued by Business Objects (the "Warrants"). The price to be offered per convertible bond will be €50.65. Under the terms and conditions of the tender offer agreement, SAP will make a cash offer of € 42.00 per ordinary share and for American Depositary Shares (ADS) at the US$ equivalent based on the EUR/US$ exchange rate as of the settlement of the tender offers.

The offers will only be opened for acceptances once the French stock exchange authority, the Autorité des marchés financiers (AMF), and the French Finance Ministry have granted their respective clearances. The offers will be subject to the following conditions: (i) Business Objects securities tendered in the offers represent at least 50.01 % of all voting rights on a fully diluted basis and (ii) receipt of EU and US antitrust approvals.

The complete offer documents in accordance with French and US law will be submitted, together with further details of the offer, to the French financial services authority, Autorité des marchés financiers (AMF), and the US Securities and Exchange Commission (SEC).

**Additional Information**

The tender offer for the outstanding ordinary shares, the Convertible Bonds and the warrants of Business Objects has not yet commenced. This press release is for informational purposes only and is not an offer to buy or the solicitation of an offer to sell any Business Objects securities. The solicitation and the offer to buy ordinary shares of Business Objects, the Convertible Bonds and the warrants will be made only pursuant to an offer to purchase and related materials that SAP and its subsidiary intend to file with the SEC on Schedule TO. Business Objects also intends to file a solicitation/recommendation statement on Schedule 14D-9 with respect to the tender offer

Business Objects stockholders and other investors should read the Tender Offer Statement on Schedule TO, the

Schedule 14D-9 as well as the *Note d'Information* and the *Note en Réponse* to be filed by SAP carefully because these documents will contain important information, including the terms and conditions of the tender offer.

Business Objects stockholders and other investors will be able to obtain copies of these tender offer materials and any other documents filed with the AMF from the AMF's website (amf-france.org) or with the SEC at the SEC's website at www.sec.gov, in both cases without charge. Materials filed by SAP may be obtained for free at SAP's web site, www.sap.com. Materials filed by Business Objects may be obtained for free at Business Objects' web site, www.businessobjects.com.

Stockholders and other investors are urged to read carefully all tender offer materials prior to making any decisions with respect to the tender offer.

**Press Conferences in Frankfurt and Paris**

SAP and Business Objects senior management will host parallel joint press conferences in two locations to discuss the transaction:

in **Frankfurt** on Monday, October 8th at 3pm CET, 9am EST, and 6am PST (location: Japan-Center, Conference Center, 1st floor, Taunustor 2, 60311 Frankfurt am Main, Germany, http://www.taunustor.de/); dial in number: +1 480 629-9564 (US), +44 207 190 1596 (UK), +49 695 8999 0701 (Germany). Replay number: +1 303 590-3030 (US), +44 207 154 2833 (UK); Replay passcode: 3792655. The Frankfurt press conference will be webcast at www.sap.com/press,

in **Paris** on Monday, October 8th at 3pm CET, 9am EST, and 6am PST (location: Hotel de Meurice, Paris); dial in number: +1 334 323 6201 (US), +44 207 162 0025 (UK), +33 17099 3208 (France). The Paris press conference will be webcast at http://wcc.webeventservices.com/view/wl/r.htm?e=95765&s=1&k= 7CFDD62292014C7EA5B7220DD5D79C66&cb=genesys (Due to its length, this URL may need to be copied/pasted into your Internet browser's address field. Remove the extra space if one exists.)

**Investor and Financial Analyst Conference Call**

The press conferences will be followed by a joint investor and financial analyst conference call at 4 pm CET, 10 am EST and 7 am PST (Dial in number: +1 480 293-1744 (US), +44 207 190 1232 (UK), +49 695 8999 0706 (Germany)). Replay number: +1 303 590-3030 (US), +44 207 154 2833 (UK), Replay passcode: 3792656.

The financial analyst conference call will be webcast at www.sap.com/investor

**About SAP**

SAP is the world's leading provider of business software[1]. More than 41,200 customers in more than 120 countries run SAP® applications—from distinct solutions addressing the needs of small and midsize enterprises to suite offerings for global organizations. Powered by the SAP NetWeaver® platform to drive innovation and enable business change, SAP software helps enterprises of all sizes around the world improve customer relationships, enhance partner collaboration and create efficiencies across their supply chains and business operations. SAP solution portfolios support the unique business processes of more than 25 industries, including high tech, retail, financial services, healthcare and the public sector. With subsidiaries in more than 50 countries, the company is listed on several exchanges, including the Frankfurt stock exchange and NYSE under the symbol "SAP." (Additional information at <http://www.sap.com>)

**About Business Objects**

Business Objects has been a pioneer in business intelligence (BI) since the dawn of the category. Today, as the world's leading BI software company, Business Objects transforms the way the world works through intelligent information. The company helps illuminate understanding and decision-making at more than 44,000 organizations around the globe. Through a combination of innovative technology, global consulting and education services, and the industry's strongest and most diverse partner network, Business Objects enables companies of all sizes to make transformative business decisions based on intelligent, accurate, and timely information. Business Objects has dual headquarters in San Jose,

Calif., and Paris, France. The company's stock is traded on both the Nasdaq (BOBJ) and Euronext Paris (ISIN: FR0004026250 - BOB) stock exchanges. More information about Business Objects can be found at www.businessobjects.com.

