Walsh v. Apple, Inc. et al

Doc. 403

# EXHIBIT 1

Dockets.Justia.com



"House, Holly"
<holly.house@bingham.com>

08/04/2009 09:36 AM

To "'Jason McDonell'" <jmcdonell@JonesDay.com>

cc "Hann, Bree" <bree.hann@bingham.com>, "Wallace, Elaine" <ewallace@jonesday.com>, "Howard, Geoff" <geoff.howard@bingham.com>, "Jane L Froyd"

bcc

Subject RE: Proposal Regarding General Ledger Discovery

Jason:

Oracle has considered your July 30, 2009 Proposal Regarding General Ledger Discovery and has a counter that we believe is more than fair, representing provision of requested information that is relevant and not so burdensome that Oracle cannot produce it in a reasonable time frame. We apologize for not getting it too you sooner but Alex San Juan is on vacation which hampered instant turnaround on your proposal.

First we note that your proposal of last Thursday has two wholly new elements which are not part of your pending Motion to Compel: a request for trial balance reports and a request for production from far more entities than the three plaintiffs which you had narrowed the request to in your motion papers. The addition of multiple new unnamed entities not the subject of any pending request and not the subject of your motion and which is exponentially more burdensome is a non-starter for the reasons set forth below. Moreover, it has nothing to do with Defendants' pending motion and is not remotely before the Court.

As for the request that is the subject of Defendants' pending motion, Oracle agrees to produce, for the three plaintiff entities, Income Statements and Balance Sheets at the level of detail described in my July 22, 2009 letter. It also agrees to your new request for Trial Balances for those three entities. Because you have added a new category of report (trial balances) which requires the running of more reports, Oracle agrees to produce each of these agreed upon reports on a quarterly basis (not a monthly basis). This reduces the number of reports from 12 to 4 per year per entity (keeping in mind that each plaintiff entity has more than one company code and Oracle will be providing these for each company code of each plaintiff entity). Your ability to see detail and analyze the financial statements will not be meaningfully hampered by this reduction in reporting periods which keeps the burden on Oracle relatively the same as our last offer.

Oracle does not agree that any pre-acquisition Oracle financial reports are relevant. Revenue from customers lost prior to the acquisition would not have been subject to the structure of the Oracle corporate agreements during those pre-acquisition years. Any customers lost by PeopleSoft to TomorrowNow prior to the acquisition, if they had stayed, would have ended up being customers of Oracle USA post-acquisition. You already know from the Oracle corporate agreements and Ms. Kishore's testimony how much of the lost revenue would have ended up with Oracle USA. Moreover, there is no issue of product profitability breakdown when it comes to revenues pre-acquisition: PeopleSoft reported its margins on its products publicly. Nonetheless, because OUSA's precursor was PeopleSoft USA, and even though the original request on which Defendants moved only asked for production of GL data from 2004, to resolve this Oracle will produce quarterly reports beginning with the quarterly period beginning June 1, 2002 for Oracle USA and beginning with the quarterly period beginning June 1, 2005 for OIC and OEMEA. and will conclude as of 10/31/08 per your request. If and when you accept this offer in compromise, Oracle expects it could produce the responsive reports within four to six weeks.

As noted above, in your July 30, 2009 email you also, for the first time, ask for production of reports not only from the three plaintiff entities but from "each Oracle entity" that "indirectly" "received any revenue from the former TomorrowNow customers." As noted above this does not tie to either defendants' original request or the relief you request in your motion. In addition, this is vague request for a variety of reasons: e.g., if the customer was lost pre-acquisition then no Oracle entity received any revenue from it; for those lost after the acquisition, it is not at all clear what you mean by "indirect" receipt of revenue.

Assuming you are trying to, by this request, test the actual revenue flow between those Oracle entities referenced in Oracle's corporate agreements and about which Ms. Kishore attested, getting these reports will provide you nothing useful because, as we have explained, this information is not at the customer transaction level. Moreover, given the large number of non-plaintiff entities who "indirectly" touch relevant revenue at some point (and the even larger number of company codes associated with these multiple entities) the number of potentially responsive reports -- even at the quarterly level -- would be incredibly burdensome, taking months of dedicated effort to produce .

If you are not willing to accept this assertion, Oracle will let you choose three country-level entities and will produce one year's worth of quarterly reports akin to those it has agreed to produce for the plaintiffs so you can see for yourself the futility of this incredibly burdensome new request. Once you identify those entities Oracle can give you an estimate of the time to produce the sample reports. Oracle also can and will provide a sworn declaration of burdensomeness should you propound and move on such a request (though this new request is obviously not part of your pending motion).

Oracle believes this proposal should eliminate any basis for Defendants' pending motion on GL data and asks Defendants to confirm this to Oracle and the Court. We look forward to your response.

Holly

**From:** Jason McDonell [mailto:jmcdonell@JonesDay.com]
**Sent:** Friday, July 31, 2009 5:18 PM
**To:** House, Holly
**Cc:** Hann, Bree; Wallace, Elaine; Howard, Geoff; Jane L Froyd; Jacqueline K. S. Lee; Joshua L Fuchs; Scott Cowan; 'Greg Lanier'; Alinder, Zachary J.
**Subject:** RE: Proposal Regarding General Ledger Discovery

Thanks for the update.

Jason McDonell, Esq.
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104-1500
SF Office Main Tel.: (415) 626-3939
Direct Dial: (415) 875-5820
Fax: (415) 875-5700
Email: jmcdonell@jonesday.com

"House, Holly" <holly.house@bingham.com>

07/31/2009 03:59 PM

To "'Jason McDonell'" <jmcdonell@JonesDay.com>
cc "Alinder, Zachary J." <zachary.alinder@bingham.com>, "Scott Cowan" <swcowan@JonesDay.com>, "'Greg Lanier'" <tglanier@JonesDay.com>, "Joshua L Fuchs" <jlfuchs@JonesDay.com>, "Jane L Froyd" <jfroyd@JonesDay.com>, "Howard, Geoff" <geoff.howard@bingham.com>, "Hann, Bree" <bree.hann@bingham.com>, "Wallace, Elaine" <ewallace@jonesday.com>, "Jacqueline K. S. Lee" <jkslee@JonesDay.com>
Subject RE: Proposal Regarding General Ledger Discovery

Jason: We are working diligently to assess and respond to your proposal. Unfortunately, vacation schedules and other impediments mean we cannot provide a substantive response until Monday late afternoon at the earliest.

Holly

**From:** Jason McDonell [mailto:jmcdonell@JonesDay.com]
**Sent:** Thursday, July 30, 2009 11:00 AM
**To:** House, Holly
**Cc:** Alinder, Zachary J.; Scott Cowan; 'Greg Lanier'; Joshua L Fuchs; Jane L Froyd; Howard, Geoff; Hann, Bree; Wallace, Elaine; Jacqueline K. S. Lee
**Subject:** Proposal Regarding General Ledger Discovery

Holly,

This follows up on our meet and confer call of yesterday afternoon. You asked me to put in writing our proposal that might resolve our pending motion for general ledger information from Plaintiffs.

In our discussion yesterday, I reiterated that our request for general ledger information is relevant to Plaintiffs' claims for lost profits. I noted that the information we seek may provide information on Plaintiffs' profit margins, including the fact that Plaintiffs' profits are a function of inter-company payments. You questioned whether our motion pertains to the inter-company payments issue and I responded that it certainly does. Please note, for example, that our motion makes clear that we are seeking this discovery because each of the Plaintiffs is seeking "lost profits damages which must be analyzed in the context of their corporate interrelationships." Motion to Compel, p. 3.

