Walsh v. Apple, Inc. et al
Doc. 500

# EXHIBIT A

Dockets.Justia.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE CORPORATION, a Delaware corporation, ORACLE USA, INC., a Colorado corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation, | |
| Plaintiffs, | |
| vs. | No. 07-CV-1658 (PJH) |
| SAP AG, a German corporation, SAP AMERICA, INC., a Delaware corporation, TOMORROWNOW, INC., a Texas corporation, and DOES 1-50, inclusive, | |
| Defendants. | |

DISCOVERY HEARING BEFORE

MAGISTRATE JUDGE ELIZABETH D. LAPORTE

WEDNESDAY, MAY 28, 2008

TRANSCRIBED FROM ELECTRONIC AUDIO RECORDING BY:

HOLLY THUMAN, CSR No. 6834, RMR, CRR

(1-418324)

And prioritizing TN, whether it was because -- for whatever reason it was, I think that made sense.

So the question is now going forward, and I don't want to keep looking back to what was done in the past. But, you know, I -- I think, you know, in a case of this scope, you're going to have to limit the places you search. And if -- if things were as rampant as Oracle seems to be alleging, you're going to be -- you know, there's going to be bugs crawling out from every rock you turn over, so you don't need to turn over every rock. I mean, that is my overall feeling of what you've been telling me.

MR. HOWARD: Well, that's right. But that is a factor to consider in deciding how many rocks to turn over. We're not proposing turning over a lot of rocks.

MAGISTRATE JUDGE LAPORTE: It's too many. What I see here on this page is too many.

MR. HOWARD: But Your Honor, I also haven't had the chance to explain what is a significant number of these custodians, which are the sales custodians. I think it's relevant to the discussion.

MAGISTRATE JUDGE LAPORTE: All right. I agree.

MR. HOWARD: For the last several months, the defendants have been putting pressure on Oracle to produce from its hundreds of sales custodians, and Judge

Legge said no to that.

Since then, we have identified central sources which we think have the information they need and which we are proposing to produce from.

The reason they were putting that pressure on us is because they contended that we had a causation problem with our damages case, and that causation evidence, they contended, would be best found in the sales custodians' files, because there you would find statements from customers that they were not leaving Oracle because of the low cost offering from TomorrowNow, but they were leaving for some other reason. And so they have made an issue in this case on the causation element of the damages claimed.

That is a two-way street. And so they have -- they have publicly advertised 800 customer wins through their Safe Passage program, of which TomorrowNow was the centerpiece, but they have not produced from any of their sales --

MAGISTRATE JUDGE LAPORTE: I don't know what you mean, 800 customer wins.

MR. HOWARD: They have said publicly that there were 800 customers that they converted from Oracle through the Safe Passage program, which was the program that was created by buying TomorrowNow and advertising

this new support capability for PeopleSoft software.

We never did think that the sales custodians were the right way to spend the parties' resources in discovery, and I think both sides have agreed through the meet-and-confer process that that large group of sales custodians -- which is 500 for them just in North America, and it's a lot for us, too -- that's where the vast majority of the burden is. That's not a fight that we wanted.

But now that we're in it and our causation case has been challenged, we're perfectly happy to stand down on the sales custodians. You could knock off a huge chunk of these custodians from them, so long as we're not going to be challenged on our causation case, as they've said in the past that they would, because that causation evidence isn't there or it's only coming from us and not from them.

So what we're proposing to the Court is -- when this says "reserve" here, it really is reserve. It's not -- these are not slots that we think we ought to have to use, as long as the parties have these centralized repositories where there is some information that we can agree will be the information relied on without challenge for not having produced from the individual sales custodians. And that will have a big

impact on the numbers on our chart. And you see that there isn't a comparable category on their chart.

MR. McDONELL: A couple of things, Your Honor.

First of all, on this 800 Safe Passage customers -- in the fullness of time, you'll hear more about Safe Passage, but it was a companywide SAP marketing program basically to sell SAP software products.

A component of it, after the acquisition of TomorrowNow, was customers who wanted a new support provider were offered TomorrowNow as the possible source of support. Only a very small fraction of the 800 customers that became SAP customers under the Safe Passage program ever accepted an offering of TomorrowNow service. And many of those, actually, never accepted any SAP product; they just took an SAP support contract.

MAGISTRATE JUDGE LAPORTE: So I don't fully understand that. And -- yeah, I don't know that this is a very good way to use the Court's time. I mean, none of this was in the statement. None of it.

MR. McDONELL: And I understand that.

MAGISTRATE JUDGE LAPORTE: So you're presenting huge amounts of detailed information orally, which is, for most people, myself included, much more inefficient than written.

out -- I can't judge and I don't want to hear more now in this context orally about an issue that was not raised with me in the papers. But if it's -- you know, certainly another basic principle I try to apply is, sauce for the goose is sauce for the gander. So if it's true that you're trying to find statements from their sales people that, you know, it had nothing to do with TomorrowNow, we lost the customer for some other reason, I would allow some kind of parallel effort on your side.

I don't know if that's true or not true. And so -- but yes, that's another guiding principle that I apply.

MR. McDONELL: And the comment I would make on the whole sales force discovery is, there is a mutuality. Both sides have an interest in that discovery, it is central, we do challenge causation damages, we're not going to let them simply use a meat cleaver and say, oh, everything you did must have caused us a loss. So we will pursue that discovery aggressively.

But both parties are exploring and trying to make a determination whether there is a means of getting that discovery to the service through targeted searches that don't require to look at every email a human being has written in the last 5 years. That discussion is

CERTIFICATE OF TRANSCRIBER

I, HOLLY THUMAN, a duly authorized shorthand reporter, do hereby certify:

That the foregoing transcript constitutes a true, full and correct transcription of the official court-produced electronic audio recording of the proceedings herein and reduced to typewriting under my supervision and control to the best of my ability.

DATED: April 1, 2009

Holly Thuman

HOLLY THUMAN, CSR No. 6834