Walsh v. Apple, Inc. et al
Doc. 513

# EXHIBIT A

Dockets.Justia.com

Robert A. Mittelstaedt (SBN 060359)
Jason McDonell (SBN 115084)
Elaine Wallace (SBN 197882)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
ramittelstaedt@jonesday.com
jmcdonell@jonesday.com
ewallace@jonesday.com

Tharan Gregory Lanier (SBN 138784)
Jane L. Froyd (SBN 220776)
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3939
Facsimile: (650) 739-3900
tglanier@jonesday.com
jfroyd@jonesday.com

Scott W. Cowan (Admitted *Pro Hac Vice*)
Joshua L. Fuchs (Admitted *Pro Hac Vice*)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone: (832) 239-3939
Facsimile: (832) 239-3600
swcowan@jonesday.com
jlfuchs@jonesday.com

Attorneys for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE USA, INC., et al.,<br>Plaintiffs,<br>v.<br>SAP AG, et al.,<br>Defendants. | Case No. 07-CV-1658 (PJH) EDL<br><br>**DEFENDANTS' FOURTH SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF TARGETED SEARCH REQUESTS TO DEFENDANTS** |

PROPOUNDING PARTY: Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited

RESPONDING PARTY: Defendants TomorrowNow, Inc., SAP America, Inc., and SAP AG

SET NUMBER: One

Pursuant to the parties' agreements and the August 29, 2008 Order regarding targeted searches, Defendants TomorrowNow, Inc. ("TN"), SAP America, Inc. and SAP AG (collectively, "Defendants") serve this their fourth supplemental objections and responses to the First Set of Targeted Search Requests by Plaintiffs Oracle USA, Inc., Oracle International Corporation, and Oracle EMEA Limited (collectively, "Plaintiffs"):

## GENERAL OBJECTIONS AND RESPONSES

1. Defendants object to the requests because they are not "narrow searches by topic" as the parties agreed they would be and as the Court ordered on August 29, 2008. The August 29, 2008 Order states "[t]he Parties may request from the other side up to 10 targeted searches, *i.e.*, narrow searches by topic where document production would come from centralized sources and/or from those persons most likely to have responsive documents." Defendants have been and remain willing to meet and confer with Plaintiffs in an effort to reach an agreement whereby Plaintiffs will amend the form and scope of Plaintiffs' First Set of Targeted Searches in order to comply with the parties' previous agreements and the Court's August 29, 2008 Order.

2. Defendants object to the requests because they contain numerous compound subparts relating to multiple topics and, if properly propounded and individually counted, they would greatly exceed the ten targeted search limit established by the August 29, 2008 Order.

3. Defendants object to the requests to the extent that they are vague, overbroad, oppressive, harassing and unduly burdensome.

4. Defendants object to the requests to the extent that they are not tied to the allegations in this case and therefore not reasonably calculated to lead to the discovery of admissible evidence.

5. As with all of Plaintiffs' other discovery requests, Defendants' reasonable inquiry and related responses to these discovery requests shall be limited in a manner consistent with the

Court's orders and the parties' agreements that provide limits on the parties' discovery obligations in this case. Defendants object to the requests to the extent that they can be interpreted to require Defendants to make any further search or production beyond what the parties have agreed and the Court has ordered, because such an interpretation of the requests would make them overbroad and unduly burdensome.

6. Any response by Defendants indicating that they will produce documents is not a confirmation that such documents exist or are in Defendants' possession, custody or control. Such response indicates only that Defendants, subject to their objections, will produce such documents to the extent that they do exist and are in one or more of Defendants' possession, custody or control.

7. Defendants will produce confidential and proprietary information of Defendants and/or of third parties that is in Defendants' possession, only under the Agreed Protective Order entered in this case, which permits designating such documents, depending on their content, as CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION – ATTORNEYS' EYES ONLY.

8. Defendants object to Plaintiffs' instructions to the extent that those instructions seek to require Defendants to produce documents in a form other than that in which those documents are maintained in the ordinary course of business. Subject to and without waiving their objections, Defendants will produce relevant, responsive non-privileged documents as they are typically maintained, subject only to the parties' agreement regarding mechanics of production.