**Forward-Looking Statements**

This release contains forward-looking statements that involve risks and uncertainties concerning the parties' ability to close the transaction and the expected closing date of the transaction, the anticipated recommendation by the Business Objects Board of the transaction to shareholders, the anticipated benefits and synergies of the proposed transaction, anticipated future combined operations, products and services, and the anticipated role of Business Objects, its key executives and its employees within SAP following the closing of the transaction. Actual events or results may differ materially from those described in this release due to a number of risks and uncertainties. These potential risks and uncertainties include, among others, the outcome of regulatory reviews of the proposed transaction, the ability of the parties to complete the transaction (including SAP's ability to tender successfully for at least 50.01% of all voting rights on a fully diluted basis), the impact on minority shareholders who do not tender into the offer, the failure to retain key Business Objects employees, customer and partner uncertainty regarding the anticipated benefits of the transaction, the failure of SAP and Business Objects to achieve the anticipated synergies of the proposed transaction and other risks detailed in Business Objects' SEC filings, including those discussed in Business Objects' quarterly report on Form 10-Q for the quarter ended June 30, 2007, which is on file with the SEC and available at the SEC's website at www.sec.gov. Business Objects is not obligated to update these forward-looking statements to reflect events or circumstances after the date of this document.

Any statements contained in this document that are not historical facts are forward-looking statements as defined in the U.S. Private Securities Litigation Reform Act of 1995. Words such as "anticipate," "believe," "estimate," "expect," "forecast," "intend," "may," "plan," "project," "predict," "should" and "will" and similar expressions as they relate to SAP are intended to identify such forward-looking statements. SAP undertakes no obligation to publicly update or revise any forward-looking statements. All forward-looking statements are subject to various risks and uncertainties that could cause actual results to differ materially from expectations. The factors that could affect SAP's future financial results are discussed more fully in SAP's filings with the U.S. Securities and Exchange Commission ("SEC"), including SAP's most recent Annual Report on Form 20-F filed with the SEC. Statements regarding the expected date of closing of the tender offer, and expected integration, growth and improved customer service benefits are forward-looking statements and are subject to risks and uncertainties including among others: uncertainties as to the timing of the tender offer, the satisfaction of closing conditions, including the receipt of regulatory approvals, whether certain industry segments will grow as anticipated, the competitive environment among providers of software solutions, and difficulties encountered in integrating companies and technologies. Readers are cautioned not to place undue reliance on these forward-looking statements, which speak only as of their dates.

Any statements contained in this document that are not historical facts are forward-looking statements as defined in the U.S. Private Securities Litigation Reform Act of 1995. Words such as "anticipate," "believe," "estimate," "expect," "forecast," "intend," "may," "plan," "project," "predict," "should" and "will" and similar expressions as they relate to SAP are intended to identify such forward-looking statements. SAP undertakes no obligation to publicly update or revise any forward-looking statements. All forward-looking statements are subject to various risks and uncertainties that could cause actual results to differ materially from expectations. The factors that could affect SAP's future financial results are discussed more fully in SAP's filings with the U.S. Securities and Exchange Commission ("SEC"), including SAP's most recent Annual Report on Form 20-F filed with the SEC. Readers are cautioned not to place undue reliance on these forward-looking statements, which speak only as of their dates.

**Note to Editors**

Broadcast-standard video content about SAP is available at www.thenewsmarket.com/sap. Registration on the site and video is free to the media.

[1] SAP defines business software as comprising enterprise resource planning and related applications such as supply chain management, customer relationship management, product life-cycle management and supplier relationship management.

Copyright © 2007 SAP AG. All rights reserved.

SAP, R/3, mySAP, mySAP.com, xApps, xApp, SAP NetWeaver and other SAP products and services mentioned herein as well as their respective logos are trademarks or registered trademarks of SAP AG in Germany and in several other countries all over the world. All other product and service names mentioned are the trademarks of their respective companies. Data contained in this document serve informational purposes only. National product specifications may vary.

**Want to learn more?** Contact the SAP sales office nearest you.



Questions or comments about the Web site?
Contact the webmaster@sap.com.