We also discussed our Interrogatories Nos. 119-121 which seek information about how revenues are divided among the various entities, including the Plaintiffs. When we asked you if you contend that Plaintiffs have produced financial records that show the actual payments to Plaintiffs in connection with the customers at issue in this case, you were unable to identify any such records.

In any case, in yet another effort to get information on these issues, and having taken into account the assertions in your opposition brief and declarations, we propose that Plaintiffs produce the following:

(1) Income Statements and Balance Sheets for each Oracle entity that received any revenue, directly or indirectly, from the former TomorrowNow customers. These would be provided on a monthly basis, in the level of detail described in your 7/22/09 letter (p. 4) and for the period 1/1/02-10/31/08.

(2) Trial balances for the same entities for the same periods.

Defendants would review this information in good faith in an effort to resolve the general ledger request. Defendants, would reserve rights to seek additional information if this information proves to be inadequate.

Thank you.

Jason McDonell, Esq.
Jones Day

555 California Street, 26th Floor
San Francisco, CA 94104-1500
SF Office Main Tel.: (415) 626-3939
Direct Dial: (415) 875-5820
Fax: (415) 875-5700
Email: jmcdonell@jonesday.com

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

Confidentiality Notice: The information in this e-mail (including attachments, if any) is considered confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this e-mail is prohibited except by or on behalf of the intended recipient. If you have received this email in error, please notify me immediately by reply email, delete this email, and do not disclose its contents to anyone.

Bingham McCutchen LLP Circular 230 Notice: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

# EXHIBIT 2

JONES DAY

555 CALIFORNIA STREET • 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104-1500
TELEPHONE: 415-626-3939 • FACSIMILE: 415-875-5700

Direct Number: (415) 875-5820
jmcdonell@JonesDay.com

January 28, 2008

**CONFIDENTIAL INFORMATION DESIGNATED CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

**VIA EMAIL AND HAND DELIVERY**

Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

**Re:** ***Oracle Corporation, et al. v. SAP AG, et al.***
**Defendant's Motion to Compel No. 1**

Dear Judge Legge:

REDACTED - NOT RELEVANT

## INTRODUCTION

REDACTED - NOT RELEVANT

REDACTED - NOT RELEVANT

4. **Damages (Requests Nos. 65-66, 70-71, 79, 101, 107 and Interrogatory No. 5)**

Plaintiffs have stonewalled discovery into their alleged damages on grounds that "the law does not require Oracle to prematurely state all the bases for its damages." We strongly believe that substantial productive discovery into damages issues must occur immediately. Postponing this discovery would prejudice defendants and the defense damages expert, in light of the non-expert discovery cutoff of July 25, 2008 and the schedule for expert discovery.[11]

Oracle has identified the types of its alleged damages as including: (1) "lost profits from sales or licenses to current and potential customers of Oracle support services and software programs;" (2) "diminution of Oracle's competitive advantage;" (3) "harm to Oracle's data, programs, and computer systems … including their functionality;" (4) "loss of the . . . benefits that SAP obtained from the unlawful . . . use" of its stolen property; (5) damage to its right to "dominion and control" over its property; (6) damage to "confidential nature of the information Oracle's website;" (7) "diminution in value of Oracle's stolen property;" (8) "deprivation of the intended use of Oracle's computer systems;" and (9) "irreparable harm."[12]

Despite defendants' diligent efforts, however, Oracle has produced little or no discovery documenting the fact or amount of its alleged damages.

Request No. 65 seeks documents reflecting revenues, costs and profits for support and maintenance services *for the products* referred to in the Complaint or at issue in this litigation. Request No. 66 seeks similar documents *for the Named Customers and the TN Customers*. In response to both of these requests, Oracle has agreed to produce documents "sufficient to show Oracle's revenues, costs and profit margins for support or maintenance services" relating to

REDACTED - NOT RELEVANT

[11] The parties must designate experts by August 8, 2008, expert reports are due August 15, 2008, rebuttal reports are due August 29, 2008 and the expert discovery cutoff is September 12, 2008. *See* Pretrial Order, September 25, 2007, p. 1.

[12] *See* Oracle's Response to TN Interrogatory No. 5.

"applications for which Oracle has alleged that defendants downloaded Software and Support Materials from Oracle's systems . . . ." In effect, Oracle is limiting its responses to the Identified Customers and refusing to provide information for all of TN's customers. Moreover, other than production of its license agreements with the Identified customers, Oracle has produced *nothing* in response to these requests.

For the reasons discussed above concerning Oracle's attempt to limit discovery to the Identified Customers, Oracle cannot limit its production to information concerning applications that are subject of the alleged downloads. Oracle's Complaint is not limited to alleged unauthorized downloads. It also makes allegations concerning alleged improper "cross-use" of downloads, whether or not the initial download was authorized. Accordingly, defendants are entitled to discovery of this information for all families of products allegedly at issue in this case, both for downloads and cross-use allegations. Our request is that Oracle produce such information for *all* JD Edwards and PeopleSoft products.[13]

Requests Nos. 67 and 68 seek Oracle's financial information for products and services *other* than those referred to in the Complaint, including for all TN Customers for products other than those referred to in the Complaint. If Oracle produces the requested documents in response to Requests Nos. 65 and 66, as discussed in the preceding paragraph, we are willing to postpone our efforts to compel compliance with Requests 67 and 68 for now and will reserve rights to seek that discovery later, if and as necessary.

Oracle continues to refuse production until the "expert discovery phase" in response to Request No. 70 (documents relating to any alleged loss of revenues or profits by Oracle as a result of the conduct alleged in the Complaint), Request No. 101 (documents relating to the alleged cost of Oracle's investigation) and Request No. 107 (documents relating to the allegation in ¶ 92 of the Complaint that "Oracle has suffered injury, damage, loss, and harm, including, but not limited to, loss of profits from sales to current and potential customers of Oracle support services and licenses for Oracle's software programs"). These refusals are unjustified. For example, the cost of the investigation should be readily discernable, and Oracle has recently indicated that it will produce such documents as are currently available. Even if Oracle does not yet have every document that may relate to is alleged losses, it most certainly has some of them and they must be produced. Again, other than license agreement for the Identified Customers, Oracle has *produced* nothing in response to these requests.

Request No. 71 seeks documents relating to Oracle's fees for support and maintenance of the Oracle products referred to in the Complaint or at issue in the litigation, including documents concerning how those fees are set and any relationship between the price of a product and the amount Oracle charges for support and maintenance of that product. In its written response, Oracle has refused to produce documents, except for documents showing service terms with Identified Customers. For reasons stated above, the limitation to Identified Customers is not acceptable or fair. Oracle has suggested that such documents will be provided, but not until the "expert discovery phase." There is no reason to wait for that phase, as these documents should exist and be readily identifiable now.

---

[13] Of course, Defendants do not know how Oracle maintains its financial records. At the hearing on this motion, we will be prepared to discuss the types of documents that a large corporation like Oracle likely maintains and should be ordered to produce.

Request No. 79 seeks documents relating to the allegation that "Oracle has invested billions of dollars in research, development, and engineering," as alleged in ¶ 3 of the Complaint. In response, Oracle has made a general reference to its public SEC filings only, without identifying any particular filing or any specific information. If Oracle plans to rely on any particular SEC filings to support this allegation, such documents must be produced. If Oracle chooses to produce no other documents in response to this request, then Oracle should be barred from offering any others into evidence at any time.