9. Defendants object to each request, definition and instruction to the extent they seek to impose upon Defendants duties and/or responsibilities greater than those imposed by the Federal Rules of Civil Procedure, the Local Rules of this Court, any applicable orders of this Court or any stipulation or agreement of the parties

10. Defendants object to each request, definition and instruction to the extent they seek to require Defendants to speculate or guess as to whether Plaintiffs will contend that any potentially responsive documents "contradict" (or any similar concept) any positions taken by

Defendants or "support" (or any similar concept) any positions taken by Plaintiffs.

11. Defendants object to each request to the extent it seeks the production of documents and/or things that are not relevant to any claim or defense in this action, or reasonably calculated to lead to the discovery of admissible evidence that is relevant to any claim or defense, under Rule 26(b)(1) of the Federal Rules of Civil Procedure. Defendants specifically object to each request as unduly burdensome, oppressive and calling for information that is neither relevant to any claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence, to the extent the request seeks documents or information unrelated to PeopleSoft or J.D. Edwards ("JDE") products. PeopleSoft and JDE products are the only products Plaintiffs have placed at issue in this case and are the only products for which Defendants will produce documents or other data.

12. Defendants object to each request to the extent it seeks documents that are protected from disclosure by any applicable privilege, including but not limited to the attorney-client privilege, the attorney work product doctrine, the privilege afforded non-testifying experts by Rule 26(b) of the Federal Rules of Civil Procedure, or that is otherwise protected from disclosure under the Federal Rules of Civil Procedure, the Federal Rules of Evidence or relevant statutory or case law. Should any production of any such privileged documents by Defendants occur, it is inadvertent and shall not constitute a waiver of: (a) any privilege; (b) any other ground for objecting to discovery with respect to such documents or any other documents; (c) Defendants' right to claw any such document back or (d) Defendants' right to object during this litigation or otherwise to the use of any such document. Defendants will log such privileged information in accordance with the parties' agreements.

13. Defendants' responses to Plaintiffs' requests do not constitute admissions or acknowledgements that the information sought is within the proper scope of discovery or admissible at trial or that any non-privileged documents responsive to a particular request may exist.

14. Defendants' responses to Plaintiffs' requests are made without in any way waiving: (a) the right to object on the grounds of authenticity, competency, relevancy, materiality, privilege

or admissibility, to the extent that any documents produced in response hereto are ever attempted to be introduced as evidence for any purpose in any subsequent proceeding in, or the hearing of, this action or any other action and (b) the right to object on any grounds to any other discovery requests involving or relating to the same or similar subject matter of Plaintiffs' requests.

15. Defendants object to the requests to the extent they seek to require Defendants to search for, review or produce inaccessible information, data or other materials. Defendants will not search for, review or produce inaccessible information, data or other materials.

16. Defendants object to the definition of "Communication" as being overly broad and unduly burdensome to the extent the requests containing the defined term require production of any documents or other data showing "any and all contact."

17. Defendants object to Instruction number 5 to the extent it imposes a burden or obligation to which the parties have not yet agreed. The parties are still in the process of meeting and conferring regarding the limited issues for which the parties will agree to expand the discovery time period.

## TARGETED SEARCH REQUESTS

**TARGETED SEARCH REQUEST NO. 1:**

**FINANCIAL DOCUMENTS**

The following subset of Defendants' relevant financial Documents: (a) Documents comparable to Oracle's relevant "Customer-Specific Financial Reports," as described in Briana Rosenbaum's August 27, 2008 email to Jason McDonell for all TN customers, for all Safe Passage deals with TN as a component, and for SAP sales to TN customers after acquisition of TN; (b) summary sales and profit numbers for all TN customers, for Safe Passage deals with TN as component, and for SAP sales to TN customers after acquisition of TN; (c) reports sufficient to confirm that the 61 customers listed in the Customer List attached to Jane Froyd's July 18, 2008 email are the only SAP customers who either (1) had a contract with TN as a component of their Safe Passage deal, or (2) were previously (or, to the extent the customer was sold TN and SAP products/support together, at the same time) a TN customer who SAP then mined for further sales of software or service; (d) quantifications or analyses of actual or projected revenue that would be