Interrogatory No. 5 requests information about how Oracle believes any activity alleged in the Complaint has damaged it, including how Oracle was damaged by each allegedly improper download and, if Oracle claims to have lost any customer as a result of any activity alleged in the Complaint, all facts and inferences upon which Oracle bases that claim for each customer allegedly lost. In response, Oracle asserts that "as a minimum and without limitation Oracle has lost the Named Customers as a result of activity alleged in the First Amended Complaint," but provides no supporting details. Oracle again claims that discovery into damages is "premature" and propose to answer it with Oracle's expert damages reports when due. Again, we believe that much of the information Oracle will rely on for its damages case is known and available to Oracle and should be produced. For example, if Oracle believes it has lost certain profit margins as a result of the activities alleged, it should produce the supporting documents. Oracle has information about TN's customers and, if Oracle believes that it has lost any revenue or profits from any such customer, it should produce the supporting evidence.

**CONCLUSION**

For the foregoing reasons, TN's motion to compel should be granted.

Very truly yours,

Jason McDonell

cc: Christopher B. Hockett, Esq. (via email)
Geoffrey Howard, Esq. (via email)
Zachary Alinder, Esq. (via email)
Holly House, Esq. (via email)
Bree Hann, Esq. (via email)

# EXHIBIT 3

BINGHAM

Christopher B. Hockett
Direct Phone: 415.393.2612
Direct Fax: 415.393.2286
chris.hockett@bingham.com

February 7, 2008

**Via Hand Delivery**

**Contains Information Designated Confidential Pursuant to Protective Order**

Hon. Charles A. Legge (Ret.)
JAMS
Two Embarcadero Center
San Francisco, CA 94111

**Re:** ***Oracle Corp., et al. v. SAP AG, et al.*: Oracle's Opposition to Defendants' Motion to Compel No. 1**

Dear Judge Legge:

REDACTED - NOT RELEVANT

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Walnut Creek
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T 415.393.2000
F 415.393.2286
bingham.com

REDACTED - NOT RELEVANT

### E. Damages (Requests 65-66, 70-71, 79, 101, 107 and Interrog. 5)

Finally, Defendants seek an order compelling several categories of documents and information supposedly related to damages. Defendants do not dispute that Oracle has agreed to produce most of the documents and analysis requested, including documents sufficient to show revenue, cost, and profit information for the 69 currently relevant customers, as well as for the software applications that have been tied to Defendants' illegal activities. Since Oracle received Defendants' Requests, Oracle has diligently searched for, collected, and produced an extraordinary amount of information. To date, Oracle has identified and interviewed 188 potential custodians, collected over 2,300,000 pages of documents, and reviewed almost 800,000. Oracle had produced over 16,600 pages of documents and over 125 gigabytes of raw data and native files to the Defendants, many of which directly relate to Oracle's damages claims. Defendants' motion is largely a case of wanting more, faster (Oracle, of course, would like the same from Defendants).

Oracle is currently searching for, and plans on producing, documents sufficient to show its losses caused by Defendants' unlawful activities, its investment in research and development of the software applications tied to Defendants' illegal activities, and the costs associated with its investigations. Following a diligent search, Oracle has located the following categories of financial documents for production in response to Defendants' damages requests: (1) historical quarterly and fiscal year budgeting and income reports, (2) historical reports reflecting PeopleSoft and JD Edwards support cancellation rates and actual support bookings data, and (3) reports reflecting customer losses and negotiations due to TomorrowNow's illegal activity. The first category of documents includes Subsidiary Key Performance Measures Reports, Quarterly Financial Reference Book Reports, Product Revenue Reporting Packages, Quarterly Board Packages, and Fiscal Board Budget Reports. These reports contain an immense amount of financial data about Oracle's entire business, including actual PeopleSoft and JD Edwards

---

[4] *See, e.g.*, SAP's Responses to Plaintiffs' First Set of Document Requests Nos. 57 (objecting to request for documents support claims or defenses "because it necessarily and improperly requires the revelation of the privileged analysis of whether the produced document 'supports or undermines' SAP AG's claims or defenses in this case"); *see also* Letter from Mr. McDonell to Mr. Alinder at 3 (Nov. 16, 2007) ("Nor are we required to disclose our work product concerning which documents 'support or undermine' . . . our claims or defenses, which is the call of these requests.").

support and applications revenue, operating expenses (including marketing and development), and Oracle Global and PeopleSoft/JD Edwards budgeting. Oracle is in the process of collecting these reports and plans on producing them shortly for Fiscal Years 2004 to 2007 (from June 1, 2003 to May 31, 2007). Oracle is also presently identifying and collecting the PeopleSoft and JD Edwards support cancellation rates and bookings data, which it intends to produce from the period of Fiscal Year 2004 to present, to the extent the data is available. And finally, Oracle has already produced internal reports that show customers that Oracle has tracked as being lost to Defendants, and other customers with whom Oracle negotiated discounts, all of which now appear due to Defendants' illegal activity. These reports include extensive comments on each noted loss and negotiation. Further, Oracle has located the current version of this report, and will produce that shortly as well. Together, all of these categories of documents are more than sufficient to respond to Defendants' damages-related document requests, including Requests 65-66, 70-71, 79, and 107.

Defendants also currently have in their hands documents showing licensing and support revenues for the relevant customers and forecasting data for the same. Oracle has also produced actual revenue and forecasting documents relating to all customers, when competition with SAP TN is involved. These responsive documents satisfy the reasonable scope of Defendants' requests. To the extent they seek more, Defendants' damages requests seek information that is not relevant, overbroad, unduly burdensome or premature. On all those grounds, the motion should be denied.[5]

REDACTED - NOT RELEVANT

5 Interestingly, while demanding all damages discovery from Oracle immediately, Defendants' financial records are noticeably absent from their productions to date.

REDACTED - NOT RELEVANT

REDACTED - NOT RELEVANT

### 3. Requests Seeking Premature Damages Information (Requests 70, 79, 101 & 107 & Interrog. 5)

By this motion, Defendants also seek to compel the immediate production of information showing the losses Oracle has sustained due to Defendants' conduct, including the costs of investigating the unlawful conduct, and the amount of money Oracle has invested in researching and developing these products (*see* SAP TN's Requests 70, 79, 101 and 107). Oracle will provide these documents in the ordinary course, but there is no reason for early discovery of this information. In fact, Oracle has already produced, and will continue to produce, numerous documents identifying specific customers lost to SAP TN due to Defendants' illegal activity.[7] This, in conjunction with the licenses and log files that Oracle has produced, detail the losses sustained by Oracle due to Defendants' conduct. Defendants have not produced their damages documents or analyses either – so, in the face of Oracle's efforts, a motion to compel more at this stage in discovery is, at best, premature.[8]

Similarly, Defendants seek to compel a response to Interrogatory 5, which asks Oracle to state how "any activity alleged in the Complaint has damaged" them. Your Honor should reject this attempt to force Oracle to provide a premature statement of its contentions. "Courts have required a moving party to present 'specific, plausible grounds' as to why the party requires early answers to contention interrogatories." *In re H & R Block Mortgage Corp.*, 2007 U.S. Dist. LEXIS 7104, at *24-*25 (N.D. Ind. Jan. 30, 2007) (citation omitted); *see also In re*

---

[7] With regard to Request 79, Oracle has agreed to produce SEC filings sufficient to support its allegation that it has invested billions of dollars in research, development, and engineering. To that end, Oracle is collecting and will produce Oracle's SEC Forms 10-K and 10-Q from Fiscal Year 2004 to present, and all available historical SEC Forms 10-K and 10-Q for PeopleSoft and JD Edwards. To the extent that these SEC filings are sufficient to show Oracle's research and development of the implicated PeopleSoft and JD Edwards products, this is all Defendants are entitled to. Whether this is the case, however, is a matter for the experts to decide. To the extent other such documents exist and become necessary to show Oracle's research and development, Oracle agrees to search for and produce them.