or was lost by Oracle, or any harm that might be or was caused to Oracle, from TN, from SAP's acquisition of TN, or from SAP's incorporation of TN into its Safe Passage program including, but not limited to, Documents related to the 1:10 and 1:18 metrics contained in Hurst Depo Ex. 174 and other instances where these metrics were adopted or rejected by SAP; (e) Documents reflecting TN's expected contributions to Safe Passage (including anticipated service revenues and assistance in driving applications sales); (f) financials reflecting actual or projected benefits related to TN's service on any Oracle-branded software and any follow-on sales projected in connection with TN's offering of such service; (g) all business cases (and assumptions and financial backup regarding the same) related to the TN acquisition and any proposed expansions of TN service to any Oracle-owned software; (h) pro-formas and forecasts (and associated assumptions and financial back-up) for sales, revenue, and profits for the Safe Passage program overall (including for the TN aspect); (i) research, reports, analyses regarding how long TN customers might be expected to remain on TN service, and how long TN customers were expected to continue using Oracle products before migrating to SAP software (relevant Documents would include SAP's historic applications sales pipeline close rates and SAP's historic service contract and application license renewal rates); (j) SAP's and TN's research and development costs associated with the development of support products (both TN support products and SAP support products for SAP applications); (k) SAP's profit margins for service and applications sales and Documents explaining how they are calculated; and (l) Documents showing SAP's valuation of the intellectual property of any company it has acquired (including, but not limited to, Business Objects).

**RESPONSE TO TARGETED SEARCH REQUEST NO. 1:**

Defendants object to this request because it is compound and not a "narrow search by topic where document production would come from centralized sources and/or from those persons most likely to have responsive documents." More specifically, this request is improper because it contains numerous compound subparts relating to multiple topics. The alleged topic of this request is "financial documents," but only the separately lettered subparts (a), (b), (f) and (k) seek primarily financial documents. Subparts (c) through (e) and (h) relate to the topics of sales

and marketing. Subparts (g), (i) and (l) relate to the topic of business strategy. Subpart (j) relates to the topic of research and development. Neither the parties' agreement nor the Court's August 29, 2008 Order permit such a compound request. As currently worded, this request is anything but "targeted."

Defendants object to this request to the extent that it exceeds the number of targeted searches permitted by the Court. If each portion of this request were properly propounded and individually counted, then it would exceed the limit of ten targeted searches established by the August 29, 2008 Order. Specifically, just counting the separately lettered and distinct subparts (*i.e.*, (a) through (l)), this request contains twelve separate targeted search requests. And, if the multiple subparts contained within each separately lettered subparts are included, then this request constitutes even more than twelve separate targeted search requests. Moreover, even if each general "topic" could be counted as one "targeted" search, as shown in the preceding paragraph, this request seeks documents on at least four distinct topics, and thus at a bare minimum this request should be construed as four separate targeted search requests.

Because this request is a combination of multiple targeted search requests, Defendants object to the extent that Plaintiffs seek to require Defendants to choose, among the multiple requests, subparts and topics, which request(s), subpart(s) or topic(s) to which Defendants will respond by searching for and producing documents. Until Plaintiffs reasonably focus this request on a single topic and sufficiently narrow that request in the manner contemplated by the parties' agreement and the Court's August 29, 2008 Order, Defendants do not intend to produce any documents in response to this request.

Moreover, Defendants object to this request to the extent that Plaintiffs' currently pending document requests do not call for production of the documents sought by this targeted search request. Specifically, subparts (c) and (f) through (l) of this request either in whole or in part seek information that is not currently covered by any pending request for production of documents propounded by Plaintiffs in this case.

Defendants further object to this request as overly broad, unduly burdensome, designed to harass and not relevant or likely to lead to the discovery of admissible evidence because it is not

limited to the claims and product lines at issue in this case, which are only the PeopleSoft and JDE product lines.

Defendants object to the extent that numerous terms and phrases throughout this request are vague and ambiguous. For example, the italicized words in the phrases: "*summary* sales and profit numbers" in subpart (b); "who SAP then *mined*" in subpart (c); "any *harm* that might be or was caused" in subpart (d); "*driving* applications sales" in subpart (e); "*benefits* related to TN's service," "any *follow-on* sales" and "Oracle-*branded*" in subpart (f); "financial *backup* regarding the same" and "Oracle-*owned*" in subpart (g); and "*associated* assumptions and financial *back-up*" in subpart (h), read in context of each subpart, lack sufficient specificity and thus make each affected subpart vague and ambiguous.