[8] For example, Defendants assert that the cost of Oracle's investigation should be "readily discernable." This is simply untrue. Oracle has spent significant resources investigating SAP TN's activities on Customer Connection – many people, spanning multiple departments, were involved in the effort, which lasted several months. Arriving at a final tally, including harm to Oracle's customer tracking database, requires significant effort and will be the subject of expert analysis.

*Convergent Techs.*, 108 F.R.D. 328, 338-39 (C.D. Cal. 1985) ("A party seeking early answers to contention interrogatories cannot meet its burden of justification by vague or speculative statements about what might happen if the interrogatories were answered."). Here, there are no specific, plausible grounds as to why Oracle should be required to provide the detailed recitation of its damages theory that Defendants request. Oracle has responded to this Interrogatory, describing the various categories of damages it believes it has sustained, and noting that, at a minimum, Oracle has lost 69 customers, as alleged in the Complaint. Oracle has also produced numerous documents supporting these categories of damages, as noted above. The full scope of Oracle's damages is only becoming clear through review of Defendants' documents, almost all of which have only been produced in the last 60 days. To require a more detailed analysis of Oracle's damages theory at this time would be premature. *See* Fed. R. Civ. P. 26 advisory committee's note (1993) (noting that "a party would not be expected to provide a calculation of damages which...depends on information in the possession of another party or person.").

Furthermore, Interrogatory 5 calls for expert analysis, which Judge Jenkins has currently scheduled to be exchanged over six months from now. *See* Pretrial Order, September 25, 2007, at 1. The law does not require Oracle to prematurely state the bases for its damages, particularly when those damages are the proper subject of expert testimony. *See City and County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003) (noting that computation of damages is, in most circumstances, "premature" at the early stages of litigation, and recognizing that it may be "appropriate to defer" such a computation until the "development of expert testimony"); *see also Memry Corp. v. Kentucky Oil Technology*, 2007 WL 39373, *5 (N.D. Cal. Jan. 4, 2007) ("[A] party may not need to disclose the method used to calculate a dollar amount where that method is properly the subject of expert evidence and the parties will be turning over expert evidence in the future."). Accordingly, Defendants have not met their burden of justifying this premature discovery, and their motion to compel an early response to Interrogatory 5 should also be denied.

## III. CONCLUSION

For the foregoing reasons, Oracle respectfully requests that Your Honor deny Defendants' motion to compel.

Sincerely yours,

Christopher B. Hockett

cc: Robert Mittelstaedt (via email only)
Jason McDonell (via email only)
Greg Lanier (via email only)
Scott Cowan (via email only)
Joshua Fuchs (via email only)

# EXHIBIT 4

JONES DAY

555 CALIFORNIA STREET • 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104-1500
TELEPHONE: 415-626-3939 • FACSIMILE: 415-875-5700

Direct Number: (415) 875-5820
jmcdonell@JonesDay.com

October 9, 2008

**VIA EMAIL**

Zachary J. Alinder, Esq.
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4067

**Re:** ***Oracle Corporation, et al. v. SAP AG, et al.***

Dear Zac:

REDACTED - NOT RELEVANT

SFI-593990v2

REDACTED - NOT RELEVANT

**D. Financial Information**

Since the beginning of discovery in this case, we have been seeking financial and damages related documents from Oracle. Oracle repeatedly insisted that the customer contracts themselves were a sufficient source of information in response to our requests for documents showing Oracle's revenues, pricing, costs and profit margins relating to support and maintenance. In my June 2, 2008 letter, we pointed out that this was not true and we demanded various specific classes of documents. In our June 20, 2008 meet and confer, you refused to produce most of the requested documents, although you did agree to produce pricing documents, including pricing calculators, as well as product lifecycle documents. You subsequently agreed to produce the documents referenced in categories 1, 7 & 8 in my June 2, 2008 letter, but have not yet produced them.

After we made clear our intention to file a motion to compel, we received Brianna Rosenbaum's August 27, 2008 email proposing to produce various documents. Among the documents Oracle agreed to produce were "customer specific reports" including: (a) customer names; (b) customer numbers; (c) the names of the PSFT and JDE products each customer was licensed to; (d) whether a customer purchased support for a given product; (e) the contract number and license order numbers; (f) the support contract start and end dates for first year support and renewals; (g) the current contract status; (h) the amounts paid for support and licenses; and (i) the date of cancellation of support.

In our call this week, you again committed to produce this information, but stated that the process is requiring extensive time and effort. You were not able to commit to a date certain by which it will be produced and suggested that 60-90 days may be the timeframe. We asked you to produce it as soon as possible and to let us know the status of the production by email on October 17. We also reserved our rights to assess the adequacy of the information upon receipt in light of the "condition" noted in Ms. Rosenbaum's email that Oracle "can only provide the data that exists on its systems of record." Once we see that actual information, we will be better able to determine if it is sufficient.

You also again agreed to produce the pricing, product lifecycle and valuation documents that you previously committed to produce.

In our discussion, we again asked for production of Oracle's chart of accounts. *See* email, McDonell to Alinder and Rosenbaum, 10/2/08. You refused to discuss this request unless and until we explained it in writing. I noted that we have explained it in writing. *See* Email, McDonell to Alinder and Rosenbaum, Oct. 2, 2008. Once again, I will explain the purpose. If Oracle intends to rely in any way on its historical profitability as part of its damages analysis in this case, then we need full discovery into Oracle's profitability. Calculating profitability involves, among other things, calculating both revenues and expenses. You suggested that we look to Oracle's published financial statements for profitability information. I noted to you that Oracle's own Annual Report filed with the Securities and Exchange Commission states that the figures that Oracle publishes for profit margins do not represent the "actual margins" because they do not include a variety of expenses. *See, e.g.,* Oracle Corporation Form 10-K for the fiscal year ended May 31, 2007, p. 103, n. 2. In order to get the expense information, we need to understand the composition of Oracle's expenses. You have refused to produce Oracle's general ledger on burden grounds. In response and in an effort to reduce burdens, we have requested the chart of accounts so we can attempt to identify the potentially relevant expense line items and then follow up with a more limited request for general ledger information relating to those expense items.

We thus renew our demand for the chart of accounts for all relevant periods.

REDACTED - NOT RELEVANT

REDACTED - NOT RELEVANT

Very truly yours,

Jason McDonell

cc: Geoffrey M. Howard, Esq. (via email)
Holly House, Esq. (via email)
Bree Hann, Esq. (via email)
Briana Rosenbaum, Esq. (via email)

# EXHIBIT 5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

ORACLE CORPORATION, et al.,

Plaintiffs,

vs. No. C07-1658 PJH (EDL)

SAP AG, et al.,

Defendants.

---

REPORTER'S TRANSCRIPTION OF DISCOVERY CONFERENCE

BEFORE: HON. ELIZABETH D. LAPORTE

Friday, October 10, 2008

Reported by:
CLAUDIA A. BETTUCCHI
CSR No. 12214

JOB No. 98424



5dec582b-2c09-4db0-8da7-9d96e2eddb28

MR. McDONELL: -- depending on how the party sets up the issue their are seeking the discovery for. But we're still talking about those issues.

THE COURT: Okay.

MR. McDONELL: And when we need to brief it, we will negative a briefing schedule for your review and approval.

THE COURT: Okay. And then the other thing I think I've said before is, you know, you may fight about how detailed you're ultimately going to get, but produce -- and I think you're doing this now -- the bigger picture, less granular information quickly. I mean, the sooner people have a handle on kind of how much is really at stake the better.