Defendants object to subpart (b) to the extent that it seeks "summary sales and profit numbers" of TN's customers, as opposed to TN's sales and profit information relating to revenue TN received from those customers. Such information is neither relevant to the issues in this case nor likely to lead to the discovery of admissible evidence.

Defendants object to the use of the phrase "related to" in subparts (d), (f) and (g) to the extent that it makes that subpart vague, overbroad, unduly burdensome and to the extent that, depending on the construction of "related to," it is used to seek information that is neither relevant nor likely to lead to the discovery of admissible evidence.

Defendants object to subpart (h) as being overbroad, unduly burdensome and seeking information that is neither relevant nor likely to lead to the discovery of admissible evidence, to the extent that it seeks documents, data or other information regarding Safe Passage that has no relevance to TN.

Defendants object to subpart (i) as being overbroad, unduly burdensome and seeking information that is neither relevant nor likely to lead to the discovery of admissible evidence, to the extent that it seeks documents, data or other information regarding "SAP's historic applications sales pipeline close rates and SAP's historic service contract and application license renewal rates" that are related to any customer other than those TN customers who became SAP customers after SAP's acquisition of TN.

Defendants object to subpart (j) as being overbroad, unduly burdensome and seeking information that is neither relevant nor likely to lead to the discovery of admissible evidence, to the extent that it seeks documents, data or other information regarding "SAP's ... research and development costs associated with the development of support products ... for SAP applications."

Defendants object to subparts (k) and (l) in their entirety because they are overbroad, unduly burdensome and seek information that is neither relevant nor likely to lead to the discovery of admissible evidence.

Defendants object to the extent that this request is not "self-contained" as required by the August 29, 2008 Order.

Defendants object to Plaintiffs' attempt to conduct cumulative discovery to the extent that this requests seeks documents, data or other information that Defendants have already produced in this case. This objection includes, but is not limited to, an objection to any attempt by Plaintiffs to require Defendants to segregate or otherwise separately identify any documents, data or other information contained within any document production that any Defendant has made or will make in this case.

Defendants object to the extent that information responsive to this targeted search request will be produced in the ordinary course of the custodian-based production in this case by Defendants. Any attempt by Plaintiffs to seek such duplicative discovery is cumulative, overbroad and harassing.

Defendants object to this request to the extent that it calls for documents protected by any applicable privilege, including but not limited to, the attorney-client privilege, the attorney work product doctrine and/or the consulting-only expert privilege.

Defendants incorporate by reference as if fully set forth herein in response to this request, each of the seventeen General Objections and Responses contained on pages 2 through 5 above, as well as each of Defendants' objections and responses to each of Plaintiffs' document requests that relate to this request. Defendants are not, by responding to this request, waiving any of their objections to any of Plaintiffs' document requests.

As contemplated by the August 29, 2008 Order, Defendants reserve their right to supplement this response with additional information regarding the actions Defendants are taking to gather documents and other information in response to this request, including the anticipated time frames in which Defendants expect to begin production in response to the non-objectionable portions of this request. The necessary conditions precedent to any such supplement, however, are: (a) additional meeting and conferring between the parties regarding the proper form and scope of this request and (b) a subsequent agreed amendment of this request or, if necessary, Court intervention and a ruling on Defendants' request for such an amendment.

**SUPPLEMENTAL RESPONSE TO TARGETED SEARCH REQUEST NO. 1:**

**SECOND SUPPLEMENTAL RESPONSE TO TARGETED SEARCH REQUEST NO. 1:**

Defendants incorporate by reference the October 9, 2008 letter from Jason McDonell to Zachary J. Alinder (the "McDonell Letter") in which Defendants further clarified their responses and objections to Plaintiffs' First Targeted Search Requests. Subject to, and without waiving any of the foregoing General Objections, the specific objections to Targeted Search Request No. 1, and the statements in the McDonell letter, Defendants supplement their response as follows: Defendants are in the process of reviewing, and to the extent responsive information exists collecting, documents and data from SAP and TN central repositories. This includes speaking with many employees at SAP and TN concerning: 1) whether a particular central repository exists and if so, what type of data and/or documents it contains; and 2) whether the employees had responsive documents in their custodian materials, to the extent that responsive documents were the type that could be found in custodian materials and the employee's custodian materials were not otherwise collected.