MR. McDONELL: Yeah, we're trying, Your Honor.

THE COURT: Okay. Good.

MR. HOWARD: Yep, we are.

THE COURT: All right.

MR. HOWARD: All right.

MR. McDONELL: Thank you.

THE COURT: Thank you.

MR. HOWARD: Thank you, Your Honor. Have a good weekend.

THE COURT: You too. Oh, yeah. Set -- I'm reminded what about setting up the next one. Rather



5dec582b-2c09-4db0-8da7-9d96e2eddb2

I, CLAUDIA BETTUCCHI, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing audiotaped proceedings were taken down by me to the best of my ability using machine shorthand which was thereafter transcribed under my direction; further, that the foregoing is an accurate transcription thereof.

I further certify that I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribe my name.

Dated: October 15, 2008

CLAUDIA A. BETTUCCHI
CSR NO: 12214

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MAGISTRATE JUDGE ELIZABETH D. LAPORTE

| | |
|---|---|
| ORACLE CORPORATION, a Delaware Corporation; ORACLE, USA, INC., a Colorado corporation; and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiffs, | Case No. C07-1658 (PJH) |
| vs. | FURTHER DISCOVERY CONFERENCE |
| SAP AG, a German corporation; SAP AMERICA, INC., a Delaware corporation; TOMORROWNOW, INC., a Texas corporation; and DOES 1-50, Inclusive,<br><br>Defendants. | |

January 8, 2009

TRANSCRIPT OF AUDIO RECORDING OF DISCOVERY CONFERENCE

TRANSCRIBED BY: FREDDIE REPPOND



01ffa3f2-d7f8-424e-9e75-bb17c7fb5c46

So the motion is we get the chart of accounts, which is a list of the types of accounts they have, but we don't want all 80,000 but the general ledger accounts at this time. But we do want that basic blueprint of what the accounts are. Then we will look at them. Then we'll make a follow-up request for the general ledger information that we think is most pertinent for the type of analysis that needs to be done.

THE COURT: Okay.

MS. HOUSE: We are happy to -- I don't want to take more of your time. We will be ready to oppose this. It's another way I think is going to be akin to just it's a needle-in-a-haystack type of request --

THE COURT: Well, they are absolutely entitled to some profit data if you're going to go after lost profits.

MS. HOUSE: And they have been given it. They've been given it the way Oracle keeps it, which is exactly the same way SAP keeps it, which is that profit margins are rolled up by lines of business. They're not kept on a product-by-product basis.

THE COURT: Well, we'll just have to see, but I mean I would err on the side of giving them what they think they need to have their expert analyze the

profits, not what Oracle thinks they need. And as long as it's not completely disproportionate. But, you know, you're seeking millions and millions of dollars for them and you're not giving up on the lost-profit theory and they have the right to challenge it. So exactly how you keep it and how complicated -- I don't know why you wouldn't at least give them the chart of accounts if it's true that that's essentially a list of what you've got. I don't see that -- that's not very burdensome.

MS. HOUSE: Hopefully we can convince you when we --

THE COURT: Well, I don't know. But, again, I would urge you to -- you might as well disclose what you've got in terms of chart of accounts, because it would be much more concrete for me to look at that and say, Well, why should you get this and not that if they think they should get this and you say, no, they shouldn't. Why?

MS. HOUSE: The charts of accounts -- I think this came up before [inaudible]

THE COURT: I don't remember.

MS. HOUSE: Charts of accounts are extremely voluminous. There's different charts of account for different Oracle entities. They have -- from the

testimony they've received it's 90,000 lines.

THE COURT: Well --

MS. HOUSE: Can I get input here?

THE COURT: Right.

MS. HOUSE: And so the charts of accounts are not some small production in and of themselves; and the detail they provide is like being given a telephone book.

THE COURT: Well, you know, I grew up with the Manhattan telephone took and it was very useful.

MS. HOUSE: There you go.

THE COURT: So I'm not necessarily opposed to that, particularly because if it exists in one form -- if there's literally a database which is the chart of accounts, the fact that -- I don't know why that would be difficult to produce. But I'll look at the motion, but those are my initial reactions on that, which is that Oracle definitely has to go to some real expense on its letting them, you know, have their defense on damages, because you're seeking millions of dollars. So I wouldn't consider spending some money on that and putting them on more of an equal footing because you have full access to it to be disproportionate necessarily. But that doesn't give you an answer. I'm just giving you some general reactions.

STATE OF CALIFORNIA )
COUNTY OF SAN FRANCISCO )

CERTIFICATE OF REPORTER/TRANSCRIBER

I, the undersigned, a Shorthand Reporter and licensed Notary Public, do hereby certify that the above referenced recording was transcribed by me and that this transcript is a true record of that recording.

IN WITNESS WHEREOF I have hereunto set my hand on this 16th of January, 2009.

[signature]

FREDDIE REPPOND

# EXHIBIT 7

"Alinder, Zachary J." <zachary.alinder@bingham.com>

01/13/2009 05:28 PM

To "Jason McDonell" <jmcdonell@JonesDay.com>, "Scott Cowan" <swcowan@JonesDay.com>

cc "House, Holly" <holly.house@bingham.com>, "Howard, Geoff" <geoff.howard@bingham.com>, "Joshua Fuchs" <jlfuchs@JonesDay.com>, "Wallace, Elaine"

bcc

Subject RE: chart of accounts discovery

History: This message has been forwarded.

Jason and Scott,

Oracle will agree to make a reasonable production of the chart of accounts for the plaintiff entities.

We also agree with Defendants' request during this afternoon's meet and confer to add an extra day to the opposition timing for the proposed motion to compel briefing schedule. The agreed briefing schedule would then be as follows: opening briefs would be due on January 15th, with oppositions due on January 23rd, and replies due on January 27th. My understanding is that Judge Laporte requested that the parties inform the court of this schedule by tomorrow, so please let us know if that schedule is acceptable.

Best regards,
Zac Alinder

**From:** Jason McDonell [mailto:jmcdonell@JonesDay.com]
**Sent:** Monday, January 12, 2009 4:03 PM
**To:** House, Holly
**Cc:** Hann, Bree; Howard, Geoff; Alinder, Zachary J.; Scott Cowan; Joshua Fuchs; Wallace, Elaine; Jane Froyd
**Subject:** chart of accounts discovery

Holly,

Following up on Judge Laporte's guidance that the parties should prioritize their motions to compel and resolve as many issues as possible short of a motion, please let me know whether Oracle has changed its position regarding the chart of accounts and related discovery in light of Judge Laporte's indication that she will likely order Oracle to produce it.

Thanks.