Much of the work done in response to any one subpart listed in Targeted Search Request No. 1 has overlapped, and continues to overlap, with work done in response to other subparts. For example, subparts (a), (b), (c), (f), (k) and (j) all concern collecting targeted search materials related to SAP and/or TN specific financial information; subparts (d), (e), (h) and (i) all concern collecting targeted search materials related to the Safe Passage program.

In response to subpart (k), Defendants are reviewing the following central repositories of "financial" information: SAP's ISP system, TomorrowNow's SharePoint database spreadsheet, and a TomorrowNow stand alone computer containing financial information, including a Quick Books file containing TomorrowNow's financial data from prior to the acquisition. To the extent that pre-existing responsive financial reports exist, Defendants are reviewing them for possible production. Where no pre-existing responsive financial reports exist, Defendants are working to generate responsive reports from the central sources, to the extent that such reports can be

generated. Additionally, Defendants are speaking with the following employees concerning the "financial" subparts of Targeted Search Request. No. 1:

In response to subpart (l), Defendants continue to stand on all of our objections concerning this subpart.

As Defendants complete production in response to Targeted Search Request No. 1, Defendants reserve the right to update and supplement this response.

**THIRD SUPPLEMENTAL RESPONSE TO TARGETED SEARCH REQUEST NO. 1(c):**

**THIRD SUPPLEMENTAL RESPONSE TO TARGETED SEARCH REQUEST NO. 1(a)-(b), (d)-(k):**

Defendants incorporate by reference the October 9, 2008 letter from Jason McDonell to Zachary J. Alinder (the "McDonell Letter") in which Defendants further clarified their responses and objections to Plaintiffs' First Targeted Search Requests. Subject to, and without waiving any of the foregoing General Objections, the specific objections to Targeted Search Request No. 1, and the statements in the McDonell letter, Defendants supplement their response as follows: Defendants have diligently searched their central repositories and have produced responsive documents, including documents previously identified as well as: TN-OR 02812665 – TN-OR 02813102, TN-OR 02985404 – TN-OR 02985945, TN-OR 02813168, TN-OR 2985947 – TN-OR 02986052, TN-OR 06125333, TN-OR 02989467 – TN-OR 02989990, TN-OR 02990004, TN-OR 02990005, TN-OR 02990028, TN-OR 03547078 – TN-OR 03547245, TN-OR 03678600 – TN-OR 03678680, TN-OR 03711980 – TN-OR 03712153, TN-OR 03712155 – TN-OR 03712438, TN-OR 03712544, TN-OR 05942450 – TN-OR 05957963, TN-OR 06125333, SAP-OR 00475183 – SAP-OR 00475186, SAP-OR 00595972 – SAP-OR 00603611, SAP-OR 00603612, SAP-OR 00603615, SAP-OR 00697826 – SAP-OR 00697830, and SAP-OR 00697819 – SAP-OR 00697820. To the extent that updating the List of 81 as described below requires updating any produced documents (such as financial reports) or producing additional responsive documents (such as contracts), Defendants will produce such documents by the close of fact discovery.

Dated: May 22, 2009.

JONES DAY

By: Jason McDonell

Counsel for Defendants
SAP AG, SAP AMERICA, INC., and
TOMORROWNOW, INC.

## PROOF OF SERVICE

I, Grace A. Wayte, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 555 California Street, 26th Floor, San Francisco, California 94104. On May 22, 2008, I served a copy of the attached document(s):

**DEFENDANTS' FOURTH SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST SET OF TARGETED SEARCH REQUESTS TO DEFENDANTS (SET ONE)**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☒ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Donn Pickett, Esq.
Geoffrey M. Howard, Esq.
Holly House, Esq.
Zachary J. Alinder, Esq.
Bree Hann, Esq.
BINGHAM McCUTCHEN LLP
Three Embarcadero Center
San Francisco, CA 94111-4067
*donn.pickett@bingham.com*
*holly.house@bingham.com*
*geoff.howard@bingham.com*
*zachary.alinder@bingham.com*
*bree.hann@bingham.com*

Executed on May 22, 2009, at San Francisco, California.

By: [signature]
Grace A. Wayte