Jason McDonell, Esq.
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104-1500
SF Office Main Tel.: (415) 626-3939
Direct Dial: (415) 875-5820
Fax: (415) 875-5700
Email: jmcdonell@jonesday.com

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system

without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

==================================================================
=======

Bingham McCutchen LLP Circular 230 Notice: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.
The information in this e-mail (including attachments, if any) is considered confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this e-mail is prohibited except by or on behalf of the intended recipient. If you have received this email in error, please notify me immediately by reply email, delete this email, and do not disclose its contents to anyone. Thank you.
==================================================================
=======

# EXHIBIT 8

BINGHAM McCUTCHEN LLP
DONN P. PICKETT (SBN 72257)
GEOFFREY M. HOWARD (SBN 157468)
HOLLY A. HOUSE (SBN 136045)
ZACHARY J. ALINDER (SBN 209009)
BREE HANN (SBN 215695)
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
donn.pickett@bingham.com
geoff.howard@bingham.com
holly.house@bingham.com
zachary.alinder@bingham.com
bree.hann@bingham.com

DORIAN DALEY (SBN 129049)
JENNIFER GLOSS (SBN 154227)
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94070
Telephone: (650) 506-4846
Facsimile: (650) 506-7114
dorian.daley@oracle.com
jennifer.gloss@oracle.com

Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corporation, and
Oracle EMEA Limited

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., *et al.*,<br><br>Plaintiffs,<br>v.<br><br>SAP AG, *et al.*,<br><br>Defendants. | Case No. 07-CV-1658 PJH (EDL)<br><br>**PLAINTIFFS' SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANTS' "SECOND" AND "THIRD" TARGETED SEARCH REQUESTS** |

**PROPOUNDING PARTY:** Defendants

**RESPONDING PARTY:** Plaintiffs

**SET NUMBER:** "Two" and "Three"

Pursuant to the Parties' agreements and the August 29, 2008 Order regarding targeted searches, Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited (collectively, "Oracle") supplement their initial May 27, 2009 and June 2, 2009 supplemental response and objections to the "Second" and "Third" Targeted Search Requests by Defendants TomorrowNow, Inc., SAP America, Inc., and SAP AG (collectively, "Defendants" and together with Oracle, the "Parties") as follows:

## GENERAL OBJECTIONS

1. Oracle reiterates its objections to the Request as being labeled or treated as Defendants' "Second" and "Third" Targeted Search Request. Oracle and Defendants have already met and conferred as to whether Defendants have already exhausted their targeted (i.e., non-custodial) search opportunities. At Defendants' request, Oracle has collected, reviewed, and produced and is continuing to collect, review and produce data in response to well over the ten Court-allotted targeted (*i.e.* non-custodial) searches. These include, but are not limited to: 1) Customer contracts, purchase orders, invoices and related correspondence located in customer files; 2) Financial reports generally; 3) Customer-specific financial reports (the two analytics reports and the OKI3 reports); 4) Board packages and associated acquisition materials; 5) Inter-company Agreements; 6) Customer Connection Databases; 7) Copies of all software Oracle claims Defendants' infringed; 8) Release Notes; 9) Price Lists; 10) Technical Support Policies; 11) CedarCrestone and other Partner-related Documents; 12) PeopleSoft Legal Database; 13) Organizational Charts; 14) Copyright Documents; 15) Form Employment Agreements that relate to copyright ownership; 16) At Risk Reports; 17) Charts of Accounts; 18) a massive group email account, OSSInfo; and 19) a large group online document repository, OFO. Oracle has also collected, reviewed, and produced and is continuing to collect, review and produce data in response to Defendants' first seven prior targeted search Requests (some of which overlap in certain respects with the above), served by counsel for Defendants, Elaine Wallace, on July 16,

2008. Along with any collection and production Oracle makes in response to Defendants' purported "first" targeted search Request, served on April 20, 2009, all of these efforts can and should count towards the 10 targeted searches allocated to each party. Though, as set forth below, Oracle is undertaking to locate and produce reasonably responsive information, Oracle will provide no responsive information to these "Second" and "Third" Targeted Search Requests until the Parties have agreed on whether and how many targeted searches (if any) Defendants have remaining.

2. Even if Defendants were allowed these additional targeted searches, Oracle reiterates its objection to these Requests because they are not "narrow searches by topic" as the parties agreed they would be and as the Court ordered on August 29, 2008. The August 29, 2008 Order states "[t]he Parties may Request from the other side up to 10 targeted searches, *i.e.,* narrow searches by topic where document production would come from centralized sources and/or from those persons most likely to have responsive documents." Oracle has been and remains willing to meet and confer with Defendants in an effort to reach an agreement whereby Defendants will amend the form and scope of Defendants' "Second" and "Third" Targeted Search Requests in order to comply with the parties' previous agreements and the Court's August 29, 2008 Order.

3. Oracle reiterates its further objection to the Requests to the extent they are vague, overbroad, oppressive, harassing and unduly burdensome.

4. Oracle reiterates its objection to the Requests because they are compound, contain numerous subparts and, if properly propounded and individually counted, the Requests would constitute more than two targeted search Requests.

5. Again, as with all of Defendants' other discovery Requests, Oracle's reasonable inquiry and related response to these discovery Requests, if any, shall be limited in a manner consistent with the Court's orders and the Parties' agreements that provide limits on the Parties' discovery obligations in this case. Oracle reiterates its objections to the Requests to the extent they can be interpreted to require Oracle to make any further search or production beyond what the parties have agreed and the Court has ordered or with the Court's guidance against seeking

unreasonably demanding, expensive, duplicative or marginally relevant discovery, because such an interpretation of the Requests would make them overbroad and unduly burdensome.

6. Any response by Oracle herein or in the future indicating that it will search for and, if reasonably available, produce documents is not a confirmation that such documents exist or are in Oracle's possession, custody, or control. Such response indicates only that Oracle, subject to its objections, will search for such documents to the extent that they do exist and are in Oracle's possession, custody or control and then evaluate the difficulty, expense, duplicativeness and relevance of production. Based on that evaluation, Oracle may need to further meet and confer with Defendants about limiting the scope of production and/or cost shifting.

7. Oracle reiterates its objections to Defendants' instructions to the extent that those instructions seek to require Oracle to produce documents in a form other than that in which those documents are maintained in the ordinary course of business. Subject to and without waiving its objections, if Oracle produces, it will produce relevant, responsive non-privileged documents as they are typically maintained, subject to the Parties' further meet and confer and the Parties' agreement regarding mechanics of production.

8. Oracle again objects to the Requests to the extent they seek to require Oracle to search for, review, or produce inaccessible information, data, or other materials. Oracle will not search for, review, or produce inaccessible information, data, or other materials.

9. Oracle reiterates its objections to each Request, definition, and instruction to the extent they seek to impose upon Oracle duties and/or responsibilities greater than those imposed by the Federal Rules of Civil Procedure, the Local Rules of this Court, any applicable orders of this Court, or any stipulation or agreement of the parties.

10. Oracle again further objects to the Requests to the extent they seek the production of documents and/or things that are not relevant to any claim or defense in this action, or reasonably calculated to lead to the discovery of admissible evidence that is relevant to any claim or defense, under Rule 26(b)(1) of the Federal Rules of Civil Procedure.

11. Oracle also again objects to the Requests to the extent they seek documents that are protected from disclosure by any applicable privilege, protection, or immunity, including but

not limited to the attorney-client privilege, the attorney work product doctrine, the privilege afforded non-testifying experts by Rule 26(b) of the Federal Rules of Civil Procedure, or that is otherwise protected from disclosure under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or relevant statutory or case law. Should any production of any such privileged documents by Oracle occur, it is inadvertent and shall not constitute a waiver of: (a) any privilege; (b) any other ground for objecting to discovery with respect to such documents or any other documents; (c) Oracle's right to claw any such document back; or (d) Oracle's right to object during this litigation or otherwise to the use of any such document. Oracle will log such privileged information in accordance with the Parties' agreements.

12. Insofar as Oracle and Defendants work out their differences about how many Targeted Requests are covered by these Requests and how many (if any) additional targeted requests are available to Defendants and Oracle then agrees to produce in response to this Request, Oracle will produce its confidential and proprietary information only under the Agreed Protective Order entered in this case, which permits designating such documents, depending on their content, as CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION - ATTORNEYS' EYES ONLY.

13. Again, Oracle's response to Defendants' Requests does not constitute, and shall not be construed as, an admission or acknowledgement that the information sought is within the proper scope of discovery or admissible at trial, or that any non-privileged documents responsive to a particular Request may exist.

14. Oracle's response to Defendants' Requests is made without in any way waiving: (a) the right to object on the grounds of authenticity, competency, relevancy, materiality, privilege or admissibility, to the extent that any documents produced in response hereto are ever attempted to be introduced as evidence for any purpose in any subsequent proceeding in, or the hearing of, this action or any other action, and (b) the right to object on any grounds to any other discovery Requests involving or relating to the same or similar subject matter of Defendants' Requests.

15. Oracle objects to the time period for these Requests, which purports to be January 1, 2002 through October 31, 2008, as overbroad and unduly burdensome to the extent that it imposes a burden or obligations different from or additional to the agreement the parties have reached regarding production of information before 2004 and after the filing of the litigation.

**TARGETED SEARCH REQUESTS**

**TARGETED SEARCH REQUEST NO. 2:**

REDACTED - NOT RELEVANT

REDACTED - NOT RELEVANT

**<u>TARGETED SEARCH REQUEST NO. 3</u>:**

For each Plaintiff entity, for the period January 1, 2002 through October 31, 2008, documents sufficient to show by month, quarter and year the revenues (including but not limited to license royalty payments), expenses (including but not limited to research and development costs) and net income to the Plaintiff entity resulting from sales by any Oracle entity of PeopleSoft and/or JD Edwards software and/or services to customers on Defendant TomorrowNow, Inc.'s Supplemental Exhibit 1 to Its First Sets Of Requests For Production and Interrogatories to Plaintiffs.

REDACTED

**SUPPLEMENTAL RESPONSE TO TARGETED SEARCH REQUEST NO. 3:**

Oracle incorporates by reference as if fully set forth herein in response to this Request, each of the fifteen General Objections above, as well as each of Oracle's objections and responses to each of Defendants' Interrogatories and Document Requests that relate to this Request. Oracle is not, by responding to this Request, waiving any of its objections to any of Defendants' Interrogatories and Document Requests.

Oracle further objects to the Request on the grounds that numerous terms and phrases throughout this Request are vague and ambiguous. For example, the phrases "license royalty payments," "research and development costs," and "net income" lack sufficient specificity and are therefore overly broad and unduly burdensome.

Oracle objects to this Request because it is compound and not a "narrow search by topic." Defendants' Request is improper because it is a combination of multiple targeted search Requests, requiring a search through multiple sources of information and therefore cannot be considered as one Request or as a "targeted" search Request.

Oracle objects to the use of the phrase "any Oracle entity" on the grounds that it makes the Request vague, overbroad, and unduly burdensome and to the extent that the construction of the phrase is intended to require information that is neither relevant nor likely to lead to the discovery of admissible evidence.

Oracle objects to Defendants' attempt to conduct duplicative discovery to the extent that this Request seeks documents, data, or other information that Oracle has already produced in this case. This objection includes, but is not limited to, an objection to any attempt by Defendants to require Oracle to segregate or otherwise separately identify any documents, data, or other information contained within any document production that Oracle has made or will make in this case. Oracle objects to the extent that information responsive to this targeted search Request has been or will be produced in the ordinary course of the custodian-based production in this case by Oracle. Any attempt by Defendants to seek such duplicative discovery is overbroad and harassing.

Oracle objects to the Request to the extent it imposes a burden or obligation to

which the parties have not yet agreed by Requesting Oracle to produce documents for the January 1, 2002 through October 31, 2008 time period. The Parties have agreed to expand the discovery timeline for limited issues, and to the extent Defendants' Request for documents responsive to this targeted search Request does not fit within the subject matters agreed upon by parties for expanded discovery, Oracle does not intend to produce those documents beyond the agreed-upon discovery timeline.

Oracle objects to the Request to the extent it seeks to require Oracle to search for, review, or produce data that is not reasonable accessible, such as legacy data, under Rule 26 of the Federal Rules of Civil Procedure.

Oracle objects to the Request to the extent it seeks to unduly burden Oracle with a search for, review of, or production of potentially hundreds of reports in a manner and/or form that would impose upon Oracle duties and/or responsibilities greater than those imposed by the Federal Rules of Civil Procedure, the Local Rules of this Court, any applicable orders of this court or any stipulation or agreement of the parties.

Subject to and without waiving its specific and general objections, Oracle's *initial* response to this Request is as follows:

Oracle seeks immediate confirmation from Defendants as to whether it concedes this is not their "Third" Targeted Search Request.

While not verifying the veracity of Defendants allegations, Defendants allege in their Request that the information they are seeking may be contained in, or available through, at least four different possible sources of data (OFA, GIFTs, the general ledger, and a shared drive within Oracle's tax department) and can include, but is not limited to, at least four different types of reports *from each source* (line of business expense reports, royalty payment reports, balance sheets, and P&L statements).

Because no single database contains all the requested information, to the extent it was tracked and exists, Defendants' request is not appropriate to a targeted search. There is no single repository or custodian that would have all such information over this lengthy period. Oracle thus objects to such discovery to the extent Oracle cannot locate such information in

central repositories following a reasonably diligent search. Moreover, this financial information has already been produced through a variety of documents and will continue to be produced in the ordinary course of the custodian-based production. Search for these reports specifically is not only duplicative but unnecessarily burdensome on Oracle. Given that these reports have already been produced and will continue to be produced, Oracle directs Defendants to look for them in Oracle's production (*e.g.*, ORCL00079380, ORCL00079343).

REDACTED

Thus, Oracle does not agree or concede that obtaining the reports Defendants reference is the appropriate, best or most cost-effective means to secure financial information or

REDACTED

that such reports are relevant or likely to lead to the discovery of admissible evidence

REDACTED

However, Oracle will continue to investigate whether and how it can produce some or all of the many requested financial reports and the burdens of doing so while respecting that those most knowledgeable about Oracle's financial reporting functions are heavily impacted by Oracle's

May 31, 2008 fiscal year-end activities. Upon completion of that investigation, Oracle will produce responsive information only to the extent not previously produced, subject to the objections outlined herein, and subject to resolution of whether Defendants have any remaining targeted searches available and, if so, how many.

**SECOND SUPPLEMENTAL RESPONSE TO TARGETED SEARCH REQUEST NO. 3:**

Oracle incorporates by reference as if fully set forth herein in response to this Request, each of the fifteen General Objections above, as well as each of Oracle's objections and responses to each of Defendants' Interrogatories and Document Requests that relate to this Request. Oracle is not, by responding to this Request, waiving any of its objections to any of Defendants' Interrogatories and Document Requests.

Oracle further objects to the Request on the grounds that numerous terms and phrases throughout this Request are vague and ambiguous. For example, the phrases "license royalty payments," "research and development costs," and "net income" lack sufficient specificity and are therefore overly broad and unduly burdensome.

Oracle objects to this Request because it is compound and not a "narrow search by topic." Defendants' Request is improper because it is a combination of multiple targeted search Requests, requiring a search through multiple sources of information and therefore cannot be considered as one Request or as a "targeted" search Request.

Oracle objects to the use of the phrase "any Oracle entity" on the grounds that it makes the Request vague, overbroad, and unduly burdensome and to the extent that the construction of the phrase is intended to require information that is neither relevant nor likely to lead to the discovery of admissible evidence.

Oracle further objects to the Request to the extent it seeks to unduly burden Oracle with a search for, review of, or production of potentially hundreds of reports in a manner and/or form that would impose upon Oracle duties and/or responsibilities greater than those imposed by the Federal Rules of Civil Procedure, the Local Rules of this Court, any applicable orders of this court or any stipulation or agreement of the parties.

Oracle objects to Defendants' attempt to conduct duplicative discovery to the

extent that this Request seeks documents, data, or other information that Oracle has already produced, or has agreed to produce, in this case.

Oracle objects to the Request to the extent it imposes a burden or obligation to which the parties have not yet agreed by Requesting Oracle to produce documents for the January 1, 2002 through October 31, 2008 time period. The Parties have agreed to expand the discovery timeline for limited issues, and to the extent Defendants' Request for documents responsive to this targeted search Request does not fit within the subject matters agreed upon by parties for expanded discovery, Oracle does not intend to produce those documents beyond the agreed-upon discovery timeline.

Oracle objects to the Request to the extent it seeks to require Oracle to search for, review, or produce data that is not reasonably accessible, such as legacy data, under Rule 26 of the Federal Rules of Civil Procedure.

Subject to and without waiving its specific and general objections, Oracle's supplemental response to this Request is as follows:

Oracle seeks immediate confirmation from Defendants as to whether it concedes this is not their "Third" Targeted Search Request.

While not verifying the veracity of Defendants allegations, it is Oracle's understanding that Defendants allege in their Request that the information they are seeking may be contained in, or available through, at least four different possible sources of data (OFA, GIFTs, the general ledger, and a shared drive within Oracle's tax department) and can include, but is not limited to, at least four different types of reports *from each source* (line of business expense reports, royalty payment reports, balance sheets, and P&L statements).

REDACTED

REDACTED

Because no single database contains all the requested information, to the extent it was tracked and exists, Defendants' request is not appropriate to a targeted search. There is no single repository or custodian that would have all such information over this lengthy period. Oracle thus objects to such discovery to the extent Oracle cannot locate such information in central repositories following a reasonably diligent search. Moreover, financial documents showing revenue by customer to Oracle has already been produced through a variety of documents and will continue to be produced in the ordinary course of the custodian-based production. Search for these reports specifically is not only duplicative but unnecessarily burdensome on Oracle. Given that these reports have already been produced and will continue to be produced, Oracle directs Defendants to look for them in Oracle's production (*e.g.*, ORCL00079380, ORCL00079343).

Thus, Oracle does not agree or concede that obtaining the reports Defendants reference is appropriate, or the best or most cost-effective means to secure financial information or that such reports are relevant or likely to lead to the discovery of admissible evidence.

REDACTED

REDACTED

Through meet and confer, Oracle understands that Defendants are willing to accept in response to this request, the manually-created product profitability reports referenced above, as well as Plaintiff-specific profit and loss reports, even though neither show product profitability by Plaintiff entity. As Oracle informed Defendants on July 14, 2009 in Holly House's letter to Jason McDonell, Oracle is willing to produce these reports to the extent reasonably obtainable without undue burden, subject to Defendants' clarification for the level of detail requested by Defendants in Plaintiff-specific profit and loss reports.

DATED: July 17, 2009

BINGHAM McCUTCHEN LLP

By: ______________________________
Zachary J. Alinder
Attorneys for Plaintiffs
Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA, Ltd.

## PROOF OF SERVICE

I am over eighteen years of age, not a party in this action, and employed in San Francisco County, California at Three Embarcadero Center, San Francisco, California 94111-4067. I am readily familiar with the practice of this office for collection and processing of correspondence for mail and by email, and they are deposited and/or sent that same day in the ordinary course of business.

Today I served the following documents:

**PLAINTIFFS' SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANTS' "SECOND" AND "THIRD" TARGETED SEARCH REQUESTS**

[X] (VIA EMAIL) by transmitting via electronic mail document(s) in portable document format (PDF) listed above on this date to the person(s) at the email address(es) set forth below.

[X] (BY MAIL) by causing a true and correct copy of the above to be placed in the United States Mail at San Francisco, California in sealed envelope(s) with postage prepaid, addressed as set forth below. I am readily familiar with this law firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence is deposited with the United States Postal Service the same day it is left for collection and processing in the ordinary course of business.

Robert A. Mittelstaedt, Esq.
Jason McDonell, Esq.
Elaine Wallace, Esq.
Jones Day
555 California Street
26th Floor
San Francisco, CA 94104
Tel: (415) 626.3939

ramittelstaedt@JonesDay.com
jmcdonell@JonesDay.com
ewallace@JonesDay.com

Tharan Gregory Lanier, Esq.
Jane L. Froyd, Esq.
Jones Day
1755 Embarcadero Road
Palo Alto, CA 94303
Tel: (650) 739-3939

tglanier@JonesDay.com
jfroyd@JonesDay.com

I declare under penalty of perjury that this declaration was executed on July 17, 2009 at San Francisco, California.

__________________________
Kelley A. Garcia

# EXHIBIT 9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,

Plaintiffs,

vs. No. 07-CV-1658 (PJH)

SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive,

Defendants.

VIDEOTAPED 30(b)(6) DEPOSITION OF

ORACLE INTERNATIONAL CORPORATION

THROUGH ITS DESIGNEE

UYEN NGOC ANN KISHORE

TUESDAY, APRIL 14, 2009

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

REPORTED BY: HOLLY THUMAN, CSR No. 6834, RMR, CRR

(1-417372)



2cf82a26-f964-4ecd-a262-d4e7a0eefa1

today is Holly Thuman of Merrill Legal Solutions.

Would the reporter please swear in the witness.

--o0o--

UYEN NGOC ANN KISHORE,

____________________________________

called as a witness, who, having been first duly sworn, was examined and testified as follows:

--o0o--

EXAMINATION BY MR. McDONELL

MR. McDONELL: Q. Good morning, Ms. Kishore. Could you state your full name for the record and spell it, please?

A. Sure. It's Uyen Ngoc Ann Kishore. And it's spelled U-Y-E-N, second word N-G-O-C, A-N-N, last name K-I-S-H-O-R-E.

Q. Ms. Kishore, have you ever given a deposition before?

A. I have not.

Q. Have you ever attended one?

A. I have not.

Q. Okay. Let me give you some of the sort of guidelines that we follow that hopefully will help things go more smoothly today.

First of all, you understand that you're



2cf82a26-f964-4ecd-a262-d4e7a0eefa19

REDACTED - NOT RELEVANT

15:48:54 Q. Okay. Have you tried to identify the entities that OIC has licensed intellectual property rights to for the copyrights that are at issue in this case?
15:49:07 MR. HOWARD: Objection. Asked and answered.
15:49:10 THE WITNESS: So I have reviewed intercompany agreements which license Oracle technology related to products on Oracle Global Price List.
15:49:27 I haven't looked specifically with regards to these particular Registered Work that was mentioned earlier, because I do not know as to which Registered Work those -- which products those Registered Works specifically relates to. But I would imagine they are a subset of a group -- you know, a group of products -- I imagine they're on our -- on our Global Price List.



2cf82a26-f964-4ecd-a262-d4e7a0eefa1

CERTIFICATE OF REPORTER

I, HOLLY THUMAN, a Certified Shorthand Reporter, hereby certify that the witness in the foregoing deposition was by me duly sworn to tell the truth, the whole truth, and nothing but the truth in the within-entitled cause; that said deposition was taken down in shorthand by me, a disinterested person, at the time and place therein stated, and that the testimony of the said witness was thereafter reduced to typewriting, by computer, under my direction and supervision;

That before completion of the deposition, review of the transcript [X] was [ ] was not requested. If requested, any changes made by the deponent (and provided to the reporter) during the period allowed are appended hereto.

I further certify that I am not of counsel or attorney for either or any of the parties to the said deposition, nor in any way interested in the event of this cause, and that I am not related to any of the parties thereto.

DATED April 21st, 2009.

[signature]

HOLLY THUMAN, CSR No. 6834